ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS, FREEDMAN & PATTERSON, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

Attorneys for Plaintiffs and Petitioners
JOHN WILLIAMS
ROBERT VOGEL
SHEANNA ROGERS
MICHAEL LOEB
JAQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) non-profit Corporation,<br><br>    Plaintiffs and Petitioners,<br><br>    vs.<br><br>ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL and DOES 1-10,<br><br>    Defendants and Respondents. | Case Number:<br><br>**COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY**<br><br>(42 U.S.C § 1983; C.C.P § 1085)<br><br>**DEMAND FOR JURY TRIAL** |

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1.     Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA (collectively, "Plaintiffs"), hereby bring this complaint and petition for relief against Defendants and Respondents ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND and OAKLAND CITY COUNCIL (collectively, "Defendants"), seeking damages caused by Defendants' residential eviction moratoriums (collectively, "Moratoriums"), and an order declaring said Moratoriums invalid, illegal, and unenforceable.  Plaintiffs also request an immediate stay, and injunction against the enforcement of the Moratoriums.

## JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the controversy arises under the United States Constitution and laws and under 42 U.S.C. § 1983, as hereinafter more fully appears.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the causes of action stated herein arise out of a common nucleus of operative fact, and thus form the same case or controversy under Article III of the United States Constitution.

## DIVISIONAL ASSIGNMENT

3.     Pursuant to Local Rule 3-2(c), this action arose in Alameda County, California and thus should be assigned to the Court's Oakland Division.

## VENUE

4.     Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all defendants/respondents reside in this judicial district and the events giving rise to the claims occurred in this district.

## PARTIES

5.     Defendant and Respondent ALAMEDA COUNTY (the "COUNTY") is a local government entity organized under the Constitution and laws of the State of California.

6.     Defendant and Respondent ALAMEDA COUNTY BOARD OF SUPERVISORS

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

(the "BOARD")  is a policy making, legislative, and quasi-judicial administrative body of the COUNTY.

7.      Defendant and Respondent CITY OF OAKLAND (the "CITY") is a municipal corporation in the State of California.

8.      Defendant and Respondent OAKLAND CITY COUNCIL (the "COUNCIL") is a policy making, legislative, and quasi-judicial administrative body of the CITY.

9.      Plaintiff JOHN WILLIAMS is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

10.     Plaintiff ROBERT VOGEL is an individual over the age of 18 and is a housing provider and owner of real property in the COUNTY.

11.     Plaintiff SHEANNA ROGERS is an individual over the age of 18 and is a housing provider and the owner of real property in the COUNTY.

12.     Plaintiff MICHAEL LOEB is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

13.     Plaintiff JAQUELINE WATSON-BAKER is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

14.     Plaintiff and Petitioner HOUSING PROVIDERS OF AMERICA ("HPOA") is a § 501(c)(4) nonprofit corporation.  HPOA is a network of housing activists fighting to protect the legal rights of housing providers, including those in the CITY and the COUNTY.  HPOA's members own rental housing in and throughout the CITY and the COUNTY,and have been directly and adversely affected by the CITY and COUNTY's residential eviction Moratoriums. All of HPOA's members are housing providers in either the CITY and/or COUNTY; all of HPOA's members have renters at their properties who are taking advantage of the CITY and COUNTY's Moratoriums, including but not limited to, refusing to pay rent for non-Covid-19 related reasons, refusing to relinquish possession, and creating nuisances and damage to HPOA's members' properties.  HPOA's members have been unable to collect rent for months on end with no financial relief provided by the CITY and COUNTY, and Moratoriums' complete defense

against virtually all residential evictions have tied HPOA's members hands.  HPOA's members have suffered lost rents, devalued properties, and some face impending foreclosures and bankruptcies, as a result of the Moratoriums.  The harm and injury brought to HPOA's member by the Moratoriums is current, ongoing, and concrete and particularized to all HPOA's members. HPOA's efforts to remedy these injustices are central to its purpose of fighting to protect the legal rights of housing providers, including those in the CITY and COUNTY.  Neither the claims asserted, nor the relief requested requires the participation of individual members in this lawsuit. HPOA has a direct and substantial interest in ensuring that Defendants' decisions are in conformity with the requirements of law, that those requirements are properly executed, and that Defendants' duties are enforced.

15.    Plaintiffs are not aware of the identities of defendants/respondents DOES 1-10, who are responsible for the acts and omissions alleged herein and that caused damage to Plaintiff; therefore, Plaintiffs will amend this Complaint when the true identities of DOES 1-10 are ascertained.

16.    Plaintiffs are informed and believe that at all times mentioned in this Complaint, all defendants/respondents were the agents or employees of their co-defendants/respondents, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

## STATEMENT OF FACTS

### A. Background: The California Governor's Order and the COVID-19 Renter Relief Act.

17.    In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act (ESA), Gov. Code sec. 8550, et seq.  On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict for nonpayment of rent due to the Covid-19 crisis.  In pertinent part, that order provided:

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

> [T]he statutory cause of action for unlawful detainer, Code of Civil Procedure section 1161 et seq., and any other statutory cause of action that could be used to evict or otherwise eject a residential . . . . renter . . . is suspended only as applied to any tenancy . . . to which a local government has imposed a limitation on eviction pursuant to this paragraph 2 [relating to inability to pay rent because of Covid-19 financial distress], and only to the extent of the limitation imposed by the local government. Nothing in this Order shall relieve a renter of the obligation to pay rent, nor restrict a housing provider's ability to recover rent due.

(Executive Order (EO) N-28-20.)  California's State of Emergency is still in place, currently set to expire on March 31, 2022.  (EO No. N-21-21).  However, the March 16, 2020 provision, permitting local government to temporarily limit Covid-19-related nonpayment evictions, expired on September 30, 2020.  (EO N-71-20.)

18.     Prior to the expiration of that provision, the California Legislature enacted the "COVID-19 Renter Relief Act" and the "COVID–19 Small Housing provider and Homeowner Relief Act of 2020" via AB 3088, effective August 31, 2020.  AB 3088 in part amended the State's unlawful detainer (UD) statutes, Code of Civil Procedure section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ."  Among other things, AB 3088 provided statewide eviction protections during the "covered time period" (initially March 20, 2020 through January 31, 2021) for renters who could not pay their rent for Covid-19-related reasons.  AB 3088 also directed state agencies to engage about potential strategies for relief for renters and housing providers who suffered Covid-19-related financial hardship.

19.     Notably (and consistent with the Governor's prior order), AB 3088's temporary moratorium on residential evictions was *specifically* limited to those based upon inability to pay for Covid-19-related financial distress.  Even during the temporary moratorium, housing providers were still permitted to file actions for, and courts were still permitted to find renters guilty of, UD for fault, and no-fault "just cause" as defined under Civil Code sec. 1946.2.[1]  (CCP

---

[1] Civil Code sec. 1946.2, which delineates California's "just causes for eviction," does not apply to residential rental property subject to a local ordinance requiring just cause for termination. However, any local "just cause" provision enacted or amended after September 1, 2019, that is

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

§ 1179.03.5(a)(3).)

20.     AB 3088 also provided "this section addresses a matter of statewide concern rather than a municipal affair." The intent of the legislation "is to protect individuals ***negatively impacted*** by the COVID-19 pandemic," and "does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect renters from eviction."  (CCP § 1179.05(b), (e), (f), emph. add.)  While AB 3088's amendments continued to recognize local government's authority to enact eviction protections, it did not give carte blanche authority to do so, nor does it immunize "emergency" municipal regulations from challenges based on state law preemption.

21.     The Covid-19-related nonpayment eviction protections of AB 3088 were extended twice thereafter, once to June 30, 2021 (through SB 91), and a last time to September 30, 2021 (through AB 832).  SB 91 and AB 832 protected affected renters from eviction during this extended "covered time period," so long as they complied with the Covid-19-related financial distress requirements.

22.     SB 91 and AB 832 further clarified the State's rental assistance program.  Starting October 1, 2021, and until March 31, 2022, for any Covid-19-related hardship rental debt that came due between those dates, a renter is required to show that they completed an application for rental assistance through the State program.  If they did not, the housing provider can move forward with an unlawful detainer ("UD") action for nonpayment of rent.   A housing provider may also move forward with a UD action if the rental assistance application was denied.  (CCP § 1179.11(a), (c).)

---

more "protective" than Civ. Code sec. 1946.2, must be consistent with that provision, and "not prohibited by any other area of law." (Civ. Code § 1946.2(g)(1).)

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

### B. The CITY's Eviction Moratorium

23.     On March 9, 2020, the CITY declared a local state of emergency due to Covid-19.  The CITY's local emergency was ratified on March 12, 2020, via Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies under specified circumstances.  (Gov. Code §§ 8558©, 8630.)  The ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date."  (Gov. Code § 8630 (d).)

24.     After ratifying the Local Emergency, on March 27, 2020, the CITY passed its eviction moratorium, Ordinance No. 13589.  That moratorium not only prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all other evictions*, with few exceptions:

> **Residential Eviction Moratorium.** Except when the renter poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (–) - (10) [excepting Ellis Act evictions] that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.

25.     Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended."  (Ordinance No. 13589.)  Subsequently, the moratorium was extended until "the Local Emergency declared on March 9, 2020 has been terminated by the City Council, or August 31, 2020, whichever comes first."  (Ordinance no. 13594.)  However, on July 7, 2020, the extension on the eviction moratorium was again amended to *only* expire when the local Emergency had been terminated by the COUNCIL.  (Ordinance No. 13606 (Ex. 1).)  The local Emergency has no stated expiration date, and the CITY's position is that it has not expired.  The blanket moratorium on evictions therefore remains in effect.

### C. The COUNTY's Eviction Moratorium

26.     The COUNTY ratified its local emergency on March 10, 2020.  (Res. No. R-2020-91.)  On April 21, 2020, the BOARD adopted Urgency Ordinance No. O-2020-23, which, like the CITY's moratorium, purports to prohibit most evictions—for any reason.  The language

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

in the urgency ordinance was then made a permanent part of the COUNTY's Code of Ordinances on June 23, 2020.  (Ordinance No. O-2020-32; ACCO § 6.120 (Ex. 2).)  The COUNTY's moratorium applies to "all evictions from residential units in the unincorporated and incorporated areas of the county" subject to very few exceptions.  (ACCO § 6.120.030.)  These exceptions are (1) Ellis Act withdrawals; (2) government orders requiring the unit to be vacated; or (3) "the resident poses an imminent threat to health or safety."  (ACCO § 6.120.030(F).)  Like the CITY's moratorium, the COUNTY'S moratorium provides that it is an "absolute defense" to an unlawful detainer action brought during its term.  (ACCO § 6.120.030(D).)

27.     The moratorium expires sixty days "after the expiration of the local health emergency."  (ACCO § 6.120.030.)  Per the ratification of the local emergency, the local emergency "shall remain in effect until the [BOARD] determines that the emergency no longer exists."  (Res. No. R-2020-91.)  The COUNTY's position is that it has not expired, and the blanket moratorium on evictions therefore remains in effect.

### D.   The COUNTY and CITY's Rent Relief Assistance Programs

28.     State law requires local governments to develop mechanisms by which housing providers and renters may file applications for, and receive if eligible, Covid-related rent relief.

29.     The COUNTY operates a rent relief assistance program called "Housing Secure."[2]  The Housing Secure website currently states: "NOTICE: We have received more requests for funds than we have currently available."

30.     The CITY also operates a rent relief assistance program called "Oakland's Emergency Rental Assistance."[3]  The Oakland's Emergency Rental Assistance website currently states: "UPDATE. PLEASE NOTE. As of January 7, the City of Oakland's Emergency Rental Assistance program is oversubscribed.  Tenants and Landlords may still submit an application but will be placed on a waitlist."

---

[2] https://www.ac-housingsecure.org/?locale=en
[3] https://www.oaklandca.gov/departments/department-of-housing-and-community-development

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

31. Importantly, tenants in the CITY and COUNTY need not to participate in *any* rent relief program to avoid eviction; the Moratoriums prohibit evictions even for those tenants who refuse to cooperate with a landlord's request that they seek relief under these programs. This directly contradicts the purpose, intent and procedures of state law.

### E. <u>The Moratoriums' Detrimental Impact on Plaintiffs</u>

32. Plaintiff JOHN WILLIAMS is a housing provider in the CITY and COUNTY and owns the property at 1109 32nd Street, Oakland, CA. ("1109 32nd Street"). 1109 32nd Street is a duplex, and the rent for the property only barely covers WILLIAMS' property expenses for 1109 32nd Street.  The current renter in the three-bedroom one-bath downstairs unit, Martina Martin, has occupied the unit for approximately ten years, and until the past two years, has always paid the rent for the unit, which is approximately $1,500.00 per month.  After the CITY and COUNTY enacted the Moratoriums, however, the renter stopped paying rent and has not paid since.  The renter's failure to pay is not related to any Covid-19 related reason.  In fact, the renter operated a moving and storage business, "Martina's Ride" out of her unit since 2017, and through much of 2021.  The renter refuses to cooperate with WILLIAMS' efforts to obtain unpaid rents through the rent relief program, and therefore the CITY rejected WILLIAMS' application for noncompliance. The renter in the upper unit vacated in March of 2021. WILLIAMS is concerned that a new renter will move in and refuse to pay rent, so he has kept that unit vacant after the renter left.  WILLIAMS is concerned he will lose the property; he applied for and received three months of mortgage forbearance, but the forbearance expires soon, and only delays his obligation to pay his mortgage.  He also attempted to sell the property, but the nonpaying renter has made it virtually unsalable for any reasonable value.  In October of 2021, WILLIAMS was so riddled with stress caused by his non-paying renter and the very real possibility of losing 1109 32nd Street to foreclosure, he was hospitalized and, to date, remains disabled as a result.  His disability forced him to quit his job and move into the upper unit of 1109 32nd Street—directly above his non-paying renter—to save money.  WILLIAMS is unable to commence a nonpayment eviction against his renter as a direct result of the Moratoriums and

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

in contravention of state law.

33.     Plaintiff ROBERT VOGEL ("VOGEL") is a housing provider in the COUNTY and owns a rental property located 20076 Emerald Ct., Castro Valley, CA ("20076 Emerald"). 20076 Emerald is a three-bedroom, one bath, 853 sq. ft single family home.  VOGEL is semi-retired and is a disabled paraplegic.  VOGEL relies on the rental income from 20076 Emerald for his only source of retirement income. VOGEL is required to pay approximately $1,328 per month for 20076 Emerald's mortgage, taxes and insurance, garbage service, and fees for property management.  Maintenance expenses for the property over the last two years have approximated $12,000. The renter at 20076 Emerald has lived there for approximately twelve years, and her current rent is $2,000 per month, however she stopped paying any rent in September 2021, and has not paid any rent since that date.  The renter's failure to pay prevented VOGEL from being able to refinance 20076 Emerald to a lower rate. The renter has also stopped maintaining 20076 Emerald's landscape and would park her car on the front yard.  The renter's failure to pay is not related to any Covid-19 related reason. VOGEL and the renter have applied for rental assistance through the COUNTY, however, there has been no response from the COUNTY whatsoever, and the COUNTY's rental relief website states that there is no money available.  There was also a second renter at the property temporarily that applied for rental assistance, despite working full time. The second tenant died in December 2021, yet there is mechanism to update or change the application process. The amount of monetary savings that VOGEL has in his bank account is being depleted because of having to carry all the costs of 20076 Emerald, and he is deeply concerned he will lose the property as the result of his inability to meet the financial obligations of ownership.

34.     Plaintiff SHEANNA ROGERS is a housing provider in the COUNTY and owns the property at 23243 Maud Ave., Hayward CA ("23243 Maud Ave.") At one time, ROGERS ran a small, three-bedroom, independent living facility at 23243 Maud Ave., where she & her husband cared and provided for people who needed a "helping hand" to get on their feet. Many clients had lived at this address for over 5 years. ROGERS served a vulnerable population at the

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

living facility; her clients often had mental disabilities and no families to turn to. ROGERS was able to provide her clients with a safe living space and meals they could count on at 23243 Maud Ave. In addition to the independent living facility space, 23243 Maud Ave. has a separate studio unit. ROGERS rented this unit in 2018 to the current renter, who paid $1000 per month. That renter was never part of the independent living facility program. ROGERS depends on this supplemental rental income to support her and her family. Prior to the COUNTY'S enactment of its Moratorium, the renter began harassing ROGER's clients in the independent living facility. The renter would scream profanities at ROGERS' clients and throw garbage from his unit into the street directly in front of the property. The renter's harassment of ROGERS' clients got so bad that ROGERS was forced to file a restraining order against the renter and commence eviction proceedings. In February 2020, ROGERS and the renter came to a settlement agreement, whereby the renter agreed to vacate the property in April of 2020. However, after the COUNTY enacted its Moratorium, in March 2020, the renter refused to leave. The renter is currently still occupying the property and has not paid rent for over two years. The renter's failure to pay is not related to any Covid-19 related reason. Meanwhile, the renter's harassment of ROGERS' clients persisted, and ROGERS was forced to close her business as a result. ROGERS has applied for rental assistance from the COUNTY, however, because her renter will not cooperate, and his non-payment has nothing to do with Covid-19 the COUNTY has refused to provide her with any relief.

35.      Plaintiff JAQUELINE WATSON-BAKER is a housing provider in the CITY and COUNTY and owns the property at 1225-1227 92nd Ave Oakland, CA. ("1225-1227 92nd Ave"). 1225-1227 92nd Ave was purchased by WATSON-BAKER's mother in or about the 1950's. WATSON-BAKER's mother, who moved from to California from the Southern United States, was one of the first African-Americans to own property in her East-Oakland neighborhood. 1225-1227 92nd Ave is a duplex, with a two-bedroom, two-bath front unit, and a one-bedroom one-bath back unit.  The renter in the back unit, Unit 1227, originally moved into the property in 2016.  Thereafter, WATSON-BAKER attempted to get access to the unit because the renter had

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

put tinfoil over the windowpanes and had installed an air conditioner, and she was concerned about the renter's activity at the property.  When WATSON-BAKER arrived at the property, the renter stated that he did "not believe that a black woman" owned the property and demanded to see her identification.  WATSON-BAKER showed the renter her identification, which the renter snatched out of her hand, but the renter still refused her access to the unit.  Thereafter, the renter would insist on dropping off his rent check at WATSON-BAKER's home address, even though she asked him multiple times to mail it to a P.O. Box. WATSON-BAKER continued to see concerning signs at the property, but the renter continued to refuse her access. For example, she saw signs of rat infestation, but when she sent an exterminator, the renter would not give the exterminator access and turned his dogs loose on them. The exterminator eventually refused to go back to the property. Because the tenant refused to grant her access, and WATSON-BAKER became increasingly concerned about the unit's condition, WATSON-BAKER filed for relief in court in or about 2018.  The renter of the front unit of 1225-1227 92nd Ave Oakland left in 2019 because of the renter of the back unit's erratic behavior, and that unit has remained vacant since due to the renter's behavior. WATSON-BAKER finally obtained a court date for March of 2020, which then was pushed back due to shelter in place orders.  The renter stopped paying rent just prior to this time.  The renter still occupies the unit to date and is currently approximately $5,000 in debt to her.  The renter's failure to pay is not related to any Covid-19 related reason. WATSON-BAKER finally got access to the unit several months ago and saw that the unit is in gross disrepair.  The renter put foil on all the unit's windows, there are dark yellow streaks running down the walls, and one of the unit's cabinets is hanging down from the ceiling.  The unit is infested with insects and there is feces and urine all over the bathroom of the unit, and dog feces and garbage cover the unit's backyard.  Notwithstanding the renter's damage to and perpetuation of a nuisance on her property, WATSON-BAKER is prevented from evicting the renter under the COUNTY's Moratorium.   WATSON-BAKER considered selling the property, however, was advised that the renter's actions had devalued her property by almost a third of the market value. WATSON-BAKER applied for rental assistance from the COUNTY, however,

her renter initially refused to cooperate with her.  After he finally agreed to fill out an application, the COUNTY informed WATSON-BAKER that it could be up to a year until she receives any rental relief funds.

36.     Plaintiff Michael Loeb is a housing provider in the CITY and COUNTY and owns units 2501 and 2502 at 565 Bellevue Avenue, Oakland, California (565 Bellevue Units).  Loeb, a 74 year-old widower, lived with his wife in Piedmont, until she died in 2015, after nearly 46 years of marriage. After her death, and, in part, because of mobility issues resulting in back surgery, he sold his home.  He purchased the 565 Bellevue Units in April, 2020, with the intent to combine and occupy them as his home, for his own use, for the remainder of his life.  Renter Joshua Bloomfield (Bloomfield), a 1996 Graduate of the University of Pennsylvania, and 2000 UCLA School of Law graduate, is a successful class action lawyer with a prominent Oakland based class action law firm.  Bloomfield currently pays LOEB $2,200 per month in rent for a studio apartment.  LOEB has attempted to voluntarily negotiate an owner move in with Bloomfield, offering him $30,000 to move out.  This is more than four times the amount of $7,116.22 required as a relocation payment under the Oakland Just Cause for Eviction Ordinance, which is codified at Oakland Municipal Code section 8.22.850.  However, Bloomfield has demanded that LOEB pay him more than $160,000 to vacate, telling LOEB that "it's nothing personal, just business."  Multiple other comparable units have become available in the same building and could have been occupied by Bloomfield.  Bloomfield has not claimed any Covid related hardship.  LOEB has been unable to commence an owner-move in eviction due to the Moratoriums.

### FIRST CLAIM
**(Violation of the 5th Amendment to the U.S. Constitution – Against All Defendants (42 U.S.C. § 1983))**

37.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 36 of this Complaint.

38.     By enacting the Moratoriums, the COUNTY and the CITY violated the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for

public use without just compensation.  The Moratoriums violate the Fifth Amendment of the United States Constitution on their face and as applied to Plaintiffs.

39.    Defendants' Moratoriums purport to prohibit Plaintiffs from evicting any renter in the CTY and COUNTY for virtually any reason, with few exceptions.  The Moratoriums, which have no end dates, perpetrate physical takings by illegally nullifying Plaintiffs and other housing providers' right to occupy their properties without just compensation; the Moratoriums *eliminate* renters' rent obligations and sanction renters' trespassing on Plaintiffs' properties.  Preventing housing providers "from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude."  (*Alabama Association of Realtors v. Department of Health and Human Services* (2021) 141 S.Ct. 2485, 2489; also see, *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 435; *Cedar Point Nursery v. Hassid* (2021) 141 S. Ct 2063; *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 655 [Physical taking occurs when a regulation "effectively extinguish[es] plaintiffs' right to occupy substantial portions of their property"].)

40.    The COUNTY and the CITY's moratoriums also interfere with Plaintiffs' investment-backed expectations and result in either a substantial or total deprivation of the economic value of Plaintiffs' properties.  (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104.)  The Moratoriums are devaluing properties by prohibiting Plaintiffs from recovering possession of their properties—even for their personal use—and even despite renters perpetuating ongoing nuisances and *continued* nonpayment of rents.  Plaintiffs have suffered significant financial losses due to the Moratoriums, and continue to suffer these losses, notwithstanding the current government "relief" programs in place, which have resulted in little to no relief.  Plaintiffs' "investment-backed expectations" have been violated as a matter of law.  (*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles* (C.D. Cal. 2020) 500 F. Supp. 3d 1088, 1096, *aff'd*, (9th Cir. 2021) 10 F.4th 905.)  This is especially so when applied in light of "the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

whole.' [Citation.]" (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606.)

41.     For the foregoing reasons, the Moratoriums constitute takings without just compensation, and thus violates Plaintiffs' rights protected by the United States Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

42.     As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

## SECOND CLAIM
**(Inverse Condemnation – Violation of Article I, Section 19 of the California Constitution)**

43.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 42 of this Complaint.

44.     The Moratoriums violate the Article I, Section 19 of the California Constitution on their face and as applied to Plaintiffs, for all the reasons alleged herein.

45.     The Moratoriums therefore constitute takings without just compensation, and thus violate Plaintiffs' rights protected by the California Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.

46.     As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.

## THIRD CLAIM
**(Violation of Due Process (42 U.S.C. § 1983))**

47.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 46 of this Complaint.

48.     The Moratoriums violate Plaintiffs' substantive and procedural due process rights

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

under the U.S. Constitution.  (*Lockary v. Kayfetz* (9th Cir. 1990) 917 F.2d 1150, 1155; *Weinberg v. Whatcom County* (9th Cir. 2001) 241 F.3d 746, 752-755.)  The Moratoriums violate Plaintiffs' substantive due process rights on their face and as applied because Plaintiffs' have protected property interests in their real properties, and Defendants' continued imposition of the blanket Moratoriums are irrational and lacking in a legitimate government interest because there is no justification for such extreme measures.  Indeed, California's COVID-19 Renter Relief Act never imposed such draconian restrictions.  Further, the Bay Area has seen significant improvement in circumstances relating to the pandemic since March of 2020, has a high rate of vaccinations, and federal and state officials have recognized that Covid-19 is either in, or moving to, an endemic stage.  The pandemic should not be used as a "cursory" justification for what would otherwise be an illegal law.  (See, *Texas v. United States* (S.D. Tex. Aug. 19, 2021)  No. 6:21-CV-00016, 2021 WL 3683913, at *45;  *Chrysafis v. Marks* (2021) 141 S.Ct. 2482; *Tandon v. Newsom* (2021)141 S.Ct. 1294.)  Defendants therefore have no rational basis for the Moratoriums, and any offered is plainly pretext.  The Moratoriums violate procedural due process because they, in effect, deprive Plaintiffs of *any* procedure to recover their properties under most cases.

49.     The aforesaid acts, and as further alleged herein, therefore constitute violations of Plaintiff's procedural and substantive due process rights. An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

50.     As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, emotional distress, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs are also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

## FOURTH CLAIM
### (Violation of Equal Protection (42 U.S.C. § 1983))

51.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 49 of this Complaint.

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

52.     The Moratoriums violate Plaintiffs' right to equal protection of the laws, on their face and as applied. The purpose of the Moratoriums is to unlawfully single out, penalize, and target Plaintiffs, and all housing providers in the CITY and COUNTY, by preventing them from lawfully exercising their property rights to receive rents, occupy their properties, exclude others from their properties, and protect their properties from nuisance and damage.  The emergency under which the Moratoriums no longer exists; the Bay Area is open for business, has a high rate of vaccinations, and federal and state officials have recognized that Covid-19 is either in, or moving to, and endemic stage. Thus, any stated rational government purpose to the contrary is pretext.

53.     For the foregoing reasons, the Moratoriums violate Plaintiffs' right to equal protection of the law, and as a result, Plaintiffs have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.) Plaintiffs have also entitled to recover their attorneys' fees under 42 U.S.C. § 1983.

### FIFTH CLAIM
#### (Writ of Mandate (CCP §§ 1085 or 1094.5))

54.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 53 of this Complaint.

55.     Code of Civil Procedure §§ 1094.5 or 1085 authorizes Plaintiffs to seek a writ of mandate/mandamus, and which authorizes the Court to review and set aside public agency decisions involving a prejudicial abuse of discretion or error of law.

56.     Plaintiffs requests the Court issue a declaration, and/or writ of mandate or mandamus, setting aside and voiding the Moratoriums.  Plaintiffs also seeks an immediate stay to enjoin Defendants from enforcing the Moratoriums, as such enforcement would further harm Plaintiffs by violating their statutory and constitutional rights as alleged herein, and the issuance

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   of such a stay would not be against the public interest.

2   57.    In enacting the Moratoriums, Defendants exceeded their jurisdiction, prevented

3   Plaintiffs from having a fair trial, failed to proceed as required by law, and prejudicially abused

4   their discretion because:

5           a.     The Moratoriums are preempted by the State's Covid-19 Renter Relief Act

6   (the "Act"), both expressly and impliedly, because they conflict with the Act by depriving

7   housing providers of the UD process altogether by prohibiting repossession of their

8   properties in almost all circumstances, thereby conflicting with that law.  Because the

9   Moratoriums conflict with the Act, they are preempted and void.

10          b.     the Moratoriums unlawfully amend the CITY's Just Cause for Eviction

11  Ordinance, which was enacted via voter initiative.  (Oak. Mun. Code § 8.22.310.)  While

12  the COUNCIL is permitted to amend the Just Cause for Eviction Ordinance to a limited

13  extent (see, Oak. Muni. Code § 8.22.360(F); City of Oakland Measure Y), the COUNTY

14  is not, and the COUNCIL's moratorium significantly surpasses the permissible scope of

15  amendment permitted by the voters.  Thus, the Moratoriums are invalid.

16  58.    Moreover, as alleged herein, Defendants' aforesaid acts constitute unconstitutional

17  per se, regulatory, de facto, and physical takings of Plaintiffs' properties without just

18  compensation under the U.S. Constitution and violate Plaintiff's constitutional rights to equal

19  protection and due process, and any purported legitimate and/or rational basis for the same is

20  pretext.

21  59.    Because these are questions of law and implicate constitutional rights, the standard

22  of review falls under the independent judgment test/de novo review.

23  60.    To the extent Plaintiffs were required to exhaust any administrative remedies, they

24  have, as alleged herein.

25  61.    As alleged herein, Plaintiffs have a beneficial interest in ensuring that the

26  Moratoriums are struck down so that Plaintiffs statutory and constitutional rights are not infringed

27  upon.  Plaintiffs do not have a plain, speedy, or adequate remedy in the ordinary course of law,

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

and therefore writ relief is necessary to compel Defendants to correct their actions, which are unlawful and in excess of their authority.

62.     Plaintiffs are entitled to recover attorneys' fees under Cal. Civ. Code § 1021.5, and because the Moratoriums are arbitrary and capricious, lacking any reasonable basis, and/or discriminatory and illegal, Plaintiffs are additionally entitled to attorneys' fees under Govt. Code § 800(a).

WHEREFORE, Plaintiffs' demand judgment against Defendants for the following:

**For Claims One, Two, Three and Four**:

1.     A preliminary and permanent injunction preventing enforcement of the Moratoriums;

2.     A declaratory judgment determining that Defendants' Moratoriums constitute a taking under the United States and California Constitutions, and violate Plaintiffs' right to due process and equal protection;

3.     For special damages for out-of-pocket expenses, loss of property value, and loss of opportunity costs in an amount that is yet to be ascertained;

4.     For general damages according to proof, in an amount that is yet to be ascertained;

5.     For an award of attorneys' fees and costs as allowed by law; and

6.     For any other relief that the Court deems just and proper.

**For Claim Five**:

1.     For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, enjoining and voiding the Moratoriums for all of the reasons alleged above;

2.     For a judgment that the Moratoriums constitute unlawful takings on their face and/or as applied, and have prevented Plaintiffs from maintaining economically viable use of their respective properties without just compensation in violation of Plaintiffs' rights under the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation; and upon such judgment, give Defendants

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

the opportunity to revoke Moratoriums and mitigate its damages in Plaintiff's inverse condemnation and 5th amendment takings action against Defendants;

3.      For a judgment that Defendants have violated Plaintiffs' equal protection and due process rights;

4.      For an immediate stay or preliminary injunction, and permanent injunction enjoining Defendants from enforcing the Moratoriums pending the determination of the merits;

5.      For costs of suit herein, including attorneys' fees;

6.      For any other relief that the Court deems just and proper.


Dated: March 1, 2022                              ZACKS, FREEDMAN & PATTERSON, PC

                                                   _/s/ Andrew M. Zacks_____
                                                   By:    Andrew M. Zacks
                                                          Emily L. Brough
                                                          Attorneys for Plaintiffs and Petitioners
                                                          JOHN WILLIAMS
                                                          ROBERT VOGEL
                                                          SHEANNA ROGERS
                                                          MICHAEL LOEB
                                                          JAQUELINE WATSON-BAKER
                                                          HOUSING PROVIDERS OF AMERICA

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ZACKS, FREEDMAN & PATTERSON, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all claims (other than the petition for writ of mandate) as stated herein.

Dated: March 1, 2022                    ZACKS, FREEDMAN & PATTERSON, PC

                                        */s/ Andrew M. Zacks*
                                        By:    Andrew M. Zacks
                                               Emily L. Brough
                                               Attorneys for Plaintiffs and Petitioners
                                               JOHN WILLIAMS
                                               ROBERT VOGEL
                                               SHEANNA ROGERS
                                               MICHAEL LOEB
                                               JAQUELINE WATSON-BAKER
                                               HOUSING PROVIDERS OF AMERICA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>VERIFICATION</u>**

I, Andrew M. Zacks, am an attorney representing all Plaintiffs and Petitioners (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters attested to in the fifth cause of action for writ of mandate (CCP § 1085), which are primarily questions of law, and it is for this reason that I, and not Plaintiffs, are verifying the fifth cause of action.   I have read the cause of action for writ of mandate and I am informed and believe the matters therein to be true and on that ground allege that the matters stated therein are true.  On this basis, I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct to the best of my knowledge and that this verification was executed on _March 1_____, 2022, in Oakland, California.

_____

Andrew M. Zacks

**Zacks, Freedman & Patterson, PC**
1970 Broadway, Suite 1270
Oakland, CA 94612