ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS, FREEDMAN & PATTERSON, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

Attorneys for Plaintiffs and Petitioners
JOHN WILLIAMS
ROBERT VOGEL
SHEANNA ROGERS
MICHAEL LOEB
JACQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) non-profit Corporation,<br><br>Plaintiffs and Petitioners,<br><br>vs.<br><br>ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL and DOES 1-10,<br><br>Defendants and Respondents. | Case Number: 3:22-cv-01274<br><br>**PLAINTIFFS' AND PETITIONERS' NOTICE OF MOTION AND MOTION FOR BIFURCATION OF FACIAL AND AS-APPLIED CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br>(F.R.C.P. 42(b))<br><br>Date: [TBD]<br>Time: [TBD]<br>Judge: Hon. Laurel Beeler<br><br>Complaint filed March 1, 2022 |

# TABLE OF CONTENTS

NOTICE AND MOTION ...........................................................................................................1

MEMORANDUM .....................................................................................................................2

I. INTRODUCTION ...........................................................................................................2

II. STATEMENT OF FACTS...............................................................................................2

    A. Background: The California Governor's Order and the COVID-19 Renter Relief Act ......................................................................................................................2

    B. The CITY's Eviction Moratorium .......................................................................4

    C. The COUNTY's Eviction Moratorium ................................................................5

    D. The COUNTY and CITY's Rent Relief Assistance Programs ............................5

    E. The Moratorium's Detrimental Impact on Housing Providers ............................6

III. STATEMENT OF PROCEDURE ................................................................................11

IV. ARGUMENT ................................................................................................................12

    A. Legal Standards .................................................................................................12

    B. Bifurcation of the Facial Claims from the As-Applied Claims Will Expedite the Proceedings, Simplify the Issues, and Avoid Further Prejudice to Plaintiffs ......13

V. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)..................................................13

*Arthur Young & Co. v. U. S. Dist. Ct.*, 549 F.2d 686 (9th Cir. 1977) .....................................12

*Beck v. Piatt* 24 Cal.App.3d 611 (1972)...................................................................................13

*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015)........................................................13

*City of New Rochelle v. Town of Mamaroneck*, 111 F.Supp.2d 353 (S.D.N.Y. 2000)...........13

*County of Madera v. Superior Court* 39 Cal.App.3d 665 (1974) ............................................13

*Dease v. City of Anaheim*, 826 F. Supp. 336 (C.D. Cal. 1993)................................................12

*Dr. John's, Inc. v. City of Sioux City, IA*, 438 F. Supp. 2d 1005 (N.D. Iowa 2006) ..............12

*Doe v. Gallinot*, 657 F.2d 1017 (9th Cir. 1981) ..................................................................2, 13

*Duke Power Co. v. Carolina Env't Study Grp., Inc.,* 438 U.S. 59 (1978)............................2, 13

*First Lutheran Church v. Los Angeles,* 482 U.S. 304 (1987) .......................................2, 13, 15

*Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493 (5th Cir. 1999) ....................13

*Hensler v. City of Glendale*, 8 Cal.4th 1 (1994).............................................................2, 13, 15

*Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir. 1982).......................................................................12

*In re Paoli R.R. Yard PCB Litig.,* 113 F.3d 444 (3d Cir. 1997)...............................................12

*MacLaughlin v. Hull*, 87 F.2d 641 (9th Cir. 1937) ..................................................................13

*Mid Gulf, Inc. v. Bishop*, 792 F. Supp. 1205 (D. Kan. 1992) ..................................................12

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983).......................12

*Hewitt v. Joyner*, 940 F.2d 1561 (9th Cir. 1991) .....................................................................14

*Vernon Fire Fighters v. City of Vernon* 107 Cal.App.3d 802 (1980) ......................................13

**Statutes**

Cal. Code. Civ. Proc. § 1085................................................................................................11, 13

Cal. Code. Civ. Proc. § 1161 .......................................................................................................3

| | |
|---|---|
| Cal. Code. Civ. Proc. § 1179.11(a) | 4 |
| Cal. Code. Civ. Proc. § 1179.03.5(a)(3) | 3 |
| Cal. Code. Civ. Proc. § 1179.11(c) | 4 |
| Fed. R. Civ. P. Rule 42(b) | 1, 12 |
| Gov. Code § 8550 | 2 |
| Gov. Code § 8558(c) | 4 |
| Gov. Code § 8630 | 4 |
| Gov. Code § 8630(d) | 4 |
| 42 U.S.C. §1983 | 11 |

**Constitutions**

| | |
|---|---|
| Cal. Const., Art. I, Sec. 19 | 11, 14 |
| U.S. Const. Amend. V | 14 |

**Assembly Bills**

| | |
|---|---|
| CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) | 3 |
| CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) | 3 |

**Other Authorities**

| | |
|---|---|
| Alameda County Code of Ordinance §6.120 | 5 |
| Alameda County Code of Ordinance §6.120.030 | 5 |
| Alameda County Code of Ordinance §6.120.030(D) | 5 |
| Alameda County Code of Ordinance §6.120.030(F) | 5 |
| Alameda County Resolution No. R-2020-91 | 5 |
| Oakland City Council Resolution No. 88075 C.M.S. | 4 |
| Oakland Municipal Code § 8.22.360A | 4 |
| Oakland Municipal Code § 8.22.850 | 11 |
| Oakland Ordinance No. 13594 | 4 |
| Oakland Ordinance No. 13606 | 4 |

# NOTICE AND MOTION

Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JACQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA (collectively "Plaintiffs") will and hereby do move the Court to bifurcate facial and writ claims from as-applied claims pursuant to Federal Rules of Civil Procedure Rules 42(b). This motion will be heard at _____ on _____, 2022, by the Honorable Laurel Beeler in the Northern District of California, San Francisco Courthouse, Courtroom B - 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

This motion is made on the grounds that bifurcation is necessary and proper here pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, and is based upon the Memorandum set forth below and the Declarations and Request for Judicial Notice filed concurrently herewith.

Dated: April 26, 2022                ZACKS, FREEDMAN & PATTERSON, PC

                                       */s/ Andrew M. Zacks*
                                 By:    Andrew M. Zacks
                                           Emily L. Brough
                                           Attorneys for Plaintiffs and Petitioners
                                           JOHN WILLIAMS
                                           ROBERT VOGEL
                                           SHEANNA ROGERS
                                           MICHAEL LOEB
                                           JACQUELINE WATSON-BAKER
                                           HOUSING PROVIDERS OF AMERICA

# MEMORANDUM

## I. INTRODUCTION

Plaintiffs move to bifurcate their facial constitutional claims and petition for writ of mandate from their as-applied claims. Bifurcation is necessary and proper here because the facial claims and writ claims involve exclusively legal questions that do not involve trial by jury. Moreover, under Plaintiffs' facial, per se takings claim, Plaintiffs seek a declaratory judgment, consistent with *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981) and *Duke Power Co. v. Carolina Env't Study Grp., Inc.,* 438 U.S. 59, 71, fn. 15 (1978), that defendants' conduct amounts to taking as a matter of law. Such a declaration, if granted by the Court, would provide defendants an opportunity to rescind the offending regulations and thereby mitigate the compensation due under a takings theory. *First Lutheran Church v. Los Angeles,* 482 U.S. 304, 321 (1987); *Hensler v. City of Glendale*, 8 Cal.4th 1, 7 (1994). Plaintiffs' facial constitutional and writ claims do not require discovery, and bifurcation would significantly narrow or possibly moot the as-applied claims. Therefore, consistent with principles of judicial efficiency, and to alleviate prejudice to Plaintiffs, who suffer on a daily basis from the regulations at issue, it is in the interest of justice for the Court to grant the motion to bifurcate.

Plaintiffs have attempted to meet and confer with defendants and prospective intervenors regarding bifurcation. (Declaration of Emily L. Brough in Support of Motion For Bifurcation of Facial and As-Applied Claims ("Brough Dec.").) Neither defendants nor prospective intervenors have been willing to stipulate, nor have they communicated any cognizable reason for opposing bifurcation. (*Ibid.*)

## II. STATEMENT OF FACTS

### A. Background: The California Governor's Order and the COVID-19 Renter Relief Act.

In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act (ESA), Gov. Code sec. 8550, et seq. On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict

for nonpayment of rent due to the Covid-19 crisis. That provision expired on September 30, 2020.[1]

Prior to the expiration of that provision, the California Legislature enacted the COVID-19 Renter Relief Act and the COVID–19 Small Housing provider and Homeowner Relief Act of 2020 (collectively, the "Act") effective August 31, 2020. The Act in part amended the State's unlawful detainer (UD) statutes, Code of Civil Procedure section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ." CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (emphasis added). Among other things, the Act provided statewide eviction protections during a specified covered time period for renters who could not pay their rent for Covid-19-related reasons. *Ibid*. The Act also directed state agencies to engage about potential strategies for relief for renters and housing providers who suffered Covid-19-related financial hardship. *Ibid*. The Act's temporary moratorium on residential evictions was *specifically* limited to those based upon inability to pay for Covid-19-related financial distress. Even during this temporary moratorium, housing providers were still permitted to file actions for, and courts were still permitted to find renters guilty of, UD for fault, and no-fault "just cause" as defined under state law. Cal. Code of Civ. Proc § 1179.03.5(a)(3). The Covid-19-related nonpayment eviction protections were extended to September 30, 2021 and protected affected renters from eviction during this period so long as they complied with the Covid-19-related financial distress requirements. CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832).

Further amendments to the Act clarified the State's rental assistance program, and protected Covid-19 affected renters who made active efforts to comply with that program. *Ibid.* Starting October 1, 2021, and through June 30, 2022, for any Covid-19-related hardship rental debt that came due between those dates, a renter is required to show that they completed an application for rental assistance through the State program. *Ibid.* If they did not, the housing provider can move forward with an unlawful detainer ("UD") action for nonpayment of rent. A

---

[1] Executive Order N-71-20.

housing provider may also move forward with a UD action if the rental assistance application was denied, or if a determination is not pending on application that was filed prior to April 1, 2022. Cal. Code of Civ. Proc. § 1179.11(a), (c).

### B. <u>The CITY's Eviction Moratorium</u>

On March 9, 2020, defendant City of Oakland ("CITY") declared a local state of emergency due to Covid-19. The CITY's local emergency was ratified on March 12, 2020, via Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies under specified circumstances. Cal. Gov. Code §§ 8558(c), 8630. The ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date." Cal. Gov. Code § 8630(d).

After ratifying the local emergency, on March 27, 2020, the CITY passed its eviction moratorium, Ordinance No. 13589. That moratorium not only prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all other evictions*, with few exceptions:

> **Residential Eviction Moratorium.** Except when the renter poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) - (10) [just cause provisions] that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.

Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended." Subsequently, the moratorium was extended until "the Local Emergency declared on March 9, 2020 has been terminated by the City Council, or August 31, 2020, whichever comes first."[2] However, on July 7, 2020, the extension on the eviction moratorium was again amended to *only* expire when the local Emergency had been terminated by the Oakland City Council ("COUNCIL"). Ex. A to Request for Judicial Notice in Support of Plaintiffs' Motion for Bifurcation [Ordinance No. 13606]. Over two years later, the local emergency has no stated

---

[2] Oakland Ordinance No. 13594

expiration date, and the COUNCIL's position is that it has not expired. The blanket moratorium on evictions therefore remains in effect.

### C. The COUNTY's Eviction Moratorium

Defendant Alameda County ("COUNTY") ratified its local emergency on March 10, 2020.[3] On April 21, 2020, defendant Alameda County Board of Supervisors ("BOARD") adopted Urgency Ordinance No. O-2020-23, which, like the CITY's moratorium, purports to prohibit most evictions for any reason—that is, even when there is no Covid-related financial distress. The language in the urgency ordinance was then made a permanent part of the COUNTY's Code of Ordinances on June 23, 2020. RJN Ex. B [Ordinance No. O-2020-32; Alameda County Code of Ordinance (ACCO) § 6.120]. The COUNTY's moratorium applies to "all evictions from residential units in the unincorporated and incorporated areas of the county" subject to very few exceptions. *Ibid.* [ACCO § 6.120.030]. These exceptions are (1) Ellis Act withdrawals; (2) government orders requiring the unit to be vacated; or (3) "the resident poses an imminent threat to health or safety." *Ibid.* [ACCO § 6.120.030(F)]. Like the CITY's moratorium, the COUNTY'S moratorium provides that it is an "absolute defense" to an unlawful detainer action brought during its term. *Ibid.* [ACCO § 6.120.030(D)].

The moratorium expires sixty days "after the expiration of the local health emergency." (*Ibid.* [ACCO § 6.120.030]. Per the ratification of the local emergency, the local emergency "shall remain in effect until the [BOARD] determines that the emergency no longer exists."[4] Over two years later, the BOARD's position is that it has not expired, and the blanket moratorium on evictions therefore remains in effect.

### D. The COUNTY and CITY's Rent Relief Assistance Programs

State law requires local governments to develop mechanisms by which housing providers and renters may file applications for, and receive if eligible, Covid-related rent relief. The COUNTY operates a rent relief assistance program called "Housing Secure."[5] The Housing

---

[3] Alameda County Resolution No. R-2020-91
[4] *Ibid.*
[5] https://www.ac-housingsecure.org/?locale=en

Secure website currently states: "NOTICE: . . . We have received more requests for funds than we have currently available." The CITY also operated a rent relief assistance program called "Oakland's Emergency Rental Assistance."[6] The Oakland's Emergency Rental Assistance website currently states: "March 31, 2022 UPDATE. The ERAP application website is no longer accepting applications."

Importantly, tenants in the CITY and COUNTY need not to participate in *any* rent relief program to avoid eviction; the Moratoriums prohibit evictions even for those tenants who refuse to cooperate with a housing provider's request that they seek relief under these programs.

### E. The Moratoriums' Detrimental Impact on Housing Providers

The blanket Moratoriums forbid evictions on most grounds, and even when renters have no Covid-19-related financial basis for not paying rent. As a consequence, renters have simply stopped paying rent, despite the fact they have no Covid-19 related basis for doing so. In some cases, renters are even destroying and devaluing housing providers' properties. **Plaintiffs in this case and housing providers throughout Oakland and Alameda County have been *severely* harmed by the egregiously broad reach of the Moratoriums, which have resulted in a government-sanctioned abuse of housing providers and uncompensated taking of properties.** Declaration of John Williams in Support of Plaintiffs' Motion for Bifurcation ("Williams Dec."); Declaration of Sheanna Rogers in Support of Plaintiffs' Motion for Bifurcation ("Rogers Dec."); Declaration of Jacqueline Watson-Baker in Support of Plaintiffs' Motion for Bifurcation ("Watson-Baker Dec."); Declaration of Michael Loeb in Support of Plaintiffs' Motion for Bifurcation ("Loeb Dec."); Declaration of Lauren Blanchard in Support of Plaintiffs' Motion for Bifurcation ("Blanchard Dec."); Declaration of An Zhang in Support of Plaintiffs' Motion for Bifurcation ("Zhang Dec."); Declaration of Ellen Toomey in Support of Plaintiffs' Motion for Bifurcation ("Toomey Dec."); Declaration of John Murrell in Support of Plaintiffs' Motion for Bifurcation (Murrell Dec."); Declaration of Audrey Crane in Support of Plaintiffs' Motion for Bifurcation ("Crane Dec."); Declaration of Hannah Kirk in Support of

---

[6] https://www.oaklandca.gov/departments/department-of-housing-and-community-development

Plaintiffs' Motion for Bifurcation ("Kirk Dec."); Declaration of Supakit Khiewdee in Support of Plaintiffs' Motion for Bifurcation ("Khiewdee Dec."); Declaration of Avinash Jha in Support of Plaintiffs' Motion for Bifurcation ("Jha Dec.").

Plaintiff John Williams ("WILLIAMS") is a housing provider in the CITY and COUNTY and owns the property at 1109 32nd Street, Oakland, CA. ("1109 32nd Street"). 1109 32nd Street is a duplex, and the rent for the property only barely covers WILLIAMS' property expenses for 1109 32nd Street. Williams Dec. ¶¶ 2, 3. The current renter in the three-bedroom one-bath downstairs unit, Martina Martin, has occupied the unit for approximately ten years, and until the past two years, has always paid the rent for the unit, which is approximately $1,500.00 per month. *Id.* at ¶ 4. After the CITY and COUNTY enacted the Moratoriums, however, the renter stopped paying rent and has not paid since. *Id.* at ¶ 5. The renter's failure to pay is not related to any Covid-19 related reason. *Id.* at ¶ 6. In fact, the renter operated a moving and storage business, "Martina's Ride" out of her unit since 2017, and through much of 2021. *Ibid.* The renter refuses to cooperate with WILLIAMS' efforts to obtain unpaid rents through the rent relief program, and therefore the CITY rejected WILLIAMS' application for noncompliance. *Id.* at ¶ 7. The renter in the upper unit vacated in March of 2021, however, WILLIAMS is concerned that a new renter will move in and refuse to pay rent, so he has kept that unit vacant after the renter left. *Id.* at ¶ 8.

WILLIAMS is concerned he will lose the property; he applied for and received three months of mortgage forbearance, but the forbearance expired, and furthermore, only delays his obligation to pay his mortgage. *Id.* at ¶ 9. He also attempted to sell the property, but the nonpaying renter has made it virtually unsalable for any reasonable value. *Id.* at ¶ 10. In October of 2021, WILLIAMS was so riddled with stress caused by his non-paying renter and the very real possibility of losing 1109 32nd Street to foreclosure, he was hospitalized and, to date, remains disabled as a result. *Id.* at ¶ 11. His disability forced him to quit his job and move into the upper unit of 1109 32nd Street—directly above his non-paying renter—to save money. *Id.* at ¶ 12. WILLIAMS is unable to commence a nonpayment eviction against his renter as a direct result of the Moratoriums and in contravention of state law.

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Plaintiff Sheanna Rogers ("ROGERS") is a housing provider in the COUNTY and owns the property at 23243 Maud Ave., Hayward CA ("23243 Maud Ave"). Rogers Dec. at ¶ 2. At one time, ROGERS ran a small, three-bedroom, independent living facility at 23243 Maud Ave., where she & her husband cared and provided for people who needed a "helping hand" to get on their feet. *Id.* at ¶ 3. ROGERS served a vulnerable population at the living facility; her clients often had mental disabilities and no families to turn to. *Ibid.*. ROGERS was able to provide her clients with a safe living space and meals they could count on at 23243 Maud Ave. *Ibid*. Many of ROGERS' clients had lived at this address for over 5 years. *Ibid*. In addition to the independent living facility space, 23243 Maud Ave. has a separate studio unit. ROGERS rented this unit in 2018 to the current renter, who paid $1000 per month. *Id.* at ¶ 4. That renter was never part of the independent living facility program. *Id.* at ¶ 5. ROGERS depends on this supplemental rental income to support her and her family. *Ibid*.

Prior to the COUNTY'S enactment of its Moratorium, the renter began harassing ROGER's clients in the independent living facility. *Id.* at ¶ 6. The renter would scream profanities at ROGERS' clients and throw garbage from his unit into the street directly in front of the property. *Ibid.* The renter's harassment of ROGERS' clients got so bad that ROGERS was forced to file a restraining order against the renter and commence eviction proceedings. *Id.* at ¶ 7. In February 2020, ROGERS and the renter came to a settlement agreement, whereby the renter agreed to vacate the property in April of 2020. *Id.* at ¶ 8. However, after the COUNTY enacted its Moratorium, in March 2020, the renter refused to leave. *Ibid*. The renter is currently still occupying the property and has not paid rent for over two years. *Id.* at ¶ 9. The renter's failure to pay is not related to any Covid-19 related reason. *Ibid*. Meanwhile, the renter's harassment of ROGERS' clients persisted, and ROGERS was forced to close her business as a result. *Id.* at ¶ 10. ROGERS has applied for rental assistance from the COUNTY, however, because her renter will not cooperate, and his non-payment has nothing to do with Covid-19, the COUNTY has refused to provide her with any relief. *Id.* at ¶ 11.

Plaintiff Jacqueline Watson-Baker ("WATSON-BAKER") is a housing provider in the CITY and COUNTY and owns the property at 1225-1227 92nd Ave Oakland, CA. ("1225-1227

92nd Ave"). Watson-Baker Dec. ¶ 2. 1225-1227 92nd Ave was purchased by WATSON-BAKER's mother in or about the 1950's. *Id.* at ¶ 3. WATSON-BAKER's mother, who moved from to California from the Southern United States, was one of the first African Americans to own property in her East-Oakland neighborhood.[7] *Ibid.*. 1225-1227 92nd Ave is a duplex, with a two-bedroom, two-bath front unit, and a one-bedroom one-bath back unit. *Id.* at ¶ 2. The renter in the back unit, Unit 1227, originally moved into the property in 2016. *Id.* at ¶ 4. Thereafter, WATSON-BAKER attempted to get access to the unit because the renter had put tinfoil over the windowpanes and had installed an air conditioner, and she was concerned about the renter's activity at the property. *Id.* at ¶ 5.

When WATSON-BAKER arrived at the property, the renter stated that he did "not believe that a black woman" owned the property and demanded to see her identification. *Id.* at ¶ 6. WATSON-BAKER showed the renter her identification, which the renter snatched out of her hand and took a picture of. *Ibid.*. Thereafter, the renter would insist on dropping off his rent check at WATSON-BAKER's home address, even though she asked him multiple times to mail it to a P.O. Box. *Id.* at ¶ 7. WATSON-BAKER continued to see concerning signs at the property, but the renter continued to refuse her access. *Id.* at ¶ 8. For example, the renter told her there were signs of rat infestation, but when WATSON-BAKER sent an exterminator, the renter would repeatedly refuse to give the exterminator access. *Ibid*. The exterminator eventually refused to go back to the unit. *Ibid.* Because the tenant refused to grant her access, and WATSON-BAKER became increasingly concerned about the unit's condition, WATSON-BAKER filed for relief in court in or about 2018. *Id.* at ¶ 9. The renter of the front unit of 1225-1227 92nd Ave Oakland left in 2019 because of the renter of the back unit's erratic behavior, and that unit has remained vacant since due to the renter's behavior. *Id.* at ¶ 10. WATSON-BAKER finally obtained a court date for March of 2020, which then was pushed back due to shelter in place orders. *Id.* at ¶ 11. The renter stopped paying rent just prior to this time. *Ibid.* The renter still occupies the unit to

---

[7] See, https://www.audacy.com/kcbsradio/news/local/bay-area-landlords-struggle-with-ongoing-eviction-moratorium

date and is currently approximately $5,000 in debt to her. *Id.* at ¶ 12. The renter's failure to pay is not related to any Covid-19 related reason. *Id.* at ¶ 13.

WATSON-BAKER finally got access to the unit several months ago and saw that the unit is in gross disrepair. *Id.* at ¶ 14. The renter put foil on all the unit's windows, there are dark yellow streaks running down the walls, and one of the unit's cabinets is hanging down from the ceiling. *Id.* at ¶ 15. The unit is infested with insects and there is feces and urine all over the bathroom of the unit, and dog feces and garbage cover the unit's backyard. *Id.* at ¶ 16. WATSON-BAKER spoke with the renter about scheduling repairs, and he initially agreed. However, when the workers arrived at the unit at the agreed upon time, the renter said that WATSON-BAKER would need to pay him $1,000 in order to permit the workers' access. *Id.* at ¶ 14. Notwithstanding the renter's damage to and perpetuation of a nuisance on her property, WATSON-BAKER is prevented from evicting the renter under the COUNTY's Moratorium. *Id.* at ¶ 17. WATSON-BAKER considered selling the property, however, was advised that the renter's actions had devalued her property by almost a third of the market value. *Id.* at ¶ 18. WATSON-BAKER applied for rental assistance from the COUNTY after her renter told WATSON-BAKER that he had applied. *Id.* at ¶ 19. However, when WATSON-BAKER submitted her application, she was told that the renter had stopped the process. *Ibid.* The COUNTY informed WATSON-BAKER that it would be at least a year until she receives any rental relief funds. *Ibid.*

Plaintiff Michael Loeb ("LOEB") is a housing provider in the CITY and COUNTY and owns units 2501 and 2502 at 565 Bellevue Avenue, Oakland, California (565 Bellevue Units). Loeb Dec. ¶ 2. LOEB, a 74 year-old widower, lived with his wife in Piedmont, until she died in 2015, after nearly 46 years of marriage. *Id.* at ¶ 3. After her death, and, in part, because of mobility issues resulting in back surgery, he sold his home. *Ibid.* He purchased the 565 Bellevue Units in April, 2020, with the intent to combine and occupy them as his home, for his own use, for the remainder of his life. *Id.* at ¶ 4. Renter Joshua Bloomfield (Bloomfield), a 1996 Graduate of the University of Pennsylvania, and 2000 UCLA School of Law graduate, is a successful class action lawyer with a prominent Oakland based class action law firm. *Id.* at ¶ 5. Bloomfield currently pays LOEB $2,200 per month in rent for a studio apartment. *Id.* at ¶ 6.

1  LOEB has attempted to voluntarily negotiate an owner move in with Bloomfield, offering him
2  $30,000 to move out. *Id.* at ¶ 7. This was more than four times the amount of $7,116.22 required
3  as a relocation payment under the Oakland Just Cause for Eviction Ordinance, which is codified
4  at Oakland Municipal Code section 8.22.850. *Ibid*. However, Bloomfield has demanded that
5  LOEB pay him more than $160,000.00 to vacate, telling LOEB that "it's nothing personal, just
6  business." *Id.* at ¶ 8. Multiple other comparable units have become available in the same building
7  and could have been occupied by Bloomfield. *Id.* at ¶ 9. Bloomfield has not claimed any Covid
8  related hardship. *Ibid.* LOEB has been unable to commence an owner-move in eviction due to
9  the Moratoriums. *Id.* at ¶ 10.

### III. STATEMENT OF PROCEDURE.

Plaintiffs filed their complaint against the City and County on March 1, 2022. Ex. C to RJN. The complaint alleges the following five causes of action (the "Claims") against the COUNTY and the CITY: (1) Violation of the 5th Amendment of the U.S. Constitution (42 U.S.C. § 1983); (2) Violation of Article I, Section 19 of the California Constitution (Inverse Condemnation); (3) Violation of Due Process (42 U.S.C. § 1983); (4) Violation of Equal Protection (42 U.S.C. § 1983); (5) Writ of Mandate (Cal. Code of Civil Procedure § 1085) (the "Writ"). Each of the five Claims allege both facial challenges and as-applied challenges to the Moratoriums. *Ibid*. Plaintiffs seek damages, and declaratory and injunctive relief on the first four Claims. *Ibid*. Plaintiffs seek a writ of mandate, injunction, or declaratory relief within the Writ claim under this Court's supplemental jurisdiction to decide questions of state law. *Ibid*.

The COUNTY filed an Answer to the Complaint on March 23, 2022. Plaintiffs and the CITY stipulated to an extension of time for the City to file a response, to April 7, 2022, and the CITY filed an Answer on that date. All parties have consented to the jurisdiction of Magistrate Judge, Hon. Laurel Beeler.

Starting on or about March 15, 2022, Plaintiffs met and conferred with the CITY and COUNTY and prospective intervenors about bifurcating the facial challenges to the Moratoriums from the as-applied ones, and requested they stipulate. Ex. A and ¶ 3 to Brough Dec. Plaintiffs informed Defendants that they sought a court trial of the facial claims (purely legal questions),

and would reserve their right to a jury trial on the individual Plaintiffs' as-applied claims. Ex. A and ¶ 3 to Brough Dec. Plaintiffs further explained that proceeding in this manner would simplify the issues in this case by determining the legal questions at the outset, saving party and court resources, and alleviating some of the prejudice to Plaintiffs. *Ibid*. Plaintiffs also explained that an expedited hearing on these matters could potentially alleviate prejudice to Defendants; if the Court were to find the Moratoriums facial takings, Defendants would have the opportunity to rescind them prior Plaintiffs incurring further damages. *Ibid.* Plaintiffs followed up several times with the CITY and COUNTY and prospective intervenors about their request for a stipulation to this procedure. Neither Defendants nor prospective intervenors have been willing to stipulate, nor have they communicated any cognizable reason for opposing bifurcation, thus necessitating this motion. *Ibid.*

### IV.     ARGUMENT

#### A. Legal Standard.

A court has broad discretion to order bifurcation of issues or claims. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982); F.R.C.P. 42(b) ["For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims . . . . When ordering a separate trial, the court must preserve any federal right to a jury trial"]. Factors supporting of bifurcation include, but are not limited to, (1) when separate trials would be conducive to expedition and economy; (2) furtherance of convenience; (3) simplification of issues for a jury; or (4) avoidance of prejudice. F.R.C.P. 42(b); *Hirst, supra,* 676 F.2d at 1261; *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1167 (7th Cir. 1983) ["The bifurcation of trials has been approved as an effective method of simplifying factual presentation, reducing costs, and saving time."]. A court has discretion to bifurcate issues based upon any one of these factors. For example, "[s]everance of the question of liability from other issues can 'reduce the length of trial, particularly if the severed issue[s] [are] dispositive of the case, and can also improve comprehension of the issues and evidence.'" *In re Paoli R.R. Yard PCB Litig.,* 113 F.3d 444, 452, fn. 5 (3d Cir. 1997); also see, *Arthur Young & Co. v. U. S. Dist. Ct.,* 549 F.2d 686, 697 (9th Cir. 1977) [bifurcation of liability and damage issues appropriate].

Further, bifurcation of "constitutional" issues to the court, from issues of damages to the jury can avoid confusion and prejudice. *Dr. John's, Inc. v. City of Sioux City, IA*, 438 F. Supp. 2d 1005, 1041 (N.D. Iowa 2006); *Mid Gulf, Inc. v. Bishop*, 792 F. Supp. 1205, 1215 (D. Kan. 1992) ["The issue of whether the City's regulations are unreasonable and effect a taking is a question of law for the court . . . . If so, then damages are a question of fact for a jury"]; also see, *Dease v. City of Anaheim*, 826 F. Supp. 336, 339 (C.D. Cal. 1993) [parties agreed to an expedited court trial on the merits of the plaintiff's facial invalidity claim against city ordinance].

### B. Bifurcation of the Facial Claims from the As-Applied Claims Will Expedite the Proceedings, Simplify the Issues, and Avoid Further Prejudice to Plaintiffs.

Plaintiffs seek bifurcation of <u>facial and writ claims</u> against the CITY and COUNTY Moratoriums to be heard on at expedited court trial for declaratory and writ of mandate relief, with their <u>as-applied claims</u> to be heard thereafter by a jury. Facial challenges present pure questions of law, thus requiring a de novo review. *City of New Rochelle v. Town of Mamaroneck*, 111 F.Supp.2d 353, 360 (S.D.N.Y. 2000); *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015) ["A facial challenge is an attack on a statute itself as opposed to a particular application"]. Declaratory relief is appropriately sought on the constitutionality of a local ordinance. *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981); also see, *Duke Power Co., supra,* 438 U.S. at 71, fn. 15 [Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained"].

Further, a declaratory relief action may prevent avoidable damages from being incurred via an early adjudication of the parties' rights. *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 510–11 (5th Cir. 1999), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003); *Duke Power Co., supra,* 438 U.S. at 71, fn. 15; *First Lutheran Church, supra,* 482 U.S. at 321 [local agency has the option of rescinding action upon a finding of an uncompensated taking to avoid further damage claims] *Hensler v. City of Glendale*, 8 Cal.4th 1, 7 (1994), *as modified on denial of reh'g* (Sept. 22, 1994) [same].

Finally, writ of mandate proceedings under Cal. Code of Civ. Procedure section 1085 may be used to review regulations adopted by local government agencies. See, *Vernon Fire Fighters v. City of Vernon* 107 Cal.App.3d 802, 810 (1980). The interpretation of an ordinance is a question of law for the trial judge. *County of Madera v. Superior Court* 39 Cal.App.3d 665, 674 n. 7 (1974); *Beck v. Piatt* 24 Cal.App.3d 611, 615 (1972); *MacLaughlin v. Hull*, 87 F.2d 641, 644 (9th Cir. 1937).

Here, Plaintiffs seek to bifurcate, and set a merits hearing for declaratory relief and writ of mandate for the following facial and Writ claims:

1. The Moratoriums constitute a physical taking of private property without just compensation on their face and thus violate the 5th Amendment of the U.S. Constitution, and Article I, Section 19 of the California Constitution. Ex. C ¶¶ 37-46 to RJN.
2. The Moratoriums violate Plaintiffs' procedural due process rights under the U.S. Constitution on their face. *Id.* at ¶¶ 47-50.

In addition to these facial declaratory relief claims, Plaintiffs seeks to bifurcate their Writ cause of action challenging the face of the Moratoriums, to be heard in conjunction with the aforesaid facial claims. *Id. at* ¶¶ 54-62. Because the facial and writ claims involve questions of law, Plaintiffs do not anticipate submitting evidence in support of these claims outside of (1) foundational facts via declaration and (2) relevant judicially noticeable materials.

Bifurcation of the facial and writ claims in this case, to be heard before the Court in an expedited manner, will simplify the issues, alleviate prejudice to Plaintiff and potentially Defendants, and be conducive to expedition and economy. Plaintiffs and housing providers throughout Alameda County and Oakland have suffered for over two years now under the Moratoriums, and they are desperate for relief. Williams Dec.; Rogers Dec.; Watson-Baker Dec.; Loeb Dec.; Blanchard Dec.; Zhang Dec.; Toomey Dec.; Murrell Dec.; Crane Dec.; Kirk Dec.; Khiewdee Dec.; Jha Dec. A swift adjudication of the facial claims will determine what issues are left in the case and inform Plaintiffs how to move forward in this action most efficiently, thereby alleviating prejudice to Plaintiffs. For example, if the Court finds the Moratoriums facially

*invalid*, the only potential issue remaining is whether damages are available. The Court may determine the Moratoriums are facially invalid on the bases set forth in the supplemental state law Writ claim, thereby avoiding the need to determine the constitutional facial claims altogether. *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991). On the other hand, if the Court determines the Moratoriums facially perpetrate a physical taking, the CITY and COUNTY will benefit from this expedited decision as they have the option of rescinding the Moratoriums to avoid payment of further damages. *First Lutheran Church, supra,* 482 U.S. at 321; *Hensler, supra*, 8 Cal.4th at 7. If the Court finds the Moratoriums are facially *valid*, Plaintiffs can focus their resources and efforts on seeking certification of the Court's determination to the Court of Appeal, and/or proving up their remaining as-applied claims against the Moratoriums, if any. In sum, bifurcation will result in expedition and economy, and alleviate prejudice to Plaintiffs and potentially Defendants. The Court should therefore grant Plaintiffs' motion, and set a briefing schedule and hearing date forthwith.

## V. CONCLUSION.

Pursuant to the above, the Court should grant Plaintiffs' motion to bifurcate and set a hearing on the facial declaratory relief claims and writ in the next 45 days, and establish a corresponding briefing schedule.

Dated: April 26, 2022    ZACKS, FREEDMAN & PATTERSON, PC

    */s/ Andrew M. Zacks*
By:   Andrew M. Zacks
       Emily L. Brough
       Attorneys for Plaintiffs and Petitioners
       JOHN WILLIAMS
       ROBERT VOGEL
       SHEANNA ROGERS
       MICHAEL LOEB
       JACQUELINE WATSON-BAKER
       HOUSING PROVIDERS OF AMERICA