ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS, FREEDMAN & PATTERSON, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

PACIFIC LEGAL FOUNDATION
JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)*
3100 Clarendon Blvd., Suite 610
Arlington, VA 22201
BRIAN T. HODGES (Wash. Bar No. 31976)*
SAM SPIEGELMAN (N.Y. Bar No. 5573100)*
255 South King Street, Suite 800
Seattle, WA 98104
Telephone: (916) 419-7111
JHoughton@pacificlegal.org
BHodges@pacificlegal.org
SSpiegelman@pacificlegal.org

Attorneys for Plaintiffs and Petitioners
JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS,
MICHAEL LOEB, JACQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) non-profit Corporation,<br><br> Plaintiffs and Petitioners,<br><br> vs.<br><br>ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL and DOES 1-10,<br><br> Defendants and Respondents. | Case Number:  3:22-cv-01274<br><br>**PLAINTIFFS' AND PETITIONERS' NOTICE OF RULE 56 MOTION ON BIFURCATED CLAIMS AND RULE 56 MOTION ON BIFURCATED CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 29, 2022<br>Time: 9:30 a.m.<br>Dept: Courtroom B, 15th Flr<br>Judge: Hon. Laurel Beeler<br><br>Complaint filed March 1, 2022 |

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

**Zacks, Freedman & Patterson, PC**
1970 Broadway, Suite 1270
Oakland, CA 94612

# TABLE OF CONTENTS

NOTICE AND MOTION ............................................................................................ 1

I.   INTRODUCTION ............................................................................................. 3

II.  STATEMENT OF ISSUES .............................................................................. 4

III. FRCP RULE 56 LEGAL STANDARD ............................................................ 4

IV.  STATEMENT OF FACTS ................................................................................ 5

    A.   Background: The California Governor's Order and the
        COVID-19 Relief Acts. ........................................................................... 5

    B.   The CITY's Eviction Moratorium .......................................................... 7

    C.   The COUNTY's Eviction Moratorium. ................................................. 8

    D.   The COUNTY and CITY's Rent Relief Assistance Programs ............... 8

    E.   Plaintiffs' Standing. ............................................................................... 9

V.   ARGUMENT ................................................................................................... 10

    A.   Defendants' Eviction Moratoria Violate the
        Fifth Amendment's Takings Clause. ..................................................... 10

        1.   The Law of Physical Takings. ...................................................... 11

        2.   Defendants' Regulations Are a Physical Taking. ........................ 12

        3.   *Yee v. City of Escondido* Does Not Apply. ............................... 17

        4.   Conclusion Re: Takings. .............................................................. 19

    B.   Defendants' Eviction Moratoria Violate State Law. ............................. 19

        1.   Defendants' Eviction Moratoria Are Preempted by the Acts. ...... 20

2.  Defendants' Eviction Moratoria Unlawfully Amend
the CITY's Just Cause for Eviction Ordinance,
Which Was Enacted Via Voter Initiative....................................................22

C.   Defendants' Eviction Moratoria Violate Procedural Due Process................................24

VI.    CONCLUSION..........................................................................................................25

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

4 *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
5    141 S. Ct. 2485 (2021)................................................................. 11, 15, 16

6 *American Financial Services Ass'n v. City of Oakland*, 34 Cal.4th 1239, 1251 (2005)...............20

7 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................................4

8 *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012)................................................12

9 *Armstrong v. United States*, 364 U.S. 40 (1960) ........................................................ 16

10 *Associated Home Builders etc. Inc. v. City of Livermore*, 18 Cal.3d 582 (1976)........................ 22

11 *Auracle Homes, LLC v. Lamont*, 478 F.Supp.3d 199 (D. Conn. 2020)....................................... 17

12 *Big Creek Lumber Co. v. County of Santa Cruz*, 38 Cal.4th 1139 (2006)................................. 20

13 *Birkenfeld v. City of Berkeley,* 17 Cal.3d 129, 140 (1976)........................................... 20

14 *Calderone v. United States*, 799 F2d 254 (6th Cir. 1986)............................................. 5

15 *California Cannabis Coalition v. City of Upland*, 3 Cal.5th 924 (2017)................................... 23

16 *California Water & Telephone Co. v. County of Los Angeles,* 253 Cal.App.2d 16 (1967).......... 22

17 *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021)........................................... 11, 12, 14-18

18 *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)..................................................... 5

19 *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021)...................................................... 3, 24, 25

20 *Contreras Fam. Tr. v. U.S. ex rel. Dep't of Agric. Farm Serv. Agency*,
21    205 F.App'x 580 (9th Cir. 2006)................................................................. 5

22 *Cox Cable San Diego, Inc. v. City of San Diego* 188 Cal. App. 3d 952 (1987)........................ 22

23 *Delbon Radiology v. Turlock Diagnostic Ctr.,* 839 F. Supp. 1388 (E.D. Cal. 1993)................... 5

24 *Edwards v. Aguillard*, 482 U.S. 578 (1987)...................................................... 5

25 *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F.Supp.3d 148 (S.D.N.Y. 2020)............................ 17

26 *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245 (1987)............................................... 14

27 *Farhoud v. Brown,* No. 3:20-CV-2226-JR, 2022 WL 326092 (D. Or. Feb. 3, 2022)................. 17

28

**ZACKS, FREEDMAN & PATTERSON, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

*First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*,
   482 U.S. 304 (1987)................................................................................ 12

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119 (9th Cir. 2014)....................... 4

*Fuentes v. Shevin*, 407 U.S. 67 (1972)............................................................ 24

*Gallo v. District of Columbia*,
   No. 1:21-CV-03298 (TNM), 2022 WL 2208934 (D.D.C. June 21, 2022)............................... 17

*Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010)...................................... 19

*Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022)............................... 16, 17

*Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279 (11th Cir. 2014)............................. 19

*Horne v. Dep't of Agric.*, 576 U.S. 350 (2015).............................................. 12, 14

*In re Murchison*, 349 U.S. 133 (1955)............................................................ 24

*Jevons v. Inslee*, 561 F.Supp.3d 1082 (E.D. Wash. 2022).......................................... 17

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979)......................................... 12, 14

*LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947 (9th Cir. 2021)...................... 25

*Larson v. CCSF*, 192 Cal.App.4th 1263 (2002)..................................................... 19

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993)............................... 19

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982).................. 11, 12, 15, 18

*Lynch v. Household Fin. Corp.*, 405 U.S. 538 (1972).............................................. 11

*Medlin v. Palmer*, 874 F.2d 1085 (5th Cir. 1989)................................................. 5

*Mullane v. Central Hanover Tr. Co.* 339 U.S. 306 (1950).......................................... 24

*Penn. Coal Co. v. Mahon*, 260 U.S. 393 (1922)................................................... 16

*Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64 (1998)................................ 12

*S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F.Supp.3d 853 (S.D. Cal. 2021)............ 17

*S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003)......................... 5

*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643........................ 19

*Sherwin–Williams Co. v. City of Los Angeles*, 4 Cal.4th 893 (1993)........................... 20, 21

*Tesoro Logistic Operations, LLC v. City of Rialto,* 40 Cal. App. 5th 798 (2019).................. 22

*U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 48-49 (1993)............................................. 24

*United States v. Causby*, 328 U.S. 256 (1946).................................................... 14

*United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001)..............................................24

*United States v. Gen. Motors Corp.*, 323 U.S. 373 (1945)...................................... 11, 14

*Water Quality Assn. v. County of Santa Barbara*, 44 Cal.App.4th 732 (1996)........................... 20

*Weinberger v. Romero-Barcelo* 456 US 305 (1982)................................................. 24

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008).................................................. 24

*Yee v. City of Escondido*, 503 U.S. 519 (1992)....................................................... 17, 18

**Statutes**

Cal. Civ. Code § 1941 ................................................................................ 16

Cal. Civ. Code § 1946.2 ......................................................................... 13, 21

Cal. Civ. Code § 1948 ............................................................................. 13

Cal. Civ. Code § 654 .............................................................................. 14

Cal. Civ. Code § 685 .............................................................................. 14

Cal. Civ. Code § 801 .............................................................................. 14

Cal. Civ. Code § 802 .............................................................................. 14

Cal. Civ. Pro. Code § 1159 ........................................................................ 13

Cal. Civ. Pro. Code § 1161 ......................................................................... 6

Cal. Civ. Pro. Code § 1161.3 ...................................................................... .13

Cal. Civ. Pro. Code § 1179.01.5 .................................................................... 6

Cal. Civ. Pro. Code § 1179.02 ...................................................................... 6

Cal. Civ. Pro. Code § 1179.03 ...................................................................... 6

Cal. Civ. Pro. Code § 1179.03.5 ................................................................... 21

Cal. Civ. Pro. Code § 1179.05 ................................................................. 21, 22

Cal. Civ. Pro. Code § 1179.08 ...................................................................... 6

Cal. Civ. Pro. Code § 1179.10 ...................................................................... 6

Cal. Civ. Pro. Code § 1179.11...................................................................................... 6, 20

Cal. Gov. Code 8558....................................................................................................... 7

Cal. Gov. Code 8630....................................................................................................... 7

FRCP 56.......................................................................................................................... 4

## Other Authorities

Alameda County Code of Ordinance § 6.120.030.................................................... 8, 23

Alameda County Code of Ordinance § 6.120.040......................................................... 25

Cal. Elec. Code § 9217............................................................................................. 22, 23

Oakland Municipal Code § 8.22.300.................................................................. 7, 22, 23

Oakland Municipal Code § 8.22.360............................................................................ 23

Oakland Municipal Code § 8.22.360(F)....................................................................... 23

Oakland Municipal Code § 8.22.360.A.6..................................................................... 13

## Constitutional Provisions

Cal. Const. Art. II § 10............................................................................................. 22, 23

Cal. Const. Art. XI § 7.................................................................................................. 20

1

**NOTICE AND MOTION**

2     Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS,

3   MICHAEL LOEB, JACQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF

4   AMERICA (collectively "Plaintiffs") will and hereby do move the Court to grant summary

5   adjudication on certain facial claims against defendants, pursuant to Federal Rules of Civil Procedure

6   ("FRCP") Rule 56, and the Court's order granting Plaintiff's Motion for Bifurcation of Claims on June

7   2, 2022 and related scheduling order.  This motion will be heard at 9:30 a.m. on September 29, 2022,

8   by the Honorable Laurel Beeler in the Northern District of California, San Francisco Courthouse,

9   Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

10     This motion is made on the grounds that the Defendants' eviction regulations are an

11   unconstitutional physical taking and contrary to the Fifth Amendment; (2) violate procedural due

12   process under the Fourteenth Amendment; (3) are preempted by California's Tenant Relief and Rental

13   Housing Relief Acts; and (4) violate California Election Code and Constitution.

14     This motion is made pursuant to Rule 56 of the FRCP, and is based upon the Memorandum of

15   Points and Authorities set forth below and the Request for Judicial Notice filed concurrently herewith.

16   Plaintiffs seek a declaration, injunction and/or writ, and a judgment in their favor as a matter of law on

17   all claims alleged herein.

18

19

20   Dated:  July 18, 2022          ZACKS, FREEDMAN & PATTERSON, PC

21                 _/s/  Andrew M. Zacks_____
22                 ANDREW M. ZACKS (SBN 147794)
                 EMILY L. BROUGH (SBN 284943)
23                 ZACKS, FREEDMAN & PATTERSON, PC
                 1970 Broadway, Suite 1270
24                 Oakland, CA 94612
                 Tel: (510) 469-0555
25                 az@zfplaw.com
                 emily@zpflaw.com
26

27   //

28   //

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

PACIFIC LEGAL FOUNDATION


 /s/ *Jonathan M. Houghton*
PACIFIC LEGAL FOUNDATION
JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)*
3100 Clarendon Blvd., Suite 610
Arlington, VA 22201
BRIAN T. HODGES (Wash. Bar No. 31976)*
SAM SPIEGELMAN (N.Y. Bar No. 5573100)*
255 South King Street, Suite 800
Seattle, WA 98104
Telephone: (916) 419-7111
JHoughton@pacificlegal.org
BHodges@pacificlegal.org
SSpiegelman@pacificlegal.org


* Pro hac vice

Attorneys for Plaintiffs and Petitioners
JOHN WILLIAMS
ROBERT VOGEL
SHEANNA ROGERS
MICHAEL LOEB
JACQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1    **I.      INTRODUCTION**

2        This case involves a challenge to Defendants' blanket eviction moratoria, which have been

3    imposed on housing providers throughout Alameda County and the City of Oakland for almost two

4    and a half years.  Defendants' moratoria outlaw virtually all evictions in Alameda County and the City

5    of Oakland by providing renters—or any occupants of rental properties—an "absolute defense" to

6    almost all unlawful detainer proceedings.  Renters and other occupants need not show any Covid-19

7    related financial distress and need not participate in any rent relief program to avoid eviction for

8    nonpayment under the moratoria.  They may destroy and commit nuisances on housing providers'

9    properties, may conduct criminal acts on properties, and the moratoria protect them from eviction.

10   While all other substantial Covid-19 restrictions have been lifted, the Bay Area enjoys a high rate of

11   vaccination and businesses are open, Defendants continue to arbitrarily impose the moratoria on its

12   housing providers, with no relief in sight.

13       The moratoria are illegal regulations that must be struck down under federal constitutional

14   and state law.  First, Defendants' eviction regulations are an unconstitutional physical taking and

15   contrary to the Fifth Amendment.  The moratoria vest the right to possess and exclude in Defendants,

16   who then exercised that property right to grant possession to all occupants of real property.  It does not

17   matter whether the occupant is a tenant or an illegal squatter. Nor does it matter whether that individual

18   refuses to pay rent, destroys the premises, or engages in criminal activity.  Pursuant to the Defendants'

19   regulations, all have the right to possess for an indefinite period of time.  Housing providers have been

20   left to bear the full cost of this governmental choice.  These rental owners cannot possess what they

21   own, cannot exclude those that have no right to be there, and are left with the burden of paying a

22   mortgage and maintaining a premises for the benefit of those that can violate the lease and the law

23   without fear of eviction.  Accordingly, the regulations are a physical taking tantamount to an easement

24   or tenancy-in-common.

25       Second, the moratoria violate procedural due process under the Fourteenth Amendment.  The

26   eviction regulations' "absolute defense" to unlawful detainer proceedings deprives housing providers

27   of hearings in almost all situations, thereby unlawfully permitting renters to be "judge[s] in [their] own

28   case." *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021).

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   Third, the moratoria violate state law.  Oakland's Just Cause for Eviction regulations were
2   enacted by the will of Oakland's voters, and the moratoria unlawfully amend that voter initiative in
3   violation of the California Election Code and Constitution.  Finally, the moratoria conflict with, and
4   thus are preempted by, the California Tenant Relief Act and Rental Housing Recovery Act.  Those
5   Acts protect renters from eviction for nonpayment *if* renters participate in the state's rent relief program
6   *and* qualify for relief under that program.  In contrast, the moratoria contain no such requirements,
7   allowing even the wealthiest of renters to avoid eviction for non-payment, or for almost any reason at
8   all.

9   In sum, because the moratoria are facially invalid, violate due process, and are unconstitutional
10   physical takings as a matter of law, the Court should grant this motion.

11   **II.      STATEMENT OF ISSUES**

12   The issues presented by this motion are (1) whether the moratoria are an unconstitutional
13   physical taking and contrary to the Fifth Amendment; (2) whether the moratoria violate procedural
14   due process under the Fourteenth Amendment; (3) whether the moratoria are preempted by
15   California's Tenant Relief and Rental Housing Relief Acts; and (4) whether the moratoria violate
16   California Election Code.  As is demonstrated below, the moratoria are facially invalid laws that have
17   unlawfully given the right of possession of housing providers' properties to those properties'
18   occupants.  The Court should therefore grant this motion.

19   **III.     FRCP RULE 56 LEGAL STANDARD**

20   Under FRCP 56, a party may seek partial summary judgment of a claim or defense when "there
21   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
22   FRCP 56(a).  Summary judgment cannot be granted when a dispute exists as to any "material fact."
23   FRCP 56(a).  A fact is "material" if it might affect the outcome of the suit under the governing
24   substantive law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ["Only disputes over facts
25   that might affect the outcome of the suit under the governing law will properly preclude the entry of
26   summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."]; *Fresno
27   Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014).  "A party opposing
28

---

summary judgment must direct [the court's] attention to specific, triable facts." *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Relatedly, summary judgment is appropriate when there is a dispositive "pure" question of law, such as the interpretation of a statute or regulation, or a facial attack on municipal action. *See Edwards v. Aguillard*, 482 U.S. 578, 594 (1987); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989); *Delbon Radiology v. Turlock Diagnostic Ctr.,* 839 F. Supp. 1388, 1391 (E.D. Cal. 1993). A plaintiff moving for summary judgment on her own claim has the initial burden of proof on the elements of that claims, and ultimately that showing "*must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*" *Calderone v. United States* 799 F2d 254, 259 (6th Cir. 1986) (emph. in orig., inter. quot. omit.). If the moving party establishes each element of her claim, she need not present evidence negating the opposing party's defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ["[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."] (emph. in orig.); *Contreras Fam. Tr. v. U.S. ex rel. Dep't of Agric. Farm Serv. Agency*, 205 F.App'x 580, 582 (9th Cir. 2006).

## IV.    STATEMENT OF FACTS

### A.    Background: The California Governor's Order and the COVID-19 Relief Acts.

In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act (ESA), Gov. Code sec. 8550, et seq. On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict for nonpayment of rent due to the Covid-19 crisis. That provision expired on September 30, 2020.[1]

Prior to the expiration of that provision, the California Legislature enacted the COVID-19 Tenant Relief Act of 2020 (the "Tenant Relief Act"), Civ. Pro. Code section 1179 et seq., effective August 31, 2020. The Tenant Relief Act in part amended the State's unlawful detainer (UD) statutes,

---

[1]  Executive Order N-71-20.

ZACKS, **FREEDMAN & PATTERSON**, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Civ. Pro. Code section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ." Ex. A at 4 to Request for Judicial Notice in Support of Plaintiffs' Rule 56 Motion on Bifurcated Claims ("RJN") (emphasis added). Among other things, the Tenant Relief Act provided statewide eviction protections during a specified covered time period for renters who could not pay their rent for Covid-19-related reasons.  Cal. Civ. Pro. Code §§ 1179.01.5, 1179.02, 1179.03.  The Tenant Relief Act also directed state agencies to engage about potential strategies for relief for renters and housing providers who suffered Covid-19-related financial hardship.  Ex. A at 45 to RJN.

Importantly, the Tenant Relief Act's temporary moratorium on residential evictions was narrow, and *specifically* limited to those based upon inability to pay rent for Covid-19-related financial distress—and required proof of that distress to avoid being evicted for nonpayment.  The Tenant Relief Act still permitted evictions for fault, and no-fault "just cause" as defined under state law.  Cal. Civ. Pro. Code § 1179.03.5(a)(3).  The Covid-19-related nonpayment eviction protections were later extended to September 30, 2021 and protected affected renters from eviction during this period so long as they complied with the Covid-19-related financial distress requirements.  Ex. B to RJN.

The Legislature also enacted the COVID-19 Rental Housing Recovery Act, Civ. Pro. Code section 1179.08 et seq., effective June 28, 2021.  *Id.* at 26.  The Rental Housing Recovery Act clarified the State's rental assistance program, and protected Covid-19 affected renters who made active efforts to comply with that program.  Cal. Civ. Pro. Code §§ 1179.10, 1179.11.  Starting October 1, 2021, and through June 30, 2022, for any Covid-19-related hardship rental debt that came due between those dates, a nonpaying renter is required to show that they completed an application for rental assistance through the State program.  Cal. Civ. Pro. Code §§ 1179.10(a)(2)(C), 1179.11(a).  If the renter fails to participate in the program, the housing provider can move forward with an UD action for nonpayment of rent.  Cal. Civ. Pro. Code §§ 1179.11(a)(2), (c).  A housing provider may also move forward with a UD action if the rental assistance application was denied, or if a determination is not pending on an application that was filed prior to April 1, 2022.  Cal. Code of Civ. Proc. § 1179.11(a)(1), (c), also see, § 1179.03(c)(7).

1   In other words, renters must both prove they have Covid-19 related financial distress, *and*

2   successfully apply for rental assistance (i.e., prove that they qualify) to avoid eviction for nonpayment

3   under California law.  If a nonpaying renter cannot show they have Covid-19 related financial distress,

4   or if they refuse to apply for, or do not qualify for rental assistance, a housing provider—who is not

5   receiving rents—may move forward with eviction.  Many of the Acts' protections expired on June 30,

6   2022, but compliant renters still receive the benefit of that law for any missed payments through that

7   expiration.

8   **B.   The CITY's Eviction Moratorium.**

9   On March 9, 2020, defendant City of Oakland ("CITY") declared a local state of emergency

10   due to Covid-19.  The CITY's local emergency was ratified on March 12, 2020, via Resolution No.

11   88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies

12   under specified circumstances.  Cal. Gov. Code §§ 8558(c), 8630; Ex. C to RJN.  The ESA also

13   requires a municipality to terminate the local emergency ". . . at the earliest possible date that

14   conditions warrant."  Cal. Gov. Code § 8630(d).

15   After ratifying the local emergency, on March 27, 2020, the CITY passed its eviction

16   moratorium, Ordinance No. 13589.  Ex. D to RJN.  Amending the CITY's voter-enacted Just Cause

17   for Eviction Ordinance, Oakland Municipal Code section 8.22.300 et seq., that moratorium not only

18   prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all*

19   *other evictions*, with few exceptions:

20   **Residential Eviction Moratorium.** Except when the renter poses an imminent threat
21   to the health or safety of other occupants of the property, and such threat is stated in
    the notice as the grounds for the eviction, it shall be an absolute defense to any
22   unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections
23   (1) – (10) [just cause provisions] that the notice was served or expired, or that the
    complaint was filed or served, during the Local Emergency.

24   Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended."

25   Subsequently, the moratorium was extended until "the Local Emergency declared on March 9, 2020

26   has been terminated by the City Council, or August 31, 2020, whichever comes first."  *See* Ex. E Sec.

27   3 to RJN.  However, in July 2020, the extension on the eviction moratorium was again amended to

28   *only* expire when the local Emergency had been terminated by the Oakland City Council

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1  ("COUNCIL").  Ex. E Sec. 3 to RJN.  Over two years later, the local emergency has no stated

2  expiration date, and the COUNCIL's position is that it has not expired.  The blanket moratorium on

3  evictions therefore remains in effect.

4      **C.  <u>The COUNTY's Eviction Moratorium.</u>**

5      Defendant Alameda County ("COUNTY") ratified its local emergency on March 10, 2020.

6  Ex. F to RJN.  On April 21, 2020, defendant Alameda County Board of Supervisors ("BOARD")

7  adopted Urgency Ordinance No. O-2020-23, which, like the CITY's moratorium, purports to prohibit

8  most evictions for any reason—that is, even when there is no Covid-related financial distress.  Ex. G

9  to RJN.  The language in the urgency ordinance was then made a permanent part of the COUNTY's

10  Code of Ordinances on June 23, 2020.  Ex. H to RJN.  The COUNTY's moratorium applies to "all

11  evictions from residential units in the unincorporated and incorporated areas of the county" subject to

12  very few exceptions.  *Ibid.* (ACCO § 6.120.030).  These exceptions are (1) Ellis Act withdrawals; (2)

13  government orders requiring the unit to be vacated; or (3) "the resident poses an imminent threat to

14  health or safety."  *Ibid.* (ACCO § 6.120.030(F)).  Like the CITY's moratorium, the COUNTY'S

15  moratorium provides that it is an "absolute defense" to an unlawful detainer action brought during its

16  term. *Ibid.* (ACCO § 6.120.030(D)).

17      The moratorium expires sixty days "after the expiration of the local health emergency."  *Ibid.*

18  (ACCO § 6.120.030).  Per the ratification of the local emergency, the local emergency "shall remain

19  in effect until the [BOARD] determines that the emergency no longer exists."  Ex. G to RJN.   Over

20  two years later, the BOARD's position is that it has not expired, and the blanket moratorium on

21  evictions therefore remains in effect.

22      **D.  <u>The COUNTY and CITY's Rent Relief Assistance Programs.</u>**

23      State law requires local governments to develop mechanisms by which housing providers and

24  renters may file applications for, and receive if eligible, Covid-related rent relief. The COUNTY

25  operates a rent relief assistance program called "Housing Secure."[2]  The Housing Secure website

26  currently states: "NOTICE: . . . We have received more requests for funds than we have currently

27

28

---

[2] https://www.ac-housingsecure.org/?locale=en

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

available" and is not accepting new applications. The CITY also operates a rent relief assistance program called "Oakland's Emergency Rental Assistance."[3]   The Oakland's Emergency Rental Assistance website also states that it is not accepting new applications.

Notwithstanding the Tenant Relief Act and Rental Housing Recovery Act's (collectively, the "Acts") requirements that renters show proof of participation in, and qualification under, the rent relief program, **renters in the CITY and COUNTY need not to participate in *any* rent relief program to avoid eviction for nonpayment under Defendants' eviction moratoria** (collectively, the "Moratoria"); the Moratoria prohibit evictions even for those renters who refuse to cooperate with a housing provider's request that they seek relief under these programs.

### E.  Plaintiffs' Standing.

Plaintiff John Williams is the owner of a duplex rental home in the CITY and COUNTY.  Exs. I ¶ 32 & N to RJN.  The renter of Williams' property is not paying rent, has not paid rent since March of 2020, and refuses to apply for rent relief through the rent relief program.  *Ibid.*  Williams is concerned he will lose the property, but is unable to commence a nonpayment eviction against his renter a s a direct result of the Moratoria.  *Ibid.*  Plaintiff Robert Vogel is the owner of a small single-family home rental in the COUNTY.  Ex. I ¶ 33 to RJN.  Robert Vogel is semi-retired, and a disabled paraplegic. The renter of Vogel's property is not paying rent, and has not paid rent since September 2021.  *Id.* ¶ 33.  Vogel is deeply concerned he will lose the property as the result of his inability to meet the financial obligations of ownership, however, is unable to commence a nonpayment eviction against his renter as a direct result of the COUNTY's moratorium.  *Ibid.*

Plaintiff Sheanna Rogers owns a home in the COUNTY, which has a rental unit on the lower floor, and was at one time was a small, three-bedroom, independent living facility.  Exs. I ¶ 34 & O to RJN.  The renter at Rogers' property has not paid rent for over two years, will not apply for rental assistance, and harassed Rogers' clients in the living facility so much that she was forced to close her business.  *Ibid.*  However, Rogers is unable to commence a nonpayment eviction against her renter as a direct result of the COUNTY's moratorium.  *Ibid.*  Plaintiff Jacqueline Watson-Baker owns a small

---

[3] https://www.oaklandca.gov/departments/department-of-housing-and-community-development

1   duplex rental home in the CITY and COUNTY, which was purchased by her mother in or about the

2   1950's.  Exs. I ¶ 35 & P to RJN.  Watson-Baker's mother, who moved from to California from the

3   Southern United States, was one of the first African Americans to own property in her East-Oakland

4   neighborhood.  *Ibid.*  Watson-Baker's renter has refused to pay rent, has destroyed and devalued her

5   property, and has made racist statements to her.  *Ibid.*  However, Watson-Baker is unable to commence

6   an eviction against her renter as a direct result of the Moratoria.  *Ibid.*

7        Plaintiff Michael Loeb owns a rental unit in a building in the CITY and COUNTY.  Exs. I ¶

8   36 & Q to RJN.   Loeb is a 74-year-old widower who wishes to occupy the rental unit as his primary

9   residence.  *Ibid.*  Loeb has attempted to voluntarily negotiate an owner move in with his renter.  *Ibid.*

10  However, the renter has demanded that Loeb pay him more than $160,000 to vacate, telling Loeb that

11  "it's nothing personal, just business."  *Ibid.*  Loeb is unable to commence an owner move-in eviction

12  against his renter as a direct result of the Moratoria.  *Ibid.*  Plaintiff Housing Providers of America

13  ("HPOA") is a § 501(c)(4) nonprofit corporation, fighting to protect the legal rights of housing

14  providers in the CITY and the COUNTY.  *Id.* ¶ 34.  All of HPOA's members are housing providers in

15  either the CITY and/or COUNTY; all of HPOA's members have renters at their properties who are

16  taking advantage of the Moratoria, including but not limited to, refusing to pay rent for non-Covid-19

17  related reasons, refusing to relinquish possession, and creating nuisances and damage to HPOA's

18  members' properties.  *Ibid.*  HPOA's members have been unable to collect rent for months on end with

19  no financial relief provided by the CITY and COUNTY, and Moratoria's complete defense.  *Ibid.*

20  **V.     ARGUMENT**

21    **A.  <u>Defendants' Eviction Moratoria Violate the Fifth Amendment's Takings Clause.</u>**

22        Defendants' regulations grant possession to all occupants of rental properties.  Being an

23  occupant is the only criteria and there is no distinction between lawful tenants, those that have violated

24  the material terms of their leases, and illegal squatters (all referred to collectively as "occupant(s)").

25  How the occupant took possession and the facts of what happened afterwards are irrelevant.  Occupants

26  can decline to pay rent, destroy the property, harass neighbors, engage in criminal conduct, or take

27  unauthorized possession in the dead of night, all without fear of eviction.  The Defendants' grant of

28  possession is indefinite.

*PLAINTIFFS' AND PETITIONERS' NOTICE OF MOTION AND MOTION FOR BIFURCATION – CASE NO. 3-22-CV-01274*
-10-

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

In contrast, rental property owners cannot possess what they own and cannot exclude those with no right to possession. Yet housing providers must still pay their mortgages, supply utilities, and maintain the premises, for a property that they cannot possess and for occupants that cannot be evicted. Accordingly, the Defendants' regulations vest the right to possess and exclude in Defendants and are no different than had the government physically invaded and occupied the property itself. The regulations are a physical taking that are the equivalent of an easement or a tenancy-in-common and contrary to the Fifth Amendment. As the Supreme Court stated with respect to the CDC-enacted moratorium:

> The moratorium has put the applicants, along with millions of landlords across the country, at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery. Despite the [government's] determination that landlords should bear a significant financial cost of the pandemic, many landlords have modest means. And preventing them from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude.

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam) citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982).

## 1. The Law of Physical Takings.

Property ownership is grounded in certain inherent and well-established rights: the right to possess what you own, the right to use it for your benefit, and the right to dispose of it as you wish. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945). These property rights have always been given vigilant protection within American jurisprudence. As the Supreme Court has noted, "the protection of private property is indispensable to the promotion of individual freedom" and "empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021); *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 544, 552 (1972) (property rights are "an essential pre-condition to the realization of other basic civil rights and liberties which the [Fourteenth] Amendment was intended to guarantee… [A] fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other").

Regulations that destroy these fundamental property rights fall within the ambit of "regulatory takings," including those that result in a physical taking. *Cedar Point Nursery*, 141 S. Ct. at 2072

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

("[g]overnment action that physically appropriates property is no less a physical taking because it arises from a regulation").  They are contrary to the Fifth Amendment and actionable against local governments via the Fourteenth Amendment.  *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163–64 (1998).  Physical takings of an owner's right to possess and to exclude have violated "one of the most treasured rights of property ownership" and "one of the most essential sticks in the bundle of rights that are commonly characterized as property."  *Cedar Point Nursery*, 141 S. Ct. at 2072. The impact is such that "[]the government does not simply take a single strand from the bundle of property rights: it chops through the bundle, taking a slice of every strand."  *Loretto*, 458 U.S. at 435.  "It effectively destroys *each* of these rights [to possess, exclude and dispose of]."  *Ibid.*  The Supreme Court has characterized these takings as "perhaps the most serious form of invasion of an owner's property interests." *Ibid.*

Accordingly, physical invasions are "per se" or "categorical" takings.  *Cedar Point Nursery*, 141 S. Ct. at 2072 ("whenever a regulation results in a physical appropriation of property, a *per se* taking has occurred, and *Penn Central* has no place"); *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015); *Loretto*, 458 U.S. at 434–435; *Kaiser Aetna v. United States*, 444 U.S. 164, 179–80 (1979). Liability is based upon the regulatory act itself regardless of the reason for that act or the underlying facts and circumstances.  "[G]overnment-authorized invasions of property—whether by plane, boat, cable, or beachcomber—are physical takings requiring just compensation." *Cedar Point Nursery*, 141 S. Ct. at 2074.  A physical taking can be either permanent or temporary in nature.  *See Cedar Point Nursery*, 141 S. Ct. at 2074; *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 33 (2012); *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty.*, 482 U.S. 304, 318 (1987) That the interloper is a third-party, as opposed to the government itself, is irrelevant. As *Loretto* explained, a physical taking is "without regard to whether the State, or instead a party authorized by the State, is the occupant." 458 U.S. at 432, n.9; *Cedar Point Nursery*, 141 S. Ct. at 2072.

## 2.   Defendants' Regulations Are a Physical Taking.

With respect to rental properties, the regulations vest in Defendants the right to possess and exclude. It is now the Defendants that decide who stays and who goes. And armed with that property right, the Defendants have granted possession to all occupants of rental properties for the duration of

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

the Local Emergency. *See* Ex. I ¶¶ 23–27 to RJN; Ex. E to RJN (the Local Emergency is an absolute defense to unlawful detainer actions except when "the tenant poses an imminent threat to the health and safety of other occupants on the property"); Ex. H to RJN (Section 6.120.030 [until sixty days after the expiration of the Local Emergency, the Local Emergency is an absolute defense to unlawful detainer actions except in the case of an imminent threat to health or safety, the invocation of the Ellis Act, or necessary compliance with a government agency or court order]). The Defendants' exercise of this property right authorizes possession in all occupants regardless of whether residency was gained by virtue of a lease, or as an illegal squatter, or anything in between. *Cf.*, Exs. E & H to RJN; Cal. Civ. Proc. Code § 1159, et seq. (unlawful detainer actions with respect to illegal squatters); Cal. Civ. Code § 1948 (voiding the attornment of a tenancy to a stranger without the owner's consent).

Furthermore, the Defendants permit occupants to stay in residence irrespective of any material breach in the lease, the failure to pay rent, the destruction of the property, the creation of a nuisance, the harassment of neighbors, criminal activity, or other such mal acts. *Cf.*, Exs. E & H to RJN; Cal. Civ. Code § 1946.2(b)(1), et seq. (unlawful detainer for the above referenced offenses and others); Cal. Civ. Proc. Code § 1161.3 (termination of the lease for certain criminal offenses); Oakland Municipal Code Section 8.22.360.A.6 (eviction for nuisance, disorderly conduct, causing substantial damage, destroying the peace, illegal conduct and others).

Individual circumstances are likewise irrelevant. An occupant that refuses to pay rent but who also is in perfect health, with millions of dollars in the bank and multiple other residences at which to live, is still vested with the right to possess the private property of another. *Ibid.* The Defendants' grant of physical possession is on-going and indefinite. It applies regardless of when the occupant took residency. The regulations also have no expiration date and will continue at the Defendants' sole determination for as long as the Defendants decide to maintain the Local Emergency. *Ibid.*; Ex. I ¶¶ 25, 27; Ex. J ¶ 27 to RJN; Ex. K ¶ 25 to RJN. It could be deemed to end tomorrow, or never.

In sum, the Defendants are vested with the right of possession and fully control who may possess rental property and who may be excluded from it. On the other hand, the rental property owner has no control and cannot possess his or her own property. The occupant can continue in hostile possession against the property owner's will interminably. For the purposes of Defendants'

1    regulations, the rental property has been taken and occupants are now "interlopers with a government

2    license." *See F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252–53 (1987).

3        This physical taking of rental owners' right to possess and exclude is the equivalent of the

4    taking of a tenancy-in-common interest or an easement. *See* Cal. Civ. Code § 685 (interest-in-

5    common, defined); §§ 801–802 (easements, attached and unattached, defined); *Cedar Point Nursery*,

6    141 S. Ct. at 2073 ("given the central importance to property ownership of the right to exclude, it

7    comes as little surprise that the Court has long treated government-authorized physical invasions as

8    takings requiring just compensation. The Court has often described the property interest taken as a

9    servitude or an easement"); *Kaiser Aetna*, 444 U.S. at 180 (finding that a navigational servitude was a

10   physical taking); *United States v. Causby*, 328 U.S. 256, 267 (1946) (frequent, low-level flights were

11   a physical taking and "a servitude has been imposed upon the land").

12       But the exact classification of state property right is less important than the result. As *Cedar*

13   *Point* explained, the government "cannot absolve itself of takings liability by appropriating the

14   [owner's] right to exclude in a form that is a slight mismatch from state easement law. Under the

15   Constitution, property rights cannot be so easily manipulated." *Cedar Point Nursery*, 141 S. Ct at

16   2076. Thus, "we never paused to consider whether the physical invasions at issue vested the intruders

17   with formal easements according to the nuances of state property law (nor do we see how they could

18   have). Instead, we followed our traditional rule: Because the government appropriated a right to

19   invade, compensation was due. That same test governs here." *Ibid.*

20       However one characterizes it, the Defendants' rights with respect to rental property follow the

21   California Civil Code, which states, "[t]he ownership of a thing is the right of one or more persons to

22   possess and use it to the exclusion of others. In this Code, the thing of which there may be ownership

23   is called property." *See* Cal. Civ. Code § 654; *see also Horne,* 576 U.S. at 362 ("The Government's

24   actual taking of possession and control of the reserve raisins gives rise to a taking as clearly as if the

25   Government held full title and ownership, as it essentially does.") (cleaned up); *Gen. Motors Corp.*,

26   323 U.S. at 378 ("When the sovereign exercises the power of eminent domain it substitutes itself in

27   relation to the physical thing in question in place of him who formerly bore the relation to that thing,

28   which we denominate ownership.").

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

More severe than the regulation in *Cedar Point*, which only permitted others to "take access," *Cedar Point Nursery,* 141 S. Ct. at 2074, the regulation here grants full and complete possession to a third-party and forcibly excludes the owners of the real property itself.  In fact, the impact upon housing providers is not far removed from the physical taking in *Loretto*, where the Court found that the rights to possess, use, and dispose of were effectively destroyed.  *Loretto*, 458 U.S. at 435–36.  In *Loretto*, "the owner has no right to possess the occupied space himself, and also has no power to exclude the occupier from possession and use of the space." *Loretto*, 458 U.S. at 435. The Defendants' regulations achieve a similar result.

Second, as *Loretto* discussed, "the permanent physical occupation of property forever denies the owner any power to control the use of the property; he not only cannot exclude others but can make no nonpossessory use of the property.  Although deprivation of the right to use and obtain a profit from property is not, in every case, independently sufficient to establish a taking, it is clearly relevant." *Id.* at 436.  Here, owners cannot freely use their property because they are beholden to occupants that cannot be forced to leave.  The prospects for profitable use are worse, as housing providers are subject to the liability and financial stress that accrue from occupants that can refuse to pay rent and destroy the premises without fear of exclusion.  *See Alabama Ass'n of Realtors*, 141 S. Ct. at 2489 ("the moratorium has put the applicants, along with millions of landlords across the country, at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery").

Lastly, with respect to the right to dispose of the property, *Loretto* said "even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space by a stranger will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property." *Loretto*, 458 U.S. at 436.  In this case, if owners are precluded indefinitely from evicting occupants that violate the lease or the law, no reasonable purchaser would want to buy a rental property at any price. Therefore, because the impact of the Defendants' regulations closely follows the destruction of property rights found in *Loretto*, it heavily weighs in favor of finding a physical taking.

That these regulations have arisen from the Covid-19 pandemic does not lead to a different result.  There is no dispute that the pandemic was, and is, a substantial problem to public health and

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   welfare.  But the constitutional issue is not whether the Defendants had the police power authority to

2   act but who must bear the cost of those actions.  *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922)

3   ("[w]e are in danger of forgetting that a strong public desire to improve the public condition is not

4   enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the

5   change").

6        The Defendants' regulations reflect a governmental choice to favor occupants over owners.

7   But these disfavored rental property owners are left to bear the full cost of that choice alone.  The

8   taking of the right to possess and exclude are only a part.  The property owner must also pay the

9   mortgage and utilities and maintain the premises, even if the occupants decline to pay rent or cause

10  damage to the property.  And ironically, while a tenant that is not paying rent cannot be evicted, the

11  tenant can sue the property owner for failing to maintain the very unit that the tenant refuses to pay

12  rent on and refuses to vacate.  *See* Cal. Civ. Code § 1941, et seq. (building codes for occupancy, fitness,

13  repairs).  Protecting property owners from shouldering the burden of public benefits is exactly what

14  the Fifth Amendment was designed to protect against.  *Armstrong v. United States*, 364 U.S. 40, 49

15  (1960) (the Takings Clause "was designed to bar Government from forcing some people alone to bear

16  public burdens which, in all fairness and justice, should be borne by the public as a whole").

17       The only federal circuit court to address a physical takings claim resulting from an eviction

18  moratorium was the Eighth Circuit in in *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir.

19  2022).  Similar to the Defendants' regulation, the Minnesota moratorium had no end date and

20  precluded eviction absent a serious endangerment to safety.  *Id.* at 724.  In denying the government's

21  motion to dismiss, the Eighth Circuit held that the owners had sufficiently pled an unconstitutional

22  physical taking:

23       Here, the EOs forbade the nonrenewal and termination of ongoing leases, even after
24       they had been materially violated, unless the tenants seriously endangered the safety
         of others or damaged property significantly. According to Heights' complaint, the
25       EOs "turned every lease in Minnesota into an indefinite lease, terminable only at the
         option of the tenant." Heights has sufficiently alleged that the [Government]
26       Defendants deprived Heights of its right to exclude existing tenants without
         compensation. The well-pleaded allegations are sufficient to give rise to a plausible
27       *per se* physical takings claim under Cedar Point Nursery.

28

*PLAINTIFFS' AND PETITIONERS' NOTICE OF MOTION AND MOTION FOR BIFURCATION – CASE NO. 3-22-CV-01274*

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

*Heights Apartments, LLC*, 30 F.4th at 733.

In light of the above, the Defendants' regulations are a physical taking, facially unconstitutional and contrary to the Fifth Amendment.  See *Alabama Association of Realtors* 141 S. Ct. at 2489 ("preventing [property owners] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude").

### 3. *Yee v. City of Escondido* Does Not Apply.

District Courts confronting eviction moratoriums have largely ruled in the government's favor based upon the flawed theory that because tenants were voluntarily given possession at the lease signing, nothing that transpired thereafter could be a physical taking. Some also improperly characterized the various regulations as merely an adjustment of the landlord-tenant relationship. In reaching these decisions, the District Courts all relied upon the Supreme Court's decision in *Yee v. City of Escondido*, 503 U.S. 519 (1992); *see Gallo v. District of Columbia*, No. 1:21-CV-03298 (TNM), 2022 WL 2208934, at *8 (D.D.C. June 21, 2022); *Farhoud v. Brown,* No. 3:20-CV-2226-JR, 2022 WL 326092, at *10 (D. Or. Feb. 3, 2022); *Jevons v. Inslee*, 561 F.Supp.3d 1082, 1106 (E.D. Wash. 2022); *S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F.Supp.3d 853, 865 (S.D. Cal. 2021); *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F.Supp.3d 148, 163 (S.D.N.Y. 2020); *Auracle Homes, LLC v. Lamont*, 478 F.Supp.3d 199, 220 (D. Conn. 2020).

However, the reliance on *Yee* was in error.  There are several different types of regulatory takings, each with their own rules and legal standards.  At issue in *Yee* was a rent control regulation that capped the rent for mobile homes.  It is a far different species of regulatory taking as compared to the physical taking of the right to possess and exclude.  In such a context, *Yee* does not apply.  As the Eighth Circuit held:

> *Cedar Point Nursery* controls here and *Yee*, which the [Government] Defendants rely on, is distinguishable. The rent controls in *Yee* limited the amount of rent that could be charged and neither deprived landlords of their right to evict nor compelled landlords to continue leasing the property past the leases' termination. The landlords in *Yee* sought to exclude future or incoming tenants rather than existing tenants. Here, the EOs forbade the nonrenewal and termination of ongoing leases, even after they had been materially violated, unless the tenants seriously endangered the safety of others or damaged property significantly.

*Heights Apartments,* 30 F.4th at 733.

In stark contrast to this case, *Yee* also noted that "neither the city nor the State compels petitioners, once they have rented their property to tenants, to continue doing so," *Yee*, 503 U.S. at 527–28, and that "[a] different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Id.* at 528. The concept that there can be no physical taking because property owners may have voluntarily rented to tenants is equally unsustainable. Implicit in this reasoning is the false assumption that the occupants are approved tenants, as opposed to illegal squatters. Yet, the Defendants' regulations vest possession in all occupants, even those that fraudulently took residency without the owners' knowledge or consent. *See* Exs. E & H to RJN.

Furthermore, it improperly transforms "voluntariness" into a permanent and unchangeable state-of-affairs. A tenant's occupancy, and a landlord's consent to that occupancy, are temporary and conditional, not eternal. The property owner did not volunteer to allow the tenant to possess the property and exclude the owner in the face of a material breach or the violation of the law. There is no rule of perpetual consent that says that *once invited, you can stay forever no matter what happens*.

The District Courts' reliance on voluntariness is the result of a misplaced focus, disregarding the legal rights of the present for the legal rights of the past. Whatever property rights a rental owner may have had at lease signing with respect to taking possession and excluding occupants have been forcibly taken away. That property right is now owned and controlled by Defendants and their decisions about when and how to exercise it give no consideration to the owner's consent, whether given or not.

Finally, the Defendants' taking of the right to possess and exclude is not a mere adjustment in the landlord-tenant relationship. As *Cedar Point* held:

> We cannot agree that the right to exclude is an empty formality, subject to modification at the government's pleasure. On the contrary, it is a fundamental element of the property right, that cannot be balanced away…With regard to the complexities of modern society, we think they only reinforce the importance of safeguarding the basic property rights that help preserve individual liberty, as the Founders explained.

*Cedar Point Nursery*, 141 S. Ct. at 2077–78; *see also Loretto*, 458 U.S. at 436 ("To require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury.

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1  Furthermore, such an occupation is qualitatively more severe than a regulation of the use of property,

2  even a regulation that imposes affirmative duties on the owner, since the owner may have no control

3  over the timing, extent, or nature of the invasion.").

4  ### 4.   Conclusion Re: Takings.

5  In light of the above, the Defendants' regulations are a facial, physical taking that is contrary

6  to the Fifth Amendment.  While it is generally true that a "plaintiff who argues that a law is facially

7  invalid is claiming that the law is not, and never can be, applied in a way that satisfies constitutional

8  restrictions," challenges implicating rights guaranteed by the Takings Clause are subject to a more

9  focused standard.  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993).  In that

10  context, a plaintiff will prevail upon showing that the enactment of a statute effects a transfer of a

11  property interest to the public.  *See Hillcrest Prop., LLC v. Pasco County*, 754 F.3d 1279, 1282 (11th

12  Cir. 2014) (same), quoting *Levald*, 998 F.2d at 688; *Guggenheim v. City of Goleta*, 638 F.3d 1111,

13  1119 (9th Cir. 2010) (en banc) (same).

14  Here, the right to possess and to exclude were vested in Defendants upon the enaction of the

15  Moratoria.  The vesting of that property right is a physical taking of an easement or tenancy in common

16  that is categorically unconstitutional and has already occurred for each rental property within the

17  Defendants' jurisdictions.  Moreover, the Defendants' grant of possession to all occupants is both

18  universally applicable to all rental property owners and universally dismissive of individual facts and

19  circumstances.  Therefore, the Moratoria are facially unconstitutional.

20  ### B.   Defendants' Eviction Moratoria Violate State Law.

21  The Moratoria also violate the California Election Code, in that they unlawfully amend

22  Oakland's voter enacted Just Cause for Eviction Ordinance.  The Moratoria are additionally preempted

23  by the Tenant Relief and Rental Housing Relief Acts because they conflict with those general laws.

24  Under California law, a facial challenge to an ordinance requires a demonstration that "from the face

25  of the ordinance that the challenged portion will result in legally impermissible outcomes in the

26  *generality or great majority* of cases . . . ."  *Larson v. CCSF*, 192 Cal.App.4th 1263, 1280 (2002)

27  (emphasis in original) quoting *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th

28  643, 673.)  As detailed below, this standard is met here.

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1

## 1.  <u>Defendants' Eviction Moratoria Are Preempted by the Acts.</u>

A City or county may make and enforce within its limits all ordinances and regulations that do not conflict with general law.  Cal. Const., art. XI, § 7.  A city's police power under the California Constitution is subject to displacement by State law.  *Birkenfeld v. City of Berkeley,* 17 Cal.3d 129, 140 (1976).  Under elementary principles of preemption, if a city or county enacts an ordinance that conflicts with a state law, it's void—even if the ordinance otherwise would be legal.  Cal. Const., art. XI, § 7; *Sherwin–Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897 (1993); *Water Quality Assn. v. County of Santa Barbara*, 44 Cal.App.4th 732, 741 (1996).  "A conflict between state law and an ordinance exists if the ordinance duplicates or is coextensive therewith, is contradictory or inimical thereto, or enters an area either expressly or impliedly fully occupied by general law."  *American Financial Services Ass'n v. City of Oakland*, 34 Cal.4th 1239, 1251 (2005); also see, *Big Creek Lumber Co. v. County of Santa Cruz,* 38 Cal.4th 1139, 1150 (2006).

Here, the Moratoria conflict with, and are thus expressly preempted by, the Acts in several substantial respects.  First, while the Acts prohibited evictions through June 30, 2022 for nonpayment of rent related to Covid-19 financial distress, a renter *can only* seek the benefit of the Acts' nonpayment eviction protections upon an affirmative showing of active participation in the state's rent relief program.  If the renter does not participate, or if they do participate, but their application for rent relief is denied, the housing provider can move forward with a UD action under the Acts.  Cal. Code of Civ. Proc. § 1179.11(a), (c).  In contrast, under the Moratoria, renters are protected from eviction for nonpayment even if renters refuse to participate in the rent relief programs, or do not qualify for rent relief (because they are wealthy).  *See* Exs. E & H to RJN.  Because the Moratoria "mandate what state law expressly forbids, [and] forbids what state law expressly mandates" the Moratoria are inimical to, and thus are preempted by the Act.  *Big Creek Lumber Co.,* 38 Cal.4th at 1161 intern. cit., quot. & brackets omit.  Defendants here have created an exception to a carefully balanced statutory scheme that protects the interests of both renters and housing providers, a scheme that mitigates the constitutional harm caused by compelling the uncompensated physical taking of Plaintiffs' property. For this reason alone, the Court should find the Moratoria preempted.

Second, the Acts permit evictions for other "just cause" bases, while the Moratoria ban almost all. Cal. Civ. Proc. Code § 1179.03.5(a)(3); Exs. E & H To RJN. Even during the Acts' temporary moratorium, housing providers were still permitted to file actions for, and courts were still permitted to find renters and other occupants guilty of, UD for fault, and no-fault "just cause" as defined under Civil Code sec. 1946.2. Cal. Civ. Proc. Code § 1179.03.5(a)(3). It is true that the just cause provisions of Civil Code sec. 1946.2 do not apply where there is a more "protective" local ordinance in place. However, that protective ordinance *cannot directly conflict* with that section, and there must be a specific finding in the ordinance that it is more "protective" than sec. 1946.2. Cal. Civ. Code § 1946.2(g)(B); Cal. Civ. Proc. Code § 1179.05(b). The COUNTY's moratorium doesn't comply with Cal. Civ. Code. sec. 1946.2(g)'s requirement that it expressly find the eviction ordinance more "protective" than that section. Ex. H to RJN. Indeed, the COUNTY doesn't even have an eviction control scheme in place, other than its moratorium. The Moratoria are directly inconsistent with Cal. Civ. Code § 1946.2. One purpose of Cal. Civ. Code § 1946.2 is to limit evictions by requiring a "just cause" basis. Cal. Civ. Code § 1946.2(a)(b). Contrary to Cal. Civ. Code § 1946.2, the Moratoria's ban virtually all just cause bases for eviction, essentially leave the housing provider with *no* just cause. Exs. E & H to RJN. There is nothing in the Acts that suggest such a broad local overreach was intended or within the permissible scope of the Acts, and the Legislature did not give local government carte blanche to ban all evictions. *See* Cal. Civ. Proc. Code §§ 1179.05(f) (Tenant Relief Act does not "provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction.") The Moratoria's ban on virtually all evictions expressly conflict with Acts and must cede to a statewide scheme that seeks to compensate landlords for the harm associated with the compelled occupation of their property.

The Moratoria also impliedly conflict with the Acts for these same reasons. See, *Sherwin–Williams Co.,* 4 Cal.4th at 898 (implied preemption occurs when "the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality . . . ."). The Moratoria penalize and damage housing providers throughout the state that own rental properties in Oakland and

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Alameda County, notwithstanding Defendants' "local emergency" no longer exists.  Defendants cannot claim—and do not claim—that Covid-19 has impacted Oakland and Alameda County more than it has the rest of the California.  In fact, Defendants admit that the Bay Area has a high rate of vaccinations, and the Covid-19 related impacts have *vastly* improved since March of 2020.  Ex. J ¶¶ 48, 52 to RJN; Ex. K ¶ 48 to RJN.  All other substantial Covid-19 related restrictions have been lifted; businesses and schools are open throughout California, and mask mandates are vanishing—even in Alameda County.  Virtually the *only* substantial Covid-19 related restriction left in the state is imposed on the COUNTY and CITY's housing providers.  Covid-19 eviction controls are not a municipal affair; the Legislature has expressly declared them a "matter of statewide concern."  Cal. Civ. Proc. Code. § 1179.05(e).  "Any fair, reasonable and substantial doubt whether a matter is a municipal affair or broader state concern must be resolved in favor of the legislative authority of the state."  *Cox Cable San Diego, Inc. v. City of San Diego* 188 Cal. App. 3d 952, 962 (1987).  The Moratoria have created an irrational "checkerboard" of local legislation based upon an alleged local emergency that no longer exists. *California Water & Telephone Co. v. County of Los Angeles,* 253 Cal.App.2d 16, 30-31 (1967) (matter of statewide concern is "not a municipal affair subject to a checkerboard of regulations by local governments.")  The Court should thus find the Moratoria preempted by the Acts by declaring them void, and issuing a writ and declaration ordering the same.

**2.  <u>Defendants' Eviction Moratoria Unlawfully Amend the CITY's Just Cause for Eviction Ordinance, Which Was Enacted Via Voter Initiative.</u>**

"No ordinance that is . . . adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance."  Cal. Elec. Code § 9217; Cal. Const. Art. II § 10; *Tesoro Logistic Operations, LLC v. City of Rialto,* 40 Cal.App.5th 798, 802 (2019), *review denied* (Jan. 15, 2020).  Voters' initiative power is " 'one of the most precious rights of our democratic process' [citation]. '[It] has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled." *Associated Home Builders etc. Inc. v. City of Livermore,* 18 Cal.3d 582, 591 (1976).  Pursuant to our duty to " ' "jealously guard" ' and liberally construe" this right, we must "resolve doubts in favor of the exercise

ZACKS, **FREEDMAN & PATTERSON, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   of the right whenever possible." *California Cannabis Coalition v. City of Upland,* 3 Cal.5th 924, 934

2   (2017).

3       The CITY's Just Cause for Eviction Ordinance, Oakland Municipal Code section 8.22.300 et

4   seq., was enacted in 2003 by an initiative ordinance passed by a majority of the CITY's voters.  Ex. L

5   to RJN (OMC § 8.22.300 ["the electorate of the city of Oakland hereby enacts this ordinance,

6   prohibiting a landlord from terminating a tenancy without good or just cause"]).  In doing so, the

7   CITY's voters determined that housing providers shall not terminate a renter's tenancy unless there is

8   "good, just, non-arbitrary, [and] non-discriminatory reasons."  Ex. L to RJN (OMC § 8.22.300).  After

9   enactment, the CITY's voters amended the Just Cause for Eviction Ordinance to permit the COUNCIL

10  to amend that Ordinance for narrow purposes, including "for the purpose of adding limitations on a

11  landlord's right to evict . . . ."  (*Ibid.* [OMC § 8.22.360(F)]), "e.g., mandating compliance with certain

12  rules and standards, such as, providing proper notice (Ex. M to RJN [City Attorney's Summary of

13  Measure Y]).  Because the Just Cause for Eviction Ordinance was enacted pursuant to a voter initiative,

14  it may only be amended either by the electorate or by the COUNCIL in the limited circumstances

15  enumerated by the voters.  Exs. L (OMC § 8.22.360(F)) & M to RJN; Cal. Elec. Code § 9217.

16      It is undisputed that the COUNTY's moratorium applies to the CITY.  Ex. H to RJN (ACCO

17  § 6.120.030(A)).  The CITY's Just Cause for Eviction Ordinance enacted by voter initiative permits a

18  housing provider to evict a renter for good cause under that section.  Ex. L to RJN.  The COUNTY's

19  open-ended moratorium prohibits any housing provider in the CITY from evicting a renter for just

20  cause under OMC § 8.22.360 for an indefinite period of time, and therefore violates the OMC §

21  8.22.360(F); Elec. Code § 9217 and Cal. Const. Art. II § 10.

22      The CITY's moratorium also violates the California Election Code, because it exceeds the

23  scope of the COUNCIL's amendment powers, which were designated by the CITY's voters.  Ex. L to

24  RJN (OMC § 8.22.360(F)).  While the COUNCIL is permitted to add "limitations" on evictions, the

25  intent of the scope of such limitations was plainly not to completely *ban* virtually all evictions for an

26  open-ended period of time.  As the CITY's legal counsel described, acceptable types of eviction

27  limitations were things such as "providing proper notice," and mandating compliance with other such

28  "rules and standards."  The CITY's moratorium completely upends OMC § 8.22.360—by essentially

outlawing that section—far beyond what the voters could possibly have contemplated.  The Court should therefore find the Moratoria illegal and void on this basis and issue a writ and declaration ordering the same.

## C.  Defendants' Eviction Moratoria Violate Procedural Due Process.

Procedural due process requires an opportunity to be heard before governmental deprivation of a property right.  *Mullane v. Central Hanover Tr. Co.* 339 U.S. 306, 313 (1950); *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972); *United States v. Farmer*, 274 F.3d 800, 803 (4th Cir. 2001) ("*Farmer*"). Courts measure the adequacy of procedural due process by a three factor test: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the . . . administrative burdens that the additional or substitute procedural requirement would entail." *Farmer*, 274 F.3d at 803, int. quot. omit. Real property is undisputedly a property interest in the due process context.  *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 48-49 (1993).   So is rental income.  *Id.* at 54-55.   "The basis for injunctive relief [preliminary or permanent] in the federal courts has always been *irreparable injury* and the *inadequacy of legal remedies*." *Weinberger v. Romero-Barcelo,* 456 US 305, 312 (1982).  Plaintiffs must establish that they are "likely to succeed on the merits," that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

In *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021), the Supreme Court preliminary enjoined a portion of New York's Covid-19 eviction act because its procedures were facially constitutionally inadequate in violation of the Due Process clause.  Under that law, a renter could "self-certify" their own Covid-19 hardship in an eviction proceeding, and upon doing so, housing providers were denied the opportunity to contest that self-certification, as the claim of hardship resulted in an automatic stay of the proceeding.  The Court held in *Chrysafis*: "This scheme violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause." *Chrysafis*, 141 S. Ct. at 2482, int. cit. omit; also see, *In re Murchison*, 349 U.S. 133, 136

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

(1955); see *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993) (due process generally requires a hearing).

Here, the Moratoria's procedural deprivations far surpass the deprivation found in *Chrysafis*. The Moratoria provide "absolute defense[s]" to any eviction proceeding brought while the Moratoria are in place. Exs. E & H to RJN. This means that in every case but for the very few enumerated exceptions, the renter decides—i.e. is the "judge"—as to whether he or she can remain in the housing provider's property, and the housing provider doesn't get to challenge that determination. *See Ibid.* Actual Covid-19 hardship or not, the renter can decide not to pay rent for any reason at all and even refuse to apply for state provided rental assistance. *Ibid.* The renter can damage the housing provider's property and perform criminal acts. *Ibid.* The renter can refuse to move out of the housing provider's property even when the housing provider desperately needs that property for his own personal residence. *Ibid.* In these cases and more, the Moratoria give renters an "absolute defense" to any eviction, thereby depriving housing providers of any hearing in violation of their due process. Under *Chrysaifs*, the law and facts "clearly favor" Plaintiffs here, and there is no question irreparable injury will occur should the Court not enjoin the Moratoria. *See, LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021); *Chrysafis* 141 S. Ct. at 2482. The Court should therefore either preliminarily or permanently enjoin the Moratoria.

## VI.    CONCLUSION

Pursuant to the above, the Court should grant this motion and (1) issue a declaration finding the Moratoria unconstitutional physical takings and/or a violation of procedural due process, and allow Defendants the opportunity to rescind the Moratoria to mitigate their damages; (2) preliminary or permanently enjoin the Moratoria as violations of procedural due process; and/or (3) issue an order and writ of mandate under Cal. Civ. Proc. Code § 1085 finding the Moratoria inconsistent with, and in violation of, California law.

//

//

//

1    Dated:    July 18, 2022      ZACKS, FREEDMAN & PATTERSON, PC

2

3                                   */s/ Andrew M. Zacks*
                                    ANDREW M. ZACKS (SBN 147794)

                                    EMILY L. BROUGH (SBN 284943)

4                                     ZACKS, FREEDMAN & PATTERSON, PC
                                    1970 Broadway, Suite 1270

5                                     Oakland, CA 94612
                                    Tel: (510) 469-0555

6                                     az@zfplaw.com
                                    emily@zpflaw.com

7

8                                     PACIFIC LEGAL FOUNDATION

9                                     */s/ Jonathan M. Houghton*
                                    PACIFIC LEGAL FOUNDATION

10                                 JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)*
                                3100 Clarendon Blvd., Suite 610

11                                 Arlington, VA 22201
                                BRIAN T. HODGES (Wash. Bar No. 31976)*

12                                 SAM SPIEGELMAN (N.Y. Bar No. 5573100)*
                                255 South King Street, Suite 800

13                                 Seattle, WA 98104

14                                 Telephone: (916) 419-7111
                                JHoughton@pacificlegal.org

15                                 BHodges@pacificlegal.org
                                SSpiegelman@pacificlegal.org

16

17

18                                 * Pro hac vice

19                                 Attorneys for Plaintiffs and Petitioners

20                                 JOHN WILLIAMS
                                ROBERT VOGEL

21                                 SHEANNA ROGERS
                                MICHAEL LOEB

22                                 JACQUELINE WATSON-BAKER
                                HOUSING PROVIDERS OF AMERICA

23

24

25

26

27

28

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

**PROOF OF SERVICE**
United States District Court—Northern District of California- Case No.: 3:22-cv-01274-LB

I, Angelica Nguyen, declare that:

I am employed in the County of San Francisco, State of California. I am over the age of 18, and am not a party to this action.  My business address is 601 Montgomery Street, Suite 400, San Francisco, California 94111.

On July 18, 2022, I served:

**PLAINTIFFS' AND PETITIONERS' NOTICE OF RULE 56 MOTION ON BIFURCATED CLAIMS AND RULE 56 MOTION ON BIFURCATED CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**

in said cause addressed as follows:

| | |
|---|---|
| BARBARA J. PARKER<br>MARIA BEE<br>CYNTHIA STEIN<br>KACEY READ<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA 94612<br>E-Mail: CStein@oaklandcityattorney.org<br>E-Mail: KRead@oaklandcityattorney.org<br>*Attorneys for City of Oakland and Oakland City Council* | CHRISTOPHER SKINNELL<br>HILARY GIBSON<br>NIELSEN MERKSAMER PARRINELLO GROSS & LEONI LLP<br>2350 Kerner Boulevard, Suite 250<br>San Rafael, CA 94901<br>Email: CSkinnell@nmgovlaw.com<br>Email: hgibson@nmgovlaw.com<br>*Attorneys for California Apartment Association* |
| MATTHEW D. ZINN<br>EDWARD T. SCHEXNAYDER<br>MINDY K. JIAN<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>Email: Zinn@smwlaw.com<br>Email: Schexnayder@smwlaw.com<br>Email: mjian@smwlaw.com<br>*Attorneys for Alameda County and Alameda County Board of Supervisors* | MARC SELTZER<br>KRYSTA K. PACHMAN<br>GLENN C. BRIDGMAN<br>NICHOLAS N. SPEAR<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Email: mseltzer@susmangodfrey.com<br>Email: kpachman@susmangodfrey.com<br>Email: gbridgman@susmangodfrey.com<br>Email: nspear@susmangodfrey.com<br>*Attorneys for Intervenor-Defendant Alliance of Californians for Community Empowerment Action* |

**/XX/   (BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept electronic service, I caused the said document to be served electronically through the CM/ECS System.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 18, 2022 at San Francisco, California.


ANGELICA NGUYEN