1  ANDREW M. ZACKS (SBN 147794)
2  EMILY L. BROUGH (SBN 284943)
   ZACKS, FREEDMAN & PATTERSON, PC
3  1970 Broadway, Suite 1270
   Oakland, CA 94612
   Tel: (510) 469-0555
4  az@zfplaw.com
   emily@zpflaw.com
5

6  PACIFIC LEGAL FOUNDATION
   JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)*
7  3100 Clarendon Blvd., Suite 610
   Arlington, VA 22201
8  BRIAN T. HODGES (Wash. Bar No. 31976)*
   SAM SPIEGELMAN (N.Y. Bar No. 5573100)*
9  255 South King Street, Suite 800
10 Seattle, WA 98104
   Telephone: (916) 419-7111
11 JHoughton@pacificlegal.org
   BHodges@pacificlegal.org
12 SSpiegelman@pacificlegal.org
13
   Attorneys for Plaintiffs and Petitioners
14 JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS,
   MICHAEL LOEB, JACQUELINE WATSON-BAKER
15 HOUSING PROVIDERS OF AMERICA

16                     IN THE UNITED STATES DISTRICT COURT

17                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

18 JOHN WILLIAMS, ROBERT VOGEL,          Case Number:  3:22-cv-01274
19 SHEANNA ROGERS, MICHAEL LOEB,
   JAQUELINE WATSON-BAKER, and           **REQUEST FOR JUDICIAL NOTICE IN**
20 HOUSING PROVIDERS OF AMERICA, a       **SUPPORT OF PLAINTIFFS' AND**
   501(c)(4) non-profit Corporation,     **PETITIONERS' RULE 56 MOTION ON**
21                                        **BIFURCATED CLAIMS**
22    Plaintiffs and Petitioners,

23           vs.                          Date: September 29, 2022
                                          Time: 9:30 a.m.
24                                        Dept: Courtroom B, 15th Flr
   ALAMEDA COUNTY, ALAMEDA               Judge: Hon. Laurel Beeler
25 COUNTY BOARD OF SUPERVISORS,
   CITY OF OAKLAND, OAKLAND CITY          Complaint filed March 1, 2022
26 COUNCIL and DOES 1-10,
27
          Defendants and Respondents.
28

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JACQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA respectfully request that the Court take judicial notice of the following court records, state, county and city legislative acts, and public records pursuant to Federal Rule of Evidence, Rule 201 (also see, *California ex rel. RoNo, LLC v. Altus Finance S.A.*, 344 F.3d 920, 931 (9th Cir. 2003) ["requests for judicial notice are GRANTED to the extent that they are compatible with Federal Rule of Evidence 201 and do not require the acceptance of facts 'subject to reasonable dispute.'"]):

A.  CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088).

B.  CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832).

C.  Oakland Resolution No. 88075 C.M.S.

D.  Oakland Ordinance No. 13589.

E.  Oakland Ordinance No. 13606.

F.  Alameda County Resolution No. R-2020-91.

G.  Alameda County Ordinance No. O-2020-23.

H.  Alameda County Code of Ordinances Chapter 6.120; Alameda County Ordinance No. O-2020-32.

I.  *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY, filed March 1, 2022.

J.  *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, ANSWER OF DEFENDANTS ALAMEDA COUNTY AND ALAMEDA COUNTY BOARD OF SUPERVISORS, filed March 23, 2022.

K.  *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, DEFENDANTS CITY OF OAKLAND AND OAKLAND CITY COUNCIL'S ANSWER TO PLAINTIFF'S COMPLAINT, filed April 7, 2022.

L.  Oakland Code of Ordinances Art. II, Chapter 8.22.300-390, Measure EE.

ZACKS, **FREEDMAN & PATTERSON**, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

M. City of Oakland, Measure Y.

N. *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, DECLARATION OF JOHN WILLIAMS IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR BIFURCATION OF FACIAL AND AS APPLIED CLAIMS, filed April 26, 2022.

O. *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, DECLARATION OF SHEANNA ROGERS IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR BIFURCATION OF FACIAL AND AS APPLIED CLAIMS, filed April 26, 2022.

P. *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, DECLARATION OF JACQUELINE WATSON-BAKER IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR BIFURCATION OF FACIAL AND AS APPLIED CLAIMS, filed April 26, 2022.

Q. *Williams et al. v. Alameda County et al.*, U.S. District Court for the Northern District of California, Case No. 3:22-cv-01274, DECLARATION OF MICHAEL LOEB IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR BIFURCATION OF FACIAL AND AS APPLIED CLAIMS, filed April 26, 2022

Dated:   July 18, 2022          ZACKS, FREEDMAN & PATTERSON, PC

 */s/ Andrew M. Zacks*
ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS, FREEDMAN & PATTERSON, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

//

1

PACIFIC LEGAL FOUNDATION

2

3
 /s/ Jonathan M. Houghton
PACIFIC LEGAL FOUNDATION
4
JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)*
3100 Clarendon Blvd., Suite 610
5
Arlington, VA 22201
BRIAN T. HODGES (Wash. Bar No. 31976)*
6
SAM SPIEGELMAN (N.Y. Bar No. 5573100)*
255 South King Street, Suite 800
7
Seattle, WA 98104
Telephone: (916) 419-7111
8
JHoughton@pacificlegal.org
BHodges@pacificlegal.org
9
SSpiegelman@pacificlegal.org
10

11
* Pro hac vice
12
Attorneys for Plaintiffs and Petitioners
13
JOHN WILLIAMS
ROBERT VOGEL
14
SHEANNA ROGERS
MICHAEL LOEB
15
JACQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

**ZACKS, FREEDMAN & PATTERSON, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

# EXHIBIT A

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 6 of 253

2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

CALIFORNIA 2020 LEGISLATIVE SERVICE

2020 Portion of 2019-2020 Regular Session

Additions are indicated by **Text**; deletions by
**\* \* \***  .

Vetoes are indicated by ~~Text~~  ;
stricken material by ~~**Text**~~  .

# CHAPTER 37
## A.B. No. 3088

AN ACT to amend Sections 1946.2, 1947.12, and 1947.13 of, to amend, repeal, and add Sections 798.56, 1942.5, 2924.15 of, to add Title 19 (commencing with Section 3273.01) to Part 4 of Division 3 of, and to add and repeal Section 789.4 of, the Civil Code, and to amend, repeal, and add Sections 1161 and 1161.2 of, to add Section 1161.2.5 to, to add and repeal Section 116.223 of, and to add and repeal Chapter 5 (commencing with Section 1179.01) of Title 3 of Part 3 of, the Code of Civil Procedure, relating to COVID–19 relief, and declaring the urgency thereof, to take effect immediately.

[Filed with Secretary of State August 31, 2020.]

**LEGISLATIVE COUNSEL'S DIGEST**

AB 3088, Chiu. Tenancy: rental payment default: mortgage forbearance: state of emergency: COVID–19.

Existing law prescribes various requirements to be satisfied before the exercise of a power of sale under a mortgage or deed of trust. Existing law requires that a notice of default and a notice of sale be recorded and that specified periods of time elapse between the recording and the sale. Existing law establishes certain requirements in connection with foreclosures on mortgages and deeds of trust, including restrictions on the actions mortgage servicers may take while a borrower is attempting to secure a loan modification or has submitted a loan modification application. Existing law applies certain of those requirements only to a first lien mortgage or deed of trust that is secured by owner-occupied residential real property containing no more than four dwelling units.

This bill, the Tenant, Homeowner, and Small Landlord Relief and Stabilization Act of 2020, would, among other things, until January 1, 2023, additionally apply those protections to a first lien mortgage or deed of trust that is secured by residential real property that is occupied by a tenant, contains no more than four dwelling units, and meets certain criteria, including that a tenant occupying the property is unable to pay rent due to a reduction in income resulting from the novel coronavirus.

The bill would also enact the COVID–19 Small Landlord and Homeowner Relief Act of 2020 (Homeowner Act), which would require a mortgage servicer, as defined, to provide a specified written notice to a borrower, as defined, if the mortgage servicer denies forbearance during the effective time period, as defined, that states the reasons for that denial if the borrower was both current on payments as of February 1, 2020, and is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID–19 emergency. The Homeowner Act would also require a mortgage servicer to comply with applicable federal guidance regarding borrower options following a COVID–19 related forbearance.

Existing law provides that a tenant is guilty of unlawful detainer if the tenant continues to possess the property without permission of the landlord after the tenant defaults on rent or fails to perform a condition or covenant of the lease under which the property is held, among other reasons. Existing law requires a tenant be served a 3 days' notice in writing to cure a default or perform a condition of the lease, or return possession of the property to the landlord, as specified. Existing law, the Mobilehome Residency Law, prohibits a tenancy from being terminated unless specified conditions are met, including that the tenant fails to pay rent, utility charges, or reasonable incidental service charges, and 3 days' notice in writing is provided to the tenant, as specified.

This bill would, until February 1, 2025, enact the COVID–19 Tenant Relief Act of 2020 (Tenant Act). The Tenant Act would require that any 3 days' notice that demands payment of COVID–19 rental debt that is served on a tenant during the covered time period meet specified criteria, including that the notice include an unsigned copy of a declaration of COVID–19–related financial distress and that the notice advise the tenant that the tenant will not be evicted for failure to comply with the notice if the tenant delivers a signed declaration of COVID–19–related financial distress to the landlord, as specified. The Tenant Act would define "covered time period" for purposes of these provisions to mean the time between March 1, 2020, and January 31, 2021. The Tenant Act would deem a 3 days' notice that fails to comply with this criteria void and insufficient to support a judgment for unlawful detainer or to terminate a tenancy under the Mobilehome Residency Law. The Tenant Act would prohibit a tenant that delivers a declaration, under penalty of perjury, of COVID–19–related financial distress pursuant to these provisions from being deemed in default with regard to the COVID–19 rental debt, as specified. By expanding the crime of perjury, this bill would create a state-mandated local program. The Tenant Act would prohibit a court from finding a tenant guilty of an unlawful detainer before February 1, 2021, subject to certain exceptions, including if the tenant was guilty of the unlawful detainer before March 1, 2020. The bill would prohibit, before October 5, 2020, a court from taking specified actions with respect to unlawful detainer actions, including issuing a summons on a complaint for unlawful detainer in any action that seeks possession of residential real property and that is based, in whole or in part, on nonpayment of rent or other charges.

The Tenant Act would also authorize a landlord to require a high-income tenant, as defined, to additionally submit documentation supporting the claim that the tenant has suffered COVID–19–related financial distress if the landlord has proof of income showing the tenant is a high-income tenant.

The Tenant Act would preempt an ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction based on nonpayment of rental payments, as specified.

The bill would require the Business, Consumer Services and Housing Agency to, in consultation with the Department of Finance, engage with residential tenants, landlords, property owners, deed-restricted affordable housing providers, and financial sector stakeholders about strategies and approaches to direct potential future federal stimulus funding to most effectively and efficiently provide relief to distressed tenants, landlords, and property owners, as specified.

Existing law prohibits a landlord from taking specified actions with intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as the tenant's residence. Existing law makes a violator of those provisions subject to certain damages in a civil action.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 8 of 253

This bill would, until February 1, 2021, make a violator of those provisions whose tenant has provided to that violator the declaration of COVID–19–related financial distress described above liable for damages in an amount between $1,000 and $2,500.

Existing law, The Small Claims Act, grants jurisdiction to a small claims court in cases where the amount demanded does not exceed $5,000, as specified, and prohibits a person from filing more than 2 small claims actions in which the amount demanded exceeds $2,500 anywhere in the state in any calendar year.

This bill would instead, until February 1, 2025, provide that a small claims court has jurisdiction in any action for recovery of COVID–19 rental debt, as defined, regardless of the amount demanded and would provide that a claim for recovery of a COVID–19 rental debt is exempt from the prohibition on filing more than 2 small claims actions described above.

Existing law, the Tenant Protection Act of 2019, prohibits, with certain exceptions, an owner of residential real property from increasing the gross rental rate for a dwelling or unit more than 5% plus the "percentage change in the cost of living," as defined, or 10%, whichever is lower, of the lowest gross rental rate charged for the immediately preceding 12 months, subject to specified conditions. The act exempts certain types of residential real properties, including dormitories constructed and maintained in connection with any higher education institution within the state for use and occupancy by students in attendance at the institution and housing that has been issued a certificate of occupancy within the previous 15 years.

This bill would revise and recast those exemptions to exempt dormitories owned and operated by an institution of higher education or a kindergarten and grades 1 to 12, inclusive, school. The bill would also make clarifying changes to the definition of "percentage change in the cost of living."

This bill would also make clarifying and conforming changes.

The bill would include findings that changes proposed by this bill address a matter of statewide concern rather than a municipal affair and, therefore, apply to all cities, including charter cities.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

This bill would declare that it is to take effect immediately as an urgency statute.

The people of the State of California do enact as follows:

SECTION 1. This act shall be known, and may be cited, as the Tenant, Homeowner, and Small Landlord Relief and Stabilization Act of 2020.

SEC. 2. The Legislature finds and declares all of the following:

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 9 of 253

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

(a) On March 4, 2020, Governor Gavin Newsom proclaimed a state of emergency in response to the COVID–19 pandemic. Measures necessary to contain the spread of COVID–19 have brought about widespread economic and societal disruption, placing the state in unprecedented circumstances.

(b) At the end of 2019, California already faced a housing affordability crisis. United States Census data showed that a majority of California tenant households qualified as "rent-burdened," meaning that 30 percent or more of their income was used to pay rent. Over one-quarter of California tenant households were "severely rent-burdened," meaning that they were spending over one-half of their income on rent alone.

(c) Millions of Californians are unexpectedly, and through no fault of their own, facing new public health requirements and unable to work and cover many basic expenses, creating tremendous uncertainty for California tenants, small landlords, and homeowners. While the Judicial Council's Emergency Rule 1, effective April 6, 2020, temporarily halted evictions and stabilized housing for distressed Californians in furtherance of public health goals, the Judicial Council voted on August 14, 2020, to extend these protections through September 1, 2020, to allow the Legislature time to act before the end of the 2019–20 Legislative Session.

(d) There are strong indications that large numbers of California tenants will soon face eviction from their homes based on an inability to pay the rent or other financial obligations. Even if tenants are eventually able to pay their rent, small landlords will continue to face challenges covering their expenses, including mortgage payments in the ensuing months, placing them at risk of default and broader destabilization of the economy.

(e) There are strong indications that many homeowners will also lose their homes to foreclosure. While temporary forbearance is available to homeowners with federally backed mortgages pursuant to the CARES Act, and while some other lenders have voluntarily agreed to provide borrowers with additional time to pay, not all mortgages are covered.

(f) Stabilizing the housing situation for tenants and landlords is to the mutual benefit of both groups and will help the state address the pandemic, protect public health, and set the stage for recovery. It is, therefore, the intent of the Legislature and the State of California to establish through statute a framework for all impacted parties to negotiate and avoid as many evictions and foreclosures as possible.

(g) This bill shall not relieve tenants, homeowners, or landlords of their financial and contractual obligations, but rather it seeks to forestall massive social and public health harm by preventing unpaid rental debt from serving as a cause of action for eviction or foreclosure during this historic and unforeseeable period and from unduly burdening the recovery through negative credit reporting. This framework for temporary emergency relief for financially distressed tenants, homeowners, and small landlords seeks to help stabilize Californians through the state of emergency in protection of their health and without the loss of their homes and property.

SEC. 3. Section 789.4 is added to the Civil Code, to read:

<< CA CIVIL § 789.4 >>

789.4. (a) In addition to the damages provided in subdivision (c) of Section 789.3 of the Civil Code, a landlord who violates Section 789.3 of the Civil Code, if the tenant has provided a declaration of COVID–19 financial distress pursuant to Section 1179.03 of the Code of Civil Procedure, shall be liable for damages in an amount that is at least one thousand dollars ($1,000) but not more than two thousand five hundred dollars ($2,500), as determined by the trier of fact.

(b) This section shall remain in effect until February 1, 2021, and as of that date is repealed.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 10 of 253

SEC. 4. Section 798.56 of the Civil Code is amended to read:

<< CA CIVIL § 798.56 >>

798.56. A tenancy shall be terminated by the management only for one or more of the following reasons:

(a) Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobilehomes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency.

(b) Conduct by the homeowner or resident, upon the park premises, that constitutes a substantial annoyance to other homeowners or residents.

(c)(1) Conviction of the homeowner or resident for prostitution, for a violation of subdivision (d) of Section 243, paragraph (2) of subdivision (a), or subdivision (b), of Section 245, Section 288, or Section 451, of the Penal Code, or a felony controlled substance offense, if the act resulting in the conviction was committed anywhere on the premises of the mobilehome park, including, but not limited to, within the homeowner's mobilehome.

(2) However, the tenancy may not be terminated for the reason specified in this subdivision if the person convicted of the offense has permanently vacated, and does not subsequently reoccupy, the mobilehome.

(d) Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto.

No act or omission of the homeowner or resident shall constitute a failure to comply with a reasonable rule or regulation unless and until the management has given the homeowner written notice of the alleged rule or regulation violation and the homeowner or resident has failed to adhere to the rule or regulation within seven days. However, if a homeowner has been given a written notice of an alleged violation of the same rule or regulation on three or more occasions within a 12–month period after the homeowner or resident has violated that rule or regulation, no written notice shall be required for a subsequent violation of the same rule or regulation.

Nothing in this subdivision shall relieve the management from its obligation to demonstrate that a rule or regulation has in fact been violated.

(e)(1) **\* \* \*** **Except as provided for in the COVID–19 Tenant Relief Act of 2020 (Chapter 5 (commencing with Section 1179.01) of Title 3 of Part 3 of the Code of Civil Procedure), nonpayment** of rent, utility charges, or reasonable incidental service charges; provided that the amount due has been unpaid for a period of at least five days from its due date, and provided that the homeowner shall be given a three-day written notice subsequent to that five-day period to pay the amount due or to vacate the tenancy. For purposes of this subdivision, the five-day period does not include the date the payment is due. The three-day written notice shall be given to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure. A copy of this notice shall be sent to the persons or entities specified in subdivision (b) of Section 798.55 within 10 days after notice is delivered to the homeowner. If the homeowner cures the default, the notice need not be sent. The notice may be given at the same time as the 60 days' notice required for termination of the tenancy. A three-day notice given pursuant to this subdivision shall contain the following provisions printed in at least 12–point boldface type at the top of the notice, with the appropriate number written in the blank:

"Warning: This notice is the (insert number) three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to Civil Code Section 798.56 (e) (5),[1] if you have been given a three-day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 11 of 253

tenancy on three or more occasions within a 12–month period, management is not required to give you a further three-day period to pay rent or vacate the tenancy before your tenancy can be terminated."

(2) Payment by the homeowner prior to the expiration of the three-day notice period shall cure a default under this subdivision. If the homeowner does not pay prior to the expiration of the three-day notice period, the homeowner shall remain liable for all payments due up until the time the tenancy is vacated.

(3) Payment by the legal owner, as defined in Section 18005.8 of the Health and Safety Code, any junior lienholder, as defined in Section 18005.3 of the Health and Safety Code, or the registered owner, as defined in Section 18009.5 of the Health and Safety Code, if other than the homeowner, on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice to the legal owner, each junior lienholder, and the registered owner provided in subdivision (b) of Section 798.55, shall cure a default under this subdivision with respect to that payment.

(4) Cure of a default of rent, utility charges, or reasonable incidental service charges by the legal owner, any junior lienholder, or the registered owner, if other than the homeowner, as provided by this subdivision, may not be exercised more than twice during a 12–month period.

(5) If a homeowner has been given a three-day notice to pay the amount due or to vacate the tenancy on three or more occasions within the preceding 12–month period and each notice includes the provisions specified in paragraph (1), no written three-day notice shall be required in the case of a subsequent nonpayment of rent, utility charges, or reasonable incidental service charges.

In that event, the management shall give written notice to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure to remove the mobilehome from the park within a period of not less than 60 days, which period shall be specified in the notice. A copy of this notice shall be sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, as specified in paragraph (b) of Section 798.55, by certified or registered mail, return receipt requested, within 10 days after notice is sent to the homeowner.

(6) When a copy of the 60 days' notice described in paragraph (5) is sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, the default may be cured by any of them on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice, if all of the following conditions exist:

(A) A copy of a three-day notice sent pursuant to subdivision (b) of Section 798.55 to a homeowner for the nonpayment of rent, utility charges, or reasonable incidental service charges was not sent to the legal owner, junior lienholder, or registered owner, of the mobilehome, if other than the homeowner, during the preceding 12–month period.

(B) The legal owner, junior lienholder, or registered owner of the mobilehome, if other than the homeowner, has not previously cured a default of the homeowner during the preceding 12–month period.

(C) The legal owner, junior lienholder or registered owner, if other than the homeowner, is not a financial institution or mobilehome dealer.

If the default is cured by the legal owner, junior lienholder, or registered owner within the 30–day period, the notice to remove the mobilehome from the park described in paragraph (5) shall be rescinded.

(f) Condemnation of the park.

(g) Change of use of the park or any portion thereof, provided:

(1) The management gives the homeowners at least 15 days' written notice that the management will be appearing before a local governmental board, commission, or body to request permits for a change of use of the mobilehome park.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 12 of 253

(2) After all required permits requesting a change of use have been approved by the local governmental board, commission, or body, the management shall give the homeowners six months' or more written notice of termination of tenancy.

If the change of use requires no local governmental permits, then notice shall be given 12 months or more prior to the management's determination that a change of use will occur. The management in the notice shall disclose and describe in detail the nature of the change of use.

(3) The management gives each proposed homeowner written notice thereof prior to the inception of **\* \* \*  the homeowner's** tenancy that the management is requesting a change of use before local governmental bodies or that a change of use request has been granted.

(4) The notice requirements for termination of tenancy set forth in Sections 798.56 and 798.57 shall be followed if the proposed change actually occurs.

(5) A notice of a proposed change of use given prior to January 1, 1980, that conforms to the requirements in effect at that time shall be valid. The requirements for a notice of a proposed change of use imposed by this subdivision shall be governed by the law in effect at the time the notice was given.

(h) The report required pursuant to subdivisions (b) and (i) of Section 65863.7 of the Government Code shall be given to the homeowners or residents at the same time that notice is required pursuant to subdivision (g) of this section.

(i) For purposes of this section, "financial institution" means a state or national bank, state or federal savings and loan association or credit union, or similar organization, and mobilehome dealer as defined in Section 18002.6 of the Health and Safety Code or any other organization that, as part of its usual course of business, originates, owns, or provides loan servicing for loans secured by a mobilehome.

**(j) This section remain in effect until February 1, 2025, and as of that date is repealed.**

SEC. 5. Section 798.56 is added to the Civil Code, to read:

<< CA CIVIL § 798.56 >>

798.56. A tenancy shall be terminated by the management only for one or more of the following reasons:

(a) Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobilehomes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency.

(b) Conduct by the homeowner or resident, upon the park premises, that constitutes a substantial annoyance to other homeowners or residents.

(c)(1) Conviction of the homeowner or resident for prostitution, for a violation of subdivision (d) of Section 243, paragraph (2) of subdivision (a), or subdivision (b), of Section 245, Section 288, or Section 451, of the Penal Code, or a felony controlled substance offense, if the act resulting in the conviction was committed anywhere on the premises of the mobilehome park, including, but not limited to, within the homeowner's mobilehome.

(2) However, the tenancy may not be terminated for the reason specified in this subdivision if the person convicted of the offense has permanently vacated, and does not subsequently reoccupy, the mobilehome.

(d) Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto.

No act or omission of the homeowner or resident shall constitute a failure to comply with a reasonable rule or regulation unless and until the management has given the homeowner written notice of the alleged rule or regulation violation and the homeowner or resident has failed to adhere to the rule or regulation within seven days. However, if a homeowner has been given a written notice of an alleged violation of the same rule or regulation on three or more occasions within a 12–month period after the homeowner or resident has violated that rule or regulation, no written notice shall be required for a subsequent violation of the same rule or regulation.

Nothing in this subdivision shall relieve the management from its obligation to demonstrate that a rule or regulation has in fact been violated.

(e)(1) Nonpayment of rent, utility charges, or reasonable incidental service charges; provided that the amount due has been unpaid for a period of at least five days from its due date, and provided that the homeowner shall be given a three-day written notice subsequent to that five-day period to pay the amount due or to vacate the tenancy. For purposes of this subdivision, the five-day period does not include the date the payment is due. The three-day written notice shall be given to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure. A copy of this notice shall be sent to the persons or entities specified in subdivision (b) of Section 798.55 within 10 days after notice is delivered to the homeowner. If the homeowner cures the default, the notice need not be sent. The notice may be given at the same time as the 60 days' notice required for termination of the tenancy. A three-day notice given pursuant to this subdivision shall contain the following provisions printed in at least 12–point boldface type at the top of the notice, with the appropriate number written in the blank:

"Warning: This notice is the (insert number) three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to Civil Code Section 798.56 (e) (5),[2] if you have been given a three-day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your tenancy on three or more occasions within a 12–month period, management is not required to give you a further three-day period to pay rent or vacate the tenancy before your tenancy can be terminated."

(2) Payment by the homeowner prior to the expiration of the three-day notice period shall cure a default under this subdivision. If the homeowner does not pay prior to the expiration of the three-day notice period, the homeowner shall remain liable for all payments due up until the time the tenancy is vacated.

(3) Payment by the legal owner, as defined in Section 18005.8 of the Health and Safety Code, any junior lienholder, as defined in Section 18005.3 of the Health and Safety Code, or the registered owner, as defined in Section 18009.5 of the Health and Safety Code, if other than the homeowner, on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice to the legal owner, each junior lienholder, and the registered owner provided in subdivision (b) of Section 798.55, shall cure a default under this subdivision with respect to that payment.

(4) Cure of a default of rent, utility charges, or reasonable incidental service charges by the legal owner, any junior lienholder, or the registered owner, if other than the homeowner, as provided by this subdivision, may not be exercised more than twice during a 12–month period.

(5) If a homeowner has been given a three-day notice to pay the amount due or to vacate the tenancy on three or more occasions within the preceding 12–month period and each notice includes the provisions specified in paragraph (1), no written three-day notice shall be required in the case of a subsequent nonpayment of rent, utility charges, or reasonable incidental service charges.

In that event, the management shall give written notice to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure to remove the mobilehome from the park within a period of not less than 60 days, which period shall be

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 14 of 253

specified in the notice. A copy of this notice shall be sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, as specified in paragraph (b) of Section 798.55, by certified or registered mail, return receipt requested, within 10 days after notice is sent to the homeowner.

(6) When a copy of the 60 days' notice described in paragraph (5) is sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, the default may be cured by any of them on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice, if all of the following conditions exist:

(A) A copy of a three-day notice sent pursuant to subdivision (b) of Section 798.55 to a homeowner for the nonpayment of rent, utility charges, or reasonable incidental service charges was not sent to the legal owner, junior lienholder, or registered owner, of the mobilehome, if other than the homeowner, during the preceding 12–month period.

(B) The legal owner, junior lienholder, or registered owner of the mobilehome, if other than the homeowner, has not previously cured a default of the homeowner during the preceding 12–month period.

(C) The legal owner, junior lienholder or registered owner, if other than the homeowner, is not a financial institution or mobilehome dealer.

If the default is cured by the legal owner, junior lienholder, or registered owner within the 30–day period, the notice to remove the mobilehome from the park described in paragraph (5) shall be rescinded.

(f) Condemnation of the park.

(g) Change of use of the park or any portion thereof, provided:

(1) The management gives the homeowners at least 15 days' written notice that the management will be appearing before a local governmental board, commission, or body to request permits for a change of use of the mobilehome park.

(2) After all required permits requesting a change of use have been approved by the local governmental board, commission, or body, the management shall give the homeowners six months' or more written notice of termination of tenancy.

If the change of use requires no local governmental permits, then notice shall be given 12 months or more prior to the management's determination that a change of use will occur. The management in the notice shall disclose and describe in detail the nature of the change of use.

(3) The management gives each proposed homeowner written notice thereof prior to the inception of the homeowner's tenancy that the management is requesting a change of use before local governmental bodies or that a change of use request has been granted.

(4) The notice requirements for termination of tenancy set forth in Sections 798.56 and 798.57 shall be followed if the proposed change actually occurs.

(5) A notice of a proposed change of use given prior to January 1, 1980, that conforms to the requirements in effect at that time shall be valid. The requirements for a notice of a proposed change of use imposed by this subdivision shall be governed by the law in effect at the time the notice was given.

(h) The report required pursuant to subdivisions (b) and (i) of Section 65863.7 of the Government Code shall be given to the homeowners or residents at the same time that notice is required pursuant to subdivision (g) of this section.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 15 of 253

(i) For purposes of this section, "financial institution" means a state or national bank, state or federal savings and loan association or credit union, or similar organization, and mobilehome dealer as defined in Section 18002.6 of the Health and Safety Code or any other organization that, as part of its usual course of business, originates, owns, or provides loan servicing for loans secured by a mobilehome.

(j) This section shall become operative on February 1, 2025.

SEC. 6. Section 1942.5 of the Civil Code is amended to read:

<< CA CIVIL § 1942.5 >>

1942.5. (a) If the lessor retaliates against the lessee because of the exercise by the lessee of \* \* \* **the lessee's** rights under this chapter or because of \* \* \* **the lessee's** complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of \* \* \* rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180–day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12–month period.

(c) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d) Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because \* \* \* **the lessee** has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. **It is also unlawful for a lessor to bring an action for unlawful detainer based on a cause of action other than nonpayment of COVID–19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the purpose of retaliating against the lessee because the lessee has a COVID–19 rental debt.** In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 16 of 253

(e) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f) This section does not limit in any way the exercise by the lessor of ~~* * *~~ **the lessor's** rights under any lease or agreement or any law pertaining to the hiring of property or ~~* * *~~ **the lessor's** right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of ~~* * *~~ **the lessee's** rights under this section is void as contrary to public policy.

(g) Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k) A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

(*l*) **This section shall remain in effect until February 1, 2021, and as of that date is repealed.**

SEC. 7. Section 1942.5 is added to the Civil Code, to read:

<< CA CIVIL § 1942.5 >>

1942.5. (a) If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 17 of 253

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180–day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12–month period.

(c) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d) Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f) This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g) Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k) A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 18 of 253

(*l*) This section shall become operative on February 1, 2021.

SEC. 8. Section 1946.2 of the Civil Code is amended to read:

<< CA CIVIL § 1946.2 >>

1946.2. (a) Notwithstanding any other law, after a tenant has continuously and lawfully occupied a residential real property for 12 months, the owner of the residential real property shall not terminate the tenancy without just cause, which shall be stated in the written notice to terminate tenancy. If any additional adult tenants are added to the lease before an existing tenant has continuously and lawfully occupied the residential real property for 24 months, then this subdivision shall only apply if either of the following are satisfied:

(1) All of the tenants have continuously and lawfully occupied the residential real property for 12 months or more.

(2) One or more tenants have continuously and lawfully occupied the residential real property for 24 months or more.

(b) For purposes of this section, "just cause" includes either of the following:

(1) At–fault just cause, which is any of the following:

(A) Default in the payment of rent.

(B) A breach of a material term of the lease, as described in paragraph (3) of Section 1161 of the Code of Civil Procedure, including, but not limited to, violation of a provision of the lease after being issued a written notice to correct the violation.

(C) Maintaining, committing, or permitting the maintenance or commission of a nuisance as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(D) Committing waste as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(E) The tenant had a written lease that terminated on or after January 1, 2020, and after a written request or demand from the owner, the tenant has refused to execute a written extension or renewal of the lease for an additional term of similar duration with similar provisions, provided that those terms do not violate this section or any other provision of law.

(F) Criminal activity by the tenant on the residential real property, including any common areas, or any criminal activity or criminal threat, as defined in subdivision (a) of Section 422 of the Penal Code, on or off the residential real property, that is directed at any owner or agent of the owner of the residential real property.

(G) Assigning or subletting the premises in violation of the tenant's lease, as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(H) The tenant's refusal to allow the owner to enter the residential real property as authorized by Sections 1101.5 and 1954 of this code, and Sections 13113.7 and 17926.1 of the Health and Safety Code.

(I) Using the premises for an unlawful purpose as described in paragraph (4) of Section 1161 of the Code of Civil Procedure.

(J) The employee, agent, or licensee's failure to vacate after their termination as an employee, agent, or a licensee as described in paragraph (1) of Section 1161 of the Code of Civil Procedure.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 19 of 253

(K) When the tenant fails to deliver possession of the residential real property after providing the owner written notice as provided in Section 1946 of the tenant's intention to terminate the hiring of the real property, or makes a written offer to surrender that is accepted in writing by the landlord, but fails to deliver possession at the time specified in that written notice as described in paragraph (5) of Section 1161 of the Code of Civil Procedure.

(2) No–fault just cause, which includes any of the following:

(A)(i) Intent to occupy the residential real property by the owner or their spouse, domestic partner, children, grandchildren, parents, or grandparents.

(ii) For leases entered into on or after July 1, 2020, clause (i) shall apply only if the tenant agrees, in writing, to the termination, or if a provision of the lease allows the owner to terminate the lease if the owner, or their spouse, domestic partner, children, grandchildren, parents, or grandparents, unilaterally decides to occupy the residential real property. Addition of a provision allowing the owner to terminate the lease as described in this clause to a new or renewed rental agreement or fixed-term lease constitutes a similar provision for the purposes of subparagraph (E) of paragraph (1).

(B) Withdrawal of the residential real property from the rental market.

(C)(i) The owner complying with any of the following:

(I) An order issued by a government agency or court relating to habitability that necessitates vacating the residential real property.

(II) An order issued by a government agency or court to vacate the residential real property.

(III) A local ordinance that necessitates vacating the residential real property.

(ii) If it is determined by any government agency or court that the tenant is at fault for the condition or conditions triggering the order or need to vacate under clause (i), the tenant shall not be entitled to relocation assistance as outlined in paragraph (3) of subdivision (d).

(D)(i) Intent to demolish or to substantially remodel the residential real property.

(ii) For purposes of this subparagraph, "substantially remodel" means the replacement or substantial modification of any structural, electrical, plumbing, or mechanical system that requires a permit from a governmental agency, or the abatement of hazardous materials, including lead-based paint, mold, or asbestos, in accordance with applicable federal, state, and local laws, that cannot be reasonably accomplished in a safe manner with the tenant in place and that requires the tenant to vacate the residential real property for at least 30 days. Cosmetic improvements alone, including painting, decorating, and minor repairs, or other work that can be performed safely without having the residential real property vacated, do not qualify as substantial rehabilitation.

(c) Before an owner of residential real property issues a notice to terminate a tenancy for just cause that is a curable lease violation, the owner shall first give notice of the violation to the tenant with an opportunity to cure the violation pursuant to paragraph (3) of Section 1161 of the Code of Civil Procedure. If the violation is not cured within the time period set forth in the notice, a three-day notice to quit without an opportunity to cure may thereafter be served to terminate the tenancy.

(d)(1) For a tenancy for which just cause is required to terminate the tenancy under subdivision (a), if an owner of residential real property issues a termination notice based on a no-fault just cause described in paragraph (2) of subdivision (b), the owner shall, regardless of the tenant's income, at the owner's option, do one of the following:

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 20 of 253

(A) Assist the tenant to relocate by providing a direct payment to the tenant as described in paragraph (3).

(B) Waive in writing the payment of rent for the final month of the tenancy, prior to the rent becoming due.

(2) If an owner issues a notice to terminate a tenancy for no-fault just cause, the owner shall notify the tenant of the tenant's right to relocation assistance or rent waiver pursuant to this section. If the owner elects to waive the rent for the final month of the tenancy as provided in subparagraph (B) of paragraph (1), the notice shall state the amount of rent waived and that no rent is due for the final month of the tenancy.

(3)(A) The amount of relocation assistance or rent waiver shall be equal to one month of the tenant's rent that was in effect when the owner issued the notice to terminate the tenancy. Any relocation assistance shall be provided within 15 calendar days of service of the notice.

(B) If a tenant fails to vacate after the expiration of the notice to terminate the tenancy, the actual amount of any relocation assistance or rent waiver provided pursuant to this subdivision shall be recoverable as damages in an action to recover possession.

(C) The relocation assistance or rent waiver required by this subdivision shall be credited against any other relocation assistance required by any other law.

(4) An owner's failure to strictly comply with this subdivision shall render the notice of termination void.

(e) This section shall not apply to the following types of residential real properties or residential circumstances:

(1) Transient and tourist hotel occupancy as defined in subdivision (b) of Section 1940.

(2) Housing accommodations in a nonprofit hospital, religious facility, extended care facility, licensed residential care facility for the elderly, as defined in Section 1569.2 of the Health and Safety Code, or an adult residential facility, as defined in Chapter 6 of Division 6 of Title 22 of the Manual of Policies and Procedures published by the State Department of Social Services.

(3) Dormitories owned and operated by an institution of higher education or a kindergarten and grades 1 to 12, inclusive, school.

(4) Housing accommodations in which the tenant shares bathroom or kitchen facilities with the owner who maintains their principal residence at the residential real property.

(5) Single–family owner-occupied residences, including a residence in which the owner-occupant rents or leases no more than two units or bedrooms, including, but not limited to, an accessory dwelling unit or a junior accessory dwelling unit.

(6) A * * * **property containing two separate dwelling units within a single structure** in which the owner occupied one of the units as the owner's principal place of residence at the beginning of the tenancy, so long as the owner continues in occupancy**, and neither unit is an accessory dwelling unit or a junior accessory dwelling unit**.

(7) Housing that has been issued a certificate of occupancy within the previous 15 years.

(8) Residential real property that is alienable separate from the title to any other dwelling unit, provided that both of the following apply:

(A) The owner is not any of the following:

(i) A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.[3]

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 21 of 253

(ii) A corporation.

(iii) A limited liability company in which at least one member is a corporation.

(B)(i) The tenants have been provided written notice that the residential property is exempt from this section using the following statement:

"This property is not subject to the rent limits imposed by Section 1947.12 of the Civil Code and is not subject to the just cause requirements of Section 1946.2 of the Civil Code. This property meets the requirements of Sections 1947.12 (d)(5) and 1946.2 (e)(8) of the Civil Code and the owner is not any of the following: (1) a real estate investment trust, as defined by Section 856 of the Internal Revenue Code; (2) a corporation; or (3) a limited liability company in which at least one member is a corporation." (ii) For a tenancy existing before July 1, 2020, the notice required under clause (i) may, but is not required to, be provided in the rental agreement.

(iii) For any tenancy commenced or renewed on or after July 1, 2020, the notice required under clause (i) must be provided in the rental agreement.

(iv) Addition of a provision containing the notice required under clause (i) to any new or renewed rental agreement or fixed-term lease constitutes a similar provision for the purposes of subparagraph (E) of paragraph (1) of subdivision (b).

(9) Housing restricted by deed, regulatory restriction contained in an agreement with a government agency, or other recorded document as affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code, or subject to an agreement that provides housing subsidies for affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code or comparable federal statutes.

(f) An owner of residential real property subject to this section shall provide notice to the tenant as follows:

(1) For any tenancy commenced or renewed on or after July 1, 2020, as an addendum to the lease or rental agreement, or as a written notice signed by the tenant, with a copy provided to the tenant.

(2) For a tenancy existing prior to July 1, 2020, by written notice to the tenant no later than August 1, 2020, or as an addendum to the lease or rental agreement.

(3) The notification or lease provision shall be in no less than 12–point type, and shall include the following:

"California law limits the amount your rent can be increased. See Section 1947.12 of the Civil Code for more information. California law also provides that after all of the tenants have continuously and lawfully occupied the property for 12 months or more or at least one of the tenants has continuously and lawfully occupied the property for 24 months or more, a landlord must provide a statement of cause in any notice to terminate a tenancy. See Section 1946.2 of the Civil Code for more information." The provision of the notice shall be subject to Section 1632.
(g)(1) This section does not apply to the following residential real property:

(A) Residential real property subject to a local ordinance requiring just cause for termination of a residential tenancy adopted on or before September 1, 2019, in which case the local ordinance shall apply.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 22 of 253

(B) Residential real property subject to a local ordinance requiring just cause for termination of a residential tenancy adopted or amended after September 1, 2019, that is more protective than this section, in which case the local ordinance shall apply. For purposes of this subparagraph, an ordinance is "more protective" if it meets all of the following criteria:

(i) The just cause for termination of a residential tenancy under the local ordinance is consistent with this section.

(ii) The ordinance further limits the reasons for termination of a residential tenancy, provides for higher relocation assistance amounts, or provides additional tenant protections that are not prohibited by any other provision of law.

(iii) The local government has made a binding finding within their local ordinance that the ordinance is more protective than the provisions of this section.

(2) A residential real property shall not be subject to both a local ordinance requiring just cause for termination of a residential tenancy and this section.

(3) A local ordinance adopted after September 1, 2019, that is less protective than this section shall not be enforced unless this section is repealed.

(h) Any waiver of the rights under this section shall be void as contrary to public policy.

(i) For the purposes of this section, the following definitions shall apply:

(1) "Owner" and "residential real property" have the same meaning as those terms are defined in Section 1954.51.

(2) "Tenancy" means the lawful occupation of residential real property and includes a lease or sublease.

(j) This section shall remain in effect only until January 1, 2030, and as of that date is repealed.

SEC. 9. Section 1947.12 of the Civil Code is amended to read:

<< CA CIVIL § 1947.12 >>

1947.12. (a)(1) Subject to subdivision (b), an owner of residential real property shall not, over the course of any 12–month period, increase the gross rental rate for a dwelling or a unit more than 5 percent plus the percentage change in the cost of living, or 10 percent, whichever is lower, of the lowest gross rental rate charged for that dwelling or unit at any time during the 12 months prior to the effective date of the increase. In determining the lowest gross rental amount pursuant to this section, any rent discounts, incentives, concessions, or credits offered by the owner of such unit of residential real property and accepted by the tenant shall be excluded. The gross per-month rental rate and any owner-offered discounts, incentives, concessions, or credits shall be separately listed and identified in the lease or rental agreement or any amendments to an existing lease or rental agreement.

(2) If the same tenant remains in occupancy of a unit of residential real property over any 12–month period, the gross rental rate for the unit of residential real property shall not be increased in more than two increments over that 12–month period, subject to the other restrictions of this subdivision governing gross rental rate increase.

(b) For a new tenancy in which no tenant from the prior tenancy remains in lawful possession of the residential real property, the owner may establish the initial rental rate not subject to subdivision (a). Subdivision (a) is only applicable to subsequent increases after that initial rental rate has been established.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 23 of 253

(c) A tenant of residential real property subject to this section shall not enter into a sublease that results in a total rent for the premises that exceeds the allowable rental rate authorized by subdivision (a). Nothing in this subdivision authorizes a tenant to sublet or assign the tenant's interest where otherwise prohibited.

(d) This section shall not apply to the following residential real properties:

(1) Housing restricted by deed, regulatory restriction contained in an agreement with a government agency, or other recorded document as affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code, or subject to an agreement that provides housing subsidies for affordable housing for persons and families of very low, low, or moderate income, as defined in Section 50093 of the Health and Safety Code or comparable federal statutes.

(2) Dormitories **owned** and \* \* \* **operated by an institution of** higher education \* \* \* **or a kindergarten and grades 1 to 12, inclusive, school**.

(3) Housing subject to rent or price control through a public entity's valid exercise of its police power consistent with Chapter 2.7 (commencing with Section 1954.50) that restricts annual increases in the rental rate to an amount less than that provided in subdivision (a).

(4) Housing that has been issued a certificate of occupancy within the previous 15 years.

(5) Residential real property that is alienable separate from the title to any other dwelling unit, provided that both of the following apply:

(A) The owner is not any of the following:

(i) A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.[4]

(ii) A corporation.

(iii) A limited liability company in which at least one member is a corporation.

(B)(i) The tenants have been provided written notice that the residential real property is exempt from this section using the following statement:

"This property is not subject to the rent limits imposed by Section 1947.12 of the Civil Code and is not subject to the just cause requirements of Section 1946.2 of the Civil Code. This property meets the requirements of Sections 1947.12 **(d)(5)** and 1946.2 **(e)(8)** of the Civil Code and the owner is not any of the following: (1) a real estate investment trust, as defined by Section 856 of the Internal Revenue Code; (2) a corporation; or (3) a limited liability company in which at least one member is a corporation."

(ii) For a tenancy existing before July 1, 2020, the notice required under clause (i) may, but is not required to, be provided in the rental agreement.

(iii) For a tenancy commenced or renewed on or after July 1, 2020, the notice required under clause (i) must be provided in the rental agreement.

(iv) Addition of a provision containing the notice required under clause (i) to any new or renewed rental agreement or fixed-term lease constitutes a similar provision for the purposes of subparagraph (E) of paragraph (1) of subdivision (b) of Section 1946.2.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 24 of 253

(6) A **\* \* \*  property containing two separate dwelling units within a single structure** in which the owner occupied one of the units as the owner's principal place of residence at the beginning of the tenancy, so long as the owner continues in occupancy**, and neither unit is an accessory dwelling unit or a junior accessory dwelling unit**.

(e) An owner shall provide notice of any increase in the rental rate, pursuant to subdivision (a), to each tenant in accordance with Section 827.

(f)(1) On or before January 1, 2030, the Legislative Analyst's Office shall report to the Legislature regarding the effectiveness of this section and Section 1947.13. The report shall include, but not be limited to, the impact of the rental rate cap pursuant to subdivision (a) on the housing market within the state.

(2) The report required by paragraph (1) shall be submitted in compliance with Section 9795 of the Government Code.

(g) For the purposes of this section, the following definitions shall apply:

**(1) "Consumer Price Index for All Urban Consumers for All Items" means the following:**

**(A) The Consumer Price Index for All Urban Consumers for All Items (CPI–U) for the metropolitan area in which the property is located, as published by the United States Bureau of Labor Statistics, which are as follows:**

**(i) The CPI–U for the Los Angeles–Long Beach–Anaheim metropolitan area covering the Counties of Los Angeles and Orange.**

**(ii) The CPI–U for the Riverside–San Bernardo–Ontario metropolitan area covering the Counties of Riverside and San Bernardino.**

**(iii) The CPI–U for the San Diego–Carlsbad metropolitan area covering the County of San Diego.**

**(iv) The CPI–U for the San Francisco–Oakland–Hayward metropolitan area covering the Counties of Alameda, Contra Costa, Marin, San Francisco, and San Mateo.**

**(v) Any successor metropolitan area index to any of the indexes listed in clauses (i) to (iv), inclusive.**

**(B) If the United States Bureau of Labor Statistics does not publish a CPI–U for the metropolitan area in which the property is located, the California Consumer Price Index for All Urban Consumers for All Items as published by the Department of Industrial Relations.**

**(C) On or after January 1, 2021, if the United States Bureau of Labor Statistics publishes a CPI–U index for one or more metropolitan areas not listed in subparagraph (A), that CPI–U index shall apply in those areas with respect to rent increases that take effect on or after August 1 of the calendar year in which the 12–month change in that CPI–U, as described in subparagraph (B) of paragraph (3), is first published.**

**(2)** "Owner" and "residential real property" shall have the same meaning as those terms are defined in Section 1954.51.

**(3)(A)** "Percentage change in the cost of living" means the percentage change \* \* \* **, computed pursuant to subparagraph (B), in the applicable, as determined pursuant to paragraph (1),** Consumer Price Index for All Urban Consumers for \* \* \*  **All Items**.

**(B)(i) For rent increases that take effect before August 1 of any calendar year, the following shall apply:**

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 25 of 253

**(I) The percentage change shall be the percentage change in the amount published for April of the immediately preceding calendar year and April of the year before that.**

**(II) If there is not an amount published in April for the applicable geographic area, the percentage change shall be the percentage change in the amount published for March of the immediately preceding calendar year and March of the year before that.**

**(ii) For rent increases that take effect on or after August 1 of any calendar year, the following shall apply:**

**(I) The percentage change shall be the percentage change in the amount published for April of that calendar year and April of the immediately preceding calendar year.**

**(II) If there is not an amount published in April for the applicable geographic area, the percentage change shall be the percentage change in the amount published for March of that calendar year and March of the immediately preceding calendar year.**

**(iii) The percentage change shall be rounded to the nearest one-tenth of 1 percent.**

**(4)** "Tenancy" means the lawful occupation of residential real property and includes a lease or sublease.

(h)(1) This section shall apply to all rent increases subject to subdivision (a) occurring on or after March 15, 2019. * * *

(2) In the event that an owner has increased the rent by more than the amount permissible under subdivision (a) between March 15, 2019, and January 1, 2020, both of the following shall apply:

(A) The applicable rent on January 1, 2020, shall be the rent as of March 15, 2019, plus the maximum permissible increase under subdivision (a).

(B) An owner shall not be liable to the tenant for any corresponding rent overpayment.

(3) An owner of residential real property subject to subdivision (a) who increased the rental rate on that residential real property on or after March 15, 2019, but prior to January 1, 2020, by an amount less than the rental rate increase permitted by subdivision (a) shall be allowed to increase the rental rate twice, as provided in paragraph (2) of subdivision (a), within 12 months of March 15, 2019, but in no event shall that rental rate increase exceed the maximum rental rate increase permitted by subdivision (a).

(i) Any waiver of the rights under this section shall be void as contrary to public policy.

(j) This section shall remain in effect until January 1, 2030, and as of that date is repealed.

(k)(1) The Legislature finds and declares that the unique circumstances of the current housing crisis require a statewide response to address rent gouging by establishing statewide limitations on gross rental rate increases.

(2) It is the intent of the Legislature that this section should apply only for the limited time needed to address the current statewide housing crisis, as described in paragraph (1). This section is not intended to expand or limit the authority of local governments to establish local policies regulating rents consistent with Chapter 2.7 (commencing with Section 1954.50), nor is it a statement regarding the appropriate, allowable rental rate increase when a local government adopts a policy regulating rent that is otherwise consistent with Chapter 2.7 (commencing with Section 1954.50).

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB Document 62 Filed 07/18/22 Page 26 of 253

(3) Nothing in this section authorizes a local government to establish limitations on any rental rate increases not otherwise permissible under Chapter 2.7 (commencing with Section 1954.50), or affects the existing authority of a local government to adopt or maintain rent controls or price controls consistent with that chapter.

SEC. 10. Section 1947.13 of the Civil Code is amended to read:

<< CA CIVIL § 1947.13 >>

1947.13. (a) Notwithstanding **subdivision (a) of** Section 1947.12, upon the expiration of rental restrictions, the following shall apply:

(1) The owner of an assisted housing development who demonstrates, under penalty of perjury, compliance with all applicable provisions of Sections 65863.10, 65863.11, and 65863.13 of the Government Code and any other applicable **federal, state, or local** law or regulation \* \* \* may establish the initial unassisted rental rate for units in the applicable housing development. Any subsequent rent increase in the development shall be subject to Section 1947.12.

(2) The owner of a deed-restricted affordable housing unit or an affordable housing unit subject to a regulatory restriction contained in an agreement with a government agency limiting rental rates that is not within an assisted housing development may**, subject to any applicable federal, state, or local law or regulation,** establish the initial rental rate for the unit upon the expiration of the restriction. Any subsequent rent increase for the unit shall be subject to Section 1947.12.

(b) For purposes of this section:

(1) "Assisted housing development" has the same meaning as defined in paragraph (3) of subdivision (a) of Section 65863.10 of the Government Code.

(2) "Expiration of rental restrictions" has the same meaning as defined in paragraph (5) of subdivision (a) of Section 65863.10 of the Government Code.

(c) This section shall remain in effect until January 1, 2030, and as of that date is repealed.

(d) Any waiver of the rights under this shall be void as contrary to public policy.

**(e) This section shall not be construed to preempt any local law.**

SEC. 11. Section 2924.15 of the Civil Code is amended to read:

<< CA CIVIL § 2924.15 >>

2924.15. **(a)** Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to **a** first lien **mortgage** or **deed** of trust that \* \* \* **meets either of the following criteria:**

**(1)(A) The first lien mortgage or deed of trust is** secured by owner-occupied residential real property containing no more than four dwelling units.

**(B)** For \* \* \* purposes **of this paragraph**, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 27 of 253

**(2) The first lien mortgage or deed of trust is secured by residential real property that is occupied by a tenant, contains no more than four dwelling units, and meets all of the conditions described in subparagraph (B).**

**(A) For the purposes of this paragraph:**

**(i) "Applicable lease" means a lease entered pursuant to an arm's length transaction before, and in effect on, March 4, 2020.**

**(ii) "Arm's length transaction" means a lease entered into in good faith and for valuable consideration that reflects the fair market value in the open market between informed and willing parties.**

**(iii) "Occupied by a tenant" means that the property is the principal residence of a tenant.**

**(B) To meet the conditions of this subdivision, a first lien mortgage or deed of trust shall have all of the following characteristics:**

**(i) The property is owned by an individual who owns no more than three residential real properties, or by one or more individuals who together own no more than three residential real properties, each of which contains no more than four dwelling units.**

**(ii) The property is occupied by a tenant pursuant to an applicable lease.**

**(iii) A tenant occupying the property is unable to pay rent due to a reduction in income resulting from the novel coronavirus.**

**(C) Relief shall be available pursuant to subdivision (a) of Section 2924 and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 for so long as the property remains occupied by a tenant pursuant to a lease entered in an arm's length transaction.**

**(b) This section shall remain in effect until January 1, 2023, and as of that date is repealed.**

SEC. 12. Section 2924.15 is added to the Civil Code, to read:

<< CA CIVIL § 2924.15 >>

2924.15. (a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924 and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to a first lien mortgage or deed of trust that is secured by owner-occupied residential real property containing no more than four dwelling units.

(b) As used in this section, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(c) This section shall become operative on January 1, 2023.

SEC. 13. Title 19 (commencing with Section 3273.01) is added to Part 4 of Division 3 of the Civil Code, to read:

d. 3 pt. 4 t. 19 pr. § 3273.01

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 28 of 253

TITLE 19. COVID–19 SMALL LANDLORD AND HOMEOWNER RELIEF ACT

d. 3 pt. 4 t. 19 ch. 1 pr. § 3273.01

Chapter 1. Title and Definitions

<< CA CIVIL § 3273.01 >>

3273.01. This title is known, and may be cited, as the "COVID–19 Small Landlord and Homeowner Relief Act of 2020."

<< CA CIVIL § 3273.1 >>

3273.1. For purposes of this title:

(a)(1) "Borrower" means any of the following:

(A) A natural person who is a mortgagor or trustor or a confirmed successor in interest, as defined in Section 1024.31 of Title 12 of the Code of Federal Regulations.

(B) An entity other than a natural person only if the secured property contains no more than four dwelling units and is currently occupied by one or more residential tenants.

(2) "Borrower" shall not include an individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(3) Unless the property securing the mortgage contains one or more deed-restricted affordable housing units or one or more affordable housing units subject to a regulatory restriction limiting rental rates that is contained in an agreement with a government agency, the following mortgagors shall not be considered a "borrower":

(A) A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.[5]

(B) A corporation.

(C) A limited liability company in which at least one member is a corporation.

(4) "Borrower" shall also mean a person who holds a power of attorney for a borrower described in paragraph (1).

(b) "Effective time period" means the time period between the operational date of this title and April 1, 2021.

(c)(1) "Mortgage servicer" or "lienholder" means a person or entity who directly services a loan or who is responsible for interacting with the borrower, managing the loan account on a daily basis, including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent.

(2) "Mortgage servicer" or "lienholder" also means a subservicing agent to a master servicer by contract.

(3) "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 29 of 253

<< CA CIVIL § 3273.2 >>

3273.2. (a) The provisions of this title apply to a mortgage or deed of trust that is secured by residential property containing no more than four dwelling units, including individual units of condominiums or cooperatives, and that was outstanding as of the enactment date of this title.

(b) The provisions of this title shall apply to a depository institution chartered under federal or state law, a person covered by the licensing requirements of Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code.

d. 3 pt. 4 t. 19 ch. 2 pr. § 3273.10

Chapter 2. Mortgages

<< CA CIVIL § 3273.10 >>

3273.10. (a) If a mortgage servicer denies a forbearance request made during the effective time period, the mortgage servicer shall provide written notice to the borrower that sets forth the specific reason or reasons that forbearance was not provided, if both of the following conditions are met:

(1) The borrower was current on payment as of February 1, 2020.

(2) The borrower is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID–19 emergency.

(b) If the written notice in subdivision (a) cites any defect in the borrower's request, including an incomplete application or missing information, that is curable, the mortgage servicer shall do all of the following:

(1) Specifically identify any curable defect in the written notice.

(2) Provide 21 days from the mailing date of the written notice for the borrower to cure any identified defect.

(3) Accept receipt of the borrower's revised request for forbearance before the aforementioned 21–day period lapses.

(4) Respond to the borrower's revised request within five business days of receipt of the revised request.

(c) If a mortgage servicer denies a forbearance request, the declaration required by subdivision (b) of Section 2923.5 shall include the written notice together with a statement as to whether forbearance was or was not subsequently provided.

(d) A mortgage servicer, mortgagee, or beneficiary of the deed of trust, or an authorized agent thereof, who, with respect to a borrower of a federally backed mortgage, complies with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116–136),[6] including any amendments or revisions to those provisions, shall be deemed to be in compliance with this section. A mortgage servicer of a nonfederally backed mortgage that provides forbearance that is consistent with the requirements of the CARES Act for federally backed mortgages shall be deemed to be in compliance with this section.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 30 of 253

<< CA CIVIL § 3273.11 >>

3273.11. (a) A mortgage servicer shall comply with applicable federal guidance regarding borrower options following a COVID–19 related forbearance.

(b) Any mortgage servicer, mortgagee, or beneficiary of the deed of trust, or authorized agent thereof, who, with respect to a borrower of a federally backed loan, complies with the guidance to mortgagees regarding borrower options following a COVID–19–related forbearance provided by the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), the Federal Housing Administration of the United States Department of Housing and Urban Development, the United States Department of Veterans Affairs, or the Rural Development division of the United States Department of Agriculture, including any amendments, updates, or revisions to that guidance, shall be deemed to be in compliance with this section.

(c) With respect to a nonfederally backed loan, any mortgage servicer, mortgagee, or beneficiary of the deed of trust, or authorized agent thereof, who, regarding borrower options following a COVID–19 related forbearance, reviews a customer for a solution that is consistent with the guidance to servicers, mortgagees, or beneficiaries provided by Fannie Mae, Freddie Mac, the Federal Housing Administration of the Department of Housing and Urban Development, the Department of Veterans Affairs, or the Rural Development division of the Department of Agriculture, including any amendments, updates or revisions to such guidance, shall be deemed to be in compliance with this section.

<< CA CIVIL § 3273.12 >>

3273.12. It is the intent of the Legislature that a mortgage servicer offer a borrower a postforbearance loss mitigation option that is consistent with the mortgage servicer's contractual or other authority.

<< CA CIVIL § 3273.14 >>

3273.14. A mortgage servicer shall communicate about forbearance and postforbearance options described in this article in the borrower's preferred language when the mortgage servicer regularly communicates with any borrower in that language.

<< CA CIVIL § 3273.15 >>

3273.15. (a) A borrower who is harmed by a material violation of this title may bring an action to obtain injunctive relief, damages, restitution, and any other remedy to redress the violation.

(b) A court may award a prevailing borrower reasonable attorney's fees and costs in any action based on any violation of this title in which injunctive relief against a sale, including a temporary restraining order, is granted. A court may award a prevailing borrower reasonable attorney's fees and costs in an action for a violation of this article in which relief is granted but injunctive relief against a sale is not granted.

(c) The rights, remedies, and procedures provided to borrowers by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. This section shall not be construed to alter, limit, or negate any other rights, remedies, or procedures provided to borrowers by law.

<< CA CIVIL § 3273.16 >>

3273.16. Any waiver by a borrower of the provisions of this article is contrary to public policy and shall be void.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 31 of 253

SEC. 14. Section 116.223 is added to the Code of Civil Procedure, to read:

<< CA CIV PRO § 116.223 >>

116.223. (a) The Legislature hereby finds and declares as follows:

(1) There is anticipated to be an unprecedented number of claims arising out of nonpayment of residential rent that occurred between March 1, 2020, and January 31, 2021, related to the COVID–19 pandemic.

(2) These disputes are of special importance to the parties and of significant social and economic consequence collectively as the people of the State of California grapple with the health, economic, and social impacts of the COVID–19 pandemic.

(3) It is essential that the parties have access to a judicial forum to resolve these disputes expeditiously, inexpensively, and fairly.

(4) It is the intent of the Legislature that landlords of residential real property and their tenants have the option to litigate disputes regarding rent which is unpaid for the time period between March 1, 2020, and January 31, 2021, in the small claims court. It is the intent of the Legislature that the jurisdictional limits of the small claims court not apply to these disputes over COVID–19 rental debt.

(b)(1) Notwithstanding paragraph (1) of subdivision (a) Section 116.220, Section 116.221, or any other law, the small claims court has jurisdiction in any action for recovery of COVID–19 rental debt, as defined in Section 1179.02, and any defenses thereto, regardless of the amount demanded.

(2) In an action described in paragraph (1), the court shall reduce the damages awarded for any amount of COVID–19 rental debt sought by payments made to the landlord to satisfy the COVID–19 rental debt, including payments by the tenant, rental assistance programs, or another third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(3) An action to recover COVID–19 rental debt, as defined in Section 1179.02, brought pursuant to this subdivision shall not be commenced before March 1, 2021.

(c) Any claim for recovery of COVID–19 rental debt, as defined in Section 1179.02, shall not be subject to Section 116.231, notwithstanding the fact that a landlord of residential rental property may have brought two or more small claims actions in which the amount demanded exceeded two thousand five hundred dollars ($2,500) in any calendar year.

(d) This section shall remain in effect until February 1, 2025, and as of that date is repealed.

SEC. 15. Section 1161 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1161 >>

1161. A tenant of real property, for a term less than life, or the executor or administrator of * * * **the tenant's** estate heretofore qualified and now acting or hereafter to be qualified and act, is guilty of unlawful detainer:

1. When * * * **the tenant** continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to * * * **the tenant**; provided the expiration is of a nondefault nature however brought about without the permission of * * * **the** landlord, or the successor in estate of * * * **the** landlord, if applicable; including the case where the person to be removed became the occupant of the premises as a servant, employee, agent, or licensee and the relation of master and servant, or employer and employee, or principal and agent, or licensor and licensee, has been lawfully

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 32 of 253

terminated or the time fixed for occupancy by the agreement between the parties has expired; but nothing in this subdivision shall be construed as preventing the removal of the occupant in any other lawful manner; but in case of a tenancy at will, it **shall** first be terminated by notice, as prescribed in the Civil Code.

2. When \* \* \* **the tenant** continues in possession, in person or by subtenant, without the permission of \* \* \* **the** landlord, or the successor in estate of \* \* \* **the** landlord, if applicable, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring its payment, stating the amount **that** is due, the name, telephone number, and address of the person to whom the rent payment shall be made, and, if payment may be made personally, the usual days and hours that person will be available to receive the payment (provided that, if the address does not allow for personal delivery, then it shall be conclusively presumed that upon the mailing of any rent or notice to the owner by the tenant to the name and address provided, the notice or rent is deemed received by the owner on the date posted, if the tenant can show proof of mailing to the name and address provided by the owner), or the number of an account in a financial institution into which the rental payment may be made, and the name and street address of the institution (provided that the institution is located within five miles of the rental property), or if an electronic funds transfer procedure has been previously established, that payment may be made pursuant to that procedure, or possession of the property, shall have been served upon \* \* \* **the tenant** and if there is a subtenant in actual occupation of the premises, also upon the subtenant.

The notice may be served at any time within one year after the rent becomes due. In all cases of tenancy upon agricultural lands, **if** the tenant has held over and retained possession for more than 60 days after the expiration of the term without any demand of possession or notice to quit by the landlord or the successor in estate of \* \* \* **the** landlord, if applicable, \* \* \* **the tenant** shall be deemed to be holding by permission of the landlord or successor in estate of \* \* \* **the** landlord, if applicable, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during that year, and the holding over for that period shall be taken and construed as a consent on the part of a tenant to hold for another year.

**An unlawful detainer action under this paragraph shall be subject to the COVID–19 Tenant Relief Act of 2020 (Chapter 5 (commencing with Section 1179.01)) if the default in the payment of rent is based upon the COVID–19 rental debt.**

3. When \* \* \* **the tenant** continues in possession, in person or by subtenant, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than the one for the payment of rent, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring the performance of **those** conditions or covenants, or the possession of the property, shall have been served upon \* \* \* **the tenant**, and if there is a subtenant in actual occupation of the premises, also, upon the subtenant. Within three days, excluding Saturdays and Sundays and other judicial holidays, after the service of the notice, the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform the conditions or covenants of the lease or pay the stipulated rent, as the case may be, and thereby save the lease from forfeiture; provided, if the conditions and covenants of the lease, violated by the lessee, cannot afterward be performed, then no notice, as last prescribed herein, need be given to the lessee or \* \* \* **the** subtenant, demanding the performance of the violated conditions or covenants of the lease.

A tenant may take proceedings, similar to those prescribed in this chapter, to obtain possession of the premises let to a subtenant or held by a servant, employee, agent, or licensee, in case of \* \* \* **that person's** unlawful detention of the premises underlet to \* \* \* or held by \* \* \* **that person**.

**An unlawful detainer action under this paragraph shall be subject to the COVID–19 Tenant Relief Act of 2020 (Chapter 5 (commencing with Section 1179.01)) if the neglect or failure to perform other conditions or covenants of the lease or agreement is based upon the COVID–19 rental debt.**

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 33 of 253

4. Any tenant, subtenant, or executor or administrator of **\* \* \*** **that person's** estate heretofore qualified and now acting, or hereafter to be qualified and act, assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of **\* \* \*** **the** lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises or using the premises for an unlawful purpose, thereby terminates the lease, and the landlord, or **\* \* \*** **the landlord's** successor in estate, shall upon service of three days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of the demised premises under this chapter. For purposes of this subdivision, a person who commits or maintains a public nuisance as described in Section 3482.8 of the Civil Code, or who commits an offense described in subdivision (c) of Section 3485 of the Civil Code, or subdivision (c) of Section 3486 of the Civil Code, or uses the premises to further the purpose of that offense shall be deemed to have committed a nuisance upon the premises.

5. When **\* \* \*** **the tenant** gives written notice as provided in Section 1946 of the Civil Code of **\* \* \*** **the tenant's** intention to terminate the hiring of the real property, or makes a written offer to surrender which is accepted in writing by the landlord, but fails to deliver possession at the time specified in that written notice, without the permission of **\* \* \*** **the** landlord, or the successor in estate of the landlord, if applicable.

**6.** As used in this section **\* \* \*** **:**

**"COVID–19 rental debt" has the same meaning as defined in Section 1179.02.**

**"Tenant"** includes any person who hires real property except those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

**7. This section shall remain in effect until February 1, 2025, and as of that date is repealed.**

SEC. 16. Section 1161 is added to the Code of Civil Procedure, to read:

<< CA CIV PRO § 1161 >>

1161. A tenant of real property, for a term less than life, or the executor or administrator of the tenant's estate heretofore qualified and now acting or hereafter to be qualified and act, is guilty of unlawful detainer:

1. When the tenant continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to the tenant; provided the expiration is of a nondefault nature however brought about without the permission of the landlord, or the successor in estate of the landlord, if applicable; including the case where the person to be removed became the occupant of the premises as a servant, employee, agent, or licensee and the relation of master and servant, or employer and employee, or principal and agent, or licensor and licensee, has been lawfully terminated or the time fixed for occupancy by the agreement between the parties has expired; but nothing in this subdivision shall be construed as preventing the removal of the occupant in any other lawful manner; but in case of a tenancy at will, it shall first be terminated by notice, as prescribed in the Civil Code.

2. When the tenant continues in possession, in person or by subtenant, without the permission of the landlord, or the successor in estate of the landlord, if applicable, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring its payment, stating the amount that is due, the name, telephone number, and address of the person to whom the rent payment shall be made, and, if payment may be made personally, the usual days and hours that person will be available to receive the payment (provided that, if the address does not allow for personal delivery, then it shall be conclusively presumed that upon the mailing of any rent or notice to the owner by the tenant to the name and address provided, the notice or rent is deemed received by the owner on the date posted, if the tenant can show proof of mailing to the name and address provided by the owner), or the number of an account in a financial institution into which the rental payment may be made, and the name and street address of

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 34 of 253

the institution (provided that the institution is located within five miles of the rental property), or if an electronic funds transfer procedure has been previously established, that payment may be made pursuant to that procedure, or possession of the property, shall have been served upon the tenant and if there is a subtenant in actual occupation of the premises, also upon the subtenant.

The notice may be served at any time within one year after the rent becomes due. In all cases of tenancy upon agricultural lands, if the tenant has held over and retained possession for more than 60 days after the expiration of the term without any demand of possession or notice to quit by the landlord or the successor in estate of the landlord, if applicable, the tenant shall be deemed to be holding by permission of the landlord or successor in estate of the landlord, if applicable, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during that year, and the holding over for that period shall be taken and construed as a consent on the part of a tenant to hold for another year.

3. When the tenant continues in possession, in person or by subtenant, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than the one for the payment of rent, and three days' notice, excluding Saturdays and Sundays and other judicial holidays, in writing, requiring the performance of those conditions or covenants, or the possession of the property, shall have been served upon the tenant, and if there is a subtenant in actual occupation of the premises, also, upon the subtenant. Within three days, excluding Saturdays and Sundays and other judicial holidays, after the service of the notice, the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform the conditions or covenants of the lease or pay the stipulated rent, as the case may be, and thereby save the lease from forfeiture; provided, if the conditions and covenants of the lease, violated by the lessee, cannot afterward be performed, then no notice, as last prescribed herein, need be given to the lessee or the subtenant, demanding the performance of the violated conditions or covenants of the lease.

A tenant may take proceedings, similar to those prescribed in this chapter, to obtain possession of the premises let to a subtenant or held by a servant, employee, agent, or licensee, in case of that person's unlawful detention of the premises underlet to or held by that person.

4. Any tenant, subtenant, or executor or administrator of that person's estate heretofore qualified and now acting, or hereafter to be qualified and act, assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of the lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises or using the premises for an unlawful purpose, thereby terminates the lease, and the landlord, or the landlord's successor in estate, shall upon service of three days' notice to quit upon the person or persons in possession, be entitled to restitution of possession of the demised premises under this chapter. For purposes of this subdivision, a person who commits or maintains a public nuisance as described in Section 3482.8 of the Civil Code, or who commits an offense described in subdivision (c) of Section 3485 of the Civil Code, or subdivision (c) of Section 3486 of the Civil Code, or uses the premises to further the purpose of that offense shall be deemed to have committed a nuisance upon the premises.

5. When the tenant gives written notice as provided in Section 1946 of the Civil Code of the tenant's intention to terminate the hiring of the real property, or makes a written offer to surrender which is accepted in writing by the landlord, but fails to deliver possession at the time specified in that written notice, without the permission of the landlord, or the successor in estate of the landlord, if applicable.

6. As used in this section, "tenant" includes any person who hires real property except those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

7. This section shall become operative on February 1, 2025.

SEC. 17. Section 1161.2 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1161.2 >>

1161.2. (a)(1) The clerk shall allow access to limited civil case records filed under this chapter, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant and the address of the premises, including the apartment or unit number, if any.

(C) To a resident of the premises who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(E) * * * **Except as provided in subparagraph (G), to** any person by order of the court if judgment is entered for the plaintiff after trial more than 60 days since the filing of the complaint. The court shall issue the order upon issuing judgment for the plaintiff.

(F) Except as provided in subparagraph (G), to any other person 60 days after the complaint has been filed if the plaintiff prevails in the action within 60 days of the filing of the complaint, in which case the clerk shall allow access to any court records in the action. If a default or default judgment is set aside more than 60 days after the complaint has been filed, this section shall apply as if the complaint had been filed on the date the default or default judgment is set aside.

(G)**(i)** In the case of a complaint involving residential property based on Section 1161a as indicated in the caption of the complaint, as required in subdivision (c) of Section 1166, to any other person, if 60 days have elapsed since the complaint was filed with the court, and, as of that date, judgment against all defendants has been entered for the plaintiff, after a trial.

**(ii) Subparagraphs (E) and (F) shall not apply if the plaintiff filed the action between March 4, 2020, and January 31, 2021, and the action is based on an alleged default in the payment of rent.**

(2) This section shall not be construed to prohibit the court from issuing an order that bars access to the court record in an action filed under this chapter if the parties to the action so stipulate.

(b)(1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to an unlawful detainer action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) Upon the filing of a case so restricted, the court clerk shall mail notice to each defendant named in the action. The notice shall be mailed to the address provided in the complaint. The notice shall contain a statement that an unlawful detainer complaint (eviction action) has been filed naming that party as a defendant, and that access to the court file will be delayed for 60 days except to a party, an attorney for one of the parties, or any other person who (1) provides to the clerk the names of at least one plaintiff and one defendant in the action and provides to the clerk the address, including any applicable apartment, unit,

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 36 of 253

or space number, of the subject premises, or (2) provides to the clerk the name of one of the parties in the action or the case number and can establish through proper identification that \* \* \*  **the person** lives at the subject premises. The notice shall also contain a statement that access to the court index, register of actions, or other records is not permitted until 60 days after the complaint is filed, except pursuant to an order upon a showing of good cause for access. The notice shall contain on its face the following information:

(1) The name and telephone number of the county bar association.

(2) The name and telephone number of any entity that requests inclusion on the notice and demonstrates to the satisfaction of the court that it has been certified by the State Bar of California as a lawyer referral service and maintains a panel of attorneys qualified in the practice of landlord-tenant law pursuant to the minimum standards for a lawyer referral service established by the State Bar of California and Section 6155 of the Business and Professions Code.

(3) The following statement:

"The State Bar of California certifies lawyer referral services in California and publishes a list of certified lawyer referral services organized by county. To locate a lawyer referral service in your county, go to the State Bar's \* \* \*  **internet website** at www.calbar.ca.gov or call 1–866–442–2529."

(4) The name and telephone number of an office or offices funded by the federal Legal Services Corporation or qualified legal services projects that receive funds distributed pursuant to Section 6216 of the Business and Professions Code that provide legal services to low-income persons in the county in which the action is filed. The notice shall state that these telephone numbers may be called for legal advice regarding the case. The notice shall be issued between 24 and 48 hours of the filing of the complaint, excluding weekends and holidays. One copy of the notice shall be addressed to "all occupants" and mailed separately to the subject premises. The notice shall not constitute service of the summons and complaint.

(d) Notwithstanding any other law, the court shall charge an additional fee of fifteen dollars ($15) for filing a first appearance by the plaintiff. This fee shall be added to the uniform filing fee for actions filed under this chapter.

(e) This section does not apply to a case that seeks to terminate a mobilehome park tenancy if the statement of the character of the proceeding in the caption of the complaint clearly indicates that the complaint seeks termination of a mobilehome park tenancy.

(f) This section does not alter any provision of the Evidence Code.

**(g) This section shall remain in effect until February 1, 2021, and as of that date is repealed.**

SEC. 18. Section 1161.2 is added to the Code of Civil Procedure, to read:

<< CA CIV PRO § 1161.2 >>

1161.2. (a)(1) The clerk shall allow access to limited civil case records filed under this chapter, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant and the address of the premises, including the apartment or unit number, if any.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 37 of 253

(C) To a resident of the premises who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(E) To any person by order of the court if judgment is entered for the plaintiff after trial more than 60 days since the filing of the complaint. The court shall issue the order upon issuing judgment for the plaintiff.

(F) Except as provided in subparagraph (G), to any other person 60 days after the complaint has been filed if the plaintiff prevails in the action within 60 days of the filing of the complaint, in which case the clerk shall allow access to any court records in the action. If a default or default judgment is set aside more than 60 days after the complaint has been filed, this section shall apply as if the complaint had been filed on the date the default or default judgment is set aside.

(G) In the case of a complaint involving residential property based on Section 1161a as indicated in the caption of the complaint, as required in subdivision (c) of Section 1166, to any other person, if 60 days have elapsed since the complaint was filed with the court, and, as of that date, judgment against all defendants has been entered for the plaintiff, after a trial.

(2) This section shall not be construed to prohibit the court from issuing an order that bars access to the court record in an action filed under this chapter if the parties to the action so stipulate.

(b)(1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to an unlawful detainer action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) Upon the filing of a case so restricted, the court clerk shall mail notice to each defendant named in the action. The notice shall be mailed to the address provided in the complaint. The notice shall contain a statement that an unlawful detainer complaint (eviction action) has been filed naming that party as a defendant, and that access to the court file will be delayed for 60 days except to a party, an attorney for one of the parties, or any other person who (1) provides to the clerk the names of at least one plaintiff and one defendant in the action and provides to the clerk the address, including any applicable apartment, unit, or space number, of the subject premises, or (2) provides to the clerk the name of one of the parties in the action or the case number and can establish through proper identification that the person lives at the subject premises. The notice shall also contain a statement that access to the court index, register of actions, or other records is not permitted until 60 days after the complaint is filed, except pursuant to an order upon a showing of good cause for access. The notice shall contain on its face the following information:

(1) The name and telephone number of the county bar association.

(2) The name and telephone number of any entity that requests inclusion on the notice and demonstrates to the satisfaction of the court that it has been certified by the State Bar of California as a lawyer referral service and maintains a panel of attorneys qualified in the practice of landlord-tenant law pursuant to the minimum standards for a lawyer referral service established by the State Bar of California and Section 6155 of the Business and Professions Code.

(3) The following statement:

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 38 of 253

"The State Bar of California certifies lawyer referral services in California and publishes a list of certified lawyer referral services organized by county. To locate a lawyer referral service in your county, go to the State Bar's internet website at www.calbar.ca.gov or call 1–866–442–2529."

(4) The name and telephone number of an office or offices funded by the federal Legal Services Corporation or qualified legal services projects that receive funds distributed pursuant to Section 6216 of the Business and Professions Code that provide legal services to low-income persons in the county in which the action is filed. The notice shall state that these telephone numbers may be called for legal advice regarding the case. The notice shall be issued between 24 and 48 hours of the filing of the complaint, excluding weekends and holidays. One copy of the notice shall be addressed to "all occupants" and mailed separately to the subject premises. The notice shall not constitute service of the summons and complaint.

(d) Notwithstanding any other law, the court shall charge an additional fee of fifteen dollars ($15) for filing a first appearance by the plaintiff. This fee shall be added to the uniform filing fee for actions filed under this chapter.

(e) This section does not apply to a case that seeks to terminate a mobilehome park tenancy if the statement of the character of the proceeding in the caption of the complaint clearly indicates that the complaint seeks termination of a mobilehome park tenancy.

(f) This section does not alter any provision of the Evidence Code.

(g) This section shall become operative on February 1, 2021.

SEC. 19. Section 1161.2.5 is added to the Code of Civil Procedure, to read:

<< CA CIV PRO § 1161.2.5 >>

1161.2.5. (a)(1) Except as provided in Section 1161.2, the clerk shall allow access to civil case records for actions seeking recovery of COVID–19 rental debt, as defined in Section 1179.02, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant.

(C) To a resident of the premises for which the COVID–19 rental debt is owed who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(2) To give the court notice that access to the records in an action is limited, any complaint or responsive pleading in a case subject to this section shall include on either the first page of the pleading or a cover page, the phrase "ACTION FOR RECOVERY OF COVID–19 RENTAL DEBT AS DEFINED UNDER SECTION 1179.02" in bold, capital letters, in 12 point or larger font.

(b)(1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to a civil action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 39 of 253

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) This section does not alter any provision of the Evidence Code.

(d) This section shall remain in effect until February 1, 2021, and as of that date is repealed.

SEC. 20. Chapter 5 (commencing with Section 1179.01) is added to Title 3 of Part 3 of the Code of Civil Procedure, to read:

pt. 3 t. 3 ch. 5 pr. § 1179.01

Chapter 5. COVID–19 Tenant Relief Act of 2020

<< CA CIV PRO § 1179.01 >>

1179.01. This chapter is known, and may be cited, as the COVID–19 Tenant Relief Act of 2020.

<< CA CIV PRO § 1179.01.5 >>

1179.01.5. (a) It is the intent of the Legislature that the Judicial Council and the courts have adequate time to prepare to implement the new procedures resulting from this chapter, including educating and training judicial officers and staff.

(b) Notwithstanding any other law, before October 5, 2020, a court shall not do any of the following:

(1) Issue a summons on a complaint for unlawful detainer in any action that seeks possession of residential real property and that is based, in whole or in part, on nonpayment of rent or other charges.

(2) Enter a default or a default judgment for restitution in an unlawful detainer action that seeks possession of residential real property and that is based, in whole or in part, on nonpayment of rent or other charges.

(c)(1) A plaintiff in an unlawful detainer action shall file a cover sheet in the form specified in paragraph (2) that indicates both of the following:

(A) Whether the action seeks possession of residential real property.

(B) If the action seeks possession of residential real property, whether the action is based, in whole or part, on an alleged default in payment of rent or other charges.

(2) The cover sheet specified in paragraph (1) shall be in the following form:

"UNLAWFUL DETAINER SUPPLEMENTAL COVER SHEET

1. This action seeks possession of real property that is:

a. [ ] Residential

b. [ ] Commercial

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 40 of 253

2. (Complete only if paragraph 1(a) is checked) This action is based, in whole or in part, on an alleged default in payment of rent or other charges.

a. [ ] Yes

b. [ ] No

Date:_____

..........................................................................................................................................................................................

_____

Type Or Print Name Signature Of Party Or Attorney For Party"

(3) The cover sheet required by this subdivision shall be in addition to any civil case cover sheet or other form required by law, the California Rules of Court, or a local court rule.

(4) The Judicial Council may develop a form for mandatory use that includes the information in paragraph (2).

(d) This section does not prevent a court from issuing a summons or entering default in an unlawful detainer action that seeks possession of residential real property and that is not based, in whole or in part, on nonpayment of rent or other charges.

## << CA CIV PRO § 1179.02 >>

1179.02. For purposes of this chapter:

(a) "Covered time period" means the time period between March 1, 2020, and January 31, 2021.

(b) "COVID–19–related financial distress" means any of the following:

(1) Loss of income caused by the COVID–19 pandemic.

(2) Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

(3) Increased expenses directly related to the health impact of the COVID–19 pandemic.

(4) Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit a tenant's ability to earn income.

(5) Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

(6) Other circumstances related to the COVID–19 pandemic that have reduced a tenant's income or increased a tenant's expenses.

(c) "COVID–19 rental debt" means unpaid rent or any other unpaid financial obligation of a tenant under the tenancy that came due during the covered time period.

(d) "Declaration of COVID–19–related financial distress" means the following written statement:

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 41 of 253

I am currently unable to pay my rent or other financial obligations under the lease in full because of one or more of the following:

1. Loss of income caused by the COVID–19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

3. Increased expenses directly related to health impacts of the COVID–19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit my ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

6. Other circumstances related to the COVID–19 pandemic that have reduced my income or increased my expenses.

Any public assistance, including unemployment insurance, pandemic unemployment assistance, state disability insurance (SDI), or paid family leave, that I have received since the start of the COVID–19 pandemic does not fully make up for my loss of income and/or increased expenses.

Signed under penalty of perjury:

Dated:

(e) "Landlord" includes all of the following or the agent of any of the following:

(1) An owner of residential real property.

(2) An owner of a residential rental unit.

(3) An owner of a mobilehome park.

(4) An owner of a mobilehome park space or lot.

(f) "Protected time period" means the time period between March 1, 2020, and August 31, 2020.

(g) "Rental payment" means rent or any other financial obligation of a tenant under the tenancy.

(h) "Tenant" means any natural person who hires real property except any of the following:

(1) Tenants of commercial property, as defined in subdivision (c) of Section 1162 of the Civil Code.

(2) Those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

(i) "Transition time period" means the time period between September 1, 2020, and January 31, 2021.

<< CA CIV PRO § 1179.02.5 >>

1179.02.5. (a) For purposes of this section:

(1)(A) "High–income tenant" means a tenant with an annual household income of 130 percent of the median income, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, for the county in which the residential rental property is located.

(B) For purposes of this paragraph, all lawful occupants of the residential rental unit, including minor children, shall be considered in determining household size.

(C) "High–income tenant" shall not include a tenant with a household income of less than one hundred thousand dollars ($100,000).

(2) "Proof of income" means any of the following:

(A) A tax return.

(B) A W–2.

(C) A written statement from a tenant's employer that specifies the tenant's income.

(D) Pay stubs.

(E) Documentation showing regular distributions from a trust, annuity, 401k, pension, or other financial instrument.

(F) Documentation of court-ordered payments, including, but not limited to, spousal support or child support.

(G) Documentation from a government agency showing receipt of public assistance benefits, including, but not limited to, social security, unemployment insurance, disability insurance, or paid family leave.

(H) A written statement signed by the tenant that states the tenant's income, including, but not limited to, a rental application.

(b)(1) This section shall apply only if the landlord has proof of income in the landlord's possession before the service of the notice showing that the tenant is a high-income tenant.

(2) This section does not do any of the following:

(A) Authorize a landlord to demand proof of income from the tenant.

(B) Require the tenant to provide proof of income for the purposes of determining whether the tenant is a high-income tenant.

(C)(i) Entitle a landlord to obtain, or authorize a landlord to attempt to obtain, confidential financial records from a tenant's employer, a government agency, financial institution, or any other source.

(ii) Confidential information described in clause (i) shall not constitute valid proof of income unless it was lawfully obtained by the landlord with the tenant's consent during the tenant screening process.

(3) Paragraph (2) does not alter a party's rights under Title 4 (commencing with Section 2016.010), Chapter 4 (commencing with Section 708.010) of Title 9, or any other law.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 43 of 253

(c) A landlord may require a high-income tenant that is served a notice pursuant to subdivision (b) or (c) of Section 1179.03 to submit, in addition to and together with a declaration of COVID–19–related financial distress, documentation supporting the claim that the tenant has suffered COVID–19–related financial distress. Any form of objectively verifiable documentation that demonstrates the COVID–19–related financial distress the tenant has experienced is sufficient to satisfy the requirements of this subdivision, including the proof of income, as defined in subparagraphs (A) to (G), inclusive, of paragraph (2) of subdivision (a), a letter from an employer, or an unemployment insurance record.

(d) A high-income tenant is required to comply with the requirements of subdivision (c) only if the landlord has included the following language on the notice served pursuant to subdivision (b) or (c) of Section 1179.03 in at least 12–point font:

"Proof of income on file with your landlord indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020. As a result, if you claim that you are unable to pay the amount demanded by this notice because you have suffered COVID–19–related financial distress, you are required to submit to your landlord documentation supporting your claim together with the completed declaration of COVID–19–related financial distress provided with this notice. If you fail to submit this documentation together with your declaration of COVID–19–related financial distress, and you do not either pay the amount demanded in this notice or deliver possession of the premises back to your landlord as required by this notice, you will not be covered by the eviction protections enacted by the California Legislature as a result of the COVID–19 pandemic, and your landlord can begin eviction proceedings against you as soon as this 15–day notice expires."

(e) A high-income tenant that fails to comply with subdivision (c) shall not be subject to the protections of subdivision (g) of Section 1179.03.

(f)(1) A landlord shall be required to plead compliance with this section in any unlawful detainer action based upon a notice that alleges that the tenant is a high-income tenant. If that allegation is contested, the landlord shall be required to submit to the court the proof of income upon which the landlord relied at the trial or other hearing, and the tenant shall be entitled to submit rebuttal evidence.

(2) If the court in an unlawful detainer action based upon a notice that alleges that the tenant is a high-income tenant determines that at the time the notice was served the landlord did not have proof of income establishing that the tenant is a high-income tenant, the court shall award attorney's fees to the prevailing tenant.

<< CA CIV PRO § 1179.03 >>

1179.03. (a)(1) Any notice that demands payment of COVID–19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 shall be modified as required by this section. A notice which does not meet the requirements of this section, regardless of when the notice was issued, shall not be sufficient to establish a cause of action for unlawful detainer or a basis for default judgment.

(2) Any case based solely on a notice that demands payment of COVID–19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 may be dismissed if the notice does not meet the requirements of this section, regardless of when the notice was issued.

(3) Notwithstanding paragraphs (1) and (2), this section shall have no effect if the landlord lawfully regained possession of the property or obtained a judgment for possession of the property before the operative date of this section.

(b) If the notice demands payment of rent that came due during the protected time period, as defined in Section 1179.02, the notice shall comply with all of the following:

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 44 of 253

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant cannot be evicted for failure to comply with the notice if the tenant delivers a signed declaration of COVID–19–related financial distress to the landlord on or before the date that the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4) The notice shall include the following text in at least 12–point font:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID–19, your landlord will not be able to evict you for this missed payment if you sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, but you will still owe this money to your landlord. If you do not sign and deliver the declaration within this time period, you may lose the eviction protections available to you. You must return this form to be protected. You should keep a copy or picture of the signed form for your records.

You will still owe this money to your landlord and can be sued for the money, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(c) If the notice demands payment of rent that came due during the transition time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant will not be evicted for failure to comply with the notice, except as allowed by this chapter, if the tenant delivers a signed declaration of COVID–19–related financial distress to the landlord on or before the date the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4) The notice shall include the following text in at least 12–point font:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID–19, you may sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, and your landlord will not be able to evict you for this missed payment so long as you make the minimum payment (see below). You will still owe this money to your landlord. You should keep a copy or picture of the signed form for your records.

If you provide the declaration form to your landlord as described above AND, on or before January 31, 2021, you pay an amount that equals at least 25 percent of each rental payment that came due or will come due during the period between September 1, 2020, and January 31, 2021, that you were unable to pay as a result of decreased income or increased expenses due to COVID–

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 45 of 253

19, your landlord cannot evict you. Your landlord may require you to submit a new declaration form for each rental payment that you do not pay that comes due between September 1, 2020, and January 31, 2021.

For example, if you provided a declaration form to your landlord regarding your decreased income or increased expenses due to COVID–19 that prevented you from making your rental payment in September and October of 2020, your landlord could not evict you if, on or before January 31, 2021, you made a payment equal to 25 percent of September's and October's rental payment (i.e., half a month's rent). If you were unable to pay any of the rental payments that came due between September 1, 2020, and January 31, 2021, and you provided your landlord with the declarations in response to each 15–day notice your landlord sent to you during that time period, your landlord could not evict you if, on or before January 31, 2021, you paid your landlord an amount equal to 25 percent of all the rental payments due from September through January (i.e., one and a quarter month's rent).

You will still owe the full amount of the rent to your landlord, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(d) An unsigned copy of a declaration of COVID–19–related financial distress shall accompany each notice delivered to a tenant to which subdivision (b) or (c) is applicable. If the landlord was required, pursuant to Section 1632 of the Civil Code, to provide a translation of the rental contract or agreement in the language in which the contract or agreement was negotiated, the landlord shall also provide the unsigned copy of a declaration of COVID–19–related financial distress to the tenant in the language in which the contract or agreement was negotiated. The Department of Real Estate shall make available an official translation of the text required by paragraph (4) of subdivision (b) and paragraph (4) of subdivision (c) in the languages specified in Section 1632 of the Civil Code by no later than September 15, 2020.

(e) If a tenant owes a COVID–19 rental debt to which both subdivisions (b) and (c) apply, the landlord shall serve two separate notices that comply with subdivisions (b) and (c), respectively.

(f) A tenant may deliver the declaration of COVID–19–related financial distress to the landlord by any of the following methods:

(1) In person, if the landlord indicates in the notice an address at which the declaration may be delivered in person.

(2) By electronic transmission, if the landlord indicates an email address in the notice to which the declaration may be delivered.

(3) Through United States mail to the address indicated by the landlord in the notice. If the landlord does not provide an address pursuant to subparagraph (1), then it shall be conclusively presumed that upon the mailing of the declaration by the tenant to the address provided by the landlord, the declaration is deemed received by the landlord on the date posted, if the tenant can show proof of mailing to the address provided by the landlord.

(4) Through any of the same methods that the tenant can use to deliver the payment pursuant to the notice if delivery of the declaration by that method is possible.

(g) Except as provided in Section 1179.02.5, the following shall apply to a tenant who, within 15 days of service of the notice specified in subdivision (b) or (c), excluding Saturdays, Sundays, and other judicial holidays, demanding payment of COVID–19 rental debt delivers a declaration of COVID–19–related financial distress to the landlord by any of the methods provided in subdivision (f):

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 46 of 253

(1) With respect to a notice served pursuant to subdivision (b), the tenant shall not then or thereafter be deemed to be in default with regard to that COVID–19 rental debt for purposes of subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161.

(2) With respect to a notice served pursuant to subdivision (c), the following shall apply:

(A) Except as provided by subparagraph (B), the landlord may not initiate an unlawful detainer action before February 1, 2021.

(B) A tenant shall not be guilty of unlawful detainer, now or in the future, based upon nonpayment of COVID–19 rental debt that came due during the transition period if, on or before January 31, 2021, the tenant tenders one or more payments that, when taken together, are of an amount equal to or not less than 25 percent of each transition period rental payment demanded in one or more notices served pursuant to subsection (c) and for which the tenant complied with this subdivision by timely delivering a declaration of COVID–19–related financial distress to the landlord.

(h)(1)(A) Within the time prescribed in Section 1167, a tenant shall be permitted to file a signed declaration of COVID–19–related financial distress with the court.

(B) If the tenant files a signed declaration of COVID–19–related financial distress with the court pursuant to this subdivision, the court shall dismiss the case, pursuant to paragraph (2), if the court finds, after a noticed hearing on the matter, that the tenant's failure to return a declaration of COVID–19–related financial distress within the time required by subdivision (g) was the result of mistake, inadvertence, surprise, or excusable neglect, as those terms have been interpreted under subdivision (b) of Section 473.

(C) The noticed hearing required by this paragraph shall be held with not less than five days' notice and not more than 10 days' notice, to be given by the court, and may be held separately or in conjunction with any regularly noticed hearing in the case, other than a trial.

(2) If the court dismisses the case pursuant to paragraph (1), that dismissal shall be without prejudice as follows:

(A) If the case was based in whole or in part upon a notice served pursuant to subdivision (b), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (b).

(B) Before February 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (c).

(C) On or after February 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based upon the notice served pursuant to subdivision (c) if the tenant, within five days of the court's order to do so, makes the payment required by subparagraph (B) of paragraph (1) of subdivision (g), provided that if the fifth day falls on a Saturday, Sunday, or judicial holiday the last day to pay shall be extended to the next court day.

(3) If the court dismisses the case pursuant to this subdivision, the tenant shall not be considered the prevailing party for purposes of Section 1032, any attorney's fee provision appearing in contract or statute, or any other law.

(i) Notwithstanding any other law, a notice which is served pursuant to subdivision (b) or (c) that complies with the requirements of this chapter and subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161, as applicable, need not include specific language required by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 47 of 253

<< CA CIV PRO § 1179.03.5 >>

1179.03.5. (a) Before February 1, 2021, a court may not find a tenant guilty of an unlawful detainer unless it finds that one of the following applies:

(1) The tenant was guilty of the unlawful detainer before March 1, 2020.

(2) In response to service of a notice demanding payment of COVID–19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161, the tenant failed to comply with the requirements of Section 1179.03.

(3)(A) The unlawful detainer arises because of a termination of tenancy for any of the following:

(i) An at-fault just cause, as defined in paragraph (1) of subdivision (b) of Section 1946.2 of the Civil Code.

(ii)(I) A no-fault just cause, as defined in paragraph (2) of subdivision (b) of Section 1946.2 of the Civil Code, other than intent to demolish or to substantially remodel the residential real property, as defined in subparagraph (D) of paragraph (2) of subdivision (b) of Section 1946.2.

(II) Notwithstanding subclause (I), termination of a tenancy based on intent to demolish or to substantially remodel the residential real property shall be permitted if necessary to maintain compliance with the requirements of Section 1941.1 of the Civil Code, Section 17920.3 or 17920.10 of the Health and Safety Code, or any other applicable law governing the habitability of residential rental units.

(iii) The owner of the property has entered into a contract for the sale of that property with a buyer who intends to occupy the property, and all the requirements of paragraph (8) of subdivision (e) of Section 1946.2 of the Civil Code have been satisfied.

(B) In an action under this paragraph, other than an action to which paragraph (2) also applies, the landlord shall be precluded from recovering COVID–19 rental debt in connection with any award of damages.

(b)(1) This section does not require a landlord to assist the tenant to relocate through the payment of relocation costs if the landlord would not otherwise be required to do so pursuant to Section 1946.2 of the Civil Code or any other law.

(2) A landlord who is required to assist the tenant to relocate pursuant to Section 1946.2 of the Civil Code or any other law, may offset the tenant's COVID–19 rental debt against their obligation to assist the tenant to relocate.

<< CA CIV PRO § 1179.04 >>

1179.04. (a) On or before September 30, 2020, a landlord shall provide, in at least 12–point font, the following notice to tenants who, as of September 1, 2020, have not paid one or more rental payments that came due during the protected time period:

"NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has enacted the COVID–19 Tenant Relief Act of 2020 which protects renters who have experienced COVID–19–related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and January 31, 2021.

"COVID–19–related financial distress" means any of the following:

1. Loss of income caused by the COVID–19 pandemic.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 48 of 253

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

3. Increased expenses directly related to the health impact of the COVID–19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit your ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

6. Other circumstances related to the COVID–19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted based on this nonpayment.

2. If you are unable to pay rental payments that come due between September 1, 2020, and January 31, 2021, because of decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before January 31, 2021.

You must provide, to your landlord, a declaration under penalty of perjury of your COVID–19–related financial distress attesting to the decreased income or increased expenses due to the COVID–19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and January 31, 2021, your landlord will be required to give you a 15–day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file which indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation which shows that you have experienced a decrease in income or increase in expenses due to the COVID–19 pandemic. Your landlord must tell you in the 15–day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15–day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15–day notice and do not provide the declaration form to your landlord before the 15–day notice expires, you could be evicted. You could also be evicted beginning February 1, 2021, if you owe rental payments due between September 1, 2020, and January 31, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

For information about legal resources that may be available to you, visit lawhelpca.org."

(b) The landlord may provide the notice required by subdivision (a) in the manner prescribed by Section 1162 or by mail.

(c)(1) A landlord may not serve a notice pursuant to subdivision (b) or (c) of Section 1179.03 before the landlord has provided the notice required by subdivision (a).

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 49 of 253

(2) The notice required by subdivision (a) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before September 30, 2020.

<< CA CIV PRO § 1179.05 >>

1179.05. (a) Any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction is subject to all of the following:

(1) Any extension, expansion, renewal, reenactment, or new adoption of a measure, however delineated, that occurs between August 19, 2020, and January 31, 2021, shall have no effect before February 1, 2021.

(2) Any provision which allows a tenant a specified period of time in which to repay COVID–19 rental debt shall be subject to all of the following:

(A) If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date on or before March 1, 2021, any extension of that date made after August 19, 2020, shall have no effect.

(B) If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date after March 1, 2021, or conditioned commencement of the repayment period on the termination of a proclamation of state of emergency or local emergency, the repayment period is deemed to begin on March 1, 2021.

(C) The specified period of time during which a tenant is permitted to repay COVID–19 rental debt may not extend beyond the period that was in effect on August 19, 2020. In addition, a provision may not permit a tenant a period of time that extends beyond March 31, 2022, to repay COVID–19 rental debt.

(b) This section does not alter a city, county, or city and county's authority to extend, expand, renew, reenact, or newly adopt an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy, consistent with subdivision (g) of Section 1946.2, provided that a provision enacted or amended after August 19, 2020, shall not apply to rental payments that came due between March 1, 2020, and January 31, 2021.

(c) The one-year limitation provided in subdivision (2) of Section 1161 is tolled during any time period that a landlord is or was prohibited by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction based on nonpayment of rental payments from serving a notice that demands payment of COVID–19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) of Section 1161.

(d) It is the intent of the Legislature that this section be applied retroactively to August 19, 2020.

(e) The Legislature finds and declares that this section addresses a matter of statewide concern rather than a municipal affair as that term is used in Section 5 of Article XI of the California Constitution. Therefore, this section applies to all cities, including charter cities.

(f) It is the intent of the Legislature that the purpose of this section is to protect individuals negatively impacted by the COVID–19 pandemic, and that this section does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction.

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 50 of 253

<< CA CIV PRO § 1179.06 >>

1179.06. Any provision of a stipulation, settlement agreement, or other agreement entered into on or after the effective date of this chapter, including a lease agreement, that purports to waive the provisions of this chapter is prohibited and is void as contrary to public policy.

<< CA CIV PRO § 1179.07 >>

1179.07. This chapter shall remain in effect until February 1, 2025, and as of that date is repealed.

SEC. 21. (a) The Business, Consumer Services and Housing Agency shall, in consultation with the Department of Finance, engage with residential tenants, landlords, property owners, deed restricted affordable housing providers, and financial sector stakeholders about strategies and approaches to direct potential future federal stimulus funding to most effectively and efficiently provide relief to distressed tenants, landlords, and property owners, including exploring strategies to create access to liquidity in partnership with financial institutions or other financial assistance. Subject to availability of funds and other budget considerations, and only upon appropriation by the Legislature, these strategies should inform implementation of the funds. In creating these strategies, special focus shall be given to low-income tenants, small property owners, and affordable housing providers who have suffered direct financial hardship as a result of the COVID-19 pandemic.

(b) For the purposes of this section, "future federal stimulus funding" does not include funding identified in the 2020 Budget Act.

SEC. 22. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 23. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

SEC. 24. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or

safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:
To avert economic and social harm by providing a structure for temporary relief to financially distressed tenants, homeowners, and small landlords during the public health emergency, and to ensure that landlords and tenants are able to calculate the maximum allowable rental rate increase within a 12–month period at the earliest possible time, it is necessary that this act take effect immediately.

Footnotes

| | |
|---|---|
| 1 | So in enrolled bill. |
| 2 | So in enrolled bill. |
| 3 | Internal Revenue Code sections are in Title 26 of the U.S.C.A. |
| 4 | Internal Revenue Code sections are in Title 26 of the U.S.C.A. |
| 5 | Internal Revenue Code sections are in Title 26 of the U.S.C.A. |
| 6 | For public law sections classified to the U.S.C.A., see USCA–Tables. |

CA LEGIS 37 (2020), 2020 Cal. Legis. Serv. Ch. 37 (A.B. 3088) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 51 of 253

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 53 of 253

2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

CALIFORNIA 2021 LEGISLATIVE SERVICE

2021 Portion of 2021-2022 Regular Session

Additions are indicated by **Text**; deletions by
**\* \* \***  .
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~Text~~ .

# CHAPTER 27
# A.B. No. 832

AN ACT to amend Sections 789.4, 1788.65, 1788.66, 1942.5, and 3273.1 of the Civil Code, to amend Sections 116.223, 871.10, 871.11, 871.12, 1161.2.5, 1179.02, 1179.03, 1179.03.5, 1179.04, 1179.05, and 1179.07 of, to amend and repeal Section 1161.2 of, and to add and repeal Chapter 6 (commencing with Section 1179.08) of Title 3 of Part 3 of, the Code of Civil Procedure, and to amend Sections 50897, 50897.1, 50897.2, 50897.3, and 50897.4 of, and to add Sections 50897.2.1 and 50897.3.1 to, the Health and Safety Code, relating to tenancy, and declaring the urgency thereof, to take effect immediately.

[Filed with Secretary of State June 28, 2021.]

**LEGISLATIVE COUNSEL'S DIGEST**

AB 832, Chiu. COVID–19 relief: tenancy: federal rental assistance.

(1) Existing law prohibits a landlord from interrupting or terminating utility service furnished to a tenant with the intent to terminate the occupancy of the tenant and imposes specified penalties on a landlord who violates that prohibition. Existing law, until July 1, 2021, imposes additional damages in an amount of at least $1,000, but not more than $2,500, on a landlord that violates that prohibition if the tenant has provided a declaration of COVID–19 financial distress, as specified.

This bill would extend the imposition of those additional damages until October 1, 2021.

(2) Existing law regulates the activities of a person or entity that has bought charged-off consumer debt, as defined, for collection purposes and the circumstances pursuant to which the person may bring suit. Existing law, until July 1, 2021, prohibits a person from selling or assigning unpaid COVID–19 rental debt, as defined, for the time period between March 1, 2020, and June 30, 2021. Existing law also prohibits a person from selling or assigning unpaid COVID–19 rental debt, as defined, for that same time period of any person who would have qualified for rental assistance funding, provided pursuant to specified federal law, if the person's household income is at or below 80% of the area median income for the 2020 calendar year.

This bill would extend the time period to which both prohibitions against selling or assigning unpaid COVID–19 rental debt apply to September 30, 2021, and would repeal only the general prohibition on October 1, 2021. The bill would extend the calculation of the median income to the 2021 calendar year.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 54 of 253

(3) Existing law, until July 1, 2021, prohibits a landlord from bringing an action for unlawful detainer based on a cause of action other than nonpayment of COVID–19 rental debt, as defined, for the purpose of retaliating against the lessee because the lessee has COVID–19 rental debt.

This bill would extend this provision until October 1, 2021.

(4) Existing law, the COVID–19 Small Landlord and Homeowner Relief Act of 2020, among other things, requires that a mortgage servicer, as defined, that denies a forbearance request during the effective time period provide specified written notice to the borrower, as defined, that sets forth the specific reason or reasons that forbearance was not provided if certain conditions are met. The act defines the "effective time period" to mean the period between the operational date of the act and September 1, 2021.

This bill would extend the "effective time period" until December 1, 2021.

(5) Existing law, until July 1, 2025, provides that a small claims court has jurisdiction in any action for recovery of COVID–19 rental debt, as defined, regardless of the amount demanded. Existing law prohibits the commencement of an action to recover COVID–19 rental debt brought under these provisions before August 1, 2021.

This bill would extend these provisions until October 1, 2025. The bill would also extend the above-described prohibition on commencing an action in small claims court to recover COVID–19 rental debt until November 1, 2021.

(6) Existing law, until July 1, 2027, requires a plaintiff, in an action seeking recovery of COVID–19 rental debt, to attach to the complaint documentation showing that the plaintiff has made a good faith effort to investigate whether governmental rental assistance is available to the tenant, seek governmental rental assistance for the tenant, or cooperate with the tenant's efforts to obtain rental assistance from any governmental entity or other third party, as specified. Existing law, until July 1, 2027, also authorizes the court to reduce the damages awarded for any amount of COVID–19 rental debt sought if the court determines that the landlord refused to obtain state rental assistance, as described below, if the tenant met the eligibility requirements and funding was available. Existing law creates an exception to that authorization within any jurisdiction that received a direct allocation of assistance from the Secretary of the Treasury pursuant to the federal Consolidated Appropriations Act, 2021 and did not accept a block grant pursuant to the rental assistance program described below, as specified. Existing law requires, subject to a certain exception, an action subject to that provision that was pending as of January 29, 2021, to be stayed until July 1, 2021.

This bill would repeal the exception to the damage reduction authorization described above, would instead require those actions to be stayed until November 1, 2021, and would extend these provisions until October 1, 2027.

Existing law, until July 1, 2025, prohibits a court from awarding attorney's fees that exceed specified amounts, which vary based on whether the matter is contested or uncontested, in any action to recover COVID–19 rental debt, as defined, brought as a limited or unlimited civil case under ordinary circumstances, determined as provided.

This bill would extend those provisions until October 1, 2025.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 55 of 253

(7) Existing law, in certain actions involving the possession of real property, including unlawful detainer actions, authorizes the clerk to allow access to limited civil case records only to certain persons. Existing law authorizes the clerk to allow access to these records to any person by order of the court, if judgment is entered for the plaintiff after trial more than 60 days after filing the complaint or 60 days after the complaint has been filed, if the plaintiff prevails in the action within 60 days of filing the complaint. Until July 1, 2021, these provisions allowing access to court records to any person do not apply if the plaintiff filed the action between March 4, 2020, and June 30, 2021, and the action is based on the alleged default in the payment of rent. Subject to those provisions, until July 1, 2021, existing law authorizes the clerk to allow access to civil case records for actions seeking recovery of COVID–19 rental debt, as defined, only to certain persons.

This bill would, among other things, extend the exception described above indefinitely and would apply it to actions filed between March 4, 2020, and September 30, 2021, and would extend indefinitely the limitation on access to civil case records for actions seeking recovery of COVID–19 rental debt. The bill would require the Judicial Council to develop forms for parties to utilize in actions brought for recovery of COVID–19 rental debt.

(8) Existing law, the COVID–19 Tenant Relief Act, until July 1, 2025, establishes procedural requirements and limitations on evictions for nonpayment of rent due to COVID–19 rental debt, as defined. The act, among other things, prohibits a tenant that delivers a declaration, under penalty of perjury, of COVID–19–related financial distress from being deemed in default with regard to the COVID–19 rental debt, as specified.

The act requires that a notice that demands payment of COVID–19 rental debt served pursuant to specified law be modified, as provided. The act requires that notices provided between September 1, 2020, and June 3, 2021, comply with certain requirements, including that the notice include certain text. The act requires the Department of Real Estate to make available an official translation of that text into certain languages by no later than February 15, 2021.

This bill would extend the operation of the COVID–19 Tenant Relief Act to October 1, 2025, and would also extend operation of those requirements until September 30, 2021. The bill would also make conforming changes and would require notices described above that are served on or after July 1, 2021, to include certain text. The bill would instead require the Department of Housing and Community Development (HCD) to make available, on or before July 15, 2021, the official translation described above.

(9) Existing law establishes a program for providing rental assistance, using funding made available pursuant to the federal Consolidated Appropriations Act, 2021 (Appropriations Act), administered by HCD. Existing law, among other things, provides for the allocation of block grant funds to localities, as defined, that meet certain population requirements. Existing law requires an eligible grantee under these provisions to request an allocation from HCD by February 12, 2021, and requires HCD to complete the initial allocation of these funds no later than February 19, 2021. Existing law authorizes eligible uses of funds allocated to grantees under these provisions, consistent with the requirements of the Appropriations Act. Existing law provides that a grantee may provide assistance for rental arrears as a payment directly to a landlord on behalf of an eligible household by entering into an agreement with the landlord, subject to specified conditions, including that compensation be set at 80% of an eligible household's unpaid rental debt accumulated from April 1, 2020, to March 31, 2021. Existing law limits funds used to provide assistance for prospective rent payments for an eligible household to 25% of the eligible household's monthly rent.

This bill would revise and recast those provisions, including revisions to the state allocation of funds. The bill would specify requirements for Round 1 and Round 2 funds, as defined. This bill would, among other things, set the compensation for an eligible household's unpaid rental debt accumulated on or after April 1, 2020 at 100%. This bill would require funds used to

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 56 of 253

provide assistance for prospective rent payments for an eligible household to be set at 100% of the eligible household's monthly rent. The bill would specify requirements for grantees and eligibility for rental assistance.

This bill would enact the COVID–19 Rental Housing Recovery Act, which would, until September 30, 2024, among other things, place certain restrictions on an unlawful detainer action pertaining to residential real property that is based, in whole or in part, on nonpayment of rental debt that accumulated due to COVID–19 hardship, including by prohibiting a court from issuing a summons on a complaint for unlawful detainer that seeks possession of residential real property based on nonpayment of rental debt that accumulated due to COVID–19 hardship unless the plaintiff also files a statement, under penalty of perjury, that the plaintiff attempted to obtain rental assistance pursuant to a program described above and was denied and a copy of a final decision, as defined, from the pertinent government rental assistance program denying a rental assistance application for the property at issue in the case.

Existing law, in a legal action to recover rent or other financial obligations under a lease that accrued between April 1, 2020, and June 30, 2021, requires, before entry of judgment in the plaintiff's favor, the plaintiff to verify certain information, under penalty of perjury, relating to state rental assistance.

This bill would apply those provisions to rent or other financial obligations under a lease that accrued between April 1, 2020, and September 30, 2021.

By expanding the scope of the crime of perjury, the bill would impose a state-mandated local program.

(10) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

(11) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

(12) This bill would declare that it is to take effect immediately as an urgency statute.

The people of the State of California do enact as follows:

SECTION 1. Section 789.4 of the Civil Code is amended to read:

<< CA CIVIL § 789.4 >>

789.4. (a) In addition to the damages provided in subdivision (c) of Section 789.3, a landlord who violates Section 789.3, if the tenant has provided a declaration of COVID–19 financial distress pursuant to Section 1179.03 of the Code of Civil Procedure,

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 57 of 253

shall be liable for damages in an amount that is at least one thousand dollars ($1,000) but not more than two thousand five hundred dollars ($2,500), as determined by the trier of fact.

(b) This section shall remain in effect until **October** 1, 2021, and as of that date is repealed.

SEC. 2. Section 1788.65 of the Civil Code is amended to read:

<< CA CIVIL § 1788.65 >>

1788.65. (a) Notwithstanding any other law, a person shall not sell or assign any unpaid COVID–19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the time period between March 1, 2020, and **September** 30, 2021.

(b) This section shall remain in effect until **October** 1, 2021, and as of that date is repealed.

SEC. 3. Section 1788.66 of the Civil Code is amended to read:

<< CA CIVIL § 1788.66 >>

1788.66. Notwithstanding any other law, a person shall not sell or assign any unpaid COVID–19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the time period between March 1, 2020, and **September** 30, 2021, of any person who would have qualified for rental assistance funding provided by the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260)[1] **or Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2)**, **if** the person's household income is at or below 80 percent of the area median income for the 2020 **or 2021** calendar year.

SEC. 4. Section 1942.5 of the Civil Code, as amended by Section 5 of Chapter 2 of the Statutes of 2021, is amended to read:

<< CA CIVIL § 1942.5 >>

1942.5. (a) If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180–day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12–month period.

(c) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d) Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. It is also unlawful for a lessor to bring an action for unlawful detainer based on a cause of action other than nonpayment of COVID–19 rental debt, as defined in Section 1179.02 of the Code of Civil Procedure, for the purpose of retaliating against the lessee because the lessee has a COVID–19 rental debt. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f) This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g) Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k) A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

(*l*) This section shall remain in effect until **October** 1, 2021, and as of that date is repealed.

SEC. 5. Section 1942.5 of the Civil Code, as amended by Section 6 of Chapter 2 of the Statutes of 2021, is amended to read:

<< CA CIVIL § 1942.5 >>

1942.5. (a) If the lessor retaliates against the lessee because of the exercise by the lessee of the lessee's rights under this chapter or because of the lessee's complaint to an appropriate agency as to tenantability of a dwelling, and if the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1) After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, has provided notice of a suspected bed bug infestation, or has made an oral complaint to the lessor regarding tenantability.

(2) After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining correction of a condition relating to tenantability.

(3) After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice.

(4) After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

(5) After entry of judgment or the signing of an arbitration award, if any, when in the judicial proceeding or arbitration the issue of tenantability is determined adversely to the lessor.

In each instance, the 180–day period shall run from the latest applicable date referred to in paragraphs (1) to (5), inclusive.

(b) A lessee may not invoke subdivision (a) more than once in any 12–month period.

(c) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (a). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(d) Notwithstanding subdivision (a), it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because the lessee has lawfully organized or participated in a lessees' association or an organization advocating lessees' rights or has lawfully and peaceably exercised any rights under the law. In an action brought by or against the lessee pursuant to this subdivision, the lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory.

(e) To report, or to threaten to report, the lessee or individuals known to the landlord to be associated with the lessee to immigration authorities is a form of retaliatory conduct prohibited under subdivision (d). This subdivision shall in no way limit the definition of retaliatory conduct prohibited under this section.

(f) This section does not limit in any way the exercise by the lessor of the lessor's rights under any lease or agreement or any law pertaining to the hiring of property or the lessor's right to do any of the acts described in subdivision (a) or (d) for any lawful cause. Any waiver by a lessee of the lessee's rights under this section is void as contrary to public policy.

(g) Notwithstanding subdivisions (a) to (f), inclusive, a lessor may recover possession of a dwelling and do any of the other acts described in subdivision (a) within the period or periods prescribed therein, or within subdivision (d), if the notice of termination, rent increase, or other act, and any pleading or statement of issues in an arbitration, if any, states the ground upon

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 60 of 253

which the lessor, in good faith, seeks to recover possession, increase rent, or do any of the other acts described in subdivision (a) or (d). If the statement is controverted, the lessor shall establish its truth at the trial or other hearing.

(h) Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action for all of the following:

(1) The actual damages sustained by the lessee.

(2) Punitive damages in an amount of not less than one hundred dollars ($100) nor more than two thousand dollars ($2,000) for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act.

(i) In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action.

(j) The remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law.

(k) A lessor does not violate subdivision (c) or (e) by complying with any legal obligation under any federal government program that provides for rent limitations or rental assistance to a qualified tenant.

(*l*) This section shall become operative on **October** 1, 2021.

SEC. 6. Section 3273.1 of the Civil Code is amended to read:

<< CA CIVIL § 3273.1 >>

3273.1. For purposes of this title:

(a)(1) "Borrower" means any of the following:

(A) A natural person who is a mortgagor or trustor or a confirmed successor in interest, as defined in Section 1024.31 of Title 12 of the Code of Federal Regulations.

(B) An entity other than a natural person only if the secured property contains no more than four dwelling units and is currently occupied by one or more residential tenants.

(2) "Borrower" shall not include an individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(3) Unless the property securing the mortgage contains one or more deed-restricted affordable housing units or one or more affordable housing units subject to a regulatory restriction limiting rental rates that is contained in an agreement with a government agency, the following mortgagors shall not be considered a "borrower":

(A) A real estate investment trust, as defined in Section 856 of the Internal Revenue Code.[2]

(B) A corporation.

(C) A limited liability company in which at least one member is a corporation.

(4) "Borrower" shall also mean a person who holds a power of attorney for a borrower described in paragraph (1).

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 61 of 253

(b) "Effective time period" means the time period between the operational date of this title and **December** 1, 2021.

(c)(1) "Mortgage servicer" or "lienholder" means a person or entity who directly services a loan or who is responsible for interacting with the borrower, managing the loan account on a daily basis, including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent.

(2) "Mortgage servicer" or "lienholder" also means a subservicing agent to a master servicer by contract.

(3) "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

SEC. 7. Section 116.223 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 116.223 >>

116.223. (a) The Legislature hereby finds and declares as follows:

(1) There is anticipated to be an unprecedented number of claims arising out of nonpayment of residential rent that occurred between March 1, 2020, and **September** 30, 2021, related to the COVID–19 pandemic.

(2) These disputes are of special importance to the parties and of significant social and economic consequence collectively as the people of the State of California grapple with the health, economic, and social impacts of the COVID–19 pandemic.

(3) It is essential that the parties have access to a judicial forum to resolve these disputes expeditiously, inexpensively, and fairly.

(4) It is the intent of the Legislature that landlords of residential real property and their tenants have the option to litigate disputes regarding rent which is unpaid for the time period between March 1, 2020, and **September** 30, 2021, in the small claims court. It is the intent of the Legislature that the jurisdictional limits of the small claims court not apply to these disputes over COVID–19 rental debt.

(b)(1) Notwithstanding paragraph (1) of subdivision (a) Section 116.220, Section 116.221, or any other law, the small claims court has jurisdiction in any action for recovery of COVID–19 rental debt, as defined in Section 1179.02, and any defenses thereto, regardless of the amount demanded.

(2) In an action described in paragraph (1), the court shall reduce the damages awarded for any amount of COVID–19 rental debt sought by payments made to the landlord to satisfy the COVID–19 rental debt, including payments by the tenant, rental assistance programs, or another third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(3) An action to recover COVID–19 rental debt, as defined in Section 1179.02, brought pursuant to this subdivision shall not be commenced before **November** 1, 2021.

(c) Any claim for recovery of COVID–19 rental debt, as defined in Section 1179.02, shall not be subject to Section 116.231, notwithstanding the fact that a landlord of residential rental property may have brought two or more small claims actions in which the amount demanded exceeded two thousand five hundred dollars ($2,500) in any calendar year.

(d) This section shall remain in effect until **October** 1, 2025, and as of that date is repealed.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 62 of 253

SEC. 8. Section 871.10 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 871.10 >>

871.10. (a) In any action seeking recovery of COVID–19 rental debt, as defined in Section 1179.02, the plaintiff shall, in addition to any other requirements provided by law, attach to the complaint documentation showing that the plaintiff has made a good faith effort to investigate whether governmental rental assistance is available to the tenant, seek governmental rental assistance for the tenant, or cooperate with the tenant's efforts to obtain rental assistance from any governmental entity, or other third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(b) \* \* \* **In** an action subject to subdivision (a), the court may reduce the damages awarded for any amount of COVID–19 rental debt, as defined in Section 1179.02, sought if the court determines that the landlord refused to obtain rental assistance from the state rental assistance program created pursuant to Chapter 17 (commencing with Section 50897) of Part 2 of Division 31 of the Health and Safety Code, if the tenant met the eligibility requirements and funding was available.

\* \* \*

**(c)** An action to recover COVID–19 rental debt, as defined in Section 1179.02, that is subject to this section shall not be commenced before **November** 1, 2021.

**(d)** Subdivisions (a) through **(c)**, inclusive, shall not apply to an action to recover COVID–19 rental debt, as defined in Section 1179.02, that was pending before the court as of January 29, 2021.

**(e)** Except as provided in subdivision **(g)**, any action to recover COVID–19 rental debt, as defined in Section 1179.02, that is subject to this section and is pending before the court as of January 29, 2021, shall be stayed until **November** 1, 2021.

**(f)** This section shall not apply to any unlawful detainer action to recover possession pursuant to Section 1161.

**(g)(1)** Actions for breach of contract to recover rental debt that were filed before October 1, 2020, shall not be stayed and may proceed \* \* \* **.**

**(2) This** subdivision **does** not apply to actions filed against any person who would have qualified under the rental assistance funding provided through the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260)[3] \* \* \* **if** the person's household income is at or below 80 percent of the area median income for the 2020 **or 2021** calendar year.

SEC. 9. Section 871.11 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 871.11 >>

871.11. (a) Notwithstanding any other law, in any action to recover COVID–19 rental debt, as defined in Section 1179.02, brought as a limited or unlimited civil case, the court shall not, under ordinary circumstances, award reasonable attorneys' fees to a prevailing party that exceed the following amounts:

(1) If the matter is uncontested, five hundred dollars ($500).

(2) If the matter is contested, one thousand dollars ($1,000).

(b) In determining whether a case was litigated under ordinary circumstances, the court may consider the following:

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 63 of 253

(1) The number and complexity of pretrial and posttrial motions.

(2) The nature and extent of any discovery performed.

(3) Whether the case was tried by jury or by the court.

(4) The length of the trial.

(5) Any other factor the court, in its discretion, finds relevant, including whether the tenant or the landlord, or both the tenant and the landlord, would have been eligible to receive a rental assistance payment from the governmental entity, or other third party pursuant to paragraph (3) of subdivision (a) of Section 1947.3 of the Civil Code.

(c) Nothing in this section shall be interpreted to entitle the prevailing party to an award of reasonable attorneys' fees if that award is not otherwise provided for by law or agreement.

(d) This section shall remain in effect until **October** 1, 2025, and as of that date is repealed.

SEC. 10. Section 871.12 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 871.12 >>

871.12. This chapter shall remain in effect until **October** 1, 2027, and as of the[4] date is repealed.

SEC. 11. Section 1161.2 of the Code of Civil Procedure, as amended by Section 11 of Chapter 2 of the Statutes of 2021, is amended to read:

<< CA CIV PRO § 1161.2 >>

1161.2. (a)(1) The clerk shall allow access to limited civil case records filed under this chapter, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant and the address of the premises, including the apartment or unit number, if any.

(C) To a resident of the premises who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(E) Except as provided in subparagraph (G), to any person by order of the court if judgment is entered for the plaintiff after trial more than 60 days since the filing of the complaint. The court shall issue the order upon issuing judgment for the plaintiff.

(F) Except as provided in subparagraph (G), to any other person 60 days after the complaint has been filed if the plaintiff prevails in the action within 60 days of the filing of the complaint, in which case the clerk shall allow access to any court records in the action. If a default or default judgment is set aside more than 60 days after the complaint has been filed, this section shall apply as if the complaint had been filed on the date the default or default judgment is set aside.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 64 of 253

(G)(i) In the case of a complaint involving residential property based on Section 1161a as indicated in the caption of the complaint, as required in subdivision (c) of Section 1166, to any other person, if 60 days have elapsed since the complaint was filed with the court, and, as of that date, judgment against all defendants has been entered for the plaintiff, after a trial.

(ii) Subparagraphs (E) and (F) shall not apply if the plaintiff filed the action between March 4, 2020, and **September** 30, 2021, and the action is based on an alleged default in the payment of rent.

(2) This section shall not be construed to prohibit the court from issuing an order that bars access to the court record in an action filed under this chapter if the parties to the action so stipulate.

(b)(1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to an unlawful detainer action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) Upon the filing of a case so restricted, the court clerk shall mail notice to each defendant named in the action. The notice shall be mailed to the address provided in the complaint. The notice shall contain a statement that an unlawful detainer complaint (eviction action) has been filed naming that party as a defendant, and that access to the court file will be delayed for 60 days except to a party, an attorney for one of the parties, or any other person who (1) provides to the clerk the names of at least one plaintiff and one defendant in the action and provides to the clerk the address, including any applicable apartment, unit, or space number, of the subject premises, or (2) provides to the clerk the name of one of the parties in the action or the case number and can establish through proper identification that the person lives at the subject premises. The notice shall also contain a statement that access to the court index, register of actions, or other records is not permitted until 60 days after the complaint is filed, except pursuant to an order upon a showing of good cause for access. The notice shall contain on its face the following information:

(1) The name and telephone number of the county bar association.

(2) The name and telephone number of any entity that requests inclusion on the notice and demonstrates to the satisfaction of the court that it has been certified by the State Bar of California as a lawyer referral service and maintains a panel of attorneys qualified in the practice of landlord-tenant law pursuant to the minimum standards for a lawyer referral service established by the State Bar of California and Section 6155 of the Business and Professions Code.

(3) The following statement:

"The State Bar of California certifies lawyer referral services in California and publishes a list of certified lawyer referral services organized by county. To locate a lawyer referral service in your county, go to the State Bar's internet website at www.calbar.ca.gov or call 1–866–442–2529."

(4) The name and telephone number of an office or offices funded by the federal Legal Services Corporation or qualified legal services projects that receive funds distributed pursuant to Section 6216 of the Business and Professions Code that provide legal services to low-income persons in the county in which the action is filed. The notice shall state that these telephone numbers may be called for legal advice regarding the case. The notice shall be issued between 24 and 48 hours of the filing of the complaint,

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 65 of 253

excluding weekends and holidays. One copy of the notice shall be addressed to "all occupants" and mailed separately to the subject premises. The notice shall not constitute service of the summons and complaint.

**(5) The following statement, for a notice sent out pursuant to this section between October 1, 2021 and March 31, 2022:**

**"IMPORTANT NOTICE FROM THE STATE OF CALIFORNIA—YOU MUST TAKE ACTION TO AVOID AN EVICTION: As part of the state's COVID–19 relief plan, money has been set aside to help renters who have fallen behind on rent or utility payments.**

**If you are behind on rent or utility payments, YOU SHOULD COMPLETE A RENTAL ASSISTANCE APPLICATION IMMEDIATELY! It is free and simple to apply. Citizenship or immigration status does not matter.**

**You can find out how to start your application by calling 1–833–430–2122 or visiting http://housingiskey.com right away."**

(d) Notwithstanding any other law, the court shall charge an additional fee of fifteen dollars ($15) for filing a first appearance by the plaintiff. This fee shall be added to the uniform filing fee for actions filed under this chapter.

(e) This section does not apply to a case that seeks to terminate a mobilehome park tenancy if the statement of the character of the proceeding in the caption of the complaint clearly indicates that the complaint seeks termination of a mobilehome park tenancy.

(f) This section does not alter any provision of the Evidence Code.

\* \* \*

<< Repealed: CA CIV PRO § 1161.2 >>

SEC. 12. Section 1161.2 of the Code of Civil Procedure, as amended by Section 12 of Chapter 2 of the Statutes of 2021, is repealed.

SEC. 13. Section 1161.2.5 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1161.2.5 >>

1161.2.5. (a)(1) Except as provided in Section 1161.2, the clerk shall allow access to civil case records for actions seeking recovery of COVID–19 rental debt, as defined in Section 1179.02, including the court file, index, and register of actions, only as follows:

(A) To a party to the action, including a party's attorney.

(B) To a person who provides the clerk with the names of at least one plaintiff and one defendant.

(C) To a resident of the premises for which the COVID–19 rental debt is owed who provides the clerk with the name of one of the parties or the case number and shows proof of residency.

(D) To a person by order of the court, which may be granted ex parte, on a showing of good cause.

(2) To give the court notice that access to the records in an action is limited, any complaint or responsive pleading in a case subject to this section shall include on either the first page of the pleading or a cover page, the phrase "ACTION FOR RECOVERY OF COVID–19 RENTAL DEBT AS DEFINED UNDER SECTION 1179.02" in bold, capital letters, in 12 point or larger font.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 66 of 253

**(3) The Judicial Council shall develop forms for parties to utilize in actions brought pursuant to Section 116.223 and in civil actions for recovery of COVID–19 rental debt as defined in Section 1179.02. The forms shall provide prominent notice on the first page that access to the records in the case is limited pursuant to this section.**

(b)(1) For purposes of this section, "good cause" includes, but is not limited to, both of the following:

(A) The gathering of newsworthy facts by a person described in Section 1070 of the Evidence Code.

(B) The gathering of evidence by a party to a civil action solely for the purpose of making a request for judicial notice pursuant to subdivision (d) of Section 452 of the Evidence Code.

(2) It is the intent of the Legislature that a simple procedure be established to request the ex parte order described in subparagraph (D) of paragraph (1) of subdivision (a).

(c) This section does not alter any provision of the Evidence Code.

* * *

SEC. 14. Section 1179.02 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1179.02 >>

1179.02. For purposes of this chapter:

(a) "Covered time period" means the time period between March 1, 2020, and **September** 30, 2021.

(b) "COVID–19–related financial distress" means any of the following:

(1) Loss of income caused by the COVID–19 pandemic.

(2) Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

(3) Increased expenses directly related to the health impact of the COVID–19 pandemic.

(4) Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit a tenant's ability to earn income.

(5) Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

(6) Other circumstances related to the COVID–19 pandemic that have reduced a tenant's income or increased a tenant's expenses.

(c) "COVID–19 rental debt" means unpaid rent or any other unpaid financial obligation of a tenant under the tenancy that came due during the covered time period.

(d) "Declaration of COVID–19–related financial distress" means the following written statement:

I am currently unable to pay my rent or other financial obligations under the lease in full because of one or more of the following:

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 67 of 253

1. Loss of income caused by the COVID–19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

3. Increased expenses directly related to health impacts of the COVID–19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit my ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

6. Other circumstances related to the COVID–19 pandemic that have reduced my income or increased my expenses.

Any public assistance, including unemployment insurance, pandemic unemployment assistance, state disability insurance (SDI), or paid family leave, that I have received since the start of the COVID–19 pandemic does not fully make up for my loss of income and/or increased expenses.

Signed under penalty of perjury:

Dated:

(e) "Landlord" includes all of the following or the agent of any of the following:

(1) An owner of residential real property.

(2) An owner of a residential rental unit.

(3) An owner of a mobilehome park.

(4) An owner of a mobilehome park space or lot.

(f) "Protected time period" means the time period between March 1, 2020, and August 31, 2020.

(g) "Rental payment" means rent or any other financial obligation of a tenant under the tenancy.

(h) "Tenant" means any natural person who hires real property except any of the following:

(1) Tenants of commercial property, as defined in subdivision (c) of Section 1162 of the Civil Code.

(2) Those persons whose occupancy is described in subdivision (b) of Section 1940 of the Civil Code.

(i) "Transition time period" means the time period between September 1, 2020, and **September** 30, 2021.

SEC. 15. Section 1179.03 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1179.03 >>

1179.03. (a)(1) Any notice that demands payment of COVID–19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 shall be modified as required by this section. A notice which does not meet the requirements of this section, regardless of when the notice was issued, shall not be sufficient to establish a cause of action for unlawful detainer or a basis for default judgment.

(2) Any case based solely on a notice that demands payment of COVID–19 rental debt served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 may be dismissed if the notice does not meet the requirements of this section, regardless of when the notice was issued.

(3) Notwithstanding paragraphs (1) and (2), this section shall have no effect if the landlord lawfully regained possession of the property or obtained a judgment for possession of the property before the operative date of this section.

(b) If the notice demands payment of rent that came due during the protected time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

(3) The notice shall advise the tenant that the tenant cannot be evicted for failure to comply with the notice if the tenant delivers a signed declaration of COVID–19–related financial distress to the landlord on or before the date that the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4) The notice shall include the following text in at least 12–point font:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID–19, your landlord will not be able to evict you for this missed payment if you sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, but you will still owe this money to your landlord. If you do not sign and deliver the declaration within this time period, you may lose the eviction protections available to you. You must return this form to be protected. You should keep a copy or picture of the signed form for your records.

You will still owe this money to your landlord and can be sued for the money, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(c) If the notice demands payment of rent that came due during the transition time period, as defined in Section 1179.02, the notice shall comply with all of the following:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall set forth the amount of rent demanded and the date each amount became due.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 69 of 253

(3) The notice shall advise the tenant that the tenant will not be evicted for failure to comply with the notice, except as allowed by this chapter, if the tenant delivers a signed declaration of COVID–19–related financial distress to the landlord on or before the date the notice to pay rent or quit or notice to perform covenants or quit expires, by any of the methods specified in subdivision (f).

(4) For notices served before February 1, 2021, the notice shall include the following text in at least 12–point type:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID–19, you may sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, and your landlord will not be able to evict you for this missed payment so long as you make the minimum payment (see below). You will still owe this money to your landlord. You should keep a copy or picture of the signed form for your records.

If you provide the declaration form to your landlord as described above AND, on or before January 31, 2021, you pay an amount that equals at least 25 percent of each rental payment that came due or will come due during the period between September 1, 2020, and January 31, 2021, that you were unable to pay as a result of decreased income or increased expenses due to COVID–19, your landlord cannot evict you. Your landlord may require you to submit a new declaration form for each rental payment that you do not pay that comes due between September 1, 2020, and January 31, 2021.

For example, if you provided a declaration form to your landlord regarding your decreased income or increased expenses due to COVID–19 that prevented you from making your rental payment in September and October of 2020, your landlord could not evict you if, on or before January 31, 2021, you made a payment equal to 25 percent of September's and October's rental payment (i.e., half a month's rent). If you were unable to pay any of the rental payments that came due between September 1, 2020, and January 31, 2021, and you provided your landlord with the declarations in response to each 15–day notice your landlord sent to you during that time period, your landlord could not evict you if, on or before January 31, 2021, you paid your landlord an amount equal to 25 percent of all the rental payments due from September through January (i.e., one and a quarter month's rent).

You will still owe the full amount of the rent to your landlord, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

For information about legal resources that may be available to you, visit lawhelpca.org."

(5) For notices served on or after February 1, 2021, **and before July 1, 2021,** the notice shall include the following text in at least 12–point type:

"NOTICE FROM THE STATE OF CALIFORNIA: If you are unable to pay the amount demanded in this notice, and have decreased income or increased expenses due to COVID–19, you may sign and deliver the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays, and your landlord will not be able to evict you for this missed payment so long as you make the minimum payment (see below). You will still owe this money to your landlord. You should keep a copy or picture of the signed form for your records.

If you provide the declaration form to your landlord as described above AND, on or before June 30, 2021, you pay an amount that equals at least 25 percent of each rental payment that came due or will come due during the period between September 1, 2020, and June 30, 2021, that you were unable to pay as a result of decreased income or increased expenses due to COVID–19, your landlord cannot evict you. Your landlord may require you to submit a new declaration form for each rental payment that you do not pay that comes due between September 1, 2020, and June 30, 2021.

If you were unable to pay any of the rental payments that came due between September 1, 2020, and June 30, 2021, and you provided your landlord with the declarations in response to each 15–day notice your landlord sent to you during that time period, your landlord could not evict you if, on or before June 30, 2021, you paid your landlord an amount equal to 25 percent of all the rental payments due from September 2020 through June 2021.

You will still owe the full amount of the rent to your landlord, but you cannot be evicted from your home if you comply with these requirements. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes. Failure to respond to this notice may result in an unlawful detainer action (eviction) being filed against you.

YOU MAY QUALIFY FOR RENTAL ASSISTANCE. In addition to extending these eviction protections, the State of California, in partnership with federal and local governments, has created an emergency rental assistance program to assist renters who have been unable to pay their rent and utility bills as a result of the COVID–19 pandemic. This program may be able to help you get caught up with past-due rent. Additionally, depending on the availability of funds, the program may also be able to assist you with making future rental payments.

While not everyone will qualify for this assistance, you can apply for it regardless of your citizenship or immigration status. There is no charge to apply for or receive this assistance.

Additional information about the extension of the COVID–19 Tenant Relief Act and new state or local rental assistance programs, including more information about how to qualify for assistance, can be found by visiting http://housingiskey.com or by calling 1–833–422–4255. * * *

**(6) For notices served on or after July 1, 2021, the notice shall include the following text in at least 12–point type:**

**NOTICE FROM THE STATE OF CALIFORNIA—YOU MUST TAKE ACTION TO AVOID EVICTION. If you are unable to pay the amount demanded in this notice because of the COVID–19 pandemic, you should take action right away.**

**IMMEDIATELY: Sign and return the declaration form included with your notice to your landlord within 15 days, excluding Saturdays, Sundays, and other judicial holidays. Sign and return the declaration even if you have done this before. You should keep a copy or a picture of the signed form for your records.**

**BEFORE SEPTEMBER 30, 2021: Pay your landlord at least 25 percent of any rent you missed between September 1, 2020, and September 30, 2021. If you need help paying that amount, apply for rental assistance. You will still owe the rest of the rent to your landlord, but as long as you pay 25 percent by September 30, 2021, your landlord will not be able to evict you for failing to pay the rest of the rent. You should keep careful track of what you have paid and any amount you still owe to protect your rights and avoid future disputes.**

**AS SOON AS POSSIBLE: Apply for rental assistance! As part of California's COVID–19 relief plan, money has been set aside to help renters who have fallen behind on rent or utility payments. If you are behind on rent or utility payments, YOU SHOULD COMPLETE A RENTAL ASSISTANCE APPLICATION IMMEDIATELY! It is free and simple to apply. Citizenship or immigration status does not matter. You can find out how to start your application by calling 1– 833–430–2122 or visiting http://housingiskey.com right away.**

(d) An unsigned copy of a declaration of COVID–19–related financial distress shall accompany each notice delivered to a tenant to which subdivision (b) or (c) is applicable. If the landlord was required, pursuant to Section 1632 of the Civil Code, to provide a translation of the rental contract or agreement in the language in which the contract or agreement was negotiated, the landlord shall also provide the unsigned copy of a declaration of COVID–19–related financial distress to the tenant in the language in which the contract or agreement was negotiated. The Department of * * * **Housing and Community Development** shall make

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 71 of 253

available an official translation of the text required by paragraph (4) of subdivision (b) **\* \* \*** **and paragraphs** (4) **\* \* \*** **to (6), inclusive,** of subdivision (c) in the languages specified in Section 1632 of the Civil Code by no later than **July** 15, 2021.

(e) If a tenant owes a COVID–19 rental debt to which both subdivisions (b) and (c) apply, the landlord shall serve two separate notices that comply with subdivisions (b) and (c), respectively.

(f) A tenant may deliver the declaration of COVID–19–related financial distress to the landlord by any of the following methods:

(1) In person, if the landlord indicates in the notice an address at which the declaration may be delivered in person.

(2) By electronic transmission, if the landlord indicates an email address in the notice to which the declaration may be delivered.

(3) Through United States mail to the address indicated by the landlord in the notice. If the landlord does not provide an address pursuant to subparagraph (1), then it shall be conclusively presumed that upon the mailing of the declaration by the tenant to the address provided by the landlord, the declaration is deemed received by the landlord on the date posted, if the tenant can show proof of mailing to the address provided by the landlord.

(4) Through any of the same methods that the tenant can use to deliver the payment pursuant to the notice if delivery of the declaration by that method is possible.

(g) Except as provided in Section 1179.02.5, the following shall apply to a tenant who, within 15 days of service of the notice specified in subdivision (b) or (c), excluding Saturdays, Sundays, and other judicial holidays, demanding payment of COVID–19 rental debt delivers a declaration of COVID–19–related financial distress to the landlord by any of the methods provided in subdivision (f):

(1) With respect to a notice served pursuant to subdivision (b), the tenant shall not then or thereafter be deemed to be in default with regard to that COVID–19 rental debt for purposes of subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161.

(2) With respect to a notice served pursuant to subdivision (c), the following shall apply:

(A) Except as provided by subparagraph (B), the landlord may not initiate an unlawful detainer action before **October** 1, 2021.

(B) A tenant shall not be guilty of unlawful detainer, now or in the future, based upon nonpayment of COVID–19 rental debt that came due during the transition period if, on or before **September** 30, 2021, the tenant tenders one or more payments that, when taken together, are of an amount equal to or not less than 25 percent of each transition period rental payment demanded in one or more notices served pursuant to **subdivision** (c) and for which the tenant complied with this subdivision by timely delivering a declaration of COVID–19–related financial distress to the landlord.

(h)(1)(A) Within the time prescribed in Section 1167, a tenant shall be permitted to file a signed declaration of COVID–19–related financial distress with the court.

(B) If the tenant files a signed declaration of COVID–19–related financial distress with the court pursuant to this subdivision, the court shall dismiss the case, pursuant to paragraph (2), if the court finds, after a noticed hearing on the matter, that the tenant's failure to return a declaration of COVID–19–related financial distress within the time required by subdivision (g) was the result of mistake, inadvertence, surprise, or excusable neglect, as those terms have been interpreted under subdivision (b) of Section 473.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 72 of 253

(C) The noticed hearing required by this paragraph shall be held with not less than five days' notice and not more than 10 days' notice, to be given by the court, and may be held separately or in conjunction with any regularly noticed hearing in the case, other than a trial.

(2) If the court dismisses the case pursuant to paragraph (1), that dismissal shall be without prejudice as follows:

(A) If the case was based in whole or in part upon a notice served pursuant to subdivision (b), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (b).

(B) Before **October** 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based on the notice served pursuant to subdivision (c).

(C) On or after **October** 1, 2021, if the case is based in whole or in part on a notice served pursuant to subdivision (c), the court shall dismiss any cause of action based upon the notice served pursuant to subdivision (c) if the tenant, within five days of the court's order to do so, makes the payment required by subparagraph (B) of paragraph (2) of subdivision (g), provided that if the fifth day falls on a Saturday, Sunday, or judicial holiday the last day to pay shall be extended to the next court day.

(3) If the court dismisses the case pursuant to this subdivision, the tenant shall not be considered the prevailing party for purposes of Section 1032, any attorney's fee provision appearing in contract or statute, or any other law.

(i) Notwithstanding any other law, a notice which is served pursuant to subdivision (b) or (c) that complies with the requirements of this chapter and subdivision (e) of Section 798.56 of the Civil Code or paragraphs (2) and (3) of Section 1161, as applicable, need not include specific language required by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county.

SEC. 16. Section 1179.03.5 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1179.03.5 >>

1179.03.5. (a) Before **October** 1, 2021, a court may not find a tenant guilty of an unlawful detainer unless it finds that one of the following applies:

(1) The tenant was guilty of the unlawful detainer before March 1, 2020.

(2) In response to service of a notice demanding payment of COVID–19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161, the tenant failed to comply with the requirements of Section 1179.03.

(3)(A) The unlawful detainer arises because of a termination of tenancy for any of the following:

(i) An at-fault just cause, as defined in paragraph (1) of subdivision (b) of Section 1946.2 of the Civil Code.

(ii)(I) A no-fault just cause, as defined in paragraph (2) of subdivision (b) of Section 1946.2 of the Civil Code, other than intent to demolish or to substantially remodel the residential real property, as defined in subparagraph (D) of paragraph (2) of subdivision (b) of Section 1946.2.

(II) Notwithstanding subclause (I), termination of a tenancy based on intent to demolish or to substantially remodel the residential real property shall be permitted if necessary to maintain compliance with the requirements of Section 1941.1 of the Civil Code, Section 17920.3 or 17920.10 of the Health and Safety Code, or any other applicable law governing the habitability of residential rental units.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 73 of 253

(iii) The owner of the property has entered into a contract for the sale of that property with a buyer who intends to occupy the property, and all the requirements of paragraph (8) of subdivision (e) of Section 1946.2 of the Civil Code have been satisfied.

(B) In an action under this paragraph, other than an action to which paragraph (2) also applies, the landlord shall be precluded from recovering COVID–19 rental debt in connection with any award of damages.

(b)(1) This section does not require a landlord to assist the tenant to relocate through the payment of relocation costs if the landlord would not otherwise be required to do so pursuant to Section 1946.2 of the Civil Code or any other law.

(2) A landlord who is required to assist the tenant to relocate pursuant to Section 1946.2 of the Civil Code or any other law, may offset the tenant's COVID–19 rental debt against their obligation to assist the tenant to relocate.

SEC. 17. Section 1179.04 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1179.04 >>

1179.04. (a) On or before September 30, 2020, a landlord shall provide, in at least 12–point type, the following notice to tenants who, as of September 1, 2020, have not paid one or more rental payments that came due during the protected time period:

"NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has enacted the COVID–19 Tenant Relief Act of 2020 which protects renters who have experienced COVID–19–related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and January 31, 2021.

"COVID–19–related financial distress" means any of the following:

1. Loss of income caused by the COVID–19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

3. Increased expenses directly related to the health impact of the COVID–19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit your ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

6. Other circumstances related to the COVID–19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted based on this nonpayment.

2. If you are unable to pay rental payments that come due between September 1, 2020, and January 31, 2021, because of decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before January 31, 2021.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 74 of 253

You must provide, to your landlord, a declaration under penalty of perjury of your COVID–19–related financial distress attesting to the decreased income or increased expenses due to the COVID–19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and January 31, 2021, your landlord will be required to give you a 15–day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file which indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation which shows that you have experienced a decrease in income or increase in expenses due to the COVID–19 pandemic. Your landlord must tell you in the 15–day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15–day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15–day notice and do not provide the declaration form to your landlord before the 15–day notice expires, you could be evicted. You could also be evicted beginning February 1, 2021, if you owe rental payments due between September 1, 2020, and January 31, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

For information about legal resources that may be available to you, visit lawhelpca.org.”

(b) On or before February 28, 2021, a landlord shall provide, in at least 12–point type, the following notice to tenants who, as of February 1, 2021, have not paid one or more rental payments that came due during the covered time period:

“NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has enacted the COVID–19 Tenant Relief Act which protects renters who have experienced COVID–19–related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and June 30, 2021.

“COVID–19–related financial distress” means any of the following:

1. Loss of income caused by the COVID–19 pandemic.

2. Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.

3. Increased expenses directly related to the health impact of the COVID–19 pandemic.

4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit your ability to earn income.

5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.

6. Other circumstances related to the COVID–19 pandemic that have reduced your income or increased your expenses.

This law gives you the following protections:

1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted based on this nonpayment.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 75 of 253

2. If you are unable to pay rental payments that come due between September 1, 2020, and June 30, 2021, because of decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before June 30, 2021.

You must provide, to your landlord, a declaration under penalty of perjury of your COVID–19–related financial distress attesting to the decreased income or increased expenses due to the COVID–19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and June 30, 2021, your landlord will be required to give you a 15–day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.

If your landlord has proof of income on file which indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation which shows that you have experienced a decrease in income or increase in expenses due to the COVID–19 pandemic. Your landlord must tell you in the 15–day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.

It is very important you do not ignore a 15–day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15–day notice and do not provide the declaration form to your landlord before the 15–day notice expires, you could be evicted. You could also be evicted beginning July 1, 2021 if you owe rental payments due between September 1, 2020, and June 30, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.

YOU MAY QUALIFY FOR RENTAL ASSISTANCE. In addition to extending these eviction protections, the State of California, in partnership with federal and local governments, has created an emergency rental assistance program to assist renters who have been unable to pay their rent and utility bills as a result of the COVID–19 pandemic. This program may be able to help you get caught up with past-due rent. Additionally, depending on the availability of funds, the program may also be able to assist you with making future rental payments.

While not everyone will qualify for this assistance, you can apply for it regardless of your citizenship or immigration status. There is no charge to apply for or receive this assistance.

Additional information about the extension of the COVID–19 Tenant Relief Act and new state or local rental assistance programs, including more information about how to qualify for assistance, can be found by visiting http://housingiskey.com or by calling 1–833–422–4255.”

**(c) On or before July 31, 2021, a landlord shall provide, in at least 12–point type, the following notice to tenants who, as of July 1, 2021, have not paid one or more rental payments that came due during the covered time period:**

**“NOTICE FROM THE STATE OF CALIFORNIA: The California Legislature has extended the COVID–19 Tenant Relief Act. The law now protects renters who have experienced COVID–19–related financial distress from being evicted for failing to make rental payments due between March 1, 2020, and September 30, 2021.**

**“COVID–19–related financial distress” means any of the following:**

**1. Loss of income caused by the COVID–19 pandemic.**

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 76 of 253

**2. Increased out-of-pocket expenses directly related to performing essential work during the COVID–19 pandemic.**

**3. Increased expenses directly related to the health impact of the COVID–19 pandemic.**

**4. Childcare responsibilities or responsibilities to care for an elderly, disabled, or sick family member directly related to the COVID–19 pandemic that limit your ability to earn income.**

**5. Increased costs for childcare or attending to an elderly, disabled, or sick family member directly related to the COVID–19 pandemic.**

**6. Other circumstances related to the COVID–19 pandemic that have reduced your income or increased your expenses.**

**This law gives you the following protections:**

**1. If you failed to make rental payments due between March 1, 2020, and August 31, 2020, because you had decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted based on this nonpayment.**

**2. If you are unable to pay rental payments that come due between September 1, 2020, and September 30, 2021, because of decreased income or increased expenses due to the COVID–19 pandemic, as described above, you cannot be evicted if you pay 25 percent of the rental payments missed during that time period on or before September 30, 2021.**

**You must provide, to your landlord, a declaration under penalty of perjury of your COVID–19–related financial distress attesting to the decreased income or increased expenses due to the COVID–19 pandemic to be protected by the eviction limitations described above. Before your landlord can seek to evict you for failing to make a payment that came due between March 1, 2020, and September 30, 2021, your landlord will be required to give you a 15–day notice that informs you of the amounts owed and includes a blank declaration form you can use to comply with this requirement.**

**If your landlord has proof of income on file that indicates that your household makes at least 130 percent of the median income for the county where the rental property is located, as published by the Department of Housing and Community Development in the Official State Income Limits for 2020, your landlord may also require you to provide documentation that shows that you have experienced a decrease in income or increase in expenses due to the COVID–19 pandemic. Your landlord must tell you in the 15–day notice whether your landlord is requiring that documentation. Any form of objectively verifiable documentation that demonstrates the financial impact you have experienced is sufficient, including a letter from your employer, an unemployment insurance record, or medical bills, and may be provided to satisfy the documentation requirement.**

**It is very important you do not ignore a 15–day notice to pay rent or quit or a notice to perform covenants or quit from your landlord. If you are served with a 15–day notice and do not provide the declaration form to your landlord before the 15–day notice expires, you could be evicted. You could also be evicted beginning October 1, 2021 if you owe rental payments due between September 1, 2020, and September 30, 2021, and you do not pay an amount equal to at least 25 percent of the payments missed for that time period.**

**YOU MAY QUALIFY FOR RENTAL ASSISTANCE. In addition to extending these eviction protections, the State of California, in partnership with federal and local governments, has created an emergency rental assistance program to assist renters who have been unable to pay their rent and utility bills as a result of the COVID–19 pandemic. This program may be able to help you get caught up with past-due rent. Additionally, depending on the availability of funds, the program may also be able to assist you with making future rental payments.**

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 77 of 253

**While not everyone will qualify for this assistance, you can apply for it regardless of your citizenship or immigration status. There is no charge to apply for or receive this assistance.**

**Additional information about the extension of the COVID–19 Tenant Relief Act and new state or local rental assistance programs, including more information about how to qualify for assistance, can be found by visiting http:// housingiskey.com or by calling 1–833–430–2122."**

**(d)** The landlord may provide the notice required by **subdivisions** (a) \* \* \* **to (c), inclusive**, as applicable, in the manner prescribed by Section 1162 or by mail.

**(e)**(1) A landlord may not serve a notice pursuant to subdivision (b) or (c) of Section 1179.03 before the landlord has provided the notice required by **subdivisions** (a) \* \* \* **to (c), inclusive**, as applicable.

(2) The notice required by subdivision (a) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before September 30, 2020.

(3) The notice required by subdivision (b) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before February 28, 2021.

**(4) The notice required by subdivision (c) may be provided to a tenant concurrently with a notice pursuant to subdivision (b) or (c) of Section 1179.03 that is served on or before September 30, 2021.**

SEC. 18. Section 1179.05 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1179.05 >>

1179.05. (a) Any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction is subject to all of the following:

(1) Any extension, expansion, renewal, reenactment, or new adoption of a measure, however delineated, that occurs between August 19, 2020, and \* \* \* **March 31**, **2022**, shall have no effect before **April** 1, **2022**.

(2) Any provision which allows a tenant a specified period of time in which to repay COVID–19 rental debt shall be subject to all of the following:

(A) If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date on or before **May** 1, **2022**, any extension of that date made after August 19, 2020, shall have no effect.

(B) If the provision in effect on August 19, 2020, required the repayment period to commence on a specific date after **May** 1, **2022**, or conditioned commencement of the repayment period on the termination of a proclamation of state of emergency or local emergency, the repayment period is deemed to begin on **May** 1, **2022**.

(C) The specified period of time during which a tenant is permitted to repay COVID–19 rental debt may not extend beyond the period that was in effect on August 19, 2020. In addition, a provision may not permit a tenant a period of time that extends beyond **May** 31, **2023**, to repay COVID–19 rental debt.

(b) This section does not alter a city, county, or city and county's authority to extend, expand, renew, reenact, or newly adopt an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy, consistent with subdivision (g) of Section 1946.2, provided that a provision enacted or

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB Document 62 Filed 07/18/22 Page 78 of 253

amended after August 19, 2020, shall not apply to rental payments that came due between March 1, 2020, and \*\*\* **March 31**, **2022**.

(c) The one-year limitation provided in subdivision (2) of Section 1161 is tolled during any time period that a landlord is or was prohibited by any ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction based on nonpayment of rental payments from serving a notice that demands payment of COVID–19 rental debt pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) of Section 1161.

(d) It is the intent of the Legislature that this section be applied retroactively to August 19, 2020.

(e) The Legislature finds and declares that this section addresses a matter of statewide concern rather than a municipal affair as that term is used in Section 5 of Article XI of the California Constitution. Therefore, this section applies to all cities, including charter cities.

(f) It is the intent of the Legislature that the purpose of this section is to protect individuals negatively impacted by the COVID–19 pandemic, and that this section does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect tenants from eviction.

SEC. 19. Section 1179.07 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1179.07 >>

1179.07. This chapter shall remain in effect until **October** 1, 2025, and as of that date is repealed.

SEC. 20. Chapter 6 (commencing with Section 1179.08) is added to Title 3 of Part 3 of the Code of Civil Procedure, to read:

pt. 3 t. 3 ch. 6 pr. § 1179.08

Chapter 6. COVID–19 Rental Housing Recovery Act

<< CA CIV PRO § 1179.08 >>

1179.08. This chapter shall be known, and may be cited, as the COVID–19 Rental Housing Recovery Act.

<< CA CIV PRO § 1179.09 >>

1179.09. For purposes of this chapter:

(a) "Approved application" means an application for which a government rental assistance program has verified applicant eligibility, and the requested funds have been obligated to the applicant for payment.

(b) "COVID–19 recovery period rental debt" means a rental debt of a tenant under a tenancy that came due between October 1, 2021, and March 31, 2022.

(c) "COVID–19 rental debt" has the same meaning as defined in Section 1179.02.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 79 of 253

(d)(1) "Final decision" means either of the following determinations by a government rental assistance program regarding an application for rental assistance:

(A) The application is an approved application.

(B) The application is denied for any of the following reasons:

(i) The tenant is not eligible for government rental assistance.

(ii) The government rental assistance program no longer has sufficient rental assistance funds to approve the application.

(iii) The application for government rental assistance remains incomplete 15 days, excluding Saturdays, Sundays, and other judicial holidays, after the landlord properly completed the portion of the application that is the responsibility of the landlord because of failure on the part of the tenant to properly complete the portion of the application that is the responsibility of the tenant.

(2) "Final decision" does not include any of the following:

(A) The rejection of an application as incomplete or improperly completed by a landlord.

(B) Notification that an application is temporarily pending further action by the government rental assistance program or the applicant.

(C) Notification that the landlord or tenant applied to the wrong government rental assistance program for the property or rental debt at issue.

(e) "Government rental assistance program" means any rental assistance program authorized pursuant to Chapter 17 (commencing with Section 50897) of Part 2 of Division 31 of the Health and Safety Code.

(f) "Pertinent government rental assistance program" means a government rental assistance program for the city, county, or city and county in which the property at issue is located.

(g) "Rental debt" means an unpaid rent or other unpaid financial obligation of a tenant under the tenancy that has come due.

(h)(1) "Rental debt that accumulated due to COVID–19 hardship" means COVID–19 rental debt, COVID–19 recovery period rental debt, or a combination of both, if it accumulated during a tenancy initially established before October 1, 2021.

(2)(A) For purposes of this subdivision, a tenancy is initially established when the tenants first lawfully occupy the premises.

(B) Any of the following do not initially establish a tenancy:

(i) The renewal of a periodic tenancy.

(ii) The extension of an existing lease or rental agreement.

(iii) The execution of a new lease or rental agreement with one or more individuals who already lawfully occupy the premises.

<< CA CIV PRO § 1179.10 >>

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 80 of 253

1179.10. (a) A notice for a residential rental property that demands payment of COVID–19 recovery period rental debt and that is served pursuant to subdivision (e) of Section 798.56 of the Civil Code or paragraph (2) or (3) of Section 1161 shall be modified as follows:

(1) The time period in which the tenant may pay the amount due or deliver possession of the property shall be no shorter than three days, excluding Saturdays, Sundays, and other judicial holidays.

(2) The notice shall include all of the following:

(A) The amount of rent demanded and the date each amount became due.

(B) The telephone number and internet website address of the pertinent government rental assistance program.

(C) The following bold text in at least 12–point font:

"IMPORTANT NOTICE FROM THE STATE OF CALIFORNIA—YOU MUST TAKE ACTION TO AVOID AN EVICTION: As part of the state's COVID–19 relief plan, money has been set aside to help renters who have fallen behind on rent or utility payments.

If you cannot pay the amount demanded in this notice, YOU SHOULD COMPLETE A RENTAL ASSISTANCE APPLICATION IMMEDIATELY! It is free and simple to apply. Citizenship or immigration status does not matter.

DO NOT DELAY! IF YOU DO NOT COMPLETE YOUR APPLICATION FOR RENTAL ASSISTANCE WITHIN 15 BUSINESS DAYS, YOUR LANDLORD MAY BE ABLE TO SUE TO OBTAIN A COURT ORDER FOR YOUR EVICTION.

You can start your application by calling 1–833–430–2122 or visiting http://housingiskey.com.

(D) If the landlord was required, pursuant to Section 1632 of the Civil Code, to provide a translation of the rental contract or agreement in the language in which the contract or agreement was negotiated, the landlord shall also provide the text of the notice in subparagraph (C) to the tenant in the language in which the contract or agreement was negotiated. The Business, Consumer Services, and Housing Agency shall make available on the http://housingiskey.com internet website an official translation of the text required by subparagraph (C) in the languages specified in Section 1632 of the Civil Code by no later than September 15, 2021.

(b)(1) A notice that demands payment of COVID–19 recovery period rental debt that does not meet the requirements of this section is not sufficient to establish a cause of action for unlawful detainer or a basis for default judgment.

(2) The court, upon its own motion or upon a motion by a defendant in the case, shall dismiss a cause of action for unlawful detainer that is based on a notice that demands payment of COVID–19 recovery period rental debt if the notice does not meet the requirements of this section.

(3) A defendant may raise the insufficiency of a notice pursuant to this section as a complete defense to an unlawful detainer.

<< CA CIV PRO § 1179.11 >>

1179.11. On or after October 1, 2021, and before March 31, 2022, in an unlawful detainer action pertaining to residential real property and based, in whole or in part, on nonpayment of rental debt that accumulated due to COVID–19 hardship, all of the following shall apply:

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 81 of 253

(a) A court shall not issue a summons on a complaint for unlawful detainer that seeks possession of residential real property based on nonpayment of rental debt that accumulated due to COVID–19 hardship unless the plaintiff, in addition to any other requirements provided by law, also files any of the following:

(1) Both of the following:

(A) A statement verifying, under penalty of perjury, that before filing the complaint, the landlord completed an application for government rental assistance to cover the rental debt demanded from the defendants in the case, but the application was denied.

(B) A copy of a final decision from the pertinent government rental assistance program denying a rental assistance application for the property at issue in the case.

(2) A statement, under penalty of perjury, verifying that all of the following are true:

(A) Before filing the complaint, the landlord submitted a completed application, as defined in Section 50897 of the Health and Safety Code, for rental assistance to the pertinent government rental assistance program to cover the rental debt demanded from the defendants in the case.

(B) Twenty days have passed since the later of the following:

(i) The date that the landlord submitted the application as described in subparagraph (A).

(ii) The date that the landlord served the tenant with the three-day notice underlying the complaint.

(C) The landlord has not received notice or obtained verification from the pertinent government rental assistance program indicating that the tenant has submitted a completed application for rental assistance to cover the rental debt demanded from the defendants in the case.

(D) The landlord has received no communication from the tenant that the tenant has applied for government rental assistance to cover the unpaid rental debt demanded from the defendants in the case.

(3) A statement, under penalty of perjury, that the rental debt demanded from the defendant in the complaint accumulated under a tenancy that was initially established, as described in paragraph (2) of subdivision (h) of Section 1179.09, on or after October 1, 2021.

(b) A statement under penalty of perjury described in subdivision (a) shall be made on a form developed or revised by the Judicial Council for this purpose if the Judicial Council determines that this requirement is necessary to accomplish the purpose of the statement.

(c)(1) A judgment or default judgment shall not issue in favor of the plaintiff unless the court finds, upon review of the pleadings and any other evidence brought before it, that both of the following are true:

(A) Before filing the complaint, the plaintiff completed an application to the pertinent government rental assistance program for rental assistance to cover the rental debt demanded in the complaint.

(B) The plaintiff's application for rental assistance was denied because of lack of eligibility, lack of funding, or the application remained incomplete due to the tenant's failure to properly complete the portion of the application that is the responsibility of the tenant for 15 days, excluding Saturdays, Sundays, and other judicial holidays, after the landlord properly completed the portion of the application that is responsibility of the landlord.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 82 of 253

(2) In making its findings pursuant to this paragraph, the court may take judicial notice of information available to the court pursuant to Section 1179.12.

(d) In addition to the summons, the complaint, and any other required document, the plaintiff shall serve the defendant with copies of the statement and final decision filed with the court pursuant to subdivision (a). The absence of these copies shall be sufficient grounds to grant a motion to quash service of the summons.

(e) If the defendant contests whether the plaintiff has met the requirements of subdivision (c), the plaintiff shall bear the burden of proving to the court that the plaintiff has met those requirements.

(f) The Legislature finds and declares all of the following:

(1) For rental debt that accumulated due to COVID–19 hardship that was incurred on or after October 1, 2021, and before March 31, 2022, a landlord must be compensated for all of the unpaid rent demanded in the notice that forms the basis of the complaint in order to prevent an unlawful detainer judgment based on that complaint.

(2) That for rental debt that accumulated due to COVID–19 hardship that was incurred on or after September 1, 2020, and before September 30, 2021, a landlord must be provided 25 percent of the unpaid rent demanded in the notice that forms the basis of the complaint before October 1, 2021, in order to prevent an unlawful detainer judgment based on that complaint.

(g) A summons on a complaint issued pursuant to paragraph (3) of subdivision (a) shall not be construed to subject the complaint to the requirements of this chapter.

<< CA CIV PRO § 1179.12 >>

1179.12. (a) Each government rental assistance program shall, by no later than September 15, 2021, develop mechanisms, including, but not limited to, telephone or online access, through which landlords, tenants, and the court may do both of the following:

(1) Verify the status of an application for rental assistance based upon the property address and a unique application number.

(2) Obtain copies of any determination on an application for rental assistance. A determination shall indicate all of the following:

(A) The name of the tenant that is the subject of the application.

(B) The address of the property that is the subject of the application.

(C) Whether the application has been approved or denied.

(D) If the application has been approved, then the amount of the payment that has been approved and the period and type of rental debt to which the amount corresponds.

(E) If the application has been denied, the reason for the denial, which shall be any of the following:

(i) The tenant is ineligible for government rental assistance.

(ii) The government rental assistance program no longer has sufficient funds to approve the application.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 83 of 253

(iii) The application remained incomplete 15 days, excluding Saturdays, Sundays, and other judicial holidays, after it was initially submitted because of failure on the part of the tenant to provide required information.

(b) A government rental assistance program that does not comply with this section shall be deemed ineligible to receive further block grant allocations pursuant to Section 50897.2 of, or 50897.2.1 of, the Health and Safety Code.

(c) It shall be unlawful for a person to access or use any information available pursuant to subdivision (a) for any purpose other than to determine the status of an application for assistance.

<< CA CIV PRO § 1179.13 >>

1179.13. (a) A court shall prevent the forfeiture of a lease or rental agreement, whether written or oral, and whether or not the tenancy has terminated, and restore the tenant to the former estate or tenancy, if necessary, if all of the following apply:

(1) The complaint for unlawful detainer is based on a demand for payment of rental debt that accumulated due to COVID–19 financial hardship.

(2)(A) The tenant submits verification to the court that a government rental assistance program has approved an application for rental assistance corresponding to part or all of the rental debt demanded in the complaint.

(B) The verification described in this paragraph shall be in the form of either of the following:

(i) A copy of a final decision from the government rental assistance program showing the property address, the amount of payment approved, and the time period for which assistance was provided.

(ii) The property address and a unique application number to enable the court to obtain confirmation of the final decision, the corresponding property address, the amount of the payment approved, and the time period for which assistance was provided.

(3) The approved payment from the rental assistance program, together with any additional payments made by the tenant, constitute full payment of the rental debt demanded in the complaint.

(b) An application pursuant to this section may be made only at any time before restoration of the premises to the landlord.

(c)(1) An application pursuant to this section shall consist of verification that a government rental assistance program has approved an application for rental assistance corresponding to the rental debt demanded in the complaint.

(2) The verification described in this subdivision shall consist of either of the following:

(A) A copy of the final decision from the government rental assistance program approving the application, showing the property address, and indicating the amount of payment approved.

(B) A property address and unique application number to enable the court to obtain confirmation of the final decision, the corresponding property address, and the amount of the payment approved.

(3)(A) Except as provided in subparagraph (B), a tenant shall not be required to file any documentation not described in paragraph (1) or pleading with the court in order to apply for relief pursuant to this section.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 84 of 253

(B) The verification required by this subdivision shall be provided on or accompanied by a form developed or revised by the Judicial Council for this purpose if the Judicial Council determines that this requirement is necessary to accomplish the purpose of the verification.

(d) Upon the filing of an application for relief pursuant to this section, the court shall do both of the following:

(1) Set a hearing on the matter on not less than 5 days' notice and not more than 10 days' notice to the parties, to be given by the court, and to be held separately or in conjunction with any regularly noticed hearing or trial in the case.

(2) Stay the action if no judgment has been entered in the case, immediately stay execution of any writ of possession issued in the case through the date of the hearing, and notify the sheriff accordingly.

(e)(1) At the hearing set pursuant to paragraph (1) of subdivision (d), the court shall rule upon the application for relief pursuant to this section in one of the following ways:

(A) If the tenant does not qualify for relief pursuant to subdivision (a), the court shall deny the application. A denial pursuant to this subparagraph may be used as evidence in an unlawful detainer action between the parties.

(B) If the tenant qualifies for relief pursuant to subdivision (a), and the plaintiff has received all of the payments described in paragraph (3) of subdivision (a), then the court shall grant the application, set aside any judgment issued in the case, and dismiss the case.

(C) If the tenant qualifies for relief pursuant to subdivision (a), and the plaintiff has not received all of the payments described in paragraph (3) of subdivision (a), the court shall do all of the following:

(i) Set a followup hearing to be held within 15 days, excluding Saturdays, Sundays, and other judicial holidays.

(ii) Extend the stay of the action through the date of that followup hearing.

(iii) Extend the stay of execution of any writ of possession in the case through the date of that followup hearing.

(D) At any followup hearing pursuant to subparagraph (C), the court shall issue one of the following orders:

(i) If the government rental assistance program has withdrawn the approval of rental assistance, then the court shall deny the application.

(ii) If the plaintiff has received all of the payments described in paragraph (3) of subdivision (a), then the court shall grant the application, set aside any judgment issued in the case, and dismiss the case.

(iii) If the government rental assistance program has not withdrawn the approval of rental assistance, but the landlord has not received all of the payments described in paragraph (3) of subdivision (a) because the rental assistance program has not yet issued its part of the payment, then the court shall order another followup hearing in accordance with this subparagraph.

(iv) If the government rental assistance program has not withdrawn the approval of rental assistance, but the landlord has not received all of the payments described in paragraph (3) of subdivision (a) because the tenant has not yet paid the tenant's part of the payment, then the court shall deny the application with prejudice.

(2) If a court grants an application for relief pursuant to this section, the tenant shall not be considered the prevailing party for purposes of Section 1032, any attorney's fee provision appearing in contract or statute, or any other law.

<< CA CIV PRO § 1179.14 >>

1179.14. If the criteria for issuance of a summons pursuant to subdivision (a) of Section 1179.11 have not been satisfied within 60 days of the complaint's filing, the court shall dismiss the action without prejudice.

<< CA CIV PRO § 1179.15 >>

1179.15. This chapter shall remain in effect until September 30, 2024, and as of that date is repealed.

SEC. 21. Section 50897 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 50897 >>

50897. For purposes of this chapter:

(a) "City" means a city or a city and county. For purposes of this chapter, a city may be organized either under the general laws of this state or under a charter adopted pursuant to Section 3 of Article XI of the California Constitution.

(b) "County" means a county, including a county organized under a charter adopted pursuant to Section 3 of Article XI of the California Constitution, or a city and county.

**(c) "Completed application" means an application for which a landlord or eligible household, as applicable, has provided all the necessary contact information and documentation required for a government rental assistance program to initiate a review of the application for eligibility.**

**(d)** "Department" means the Department of Housing and Community Development.

**(e)(1)** "Eligible household" has the same meaning as defined in Section 501(k)(3) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).[5]

**(2) Notwithstanding paragraph (1), for purposes of Round 2, "eligible household" has the same meaning as defined in Section 3201(f)(2) of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117–2).**

**(f)** "Federally recognized tribe" means an Indian tribe, as described in Section 501(k)(2)(C) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

\* \* \*

**(g)** "**Grantee**" means a city, including a charter city, a county, including a charter county, or a city and county, including a charter city and county**, that participates in a rental assistance program pursuant to this chapter**.

**(h) "Option A" means the administrative option grantees utilize pursuant to subparagraphs (A) and (B) of paragraph (1) of subdivision (b) of Section 50897.3 or subparagraphs (A) and (B) of paragraph (1) of subdivision (b) of Section 50897.3.1, as applicable.**

**(i) "Option B" means the administrative option grantees utilize pursuant to Section 50897.2 or 50897.2.1, as applicable.**

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 86 of 253

**(j) "Option C" means the administrative option grantees utilize pursuant to paragraph (2) of subdivision (b) of Section 50897.3 or paragraph (2) of subdivision (b) of Section 50897.3.1, as applicable.**

**(k)** "Program" means the process for awarding funds for state rental assistance pursuant to this chapter, as provided in Section 50897.2 * * * **, 50897.2.1,** 50897.3, **or 50897.3.1,** as applicable.

(*l*) "Program implementer" means the contracted vendor selected to administer emergency rental assistance under the program pursuant to paragraph (1) of subdivision (a) of Section 50897.3.

**(m)** "Prospective rent payment" means a rent payment eligible for financial assistance pursuant to Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

**(n)** "Rental arrears" means rental arrears eligible for financial assistance pursuant to Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

* * *

(*o*) "* * * **Round 1**" means the * * * **state rental assistance program established by funds provided by** Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) * * * **.**

**(p) "Round 2" means the state rental assistance program established by funds provided by Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2).**

**(q) "State reservation table" means the methodology for allocating the state's portion of funding for Round 1 and Round 2 as follows:**

(1) * * * **(A) With respect to funding received for Round 1, no** more than 10 percent for state administration.

* * * **(B) Round 1 shall include one** hundred fifty million dollars ($150,000,000) total set aside for smaller counties with a population less than 200,000, allocated based on **the** proportional share of population from the 2019 federal census data.

**(C)** The remainder of the state allocation **to be** distributed to eligible **grantees** with a population 200,000 or greater, based on their proportional share of population from the 2019 federal census data.

**(2)(A) With respect to funding for Round 2, no more than 15 percent shall be used for state administration.**

**(B) Subject to the requirements of this paragraph, Round 2 funding shall include one hundred twenty-five million dollars ($125,000,000) total set aside for counties with a population less than 200,000, allocated based on their proportional share of the population from the 2019 federal census data.**

**(C) The remainder of the state allocation to be distributed to grantees with a population 200,000 or greater, based on their proportional share of the population from the 2019 federal census data.**

**(D) The department shall pay all grantees an initial payment that is equal to an amount not less than 40 percent of each grantee's total allocation provided under this paragraph.**

**(i) Subsequent payments shall be paid to grantees in tranches up to the full amount of each grantee's total state allocation in accordance with a procedure established by the department that shall require that a grantee have obligated not less than 75 percent of funds provided pursuant to this subparagraph.**

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 87 of 253

**(ii) The department shall have the authority to reallocate unused funds and shall prioritize allocating funds based on factors that include a grantee's unmet need, rate of application submissions, rate of attrition, and rate of expenditures.**

**(r)** "Utilities" means utilities and home energy costs eligible for financial assistance pursuant to Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

SEC. 22. Section 50897.1 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 50897.1 >>

50897.1. (a)(1) Funds available for rental assistance pursuant to this chapter shall consist of state rental assistance funds made available pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260)[6] and **Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2) and** shall be administered by the department in accordance with this chapter and applicable federal law.

(2) Each \* \* \* **grantee shall be eligible to** receive an allocation of rental assistance funds, calculated in accordance with the state reservation table.

**(3) The state high-need grantee set aside provided pursuant to Section 3201(a)(2)(D) of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117–2) shall be allocated or administered by the department, or program implementer, pursuant to applicable federal requirements.**

**(4) Additional rental assistance funds allocated to the state from the United States Treasury pursuant to Section 501(d) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) or Section 3201(e) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2) shall be allocated, at the department's discretion, with prioritization based on factors that include a grantee's unmet need, rate of application submissions, rate of attrition, and rate of expenditures.**

**(5)** Except as otherwise provided in this chapter, funds available for rental assistance administered pursuant to Section 50897.3 **or 50897.3.1** shall consist of state rental assistance funds calculated pursuant to the state reservation table.

(b) Funds provided for and administered pursuant to this chapter shall be used in a manner consistent with federal law, including the prioritization of assistance specified in Section 501(c)(4) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260). In addition, in providing assistance pursuant to this chapter, the department and, if applicable, the program implementer shall prioritize communities disproportionately impacted by COVID–19, as determined by the department. State prioritization shall be as follows:

(1) **Priority** one \* \* \* shall be eligible households, as specified in Section 501(c)(4) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260), to expressly target assistance for eligible households with a household income that is not more than 50 percent of the area median \* \* \* **or any eligible households that receive a notice described in Section 1179.10 of the Code of Civil Procedure or a summons described in Section 1179.11 of the Code of Civil Procedure**.

(2) **Priority** two \* \* \* shall be communities disproportionately impacted by COVID–19, as determined by the department.

(3) **Priority** three \* \* \* shall be eligible households that are not otherwise prioritized as described in paragraphs (1) and (2), to expressly include eligible households with a household income that is not more than 80 percent of the area median income.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 88 of 253

(c)(1) Except as otherwise provided in paragraph (2), eligible uses for funds made available to a grantee under this chapter shall be as follows:

(A) Rental arrears.

(B) Prospective rent payments.

(C) Utilities, including arrears and prospective payments for utilities.

(D) Any other expenses related to housing as provided in Section 501(c)(2)(A) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

**(E) Any additional use authorized under federal law and guidance.**

(2) For purposes of stabilizing households and preventing evictions, rental arrears shall be given priority for purposes of providing rental assistance pursuant to this chapter.

(3) Remaining funds not used as described in paragraph (2) may be used for any eligible use described in subparagraphs (B), (C), and (D) of paragraph (1).

(d) * * *  **Assistance for rental arrears may be provided as a payment** directly to a landlord on behalf of an eligible household by entering into an agreement with the landlord, subject to both of the following:

(1) Assistance for rental arrears shall be set at compensation of **100** percent of an eligible household's unpaid rental debt accumulated * * * **on or after** April 1, 2020 * * * .

(2)(A) Acceptance of a payment made pursuant to this subdivision shall be conditioned on the landlord's agreement to accept the payment as payment in full of the rental debt owed by any tenant within the eligible household for whom rental assistance is being provided for the specified time period. The landlord's release of claims pursuant to this subparagraph shall take effect only upon payment being made to the landlord pursuant to this subdivision.

(B) The landlord's agreement to accept payment pursuant to this subdivision as payment in full, as provided in subparagraph (A), shall include the landlord's agreement to release any and all claims for nonpayment of rental debt owed for the specified time period, including a claim for unlawful detainer pursuant to paragraph (2) and (3) of Section 1161 of the Code of Civil Procedure, against any tenant within the eligible household for whom the rental assistance is being provided.

(e) * * * **(1) A** member of an eligible household may **directly** apply for rental arrears assistance from the grantee. Assistance for rental arrears pursuant to this subdivision shall be * * * **set at** compensation of **100** percent of the eligible household's unpaid rental debt accumulated * * * **on or after** April 1, 2020 * * * .

**(2)(A) Upon receipt of assistance, the eligible household shall provide the full amount of rental arrears to the landlord within 15 days, excluding Saturdays, Sundays, and judicial holidays, of receipt of the funds.**

**(B)(i) If the household does not comply with subparagraph (A), the landlord may charge a late fee not to exceed the amount that the landlord may charge a tenant for one late rental payment under the terms of the lease or rental agreement.**

**(ii) Failure to pay a late fee charged by a landlord pursuant to this subparagraph shall not be grounds for an unlawful detainer action.**

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB  Document 62  Filed 07/18/22  Page 89 of 253

**(C) A member of an eligible household described by this paragraph shall attest under penalty of perjury that the household will comply with the requirements of this paragraph.**

(f) Funds used to provide assistance for prospective rent payments for an eligible household shall \* \* \* **be set at 100** percent of the eligible household's monthly rent.

\* \* \*

**(g)(1) When a landlord or tenant submits a completed application, grantees shall provide notification to the respective parties included in the application.**

**(2) Upon approval of payment for a landlord or tenant application, as applicable, grantees shall provide notification to the respective parties included in the application.**

(h)**(1)** Assistance provided under this chapter shall be provided to eligible households or, **if** applicable, to landlords on behalf of eligible households that are currently housed and occupying the residential unit for which the assistance is requested at the time of the application.

**(2)(A) Notwithstanding paragraph (1), eligible households that no longer occupy the residential unit with respect to which rental assistance has been requested and have demonstrated rental arrears shall be eligible for assistance.**

**(B)(i) Subject to clause (ii), assistance provided pursuant to this paragraph shall be prioritized to participating landlords.**

**(ii) If the landlord does not participate, payments may be provided directly to the eligible household if the eligible household provides any amount received for rental assistance to the landlord. A member of the eligible household shall attest under penalty of perjury that the household will comply with the requirements of this clause.**

**(C) It is the intent of the Legislature for grantees to exercise maximum discretion within the limitations of federal law and guidance to establish eligibility and documentation requirements for households no longer occupying the unit in question to ensure funds administered pursuant to this paragraph are deployed in a streamlined manner.**

**(D) A payment made directly to a participating landlord pursuant to this paragraph shall be considered as payment in full and shall include the landlord's agreement to release any and all claims for nonpayment of rental debt owed for the specified time period, including a claim for unlawful detainer pursuant to paragraphs (2) and (3) of Section 1161 of the Code of Civil Procedure.**

(i) For purposes of the protections against housing discrimination provided under the California Fair Employment and Housing Act (Part 2.8 (commencing with Section 12900) of Division 3 of Title 2 of the Government Code), assistance provided under this chapter shall be deemed to be a "source of income," as that term is defined in subdivision (i) of Section 12927 of the Government Code.

(j)(1) Notwithstanding any other law, except as otherwise provided in subdivision (i), assistance provided to an eligible household for a payment as provided in this chapter or as provided as a direct allocation to grantees from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) **or Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117–2)** shall not be deemed to be income for purposes of the Personal Income Tax Law (Part 10 (commencing with Section 17001) of Division 2 of the Revenue and Taxation Code) or used to determine the eligibility of an eligible household, or any member of an eligible household, for any state program or local program financed wholly or in part by state funds.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 90 of 253

(2) Notwithstanding any other law, for taxable years beginning on or after January 1, 2020, and before January 1, 2025, gross income shall not include a tenant's rent liability that is forgiven by a landlord as provided in this chapter or as rent forgiveness provided through funds grantees received as a direct allocation from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) **or Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117–2)**.

(k)**(1)** The department may adopt, amend, and repeal rules, guidelines, or procedures necessary to carry out the purposes of this chapter, including guidelines regarding the administration of federal rental assistance funds received under Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) **or the administration of federal rental assistance funds received under Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117–2)** that are consistent with the requirements of that federal law and any regulations promulgated pursuant to that federal law.

**(2)** The adoption, amendment, or repeal of rules, guidelines, or procedures authorized by this subdivision is \* \* \* **exempt** from the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(*l*) Any interest that the state, a **grantee**, or, if applicable, the program implementer derives from the deposit of funds made available pursuant to this chapter or pursuant to subdivision (e) of Section 925.6 of the Government Code shall be used to provide additional assistance under this chapter.

(m) Upon notification from the Director of Finance to the Joint Legislative Budget Committee that additional federal rental assistance resources have been obtained, that assistance may be deployed in a manner consistent with this chapter. Any statutory provision established by subsequent federal law specific to the administration of those additional resources shall supersede the provisions contained in this chapter to the extent that there is a conflict between those federal statutory provisions and this chapter. \* \* \* **To** implement future federal rental assistance, the department shall make corresponding programmatic changes to effectuate the program in compliance with federal law.

(n) Notwithstanding any other law, a third party shall be prohibited from receiving compensation for services provided to an eligible household in applying for or receiving assistance under this chapter, except that this prohibition shall not apply to any contracted entity that renders those services upon the express authorization by the department, the program implementer, or a **grantee**.

(*o*) Assistance provided under this chapter shall include a receipt that provides confirmation of payment \* \* \* **that has been made. The receipt shall include, but not be limited to, the amount of payment or** forgiveness, as applicable, \* \* \* **and the time period for which assistance was provided**. The receipt shall be provided to both the eligible household and the landlord.

**(p)(1) The department, program implementer, or grantee, as applicable, that has completed rental assistance payments subject to the provisions of this section, as amended by Chapter 5 of the Statutes of 2021, shall provide additional assistance to previous recipients so that total assistance provided is equivalent to 100 percent of an eligible household's rental arrears or prospective rent for the period originally requested, as applicable.**

**(2) To make payments pursuant to this subdivision in a timely manner, additional assistance shall be executed without the counter signature from the eligible household or landlord.**

**(q) A grantee may request a change to its administrative option as provided in Round 1 or Round 2, as applicable, subject to the approval of the department.**

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 91 of 253

**(r)(1) A grantee that receives funds and administer rental assistance programs pursuant to this chapter shall meet the requirements of Chapter 6 (commencing with Section 1179.08) of Title 3 of Part 3 of the Code of Civil Procedure.**

**(2) A grantee shall provide notification to the landlord and tenant when either the landlord or the tenant submits a completed application for rental assistance.**

**(3) A grantee shall provide notification to the landlord and tenant once a final decision has been rendered. The notification shall include the total amount of assistance paid and the time period for which assistance was provided, as applicable.**

**(4) Failure to comply with the requirements of this subdivision may result in the grantee's share of funds received from the state pursuant to Section 50897.2 or 50897.2.1 reverted to the department for reallocation at the department's discretion.**

**(s)** For purposes of this section:

(1) "Rental debt" includes rent, fees, interest, or any other financial obligation under a lease for use and occupancy of the leased premises, but does not include liability for torts or damage to the property beyond ordinary wear and tear.

(2) "Specified time period" means the period of time for which payment is provided, as specified in the agreement entered into with the landlord.

SEC. 23. Section 50897.2 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 50897.2 >>

50897.2. (a)(1) A **grantee** that has a population of 500,000 or greater shall be eligible to receive a block grant allocation from the department.

(2) A **grantee** with a population of 499,999 or less, but greater than 200,000, may request an allocation of block grant funds pursuant to this section, in the form and manner prescribed by the department. The department shall grant a request for an allocation of block grant funds pursuant to this paragraph if the \* \* \* **grantee attests** and, in the department's judgment, demonstrates that it has established a program consistent with the requirements of this chapter and has the capability to implement the resources provided in accordance with applicable state and federal law, including this chapter and Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).[7]

(3) A **grantee** that is not eligible for, or does not receive, an allocation of block grant funds pursuant to this section shall receive its proportionate share of funds in accordance with the state reservation table, as provided in Section 50897.3.

(4) \* \* \* **A grantee** that receives a block grant pursuant to this section shall attest to the department, in the form and manner prescribed by the department, that it will distribute assistance equitably and consistent with demonstrated need within the jurisdiction.

(5) To receive funds pursuant to this section, an applicant shall agree to utilize its direct allocation of assistance from the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) in a manner consistent with this chapter. Refusal to comply with this paragraph shall result in the applicant being prohibited from receiving state block grant funds and may result in the department recouping block grant funds that are spent in a manner inconsistent with this chapter.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 92 of 253

(6) A **grantee** that **receives** funds pursuant to this section shall not institute additional programmatic requirements that may inhibit participation in the rental assistance program.

(7) A **grantee** that applies for assistance under this section may apply for an award allocation through an authorized representative, without its legislative body expressly adopting an ordinance or resolution authorizing that application, provided that it later authorizes a representative of the eligible grantee with legal authority to bind the eligible grantee to the terms and conditions of the award before executing the agreement with the department.

(8) The department shall allocate all funds made available for purposes of this section, in consultation with the Department of Finance. The initial allocation shall be completed and shared no later than February 19, 2021.

(b) Block grant funds allocated pursuant to this section shall be used for those eligible uses and compensation requirements specified in, and subject to the applicable requirements of, Section 50897.1.

(c) The deadlines for the allocation and use of block grant funds pursuant to this section shall be as follows:

(1) A **grantee** shall request that allocation from the department no later than February 12, 2021. If a **grantee** fails to request **the** allocation by that date, the moneys that would have otherwise been allocated to that **grantee** shall instead be used to provide assistance in accordance with Section 50897.3.

(2) A grantee that receives block grant funds under this section shall contractually obligate at least 65 percent of those funds by **August** 1, 2021.

\* \* \*

(d)(1)(A) Subject to subparagraph (B), if a grantee that receives block grant funds under this section fails to contractually obligate the minimum amount of those funds by the deadline specified in paragraph (2) of subdivision (c), \* \* \* the grantee shall repay to the department any unused amount of block grant funds allocated to it not contractually obligated or expended.

(B) The department may waive the requirement to repay funds pursuant to subparagraph (A) if the grantee demonstrates, to the satisfaction of the department, that it will contractually obligate and expend any unused block grant funds allocated to it within the timeframes specified in federal law.

(2) The department may reallocate any funds repaid pursuant to paragraph (1) for purposes of this section. In reallocating those funds, the department shall prioritize allocating additional funding to \* \* \* **grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures**.

\* \* \*

(e) A grantee participating in the program pursuant to this section shall enter into a standard regulatory agreement with the department that includes terms and conditions consistent with the requirements set forth in this section.

(f) A grantee that receives an allocation of block grant funds pursuant to this section shall be solely responsible for compliance with all applicable management, implementation, and reporting requirements established under state and federal law.

**(g) The requirements of this section shall apply only to the administration of Round 1 funds.**

SEC. 24. Section 50897.2.1 is added to the Health and Safety Code, to read:

<< CA HLTH & S § 50897.2.1 >>

50897.2.1. (a)(1) A grantee that has a population of 500,000 or greater shall be eligible to receive a block grant allocation from the department.

(2) A grantee with a population of 499,999 or less, but greater than 200,000, may request an allocation of block grant funds pursuant to this section, in the form and manner prescribed by the department. The department shall grant a request for an allocation of block grant funds pursuant to this paragraph if the grantee attests and, in the department's judgment, demonstrates that it has established a program consistent with the requirements of this chapter and has the capability to implement the resources provided in accordance with applicable state and federal law, including this chapter and Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2).[8]

(3) A grantee that is not eligible for, or does not receive, an allocation of block grant funds pursuant to this section shall receive its proportionate share of funds in accordance with the state reservation table, and those funds shall be administered as provided in Section 50897.3.1.

(4) A grantee that receives a block grant pursuant to this section shall attest to the department, in the form and manner prescribed by the department, that it will distribute assistance equitably and consistent with demonstrated need within the jurisdiction.

(5) To receive funds pursuant to this section, an applicant shall agree to utilize its assistance made available from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2) in a manner consistent with this chapter. Refusal to comply with this paragraph shall result in the applicant being prohibited from receiving state block grant funds and may result in the department recouping block grant funds that are spent in a manner inconsistent with this chapter.

(6) A grantee that receives funds pursuant to this section shall not institute additional programmatic requirements that may inhibit participation in the rental assistance program.

(7) A grantee that applies for assistance under this section may apply for an award allocation through an authorized representative, without its legislative body expressly adopting an ordinance or resolution authorizing that application, if it later authorizes a representative of the eligible grantee with legal authority to bind the eligible grantee to the terms and conditions of the award before executing the agreement with the department.

(b) Block grant funds allocated pursuant to this section shall be used for those eligible uses and compensation requirements specified in, and subject to the applicable requirements of, Section 50897.1 and, upon approval by the department, other eligible uses provided in Section 3201(d)(1)(D) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2).

(c) The deadlines for the allocation and use of block grant funds pursuant to this section shall be as follows:

(1) A grantee shall request that allocation from the department no later than 30 calendar days after the operative date of this section. If a grantee fails to request the allocation by that date, the moneys that would have otherwise been allocated to that grantee shall instead be used to provide assistance in accordance with Section 50897.3.1.

(2) An Option B grantee that receives block grant funds under this section shall contractually obligate at least 75 percent of its first tranche of state funds by October 31, 2021.

(3) An Option B grantee that receives block grant funds under this section shall contractually obligate 50 percent of its total share of state funds by January 31, 2022.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 94 of 253

(d)(1)(A) Subject to subparagraph (B), if a grantee that receives block grant funds under this section fails to contractually obligate the minimum amount of those funds by the deadline specified in paragraph (2) of subdivision (c), or to obligate the full amount of that allocation by the deadline specified in paragraph (3) of subdivision (c), the grantee shall repay to the department any unused amount of block grant funds allocated to it not contractually obligated or expended.

(B) The department may waive the requirement to repay funds pursuant to subparagraph (A) if the grantee demonstrates, to the satisfaction of the department, that it will contractually obligate and expend any unused block grant funds allocated to it within the timeframes specified in federal law.

(2) The department may reallocate any funds repaid pursuant to paragraph (1) for purposes of this section. In reallocating those funds, the department shall allocate funding to grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(e) A grantee participating in the program pursuant to this section shall enter into a standard regulatory agreement with the department that includes terms and conditions consistent with the requirements of this section.

(f) An Option B grantee shall be solely responsible for compliance with all applicable management, implementation, and reporting requirements established under state and federal law.

(g) The requirements of this section shall apply only to the administration of Round 2 funds.

SEC. 25. Section 50897.3 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 50897.3 >>

50897.3. (a)(1)(A) The department may contract with a vendor to serve as the program implementer to manage and fund services and distribute emergency rental assistance resources pursuant to this section. A vendor selected to serve as program implementer shall demonstrate sufficient capacity and experience to administer a program of this scope and scale.

(B) The program implementer shall have existing relationships with community-level partners to ensure all regional geographies and target communities throughout the state have access to the program.

(C)(i) The program implementer shall have the technological capacity to develop and to implement a central technology-driven application portal and system that serves landlords and tenants, has mobile and multilanguage capabilities, and allows an applicant track the status of their application. The application system shall have the capacity to handle the volume of expected use without disruption.

(ii) The system shall begin accepting applications no later than March 15, 2021 and be available 24 hours a day, seven days a week, with 99 percent planned uptime rating.

(iii) The system shall support, at minimum, a database of 1,000,000 application records.

(iv) The system shall support at minimum 20,000 concurrent full-access users, allowing users to create, read, update and delete transactions based upon their user role.

(D)(i) The program implementer shall demonstrate experience with developing and managing direct payment or grant programs, or direct payment and grant programs, including, but not limited to, program and application development, outreach and

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 95 of 253

marketing, translation and interpretation, fraud protections and approval processes, secure disbursement, prioritizing the use of direct deposit, customer service, compliance, and reporting.

(ii) The program interface shall include, but not be limited to, the following:

(I) Capability such that either the landlord or the tenant may initiate an application for assistance and that both parties are made aware of the opportunity to participate in the rental assistance program and accept the program parameters.

(II) Appropriate notifications to ensure that both parties understand that rental assistance is awarded in rounds of funding based on eligibility and that the eligible household is reminded that payment is ultimately being provided directly to the landlord, but the payment will directly address the eligible household's rental arrears or prospective rent, as applicable.

(III) Notification to both parties, including the landlord and the eligible household, respectively, of the initiation and completion of the application process, whether the process is initiated by the landlord or the eligible household. Upon payment, the program implementer shall provide an electronic record that payment has been made and keep all records available for the duration of the program, or as otherwise provided under state or federal law.

(E) The program implementer shall be able to manage a technology-driven duplication of benefits process in compliance with federal law.

(F) The program implementer shall comply with all state protections related to the use of personally identifiable information, including providing any necessary disclosures and assuring the secure storage of any personally identifiable information generated, as part of the application process.

(G) The program implementer shall coordinate its program activities with education and outreach contractors and any affiliated service or technical assistance providers, including those that reach non-English speaking and hard-to-reach households, with considerations for racial equity and traditionally underserved populations.

(2) The department may establish a contract with one or more education and outreach contractors to conduct a multilingual statewide campaign to promote program participation and accessibility.

(3) In accordance with paragraphs (1) and (2), the department shall seek contracted solutions that minimize total administrative costs, such that savings may be reallocated for use as direct assistance.

(4) The department may receive rental assistance program funding from localities or federally recognized tribes to administer on their behalf in a manner consistent with this chapter.

(b)(1)(A) A county with a population less than or equal to 200,000 and any **grantee** that is eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260)[9] shall receive assistance pursuant to the state reservation table, to be administered in accordance with this section.

(B) A **grantee** that was eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 501 of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) and was eligible for, but did not receive, block grant assistance under Section 50897.2 shall receive its proportionate share of assistance, as determined by the state reservation table, to be administered in accordance with this section.

(2)(A) A **grantee** that was eligible for, but did not receive, block grant funds pursuant to Section 50897.2, and has elected to administer its direct share of assistance provided under Subtitle A of Title V of Division N of the federal Consolidated

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB Document 62 Filed 07/18/22 Page 96 of 253

Appropriations Act, 2021 (Public Law 116–260), shall have its proportionate share of block grant funds administered pursuant to this section.

(B)**(i)** To minimize legal liability and potential noncompliance with federal law, specifically those violations described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260), the department, or, if applicable, the program implementer, **shall** request that **grantees** described in this paragraph enter into a data sharing agreement for the purpose of preventing unlawful duplication of rental assistance to eligible households.

**(ii)** Notwithstanding any other law, \* \* \* **a grantee** that **enters** into a data sharing agreement \* \* \* required by this subparagraph may disclose personally identifying information of rental assistance applicants to the department or the program implementer for the purposes described in this subparagraph.

**(iii) A grantee described by clause (ii) shall provide all applicable data, as determined by the department, before the department or program implementer begins administering funds within the grantee's jurisdiction.**

(C) Except as otherwise provided in subparagraph (B), a **grantee** that is subject to assistance provided under this paragraph and received a direct allocation from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) shall not be eligible for administrative and technical assistance provided by the department, including, but not limited to, support for long-term monitoring and reporting.

(D) The state, the department, or the program implementer acting on behalf of the department, shall be indemnified from liability in the administration of assistance pursuant to this paragraph, specifically any violation described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

(3) To the extent permitted by federal law, a **grantee** that elects to participate in the program as provided in this section, and that received rental assistance funding directly from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260), shall add those funds received directly from the Secretary of the Treasury and any share of rental assistance funding provided pursuant to Section 50897.2 to the funds allocated to it pursuant to this section. Except as otherwise provided in paragraph (1) of subdivision (d), the total amount of funds described in this subparagraph shall be used by the grantee in accordance with this section. Participation shall be conditioned upon having an executed standard agreement with the Department.

(4) To the extent permitted by federal law, a federally recognized tribe that receives rental assistance funds directly from the Secretary of the Treasury pursuant to Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260) may add its direct federal allocation of funds to be administered pursuant to this section. Participation shall be conditioned upon having an executed standard agreement with the department.

\* \* \*

(c) Funds allocated pursuant to this section shall be used for those eligible uses specified in, and subject to the applicable requirements of, Section 50897.1.

(d)(1) Except as otherwise provided in paragraph (3), a grantee that receives funds pursuant to this section shall contractually obligate **65 percent of** those funds no later than \* \* \* **August 1**, 2021. The department may, in its discretion, reallocate any funds allocated to a grantee that are not contractually obligated by that date to other grantees \* \* \* **based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures**.

\* \* \*

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 97 of 253

**(2)** Funds administered on behalf of a federally recognized tribe as provided in paragraph (4) of subdivision (b) are not subject to the requirements of this subdivision.

(e)(1) In any legal action to recover rent or other financial obligations under the lease that accrued between April 1, 2020, and **September** 30, 2021, before entry of any judgment in the plaintiff's favor, the plaintiff shall verify both of the following under penalty of perjury:

(A) The landlord has not received rental assistance or other financial compensation from any other source corresponding to the amount claimed.

(B) The landlord does not have any pending application for rental assistance or other financial compensation from any other source corresponding to the amount claimed.

(2) In any unlawful detainer action seeking possession of residential rental property based on nonpayment of rent or any other financial obligation under the lease, the court shall not enter a judgment in favor of the landlord unless the landlord verifies all of the following under penalty of perjury:

(A) That the landlord has not received rental assistance or other financial compensation from any other source corresponding to the amount demanded in the notice underlying the complaint.

(B) That the landlord has not received rental assistance or other financial compensation from any other source for rent accruing after the date of the notice underlying the complaint.

(C) That the landlord does not have any pending application for rental assistance or other financial compensation from any other source corresponding to the amount demanded in the notice underlying the complaint.

(D) That the landlord does not have any pending application for rental assistance or other financial compensation from any other sources for rent accruing after the date of the notice underlying the complaint.

(f) Notwithstanding any other state or local law, policy, or ordinance, for purposes of ensuring the timely implementation of resources pursuant to this section * * * a **grantee** that has a population greater than 200,000 may enter into an agreement with the department to have its share of funds administered pursuant to this section by the department and may redirect those funds to the department for that purpose.

**(g)(1) Except as provided in paragraph (2), the requirements of this section shall apply only to the administration of Round 1 funds.**

**(2) Subdivision (e) shall apply to the administration of Round 1 and Round 2 funds.**

SEC. 26. Section 50897.3.1 is added to the Health and Safety Code, to read:

<< CA HLTH & S § 50897.3.1 >>

50897.3.1. (a)(1) The department may contract with a vendor to serve as the program implementer to manage and fund services and distribute emergency rental assistance resources pursuant to this section and consistent with the requirements of Section 50897.3.

(2) The department may establish a contract with one or more education and outreach contractors to conduct a multilingual statewide campaign to promote program participation and accessibility.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 98 of 253

(3) In accordance with paragraphs (1) and (2), the department shall seek contracted solutions that minimize total administrative costs so that savings may be reallocated for use as direct assistance.

(4) The department may receive rental assistance program funding from localities or federally recognized tribes to administer on their behalf in a manner consistent with this chapter.

(b)(1)(A) A county with a population less than or equal to 200,000 and any grantee that is eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2)[10] shall receive assistance pursuant to the state reservation table to be administered pursuant to this section.

(B) A grantee that was eligible for, but did not receive, a direct allocation of assistance from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2) and was eligible for, but did not receive, block grant assistance under Section 50897.2.1 shall receive its proportionate share of assistance pursuant to the state reservation table to be administered pursuant to this section.

(2)(A) A grantee that was eligible for, but did not receive, block grant funds pursuant to Section 50897.2.1 and has elected to administer its direct share of assistance provided under Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2) shall have its proportionate share of block grant funds administered pursuant to this section.

(B)(i) To minimize legal liability and potential noncompliance with federal law, specifically those violations described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260), the department, or, if applicable, the program implementer, shall request that Option C grantees enter into a data sharing agreement for the purpose of preventing unlawful duplication of rental assistance to eligible households.

(ii) Notwithstanding any other law, an Option C grantee that enters into a data sharing agreement as pursuant to this subparagraph may disclose personally identifying information of rental assistance applicants to the department or the program implementer for the purposes described in this subparagraph.

(iii) An Option C grantee described in clause (ii) shall provide all applicable data information, as determined by the department, before when the department, or program implementer, begins administering funds within the grantee jurisdiction.

(C) Except as otherwise provided in subparagraph (B), an Option C grantee shall not be eligible for administrative and technical assistance provided by the department, including, but not limited to, support for long-term monitoring and reporting.

(D) The state, the department, or the program implementer acting on behalf of the department shall be indemnified from liability in the administration of assistance pursuant to this paragraph, specifically with respect to a violation described in Section 501(k)(3)(B) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).

(E)(i) An Option C grantee shall not be eligible to have assistance administered on its behalf if the department determines the structure of the grantee's local rental assistance program would put the state's share of funds at risk of being recouped by the United States Treasury pursuant to Section 3201(e) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2).

(ii) If, within 90 days of the effective date of this section, the department determines that an Option C grantee cannot satisfy the requirements of this subparagraph, the grantee's share of state funds shall be reallocated by the department to grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 99 of 253

(iii) Option C grantees that have funds reallocated pursuant to clause (i) may be eligible to receive funds, up to their total share of the state reservation table, upon demonstrating to the department the grantee has unmet need and funds would not be at risk of being recouped by the United States Treasury pursuant to Section 3201(e) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2).

(3) To the extent permitted by federal law, a grantee that elects to participate in the program as provided in this section and that received rental assistance funding directly from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the American Rescue Plan Act of 2021 (Public Law 117–2) shall add those funds received directly from the Secretary of the Treasury and any share of rental assistance funding provided pursuant to Section 50897.2.1 to the funds allocated to it pursuant to this section. Except as provided in paragraph (1) of subdivision (d), the total amount of funds described in this paragraph shall be used by the grantee in accordance with this section. Participation shall be conditioned upon having an executed standard agreement with the department.

(4) To the extent permitted by federal law, a federally recognized tribe that receives rental assistance funds directly from the Secretary of the Treasury pursuant to Section 3201 of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2) may add its direct federal allocation of funds to be administered pursuant to this section. Participation shall be conditioned upon having an executed standard agreement with the department.

(c) Funds allocated pursuant to this section shall be used for those eligible uses specified in and subject to the applicable requirements of Section 50897.1 and other eligible uses provided in Section 3201(d)(1)(D) of Subtitle B of Title III of the federal American Rescue Plan Act of 2021 (Public Law 117–2).

(d) A grantee that receives funds administered pursuant to this section shall contractually obligate those funds as follows:

(1)(A) A grantee participating in the state rental assistance program pursuant to Option A shall contractually obligate at least 75 percent of its first tranche of state funds by October 31, 2021.

(B) A grantee participating in the state rental assistance program pursuant to Option A shall contractually obligate at least 50 percent of its total share of state funds by January 31, 2022.

(2)(A) A grantee participating in the state rental assistance program pursuant to Option C shall contractually obligate at least 75 percent of its first tranche of state funds by October 31, 2021.

(B) A grantee participating in the state rental assistance program pursuant to Option C shall contractually obligate at least 50 percent of its total share of state funds by January 31, 2022.

(3) In reallocating funds pursuant to this subdivision, the department or, if applicable, the program implementer acting on behalf of the department, shall allocate unused funds to eligible grantees based on factors that include unmet need, rate of application submissions, rate of attrition, and rate of expenditures.

(4) Funds administered on behalf of a federally recognized tribe, pursuant to paragraph (4) of subdivision (b), are not subject to the requirements of this subdivision.

(e) Notwithstanding any other law, for purposes of ensuring the timely implementation of resources pursuant to this section, a grantee that has a population greater than 200,000 may enter into an agreement with the department to have its share of funds administered pursuant to this section by the department and may redirect those funds to the department for that purpose.

(f) The requirements of this section shall apply only to the administration of Round 2 funds.

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB    Document 62    Filed 07/18/22    Page 100 of 253

SEC. 27. Section 50897.4 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 50897.4 >>

50897.4. (a) Each **\* \* \*** **Round 1 and Round 2 grantee** shall provide to the department information relating to all applicable performance metrics, as determined by the department.

(b) Funds provided to a grantee under this chapter shall be subject to the same reporting and verification requirements specified in Section 501(g) of Subtitle A of Title V of Division N of the federal Consolidated Appropriations Act, 2021 (Public Law 116–260).[11] The grantee shall, in addition, provide any other information that the department deems necessary for purposes of this chapter, including, but not limited to, weekly funding obligation, expenditure, and projection reports.

(c) To the extent feasible, each grantee shall ensure that any assistance provided to an eligible household under this chapter is not duplicative of any other state-funded rental assistance provided to that eligible household.

(d)(1) The department shall submit to the Joint Legislative Budget Committee, on a monthly basis for the duration of the program, a report that provides programmatic performance metrics for funds administered pursuant to this chapter. The report shall include, at minimum, the following information:

(A) Obligation of funds for assistance provided under this chapter.

(B) Expenditure of funds for assistance provided under this chapter.

(C) Expenditure by eligible uses for assistance provided pursuant to this chapter.

(D) Reallocation of funds, if any, for assistance provided pursuant to this chapter.

(E) Geographic distribution of funds provided pursuant to Section 50897.3.

(F) For the first monthly report submitted pursuant to this section only, an overview of which jurisdictions have elected to participate in the state rental assistance programs as provided in Sections 50897.2 and 50897.3, respectively.

(2) A report required to be submitted pursuant to this subdivision shall be submitted in compliance with Section 9795 of the Government Code.

SEC. 28. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 29. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

SEC. 30. The Legislature finds and declares that Sections 11 and 13 of this act, which amend Sections 1161.2 and 1161.2.5 of the Code of Civil Procedure, imposes a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that

CA LEGIS 27 (2021), 2021 Cal. Legis. Serv. Ch. 27 (A.B. 832) (WEST)

Case 3:22-cv-01274-LB   Document 62   Filed 07/18/22   Page 101 of 253

constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

This act balances the public's right to access records of judicial proceedings with the need to protect the privacy and future housing needs of tenants facing financial distress due to COVID–19.


SEC. 31. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or

safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:
In order to address the hardships imposed by the COVID–19 pandemic on tenants and landlords in California as soon as possible, it is necessary that this act take immediate effect.


Footnotes

| | |
|---|---|
| 1 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 2 | Internal Revenue Code sections are in Title 26 of the U.S.C.A. |
| 3 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 4 | So in chaptered copy. Probably should be "that". |
| 5 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 6 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 7 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 8 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 9 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 10 | For public law sections classified to the U.S.C.A., see USCA–Tables. |
| 11 | For public law sections classified to the U.S.C.A., see USCA–Tables. |

**End of Document**                                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

**Revised by City Council at its March 12, 2020 Meeting**

Approved as to Form and Legality

City Attorney's Office

# OAKLAND CITY COUNCIL

## RESOLUTION NO. _____8 8 0 7 5_____ C.M.S.

**RESOLUTION CONFIRMING AND RATIFYING THE EXISTENCE OF A LOCAL EMERGENCY WITHIN THE TERRITORIAL LIMITS OF THE CITY OF OAKLAND PROCLAIMED BY THE CITY ADMINISTRATOR ON MARCH 9, 2020 PURSUANT TO OAKLAND MUNICIPAL CODE SECTION 8.50 AND GOVERNMENT CODE SECTION 8630**

**WHEREAS,** the City Administrator acting as the Director of the Emergency Services Operations Center (EOC) declared a local emergency with the City of Oakland due to the outbreak of respiratory illness caused by the novel coronavirus (known as COVID-19); and

**WHEREAS,** in December 2019, the outbreak of COVID-19 was identified in Wuhan, China, and has since spread to 75 or more other countries, including the United States; and

**WHEREAS,** on March 4, 2020, California Governor Gavin Newsom declared a state of emergency in the State of California due to the spread of the COVID-19 in California and impacts on the public and public services; and

**WHEREAS,** as of March 7, 2020, there were more than 100,000 confirmed cases of COVID-19 worldwide, including 114 cases in California, resulting in nearly 4,000 deaths worldwide and two deaths in California, and thousands of Californians are in home monitoring or quarantine; and

**WHEREAS**; federal, state and local officials expect the number of cases in California, the United States and worldwide to increases; and

**WHEREAS,** since December 2019 –

- the state has been working with the national Centers for Disease Control and Prevention (CDC), the United States Health and Human Services Agency and local health departments to monitor and plan for the spread of COVID-19,

- the CDC activated its Emergency Response System on January 23, 2020, to support and guide state and local actions and preserve public health,

- the California Department of Public Health has been in regular communication with hospitals, clinics and other health providers to provide guidance regarding COVID-19; and

**WHEREAS,** health experts anticipate a high percentage of persons affected by COVID-19 will experience mild flu-like symptoms, some will have more serious symptoms and require hospitalization, particularly those who are elderly and/or have chronic health conditions; and

**WHEREAS,** if COVID-19 spreads in the City of Oakland and surrounding communities at a rate comparable to the rate it has spread in other parts of the United States and other countries, the number of persons requiring medical care may exceed locally available health and other resources; and

**WHEREAS,** it is imperative that local health providers and government officials are able to control outbreaks of COVID-19 to limit the spread of infection to our communities and within our health care system; and

**WHEREAS,** personal protective equipment (PPE), while not necessary for the general population, is one of the most effective ways to protect the health care workforce and others who must engage in direct contact with persons exhibiting symptoms of or those who have been exposed to COVID-19; and

**WHEREAS,** the City of Oakland will require access to services, personnel, equipment, facilities and other resources from the federal government, state, local and other agencies, including resources that may not be currently available, to prepare for and respond to cases and control the spread of the virus within Oakland's population and communities; and

**WHEREAS,** the health and welfare of the citizens of the City as well as that of City employees is of paramount importance to the Mayor, City Council and the City Administration; and

**WHEREAS,** Government Code Section 8630 empowers the "governing body of a city, county, or city and county, or . . . an official designated by ordinance" to proclaim a local emergency due to the existence of conditions of disaster or of extreme peril to the safety of persons and property within the territorial limits of the City of Oakland caused by such conditions as air pollution, fire, flood, storm, epidemic, riot, drought, sudden and severe energy shortage, plant or animal infestation or disease, and further provides that any emergency declared by the City Administrator will not remain in effect for more than seven (7) days, unless the City Council ratifies the existence of the local emergency; and

**WHEREAS,** the City Council adopted Ordinance No. 13437 C.M.S., on June 20, 2017, codified at Oakland Municipal Code Section 8.50, to establish the City of Oakland's Emergency Services Organization and Disaster Council procedures and protocols for administration and management of local emergencies and is; and

**WHEREAS,** Oakland Municipal Code Section 8.50.050.C.3 authorizes the City Administrator, acting as the Director of Oakland's Emergency Operations Center (EOC), to proclaim a local emergency "when in the opinion of the City Administrator circumstances indicate the existence or threatened existence of a local emergency"; now, therefore, be it

**RESOLVED:**   That the City Council of the City of Oakland hereby ratifies the City Administrator's March 9, 2020 proclamation declaring the existence of a local emergency; and be it

**FURTHER RESOLVED:** That during the existence of said local emergency the powers, functions, and duties of the emergency organization of the City of Oakland shall be those prescribed by state law, by ordinances, and resolutions of the City of Oakland; and be it

**FURTHER RESOLVED:** That the City Council fully supports and endorses the City Administrator's proclamation and order that all City departments and agencies take those actions, measures and steps deemed necessary to provide ongoing services to the City citizens, and to assure the safety and welfare of City employees, residents and property, including requesting mutual aid to the extent such aid is reasonably necessary; and be it

**FURTHER RESOLVED:** That the City Council re-affirms the City Administrator's request and also requests that a copy of this proclamation be forwarded to the Director of the California Governor's Office of Emergency Services and that the Director be requested to find it acceptable in accordance with State law and that the Governor of California, pursuant to the Emergency Services Act, be requested to issue a State of Emergency and that he afford the City the benefit of recovering its costs as a result of the spread of COVID-19 in Oakland; and be it

**FURTHER RESOLVED:**  That the City Council re affirms the City Administrator's request and also requests that the Governor of California make available all relevant funds to the City and all eligible community members and businesses, including but not limited to, State Private Nonprofit Organizations Assistance Program funds; and be it

**FURTHER RESOLVED:** That the City Council re-affirms the City Administrator's request and also request that the Governor forward a copy of this proclamation to the President of the United States to seek a Presidential Declaration of a Federal Emergency and make all relevant funds available to the City of Oakland and all eligible community members and businesses, including, but not limited to, aid provided by the Small Business Administration to help the County of Alameda and the City of Oakland to keep the high level of response, recovery, and mitigation measures necessary to make our communities resilient from this disaster.

IN COUNCIL, OAKLAND, CALIFORNIA,          MAR 1 2 2020

PASSED BY THE FOLLOWING VOTE:

AYES -   FORTUNATO BAS, GALLO, GIBSON MCELHANEY, KALB, REID, TAYLOR, ~~THAO~~
             AND PRESIDENT KAPLAN  — 7

NOES – ∅

ABSENT – ∅

ABSTENTION – ∅

Excused – 1 Thao

ATTEST: _____
                                    ASHA REED
                 Acting City Clerk and Clerk of the Council of
                          the City of Oakland, California

2913546v4

3

# EXHIBIT D

FILED
OFFICE OF THE CITY CLERK
OAKLAND

2020 APR 15  AM 11: 45

APPROVED AS TO FORM AND LEGALITY

_____
CITY ATTORNEY'S OFFICE

INTRODUCED BY COUNCILMEMBER NIKKI FORTUNATO BAS,
COUNCIL PRESIDENT PRO TEMPORE DAN KALB,
CITY ATTORNEY BARBARA J. PARKER,
COUNCILMEMBER NOEL GALLO,
COUNCILMEMBER LYNETTE GIBSON MCELHANEY,
COUNCIL PRESIDENT REBECCA KAPLAN,
VICE MAYOR LARRY REID,
COUNCILMEMBER LOREN TAYLOR, AND
COUNCILMEMBER SHENG THAO

# OAKLAND CITY COUNCIL

## ORDINANCE NO. _____13589_____ C.M.S.

**Six Affirmative Votes Required**

**EMERGENCY ORDINANCE (1) IMPOSING A MORATORIUM ON RESIDENTIAL EVICTIONS, RENT INCREASES, AND LATE FEES DURING THE LOCAL EMERGENCY PROCLAIMED IN RESPONSE TO THE NOVEL CORONAVIRUS (COVID-19) PANDEMIC; (2) PROHIBITING RESIDENTIAL AND COMMERCIAL EVICTIONS BASED ON NONPAYMENT OF RENT THAT BECAME DUE DURING THE LOCAL EMERGENCY WHEN TENANT SUFFERED A SUBSTANTIAL LOSS OF INCOME DUE TO COVID-19; (3) PROHIBITING RESIDENTIAL EVICTIONS FOR NON-PAYMENT OF RENT WHERE THE LANDLORD IMPEDED THE PAYMENT OF RENT; AND (4) CALLING ON STATE AND FEDERAL LEGISLATORS AND FINANCIAL INSTITUTIONS TO PROVIDE RELIEF TO LOW-INCOME HOMEOWNERS AND LANDLORDS**

**WHEREAS,** COVID-19 is a respiratory disease which was first detected in China and has now spread across the globe, with multiple confirmed cases in California, including the Bay Area; and

**WHEREAS,** On March 1, 2020, Alameda County Interim Health Officer Erica Pan, MD, MPH, FAAP declared a Local Health Emergency, and

**WHEREAS**, on March 4, 2020, California Governor Gavin Newsom proclaimed that a State of Emergency exists in California as a result of the threat of COVID-19; and

**WHEREAS,** Oakland is experiencing a severe housing affordability crisis and 60 percent of Oakland residents are renters, who would not be able to locate affordable housing within the City if they lose their housing; and

**WHEREAS,** in the City of Oakland, more than 4000 of our community members are homeless and live outdoors, in tents or in vehicles; and

**WHEREAS,** because homelessness can exacerbate vulnerability to COVID-19, it is necessary to take measures to preserve and increase housing security for Oakland residents; and

**WHEREAS,** the World Health Organization announced on March 11, 2020, that it has characterized COVID-19 as a pandemic; and

**WHEREAS,** on March 9, 2020, the Oakland City Administrator issued a proclamation of Local Emergency which was ratified by the Oakland City Council on March 12, 2020; and

**WHEREAS,** at the City Council's Special Meeting on March 12, 2020, numerous members of the public gave commentary about the need to prevent residential evictions during the COVID-19 crisis; and

**WHEREAS,** on March 16, 2020, Alameda County Interim Health Officer Erica Pan, MD, MPH, FAAP issued a Shelter-in-Place Order, requiring all Alameda County Residents to stay in their homes and leave only for specified essential purposes; and

**WHEREAS,** on March 17, 2020, the California Public Utilities Commission's (CPUC) Executive Director determined that energy, water, sewer, and communications companies under CPUC jurisdiction should halt customer disconnections for non-payment as a result of the State of Emergency called by Gov. Gavin Newsom. (Source: http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M329/K673/329673725.PDF); and

**WHEREAS,** the following California cities have enacted emergency eviction moratoriums: San Francisco, Berkeley, Emeryville, Alameda, San Jose, Los Angeles and San Diego, among others; and

**WHEREAS,** many Oakland residents are experiencing substantial losses of income as a result of business closures, the loss of hours or wages, or layoffs related to COVID-19, hindering their ability to keep up with rent payments; and

**WHEREAS,** many Oakland businesses are suffering economic losses related to COVID-19, in particular since the March 16, 2020, Shelter in Place Order; and

**WHEREAS**, the City of Oakland is supporting its small businesses and workers during this crisis by maintaining a new web page (www.oaklandbusinesscenter.com) to serve as a portal for all the local, state and federal resources available to support small businesses and workers during this crisis. These resources include assistance with small business taxes, loan programs, worker benefits programs, and other direct business support; and

**WHEREAS,** many Landlords charge late fees which can operate as an unfair penalty if a tenant is unable to pay rent due to reasons related to COVID-19; and

**WHEREAS,** some Landlords refuse to provide a W-9 form when required for a tenant to access rental assistance from a government or non-profit agency; and

**WHEREAS**, pursuant to Oakland Municipal Code Section 8.22.360F, the City Council may add limitations to a landlord's right to evict under the Just Cause for Eviction Ordinance; and

**WHEREAS**, during this state of emergency, and in the interests of protecting the public health and preventing transmission of the COVID-19, it is essential to avoid unnecessary displacement and homelessness; and

**WHEREAS**, an emergency ordinance restricting evictions during the COVID-19 crisis would help ensure that residents stay housed during the pandemic and would therefore reduce opportunities for transmission of the virus; and

**WHEREAS**, the City Council finds that the Just Cause for Eviction Ordinance, as amended herein, is consistent with Civil Code Section 1946.2 (as enacted by the Tenant Protection Act of 2019), is more protective than Civil Code Section 1946.2, and, in comparison to Civil Code Section 1946.2, further limits the reasons for termination of residential tenancy, provides additional tenant protections, and, in conjunction with other City ordinances, provides for higher relocation assistance payments; and

**WHEREAS,** on March 16, 2020, California Governor Gavin Newsom issued Executive Order N-28-20, which, among other things, suspended any provision of state law that would preempt or otherwise restrict a local government's exercise of its police power to impose substantive limitations on commercial evictions, if the basis for eviction was nonpayment of rent, or foreclosure, arising out of a substantial decrease in income or substantial out-of-pocket medical expenses caused by the COVID-19 pandemic, or a government agency's response to it, and is documented; and requests that financial institutions implement an immediate moratorium on foreclosures and related evictions that arise due to a substantial loss of household/business income, or substantial out-of-pocket medical expenses, sue to COVID-19; and

3

**WHEREAS**, on March 18, 2020, the Federal Housing Administration (FHA) enacted a 60-day moratorium on foreclosures and evictions for single family homes with FHA-insured mortgages, and the Federal Housing Finance Agency suspended foreclosures and evictions for single family homes with mortgages backed by either the Federal National Mortgage Association (Fannie Mae) or the Federal Home Loan Mortgage Corporation (Freddie Mac) for 60-days; and

**WHEREAS**, on March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, ordering, with limited exceptions, all individuals living in the state of California to stay at home or at their place of residence, until further notice; and

**WHEREAS**, on March 19, 2020, the United States Senate introduced a $1 trillion proposal for a coronavirus stimulus package, with support from the Trump Administration, which includes a direct payment to qualified individuals, small business loans, corporate tax cuts, and financial support for hard-hit industries such as airlines; and

**WHEREAS**, according to the 2018 City of Oakland Equity Indicators Report 74 percent of African American residents are renters, 69 percent of Latinx residents are renters, and 48 percent of Asian residents are renters; and 58 percent of African American and 53 percent of Latino residents are rent burdened in Oakland, and African American residents are twice as likely to receive an eviction notice than all residents; and

**WHEREAS**, this Ordinance will serve justice and promote racial equity for African American and Latinx renters; and

**WHEREAS**, pursuant to City Charter Section 213, the City Council may introduce and adopt an emergency ordinance at the same City Council meeting by six affirmative six votes; and

**WHEREAS**, the City Council finds that it is necessary to enact an emergency ordinance pursuant to the powers that City Charter Section 213 grants to the City Council to preserve the public health and safety which is threatened by COVID-19; and

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF OAKLAND DOES ORDAIN AS FOLLOWS:**

**SECTION 1. Recitals.** The City Council finds the foregoing recitals to be true and correct and hereby incorporates such findings into this ordinance.

**SECTION 2. Purpose and Intent.** The purpose and intent of this ordinance is to prevent displacement, reduce transmission of the novel Coronavirus (COVID-19), and promote the stability and the health and safety of the residents and businesses of Oakland during the Local Emergency declared by the City Administrator on March 9, 2020, and ratified by the Oakland City Council on March 12, 2020, in response to the COVID-19 pandemic (hereinafter, "Local Emergency").

**SECTION 3.  Residential Eviction Moratorium.**  Except when the tenant poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) – (10) that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.  Any notice served pursuant to Oakland Municipal Code 8.22.360A (1) - (10) on a tenant during the Local Emergency shall include the following statement in bold underlined 12-point font: "**Except to protect the health and safety of other occupants of the property, you may not be evicted during the Local Emergency declared by the City of Oakland in response to the COVID-19 pandemic. This does not relieve you of the obligation to pay back rent in the future. You may contact the Rent Adjustment Program at (510) 238–3721 for additional information and referrals.**" This section shall remain in effect until May 31, 2020, unless extended.

**SECTION 4.  Rent Increase Moratorium.**  For rental units regulated by Oakland Municipal Code 8.22.010 et seq, any notice of rent increase in excess of the CPI Rent Adjustment, as defined in Oakland Municipal Code Section 8.22.020, shall be void and unenforceable if the notice is served or has an effective date during the Local Emergency, unless required to provide a fair return. Any notice of rent increase served during the Local Emergency shall include the following statement in bold underlined 12-point font: "**During the Local Emergency declared by the City of Oakland in response to the COVID-19 pandemic, your rent may not be increased in excess of the CPI Rent Adjustment (3.5% until June 30, 2020), unless required for the landlord to obtain a fair return. You may contact the Rent Adjustment Program at (510) 238–3721 for additional information and referrals.**"

**SECTION 5.  Late Fee Moratorium.**  Notwithstanding any lease provision to the contrary, for residential tenancies, no late fees may be imposed for rent that became due during the Local Emergency if the rent was late for reasons resulting from the COVID-19 pandemic.  This includes, but is not limited to (1) the tenant was sick or incapacitated due to COVID-19, or was complying with a recommendation from a governmental agency to self-quarantine, (2) the tenant suffered a substantial reduction in household income because of a loss of employment or a reduction in hours, or because they were unable to work because they were caring for their child(ren) who were out of school or a household or family member who was sick with COVID-19, or because they were complying with a recommendation from a government agency to self-quarantine, and (3) the tenant incurred substantial out-of-pocket medical expenses caused by COVID-19.  Any notice demanding late fees for rent that became due during the Local Emergency shall include the following statement in bold underlined 12-point font:  "**You are not required to pay late fees for rent that became due during the Local Emergency declared by the City of Oakland in response to the COVID-19 pandemic if the rent was late for reasons**

**related to the pandemic. You may contact the Rent Adjustment Program at (510) 238–3721 for additional information and referrals.**"

SECTION 6. **Commercial Eviction Moratorium.** In any action for unlawful detainer of a commercial unit based on non-payment of rent, it shall be an absolute defense if the failure to pay rent during the local emergency was the result of a substantial decrease in income (including but not limited to a decrease caused by a reduction in hours or consumer demand) and the decrease in income was caused by the COVID-19 pandemic or by any local, state, or federal government response to COVID-19, and is documented. This section shall only apply to small businesses as defined by Government Code Section 14837(d)(1)(A) and to nonprofit organizations. Any notice to a commercial tenant demanding rent shall include the following statement in bold underlined 12-point font: "**If you are a small business as defined by Government Code 14837(d)(1)(a) or a non-profit organization, you may not be evicted for failure to pay rent if the failure was due to a substantial decrease in income caused by the COVID-19 pandemic, or by any local, state, or federal government response to COVID-19, and is documented. This does not relieve you of the obligation to pay back rent in the future.**" This section shall remain in effect until May 31, 2020, unless extended. Nothing in this section shall relieve the tenant of liability for the unpaid rent.

SECTION 7. **No Residential Eviction for Nonpayment of Rent that Became Due During the Local Emergency.** In any action for unlawful detainer filed under Oakland Municipal Code 8.22.360.A.1, it shall be a defense that the unpaid rent became due during the Local Emergency and was unpaid because of a substantial reduction in household income or substantial increase in expenses resulting from the Coronavirus pandemic. This includes, but is not limited to, where, as a result of the Coronavirus pandemic, the tenant suffered a loss of employment or a reduction in hours, or was unable to work because their children were out of school, or was unable to work because they were sick with COVID-19 or caring for a household or family member who was sick with COVID-19, or they were complying with a recommendation from a government agency to self-quarantine, or they incurred substantial out of pocket medical expenses due to COVID-19. Any notice served on a residential tenant demanding rent that became due during the Local Emergency shall include the following statement in bold underlined 12-point type: "**You may not be evicted for rent that became due during the Local Emergency if the rent was unpaid because of a substantial reduction in household income or a substantial increase in expenses related to the Coronavirus pandemic. This does not relieve you of the obligation to pay back rent in the future. You may contact the Rent Adjustment Program at (510) 238–3721 for additional information and referrals.**" Nothing in this subsection shall relieve the tenant of liability for the unpaid rent.

SECTION 8. **No Eviction if Landlord Impeded Payment of Rent.** Subsection D of Section 8.22.360 of the Oakland Municipal Code (Just Cause for Eviction Ordinance)] is hereby repealed and reenacted with amendments, as set forth below (additions are shown as <u>double underline</u>).

D.  Substantive limitations on landlord's right to evict.

1.  In any action to recover possession of a rental unit pursuant to Section 6 [8.22.360], a landlord must allege and prove the following:
    a.  the basis for eviction, as set forth in Subsection 6(A)(1) through 6(A)(11) [8.22.360 A.1 through 8.22.360 A.11] above, was set forth in the notice of termination of tenancy or notice to quit;
    b.  that the landlord seeks to recover possession of the unit with good faith, honest intent and with no ulterior motive;

2.  If landlord claims the unit is exempt from this ordinance, landlord must allege and prove that the unit is covered by one of the exceptions enumerated in Section 5 [8.22.350] of this chapter. Such allegations must appear both in the notice of termination of tenancy or notice to quit, and in the complaint to recover possession. Failure to make such allegations in the notice shall be a defense to any unlawful detainer action.

3.  This subsection (D) [8.22.360 D] is intended as both a substantive and procedural limitation on a landlord's right to evict. A landlord's failure to comply with the obligations described in Subsections 7(D)(1) or (2) [ *sic* ] [8.22.360 D.1 or 8.22.360 D.2] shall be a defense to any action for possession of a rental unit.

4.  In any action to recover possession of a rental unit filed under 8.22.360A1, it shall be a defense if the landlord impeded the tenant's effort to pay rent by refusing to accept rent paid on behalf of the tenant from a third party, or refusing to provide a W-9 form or other necessary documentation for the tenant to receive rental assistance from a government agency, non-profit organization, or other third party.  Acceptance of rental payments made on behalf of the tenant by a third party shall not create a tenancy between the landlord and the third party as long as either the landlord or the tenant provide written notice that no new tenancy is intended.

**SECTION 9.  No Relief from Liability for Rent.**  Nothing in this Ordinance shall relieve any tenant of liability for unpaid rent that became due during the Local Emergency. Landlords are encouraged to work with local agencies that will be making rental assistance available for qualifying tenants.

**SECTION 10.  Notice Requirements.**  Obligatory notice statements required by this ordinance shall be written in the language that the landlord and/or the landlord's agents normally use for verbal communications with the tenant.

**SECTION 11.  Good Samaritan Temporary Rent Decreases** – A landlord and tenant may agree in writing to a temporary rent reduction without reducing the base rent used for calculating rent increases under the Rent Adjustment Ordinance. For Good Samaritan Status to exist, the written agreement must include a statement that the

reduction is temporary and is unrelated to market conditions, habitability, or a reduction in housing services.

SECTION 12. **No Waiver of Rights.** Any agreement by a tenant to waive any rights under this ordinance shall be void as contrary to public policy.

SECTION 13. **City Council Request for Additional State and Federal Action.** The Oakland City Council hereby requests and urges Governor Newsom, California State legislators and U.S. Senators and Representatives to enact comprehensive legislation to further protect residents, tenants, homeowners and small businesses from the adverse health, safety and economic impacts of this crisis. This includes, but is not limited to, the following:

- A moratorium on mortgage foreclosures;
- A moratorium on commercial rent increases;
- Creation of emergency direct assistance programs for rent and mortgage payments, and other housing-related expenses such as utilities, property taxes, and insurance;
- Urging banks and financial institutions to suspend rents and mortgages;
- Creation of emergency grant programs to small businesses and nonprofits;
- Creation of emergency programs that provide homes and expanded services for people experiencing homelessness; and
- A moratorium on evictions, including those residential units newly covered by the enactment of AB 1482, which added Civil Code Section 1946.2.

SECTION 14. **City Council Requests Action by Financial Institutions.** The Oakland City Council hereby requests and urges banks and financial institutions to suspend mortgage payments, foreclosures, and late fees for low-income homeowners and landlords, with immediate forgiveness, and encourages financial institutions to provide zero-interest emergency unsecured loans and grants to small businesses and non-profits within Oakland that are unable to meet rent, mortgage, or other fixed operating costs.

SECTION 15. This ordinance is exempt from the California Environmental Quality Act (CEQA) under CEQA Guidelines Sections 15060(c)(2) (no direct or reasonably foreseeable indirect physical change in the environment),15061(b)(3) (no environmental impact),15269(c) (specific actions necessary to mitigate an emergency), and 15378 (regulatory actions). In response to the COVID-19 crisis, which has been declared a national, state, and local emergency, this ordinance implements rent stabilization measures and an eviction moratorium for existing residential units in the City with tenants who have been negatively impacted by the emergency.

The ordinance is necessary to mitigate an emergency and contains no provisions modifying the physical design, development, or construction of residential or

nonresidential structures. Accordingly, it can be seen with certainty that there is no possibility that the ordinance may have a significant effect on the environment and result in no physical changes to the environment.

    **SECTION 16.   Severability.**   If any section, subsection, sentence, clause or phrase of this Ordinance is for any reason held to be invalid or unconstitutional by decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of the Chapter. The City Council hereby declares that it would have passed this Ordinance and each section, subsection, clause or phrase thereof irrespective of the fact that one or more other sections, subsections, clauses or phrases may be declared invalid or unconstitutional.

    **SECTION 17.  Direction to City Administrator.**  The City Council hereby directs the City Administrator to transmit a copy of this Ordinance to all banks, financial institutions, and public utilities operating in Oakland, Governor Gavin Newsom, State Senator Nancy Skinner, Assembly Member Buffy Wicks, Assembly Member Rob Bonta, U.S. Senator Kamala Harris, U.S. Senator Dianne Feinstein, and U.S. Representative Barbara Lee.

    **SECTION 18. Regulations**.   The City Administrator may issue regulations, guidance, and forms as needed to implement this Ordinance, including but not limited to guidelines for repayment of back rent.

    **SECTION 19. Effective Date.** This ordinance shall become effective immediately if it receives six or more affirmative votes.

IN COUNCIL, OAKLAND, CALIFORNIA,

PASSED BY THE FOLLOWING VOTE:

**Introduction Date**

**MAR 2 7 2020**

AYES - FORTUNATO BAS, GALLO, GIBSON MCELHANEY, KALB, REID, TAYLOR, THAO AND
        PRESIDENT KAPLAN — Ø

NOES – Ø
ABSENT – Ø
ABSTENTION – Ø

ATTEST: _Latonda Simmons_
        LATONDA SIMMONS
   City Clerk and Clerk of the Council of the City of
        Oakland, California

Date of Attestation: _April 15, 2020_

2916782v6

9

## NOTICE AND DIGEST

**EMERGENCY ORDINANCE (1) IMPOSING A MORATORIUM ON RESIDENTIAL EVICTIONS, RENT INCREASES, AND LATE FEES DURING THE LOCAL EMERGENCY PROCLAIMED IN RESPONSE TO THE NOVEL CORONAVIRUS (COVID-19) PANDEMIC; (2) PROHIBITING RESIDENTIAL AND COMMERCIAL EVICTIONS BASED ON NONPAYMENT OF RENT THAT BECAME DUE DURING THE LOCAL EMERGENCY WHEN TENANT SUFFERED A SUBSTANTIAL LOSS OF INCOME DUE TO COVID-19; (3) PROHIBITING RESIDENTIAL EVICTIONS FOR NON-PAYMENT OF RENT WHERE THE LANDLORD IMPEDED THE PAYMENT OF RENT; AND (4) CALLING ON STATE AND FEDERAL LEGISLATORS AND ON FINANCIAL INSTITUTIONS TO PROVIDE RELIEF TO LOW-INCOME HOMEOWNERS AND LANDLORDS**

This ordinance imposes a temporary moratorium on residential evictions and rent increases in excess of CPI during the Local Emergency. It also prohibits residential evictions and the imposition of late fees for rent that became due during the Local Emergency if the tenant's failure to pay rent was a result of a substantial decrease in income or a substantial increase in expenses related to COVID-19; and prohibits evictions when the landlord has impeded the tenant's efforts to pay rent. The ordinance imposes a temporary moratorium on evictions of small businesses for non-payment of rent when the tenant suffered a substantial loss of business income related to COVID-19.

At the Oakland City Council's March 27, 2020 special meeting, the Council unanimously adopted the Emergency Ordinance by a vote of 8 ayes. Councilmember Fortunato-Bas made the motion to adopt the ordinance and President Pro Tempore Kalb seconded the motion.

# EXHIBIT E

APPROVED AS TO FORM AND LEGALITY

INTRODUCED BY COUNCILMEMBER NIKKI FORTUNATO BAS,
COUNCIL PRESIDENT PRO TEMPORE DAN KALB, AND
CITY ATTORNEY BARBARA J. PARKER

CITY ATTORNEY'S OFFICE

# OAKLAND CITY COUNCIL

# ORDINANCE NO. ____ 1 3 6 0 6 ____ C.M.S.

**6 Affirmative Votes Required**

**EMERGENCY ORDINANCE AMENDING ORDINANCE NOS. 13589 C.M.S. AND 13594 C.M.S. TO EXTEND THE MORATORIUM ON RESIDENTIAL EVICTIONS DURING THE LOCAL EMERGENCY PROCLAIMED IN RESPONSE TO THE NOVEL CORONAVIRUS (COVID-19) PANDEMIC**

**WHEREAS,** COVID-19 is a respiratory disease which was first detected in China and has now spread across the globe, with multiple confirmed cases in California, including the Bay Area; and

**WHEREAS,** On March 1, 2020, Alameda County Interim Health Officer Erica Pan, MD, MPH, FAAP declared a Local Health Emergency, and

**WHEREAS,** on March 4, 2020, California Governor Gavin Newsom proclaimed that a State of Emergency exists in California as a result of the threat of COVID-19; and

**WHEREAS,** Oakland is experiencing a severe housing affordability crisis and 60 percent of Oakland residents are renters, who would not be able to locate affordable housing within the City if they lose their housing; and

**WHEREAS,** in the City of Oakland, more than 4000 of our community members are homeless and live outdoors, in tents or in vehicles; and

**WHEREAS,** because homelessness can exacerbate vulnerability to COVID-19, it is necessary to take measures to preserve and increase housing security for Oakland residents; and

**WHEREAS,** the World Health Organization announced on March 11, 2020, that it has characterized COVID-19 as a pandemic; and

1

2955810v2

**WHEREAS,** on March 9, 2020, the Oakland City Administrator issued a proclamation of Local Emergency which was ratified by the Oakland City Council on March 12, 2020; and

**WHEREAS,** at the City Council's Special Meeting on March 12, 2020, numerous members of the public gave commentary about the need to prevent residential evictions during the COVID-19 crisis; and

**WHEREAS,** on March 16, 2020, Alameda County Interim Health Officer Erica Pan, MD, MPH, FAAP issued a Shelter-in-Place Order, requiring all Alameda County Residents to stay in their homes and leave only for specified essential purposes; and

**WHEREAS,** the following California cities have enacted emergency eviction moratoriums: San Francisco, Berkeley, Emeryville, Alameda, San Jose, Los Angeles and San Diego, among others; and

**WHEREAS,** many Oakland residents are experiencing substantial losses of income as a result of business closures, the loss of hours or wages, or layoffs related to COVID-19, hindering their ability to keep up with rent payments; and

**WHEREAS,** many Oakland businesses are suffering economic losses related to COVID-19, in particular since the March 16, 2020, Shelter in Place Order; and

**WHEREAS,** pursuant to Oakland Municipal Code Section 8.22.360F, the City Council may add limitations to a landlord's right to evict under the Just Cause for Eviction Ordinance; and

**WHEREAS,** during this state of emergency, and in the interests of protecting the public health and preventing transmission of the COVID-19, it is essential to avoid unnecessary displacement and homelessness; and

**WHEREAS,** on March 16, 2020, California Governor Gavin Newsom issued Executive Order N-28-20, which, among other things, suspended any provision of state law that would preempt or otherwise restrict a local government's exercise of its police power to impose substantive limitations on commercial evictions, if the basis for eviction was nonpayment of rent, or foreclosure, arising out of a substantial decrease in income or substantial out-of-pocket medical expenses caused by the COVID-19 pandemic, or a government agency's response to it, and is documented; and requests that financial institutions implement an immediate moratorium on foreclosures and related evictions that arise due to a substantial loss of household/business income, or substantial out-of-pocket medical expenses, due to COVID-19; and

**WHEREAS,** on May 29, 2020, Governor Newsom issued Executive Order N-66-20, which among other things, extended these provisions of Executive Order N-28-20 until July 28, 2020; and

2

**WHEREAS,** on June 30, 2020, Governor Newsom issued Executive Order N-71-20, which among other things, extended these provisions of Executive Order N-28-20 until September 30, 2020; and

**WHEREAS,** on March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, ordering, with limited exceptions, all individuals living in the state of California to stay at home or at their place of residence, until further notice; and

**WHEREAS,** on March 27, 2020, the City Council approved Ordinance No. 13589 C.M.S., which imposed an eviction moratorium on residential evictions until May 31, 2020 and a moratorium on commercial evictions based on nonpayment of rent that became due during the Local Emergency when tenant suffered a substantial loss of income due to COVID-19 until May 31, 2020; and

**WHEREAS,** on April 6, 2020, the Judicial Council adopted emergency rules to suspend evictions and judicial foreclosures until 90 days after the Governor declares that the state of emergency related to the COVID-19 pandemic has been lifted; and

**WHEREAS,** on April 29, 2020, Alameda County Interim Health Officer Erica Pan, MD, MPH, FAAP extended the Shelter-in-Place Order, requiring all Alameda County Residents to stay in their homes and leave only for specified essential purposes, through end of May 2020; and

**WHEREAS,** on May 19, 2020, the City Council approved Ordinance No. 13594 C.M.S., which extended the moratorium on residential evictions until August 31, 2020 and the moratorium on commercial evictions until the expiration of the relevant provisions of Executive Order N-28-20; and

**WHEREAS**, on June 5, 2020, Alameda County Interim Health Officer Erica Pan, MD, MPH, FAAP extended the Shelter-in-Place Order, until it is rescinded, superseded, or amended; and

**WHEREAS**, according to the 2018 City of Oakland Equity Indicators Report 74 percent of African American residents are renters, 69 percent of Latinx residents are renters, and 48 percent of Asian residents are renters; and 58 percent of African American and 53 percent of Latino residents are rent burdened in Oakland, and African American residents are twice as likely to receive an eviction notice than all residents; and

**WHEREAS,** this Ordinance will serve justice and promote racial equity for African American and Latinx renters; and

**WHEREAS,** pursuant to City Charter Section 213, the City Council may introduce and adopt an emergency ordinance at the same City Council meeting by six affirmative votes; and

**WHEREAS,** pursuant to City Charter Section 213 the City Council must state the reasons constituting the necessity of an emergency ordinance in order to preserve the public peace, health or safety of the City in an emergency; and

3

2955810v2

**WHEREAS,** based on the findings above, the City desires to further the public peace, health, safety and welfare to prevent transmission of the coronavirus by avoiding unnecessary displacement and homelessness; and

**WHEREAS,** if the Council does not enact an emergency ordinance implementing the above measures, the City's announcement of its intent to act would create an incentive for landlords to evict tenants after provisions of the existing eviction moratorium that expire on August 31, 2020 despite the clear intent of the City to protect such tenants to promote the health, welfare, and safety of the City; and

**WHEREAS,** in the time after a non-emergency ordinance was introduced, received a second reading, and became effective, many tenants could be subject to displacement, furthering the need for the Council to enact an emergency ordinance that is effective immediately; and

**WHEREAS,** the City Council finds that it is necessary to enact an emergency ordinance pursuant to the powers that City Charter Section 213 grants to the City Council to preserve the public health and safety which is threatened by COVID-19; and

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF OAKLAND DOES ORDAIN AS FOLLOWS:**

**SECTION 1. Recitals.** The City Council finds the foregoing recitals to be true and correct and hereby incorporates such findings into this ordinance.

**SECTION 2. Purpose and Intent.** The purpose and intent of this ordinance is to prevent displacement, reduce transmission of the novel Coronavirus (COVID-19), and promote the stability and the health and safety of the residents and businesses of Oakland during the Local Emergency declared by the City Administrator on March 9, 2020, and ratified by the Oakland City Council on March 12, 2020, in response to the COVID-19 pandemic (hereinafter, "Local Emergency").

**SECTION 3. Residential Eviction Moratorium Extension.** Section 3 of Ordinance No. 13589 C.M.S., as amended by Ordinance No. 13594 C.M.S., is hereby repealed and reenacted with amendments, as set forth below (additions are shown as <u>double underline</u> and deletions are shown as ~~strikethrough~~).

**Residential Eviction Moratorium.** Except when the tenant poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) – (10) that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency. Any notice served pursuant to Oakland Municipal Code 8.22.360A (1) - (10) on a tenant during the Local Emergency shall include the following statement in bold underlined 12-point font: "**<u>Except to protect the health and safety of other occupants of the property, you may not be evicted during the Local</u>**

4

**Emergency declared by the City of Oakland in response to the COVID-19 pandemic. This does not relieve you of the obligation to pay back rent in the future. You may contact the Rent Adjustment Program at (510) 238–3721 for additional information and referrals.**" This section shall remain in effect until the Local Emergency declared on March 9, 2020, has been terminated by the City Council~~, or August 31, 2020, whichever comes first~~.

**SECTION 4.   CEQA.** This ordinance is exempt from the California Environmental Quality Act (CEQA) under CEQA Guidelines Sections 15060(c)(2) (no direct or reasonably foreseeable indirect physical change in the environment),15061(b)(3) (no environmental impact),15269(c) (specific actions necessary to mitigate an emergency), and 15378 (regulatory actions).  In response to the COVID-19 crisis, which has been declared a national, state, and local emergency, this ordinance implements rent stabilization measures and an eviction moratorium for existing residential units in the City with tenants who have been negatively impacted by the emergency.

The ordinance is necessary to mitigate an emergency and contains no provisions modifying the physical design, development, or construction of residential or nonresidential structures.  Accordingly, it can be seen with certainty that there is no possibility that the ordinance may have a significant effect on the environment and result in no physical changes to the environment.

**SECTION 5.  Severability.**  If any section, subsection, sentence, clause or phrase of this Ordinance is for any reason held to be invalid or unconstitutional by decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of the Chapter. The City Council hereby declares that it would have passed this Ordinance and each section, subsection, clause or phrase thereof irrespective of the fact that one or more other sections, subsections, clauses or phrases may be declared invalid or unconstitutional.

5

**SECTION 6.  Effective Date.**  This ordinance shall become effective immediately if it receives six or more affirmative votes.

IN COUNCIL, OAKLAND, CALIFORNIA,              JUL 2 1 2020

PASSED BY THE FOLLOWING VOTE:

AYES -      FORTUNATO BAS, GALLO, GIBSON MCELHANEY, KALB, REID, TAYLOR, THAO AND PRESIDENT KAPLAN — 8

NOES – Ø
ABSENT – Ø
ABSTENTION – Ø

ATTEST: _____
ASHA REED
Acting City Clerk and Clerk of the Council
of the City of Oakland, California

Date of Attestation: July 23, 2020

2955810v2

6

**NOTICE AND DIGEST**

**EMERGENCY ORDINANCE AMENDING ORDINANCE NOS. 13589 C.M.S. AND 13594 C.M.S. TO EXTEND THE MORATORIUM ON RESIDENTIAL EVICTIONS DURING THE LOCAL EMERGENCY PROCLAIMED IN RESPONSE TO THE NOVEL CORONAVIRUS (COVID-19) PANDEMIC**

This Ordinance amends Ordinance Nos. 13589 C.M.S. and 13594 C.M.S. to extend the moratorium on residential evictions during the local emergency proclaimed in response to the novel coronavirus (COVID-19) pandemic.

# EXHIBIT F

RESOLUTION NUMBER R-2020- 91

**A RESOLUTION OF THE BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA RATIFYING THE DECLARATION OF LOCAL HEALTH EMERGENCY BY THE COUNTY HEALTH OFFICER RELATED TO THE 2019 NOVEL CORONAVIRUS**

**WHEREAS,** California Health and Safety Code section 101080 authorizes a local health officer to declare a local health emergency in the health officer's jurisdiction, or any part thereof, whenever the health officer reasonably determines that there is an imminent and proximate threat of the introduction of any contagious, infectious, or communicable disease, chemical agent, non-communicable biological agent, toxin, or radioactive agent; and

**WHEREAS,** on March 1, 2020 and again on March 5, 2020, the County's Health Officer declared a local health emergency based on an imminent and proximate threat to public health from the introduction of a novel coronavirus (named COVID-19) in the County of Alameda; and

**WHEREAS,** under Health and Safety Code section 101080, the local health emergency shall not remain in effect for more than seven (7) days unless ratified by the Board of Supervisors; and

**WHEREAS,** the Board of Supervisors hereby finds that there continues to exist an imminent and proximate threat to public health from the introduction of COVID-19 in the County for reasons set forth in the declaration of local health emergency by the County's Health Officer, dated March 5, 2020;

**NOW, THEREFORE, BE IT RESOLVED,** by the Board of Supervisors of the County of Alameda as follows:

Section 1 – The local health emergency declared by the County's Health Officer on March 5, 2020 is hereby ratified. Under authority granted by California Governor Gavin Newsom in a Proclamation of a State of Emergency issued on March 4, 2020, this declaration of local emergency shall remain in effect until the Board of Supervisors determines that the emergency condition no longer exists.

Section 2 – The Board of Supervisors hereby delegates to the County's Health Officer authority to terminate the local health emergency, pursuant to Health & Safety Code section 101080 "at the earliest possible date that conditions warrant the termination."

Section 3 – All County departments and agencies take those actions, measures, and steps deemed necessary to assure the health, safety, and welfare of County citizens and property, including requesting mutual aid to the extent such aid is necessary.

The foregoing Resolution was passed and adopted by the Board of Supervisors of the County of Alameda, State of California, at a regular meeting of the Board on the 10 day of March, 2020 by the following vote:

AYES:      Supervisors Carson, Haggerty and President Valle - 3

NOES:      None

EXCUSED:   Supervisors Chan and Miley - 2

_____
Richard Valle, President of the Board of Supervisors

ATTEST:
Clerk of the Board of Supervisors,
County of Alameda, State of California

By:_____
Deputy


APPROVED AS TO FORM:
Donna R. Ziegler, County Counsel


By:_____
K. Scott Dickey
Assistant County Counsel

## DECLARATION OF A LOCAL HEALTH EMERGENCY

**WHEREAS,** Health and Safety Code section 101080 authorizes a local health officer to declare a local health emergency in the health officer's jurisdiction, or any part thereof, whenever the health officer reasonably determines that there is an imminent and proximate threat of the introduction of any contagious, infectious, or communicable disease, chemical agent, noncommunicable biologic agent, toxin, or radioactive agent;

**WHEREAS,** COVID-19 is a contagious, infectious, or communicable disease;

**WHEREAS,** the Secretary of the United States Department of Health and Human Services declared a public health emergency on January 31, 2020, for the United States;

**WHEREAS,** the Centers for Disease Control and Prevention announced on February 25, 2020, that community spread of COVID-19 is likely to occur in the United States;

**WHEREAS,** the first confirmed case of COVID-19 has now been identified in the County of Alameda;

**WHEREAS,** the Governor Gavin Newsom issued a Proclamation of a State of Emergency on March 4, 2020 for California;

**WHEREAS,** based on the United States Department of Health and Human Services declaration and the Centers for Disease Control and Prevention statements, and multiple cases of COVID-19 and evidence of community transmission in the region, there is an ongoing risk and likelihood of additional COVID-19 positive patients and community spread in the County of Alameda;

**WHEREAS,** based on the foregoing, the Health Officer of Alameda County does hereby find that there is an imminent and proximate threat of the introduction and spread of COVID-19 in the County of Alameda and a threat to the public health of the residents of the County of Alameda;

**THEREFORE,** the County Health Officer hereby declares a renewal of a local health emergency originally declared on March 1st, 2020 throughout the County of Alameda;

**IT IS SO DECLARED,** on this date: March 5st, 2020.

BY:

Name: Dr. Erica Pan
Title:   Interim Health Officer
        Public Health Department, County of Alameda

# EXHIBIT G

ORDINANCE NO. O-2020-_23_

AN URGENCY ORDINANCE AMENDING ORDINANCE NO. O-2020-14, AS AMENDED BY
ORDINANCE NO. O-2020-18 TO MODIFY THE TEMPORARY MORATORIUM ON
EVICTIONS DUE TO AND DURING THE COVID-19 EMERGENCY
IN THE COUNTY OF ALAMEDA

SECTION I

In enacting this ordinance, the Board of Supervisors of the County of Alameda, State of California makes the following findings:

1.   On March 4, 2020, the Governor of the State of California issued a Proclamation of a State of Emergency in the State of California related to the novel coronavirus that emerged in 2019 ("COVID-19"); and

2.   On March 10, 2020, the County of Alameda ("County") ratified the County Health Officer's declaration of a local health emergency ("Emergency Declaration") as a result of COVID-19; and

3.   On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic; and

4.   As of March 15, 2020, all eighteen (18) school districts within the County have suspended in-class instruction or closed all schools and as a result, parents and guardians are missing work to care for these children; and

5.   On March 16, 2020, the Alameda County Sheriff's Office announced it would temporarily suspend evictions due to the COVID-19 health emergency; and

6.   On March 16, 2020, the County of Alameda joined Contra Costa, Marin, San Francisco, San Mateo, and Santa Clara counties and the City of Berkeley on an order directing their respective residents to shelter at home for three weeks beginning March 17 ("Shelter-in-Place Order"). The Shelter-in-Place Order also requires all businesses except essential businesses as described in the order to cease all activities at facilities located within the County except minimum basic operations and prohibits all public and private gatherings of any number of people except for limited purposes as well as all non-essential travel. These restrictions will reduce economic activity and as a result, household incomes during this time; and

7.   Because of these impacts, many employers have laid off or will need to lay off employees, working County residents with children may be compelled not to work in order to provide care for their child(ren), and many County residents who are working and become ill due to COVID-19, or who must self-quarantine due to COVID-19 because they have been exposed to COVID-19, do not have paid sick leave; and

1

8.    Those residents financially impacted due to COVID-19 may not be able to make timely rent or mortgage payments or be forced to choose between paying housing expenses and having sufficient funds for food, medical care or other necessities for themselves and their families; and

9.    On March 14, 2020, the Alameda County Superior Court declared that all unlawful detainer mandatory settlement conferences for jury trials and jury trials currently set between Monday, March 16, and Friday, April 3, 2020 will be continued on a rolling basis for 3 weeks from the currently scheduled trial date, and, on March 16, ordered the stay of all evictions pending between Tuesday, March 17, 2020, up to and through Wednesday, April 8, 2020, the anticipated reopening of the Court, among other significant reductions in court operations; and

10.   On March 18, 2020, the federal government announced temporary suspensions of certain foreclosures and related evictions to promote housing stability during the COVID-19 pandemic; and

11.   As of March 18, 2020, there were 31 confirmed cases of COVID-19 in the County, as of March 26, 2020, there were 135 confirmed cases and two deaths, as of April 14, 2020 there were 962 confirmed cases and 36 deaths, and the number of documented cases is likely to increase as more effective, accessible, and proactive testing methods are introduced and community spread continues; and

12.   As the response to the public health emergency has escalated, many County residents have been economically impacted from COVID-19, including, but not limited to lost business through the hospitality, retail, entertainment, and gig economies. Both large and smaller events across the Bay Area are being cancelled or postponed due to the Shelter-in-Place Order and recommendations at all levels of government to cancel large gatherings amid concerns over spread of the COVID-19. These cancellations and postponements cause loss in revenue for the event, as well as surrounding local businesses that rely on such events to bring in patrons to their businesses; and

13.   After the World Health Organization officially declared the spread of COVID-19 a pandemic on March 11, 2020, stocks entered a bear market and fell more than 20%, and in the week ending March 14, 2020, workers filed 281,000 unemployment claims, an increase of 70,000 from the previous week; and

14.   Displacement through eviction destabilizes the living situation of tenants and homeowners and impacts the health of County residents by uprooting children from schools, disrupting the social ties and networks that are integral to citizens' welfare and the stability of communities. It also creates undue hardship for tenants and homeowners through additional relocation costs, stress and anxiety, and the threat of homelessness due to the lack of alternative housing; and

15.   COVID-19 poses a unique threat to people experiencing homelessness, who lack resources for sanitation, stay in overcrowded shelters, encampments, vehicles and other places, and already have a high rate of poorly treated chronic illnesses. In 2019, the Alameda County Point in Time Count estimated 349 people are homeless in the unincorporated area, an increase of 59% since the last count in 2017. The countywide increase was 47%; and

16.   Such displacement, destabilization and any increase in homelessness would increase the risk of transmission of COVID-19 throughout the County by rendering it difficult or impossible for individuals to shelter-in-place and to observe social distancing and hygiene practices that are recommended to reduce the transmission of COVID-19; and

17.   Pursuant to existing state law, specified evictions during declared states of emergency are illegal, specifically, Penal Code section 396, subdivision (f) provides:  "It is unlawful for a person, business, or other entity to evict any residential tenant of residential housing after the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any city, county, or city and county, and for a period of 30 days following that proclamation or declaration, or any period that the proclamation or declaration is extended by the applicable authority and rent or offer to rent to another person at a rental price greater than the evicted tenant could be charged under this section. It shall not be a violation of this subdivision for a person, business, or other entity to continue an eviction process that was lawfully begun prior to the proclamation or declaration of emergency"; and

18.   Pursuant to Executive Order N-28-20 issued by the Governor of the State of California on March 16, 2020, the protections afforded by Penal Code section 396, subdivision (f) are in effect through May 31, 2020; accordingly, no new evictions of residential tenants meeting the conditions specified may be pursued until May 31, 2020 at the earliest, as a matter of state law; and

19.   Pursuant to Executive Order N-28-20, any provision of state law that would preempt or otherwise restrict a local government's exercise of its police power to impose substantive limitations on evictions due to specified financial burdens caused by COVID-19 are suspended; and

20.   On March 19, 2020, the Governor issued Executive Order N-33-20 directing all residents in the State of California to stay at home except for essential activities during the COVID-19 emergency; and

21.   On April 6, 2020, the Judicial Council of California issued emergency rules suspending court proceedings for unlawful detainer and judicial foreclosures until 90 days after the Governor declares that the state of emergency related to the COVID-19 pandemic is lifted; and

22.   The County, pursuant to its police powers, has broad authority to maintain the public peace, health, safety and welfare for its residents; and

3

23. Pursuant to Government Code section 8634, during a local emergency, the Board of Supervisors may promulgate orders and regulations necessary to provide for the protection of life and property; and

24. The California Attorney General has opined that when a county has declared a local emergency within its jurisdictional boundaries in an area that includes both unincorporated and incorporated territory, the county may adopt emergency rules and regulations pursuant to Government Code section 8634 that will be effective in both unincorporated and incorporated areas (62 Ops. Cal. Atty. Gen. 701 (1979)); and

25. COVID-19 continues to spread rapidly throughout the community without regard to jurisdictional boundaries; and

26. Both the County's Emergency Declaration and Shelter-in-Place Order apply throughout the County, to both the unincorporated area of the County and within each incorporated city in the County; and

27. This ordinance is a temporary moratorium intended to immediately preserve the public peace, health, and safety by reducing the public's exposure to the transmission of COVID-19 by enabling tenants and homeowners throughout the County whose income, medical expenses or child care needs are affected due to COVID-19 to remain in their homes in accordance with the Shelter-in-Place Order; and

28. This ordinance is also intended to promote stability within the residential market in the County, including both the unincorporated and incorporated areas, during the COVID-19 pandemic outbreak and to prevent avoidable homelessness, thereby immediately preserving the public peace, health, and safety by reducing the public's exposure to the transmission of COVID-19; and

29. During the COVID-19 pandemic outbreak, affected tenants and homeowners who have lost available income due to the impact on the economy or their out-of-pocket medical or child care expenses may be at risk of homelessness if they are evicted for non-payment as they will have little or no available income and be unable to secure other housing if evicted; and

30. This ordinance is not subject to the California Environmental Quality Act ("CEQA") pursuant to CEQA Guidelines Section 15061(b)(3) (because it can be seen with certainty that there is no possibility that the ordinance may have a significant effect on the environment) and pursuant to Section 15378, which defines a "project" under CEQA (the ordinance is not a "project" because it has no potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment).

**SECTION II**

NOW, THEREFORE, the Board of Supervisors of the County of Alameda ordains as follows:

This urgency ordinance hereby amends Ordinance No. O-2020-14 of the uncodified Alameda County Ordinance Code adopted by the Board of Supervisors on March 24, 2020, as amended by Ordinance No. O-2020-18 adopted by the Board of Supervisors on March 31, 2020, to read as follows:

**TEMPORARY MORATORIUM ON EVICTIONS DUE TO AND DURING THE COVID-19 EMERGENCY IN THE COUNTY OF ALAMEDA**

1. **Purpose, Intent and Scope.**

   This ordinance is enacted for the immediate preservation of the public peace, health, and safety. The purposes of this ordinance are to reduce the transmission of COVID-19, to promote housing stability during the COVID-19 pandemic and to prevent avoidable homelessness. This ordinance is necessary for the immediate preservation of the public peace, health, and safety because the COVID-19 pandemic has the potential for destabilizing the residential market for the reasons described in the findings made by the Board of Supervisors in enacting this ordinance. This ordinance is intended to enable tenants, homeowners, and mobilehome owners in the County to shelter-in-place and avoid displacement during the COVID-19 pandemic. This ordinance is also intended to enable tenants, homeowners, and mobilehome owners in the County whose income, medical expenses, or child care needs have been affected by the COVID-19 pandemic to be temporarily protected from eviction for non-payment of rent or mortgage payments. This ordinance is intended to reduce the risk that these events will lead to anxiety, stress and potential homelessness for the affected residents and their communities thereby serving the public peace, health, safety, and public welfare. The temporary moratorium on evictions by this ordinance is created pursuant to the County's emergency authority pursuant to Government Code section 8634 and its general police powers to protect the health, safety, and welfare of its residents, in addition to any rights and obligations under state and federal law.

2. **Definitions.**

   A. "Affected Resident" shall mean a Tenant, Homeowner or their Household, that has experienced a Qualifying Loss.

   B. "Homeowner" means the owner or owners of a Residential Unit subject to a mortgage or similar loan secured by the residential unit. Homeowner includes the owner of a Mobilehome.

   C. "Household" means all of the individuals residing in the Residential Unit with the Tenant(s) and/or Homeowner(s).

5

D.  "Landlord" means an owner, lessor; or sublessor who receives or is entitled to receive rent for the use and/or occupancy of any Residential Unit by a Tenant and the agent, representative, or successor of any of the foregoing.  Landlord includes a Mobilehome park owner leasing spaces to a Mobilehome owner.

E.  "Lender" means the mortgagee of a purchase money or similar mortgage, or the holder or beneficiary of a loan secured by one or more Residential Units, which person has the right to mortgage or similar payments from the Homeowner as mortgagor, including a loan servicer, and the agent, representative, or successor of any of the foregoing.

F.  "Local Health Emergency" means the state of emergency declared by the County of Alameda or its authorized officers related to COVID-19 including but not limited to declarations by the Public Health Officer or the Board of Supervisors.

G.  "Mobilehome" means a structure transportable in one or more sections, designed and equipped to contain not more than one dwelling unit, to be used with or without a foundation system.

H.  "Notice of Termination" means the notice informing a Tenant or Homeowner of the termination of their right to occupy the Residential Unit in accordance with applicable California law, including but not limited to a 3- or 30-day notice to pay or quit.

I.  "Person" means an individual, firm, association, partnership, joint venture, corporation or any entity, public or private in nature.

J.  "Qualifying Loss" means substantial loss in income, substantial out-of-pocket medical expenses or extraordinary child care needs, resulting in a substantial hardship or inability to make rent or mortgage payments when due, as a result of the COVID-19 pandemic, including but not limited to any COVID-19 related declaration of the County Public Health Officer, or other local, state or federal authority.

K.  "Resident" shall mean a Tenant, Homeowner or their Household.  This term includes but is not limited to Affected Residents.

L.  "Residential Unit" means a structure or Mobilehome or the portion thereof  that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household, and which person or household pays rent to a Landlord or mortgage payments to a Lender for the use and/or occupancy of the structure or Mobilehome, or the space where a Mobilehome is located, for periods of thirty (30) days or more whether or not the residential use is a conforming use permitted under the Alameda County Ordinance Code, applicable city's municipal code, or other applicable regulations.

M.  "Tenant" means a residential tenant, subtenant, lessee, sublessee, or any other person entitled by written or oral rental agreement, or by sufferance, to use or occupancy of a Residential Unit.

3. **Moratorium on Evictions During Local Health Emergency**.

A. Beginning on the effective date of this ordinance and continuing until thirty (30) days after the Local Health Emergency is no longer in effect, the County hereby places a moratorium on all evictions from Residential Units in the unincorporated and incorporated areas of the County, subject to the exceptions stated below.

B. No Landlord or Lender may evict a Resident, or otherwise require a Resident to vacate a Residential Unit, or retaliate against a Resident, while this section is in effect.

C. Violation of this ordinance is an affirmative defense to any unlawful detainer action or other proceeding to recover possession of a Residential Unit.

D. It shall be an absolute defense to any unlawful detainer action against a Resident that the Notice of Termination was served or expired, or that the complaint was filed or served, on or after March 24, 2020 and on or before the thirtieth (30th) day after the Local Health Emergency is no longer in effect, subject to the exceptions stated below. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

E. Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section.

F. Exceptions. The Landlord or Lender claiming that their proposed eviction is not prohibited by this ordinance shall have the burden of proving that one or more of the exceptions applies. The provisions of this section shall not apply in the following circumstances, which must be stated by in the Notice of Termination and the complaint as the grounds for the eviction:

1) A Landlord is taking the Residential Unit off of the residential rental market in accordance with Government Code sections 7060, *et seq.* (Ellis Act) and in compliance with any applicable local ordinances.

2) The Residential Unit must be vacated to comply with an order issued by a government agency or court.

3) Continued occupancy by the Resident poses an imminent threat to health or safety. For the purposes of this ordinance, the basis for this exception cannot be the Resident's COVID-19 illness or exposure to COVID-19, whether actual or suspected.

**4.  Moratorium on Evictions Based on Nonpayment Caused by COVID-19.**

A. Beginning on the effective date of this ordinance and continuing until May 31, 2020, the County hereby places a moratorium on evictions from Residential Units in the unincorporated and incorporated areas of the County resulting from a substantial loss of income, substantial out-of-pocket medical expenses, or extraordinary child care needs, any of which are caused by COVID-19.

B. No Landlord or Lender may evict an Affected Resident, or otherwise require an Affected Resident to vacate a Residential Unit or retaliate against an Affected Resident for nonpayment of rent or mortgage payments or for nonpayment of late fees, fines or interest based on nonpayment, while this ordinance is in effect.

C. Violation of this ordinance is an affirmative defense to any unlawful detainer action or other proceeding to recover possession of a Residential Unit.

D. It shall be an absolute defense to any unlawful detainer action against an Affected Resident based on a failure to timely make rent or mortgage payments that the Notice of Termination was served or expired, or that the complaint was filed or served, on or after March 24, 2020 and on or before May 31, 2020. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

E. Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section, if the rent was late due to a Qualifying Loss.

F. If the Governor of the State of California extends the protections of Executive Order N-28-20, Paragraph 2, beyond May 31, 2020, the May 31, 2020 dates in subsections A and D of this section shall be automatically extended to the expiration date of said Paragraph 2.

**5.  Procedures.**

A. A Landlord or Lender must provide a copy of this ordinance and the following notice in at least 12-point font to Residents when serving Residents with a Notice of Termination:

"NOTICE: THE COUNTY OF ALAMEDA HAS ADOPTED A TEMPORARY MORATORIUM ON EVICTIONS DURING THE COVID-19 LOCAL HEALTH EMERGENCY INCLUDING EVICTIONS FOR NONPAYMENT OF RENT OR MORTGAGE PAYMENTS DUE TO COVID-19.   A COPY OF THE COUNTY ORDINANCE IS ATTACHED.   UPDATED INFORMATION MAY BE AVAILABLE FROM THE COUNTY'S HOUSING AND COMMUNITY DEVELOPMENT DEPARTMENT AT jennifer.pearce@acgov.org or 510-670-6474."

B. If the Residential Unit is located within the jurisdictional limits of a city which also has an ordinance protecting residents from evictions due to COVID-19 or during the COVID-19 emergency, the Landlord or Lender must also provide a copy of the city's ordinance with the Notice of Termination.

C. To the extent feasible, Affected Residents should make a reasonable effort to notify their Landlord or Lender on or before the day rent or mortgage payment is due, or as soon as possible thereafter, of their potential inability to make a timely rent or mortgage payment due to a Qualifying Loss.

6. **Documentation – Required Only for COVID-19 Based Eviction Protections.**

A. The provisions of this section apply only when an Affected Resident is seeking protection from eviction pursuant to section 4 of this ordinance due to a substantial loss in income, substantial out-of-pocket medical expenses or extraordinary child care needs, resulting in a substantial hardship or inability to make rent or mortgage payments when due, as a result of the COVID-19 pandemic, including but not limited to any COVID-19 related declaration of the County Public Health Officer, or other local, state or federal authority. Documentation is not required when a resident is seeking protection from eviction pursuant to section 3 of this ordinance.

B. An Affected Resident's Qualifying Loss must be documented.

C. An Affected Resident shall retain such documentation until such time as any back rent owed due to the Qualifying Loss is repaid or forgiven.

D. An Affected Resident is not required to provide such documentation to the Landlord or Lender in advance to qualify for the protections of this ordinance. However, upon the request of a Landlord or Lender, an Affected Resident shall provide such documentation to the Landlord or Lender within forty-five (45) days after the request or within thirty (30) days after the County's shelter in place order is lifted, whichever is later.

E. The following documents shall create a rebuttable presumption that the Affected Resident has a Qualifying Loss:

   1) Letter from employer or other source of income citing COVID-19 as a reason for reduced work hours, termination, or other substantial reduction in pay;

   2) Employer paycheck stubs showing a reduction in pay following the COVID-19 outbreak;

   3) Bank statements showing a reduction in income following the COVID-19 outbreak;

   4) Documentation showing payment of substantial out-of-pocket medical expenses caused by COVID-19; or

9

5) Documentation showing the closure of a school or child care facility where a child in the Affected Resident's care would otherwise be present during the Affected Resident's working hours; or

6) A sworn statement by the Affected Resident attesting to the existence of their Qualifying Loss, including facts sufficient to demonstrate the Qualifying Loss, and attesting to their inability to gather the documentation described in (1)-(5) above.

F. An Affected Resident may provide other documentation to demonstrate a substantial hardship or inability to make timely rent or mortgage payments caused by COVID-19.

G. Any confidential medical information or other information protected by the Affected Resident's rights to privacy shall be held confidential by the Landlord or Lender and shall not be reproduced or distributed unless otherwise authorized or required by law.

**7. Retaliation Prohibited.**

A Landlord or Lender shall not retaliate against a Resident for exercising their rights under this ordinance, including but not limited to shutting off any utilities or reducing services or amenities to which the Residents would otherwise be entitled.

**8. No Waiver.**

The protections provided by this ordinance shall be available to all Residents, regardless of any agreement wherein a Resident waives or purports to waive their rights under this ordinance.

**9. Repayment of Back Rent.**

A. Nothing in this ordinance relieves an Affected Resident of liability for unpaid rent or mortgage payments that became due during the effective periods of Sections 3.A. or D. or 4.A. or D. of this ordinance.

B. In any action to recover possession of a Residential Unit from a Tenant based on nonpayment of rent, it shall be an affirmative defense that the rent became due during the effective periods of Sections 3.A. or D. or 4.A. or D. of this ordinance. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III.

C. A Landlord and Tenant may mutually agree to a repayment plan. Such plans remain subject to the prohibition on evictions based on back rent owed pursuant to Subsection B, above.

D. If a Tenant does not repay the rent that became due during the effective periods of Section 3 or 4 within twelve (12) months from the date the rent became due, a Landlord may collect

the back rent as any other consumer debt. Such back rent may not be collected through the unlawful detainer process.

E.  In any action to recover possession of a Residential Unit, it shall be an affirmative defense if the Landlord or Lender impeded the Affected Resident's effort to pay by refusing to accept payments on behalf of Affected Resident from a third party, or refusing to provide a W-9 form or other necessary documentation for the Affected Resident to receive financial assistance from a government agency, non-profit organization, or other third party.  This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III.

**10.**  **Violation and Remedies**.

A.  Affirmative Defense. Each Landlord or Lender that seeks to recover possession of a Residential Unit must comply with this ordinance. Non-compliance with any applicable provision of this ordinance shall constitute an affirmative defense for a Resident against any unlawful detainer action under California Code of Civil Procedure section 1161, termination of tenancy in a Mobilehome park under the Mobilehome Residency Law (see Civil Code sections 798.55, et. seq.), petition for writ of possession, or any other action to recover possession of the Residential Unit or to otherwise cause Residents to vacate the Residential Unit.

B.  Misdemeanor. Any person violating any of the provisions of this ordinance is guilty of a misdemeanor. Each person is guilty of a separate offense for each and every day during any portion of which any violation of any provision of this ordinance is committed, continued or allowed in conjunction with the Landlord's or Lender's activities with respect to the Residential Unit, Residents and Households and is punishable accordingly. For purposes of this section, each and every day of violation includes each day on which a failure to comply with this ordinance continues. No proof of knowledge, intent, or other mental state is required to establish a violation.

C.  Civil Remedies.

1.  Any Landlord or Lender that fails to comply with this ordinance is subject to a fine of $1000 per violation.  Each person is liable for separate violation for each and every day during any portion of which any violation of any provision of this ordinance is committed, continued or allowed in conjunction with the Landlord's or Lender's activities with respect to the Residential Unit, Residents, and Resident Households. For purposes of this section, each and every day of the violation includes each day on which a failure to comply with this ordinance continues. No proof of knowledge, intent, or other mental state is required to establish a violation.

2.  Any Landlord or Lender that fails to comply with this ordinance may be subject to civil proceedings for displacement of Residents initiated by the County or the Affected Residents.

11

3. Any person found to have violated this ordinance shall be subject to appropriate injunctive relief and shall be liable to the Resident for damages, costs, and reasonable attorneys' fees.

4. Nothing herein shall be deemed to interfere with the right of a Landlord to file an action against a Resident or non-Resident third party for damage done to said Residential Unit. Nothing herein is intended to limit the damages recoverable by any party through a private action.

D. Cumulative Remedies. The remedies provided by this ordinance are cumulative and in addition to any other remedies available at law or in equity.

11. **Application to Cities.**

A. The regulations in this ordinance shall apply to cities within the County of Alameda and to the unincorporated area of the County, subject to subsections B, C and D below.

B. If the governing body of a city has enacted an ordinance that has stronger protections for Tenants during the COVID-19 emergency, the city may apply its ordinance in lieu of the County ordinance, to the extent its ordinance is stronger, subject to the requirements of this section. The city must duly affirm or declare in writing its intent to opt out of the County ordinance. The writing must enumerate the specific provisions of the County's ordinance from which the city intends to opt out and must include a finding that the city ordinance is stronger.

C. To the extent the city ordinance is not stronger, the County ordinance protecting Tenants shall apply despite contrary provisions or silence on the subject in the city ordinance.

D. To the extent the city's ordinance is stronger for Tenants but not for Homeowners, the provisions of the County ordinance protecting Homeowners shall apply despite contrary provisions or silence on the subject in a city's ordinance.

12. **Severability.**

The provisions of this ordinance are hereby declared to be severable. If any provision, clause, word, sentence or paragraph of this ordinance or the application thereof to any person or circumstances shall be held invalid, such invalidity shall not affect the other provisions or application of this ordinance.

## SECTION III

Pursuant to Government Code Section 25123, subdivision (d), this measure is declared to be an urgency ordinance, to take effect and be in force immediately upon its passage and before the expiration of fifteen (15) days after its passage it shall be published once with the names of the members voting for an against the same in the Inter-City Express, a newspaper published in the County of Alameda.

12

This ordinance shall be of no further force or effect ninety (90) days from its date of adoption, unless otherwise extended by the Board of Supervisors. This ordinance shall be in effect only during the time that an emergency declaration by local, state or federal authorities pertaining to COVID-19 is in effect and applicable to the County of Alameda.

Adopted by the Board of Supervisors of the County of Alameda, State of California, on the 21st day of April, 2020, by at least four-fifths vote, by the following called vote:

AYES:          Supervisors Carson, Chan, Haggerty, Miley, & President Valle – 5

NOES:          NONE

EXCUSED:    NONE

RICHARD VALLE
President of the Board of Supervisors

ATTEST:

Clerk of the Board of Supervisors,

By: _____
        Deputy Clerk

APPROVED AS TO FORM:
DONNA R. ZIEGLER, COUNTY COUNSEL

By: _____
        Heather Littlejohn
        Deputy County Counsel

13

# EXHIBIT H

Chapter 6.120 - TEMPORARY RESIDENTIAL EVICTION MORATORIUM FOR THE INCORPORATED AND UNINCORPORATED AREAS OF THE COUNTY DUE TO COVID-19

**Sections:**

---

*Footnotes:*

*--- (12) ---*

**Editor's note—** <u>Ord. No. 2020-32</u> , § 2, adopted June 23, 2020, amended Chapter 6.120 in its entirety to read as herein set out. Former Chapter 6.120, §§ 6.120.010—6.120.080, pertained to temporary eviction moratorium for the incorporated and unincorporated areas of the county due to COVID-19, and derived from <u>Ord. No. 2020-17</u> , adopted March 13, 2020 and <u>Ord. No. 2020-21</u> , adopted April 7, 2020.

---

6.120.010 - Purpose, intent and scope.

The ordinance codified in this chapter is enacted to promote the public peace, health, welfare and safety. The purposes of this chapter are to reduce the transmission of COVID-19, to promote housing stability during the COVID-19 pandemic and to prevent avoidable homelessness. This chapter is necessary to promote the public peace, health, welfare and safety because the COVID-19 pandemic has the potential for destabilizing the residential market for the reasons described in the findings made by the Board of Supervisors in enacting this chapter. This chapter is intended to enable tenants, homeowners, and mobilehome owners in the county to shelter-in-place and avoid displacement during the COVID-19 pandemic. This chapter is also intended to enable tenants, homeowners, and mobilehome owners in the county whose income, medical expenses, or child care needs have been affected by the COVID-19 pandemic to be temporarily protected from eviction for non-payment of rent or mortgage payments. This chapter is intended to reduce the risk that these events will lead to anxiety, stress and potential homelessness for the affected residents and their communities thereby serving the public peace, health, safety, and public welfare. The temporary moratorium on evictions by this chapter is created pursuant to the county's emergency authority pursuant to Government Code Section 8634 and its general police powers to protect the health, safety, and welfare of its residents, in addition to any rights and obligations under state and federal law.

( <u>Ord. No. 2020-32</u> , § 2, 6-23-20)

6.120.020 - Definitions.

The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

"Affected resident" shall mean a tenant, homeowner or their household, that has experienced a qualifying loss.

"Homeowner" means the owner or owners of a residential unit subject to a mortgage or similar loan secured by the residential unit. Homeowner includes the owner of a mobilehome.

"Household" means all of the individuals residing in the residential unit with the tenant(s) and/or homeowner(s).

"Landlord" means an owner, lessor, or sublessor who receives or is entitled to receive rent for the use and/or occupancy of any residential unit by a tenant and the agent, representative, or successor of any of the foregoing. Landlord includes a mobilehome park owner leasing spaces to a mobilehome owner.

"Lender" means the mortgagee of a purchase money or similar mortgage, or the holder or beneficiary of a loan secured by one or more residential units, which person has the right to mortgage or similar payments from the homeowner as mortgagor, including a loan servicer, and the agent, representative, or successor of any of the foregoing.

"Local health emergency" means the state of emergency declared by the County of Alameda or its authorized officers related to COVID-19 including but not limited to declarations by the public health officer or the Board of Supervisors.

"Mobilehome" means a structure transportable in one or more sections, designed and equipped to contain not more than one dwelling unit, to be used with or without a foundation system.

"Notice of termination" means the notice informing a tenant or homeowner of the termination of their right to occupy the residential unit in accordance with applicable California law, including but not limited to a three- or 30-day notice to pay or quit.

"Person" means an individual, firm, association, partnership, joint venture, corporation or any entity, public or private in nature.

"Qualifying loss" means substantial loss in income, substantial out-of-pocket medical expenses or extraordinary child care needs, resulting in a substantial hardship or inability to make rent or mortgage payments when due, as a result of the COVID-19 pandemic, including but not limited to any COVID-19 related declaration of the county public health officer, or other local, state or federal authority.

"Resident" shall mean a tenant, homeowner or their household. This term includes but is not limited to affected residents.

"Residential unit" means a structure or mobilehome or the portion thereof that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household, and which person or household pays rent to a landlord or mortgage payments to a lender for the use and/or occupancy of the structure or mobilehome, or the space where a mobilehome is located, for periods of thirty (30) days or more whether or not the residential use is a conforming use permitted under the Alameda County Ordinance Code, applicable city's municipal code, or other applicable regulations.

"Tenant" means a residential tenant, subtenant, lessee, sublessee, or any other person entitled by written or oral rental agreement, or by sufferance, to use or occupancy of a residential unit.

( Ord. No. 2020-32 , § 2, 6-23-20)

**6.120.030 - Moratorium on evictions during local health emergency.**

    A.  Beginning on the effective date of this ordinance and expiring sixty (60) days after the expiration of the local health emergency but not sooner than sixty (60) days after December 31, 2020, the county hereby

places a moratorium on all evictions from residential units in the unincorporated and incorporated areas of the county, subject to the exceptions stated below.

B. No landlord or lender may evict a resident, or otherwise require a resident to vacate a residential unit, or retaliate against a resident, while this section is in effect.

C. Violation of this chapter is an affirmative defense to any unlawful detainer action or other proceeding to recover possession of a residential unit.

D. It shall be an absolute defense to any unlawful detainer action against a resident that the notice of termination was served or expired, or that the complaint was filed or served, on or after March 24, 2020 and on or before sixty (60) days after the expiration of the local health emergency or sixty (60) days after December 31, 2020, whichever is later, subject to the exceptions stated below. This defense may be raised at any time, including after the end of the local health emergency and after the expiration of the ordinance codified in this chapter stated in Section III of said ordinance, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

E. Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section.

F. Exceptions. The landlord or lender claiming that their proposed eviction is not prohibited by this chapter shall have the burden of proving that one or more of the exceptions applies. The provisions of this section shall not apply in the following circumstances, which must be stated by in the notice of termination and the complaint as the grounds for the eviction:

   1. A Landlord is taking the residential unit off of the residential rental market in accordance with Government Code Section 7060, et seq. (Ellis Act) and in compliance with any applicable local ordinances.

   2. The residential unit must be vacated to comply with an order issued by a government agency or court.

   3. Continued occupancy by the resident poses an imminent threat to health or safety. For the purposes of this chapter, the basis for this exception cannot be the resident's COVID-19 illness or exposure to COVID-19, whether actual or suspected.

( Ord. No. 2020-32 , § 2, 6-23-20; Ord. No. 2020-39 , § 2, 7-14-20; Ord. No. 2020-41 , § 2, 8-4-20)


6.120.040 - Moratorium on evictions based on nonpayment caused by COVID-19.

A. Beginning on the effective date of the ordinance codified in this chapter and expiring sixty (60) days after the expiration of the local health emergency but not sooner than sixty (60) days after December 31, 2020, the county hereby places a moratorium on evictions from residential units in the unincorporated and incorporated areas of the county resulting from a substantial loss of income, substantial out-of-pocket medical expenses, or extraordinary child care needs, any of which are caused by COVID-19.

B. No landlord or lender may evict an affected resident, or otherwise require an affected resident to vacate a residential unit or retaliate against an affected resident for nonpayment of rent or mortgage payments or for nonpayment of late fees, fines or interest based on nonpayment, while this chapter is in effect.

C. Violation of this chapter is an affirmative defense to any unlawful detainer action or other proceeding to rec possession of a residential unit.

D. It shall be an absolute defense to any unlawful detainer action against an affected resident based on a failure to timely make rent or mortgage payments that the notice of termination was served or expired, or that the complaint was filed or served, on or after March 24, 2020 and on or before sixty (60) days after the expiration of the local health emergency or sixty (60) days after December 31, 2020, whichever is later. This defense may be raised at any time, including after the end of the local health emergency and after the expiration of the ordinance codified in this chapter stated in Section III of said ordinance, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

E. Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section, if the rent was late due to a qualifying loss.

( Ord. No. 2020-32 , § 2, 6-23-20; Ord. No. 2020-39 , § 2, 7-14-20; Ord. No. 2020-41 , § 2, 8-4-20)

6.120.050 - Procedures.

A. A landlord or lender must provide a copy of this chapter and the following notice in at least 12-point font to residents when serving residents with a notice of termination:

"NOTICE: THE COUNTY OF ALAMEDA HAS ADOPTED A TEMPORARY MORATORIUM ON EVICTIONS DURING THE COVID-19 LOCAL HEALTH EMERGENCY INCLUDING EVICTIONS FOR NONPAYMENT OF RENT OR MORTGAGE PAYMENTS DUE TO COVID-19. A COPY OF THE COUNTY ORDINANCE IS ATTACHED. UPDATED INFORMATION MAY BE AVAILABLE FROM THE COUNTY'S HOUSING AND COMMUNITY DEVELOPMENT DEPARTMENT AT jennifer.pearce@acgov.org or 510670-6474."

B. If the residential unit is located within the jurisdictional limits of a city which also has an ordinance protecting residents from evictions due to COVID-19 or during the COVID-19 emergency, the landlord or lender must also provide a copy of the city's ordinance with the notice of termination.

C. To the extent feasible, affected residents should make a reasonable effort to notify their landlord or lender on or before the day rent or mortgage payment is due, or as soon as possible thereafter, of their potential inability to make a timely rent or mortgage payment due to a qualifying loss.

( Ord. No. 2020-32 , § 2, 6-23-20)

6.120.060 - Documentation—Required only for COVID-19 based eviction protections.

A. The provisions of this section apply only when an affected resident is seeking protection from eviction pursuant to Section 6.120.040 of this chapter due to a substantial loss in income, substantial out-of-pocket medical expenses or extraordinary child care needs, resulting in a substantial hardship or inability to make rent or mortgage payments when due, as a result of the COVID-19 pandemic, including but not

limited to any COVID-19 related declaration of the county public health officer, or other local, state or federal authority. Documentation is not required when a resident is seeking protection from eviction pursuant to Section 6.120.030 of this chapter.

B.  An affected resident's qualifying loss must be documented.

C.  An affected resident shall retain such documentation until such time as any back rent owed due to the qualifying loss is repaid or forgiven.

D.  An affected resident is not required to provide such documentation to the landlord or lender in advance to qualify for the protections of this chapter. However, upon the request of a landlord or lender, an affected resident shall provide such documentation to the landlord or lender within forty-five (45) days after the request or within thirty (30) days after the county's shelter in place order is lifted, whichever is later.

E.  The following documents shall create a rebuttable presumption that the affected resident has a qualifying loss:

1.  Letter from employer or other source of income citing COVID-19 as a reason for reduced work hours, termination, or other substantial reduction in pay;

2.  Employer paycheck stubs showing a reduction in pay following the COVID-19 outbreak;

3.  Bank statements showing a reduction in income following the COVID-19 outbreak;

4.  Documentation showing payment of substantial out-of-pocket medical expenses caused by COVID-19;

5.  Documentation showing the closure of a school or child care facility where a child in the affected resident's care would otherwise be present during the affected resident's working hours; or

6.  A sworn statement by the affected resident attesting to the existence of their qualifying loss, including facts sufficient to demonstrate the qualifying loss, and attesting to their inability to gather the documentation described in subsections 1—5 above.

F.  An affected resident may provide other documentation to demonstrate a substantial hardship or inability to make timely rent or mortgage payments caused by COVID-19.

G.  Any confidential medical information or other information protected by the affected resident's rights to privacy shall be held confidential by the landlord or lender and shall not be reproduced or distributed unless otherwise authorized or required by law.

( Ord. No. 2020-32 , § 2, 6-23-20)


6.120.070 - Retaliation prohibited.

A landlord or lender shall not retaliate against a resident for exercising their rights under this chapter, including but not limited to shutting off any utilities or reducing services or amenities to which the residents would otherwise be entitled.

( Ord. No. 2020-32 , § 2, 6-23-20)


6.120.080 - No waiver.

The protections provided by this chapter shall be available to all residents, regardless of any agreement wherein a resident waives or purports to waive their rights under this chapter.

( Ord. No. 2020-32 , § 2, 6-23-20)

6.120.090 - Repayment of back rent.

A. Nothing in this chapter relieves an affected resident of liability for unpaid rent or mortgage payments that became due during the effective periods of Sections 6.120.030(A) or (D) or 6.120.040(A) or (D) of this chapter.

B. In any action to recover possession of a residential unit from a tenant based on nonpayment of rent, it shall be an affirmative defense that the rent became due during the effective periods of Sections 6.120.030(A) or (D) or 6.120.040(A) or (D) of this chapter. This defense may be raised at any time, including after the end of the local health emergency and after the expiration of this chapter stated in Section III of the ordinance codified in this chapter.

C. A Landlord and tenant may mutually agree to a repayment plan for unpaid back rent that came due during the effective periods of Sections 6.120.030(A) or (D) or 6.120.040(A) or (D) of this chapter. Such plans remain subject to the limitation on evictions based on back rent owed pursuant to subsection B, above. At a minimum, a payment plan:

   1. May waive portions of the tenant's rental obligation and may grant the tenant additional time to pay beyond the minimum requirements of this chapter.

   2. Should not require the tenant's agreement to change lease terms as a condition of the payment plan.

   3. May allow partial rent payments or temporarily discounted rent, without affecting the maximum allowable base rent that the landlord may charge at the close of the payment plan period.

   4. May not declare a tenant's failure to comply with a payment plan a basis for eviction prior to the end of the repayment deferral period.

D. If a tenant does not repay the rent that became due during the applicable effective periods of Sections 6.120.030(A) or (D) or 6.120.040(A) or (D) within twelve (12) months from the date the rent became due, a landlord may collect the back rent as any other consumer debt. Such back rent may not be collected through the unlawful detainer process.

E. In any action to recover possession of a residential unit, it shall be an affirmative defense if the landlord or lender impeded the affected resident's effort to pay by refusing to accept payments on behalf of affected resident from a third party, or refusing to provide a W-9 form or other necessary documentation for the affected resident to receive financial assistance from a government agency, non-profit organization, or other third party. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this chapter stated in Section III of the ordinance codified in this chapter.

( Ord. No. 2020-32 , § 2, 6-23-20)

6.120.100 - Violation and remedies.

A. Affirmative Defense. Each landlord or lender that seeks to recover possession of a residential unit must comply with this chapter. Non-compliance with any applicable provision of this chapter shall constitute an affirmative defense for a resident against any unlawful detainer action under California Code of Civil Procedure Section 1161, termination of tenancy in a mobilehome park under the Mobilehome Residency Law (see Civil Code Section 798.55, et seq.), petition for writ of possession, or any other action to recover possession of the residential unit or to otherwise cause residents to vacate the residential unit.

B. Misdemeanor. Any person violating any of the provisions of this chapter is guilty of a misdemeanor. Each person is guilty of a separate offense for each and every day during any portion of which any violation of any provision of this chapter is committed, continued or allowed in conjunction with the landlord's or lender's activities with respect to the residential unit, residents and households and is punishable accordingly. For purposes of this section, each and every day of violation includes each day on which a failure to comply with this chapter continues. No proof of knowledge, intent, or other mental state is required to establish a violation.

C. Civil Remedies.

1. Any landlord or lender that willfully fails to comply with this chapter is subject to a fine of $1,000.00 per violation. Each person is liable for separate violation for each and every day during any portion of which any violation of any provision of this chapter is committed, continued or allowed in conjunction with the landlord's or lender's activities with respect to the residential unit, residents, and resident households. For purposes of this section, each and every day of the violation includes each day on which a failure to comply with this chapter continues. No proof of knowledge, intent, or other mental state is required to establish a violation.

2. Any landlord or lender that willfully fails to comply with this chapter may be subject to civil proceedings for displacement of residents initiated by the county or the affected residents.

3. Any person found to have willfully violated this chapter shall be subject to appropriate injunctive relief and shall be liable to the resident for damages, costs, and reasonable attorneys' fees.

4. Nothing herein shall be deemed to interfere with the right of a Landlord to file an action against a resident or non-resident third party for damage done to said residential unit. Nothing herein is intended to limit the damages recoverable by any party through a private action.

D. Cumulative Remedies. The remedies provided by this chapter are cumulative and in addition to any other remedies available at law or in equity.

( Ord. No. 2020-32 , § 2, 6-23-20)


6.120.110 - Application to cities.

A. The regulations in this chapter shall apply to cities within the County of Alameda and to the unincorporated area of the county, subject to subsections B, C and D below.

B. If the governing body of a city has enacted an ordinance that has stronger protections for tenants during the COVID-19 emergency, the city may apply its ordinance in lieu of the county ordinance, to the extent

its ordinance is stronger, subject to the requirements of this section. The city must duly affirm or declare in writing its intent to opt out of the county ordinance. The writing must enumerate the specific provisions of the county's ordinance from which the city intends to opt out and must include a finding that the city ordinance is stronger.

C.   To the extent the city ordinance is not stronger, the county ordinance protecting tenants shall apply despite contrary provisions or silence on the subject in the city ordinance.

D.   To the extent the city's ordinance is stronger for tenants but not for homeowners, the provisions of the county ordinance protecting homeowners shall apply despite contrary provisions or silence on the subject in a city's ordinance.

( Ord. No. 2020-32 , § 2, 6-23-20)

6.120.120 - Severability.

The provisions of this chapter are hereby declared to be severable. If any provision, clause, word, sentence or paragraph of this chapter or the application thereof to any person or circumstances shall be held invalid, such invalidity shall not affect the other provisions or application of this chapter.

( Ord. No. 2020-32 , § 2, 6-23-20)

ORDINANCE NO. O-2020-32

**AN ORDINANCE AMENDING CHAPTER 6.120 OF THE ALAMEDA COUNTY ORDINANCE CODE TO MODIFY THE TEMPORARY MORATORIUM ON RESIDENTIAL EVICTIONS DUE TO AND DURING THE COVID-19 EMERGENCY IN THE COUNTY OF ALAMEDA**

### SECTION I

In enacting this ordinance, the Board of Supervisors of the County of Alameda, State of California makes the following findings:

1. On March 4, 2020, the Governor of the State of California issued a Proclamation of a State of Emergency in the State of California related to the novel coronavirus that emerged in 2019 ("COVID-19"); and

2. On March 10, 2020, the County of Alameda ("County") ratified the County Health Officer's declaration of a local health emergency ("Emergency Declaration") as a result of COVID-19; and

3. On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a pandemic; and

4. As of March 15, 2020, all eighteen (18) school districts within the County have suspended in-class instruction or closed all schools and as a result, parents and guardians are missing work to care for these children; and

5. On March 16, 2020, the Alameda County Sheriff's Office announced it would temporarily suspend evictions due to the COVID-19 health emergency; and

6. On March 16, 2020, the County of Alameda joined Contra Costa, Marin, San Francisco, San Mateo, and Santa Clara counties and the City of Berkeley on an order directing their respective residents to shelter at home for three weeks beginning March 17 ("Shelter-in-Place Order"). The Shelter-in-Place Order also requires all businesses except essential businesses as described in the order to cease all activities at facilities located within the County except minimum basic operations and prohibits all public and private gatherings of any number of people except for limited purposes as well as all non-essential travel. These restrictions will reduce economic activity and as a result, household incomes during this time; and

7. Because of these impacts, many employers have laid off or will need to lay off employees, working County residents with children may be compelled not to work in order to provide care for their child(ren), and many County residents who are working and become ill due to COVID-19, or who must self-quarantine due to COVID-19 because they have been exposed to COVID-19, do not have paid sick leave; and

8. Those residents financially impacted due to COVID-19 may not be able to make timely rent or mortgage payments or be forced to choose between paying housing expenses and having sufficient funds for food, medical care or other necessities for themselves and their families; and

9. On March 14, 2020, the Alameda County Superior Court declared that all unlawful detainer mandatory settlement conferences for jury trials and jury trials currently set between Monday, March 16, and Friday, April 3, 2020 will be continued on a rolling basis for 3 weeks from the currently scheduled trial date, and, on March 16, ordered the stay of all evictions pending between Tuesday, March 17, 2020, up to and through Wednesday, April 8, 2020, the anticipated reopening of the Court, among other significant reductions in court operations; and

10. On March 18, 2020, the federal government announced temporary suspensions of certain foreclosures and related evictions to promote housing stability during the COVID-19 pandemic; and

11. As of March 18, 2020, there were 31 confirmed cases of COVID-19 in the County, as of March 26, 2020, there were 135 confirmed cases and two deaths, as of April 14, 2020 there were 962 confirmed cases and 36 deaths, and the number of documented cases is likely to increase as more effective, accessible, and proactive testing methods are introduced and community spread continues; and

12. As the response to the public health emergency has escalated, many County residents have been economically impacted from COVID-19, including, but not limited to lost business through the hospitality, retail, entertainment, and gig economies. Both large and smaller events across the Bay Area are being cancelled or postponed due to the Shelter-in-Place Order and recommendations at all levels of government to cancel large gatherings amid concerns over spread of the COVID-19. These cancellations and postponements cause loss in revenue for the event, as well as surrounding local businesses that rely on such events to bring in patrons to their businesses; and

13. After the World Health Organization officially declared the spread of COVID-19 a pandemic on March 11, 2020, stocks entered a bear market and fell more than 20%, and in the week ending March 14, 2020, workers filed 281,000 unemployment claims, an increase of 70,000 from the previous week; and

14. Displacement through eviction destabilizes the living situation of tenants and homeowners and impacts the health of County residents by uprooting children from schools, disrupting the social ties and networks that are integral to citizens' welfare and the stability of communities.  It also creates undue hardship for tenants and homeowners through additional relocation costs, stress and anxiety, and the threat of homelessness due to the lack of alternative housing; and

15. COVID-19 poses a unique threat to people experiencing homelessness, who lack resources for sanitation, stay in overcrowded shelters, encampments, vehicles and other places, and already have a high rate of poorly treated chronic illnesses. In 2019, the Alameda County Point in Time Count estimated 349 people are homeless in the unincorporated area, an increase of 59% since the last count in 2017. The countywide increase was 47%; and

16. Such displacement, destabilization and any increase in homelessness would increase the risk of transmission of COVID-19 throughout the County by rendering it difficult or impossible for individuals to shelter-in-place and to observe social distancing and hygiene practices that are recommended to reduce the transmission of COVID-19; and

17. Pursuant to existing state law, specified evictions during declared states of emergency are illegal, specifically, Penal Code section 396, subdivision (f) provides: "It is unlawful for a person, business, or other entity to evict any residential tenant of residential housing after the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any city, county, or city and county, and for a period of 30 days following that proclamation or declaration, or any period that the proclamation or declaration is extended by the applicable authority and rent or offer to rent to another person at a rental price greater than the evicted tenant could be charged under this section. It shall not be a violation of this subdivision for a person, business, or other entity to continue an eviction process that was lawfully begun prior to the proclamation or declaration of emergency"; and

18. Pursuant to Executive Order N-28-20 issued by the Governor of the State of California on March 16, 2020, the protections afforded by Penal Code section 396, subdivision (f) are in effect through May 31, 2020; accordingly, no new evictions of residential tenants meeting the conditions specified may be pursued until May 31, 2020 at the earliest, as a matter of state law; and

19. Pursuant to Executive Order N-28-20, any provision of state law that would preempt or otherwise restrict a local government's exercise of its police power to impose substantive limitations on evictions due to specified financial burdens caused by COVID-19 are suspended; and

20. On March 19, 2020, the Governor issued Executive Order N-33-20 directing all residents in the State of California to stay at home except for essential activities during the COVID-19 emergency; and

21. On April 6, 2020, the Judicial Council of California issued emergency rules suspending court proceedings for unlawful detainer and judicial foreclosures until 90 days after the Governor declares that the state of emergency related to the COVID-19 pandemic is lifted; and

22. The County, pursuant to its police powers, has broad authority to maintain the public peace, health, safety and welfare for its residents; and

3

23. Pursuant to Government Code section 8634, during a local emergency, the Board of Supervisors may promulgate orders and regulations necessary to provide for the protection of life and property; and

24. The California Attorney General has opined that when a county has declared a local emergency within its jurisdictional boundaries in an area that includes both unincorporated and incorporated territory, the county may adopt emergency rules and regulations pursuant to Government Code section 8634 that will be effective in both unincorporated and incorporated areas (62 Ops. Cal. Atty. Gen. 701 (1979)); and

25. COVID-19 continues to spread rapidly throughout the community without regard to jurisdictional boundaries; and

26. Both the County's Emergency Declaration and Shelter-in-Place Order apply throughout the County, to both the unincorporated area of the County and within each incorporated city in the County; and

27. This ordinance is a temporary moratorium intended to promote the public peace, health, welfare and safety by reducing the public's exposure to the transmission of COVID-19 by enabling tenants and homeowners throughout the County whose income, medical expenses or child care needs are affected due to COVID-19 to remain in their homes in accordance with the Shelter-in-Place Order; and

28. This ordinance is also intended to promote stability within the residential market in the County, including both the unincorporated and incorporated areas, during the COVID-19 pandemic outbreak and to prevent avoidable homelessness, thereby promoting the public peace, health, welfare and safety by reducing the public's exposure to the transmission of COVID-19; and

29. During the COVID-19 pandemic outbreak, affected tenants and homeowners who have lost available income due to the impact on the economy or their out-of-pocket medical or child care expenses may be at risk of homelessness if they are evicted for non-payment as they will have little or no available income and be unable to secure other housing if evicted; and

30. This ordinance is not subject to the California Environmental Quality Act ("CEQA") pursuant to CEQA Guidelines Section 15061(b)(3) (because it can be seen with certainty that there is no possibility that the ordinance may have a significant effect on the environment) and pursuant to Section 15378, which defines a "project" under CEQA (the ordinance is not a "project" because it has no potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment).

## SECTION II

NOW, THEREFORE, the Board of Supervisors of the County of Alameda ordains as follows:

Chapter 6.120 of the Alameda County Ordinance Code is hereby amended to read in its entirety as follows:

**Chapter 6.120 – Temporary Residential Eviction Moratorium for the Incorporated and Unincorporated Areas of the County Due to and During the COVID-19 Emergency.**

### 6.120.010 - Purpose, Intent and Scope.

This ordinance is enacted to promote the public peace, health, welfare and safety.  The purposes of this ordinance are to reduce the transmission of COVID-19, to promote housing stability during the COVID-19 pandemic and to prevent avoidable homelessness. This ordinance is necessary to promote the public peace, health, welfare and safety because the COVID-19 pandemic has the potential for destabilizing the residential market for the reasons described in the findings made by the Board of Supervisors in enacting this ordinance. This ordinance is intended to enable tenants, homeowners, and mobilehome owners in the County to shelter-in-place and avoid displacement during the COVID-19 pandemic. This ordinance is also intended to enable tenants, homeowners, and mobilehome owners in the County whose income, medical expenses, or child care needs have been affected by the COVID-19 pandemic to be temporarily protected from eviction for non-payment of rent or mortgage payments. This ordinance is intended to reduce the risk that these events will lead to anxiety, stress and potential homelessness for the affected residents and their communities thereby serving the public peace, health, safety, and public welfare. The temporary moratorium on evictions by this ordinance is created pursuant to the County's emergency authority pursuant to Government Code section 8634 and its general police powers to protect the health, safety, and welfare of its residents, in addition to any rights and obligations under state and federal law.

### 6.120.020 - Definitions.

A. "Affected Resident" shall mean a Tenant, Homeowner or their Household, that has experienced a Qualifying Loss.

B. "Homeowner" means the owner or owners of a Residential Unit subject to a mortgage or similar loan secured by the residential unit.  Homeowner includes the owner of a Mobilehome.

C. "Household" means all of the individuals residing in the Residential Unit with the Tenant(s) and/or Homeowner(s).

D. "Landlord" means an owner, lessor, or sublessor who receives or is entitled to receive rent for the use and/or occupancy of any Residential Unit by a Tenant and the agent,

5

representative, or successor of any of the foregoing.  Landlord includes a Mobilehome park owner leasing spaces to a Mobilehome owner.

E.  "Lender" means the mortgagee of a purchase money or similar mortgage, or the holder or beneficiary of a loan secured by one or more Residential Units, which person has the right to mortgage or similar payments from the Homeowner as mortgagor, including a loan servicer, and the agent, representative, or successor of any of the foregoing.

F.  "Local Health Emergency" means the state of emergency declared by the County of Alameda or its authorized officers related to COVID-19 including but not limited to declarations by the Public Health Officer or the Board of Supervisors.

G.  "Mobilehome" means a structure transportable in one or more sections, designed and equipped to contain not more than one dwelling unit, to be used with or without a foundation system.

H.  "Notice of Termination" means the notice informing a Tenant or Homeowner of the termination of their right to occupy the Residential Unit in accordance with applicable California law, including but not limited to a 3- or 30-day notice to pay or quit.

I.  "Person" means an individual, firm, association, partnership, joint venture, corporation or any entity, public or private in nature.

J.  "Qualifying Loss" means substantial loss in income, substantial out-of-pocket medical expenses or extraordinary child care needs, resulting in a substantial hardship or inability to make rent or mortgage payments when due, as a result of the COVID-19 pandemic, including but not limited to any COVID-19 related declaration of the County Public Health Officer, or other local, state or federal authority.

K.  "Resident" shall mean a Tenant, Homeowner or their Household.  This term includes but is not limited to Affected Residents.

L.  "Residential Unit" means a structure or Mobilehome or the portion thereof  that is used as a home, residence, or sleeping place by one person who maintains a household or by two or more persons who maintain a common household, and which person or household pays rent to a Landlord or mortgage payments to a Lender for the use and/or occupancy of the structure or Mobilehome, or the space where a Mobilehome is located, for periods of thirty (30) days or more whether or not the residential use is a conforming use permitted under the Alameda County Ordinance Code, applicable city's municipal code, or other applicable regulations.

M.  "Tenant" means a residential tenant, subtenant, lessee, sublessee, or any other person entitled by written or oral rental agreement, or by sufferance, to use or occupancy of a Residential Unit.

**6.120.030 - <u>Moratorium on Evictions During Local Health Emergency</u>.**

A. Beginning on the effective date of this ordinance and continuing until July 28, 2020, the County hereby places a moratorium on all evictions from Residential Units in the unincorporated and incorporated areas of the County, subject to the exceptions stated below.

B. No Landlord or Lender may evict a Resident, or otherwise require a Resident to vacate a Residential Unit, or retaliate against a Resident, while this section is in effect.

C. Violation of this ordinance is an affirmative defense to any unlawful detainer action or other proceeding to recover possession of a Residential Unit.

D. It shall be an absolute defense to any unlawful detainer action against a Resident that the Notice of Termination was served or expired, or that the complaint was filed or served, on or after April 21, 2020 and on or before July 28, 2020, subject to the exceptions stated below. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

E. Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section.

F. Exceptions. The Landlord or Lender claiming that their proposed eviction is not prohibited by this ordinance shall have the burden of proving that one or more of the exceptions applies. The provisions of this section shall not apply in the following circumstances, which must be stated by in the Notice of Termination and the complaint as the grounds for the eviction:

1) A Landlord is taking the Residential Unit off of the residential rental market in accordance with Government Code sections 7060, *et seq.* (Ellis Act) and in compliance with any applicable local ordinances.

2) The Residential Unit must be vacated to comply with an order issued by a government agency or court.

3) Continued occupancy by the Resident poses an imminent threat to health or safety. For the purposes of this ordinance, the basis for this exception cannot be the Resident's COVID-19 illness or exposure to COVID-19, whether actual or suspected.

**6.120.040 - <u>Moratorium on Evictions Based on Nonpayment Caused by COVID-19</u>.**

A. Beginning on the effective date of this ordinance and continuing until May 31, 2020, the County hereby places a moratorium on evictions from Residential Units in the unincorporated and incorporated areas of the County resulting from a substantial loss of

income, substantial out-of-pocket medical expenses, or extraordinary child care needs, any of which are caused by COVID-19.

B.  No Landlord or Lender may evict an Affected Resident, or otherwise require an Affected Resident to vacate a Residential Unit or retaliate against an Affected Resident for nonpayment of rent or mortgage payments or for nonpayment of late fees, fines or interest based on nonpayment, while this ordinance is in effect.

C.  Violation of this ordinance is an affirmative defense to any unlawful detainer action or other proceeding to recover possession of a Residential Unit.

D.  It shall be an absolute defense to any unlawful detainer action against an Affected Resident based on a failure to timely make rent or mortgage payments that the Notice of Termination was served or expired, or that the complaint was filed or served, on or after March 24, 2020 and on or before May 31, 2020. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

E.  Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section, if the rent was late due to a Qualifying Loss.

F.  If the Governor of the State of California extends the protections of Executive Order N-28-20, Paragraph 2, beyond May 31, 2020, the May 31, 2020 dates in subsections A and D of this section shall be automatically extended to the expiration date of said Paragraph 2.

**6.120.050 - Procedures.**

A.  A Landlord or Lender must provide a copy of this ordinance and the following notice in at least 12-point font to Residents when serving Residents with a Notice of Termination:

"NOTICE: THE COUNTY OF ALAMEDA HAS ADOPTED A TEMPORARY MORATORIUM ON EVICTIONS DURING THE COVID-19 LOCAL HEALTH EMERGENCY INCLUDING EVICTIONS FOR NONPAYMENT OF RENT OR MORTGAGE PAYMENTS DUE TO COVID-19.   A COPY OF THE COUNTY ORDINANCE IS ATTACHED.   UPDATED INFORMATION MAY BE AVAILABLE FROM THE COUNTY'S HOUSING AND COMMUNITY DEVELOPMENT DEPARTMENT AT jennifer.pearce@acgov.org or 510-670-6474."

B.  If the Residential Unit is located within the jurisdictional limits of a city which also has an ordinance protecting residents from evictions due to COVID-19 or during the COVID-19 emergency, the Landlord or Lender must also provide a copy of the city's ordinance with the Notice of Termination.

8

C. To the extent feasible, Affected Residents should make a reasonable effort to notify their Landlord or Lender on or before the day rent or mortgage payment is due, or as soon as possible thereafter, of their potential inability to make a timely rent or mortgage payment due to a Qualifying Loss.

**6.120.060 - <u>Documentation – Required Only for COVID-19 Based Eviction Protections</u>.**

A. The provisions of this section apply only when an Affected Resident is seeking protection from eviction pursuant to Section 6.120.040 of this ordinance due to a substantial loss in income, substantial out-of-pocket medical expenses or extraordinary child care needs, resulting in a substantial hardship or inability to make rent or mortgage payments when due, as a result of the COVID-19 pandemic, including but not limited to any COVID-19 related declaration of the County Public Health Officer, or other local, state or federal authority. Documentation is not required when a resident is seeking protection from eviction pursuant to Section 6.120.030 of this ordinance.

B. An Affected Resident's Qualifying Loss must be documented.

C. An Affected Resident shall retain such documentation until such time as any back rent owed due to the Qualifying Loss is repaid or forgiven.

D. An Affected Resident is not required to provide such documentation to the Landlord or Lender in advance to qualify for the protections of this ordinance. However, upon the request of a Landlord or Lender, an Affected Resident shall provide such documentation to the Landlord or Lender within forty-five (45) days after the request or within thirty (30) days after the County's shelter in place order is lifted, whichever is later.

E. The following documents shall create a rebuttable presumption that the Affected Resident has a Qualifying Loss:

   1) Letter from employer or other source of income citing COVID-19 as a reason for reduced work hours, termination, or other substantial reduction in pay;

   2) Employer paycheck stubs showing a reduction in pay following the COVID-19 outbreak;

   3) Bank statements showing a reduction in income following the COVID-19 outbreak;

   4) Documentation showing payment of substantial out-of-pocket medical expenses caused by COVID-19; or

   5) Documentation showing the closure of a school or child care facility where a child in the Affected Resident's care would otherwise be present during the Affected Resident's working hours; or

9

6) A sworn statement by the Affected Resident attesting to the existence of their Qualifying Loss, including facts sufficient to demonstrate the Qualifying Loss, and attesting to their inability to gather the documentation described in (1)-(5) above.

F. An Affected Resident may provide other documentation to demonstrate a substantial hardship or inability to make timely rent or mortgage payments caused by COVID-19.

G. Any confidential medical information or other information protected by the Affected Resident's rights to privacy shall be held confidential by the Landlord or Lender and shall not be reproduced or distributed unless otherwise authorized or required by law.

**6.120.070 - <u>Retaliation Prohibited</u>.**

A Landlord or Lender shall not retaliate against a Resident for exercising their rights under this ordinance, including but not limited to shutting off any utilities or reducing services or amenities to which the Residents would otherwise be entitled.

**6.120.080 - <u>No Waiver</u>.**

The protections provided by this ordinance shall be available to all Residents, regardless of any agreement wherein a Resident waives or purports to waive their rights under this ordinance.

**6.120.090 - <u>Repayment of Back Rent</u>.**

A. Nothing in this ordinance relieves an Affected Resident of liability for unpaid rent or mortgage payments that became due during the effective periods of Sections 6.120.030.A. or D. or 6.120.040.A. or D. of this ordinance.

B. In any action to recover possession of a Residential Unit from a Tenant based on nonpayment of rent, it shall be an affirmative defense that the rent became due during the effective periods of Sections 6.120.030.A. or D. or 6.120.040.A. or D. of this ordinance. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III.

C. A Landlord and Tenant may mutually agree to a repayment plan for unpaid back rent that came due during the effective periods of Sections 6.120.030.A. or D. or 6.120.040.A. or D. of this ordinance. Such plans remain subject to the limitation on evictions based on back rent owed pursuant to Subsection B, above.  At a minimum, a payment plan:

1) May waive portions of the Tenant's rental obligation and may grant the Tenant additional time to pay beyond the minimum requirements of this ordinance.

2) Should not require the Tenant's agreement to change lease terms as a condition of the payment plan.

3) May allow partial rent payments or temporarily discounted rent, without affecting the maximum allowable base rent that the Landlord may charge at the close of the payment plan period.

4) May not declare a Tenant's failure to comply with a payment plan a basis for eviction prior to the end of the repayment deferral period.

D. If a Tenant does not repay the rent that became due during the applicable effective periods of Sections 6.120.030.A. or D. or 6.120.040.A. or D. within twelve (12) months from the date the rent became due, a Landlord may collect the back rent as any other consumer debt. Such back rent may not be collected through the unlawful detainer process.

E. In any action to recover possession of a Residential Unit, it shall be an affirmative defense if the Landlord or Lender impeded the Affected Resident's effort to pay by refusing to accept payments on behalf of Affected Resident from a third party, or refusing to provide a W-9 form or other necessary documentation for the Affected Resident to receive financial assistance from a government agency, non-profit organization, or other third party. This defense may be raised at any time, including after the end of the Local Health Emergency and after the expiration of this ordinance stated in Section III.

**6.120.100 - <u>Violation and Remedies</u>.**

A. Affirmative Defense. Each Landlord or Lender that seeks to recover possession of a Residential Unit must comply with this ordinance. Non-compliance with any applicable provision of this ordinance shall constitute an affirmative defense for a Resident against any unlawful detainer action under California Code of Civil Procedure section 1161, termination of tenancy in a Mobilehome park under the Mobilehome Residency Law (see Civil Code sections 798.55, et. seq.), petition for writ of possession, or any other action to recover possession of the Residential Unit or to otherwise cause Residents to vacate the Residential Unit.

B. Misdemeanor. Any person violating any of the provisions of this ordinance is guilty of a misdemeanor. Each person is guilty of a separate offense for each and every day during any portion of which any violation of any provision of this ordinance is committed, continued or allowed in conjunction with the Landlord's or Lender's activities with respect to the Residential Unit, Residents and Households and is punishable accordingly. For purposes of this section, each and every day of violation includes each day on which a failure to comply with this ordinance continues. No proof of knowledge, intent, or other mental state is required to establish a violation.

C. Civil Remedies.

1. Any Landlord or Lender that willfully fails to comply with this ordinance is subject to a fine of $1000 per violation. Each person is liable for separate violation for each and every day during any portion of which any violation of any provision of this ordinance is committed, continued or allowed in conjunction with the Landlord's or Lender's activities

11

with respect to the Residential Unit, Residents, and Resident Households. For purposes of this section, each and every day of the violation includes each day on which a failure to comply with this ordinance continues. No proof of knowledge, intent, or other mental state is required to establish a violation.

2. Any Landlord or Lender that willfully fails to comply with this ordinance may be subject to civil proceedings for displacement of Residents initiated by the County or the Affected Residents.

3. Any person found to have willfully violated this ordinance shall be subject to appropriate injunctive relief and shall be liable to the Resident for damages, costs, and reasonable attorneys' fees.

4. Nothing herein shall be deemed to interfere with the right of a Landlord to file an action against a Resident or non-Resident third party for damage done to said Residential Unit. Nothing herein is intended to limit the damages recoverable by any party through a private action.

D. Cumulative Remedies.  The remedies provided by this ordinance are cumulative and in addition to any other remedies available at law or in equity.

## 6.120.110 - Application to Cities.

A. The regulations in this ordinance shall apply to cities within the County of Alameda and to the unincorporated area of the County, subject to subsections B, C and D below.

B. If the governing body of a city has enacted an ordinance that has stronger protections for Tenants during the COVID-19 emergency, the city may apply its ordinance in lieu of the County ordinance, to the extent its ordinance is stronger, subject to the requirements of this section. The city must duly affirm or declare in writing its intent to opt out of the County ordinance. The writing must enumerate the specific provisions of the County's ordinance from which the city intends to opt out and must include a finding that the city ordinance is stronger.

C. To the extent the city ordinance is not stronger, the County ordinance protecting Tenants shall apply despite contrary provisions or silence on the subject in the city ordinance.

D. To the extent the city's ordinance is stronger for Tenants but not for Homeowners, the provisions of the County ordinance protecting Homeowners shall apply despite contrary provisions or silence on the subject in a city's ordinance.

## 6.120.120 - Severability.

The provisions of this ordinance are hereby declared to be severable. If any provision, clause, word, sentence or paragraph of this ordinance or the application thereof to any person or

12

circumstances shall be held invalid, such invalidity shall not affect the other provisions or application of this ordinance.

### SECTION III

This ordinance shall be in force thirty (30) days after its passage and before the expiration of fifteen (15) days after its passage it shall be published once with the names of the members voting for an against the same in the Inter-City Express, a newspaper published in the County of Alameda.

Adopted by the Board of Supervisors of the County of Alameda, State of California, on the 23 day of June, 2020, by the following called vote:

AYES:            Supervisors Carson, Chan, & President Valle - 3

NOES:            None

EXCUSED:         None

ABSTAINED:   Supervisors Haggerty & Miley

RICHARD VALLE
President of the Board of Supervisors

ATTEST:

Clerk of the Board of Supervisors,

By: _____
        Deputy Clerk

APPROVED AS TO FORM:
DONNA R. ZIEGLER, COUNTY COUNSEL

By: _____
        Heather Littlejohn
        Deputy County Counsel

# EXHIBIT I

1   ANDREW M. ZACKS (SBN 147794)
2   EMILY L. BROUGH (SBN 284943)
    ZACKS, FREEDMAN & PATTERSON, PC
3   1970 Broadway, Suite 1270
    Oakland, CA 94612
4   Tel: (510) 469-0555
    az@zfplaw.com
5   emily@zpflaw.com

6   Attorneys for Plaintiffs and Petitioners
    JOHN WILLIAMS
7   ROBERT VOGEL
    SHEANNA ROGERS
8   MICHAEL LOEB
    JAQUELINE WATSON-BAKER
9   HOUSING PROVIDERS OF AMERICA

10              **IN THE UNITED STATES DISTRICT COURT**

11            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13

14  JOHN WILLIAMS, ROBERT VOGEL,          | Case Number:
    SHEANNA ROGERS,
15
    MICHAEL LOEB, JAQUELINE WATSON-       | **COMPLAINT FOR DAMAGES;**
16  BAKER, and HOUSING PROVIDERS OF       | **PETITION FOR WRIT AND REQUEST**
    AMERICA, a 501(c)(4) non-profit        | **FOR IMMEDIATE STAY**
17  Corporation,
                                           | (42 U.S.C § 1983; C.C.P § 1085)
18          Plaintiffs and Petitioners,
                                           | **DEMAND FOR JURY TRIAL**
19
20          vs.

21
    ALAMEDA COUNTY, ALAMEDA
22  COUNTY BOARD OF SUPERVISORS,
    CITY OF OAKLAND, OAKLAND CITY
23  COUNCIL and DOES 1-10,

24
            Defendants and Respondents.
25

26

27

28

*COMPLAINT FOR DAMAGES [42 U.S.C. § 1983];*
*PETITION FOR WRIT, AND DEMAND FOR JURY TRIAL*
-1-

1. Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA (collectively, "Plaintiffs"), hereby bring this complaint and petition for relief against Defendants and Respondents ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND and OAKLAND CITY COUNCIL (collectively, "Defendants"), seeking damages caused by Defendants' residential eviction moratoriums (collectively, "Moratoriums"), and an order declaring said Moratoriums invalid, illegal, and unenforceable. Plaintiffs also request an immediate stay, and injunction against the enforcement of the Moratoriums.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the controversy arises under the United States Constitution and laws and under 42 U.S.C. § 1983, as hereinafter more fully appears. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the causes of action stated herein arise out of a common nucleus of operative fact, and thus form the same case or controversy under Article III of the United States Constitution.

## DIVISIONAL ASSIGNMENT

3. Pursuant to Local Rule 3-2(c), this action arose in Alameda County, California and thus should be assigned to the Court's Oakland Division.

## VENUE

4. Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all defendants/respondents reside in this judicial district and the events giving rise to the claims occurred in this district.

## PARTIES

5. Defendant and Respondent ALAMEDA COUNTY (the "COUNTY") is a local government entity organized under the Constitution and laws of the State of California.

6. Defendant and Respondent ALAMEDA COUNTY BOARD OF SUPERVISORS

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

(the "BOARD") is a policy making, legislative, and quasi-judicial administrative body of the COUNTY.

7.     Defendant and Respondent CITY OF OAKLAND (the "CITY") is a municipal corporation in the State of California.

8.     Defendant and Respondent OAKLAND CITY COUNCIL (the "COUNCIL") is a policy making, legislative, and quasi-judicial administrative body of the CITY.

9.     Plaintiff JOHN WILLIAMS is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

10.     Plaintiff ROBERT VOGEL is an individual over the age of 18 and is a housing provider and owner of real property in the COUNTY.

11.     Plaintiff SHEANNA ROGERS is an individual over the age of 18 and is a housing provider and the owner of real property in the COUNTY.

12.     Plaintiff MICHAEL LOEB is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

13.     Plaintiff JAQUELINE WATSON-BAKER is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

14.     Plaintiff and Petitioner HOUSING PROVIDERS OF AMERICA ("HPOA") is a § 501(c)(4) nonprofit corporation. HPOA is a network of housing activists fighting to protect the legal rights of housing providers, including those in the CITY and the COUNTY. HPOA's members own rental housing in and throughout the CITY and the COUNTY, and have been directly and adversely affected by the CITY and COUNTY's residential eviction Moratoriums. All of HPOA's members are housing providers in either the CITY and/or COUNTY; all of HPOA's members have renters at their properties who are taking advantage of the CITY and COUNTY's Moratoriums, including but not limited to, refusing to pay rent for non-Covid-19 related reasons, refusing to relinquish possession, and creating nuisances and damage to HPOA's members' properties. HPOA's members have been unable to collect rent for months on end with no financial relief provided by the CITY and COUNTY, and Moratoriums' complete defense

against virtually all residential evictions have tied HPOA's members hands. HPOA's members have suffered lost rents, devalued properties, and some face impending foreclosures and bankruptcies, as a result of the Moratoriums. The harm and injury brought to HPOA's member by the Moratoriums is current, ongoing, and concrete and particularized to all HPOA's members. HPOA's efforts to remedy these injustices are central to its purpose of fighting to protect the legal rights of housing providers, including those in the CITY and COUNTY. Neither the claims asserted, nor the relief requested requires the participation of individual members in this lawsuit. HPOA has a direct and substantial interest in ensuring that Defendants' decisions are in conformity with the requirements of law, that those requirements are properly executed, and that Defendants' duties are enforced.

15.     Plaintiffs are not aware of the identities of defendants/respondents DOES 1-10, who are responsible for the acts and omissions alleged herein and that caused damage to Plaintiff; therefore, Plaintiffs will amend this Complaint when the true identities of DOES 1-10 are ascertained.

16.     Plaintiffs are informed and believe that at all times mentioned in this Complaint, all defendants/respondents were the agents or employees of their co-defendants/respondents, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

## STATEMENT OF FACTS

### A.  Background: The California Governor's Order and the COVID-19 Renter Relief Act.

17.     In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act (ESA), Gov. Code sec. 8550, et seq. On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict for nonpayment of rent due to the Covid-19 crisis. In pertinent part, that order provided:

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

[T]he statutory cause of action for unlawful detainer, Code of Civil Procedure section 1161 et seq., and any other statutory cause of action that could be used to evict or otherwise eject a residential . . . . renter . . . is suspended only as applied to any tenancy . . . to which a local government has imposed a limitation on eviction pursuant to this paragraph 2 [relating to inability to pay rent because of Covid-19 financial distress], and only to the extent of the limitation imposed by the local government. Nothing in this Order shall relieve a renter of the obligation to pay rent, nor restrict a housing provider's ability to recover rent due.

(Executive Order (EO) N-28-20.)  California's State of Emergency is still in place, currently set to expire on March 31, 2022.  (EO No. N-21-21).  However, the March 16, 2020 provision, permitting local government to temporarily limit Covid-19-related nonpayment evictions, expired on September 30, 2020.  (EO N-71-20.)

18.      Prior to the expiration of that provision, the California Legislature enacted the "COVID-19 Renter Relief Act" and the "COVID–19 Small Housing provider and Homeowner Relief Act of 2020" via AB 3088, effective August 31, 2020.  AB 3088 in part amended the State's unlawful detainer (UD) statutes, Code of Civil Procedure section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ."  Among other things, AB 3088 provided statewide eviction protections during the "covered time period" (initially March 20, 2020 through January 31, 2021) for renters who could not pay their rent for Covid-19-related reasons.  AB 3088 also directed state agencies to engage about potential strategies for relief for renters and housing providers who suffered Covid-19-related financial hardship.

19.      Notably (and consistent with the Governor's prior order), AB 3088's temporary moratorium on residential evictions was *specifically* limited to those based upon inability to pay for Covid-19-related financial distress.  Even during the temporary moratorium, housing providers were still permitted to file actions for, and courts were still permitted to find renters guilty of, UD for fault, and no-fault "just cause" as defined under Civil Code sec. 1946.2.[1]  (CCP

---

[1] Civil Code sec. 1946.2, which delineates California's "just causes for eviction," does not apply to residential rental property subject to a local ordinance requiring just cause for termination. However, any local "just cause" provision enacted or amended after September 1, 2019, that is

§ 1179.03.5(a)(3).)

20. AB 3088 also provided "this section addresses a matter of statewide concern rather than a municipal affair." The intent of the legislation "is to protect individuals ***negatively impacted*** by the COVID-19 pandemic," and "does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect renters from eviction." (CCP § 1179.05(b), (e), (f), emph. add.) While AB 3088's amendments continued to recognize local government's authority to enact eviction protections, it did not give carte blanche authority to do so, nor does it immunize "emergency" municipal regulations from challenges based on state law preemption.

21. The Covid-19-related nonpayment eviction protections of AB 3088 were extended twice thereafter, once to June 30, 2021 (through SB 91), and a last time to September 30, 2021 (through AB 832). SB 91 and AB 832 protected affected renters from eviction during this extended "covered time period," so long as they complied with the Covid-19-related financial distress requirements.

22. SB 91 and AB 832 further clarified the State's rental assistance program. Starting October 1, 2021, and until March 31, 2022, for any Covid-19-related hardship rental debt that came due between those dates, a renter is required to show that they completed an application for rental assistance through the State program. If they did not, the housing provider can move forward with an unlawful detainer ("UD") action for nonpayment of rent. A housing provider may also move forward with a UD action if the rental assistance application was denied. (CCP § 1179.11(a), (c).)

---

more "protective" than Civ. Code sec. 1946.2, must be consistent with that provision, and "not prohibited by any other area of law." (Civ. Code § 1946.2(g)(1).)

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

**B. The CITY's Eviction Moratorium**

23.   On March 9, 2020, the CITY declared a local state of emergency due to Covid-19.   The CITY's local emergency was ratified on March 12, 2020, via Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies under specified circumstances.   (Gov. Code §§ 8558©, 8630.)   The ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date."   (Gov. Code § 8630 (d).)

24.   After ratifying the Local Emergency, on March 27, 2020, the CITY passed its eviction moratorium, Ordinance No. 13589.   That moratorium not only prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all other evictions*, with few exceptions:

> **Residential Eviction Moratorium.** Except when the renter poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (–) - (10) [excepting Ellis Act evictions] that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.

25.   Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended."   (Ordinance No. 13589.)   Subsequently, the moratorium was extended until "the Local Emergency declared on March 9, 2020 has been terminated by the City Council, or August 31, 2020, whichever comes first."   (Ordinance no. 13594.)   However, on July 7, 2020, the extension on the eviction moratorium was again amended to *only* expire when the local Emergency had been terminated by the COUNCIL.   (Ordinance No. 13606 (Ex. 1).)   The local Emergency has no stated expiration date, and the CITY's position is that it has not expired.   The blanket moratorium on evictions therefore remains in effect.

**C. The COUNTY's Eviction Moratorium**

26.   The COUNTY ratified its local emergency on March 10, 2020.   (Res. No. R-2020-91.)   On April 21, 2020, the BOARD adopted Urgency Ordinance No. O-2020-23, which, like the CITY's moratorium, purports to prohibit most evictions—for any reason.   The language

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

in the urgency ordinance was then made a permanent part of the COUNTY's Code of Ordinances on June 23, 2020. (Ordinance No. O-2020-32; ACCO § 6.120 (Ex. 2).) The COUNTY's moratorium applies to "all evictions from residential units in the unincorporated and incorporated areas of the county" subject to very few exceptions. (ACCO § 6.120.030.) These exceptions are (1) Ellis Act withdrawals; (2) government orders requiring the unit to be vacated; or (3) "the resident poses an imminent threat to health or safety." (ACCO § 6.120.030(F).) Like the CITY's moratorium, the COUNTY'S moratorium provides that it is an "absolute defense" to an unlawful detainer action brought during its term. (ACCO § 6.120.030(D).)

27. The moratorium expires sixty days "after the expiration of the local health emergency." (ACCO § 6.120.030.) Per the ratification of the local emergency, the local emergency "shall remain in effect until the [BOARD] determines that the emergency no longer exists." (Res. No. R-2020-91.) The COUNTY's position is that it has not expired, and the blanket moratorium on evictions therefore remains in effect.

### D. The COUNTY and CITY's Rent Relief Assistance Programs

28. State law requires local governments to develop mechanisms by which housing providers and renters may file applications for, and receive if eligible, Covid-related rent relief.

29. The COUNTY operates a rent relief assistance program called "Housing Secure."[2] The Housing Secure website currently states: "NOTICE: We have received more requests for funds than we have currently available."

30. The CITY also operates a rent relief assistance program called "Oakland's Emergency Rental Assistance."[3] The Oakland's Emergency Rental Assistance website currently states: "UPDATE. PLEASE NOTE. As of January 7, the City of Oakland's Emergency Rental Assistance program is oversubscribed. Tenants and Landlords may still submit an application but will be placed on a waitlist."

---

[2] https://www.ac-housingsecure.org/?locale=en
[3] https://www.oaklandca.gov/departments/department-of-housing-and-community-development

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

31.     Importantly, tenants in the CITY and COUNTY need not to participate in *any* rent relief program to avoid eviction; the Moratoriums prohibit evictions even for those tenants who refuse to cooperate with a landlord's request that they seek relief under these programs. This directly contradicts the purpose, intent and procedures of state law.

### E.  The Moratoriums' Detrimental Impact on Plaintiffs

32.     Plaintiff JOHN WILLIAMS is a housing provider in the CITY and COUNTY and owns the property at 1109 32nd Street, Oakland, CA. ("1109 32nd Street"). 1109 32nd Street is a duplex, and the rent for the property only barely covers WILLIAMS' property expenses for 1109 32nd Street.  The current renter in the three-bedroom one-bath downstairs unit, Martina Martin, has occupied the unit for approximately ten years, and until the past two years, has always paid the rent for the unit, which is approximately $1,500.00 per month.  After the CITY and COUNTY enacted the Moratoriums, however, the renter stopped paying rent and has not paid since.  The renter's failure to pay is not related to any Covid-19 related reason.  In fact, the renter operated a moving and storage business, "Martina's Ride" out of her unit since 2017, and through much of 2021.  The renter refuses to cooperate with WILLIAMS' efforts to obtain unpaid rents through the rent relief program, and therefore the CITY rejected WILLIAMS' application for noncompliance. The renter in the upper unit vacated in March of 2021. WILLIAMS is concerned that a new renter will move in and refuse to pay rent, so he has kept that unit vacant after the renter left.  WILLIAMS is concerned he will lose the property; he applied for and received three months of mortgage forbearance, but the forbearance expires soon, and only delays his obligation to pay his mortgage.  He also attempted to sell the property, but the nonpaying renter has made it virtually unsalable for any reasonable value.  In October of 2021, WILLIAMS was so riddled with stress caused by his non-paying renter and the very real possibility of losing 1109 32nd Street to foreclosure, he was hospitalized and, to date, remains disabled as a result.  His disability forced him to quit his job and move into the upper unit of 1109 32nd Street—directly above his non-paying renter—to save money.  WILLIAMS is unable to commence a nonpayment eviction against his renter as a direct result of the Moratoriums and

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

in contravention of state law.

33. Plaintiff ROBERT VOGEL ("VOGEL") is a housing provider in the COUNTY and owns a rental property located 20076 Emerald Ct., Castro Valley, CA ("20076 Emerald"). 20076 Emerald is a three-bedroom, one bath, 853 sq. ft single family home. VOGEL is semi-retired and is a disabled paraplegic. VOGEL relies on the rental income from 20076 Emerald for his only source of retirement income. VOGEL is required to pay approximately $1,328 per month for 20076 Emerald's mortgage, taxes and insurance, garbage service, and fees for property management. Maintenance expenses for the property over the last two years have approximated $12,000. The renter at 20076 Emerald has lived there for approximately twelve years, and her current rent is $2,000 per month, however she stopped paying any rent in September 2021, and has not paid any rent since that date. The renter's failure to pay prevented VOGEL from being able to refinance 20076 Emerald to a lower rate. The renter has also stopped maintaining 20076 Emerald's landscape and would park her car on the front yard. The renter's failure to pay is not related to any Covid-19 related reason. VOGEL and the renter have applied for rental assistance through the COUNTY, however, there has been no response from the COUNTY whatsoever, and the COUNTY's rental relief website states that there is no money available. There was also a second renter at the property temporarily that applied for rental assistance, despite working full time. The second tenant died in December 2021, yet there is mechanism to update or change the application process. The amount of monetary savings that VOGEL has in his bank account is being depleted because of having to carry all the costs of 20076 Emerald, and he is deeply concerned he will lose the property as the result of his inability to meet the financial obligations of ownership.

34. Plaintiff SHEANNA ROGERS is a housing provider in the COUNTY and owns the property at 23243 Maud Ave., Hayward CA ("23243 Maud Ave.") At one time, ROGERS ran a small, three-bedroom, independent living facility at 23243 Maud Ave., where she & her husband cared and provided for people who needed a "helping hand" to get on their feet. Many clients had lived at this address for over 5 years. ROGERS served a vulnerable population at the

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

living facility; her clients often had mental disabilities and no families to turn to. ROGERS was able to provide her clients with a safe living space and meals they could count on at 23243 Maud Ave. In addition to the independent living facility space, 23243 Maud Ave. has a separate studio unit. ROGERS rented this unit in 2018 to the current renter, who paid $1000 per month. That renter was never part of the independent living facility program. ROGERS depends on this supplemental rental income to support her and her family. Prior to the COUNTY'S enactment of its Moratorium, the renter began harassing ROGER's clients in the independent living facility. The renter would scream profanities at ROGERS' clients and throw garbage from his unit into the street directly in front of the property. The renter's harassment of ROGERS' clients got so bad that ROGERS was forced to file a restraining order against the renter and commence eviction proceedings. In February 2020, ROGERS and the renter came to a settlement agreement, whereby the renter agreed to vacate the property in April of 2020. However, after the COUNTY enacted its Moratorium, in March 2020, the renter refused to leave. The renter is currently still occupying the property and has not paid rent for over two years. The renter's failure to pay is not related to any Covid-19 related reason. Meanwhile, the renter's harassment of ROGERS' clients persisted, and ROGERS was forced to close her business as a result. ROGERS has applied for rental assistance from the COUNTY, however, because her renter will not cooperate, and his non-payment has nothing to do with Covid- 19 the COUNTY has refused to provide her with any relief.

35.     Plaintiff JAQUELINE WATSON-BAKER is a housing provider in the CITY and COUNTY and owns the property at 1225-1227 92nd Ave Oakland, CA. ("1225-1227 92nd Ave"). 1225-1227 92nd Ave was purchased by WATSON-BAKER's mother in or about the 1950's. WATSON-BAKER's mother, who moved from to California from the Southern United States, was one of the first African-Americans to own property in her East-Oakland neighborhood. 1225-1227 92nd Ave is a duplex, with a two-bedroom, two-bath front unit, and a one-bedroom one-bath back unit. The renter in the back unit, Unit 1227, originally moved into the property in 2016. Thereafter, WATSON-BAKER attempted to get access to the unit because the renter had

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

put tinfoil over the windowpanes and had installed an air conditioner, and she was concerned about the renter's activity at the property.  When WATSON-BAKER arrived at the property, the renter stated that he did "not believe that a black woman" owned the property and demanded to see her identification.  WATSON-BAKER showed the renter her identification, which the renter snatched out of her hand, but the renter still refused her access to the unit.  Thereafter, the renter would insist on dropping off his rent check at WATSON-BAKER's home address, even though she asked him multiple times to mail it to a P.O. Box. WATSON-BAKER continued to see concerning signs at the property, but the renter continued to refuse her access. For example, she saw signs of rat infestation, but when she sent an exterminator, the renter would not give the exterminator access and turned his dogs loose on them. The exterminator eventually refused to go back to the property. Because the tenant refused to grant her access, and WATSON-BAKER became increasingly concerned about the unit's condition, WATSON-BAKER filed for relief in court in or about 2018.  The renter of the front unit of 1225-1227 92nd Ave Oakland left in 2019 because of the renter of the back unit's erratic behavior, and that unit has remained vacant since due to the renter's behavior. WATSON-BAKER finally obtained a court date for March of 2020, which then was pushed back due to shelter in place orders.  The renter stopped paying rent just prior to this time.  The renter still occupies the unit to date and is currently approximately $5,000 in debt to her.   The renter's failure to pay is not related to any Covid-19 related reason. WATSON-BAKER finally got access to the unit several months ago and saw that the unit is in gross disrepair.  The renter put foil on all the unit's windows, there are dark yellow streaks running down the walls, and one of the unit's cabinets is hanging down from the ceiling.  The unit is infested with insects and there is feces and urine all over the bathroom of the unit, and dog feces and garbage cover the unit's backyard.  Notwithstanding the renter's damage to and perpetuation of a nuisance on her property, WATSON-BAKER is prevented from evicting the renter under the COUNTY's Moratorium.   WATSON-BAKER considered selling the property, however, was advised that the renter's actions had devalued her property by almost a third of the market value. WATSON-BAKER applied for rental assistance from the COUNTY, however,

her renter initially refused to cooperate with her. After he finally agreed to fill out an application, the COUNTY informed WATSON-BAKER that it could be up to a year until she receives any rental relief funds.

36. Plaintiff Michael Loeb is a housing provider in the CITY and COUNTY and owns units 2501 and 2502 at 565 Bellevue Avenue, Oakland, California (565 Bellevue Units). Loeb, a 74 year-old widower, lived with his wife in Piedmont, until she died in 2015, after nearly 46 years of marriage. After her death, and, in part, because of mobility issues resulting in back surgery, he sold his home. He purchased the 565 Bellevue Units in April, 2020, with the intent to combine and occupy them as his home, for his own use, for the remainder of his life. Renter Joshua Bloomfield (Bloomfield), a 1996 Graduate of the University of Pennsylvania, and 2000 UCLA School of Law graduate, is a successful class action lawyer with a prominent Oakland based class action law firm. Bloomfield currently pays LOEB $2,200 per month in rent for a studio apartment. LOEB has attempted to voluntarily negotiate an owner move in with Bloomfield, offering him $30,000 to move out. This is more than four times the amount of $7,116.22 required as a relocation payment under the Oakland Just Cause for Eviction Ordinance, which is codified at Oakland Municipal Code section 8.22.850. However, Bloomfield has demanded that LOEB pay him more than $160,000 to vacate, telling LOEB that "it's nothing personal, just business." Multiple other comparable units have become available in the same building and could have been occupied by Bloomfield. Bloomfield has not claimed any Covid related hardship. LOEB has been unable to commence an owner-move in eviction due to the Moratoriums.

### FIRST CLAIM
**(Violation of the 5th Amendment to the U.S. Constitution – Against All Defendants (42 U.S.C. § 1983))**

37. Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 36 of this Complaint.

38. By enacting the Moratoriums, the COUNTY and the CITY violated the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

public use without just compensation. The Moratoriums violate the Fifth Amendment of the United States Constitution on their face and as applied to Plaintiffs.

39. Defendants' Moratoriums purport to prohibit Plaintiffs from evicting any renter in the CTY and COUNTY for virtually any reason, with few exceptions. The Moratoriums, which have no end dates, perpetrate physical takings by illegally nullifying Plaintiffs and other housing providers' right to occupy their properties without just compensation; the Moratoriums *eliminate* renters' rent obligations and sanction renters' trespassing on Plaintiffs' properties. Preventing housing providers "from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." (*Alabama Association of Realtors v. Department of Health and Human Services* (2021) 141 S.Ct. 2485, 2489; also see, *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 435; *Cedar Point Nursery v. Hassid* (2021) 141 S. Ct 2063; *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 655 [Physical taking occurs when a regulation "effectively extinguish[es] plaintiffs' right to occupy substantial portions of their property"].)

40. The COUNTY and the CITY's moratoriums also interfere with Plaintiffs' investment-backed expectations and result in either a substantial or total deprivation of the economic value of Plaintiffs' properties. (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104.) The Moratoriums are devaluing properties by prohibiting Plaintiffs from recovering possession of their properties—even for their personal use—and even despite renters perpetuating ongoing nuisances and *continued* nonpayment of rents. Plaintiffs have suffered significant financial losses due to the Moratoriums, and continue to suffer these losses, notwithstanding the current government "relief" programs in place, which have resulted in little to no relief. Plaintiffs' "investment-backed expectations" have been violated as a matter of law. (*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles* (C.D. Cal. 2020) 500 F. Supp. 3d 1088, 1096, *aff'd*, (9th Cir. 2021) 10 F.4th 905.) This is especially so when applied in light of "the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

whole.' [Citation.]" (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606.)

41.     For the foregoing reasons, the Moratoriums constitute takings without just compensation, and thus violates Plaintiffs' rights protected by the United States Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

42.     As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

## SECOND CLAIM
### (Inverse Condemnation – Violation of Article I, Section 19 of the California Constitution)

43.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 42 of this Complaint.

44.     The Moratoriums violate the Article I, Section 19 of the California Constitution on their face and as applied to Plaintiffs, for all the reasons alleged herein.

45.     The Moratoriums therefore constitute takings without just compensation, and thus violate Plaintiffs' rights protected by the California Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.

46.     As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.

## THIRD CLAIM
### (Violation of Due Process (42 U.S.C. § 1983))

47.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 46 of this Complaint.

48.     The Moratoriums violate Plaintiffs' substantive and procedural due process rights

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

under the U.S. Constitution.  (*Lockary v. Kayfetz*  (9th Cir. 1990) 917 F.2d 1150, 1155; *Weinberg v. Whatcom County* (9th Cir. 2001) 241 F.3d 746, 752-755.)  The Moratoriums violate Plaintiffs' substantive due process rights on their face and as applied because Plaintiffs' have protected property interests in their real properties, and Defendants' continued imposition of the blanket Moratoriums are irrational and lacking in a legitimate government interest because there is no justification for such extreme measures.  Indeed, California's COVID-19 Renter Relief Act never imposed such draconian restrictions.  Further, the Bay Area has seen significant improvement in circumstances relating to the pandemic since March of 2020, has a high rate of vaccinations, and federal and state officials have recognized that Covid-19 is either in, or moving to, an endemic stage.  The pandemic should not be used as a "cursory" justification for what would otherwise be an illegal law.  (See, *Texas v. United States* (S.D. Tex. Aug. 19, 2021)  No. 6:21-CV-00016, 2021 WL 3683913, at *45;  *Chrysafis v. Marks* (2021) 141 S.Ct. 2482; *Tandon v. Newsom* (2021)141 S.Ct. 1294.)  Defendants therefore have no rational basis for the Moratoriums, and any offered is plainly pretext.  The Moratoriums violate procedural due process because they, in effect, deprive Plaintiffs of *any* procedure to recover their properties under most cases.

49.    The aforesaid acts, and as further alleged herein, therefore constitute violations of Plaintiff's procedural and substantive due process rights. An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

50.    As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, emotional distress, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs are also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

### FOURTH CLAIM
**(Violation of Equal Protection (42 U.S.C. § 1983))**

51.    Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 49 of this Complaint.

52.     The Moratoriums violate Plaintiffs' right to equal protection of the laws, on their face and as applied. The purpose of the Moratoriums is to unlawfully single out, penalize, and target Plaintiffs, and all housing providers in the CITY and COUNTY, by preventing them from lawfully exercising their property rights to receive rents, occupy their properties, exclude others from their properties, and protect their properties from nuisance and damage.  The emergency under which the Moratoriums no longer exists; the Bay Area is open for business, has a high rate of vaccinations, and federal and state officials have recognized that Covid-19 is either in, or moving to, and endemic stage. Thus, any stated rational government purpose to the contrary is pretext.

53.     For the foregoing reasons, the Moratoriums violate Plaintiffs' right to equal protection of the law, and as a result, Plaintiffs have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.) Plaintiffs have also entitled to recover their attorneys' fees under 42 U.S.C. § 1983.

## FIFTH CLAIM
### (Writ of Mandate (CCP §§ 1085 or 1094.5))

54.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 53 of this Complaint.

55.     Code of Civil Procedure §§ 1094.5 or 1085 authorizes Plaintiffs to seek a writ of mandate/mandamus, and which authorizes the Court to review and set aside public agency decisions involving a prejudicial abuse of discretion or error of law.

56.     Plaintiffs requests the Court issue a declaration, and/or writ of mandate or mandamus, setting aside and voiding the Moratoriums.  Plaintiffs also seeks an immediate stay to enjoin Defendants from enforcing the Moratoriums, as such enforcement would further harm Plaintiffs by violating their statutory and constitutional rights as alleged herein, and the issuance

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

of such a stay would not be against the public interest.

57.     In enacting the Moratoriums, Defendants exceeded their jurisdiction, prevented Plaintiffs from having a fair trial, failed to proceed as required by law, and prejudicially abused their discretion because:

       a.     The Moratoriums are preempted by the State's Covid-19 Renter Relief Act (the "Act"), both expressly and impliedly, because they conflict with the Act by depriving housing providers of the UD process altogether by prohibiting repossession of their properties in almost all circumstances, thereby conflicting with that law.  Because the Moratoriums conflict with the Act, they are preempted and void.

       b.     the Moratoriums unlawfully amend the CITY's Just Cause for Eviction Ordinance, which was enacted via voter initiative.  (Oak. Mun. Code § 8.22.310.)  While the COUNCIL is permitted to amend the Just Cause for Eviction Ordinance to a limited extent (see, Oak. Muni. Code § 8.22.360(F); City of Oakland Measure Y), the COUNTY is not, and the COUNCIL's moratorium significantly surpasses the permissible scope of amendment permitted by the voters.  Thus, the Moratoriums are invalid.

58.     Moreover, as alleged herein, Defendants' aforesaid acts constitute unconstitutional per se, regulatory, de facto, and physical takings of Plaintiffs' properties without just compensation under the U.S. Constitution and violate Plaintiff's constitutional rights to equal protection and due process, and any purported legitimate and/or rational basis for the same is pretext.

59.     Because these are questions of law and implicate constitutional rights, the standard of review falls under the independent judgment test/de novo review.

60.     To the extent Plaintiffs were required to exhaust any administrative remedies, they have, as alleged herein.

61.     As alleged herein, Plaintiffs have a beneficial interest in ensuring that the Moratoriums are struck down so that Plaintiffs statutory and constitutional rights are not infringed upon.  Plaintiffs do not have a plain, speedy, or adequate remedy in the ordinary course of law,

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

and therefore writ relief is necessary to compel Defendants to correct their actions, which are unlawful and in excess of their authority.

62. Plaintiffs are entitled to recover attorneys' fees under Cal. Civ. Code § 1021.5, and because the Moratoriums are arbitrary and capricious, lacking any reasonable basis, and/or discriminatory and illegal, Plaintiffs are additionally entitled to attorneys' fees under Govt. Code § 800(a).

WHEREFORE, Plaintiffs' demand judgment against Defendants for the following:

**For Claims One, Two, Three and Four**:

1. A preliminary and permanent injunction preventing enforcement of the Moratoriums;

2. A declaratory judgment determining that Defendants' Moratoriums constitute a taking under the United States and California Constitutions, and violate Plaintiffs' right to due process and equal protection;

3. For special damages for out-of-pocket expenses, loss of property value, and loss of opportunity costs in an amount that is yet to be ascertained;

4. For general damages according to proof, in an amount that is yet to be ascertained;

5. For an award of attorneys' fees and costs as allowed by law; and

6. For any other relief that the Court deems just and proper.

**For Claim Five**:

1. For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, enjoining and voiding the Moratoriums for all of the reasons alleged above;

2. For a judgment that the Moratoriums constitute unlawful takings on their face and/or as applied, and have prevented Plaintiffs from maintaining economically viable use of their respective properties without just compensation in violation of Plaintiffs' rights under the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation; and upon such judgment, give Defendants

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

the opportunity to revoke Moratoriums and mitigate its damages in Plaintiff's inverse condemnation and 5th amendment takings action against Defendants;

3. For a judgment that Defendants have violated Plaintiffs' equal protection and due process rights;

4. For an immediate stay or preliminary injunction, and permanent injunction enjoining Defendants from enforcing the Moratoriums pending the determination of the merits;

5. For costs of suit herein, including attorneys' fees;

6. For any other relief that the Court deems just and proper.


Dated: March 1, 2022                    ZACKS, FREEDMAN & PATTERSON, PC

                                        _/s/ Andrew M. Zacks_
                                        By:    Andrew M. Zacks
                                               Emily L. Brough
                                               Attorneys for Plaintiffs and Petitioners
                                               JOHN WILLIAMS
                                               ROBERT VOGEL
                                               SHEANNA ROGERS
                                               MICHAEL LOEB
                                               JAQUELINE WATSON-BAKER
                                               HOUSING PROVIDERS OF AMERICA

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all claims (other than the petition for writ of mandate) as stated herein.

Dated: March 1, 2022                    ZACKS, FREEDMAN & PATTERSON, PC

                                        _/s/ Andrew M. Zacks_____
                                        By:     Andrew M. Zacks
                                                Emily L. Brough
                                                Attorneys for Plaintiffs and Petitioners
                                                JOHN WILLIAMS
                                                ROBERT VOGEL
                                                SHEANNA ROGERS
                                                MICHAEL LOEB
                                                JAQUELINE WATSON-BAKER
                                                HOUSING PROVIDERS OF AMERICA

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

**VERIFICATION**

I, Andrew M. Zacks, am an attorney representing all Plaintiffs and Petitioners (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters attested to in the fifth cause of action for writ of mandate (CCP § 1085), which are primarily questions of law, and it is for this reason that I, and not Plaintiffs, are verifying the fifth cause of action.   I have read the cause of action for writ of mandate and I am informed and believe the matters therein to be true and on that ground allege that the matters stated therein are true.  On this basis, I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct to the best of my knowledge and that this verification was executed on March 1_____, 2022, in Oakland, California.

_____
Andrew M. Zacks

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

# EXHIBIT J

1  MATTHEW D. ZINN (State Bar No. 214587)
   EDWARD T. SCHEXNAYDER (State Bar No. 284494)
2  MINDY K. JIAN (State Bar No. 336139)
   SHUTE, MIHALY & WEINBERGER LLP
3  396 Hayes Street
   San Francisco, California 94102
4  Telephone:  (415) 552-7272
   Facsimile:   (415) 552-5816
5  Zinn@smwlaw.com
   Schexnayder@smwlaw.com
6  mjian@smwlaw.com

7  Attorneys for Defendants and Respondents
   Alameda County and Alameda County Board of
8  Supervisors

9              UNITED STATES DISTRICT COURT

10   NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11

12  JOHN WILLIAMS, ROBERT VOGEL,        Case No. 3:22-cv-01274-LB
    SHEANNA ROGERS, MICHAEL
13  LOEB, JAQUELINE WATSON-BAKER,       **ANSWER OF DEFENDANTS**
    and HOUSING PROVIDERS OF            **ALAMEDA COUNTY AND**
14  AMERICA,                            **ALAMEDA COUNTY BOARD OF**
                                        **SUPERVISORS**
15            Plaintiffs and Petitioners,
                                        The Hon. Laurel Beeler
16       v.
                                        Trial Date:      none set
17  ALAMEDA COUNTY, ALAMEDA
    COUNTY BOARD OF SUPERVISORS,
18  CITY OF OAKLAND, OAKLAND CITY
    COUNCIL, and DOES 1-10,
19
              Defendants and Respond-
20            ents.

21

22

23

24

25

26

27

28

Defendants and Respondents Alameda County and Alameda County Board of Supervisors (collectively "County") answer the Complaint for Damages and Petition for Writ and Request for Immediate Stay ("Complaint") filed by Plaintiffs and Petitioners John Williams, Robert Vogel, Sheanna Rogers, Michael Loeb, Jacqueline Watson-Baker, and Housing Providers of America on March 1, 2022 as follows:

1. In response to Paragraph 1, the County admits that Plaintiffs filed the Complaint and asserts that the Complaint speaks for itself.

### ANSWERING JURISDICTION

2. In response to Paragraph 2, the County asserts that the laws referenced in that paragraph and the United States Constitution speak for themselves. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 2 and on that basis denies them.

### ANSWERING DIVISIONAL ASSIGNMENT

3. In response to Paragraph 3, the County asserts that Local Rule 3-2(c) speaks for itself. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 3 and on that basis denies them.

### ANSWERING VENUE

4. In response to Paragraph 4, the County asserts that 28 U.S.C. § 1391(a) speaks for itself. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 4 and on that basis denies them.

### ANSWERING PARTIES

5. In response to Paragraph 5, the County admits the allegations in that paragraph.

6. In response to Paragraph 6, the County admits the allegations in that paragraph.

7. In response to Paragraph 7, the County admits the allegations in that paragraph.

COUNTY'S ANSWER
Case No. 3:22-cv-01274-LB

8.     In response to Paragraph 8, the County admits the allegations in that paragraph.

9.     In response to Paragraph 9, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

10.     In response to Paragraph 10, the County admits that Robert Vogel owns real property in the County. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 10 and on that basis denies them.

11.     In response to Paragraph 11, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

12.     In response to Paragraph 12, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

13.     In response to Paragraph 13, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

14.     In response to Paragraph 14, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations in that paragraph and on that basis denies them.

15.     In response to Paragraph 15, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

16.     In response to Paragraph 16, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

COUNTY'S ANSWER
Case No. 3:22-cv-01274-LB

## ANSWERING STATEMENT OF FACTS

17.     In response to Paragraph 17, the County asserts that Governor Newsom's March 4, 2020 declaration referenced in the first sentence of that paragraph, the California Emergency Services Act, and the executive orders referenced in that paragraph speak for themselves.

18.      In response to Paragraph 18, the County asserts that AB 3088 and the State's unlawful detainer statutes speak for themselves.

19.     In response to the first sentence of Paragraph 19, the County asserts that AB 3088 and the Governor's order referenced in that sentence speak for themselves. In response to the second sentence of Paragraph 19, the County asserts that California Civil Code section 1946.2, the California Code of Civil Procedure, and the State's unlawful detainer statutes speak for themselves.

20.     In response to the first sentence of Paragraph 20, the County asserts that AB 3088 speaks for itself. In response to the second sentence of Paragraph 20, the County asserts that the California Code of Civil Procedure speaks for itself. The County denies the allegations in the third sentence of Paragraph 20.

21.     In response to Paragraph 21, the County asserts that SB 91 and AB 832 speak for themselves.

22.     In response to Paragraph 22, the County asserts that SB 91, AB 832, and the California Code of Civil Procedure section 1179.11 speak for themselves.

23.     In response to the first sentence of Paragraph 23, the County asserts that the City's March 9, 2020 declaration speaks for itself. In response to the second and third sentences of Paragraph 23, the County asserts that Resolution No. 88075 and the California Government Code speak for themselves.

24.     In response to Paragraph 24, the County asserts that Ordinance No. 13589 speaks for itself.

25.     In response to the first sentence of Paragraph 25, the County asserts that Ordinance No. 13589 speaks for itself. In response to the second sentence of Paragraph 25,

the County asserts that Ordinance No. 13594 speaks for itself. In response to the third sentence of Paragraph 25, the County asserts that Exhibit 1 to Ordinance No. 13606 speaks for itself. In response to the fourth sentence of Paragraph 25, the County asserts that the City of Oakland's declaration of local state of emergency speaks for itself. The County denies the remaining allegations in Paragraph 25.

26.     In response to the first sentence of Paragraph 26, the County asserts that Resolution No. R-2020-91 speaks for itself. In response to the second sentence of Paragraph 26, the County asserts that Urgency Ordinance No. O-2020-23 speaks for itself. In response to the third, fourth, fifth, and sixth sentences of Paragraph 26, the County asserts that Urgency Ordinance No. O-2020-32 and the Alameda County Code of Ordinances sections referenced in those sentences speak for themselves.

27.     In response to the first sentence of Paragraph 27, the County asserts that the Alameda County Code of Ordinances section 6.120.030 speaks for itself. In response to the second sentence of Paragraph 27, the County asserts that Resolution No. R-2020-91 speaks for itself. The County admits the allegations in the third sentence of Paragraph 27. The County denies the remaining allegations in Paragraph 27.

28.     In response to Paragraph 28, the County asserts that the state law referenced in that paragraph speaks for itself. The County denies the remaining allegations in Paragraph 28.

29.     In response to Paragraph 29, the County admits the allegations in the first sentence in that paragraph. The County also asserts that the website referenced in that paragraph speaks for itself.

30.     In response to Paragraph 30, the County asserts that the website referenced in that paragraph speaks for itself. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in that paragraph and on that basis denies them.

COUNTY'S ANSWER
Case No. 3:22-cv-01274-LB

31.     In response to the first sentence of Paragraph 31, the County asserts that the local laws implementing the Moratoriums speak for themselves. The County denies the allegations in the second sentence of Paragraph 31.

32.     In Paragraph 32, the County denies the allegations in the last sentence of that paragraph. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 32 and on that basis denies them.

33.     In response to the first sentence of Paragraph 33, the County admits that Robert Vogel owns the property at 20076 Emerald Ct., Castro Valley, CA. In response to the eleventh sentence of Paragraph 33, the County denies the allegations in that sentence. In response to the twelfth sentence of Paragraph 33, the County admits that a second renter at the property applied for rental assistance. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 33 and on that basis denies them.

34.     In response to Paragraph 34, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

35.     In response to Paragraph 35, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

36.     In response to Paragraph 36, the County lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in that paragraph and on that basis denies them.

**ANSWERING FIRST CLAIM**

**(Violation of the 5th Amendment to the U.S. Constitution – Against All Defendants (42 U.S.C. § 1983))**

37.     In response to Paragraph 37, the County incorporates the previous paragraphs by this reference.

6

38.      In response to Paragraph 38, the County asserts that the Fifth Amendment of the United States Constitution speaks for itself. The County denies the remaining allegations in Paragraph 38.

39.      In response to Paragraph 39, the County asserts that the local laws implementing the Moratoriums and the cases cited in that paragraph speak for themselves. The County denies the remaining allegations in Paragraph 39.

40.      In response to Paragraph 40, the County asserts that the cases cited in that paragraph and the Takings Clause speak for themselves. The County denies the remaining allegations in Paragraph 40.

41.      In response to Paragraph 41, the County asserts that the United States Constitution and 28 U.S.C. § 2201 speak for themselves. The County denies the remaining allegations in Paragraph 41.

42.      In response to Paragraph 42, the County asserts that 42 U.S.C. § 1983 speaks for itself. The County denies the remaining allegations in paragraph 42.

## SECOND CLAIM

### (Inverse Condemnation – Violation of Article I, Section 19 of the California Constitution)

43.      In response to Paragraph 43, the County incorporates the previous paragraphs by this reference.

44.      In response to Paragraph 44, the County asserts that the California Constitution speaks for itself. The County denies the remaining allegations in Paragraph 44.

45.      In response to Paragraph 45, the County denies the allegations in the first sentence of that paragraph. The County asserts that the California Constitution speaks for itself. The County lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 45 and on that basis denies them.

46.      In response to Paragraph 46, the County denies the allegations in that paragraph.

7

**ANSWERING THIRD CLAIM**

**(Violation of Due Process (42 U.S.C. § 1983))**

47.     In response to Paragraph 47, the County incorporates the previous paragraphs by this reference.

48.     In response to Paragraph 48, the County asserts that the U.S. Constitution, cited cases in that paragraph, California's COVID-19 Renter Relief Act, and statements by federal and state officials referenced in that paragraph speak for themselves. The County admits that the Bay Area has seen significant improvement in circumstances relating to the pandemic since March of 2020 and has a relatively high rate of vaccinations. The County denies the remaining allegations in Paragraph 48.

49.     In response to Paragraph 49, the County asserts that 28 U.S.C. § 2201 speaks for itself. The County denies the remaining allegations in Paragraph 49.

50.     In response to Paragraph 50, the County asserts that 42 U.S.C. § 1983 speaks for itself. The County denies the remaining allegations in Paragraph 49.

**ANSWERING FOURTH CLAIM**

**(Violation of Equal Protection (42 U.S.C. § 1983))**

51.     In response to Paragraph 51, the County incorporates the previous paragraphs by this reference.

52.     In response to Paragraph 52, the County asserts that the statements by federal and state officials referenced in that paragraph speak for themselves. The County admits that many businesses in the Bay Area are open for business and that the Bay Area has a relatively high rate of vaccinations. The County denies the remaining allegations in Paragraph 52.

53.     In response to Paragraph 53, the  County asserts that 28 U.S.C. § 2201 and 42 U.S.C. § 1983 speak for themselves. The County denies the remaining allegations in Paragraph 53.

**ANSWERING FIFTH CLAIM**

**(Writ of Mandate (CCP §§ 1085 or 1094.5))**

54. In response to Paragraph 54, the County incorporates the previous paragraphs by this reference.

55. In response to Paragraph 55, the County asserts that the California Code of Civil Procedure speaks for itself. The County denies the remaining allegations in Paragraph 55.

56. In response to Paragraph 56, the County asserts that the Complaint speaks for itself. The County denies the remaining allegations in Paragraph 56.

57. In response to Paragraph 57, the County asserts that the State's Covid-19 Renter Relief Act, the City of Oakland's Just Cause for Eviction Ordinance, the Oakland Municipal Code, and Measure Y speak for themselves. The County denies the remaining allegations in Paragraph 57.

58. In response to Paragraph 58, the County denies the allegations in that paragraph.

59. In response to Paragraph 59, the County asserts that the laws and cases establishing the standard of review referenced in that paragraph speak for themselves. The County denies the remaining allegations in Paragraph 59.

60. In response to Paragraph 60, the County denies the allegations in that paragraph.

61. In response to Paragraph 61, the County lacks sufficient knowledge or information to form a belief as to the allegations in the first sentence of that paragraph and on that basis denies them. The County denies the remaining allegations in Paragraph 61.

62. In response to Paragraph 62, the County asserts that the California Civil Code and California Government Code speak for themselves. The County denies the remaining allegations in Paragraph 62.

1

## GENERAL DENIAL

2      63.    The County denies all allegations in the Complaint except those specifically

3  admitted in the preceding paragraphs.

4

## AFFIRMATIVE DEFENSES

5  The County asserts the following affirmative defenses:

6

## FIRST AFFIRMATIVE DEFENSE

7

## (Failure to State a Claim)

8      Plaintiffs' Complaint fails in whole or in part to state claims upon which relief can be

9  granted and should be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Proce-

10  dure.

11

## SECOND AFFIRMATIVE DEFENSE

12

## (Ripeness)

13      Plaintiffs' Complaint is barred in whole or in part because there is presently no injury

14  resulting from or caused by the County, there is no injury suffered by Plaintiffs or HPOA

15  members and there is no current case or controversy. Thus, Plaintiffs' claims are not ripe

16  for adjudication.

17

## THIRD AFFIRMATIVE DEFENSE

18

## (Lack of Standing)

19      Plaintiffs lack standing to assert their claims in whole or in part because they have

20  not suffered an (1) injury in fact (2) that is fairly traceable to the County's conduct and (3)

21  that is likely to be redressed by a favorable decision.

22

## FOURTH AFFIRMATIVE DEFENSE

23

## (Failure to Exhaust Administrative Remedies)

24      Plaintiffs' claims are barred, in whole or in part by Plaintiffs' failure to properly raise

25  them in the underlying administrative proceedings.

26

27

28

10

**FIFTH AFFIRMATIVE DEFENSE**

**(Laches)**

Plaintiffs' claims are barred because Plaintiffs have failed to assert their claims in a timely fashion, resulting in prejudice to the County.

**SIXTH AFFIRMATIVE DEFENSE**

**(Estoppel and Waiver)**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and/or HPOA's members have waived their claims or are estopped from asserting them.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Reservation of Right to Raise Additional Defenses)**

The County reserves the right to amend should any further defenses become apparent in the course of this action.

**PRAYER FOR RELIEF**

WHEREFORE, the County prays for judgment as follows:

1. That the Court deny Plaintiffs' requests for preliminary and permanent injunctions;

2. That the Court deny Plaintiffs' request for immediate stay;

3. That the Court deny Plaintiffs' requests for declaratory judgment;

4. That the Court deny Plaintiffs' request for special damages;

5. That the Court deny Plaintiffs' request for general damages;

6. That the Court deny Plaintiffs' request for attorneys' fees and costs;

7. That the Court deny Plaintiffs' request for a writ of mandamus or mandate;

8. That Plaintiffs take nothing by this suit;

9. That the County be awarded its costs of suit incurred in defense of this action; and

10. That the Court grant the County such further relief as the Court may deem proper.

11

1    DATED:  March 23, 2022                SHUTE, MIHALY & WEINBERGER LLP

2

3

4                                          By:    /s/Matthew D. Zinn
                                                  MATTHEW D. ZINN
5                                                 EDWARD T. SCHEXNAYDER
                                                  MINDY K. JIAN
6

7                                          Attorneys for Defendants and Respondents
                                           Alameda County and Alameda County Board
8                                          of Supervisors

9    1484741.4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            12

# EXHIBIT K

BARBARA J. PARKER, City Attorney, SBN 069722
MARIA BEE, Chief Assistant City Attorney, SBN 167716
CYNTHIA STEIN, Deputy City Attorney, SBN 307974
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
Phone: (510) 238-4779; Fax: (510) 238-6500
Email: cstein@oaklandcityattorney.org
X05495/3159586

Attorneys for Defendants
CITY OF OAKLAND, OAKLAND CITY COUNCIL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501 (c)(4) nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND and OAKLAND CITY COUNCIL,<br><br>Defendants. | **Case No. 3:22-cv-01274-LB**<br><br>**DEFENDANTS CITY OF OAKLAND AND OAKLAND CITY COUNCIL'S ANSWER TO PLAINTIFFS' COMPLAINT** |

Defendants CITY OF OAKLAND and OAKLAND CITY COUNCIL ("Defendants") hereby answer, object, and otherwise respond to the Plaintiff's Complaint ("Complaint") herein as follows:

### INTRODUCTION

1. As to paragraph 1, Defendants admit that Plaintiffs bring this complaint against Defendants seeking damages and declaratory and injunctive relief. Defendants deny the remaining allegations in paragraph 1.

**JURISDICTION**

2.     As to paragraph 2, Defendants admit that Plaintiffs allege claims under 42 U.S.C. § 1983 and invoke jurisdiction over their federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 2 and on that basis denies them.

**DIVISIONAL ASSIGNMENT**

3.     As to paragraph 3, Defendants deny the allegations.

**VENUE**

4.     As to paragraph 4, Defendants admit that Plaintiffs allege that venue is proper pursuant to 28 U.S.C. § 1391(a). Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 4 and on that basis denies them.

**PARTIES**

5.     As to paragraph 5, Defendants admit the allegations.

6.     As to paragraph 6, Defendants admit the allegations.

7.     As to paragraph 7, Defendants admit the allegations.

8.     As to paragraph 8, Defendants admit the allegations, although Defendants assert that the Oakland City Council, as a body of the City, has the capacity to be sued.

9.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 9 and on that basis denies them.

10.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 10 and on that basis denies them.

11.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 and on that basis denies them.

12.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 and on that basis denies them.

13.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 13 and on that basis denies them.

14.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 and on that basis denies them.

15.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 15 and on that basis denies them.

16.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 16 and on that basis denies them.

**FACTS**

17.     As to paragraph 17, Defendants admit that Governor Newsom, pursuant to the California Emergency Services Act, declared a State of Emergency in California on March 4, 2020, in response to the COVID-19 pandemic. Defendants admit that on March 16, 2020, Governor Newsom entered Executive Order N-28-20 allowing local governments to impose substantive limitations on residential evictions. Defendants admit that the State of Emergency is still in place. Defendants deny the remaining allegations in paragraph 17.

18.     As to paragraph 18, Defendants admit that the California Legislature enacted the "COVID-19 Tenant Relief Act" and the "COVID-19 Small Landlord and Homeowner Relief Act of 2020" via AB 3088, effective August 31, 2020. Defendants admit that AB 3088 amended unlawful detainer statutes, provided statewide eviction protections, and directed state agencies to engage with tenants and property owners to provide financial relief. Defendants deny the remaining allegations in paragraph 18.

19.     As to paragraph 19, Defendants admit that AB3088's eviction moratorium provided relief to tenants who delivered a signed declaration of COVID-19-related financial distress. Defendants admit that Civil Code sec 1946.2 does not apply to residential real property subject to local just cause ordinances or any local just cause ordinance enacted or amended after September 1,

2019 that is more protective that Civil Code 1946.2 Defendants deny the remaining allegations in paragraph 19.

20.     As to paragraph 20, Defendants admit that AB 3088 "declares that this section addresses a matter of statewide concern rather than a municipal affair as that term is used in Section 5 of Article XI of the California Constitution" for the purpose of clarifying that "it applies to all cities, including charter cities." Cal. Code Civ. Proc. § 1179.05(e). Defendants admit that AB 3088 states that it "does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction." *Id.* § 1179.05(f). Defendants admit that AB 3088 states: "It is the intent of the Legislature that the purpose of this section is to protect individuals negatively impacted by the COVID-19 pandemic[.]" *Id.* Defendants deny the emphasis Plaintiffs added to this provision that is not present in the actual text of AB 3088. Defendants deny the remaining allegations in paragraph 20.

21.     As to paragraph 21, Defendants admit that SB 91 and AB 832 extended the operation of certain procedural requirements and limitations on evictions enacted in AB 3088. Defendants deny the remaining allegations in paragraph 21.

22.     As to paragraph 22, Defendants deny the allegations in paragraph 22.

23.     As to paragraph 23, On March 9, 2020, the City of Oakland declared a local state of emergency due COVID-19, which was ratified on March 12, 2020, in Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies. Defendants deny Plaintiffs' allegation that "[t]he ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date."  (Gov. Code § 8630 (d).) The actual language of the Gov. Code 8630(d) states: "The governing body shall proclaim the termination of the local emergency at the earliest possible date that conditions warrant." Defendants deny the remaining allegations in paragraph 23.

24. As to paragraph 24, Defendants admit that the City passed its eviction moratorium, Ordinance No. 13589, on March 27, 2020. Defendants admit that Ordinance 13589 stated in part:

> **Residential Eviction Moratorium.** Except when the tenant poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) – (10) that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.

Defendants deny the remaining allegations in paragraph 24.

25. As to paragraph 25, Defendants admit that Ordinance No. 13589 stated that the City's eviction moratorium would remain in effect until May 31, 2020, unless extended. Defendants admit that Ordinance No. 13594, passed May 19, 2020, stated that the City's moratorium would remain in effect "until the Local Emergency declared on March 9, 2020, has been terminated the City Council, or August 31, 2020, whichever comes first." Defendants admit that Ordinance No. 13606, passed July 21, 2020, amended the moratorium so that it remains in effect until the end of the Local Emergency. Defendants admit that the Local Emergency has not expired and must be reviewed by City Council every 30 days pursuant to O.M.C. 8.50.050(C)(3). Defendants admit that the City's eviction moratorium remains in effect as of the drafting of this response. Defendants deny the allegation that the moratorium is a "blanket moratorium on evictions." Defendants deny the remaining allegations in paragraph 25.

26. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 and on that basis denies them.

27. As to paragraph 27, Defendants' deny the allegation that the County's moratorium is a "blanket moratorium on evictions." Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 27 and on that basis denies them.

28. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 26 and on that basis denies them.

29. As to paragraph 29, Plaintiffs admit, based on information and belief, that the County operates a rent relief assistance program called "Housing Secure," and that its website

1   states, at the time of the drafting of this response: "NOTICE: The county has received $129 million

2   in funding. We have received more requests than we currently have funds available. We encourage

3   all eligible tenants and landlords to apply as we are requesting additional funds from the

4   Department of Treasury and continue to prioritize distributing funds to those most in need."

5   Defendants lack sufficient knowledge or information to form a belief as to the truth of the

6   allegations in paragraph 29 regarding what this website stated at any particular time other than at

7   the drafting of this response and on that basis denies them.

8           30.     As to paragraph 30, Plaintiffs admit that the City of Oakland operates a rent relief

9   assistance program called "Oaklands' Emergency Rental Assistance," and that its website states, at

10  the time of the drafting of this response: "*January 7, 2022 Update - Program Accepting Waitlist.

11  Update - PLEASE NOTE: As of January 7, 2022 the city of Oakland's Emergency Rental

12  Assistance Program is oversubscribed. Tenants may still submit an application but will be placed on

13  a waitlist. There is no need to upload supporting documents at this time. If additional resources are

14  made available, waitlisted applicants will be contacted based on priority need. Thank you."

15         31.     As to paragraph 31, Defendants admit that the City of Oakland's eviction

16  moratorium does not require tenants to participate in a rent relief program in order to raise the

17  moratorium as an affirmative defense to an unlawful detainer action covered by the moratorium.

18  Defendants lack sufficient knowledge or information to form a belief as to the truth of the

19  allegations in paragraph 31 regarding the County's moratorium and on that basis denies them.

20  Defendants deny the remaining allegations in paragraph 31.

21         32.     As to paragraph 32, to the extent that the paragraph alleges Oakland's eviction

22  moratorium contravenes any law, Defendants deny these allegations. Defendants lack sufficient

23  knowledge or information to form a belief as to the truth of the remaining allegations in paragraph

24  32 and on that basis denies them.

25         33.     As to paragraph 33, to the extent that the paragraph alleges Oakland's eviction

26  moratorium contravenes any law, Defendants deny these allegations. Defendants lack sufficient

1  knowledge or information to form a belief as to the truth of the remaining allegations in paragraph

2  33 and on that basis denies them.

3       34.    Defendants lack sufficient knowledge or information to form a belief as to the truth

4  of the allegations in paragraph 34 and on that basis denies them.

5       35.    As to paragraph 35, to the extent that the paragraph alleges Oakland's eviction

6  moratorium contravenes any law, the Defendants deny these allegations. Defendants lack sufficient

7  knowledge or information to form a belief as to the truth of the remaining allegations in paragraph

8  35 and on that basis denies them.

9       36.    As to paragraph 35, to the extent that the paragraph alleges Oakland's eviction

10  moratorium contravenes any law, the Defendants deny these allegations. Defendants lack sufficient

11  knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 3

12  and on that basis denies them.

13                            **FIRST CAUSE OF ACTION**

14       **(Violation of the U.S. Const. Art. V and 42 U.S.C. 1983)**

15       37.    Defendants hereby incorporate by reference all responses contained in paragraphs 1

16  through 36 of this answer.

17       38.    As to paragraph 38, Defendants deny the allegations.

     39.    As to paragraph 39, Defendants deny the allegations.

18

19       40.    As to paragraph 40, Defendants deny the allegations.

20       41.    As to paragraph 41, Defendants deny the allegations

21       42.    As to paragraph 42, Defendants deny the allegations.

22                           **SECOND CAUSE OF ACTION**

23       **(Violation of the Cal. Const. Art. I, Sec. 19)**

24       43.    Defendants hereby incorporate by reference all responses contained in paragraphs 1

25  through 42 of this answer.

26       44.    As to paragraph 44, Defendants deny the allegations.

1  45.  As to paragraph 45, Defendants deny the allegations.

2  46.  As to paragraph 46, Defendants deny the allegations.

3

**THIRD CAUSE OF ACTION**
**(Violation of Due Process – 42 U.S.C. 1983)**

4

5  47.  Defendants hereby incorporate by reference all responses contained in paragraphs 1 through 46 of this answer.

6

7  48.  Defendants admit that "the Bay Area has seen significant improvement in circumstances relating to the pandemic since March of 2020" and that the Bay Area "has a high rate

8

of vaccinations." Defendants lack sufficient knowledge or information to form a belief as to the

9

truth of the allegation that "federal and state officials have recognized that Covid-19 is either in, or

10

moving to, an endemic stage,"  and on that basis deny the allegation. Defendants deny the

11

remaining allegations in paragraph 48.

12  49.  As to paragraph 49, Defendants deny the allegations.

13  50.  As to paragraph 50, Defendants deny the allegations.

14

**FOURTH CAUSE OF ACTION**
**(Violation of Equal Protection – 42 U.S.C. 1983)**

15

16  51.  City hereby incorporates by reference all responses contained in paragraphs 1 through 50 of this answer.

17

18  52.  As to paragraph 52, Defendants deny the allegations.

19  53.  As to paragraph 53, Defendants deny the allegations.

20

**FIFTH CAUSE OF ACTION**
**(Writ of Mandate – Cal. Code Civ. Proc. 1084 or 1094.5)**

21

22  54.  The City hereby incorporates by reference all responses contained in paragraphs 1 through 53 of this answer.

23

24  55.  As to paragraph 55, Defendants deny the allegations.

25  56.  As to paragraph 56, Defendants admit that, based on information and belief,

26

Plaintiffs are requesting a declaration, and/or writ of mandamus or mandate to set aside Oakland's

1  eviction moratorium, as well as an immediate stay to enjoin Defendants from enforcing the

2  moratorium. Defendants deny the remaining allegations in paragraph 56.

3       57.     As to paragraph 57(a), Defendants deny the allegations. As to paragraph 57(b),

4  Defendants lack sufficient knowledge or information to form a belief as to the truth of allegations

5  related to the County's actions. Defendants deny the remaining allegations in paragraph 57.

6       58.     As to paragraph 58, Defendants deny the allegations.

7       59.     As to paragraph 59, Defendants deny the allegations.

8       60.     As to paragraph 60, Defendants deny the allegations.

9       61.     As to paragraph 61, Defendants deny the allegations.

10       62.     As to paragraph 62, Defendants deny the allegations.

11

12  **AFFIRMATIVE DEFENSES**

13  **First Affirmative Defense (Lack of Capacity To Be Sued)**

14       The Oakland City Council is not a separate legal entity from the City of Oakland. It lacks

15  the capacity to sue and be sued and is not a "person" within the meaning of 42 U.S.C. § 1983.

16  **Second Affirmative Defense (Absolute Immunity)**

17       Members of the Oakland City Council are entitled to absolute immunity for their legislative

18  acts.

19  **Third Affirmative Defense (Failure To State a Claim)**

20       The Complaint and each purported cause of action asserted in it fails to state facts sufficient

21  to constitute a cause of action upon which relief may be granted.

22  **Fourth Affirmative Defense (Ripeness)**

23       The Complaint and each purported cause of action asserted in it is in whole or in part barred

24  because Plaintiffs' claims are not ripe for adjudication; Plaintiffs have not yet obtained final

25  determinations as the application of the challenged ordinances as to their interests and have not

26  alleged they sought other available relief.

**Fifth Affirmative Defense (Standing)**

Plaintiffs lack standing to assert their claims in whole or in part. Plaintiffs have failed to allege an injury fairly traceable to the City's conduct. Some plaintiffs purchased property or incorporated after the challenged City eviction ordinance was in effect. Plaintiffs have also failed to allege an injury traceable to the City's ordinance as distinct from other laws. Similarly, a favorable decision against the City would not address their alleged injury due to the continued operation of other laws.

**Sixth Affirmative Defense (Failure to Exhaust Administrative Remedies)**

The Complaint and each purported cause of action asserted in it is in whole or in part barred because Plaintiffs failed to exhaust available administrative remedies, as Plaintiffs failed to raise their grievances in the underlying proceedings, failed to obtain final determinations as the application of the challenged ordinances as to their interests, and failed to seek other relief.

**Seventh Affirmative Defense (Laches)**

The Complaint and each purported cause of action asserted is in whole or in part barred because by the equitable doctrine of laches. Plaintiffs waited two years to bring their claims.

**Eighth Affirmative Defense (Estoppel and Waiver)**

The Complaint and each purported cause of action asserted in it is in whole or in part barred because by the equitable doctrines of estoppel and waiver because Plaintiffs have acted or made representations inconsistent with the assertion of their rights.

**Ninth Affirmative Defense (Additional Defenses)**

The City reserves the right to raise additional defenses should they become apparent during the course of this action.

**PRAYER FOR RELIEF**

Wherefore, Defendants pray for relief as follows:

1.     Plaintiff takes nothing from the Complaint;

2.     The Court enters judgment against Plaintiff and in favor of Defendants;

3.      The Court awards Defendants' costs and attorney's fees; and

4.      For such other and further relief as the Court deems just and proper.

Date: April 7, 2022

BARBARA J. PARKER, City Attorney
CYNTHIA STEIN, Deputy City Attorney

By:   /s/ Cynthia Stein
Attorneys for Defendants,
CITY OF OAKLAND, et al.

# EXHIBIT L

8.22.300 - Just Cause for Eviction Introductory Clauses.

Whereas, the laws of the State of California and the Housing Element of the General Plan of the city of Oakland prohibit arbitrary discrimination by landlords, and

Whereas, the right to occupancy of safe, decent, and sanitary housing is a human right, and

Whereas, the city of Oakland's prolonged affordable housing crisis disproportionately impacts low income and working class households, senior citizens, people of color, and people with disabilities, and thereby increases homelessness and crime, harms neighborhood stability and cohesion, and damages business prospects for small businesses, and

Whereas, recent state laws that eliminate limits on rent increases upon the vacation of rental units provide added economic incentive to evict tenants, such that the number of no cause evictions has increased markedly in recent years, and

Whereas, the absence of a local law prohibiting a landlord from evicting a tenant without good cause is a significant barrier to implementation and enforcement of the Oakland Residential Rent Arbitration Ordinance, and

Whereas, residential tenants, who constitute approximately sixty-five percent (65%) of the residents of Oakland, suffer great and serious hardship when forced to move from their homes, and

Whereas, basic fairness requires that a landlord must not terminate the tenancy of a residential tenant without good, just, non-arbitrary, non-discriminatory reasons, and

Whereas, the good cause eviction protections enacted in San Francisco, Berkeley, Hayward, and other California cities, have aided community stability and reduced urban problems associated with arbitrary disruption of stable households, and

Whereas, the general welfare of all citizens of Oakland would be enhanced if no cause evictions were prohibited,

Therefore, the electorate of the city of Oakland hereby enacts this ordinance, prohibiting a landlord from terminating a tenancy without good or just cause.

(Ord. 12537 § 1 (part), 2003)

8.22.310 - Title.

This ordinance shall be known as the Just Cause for Eviction Ordinance.

(Ord. 12537 § 1 (part), 2003)

8.22.320 - Findings.

1. A public emergency exists in the city due to the lack of adequate, safe, sanitary, and affordable housing. This emergency disproportionately impacts tenants of residential rental units, a majority of whom are people of color, working class families, the homeless, those of low income, and the elderly and disabled.

2. Just cause eviction protections would strengthen and effectuate existing rent control legislation in Oakland as la are able to use no cause evictions to evade the Oakland Residential Rent Arbitration Ordinance.

3. Oakland presently has no just cause protections for tenants. As a result, any residential tenant may be subjected to eviction at anytime and without reason.

4. Without just cause protections, many tenants are afraid to demand their right to a safe, inhabitable home.

5. Furthermore, Oakland is experiencing extreme housing market pressures from neighboring Santa Clara and San Francisco counties, resulting in a decrease in the vacancy rate and an increase in residential rental prices.

6. This situation has been exacerbated by the Costa-Hawkins law, which, by eliminating controls on rents upon the voluntary vacation of a rental unit, has provided added economic incentive to evict tenants. From January 1999 through December 2000, the effective date of foil implementation of the Costa-Hawkins law, Sentinel Fair Housing has reported a three hundred (300) percent increase in the eviction of Oakland tenants. This trend has continued to date.

7. Without the institution of just cause protections, Oakland's housing emergency will continue, and will contribute to increases in homelessness, crime, neighborhood instability, and harm to small businesses.

8. Many municipal jurisdictions in California, including Berkeley, Hayward, and San Francisco in the Bay Area, have effectively utilized just cause protections to preserve affordable housing. Such protections have helped abate the urban problems associated with neighborhood instability, homelessness, and illegal activity in vacant units, providing concrete benefits for both landowners and tenants.

9. Just cause eviction protections are consistent with the Housing Element of the Master Plan of the city of Oakland, which states that residents have the right to decent housing in pleasant neighborhoods at prices they can afford.

(Ord. 12537 § 1 (part), 2003)


8.22.330 - Purpose.

The purpose of this Chapter is to defend and nurture the stability of housing and neighborhoods in the city of Oakland by protecting tenants against arbitrary, unreasonable, discriminatory, or retaliatory evictions, thereby maintaining diversity in Oakland neighborhoods and communities while recognizing the rights of rental property owners. This chapter is intended to address housing problems in the city of Oakland so as to preserve the public health, safety, and welfare, and to advance the housing policies of the city with regard to low and fixed income persons, people of color, students, and those needing special protections, such as long-term elderly and disabled tenants.

(Ord. 12537 § 1 (part), 2003)


8.22.340 - Definitions.

"Landlord" means an owner of record, or lessor or sublessor of an owner of record, or any other person or entity entitled either to receive rent for the use or occupancy of any rental unit or to maintain an action for possession of a rental unit, or an agent, representative, or successor of any of the foregoing.

"Owner of Record" means a natural person, who is an owner of record holding an interest equal to or greater than thirty-three percent (33%) in the property at the time of giving a notice terminating tenancy and at all times thereafter, until and including the earlier of the tenant's surrender of possession of the premises or the execution of a writ of possession pursuant to the judgment of a court of competent jurisdiction; but not including any lessor, sublessor, or agent of the owner of record.

"Rent" means the consideration, including any deposit, bonus, benefit, or gratuity demanded or received for, or in connection with, the use or occupancy of rental units and housing services. Such consideration shall include, but not be limited to, moneys and fair value of goods or services rendered to or for the benefit of the landlord under the rental agreement, or in exchange for a rental unit or housing services of any kind.

"Rent Board" means city of Oakland Housing, Residential Rent, and Relocation Board (HRRRB), aka Residential Rent Arbitration Board (RRAB), aka Rent Arbitration Board, aka Oakland Rent Board, aka Rent Board, established under Ordinance No. 9980 and subsequent amendments.

"Rental Agreement" means an agreement, oral, written, or implied, between a landlord and a tenant for the use and/or occupancy of a rental unit.

"Rental Unit" (aka Unit, aka Premises) means any unit in any real property, regardless of zoning status, including the land appurtenant thereto, that is rented or available for rent for residential use or occupancy (regardless of whether the unit is also used for other purposes), together with all housing services connected with use or occupancy of such property, such as common areas and recreational facilities held out for use by the tenant.

"Property" means a parcel of real property, located in the city of Oakland, that is assessed and taxed as an undivided whole.

"Tenant" means any renter, tenant, subtenant, lessee, or sublessee of a rental unit, or any group of renters, tenants, subtenants, lessees, sublessees of a rental unit, or any other person entitled to the use or occupancy of such rental unit, or any successor of any of the foregoing.

"Skilled Nursing Facility" means a health facility or a distinct part of a hospital that provides, at a minimum, skilled nursing care and supportive care to patients whose primary medical need is the availability of skilled nursing care on an extended basis. Such facility must provide twenty-four (24) hour inpatient care, an activity program, and medical, nursing, dietary, pharmaceutical services. Additionally, the facility must provide effective arrangements, confirmed in writing, through which services required by the patients but not regularly provided within the facility can be obtained promptly when needed.

"Health Facility" means any facility, place or building that is organized, maintained, and operated for the diagnosis, care, and treatment of human illness, physical or mental, including convalescence and rehabilitation, and including care during and after pregnancy, or for any one or more of these purposes.

"Maximum Lawful Rent" means the maximum rent which may lawfully be charged for such unit under the terms of the Oakland Residential Rent Arbitration Ordinance or successor ordinances intended to limit or regulate rent charged for residential rental units within the city of Oakland.

"Business Tax Declaration" means the annual declaration required to be filed in connection with a landlord's obtaining or renewing a city business license for rental units. Any failure by a landlord to file such a declaration, whether pursuant to an exemption or otherwise, shall not relieve a rental unit from being subject to the provisions of

this Chapter.

"Child/Parent" means a child/parent relationship is one in which a child is either a parent's biological child or adopted child, provided that such relationship was established prior to the child's eighteenth birthday and at least one year prior to the attempted eviction. At the time of attempted eviction, a child of an owner of record must be over the age of eighteen (18) or be emancipated.

"Tenants' Rights Organization" means any unincorporated tenant's association, incorporated tenants association, nonprofit housing and/or tenant's rights entity of any form.

(Ord. 12537 § 1 (part), 2003)

8.22.350 - Applicability and Exemptions.

The provisions of this Chapter shall apply to all rental units in whole or in part, including where a notice to vacate/quit any such rental unit has been served as of the effective date of this Chapter but where any such rental unit has not yet been vacated or an unlawful detainer judgment has not been issued as of the effective date of this Chapter. However, Section 6 [8.22.360] and Section 7(A)-(E) [8.22.370(A) through 8.22.370(E)] of the chapter [O.M.C. Chapter 8.22, Article II] shall not apply to the following types of rental units:

A. Rental units exempted from Part 4, Title 4, Chapter 2 of the California Civil Code (CCC) by CCC § 1940(b).

B. Rental units in any hospital, skilled nursing facility, or health facility.

C. Rental units in a nonprofit facility that has the primary purpose of providing short term treatment, assistance, or therapy for alcohol, drug, or other substance abuse and the housing is provided incident to the recovery program, and where the client has been informed in writing of the temporary or transitional nature of the housing at its inception.

D. Rental units in a nonprofit facility which provides a structured living environment that has the primary purpose of helping homeless persons obtain the skills necessary for independent living in permanent housing and where occupancy is restricted to a limited and specific period of time of not more than twenty-four (24) months and where the client has been informed in writing of the temporary or transitional nature of the housing at its inception.

E. Rental units in a residential property where the owner of record occupies a unit in the same property as his or her principal residence and regularly shares in the use of kitchen or bath facilities with the tenants of such rental units. For purposes of this Section, the term owner of record shall not include any person who claims a homeowner's property tax exemption on any other real property in the State of California.

F. Reserved.

G. A unit that is held in trust on behalf of a developmentally disabled individual who permanently occupies the unit, or a unit that is permanently occupied by a developmentally disabled parent, sibling, child, or grandparent of the owner of that unit.

H. Reserved.

I. A rental unit or rental units contained in a building that has a certificate of occupancy for the new construction of the unit or building in which the rental unit(s) is contained is issued on or after December 31, 1995.

1. This exemption applies only to rental units that were newly constructed from the ground up and does not units that were created as a result of rehabilitation, improvement or conversion of commercial space, or residential rental space.

2. If no certificate of occupancy was issued for the rental unit or building, in lieu of the date a certificate of occupancy, the date the last permit for the new construction was finalized prior to occupancy shall be used.

(Res. No. 87325, § 1, 7-24-2018; Res. No. 86320, § 2, 7-19-2016; Ord. 12537 § 1 (part), 2003)

## 8.22.360 - Good cause required for eviction.

A. No landlord shall endeavor to recover possession, issue a notice terminating tenancy, or recover possession of a rental unit in the city of Oakland unless the landlord is able to prove the existence of one of the following grounds:

1. The tenant has failed to pay rent to which the landlord is legally entitled pursuant to the lease or rental agreement and under provisions of state or local law, and said failure has continued after service on the tenant of a written notice correctly stating the amount of rent then due and requiring its payment within a period, stated in the notice, of not less than three days. However, this subsection shall not constitute grounds for eviction where tenant has withheld rent pursuant to applicable law.

2. The tenant has continued, after written notice to cease, to substantially violate a material term of the tenancy other than the obligation to surrender possession on proper notice as required by law.

   a. Notwithstanding any lease provision to the contrary, a landlord shall not endeavor to recover possession of a rental unit as a result of subletting of the rental unit by the tenant if the landlord has unreasonably withheld the right to sublet following a written request by the tenant, so long as the tenant continues to reside in the rental unit and the sublet constitutes a one-for-one replacement of the departing tenant(s). If the landlord fails to respond to the tenant in writing within fourteen (14) days of receipt of the tenant's written request, the tenant's request shall be deemed approved by the landlord.

   b. Notwithstanding any lease provision to the contrary, a landlord shall not endeavor to recover possession of a rental unit based on the addition of occupants to the rental unit if the landlord has unreasonably refused a written request by the tenant to add such occupant(s) to the unit, so long as the maximum number of occupants does not exceed the lesser of the amounts allowed by Subsection (i) or (ii) of this Section 8.22.360A.2.b. If the landlord fails to respond in writing with a description of the reasons for the denial of the request within fourteen (14) days of receipt of the tenant's written request, the tenant's request shall be deemed approved by the landlord. However, for units restricted as affordable housing as defined by O.M.C. Section 15.72.030, a written resident request to add an occupant shall be deemed incomplete and inadequate until such resident has provided all documentation required for qualification of such additional occupant and the household after the addition of such occupant under the rules restricting the housing. A landlord's reasonable refusal of the tenant's written request may not be based on either of the following: (1) the proposed additional occupant's lack of creditworthiness, if that person will not be legally obligated to pay some or all of the rent to the landlord, or (2) the number of occupants allowed by the rental agreement or lease.

With the exception of the restrictions stated in the preceding sentence, a landlord's reasonable refusal of the tenant's written request may be based on, but is not limited to, the ground that the landlord resides in the same unit as the tenant or the ground that the total number of occupants in a unit exceeds (or with the proposed additional occupant(s) would exceed) the lesser of (i) or (ii):

(i) Two persons in a studio unit, three persons in a one-bedroom unit, four persons in a two-bedroom unit, six persons in a three-bedroom unit, or eight persons in a four-bedroom unit;

(ii) The maximum number permitted in the unit under state law and/or other local codes such as the Building, Fire, Housing and Planning Codes.

This Subsection 8.22.360 A.2.b. is not intended by itself to establish a direct landlord-tenant relationship between the additional occupant and the landlord or to limit a landlord's rights under the Costa-Hawkins Rental Housing Act, California Civil Code Section 1954.50 et seq. (as it may be amended from time to time). Nothing in this subsection authorizes an occupancy that would result in either transient habitation commercial activity as defined by O.M.C. Section 17.10.440 or semi-transient commercial activity as defined by O.M.C. Section 17.10.120.

    c. Before endeavoring to recover possession based on the violation of a lawful obligation or covenant of tenancy regarding subletting or limits on the number of occupants in the rental unit, the landlord shall serve the tenant a written notice of the violation that provides the tenant with a minimum of fourteen (14) days opportunity to cure the violation. The tenant may cure the violation by making a written request to add occupants referenced in Subsection a or b of Section 8.22.360 A.2. or by using other reasonable means to cure the violation, including, without limitation, the removal of any additional or unapproved occupant. Nothing in this Section 8.22.360 A.2.c. is intended to limit any other rights or remedies that the law otherwise provides to landlords.

3. The tenant, who had an oral or written agreement with the landlord which has terminated, has refused after written request or demand by the landlord to execute a written extension or renewal thereof for a further term of like duration and under such terms which are materially the same as in the previous agreement; provided, that such terms do not conflict with any of the provisions of this Chapter. [O.M.C. Chapter 8.22, Article II].

4. The tenant has willfully caused substantial damage to the premises beyond normal wear and tear and, after written notice, has refused to cease damaging the premises, or has refused to either make satisfactory correction or to pay the reasonable costs of repairing such damage over a reasonable period of time.

5. The tenant has continued, following written notice to cease, to be so disorderly as to destroy the peace and quiet of other tenants at the property.

6. The tenant has used the rental unit or the common areas of the premises for an illegal purpose including the manufacture, sale, or use of illegal drugs.

7. The tenant has, after written notice to cease, continued to deny landlord access to the unit as required by state law.

8. The owner of record seeks in good faith, without ulterior reasons and with honest intent, to recover possession of the rental unit for his or her occupancy as a principal residence where he or she has

previously occupied the rental unit as his or her principal residence and has the right to recover possession for his or her occupancy as a principal residence under a written rental agreement with the current tenants.

9. The owner of record seeks in good faith, without ulterior reasons and with honest intent, to recover possession for his or her own use and occupancy as his or her principal residence, or for the use and occupancy as a principal residence by the owner of record's spouse, domestic partner, child, parent, or grandparent.

   a. Here the owner of record recovers possession under this Subsection (9) [Paragraph 8.22.360 A.9], and where continuous occupancy for the purpose of recovery is less than thirty-six (36) months, such recovery of the residential unit shall be a presumed violation of this Chapter.

   b. The owner of record may not recover possession pursuant to this subsection more than once in any thirty-six (36) month period,

   c. The owner must move in to unit within three (3) months of the tenant's vacation of the premises.

   d. Reserved.

   e. A landlord may not recover possession of a unit from a tenant under Subsection 6(A)(9) [8.22.360 A.9], if the landlord has or receives notice, any time before recovery of possession, that any tenant in the rental unit:

      i. Has been residing in the unit for five (5) years or more; and

         (a) Is sixty (60) years of age or older; or

         (b) Is a disabled tenant as defined in the California Fair Employment and Housing Act (California Government Code § 12926); or

      ii. Has been residing in the unit for five (5) years or more, and is a catastrophically ill tenant, defined as a person who is disabled as defined by Subsection (e)(i)(b) [8.22.360 A.9.e.i.b]]and who suffers from a life threatening illness as certified by his or her primary care physician.

   f. The provisions of Subsection (e) [8.22.360 A.9.e] above shall not apply where the landlord's qualified relative who will move into the unit is 60 years of age or older, disabled or catastrophically ill as defined by Subsection (e) [8.22.360 A.9.e], and where every rental unit owned by the landlord is occupied by a tenant otherwise protected from eviction by Subsection (e) [8.22.360 A.9.e].

   g. A tenant who claims to be a member of one of the classes protected by Subsection 6(A)(9)(e) [8.22.360 A.9.e] must submit a statement, with supporting evidence, to the landlord. A landlord may challenge a tenant's claim of protected status by requesting a hearing with the Rent Board. In the Rent Board hearing, the tenant shall have the burden of proof to show protected status. No civil or criminal liability shall be imposed upon a landlord for challenging a tenant's claim of protected status. The Rent Board shall adopt rules and regulations to implement the hearing procedure.

   h. Once a landlord has successfully recovered possession of a rental unit pursuant to Subsection 6(A)(9) [8.22.360 A.9], no other current landlords may recover possession of any other rental unit in the building under Subsection 6(A)(9) [8.22.360 A.9]. Only one specific unit per building may undergo a Subsection 6(A)(9) [8.22.360 A.9] eviction. Any future evictions taking place in the same building under Subsection 6(A)(9) [8.22.360 A.9] must be of that same unit, provided that a landlord may file a

petition with the Rent Board or, at the landlord's option, commence eviction proceedings, claiming that disability or other similar hardship prevents him or her from occupying a unit which was previously the subject of a Subsection 6(A)(9) [8.22.360 A.9] eviction. The Rent Board shall adopt rules and regulations to implement the application procedure.

    i. A notice terminating tenancy under this Subsection must contain, in addition to the provisions required under Subsection 6(B)(5) [8.22.360 B.5]:

        i. A listing of all property owned by the intended future occupant(s).

        ii. The address of the real property, if any, on which the intended future occupant(s) claims a homeowner's property tax exemption.

10. The owner of record, after having obtained all necessary permits from the City of Oakland on or before the date upon which notice to vacate is given, seeks in good faith to undertake substantial repairs that cannot be completed while the unit is occupied, and that are necessary either to bring the property into compliance with applicable codes and laws affecting health and safety of tenants of the building, or under an outstanding notice of code violations affecting the health and safety of tenants of the building.

    a. Upon recovery of possession of the rental unit, owner of record shall proceed without unreasonable delay to effect the needed repairs. The tenant shall not be required to vacate pursuant to this section, for a period in excess of three months; provided, however, that such time period may be extended by the Rent Board upon application by the landlord. The Rent Board shall adopt rules and regulations to implement the application procedure.

    b. Upon completion of the needed repairs, owner of record shall offer tenant the first right to return to the premises at the same rent and pursuant to a rental agreement of substantially the same terms, subject to the owner of record's right to obtain rent increase for capital improvements consistent with the terms of the Oakland Residential Rent Arbitration Ordinance or any successor ordinance.

    c. A notice terminating tenancy under this Subsection 6(A)(10) [8.22.360 A.10] must include the following information:

        i. A statement informing tenants as to their right to payment under the Oakland Relocation Ordinance.

        ii. A statement that "When the needed repairs are completed on your unit, the landlord must offer you the opportunity to return to your unit with a rental agreement containing the same terms as your original one and with the same rent (although landlord may be able to obtain a rent increase under the Oakland Residential Rent Arbitration Ordinance [O.M.C. Chapter 8.22, Article I)."

        iii. Reserved.

        iv. An estimate of the time required to complete the repairs and the date upon which it is expected that the unit will be ready for habitation.

11. The owner of record seeks to remove the property from the rental market in accordance with the terms of the Ellis Act (California Government Code Section 7060 et seq.).

B. The following additional provisions shall apply to a landlord who seeks to recover a rental unit pursuant to Subsection 6(A) [8.22.360 A]:

    1. The burden of proof shall be on the landlord in any eviction action to which this order is applicable to

prove compliance with Section 6 [8.22.360].

2. A landlord shall not endeavor to recover possession of a rental unit unless at least one of the grounds enumerated in Subsection 6(A) [8.22.360 A] above is stated in the notice and that ground is the landlord's dominant motive for recovering possession and the landlord acts in good faith in seeking to recover possession.

3. Where a landlord seeks to evict a tenant under a just cause ground specified in Subsections 6(A)(7, 8, 9, 10, 11) [8.22.360 A.7, 8, 9, 10, 11], she or he must do so according to the process established in CCC § 1946 (or successor provisions providing for 30 day notice period); where a landlord seeks to evict a tenant for the grounds specified in Subsections 6(A)(1, 2, 3, 4, 5, 6) [8.22.360 A.1, 2, 3, 4, 5, 6], she or he must do so according to the process established in CCP § 1161 (or successor provisions providing for 3 day notice period).

4. Any written notice as described in Subsection 6(A)(2, 3, 4, 5, 7) [8.22.360 A.2, 3, 4, 7] shall be served by the landlord prior to a notice to terminate tenancy and shall include a provision informing tenant that a failure to cure may result in the initiation of eviction proceedings.

5. Subsection 6(B)(3) [8.22.360 B.3] shall not be construed to obviate the need for a notice terminating tenancy to be stated in the alternative where so required under CCP § 1161.

6. A notice terminating tenancy must additionally include the following:

   a. A statement setting forth the basis for eviction, as described in Subsections 6(A)(1) [8.22.360 A.1] through 6(A)(11) [8.22.360 A.11];

   b. A statement that advice regarding the notice terminating tenancy is available from the Rent Board.

   c. Where an eviction is based on the ground specified in Subsection 6(A)(9) [8.22.360 A.9], the notice must additionally contain the provisions specified in Subsection 6(A)(9)(i) [8.22.360 A.9.i].

   d. Where an eviction is based on the ground specified in Subsection 6(A)(10) [8.22.360 A.10], the notice must additionally contain the provisions specified in Subsection 6(A)(10)(c) [8.22.360 A.10].

   e. Failure to include any of the required statements in the notice shall be a defense to any unlawful detainer action.

7. Within ten (10) days of service of a notice terminating tenancy upon a tenant, a copy of the same notice and any accompanying materials must be filed with the Rent Board. Each notice shall be indexed by property address and by the name of the landlord. Such notices shall constitute public records of the City of Oakland, and shall be maintained by the Rent Board and made available for inspection during normal business hours. Failure to file the notice within ten (10) days of service shall be a defense to any unlawful detainer action.

C. Reserved.

D. Substantive limitations on landlord's right to evict. This Subsection 8.22.360 D. is intended as both a substantive and procedural limitation on a landlord's right to evict.

1. In any action to recover possession of a rental unit pursuant to Section 6 [8.22.360], a landlord must allege and prove the following:

   a. the basis for eviction, as set forth in Subsection 6(A)(1) through 6(A)(11) [8.22.360 A.1 though 8.22.360 A.11] above, was set forth in the notice of termination of tenancy or notice to quit;

b. that the landlord seeks to recover possession of the unit with good faith, honest intent and with no ulter

2. If landlord claims the unit is exempt from this ordinance, landlord must allege and prove that the unit is covered by one of the exceptions enumerated in Section 5 [8.22.350] of this Chapter. Such allegations must appear both in the notice of termination of tenancy or notice to quit, and in the complaint to recover possession. Failure to make such allegations in the notice shall be a defense to any unlawful detainer action.

3. A landlord's failure to comply with the obligations described in Subsections 7(D)(1) or (2) [*sic*] [8.22.360 D.1. or 8.22.360 D.2.] shall be a defense to any action for possession of a rental unit.

4. In any action to recover possession of a rental unit filed under subsection 8.22.360 A.1. it shall be a defense if the landlord impeded the tenant's effort to pay rent by refusing to accept rent paid on behalf of the tenant from a third party, or refusing to provide a W-9 form or other necessary documentation for the tenant to receive rental assistance from a government agency, non-profit organization, or other third party. Acceptance of rental payments made on behalf of the tenant by a third party shall not create a tenancy between the landlord and the third party as long as either the landlord or the tenant provide written notice that no new tenancy is intended.

5. A landlord's failure to fully comply with any applicable law requiring payment of relocation benefits to the tenant, such as those provided by Articles III, VII, and VIII of this Chapter and Chapter 15.60 of the Oakland Municipal Code, including but not limited to amount and timing, shall be a defense to any action for possession of a rental unit.

6. Notwithstanding any change in the terms of a tenancy pursuant to Civil Code Section 827, a tenant may not be evicted for a violation of a covenant or obligation that was not included in the tenant's written or oral rental agreement at the inception of the tenancy unless: (1) the change in the terms of the tenancy is authorized by the Rent Ordinance or California Civil Code Sections 1947.5 or 1947.12, or required by federal, state, or local law, or regulatory agreement with a government agency; or (2) the change in the terms of the tenancy was accepted in writing by the tenant after receipt of written notice from the landlord that the tenant need not accept such new term as part of the rental agreement and in exchange for valid consideration.

E. In the event that new state or federal legislation confers a right upon landlords to evict tenants for a reason not stated herein, evictions proceeding under such legislation shall conform to the specifications set out in this Chapter [O.M.C. Chapter 8.22, Article II].

F. The City Council is authorized to modify the Just Cause for Eviction Ordinance (Measure EE, O.M.C., Chapter 8, Article II (8.22.300 et seq.)) for the purpose of adding limitations on a landlord's right to evict, but the City Council may not modify any exemption from the ordinance from which this section is derived contained in Section 8.22.350.

( Ord. No. 13608 , § 4(Att. C), 7-21-2020; Ord. No. 13589 , § 8, 3-27-2020; Res. No. 87325, § 2, 7-24-2018; Ord. 12537 § 1 (part), 2003)

8.22.370 - Remedies.

A. Remedies for violation of eviction controls.

1. ~~A tenant who prevails in an action brought by a landlord for possession of the premises shall be entitled~~

~~to bring an action against the landlord and shall be entitled to recover actual and punitive damages, costs, and reasonable attorney's fees.~~ [6]

2. Whenever a landlord or anyone assisting a landlord wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of Subsection 6(A) [8.22.360 A], the tenant or Board may institute a civil proceeding for injunctive relief, money damages of not less than three times actual damages (including damages for mental or emotional distress), and whatever other relief the court deems appropriate. In the case of an award of damages for mental or emotional distress, said award shall only be trebled if the trier of fact finds that the landlord acted in knowing violation of or in reckless disregard of this ordinance. The prevailing tenant shall be entitled to reasonable attorney's fees and costs pursuant to order of the court.

3. The remedies available in this section shall be in addition to any other existing remedies which may be available to the tenant.

B. Violation of the Ordinance. Any violation of the provisions of this ordinance or application thereof shall entitle the aggrieved tenant to actual ~~and punitive~~ * damages according to proof and costs and attorney's fees.

C. Authorization of City Attorney to enforce the Ordinance. The City Attorney shall have the authority to enforce provisions of this ordinance; to bring actions for injunctive relief on behalf of the city, or on behalf of tenants seeking compliance by landlords with the ordinance.

D. It shall be unlawful for a landlord to refuse to rent or lease or otherwise deny to or withhold from any person any rental unit because the age of a prospective tenant would result in the tenant acquiring rights under this Chapter [O.M.C. Chapter 8.22, Article II]. Any person who refuses to rent in violation of the subsection shall, in addition to any other penalties provided by state or federal law, be guilty of a misdemeanor.

E. It shall be unlawful for a landlord or any other person who willfully assists the landlord to endeavor to recover possession or to evict a tenant except as provided in Subsection 6(A) [8.22.360 A].

(Ord. 12537 § 1 (part), 2003)

> *Footnotes:*
>
> --- (**6**) ---
>
> *Editor's note. - The stricken through material was originally part of ordinance 12537 (Measure EE) but was ruled invalid in Alameda Superior Court No. RG03081362 (Kim v. City of Oakland) and accepted in the settlement of California Court of Appeals (1 st District) No. A114855 (Rental Housing Association of Northern Alameda County v. City of Oakland) effective November 13, 2007.*

## 8.22.380 - Non-waiverability.

The provisions of this Chapter may not be waived, and any term of any lease, contract, or other agreement which purports to waive or limit a tenant's substantive or procedural rights under this ordinance are contrary to public policy, unenforceable, and void.

(Ord. 12537 § 1 (part), 2003)

## 8.22.390 - Partial invalidity.

A. If any provision of this Chapter or application thereof is held to be invalid, this invalidity shall not affect other provisions or applications of this Chapter which can be given effect without the invalid provisions or

applications, and to this end the provisions and applications of this Chapter are severable.

B.  If any provision of this Just Cause for Eviction Ordinance (Measure EE, O.M.C., Chapter 8, Article II (8.22.300 et seq.)) is invalidated or required to be modified by a court decision or change in State or Federal law, the City Council is authorized to make such modifications to conform to the court decision or change in state law provided such modifications effectuate the purpose of the Just Cause for Eviction Ordinance and the original text.

(Res. No. 87325, § 3, 7-24-2018; Ord. 12537 § 1 (part), 2003)

# EXHIBIT M

# NOTICE OF CORRECTION

Dear Voter: There was a typographical error in the ballot label for **Measure Y**.

This is the correct ballot label.

| **Y** Shall the Measure amending Oakland's Just Cause for Eviction Ordinance ("Ordinance") to: (1) remove the exemption for owner occupied duplexes and triplexes; and (2) allow the City Council, without returning to the voters, to add limitations on a landlord's right to evict under the Ordinance, be adopted? | **YES** |
| | **NO** |

If you have any questions, please contact the City of Oakland, Office of the City Clerk at (510) 238-3226.

# CITY OF OAKLAND MEASURE Y

| Y Shall the Measure amending Oakland's Just Yes Cause for Eviction Ordinance ("Ordinance") to: (1) remove the exemption for owner occupied duplexes and triplexes; and (2) allow the City Council, without returning to the voters, to add limitations on a landlord's right to evict under the Ordinance, be adopted? | YES |
| | NO |

## CITY ATTORNEY'S BALLOT TITLE AND SUMMARY OF MEASURE Y

**TITLE: Proposed Amendments to Oakland's Just Cause for Eviction Ordinance Eliminating Exemptions for Owner-Occupied Duplexes and Triplexes and Authorizing the City Council to Add Limitations on a Landlord's Right to Evict under the Ordinance Without Voter Approval**

## CITY ATTORNEY'S SUMMARY OF MEASURE Y:

In 2002 Oakland voters approved Oakland's Just Cause for Eviction Ordinance ("Ordinance") (Oakland Municipal Code ("OMC") section 8.22.300, *et seq.*; also referred to as Measure EE). The Ordinance generally allows landlords to evict tenants from residential rental units covered by the Ordinance only if there is "just cause" for the eviction. The ordinance specifies just cause grounds for eviction, for example, failure to pay rent, lease violation, owner move-in.

This measure would amend the Ordinance to:

- make owner-occupied duplexes and triplexes subject to just-cause for eviction requirements
- authorize the City Council, without voter approval, to add limitations on a landlord's right to evict under the ordinance;
- delete ordinance provisions that a court invalidated; and
- give the City Council authority to amend the ordinance to comply with changes in state or federal law and delete provisions that courts invalidate in the future.

Exemption for Owner-Occupied Duplexes and Triplexes

The ordinance does not apply to rental units in two- or three-unit properties if an owner occupies one of the units, i.e., such owners are not required to establish a just cause ground to evict tenants. This measure would remove this exemption so that the ordinance would cover tenants who rent units in owner-occupied duplexes and triplexes; owners of these units would be entitled to evict tenants only if they establish the existence of a just cause ground specified in the ordinance and also must comply with relocation requirements when they evict tenants for owner move-in or repairs.

This amendment would remove the exemption from current and future owner-occupied duplexes and triplexes. Only the voters could restore the exemption.

City Council's Authority to Add Limitations on a Landlord's Right to Evict under the Ordinance

Because the voters adopted the ordinance, they must approve any change to the ordinance. The ordinance specifies just cause grounds for eviction and lists additional prerequisites to eviction, such as providing proper notice. This measure would allow the City Council, without voter approval, to amend the ordinance to add additional limitations on a landlord's right to evict tenants under the ordinance, e.g., mandating compliance with certain rules and standards, such as, providing a proper notice.

This provision would not allow the City Council to create new exemptions from the ordinance, modify existing exemptions, or create new just cause grounds for eviction.

Amendments Would Delete Invalidated Provisions and Authorize City Council to Amend the Ordinance to Comply with Changes in Law or Court Invalidation of Provisions

This measure would delete provisions from the ordinance that the Alameda County Superior Court invalidated in 2006 (*Kim v. City of Oakland,* No. RG03081362). The measure also would give the City Council authority, without voter approval, to amend the ordinance to comply with changes in state or federal law, or delete provisions invalidated by court decisions.

s/BARBARA J. PARKER
 City Attorney

## CITY ATTORNEY'S IMPARTIAL ANALYSIS OF MEASURE Y

The Just Cause for Eviction Ordinance ("Ordinance") (Oakland Municipal Code § 8.22.300, *et seq.*; also referred to as Measure EE) generally prohibits landlords from evicting tenants from residential rental units covered by the Ordinance without specified just cause grounds. This measure would remove the exemption for owner-occupied duplexes and triplexes, and make the Ordinance applicable to units in those properties. This measure would authorize the City Council to amend the Ordinance to add additional limitations on a landlord's right to evict without voter approval. This measure also would remove provisions of the ordinance that a court decision invalidated.

<u>Exemption for Owner-Occupied Duplexes and Triplexes</u>

Currently, the Ordinance does not apply to owner-occupied duplexes or triplexes if the occupying owner has at least a one-third interest in the property because such units are exempt from the Ordinance. This measure would add owner-occupied duplexes and triplexes to the units that are covered by the just cause for eviction Ordinance. This change in the law would apply to units that are currently exempt and to any future duplexes and triplexes when one of the units becomes owner-occupied. As a result, this measure would require that landlords in owner-occupied duplexes and triplexes have just cause to evict tenants and comply with relocation requirements when they evict for owner move-in or repairs, unless some other exemption applies.

<u>City Council's Authority to Add Eviction Requirements</u>

Because the Oakland voters adopted the Just Cause for Eviction Ordinance, they must approve any change to the Ordinance. The Ordinance specifies just cause grounds for eviction and provides additional prerequisites to evictions, such as providing proper notice. This measure would allow the City Council, without returning to the voters, to amend the ordinance to add additional limitations on a landlord's right to evict, e.g., mandating compliance with certain rules and standards, such as, but not limited to, providing a proper notice.

This amendment would not allow the City Council to create new exemptions from the ordinance or modify existing exemptions, or create new just cause grounds for eviction.

<u>Amendments Delete Invalidated Provisions and Authorize City Council to Amend the Ordinance to Comply with Changes in Law or Court Invalidation of Provisions</u>

This measure would delete the Ordinance provisions that the Alameda County Superior Court invalidated in 2006 (*Kim v. City of Oakland*, No. RG03081362). This measure also would authorize the City Council to amend the ordinance to delete provisions that the courts invalidate and to comply with future changes in state or federal law.

The Oakland City Council placed this measure on the ballot. A "yes" vote for the measure will approve the Ordinance amendments described above; a "no" vote will reject the amendments.   A majority vote (i.e. more than 50% of the votes cast) is required for passage.

s/BARBARA J. PARKER
  City Attorney

## CITY AUDITOR'S IMPARTIAL ANALYSIS OF MEASURE Y

**Summary**

The Just Cause for Eviction Ordinance (Just Cause) was adopted by voters on November 5, 2002 (Oakland Municipal Code "O.M.C." 8.22.300) and places restrictions on tenant evictions. Presently, Just Cause covers all units on which construction was completed on or before December 31, 1995, with several exemptions, listed under O.M.C Section 8.22.350.

If the Measure is adopted by a majority (more than 50%) of voters, it would amend O.M.C. 8.22.300 by

1) eliminating the exemption for owner-occupied duplexes and triplexes from the Just Cause for Eviction Ordinance,

2) allowing City Council, without returning to the voters, to modify the Just Cause for Eviction Ordinance by adding limitations on a landlord's right to evict, without modifying any exemption from the Ordinance contained in O.M.C. Section 8.22.350, and

3) adding a subsection under O.M.C. Section 8.22.390, giving City Council the ability to amend the Just Cause Eviction Ordinance to conform to court decisions or state laws.

While the Measure would extend Just Cause eviction requirements to owner-occupied duplexes and triplexes, tenants in these units would not be provided the protections under the City's Rent Adjustment Program Ordinance (O.M.C. 8.22.020). For instance, landlords would not be required to obtain advance approval before raising rents more than the cost-of-living adjustment.

**Financial Impact**

Currently, there are approximately 8,000 duplex and triplexes in the City of Oakland. It is estimated approximately half of those are owner-occupied and would fall under the Just Cause ordinance.

Per O.M.C. Section 8.22.500 (Rent Program Service Fee), fees are charged against residential rental units that are subject to either the Rent Adjustment Ordinance, the Just Cause for Eviction Ordinance, or both. Currently, the annual service fee is $68 per rental unit (of which owners may pass through one-half of the annual fee to the tenant).

Under this Measure, we estimate the City would collect additional revenues between $612,000 and $748,000 annually. All funds collected would be designated to support the City's Rent Adjustment Program and Just Cause operations and administration.

The implementation of these regulations based upon current staff allocations would have an estimated start-up and annual cost consisting of salaries and benefits of:

- Year one (includes start-up costs): $92,000
- Subsequent annual costs: $78,000

This Measure would go into effect ten (10) days after the vote is declared by Oakland City Council.

**Disclaimer**

The Office of the City Auditor has not audited and, as such, has not validated the City of Oakland Housing and Community Development Department's housing data and salary analysis that supports this Measure. References to this data in our independent analysis represent the best data available at this time.

## ARGUMENT IN FAVOR OF MEASURE Y

"Protect All Oakland Renters. Close the Loophole." Vote "YES" on Measure Y.

This May, Ms. Josephine Hardy, a 69-year old widow and grandmother living on a fixed income, was told that she had 60 days to vacate her Oakland home of 47 years. A new owner had bought Ms. Hardy's building and was using the duplex-triplex loophole to remove all the tenants from her building. Before the landlord moved into one unit of her triplex, Ms. Hardy and all her neighbors were protected against arbitrary evictions under Oakland's existing Just Cause for Eviction Ordinance. After the owner moved in, she immediately lost these protections and her landlord filed an eviction lawsuit for no cause.

If Measure Y passes, a new landlord could still select one unit of a building to live in, but the remaining tenants would retain their just cause for eviction protections, which protect them against eviction for no cause.

Ms. Hardy's story is not unique. Every prospective landlord buying in Oakland can take advantage of the duplex-triplex loophole to push longtime tenants out and then re-rent their old units to newer, wealthier renters, who often pay two or three times more.

Measure Y is an important tool to address the housing crisis in Oakland. Placed on the ballot by unanimous vote of the City Council, Measure Y is a straightforward revision of the Just Cause for Eviction Ordinance based on what works to protect renters. Measure Y will:

> • Protect all renters from displacement regardless of building size
> • Close a loophole presently abused by speculators and leading to displacement of long-term tenants

For more information: www.protectoaklandrenters.org

s/LIBBY SCHAAF
  Oakland Mayor

s/DAN KALB
  Oakland City Councilmember

s/JAMES VANN
  Oakland Tenants Union, Founder

s/GARY JIMENEZ
  Service Employees Int'l Union (SEIU) local 1021, Political Vice-President

## REBUTTAL TO ARGUMENT IN FAVOR OF MEASURE Y

Oakland voters passed a strong eviction ordinance 15 years ago. It covers 95% of all rental properties in Oakland and has helped stabilize rents and helped to keep many Oakland renters in their homes or apartments.

The measure passed because it exempted small owners who live in their duplex or triplex and rent out the other unit(s). In fact, Oakand now encourages the building of granny units to increase affordable housing.

Adding new restrictions on small owners would virtually eliminate the building of granny units and many small owners will not rent a spare bedroom or apartment.

Fewer available apartments will push rents higher, harming even more renters. Existing homeowners will not be willing to endure the expense to build a granny unit.

The majority of small owners of duplexes and triplexes in Oakland are minorities, retirees, and people without other sources of income. Passage of Measure Y will discourage them from renting an extra apartment. Often this is the only way they are able to pay the mortgage and taxes.

The original exemption of small property owners was recognized as a way to keep small property owners in their own homes. This measure will force many small owners to take units off the market.

This proposal will make the housing crisis worse, not better. It is bad public policy and even Berkeley is moving to allow small owners an exemption.

This measure is bad for homeowners, bad for tenants and bad for housing.

Vote NO on Measure Y.

s/VITO ESPOSITO
  Homeowner

s/HOMAYOUN GHADERI
  Homeowner

s/KAREN FRANCISCO

## ARGUMENT AGAINST MEASURE Y

The more you KNOW, the more you want to vote NO!

The housing shortage is a real problem but this proposed measure is TOO EXTREME and does NOTHING to solve it.

This initiative would take control of your home away from you!

Currently, YOU decided who lives upstairs in your duplex or in the in-law unit downstairs. If your elderly mother or another family needs the second unit, you work it out with your neighbor who is also your renter. Instead, this measure would give your renter-neighbor every reason to hire attorneys, sue you , and run up thousands of dollars in legal bills and many months of delay. Just to recover your own home!

The existing Eviction Ordinance passed because it exempts owners that live in their duplex and triplex as having "a special relationship" with their renters. They live on the same property, often in the same house. It was true then. It still is.

Faced with even this threat, many small owners will just leave the market, making the housing shortage even worse.

If you could no longer control who lives in your home, would you continue to rent it out?

Would you endure the expense to build a granny unit, only to find out your backyard tenant will be granted a lifetime lease? Even Berkeley is voting now on restoring this exemption in order to create more housing.

Fewer available apartments will push rents even higher, harming even more renters.

Please tell the tenant attorneys that this extreme proposal might be good for their business. But it would be bad for Oakland.

Thirty years of tightening restrictions have dug a deep hole in the rental market. IT'S TIME TO STOP DIGGING!

Vote NO on Measure Y. It's too extreme!

s/GEORGIA W. RICHARDSON
  Homeowner

s/VITO ESPOSITO
  Homeowner

s/KAREN FRANCISCO
  Homeowner

s/HOMAYOUN GHADERI
  Homeowner

s/GRANT CHAPPELL
  Homeowner

## REBUTTAL TO ARGUMENT AGAINST MEASURE Y

Keep Oakland housed. Please join us and "Vote Yes" on "Measure Y."

Measure Y is a fair and reasonable approach to Oakland's housing crisis that will extend just cause eviction protections to thousands of renters who are currently at risk of displacement and homelessness.

As illustrated in several news stories, speculative investors use eviction as a way of "capturing profit." See the June 25, 2018 local CBS story "Caught On Video: Oakland Realtors Coach Buyers On How To Profit From Tenant Eviction" about realtors coaching potential buyers on how to evict tenants from duplexes and triplexes in Oakland. Measure Y will close a loophole that is leading to a wave of evictions of long-term renters.

If Measure Y passes, all landlords will continue:

1) To control to whom they rent;

2) To evict tenants for just causes such as failure to pay rent, owner move-in, family member move-in, failure to comply with the rental contract, nuisance or criminal activity.

3) Landlords who live in the same single family home or apartment unit as their tenants will continue to remain completely exempt from just cause for eviction restrictions under Measure Y.

A broad community coalition--including Oakland Councilmembers, Oakland tenants' rights groups, faith leaders, homeowners, tenants, small landlords and labor--committed to ending Oakland's housing crisis support Measure Y because we know that Oakland can do a better job of protecting long-term residents and addressing the increasing rate of homelessness.

Keep Oakland housed. Please join us and "Vote Yes" on "Measure Y."

For more information: www.protectoaklandrenters.org

s/NOEL GALLO
  Oakland City Councilmember

s/JAHMESE MYRES
  Oakland Planning Commission, Chairperson

s/CHRISTINA DURAZO
  Causa Justa : Just Cause, Housing Director

s/CARROLL FIFE
  Oakland Alliance of Californians for Community Empowerment (ACCE), Director

s/KATHERINE PETERS
  Property Owners for Fair and Affordable Housing, Homeowner and Member

**FULL TEXT OF MEASURE Y**

**Section 1. Amendments to Section 5 of Measure EE [O.M.C. Section 8.22.350]. Added text is shown as <u>double underlined</u> type; deleted text is shown as ~~strikethrough~~ type; language for those portions invalidated in Alameda Superior Court No. RG03081362 (*Kim v. City of Oakland*) and deleted herein are shown as *~~italicized and strikethrough~~* type.**

Section 5 [8.22.350] - Applicability and Exemptions.

The provisions of this chapter shall apply to all rental units in whole or in part, including where a notice to vacate/quit any such rental unit has been served as of the effective date of this chapter but where any such rental unit has not yet been vacated or an unlawful detainer judgment has not been issued as of the effective date of this chapter. However, Section 6 [8.22.360] and Section 7(A)-(E) [8.22.370(A) through 8.22.370(E)] of the chapter [O.M.C. Chapter 8.22, Article II] shall not apply to the following types of rental units:

 A. Rental units exempted from Part 4, Title 4, Chapter 2 of the California Civil Code (CCC) by CCC § 1940(b).

 B. Rental units in any hospital, skilled nursing facility, or health facility.

 C. Rental units in a nonprofit facility that has the primary purpose of providing short term treatment, assistance, or therapy for alcohol, drug, or other substance abuse and the housing is provided incident to the recovery program, and where the client has been informed in writing of the temporary or transitional nature of the housing at its inception.

 D. Rental units in a nonprofit facility which provides a structured living environment that has the primary purpose of helping homeless persons obtain the skills necessary for independent living in permanent housing and where occupancy is restricted to a limited and specific period of time of not more than twenty-four (24) months and where the client has been informed in writing of the temporary or transitional nature of the housing at its inception.

 E. Rental units in a residential property where the owner of record occupies a unit in the same property as his or her principal residence and regularly shares in the use of kitchen or bath facilities with the tenants of such rental units. For purposes of this section, the term owner of record shall not include any person who claims a homeowner's property tax exemption on any other real property in the State of California.

 F. ~~A rental unit in a residential property that is divided into a maximum of three units, one of which is occupied by the owner of record as his or her principal residence. For purposes of this section, the term owner of record shall not include any person~~ ~~who claims a homeowner's property tax exemption on any other real property in the State of California.~~ <u>Reserved.</u>

 G. A unit that is held in trust on behalf of a developmentally disabled individual who permanently occupies the unit, or a unit that is permanently occupied by a developmentally disabled parent, sibling, child, or grandparent of the owner of that unit.

 H. Reserved.

 I. A rental unit or rental units contained in a building that has a certificate of occupancy for the new construction of the unit or building in which the rental unit(s) is contained is issued on or after December 31, 1995.

 1. This exemption applies only to rental units that were newly constructed from the ground up and does not apply to units that were created as a result of rehabilitation, improvement or conversion of commercial space, or other residential rental space.

 2. If no certificate of occupancy was issued for the rental unit or building, in lieu of the date a certificate of occupancy, the date the last permit for the new construction was finalized prior to occupancy shall be used.

**Section 2. Amendments to Section 6 of Measure EE [O.M.C. Section 8.22.360]. Added text is shown as <u>double underlined</u> type; deleted text is shown as ~~strikethrough~~ type; language for those portions invalidated in Alameda Superior Court No. RG03081362 (*Kim v. City of Oakland*) and deleted herein are shown as *~~italicized and strikethrough~~* type.**

Section 6 [8.22.360] - Good Cause Required for Eviction.

 A. No landlord shall endeavor to recover possession, issue a notice terminating tenancy, or recover possession of a rental unit in the city of Oakland unless the landlord is able to prove the existence of one of the following grounds:

 1. The tenant has failed to pay rent to which the landlord is legally entitled pursuant to the lease or rental agreement and under provisions of state or local law, and said failure has continued after service on the tenant of a written notice correctly stating the amount of rent then due and requiring its payment within a period, stated in the notice, of not less than three days. However, this subsection shall not constitute grounds for eviction where tenant has withheld rent pursuant to applicable law.

 2. The tenant has continued, after written notice to cease, to substantially violate a material term of the tenancy other than the obligation to surrender possession on proper notice as required by law, provided further that notwithstanding any lease provision to the contrary, a landlord shall not endeavor to recover possession of a rental unit as a result of subletting of the rental unit by the tenant if the landlord has unreasonably withheld

the right to sublet following a written request by the tenant, so long as the tenant continues to reside in the rental unit and the sublet constitutes a one-for-one replacement of the departing tenant(s). If the landlord fails to respond to the tenant in writing within fourteen (14) days of receipt of the tenant's written request, the tenant's request shall be deemed approved by the landlord.

3. The tenant, who had an oral or written agreement with the landlord which has terminated, has refused after written request or demand by the landlord to execute a written extension or renewal thereof for a further term of like duration and under such terms which are materially the same as in the previous agreement; provided, that such terms do not conflict with any of the provisions of this chapter. [O.M.C. Chapter 8.22, Article II].

4. The tenant has willfully caused substantial damage to the premises beyond normal wear and tear and, after written notice, has refused to cease damaging the premises, or has refused to either make satisfactory correction or to pay the reasonable costs of repairing such damage over a reasonable period of time.

5. The tenant has continued, following written notice to cease, to be so disorderly as to destroy the peace and quiet of other tenants at the property.

6. The tenant has used the rental unit or the common areas of the premises for an illegal purpose including the manufacture, sale, or use of illegal drugs.

7. The tenant has, after written notice to cease, continued to deny landlord access to the unit as required by state law.

8. The owner of record seeks in good faith, without ulterior reasons and with honest intent, to recover possession of the rental unit for his or her occupancy as a principal residence where he or she has previously occupied the rental unit as his or her principal residence and has the right to recover possession for his or her occupancy as a principal residence under a written rental agreement with the current tenants.

9. The owner of record seeks in good faith, without ulterior reasons and with honest intent, to recover possession for his or her own use and occupancy as his or her principal residence, or for the use and occupancy as a principal residence by the owner of record's spouse, domestic partner, child, parent, or grandparent.

   a. Here the owner of record recovers possession under this Subsection (9) [Paragraph 8.22.360 A.9], and where continuous occupancy for the purpose of recovery is less than thirty-six (36) months, such recovery of the residential unit shall be a presumed violation of this chapter.

   b. The owner of record may not recover possession pursuant to this subsection more than once in any thirty-six (36) month period,

   c. The owner must move in to unit within three (3) months of the tenant's vacation of the premises.

   d. ~~When the owner seeking possession of a unit under Section 6(A)(9) [8.22.360 A.9] owns a similar vacant unit, the owner's decision not to occupy said similar unit shall create a rebuttable presumption that they are seeking to recover possession in bad faith.~~ Reserved.

   e. A landlord may not recover possession of a unit from a tenant under Subsection 6(A)(9) [8.22.360 A.9], if the landlord has or receives notice, any time before recovery of possession, that any tenant in the rental unit:

      i. Has been residing in the unit for five (5) years or more; and

      (a) Is sixty (60) years of age or older; or

      (b) Is a disabled tenant as defined in the California Fair Employment and Housing Act (California Government Code § 12926); or

      ii. Has been residing in the unit for five (5) years or more, and is a catastrophically ill tenant, defined as a person who is disabled as defined by Subsection (e)(i)(b) [8.22.360 A.9.e.i.b]]and who suffers from a life threatening illness as certified by his or her primary care physician.

   f. The provisions of Subsection (e) [8.22.360 A.9.e] above shall not apply where the landlord's qualified relative who will move into the unit is 60 years of age or older, disabled or catastrophically ill as defined by Subsection (e) [8.22.360 A.9.e], and where every rental unit owned by the landlord is occupied by a tenant otherwise protected from eviction by Subsection (e) [8.22.360 A.9.e].

   g. A tenant who claims to be a member of one of the classes protected by Subsection 6(A)(9)(e) [8.22.360 A.9.e] must submit a statement, with supporting evidence, to the landlord. A landlord may challenge a tenant's claim of protected status by requesting a hearing with the Rent Board. In the Rent Board hearing, the tenant shall have the burden of proof to show protected status. No civil or criminal liability shall be imposed upon a landlord for challenging a tenant's claim of protected status. The Rent Board shall adopt rules and regulations to implement the hearing procedure.

   h. Once a landlord has successfully recovered possession of a rental unit pursuant to Subsection 6(A)(9) [8.22.360 A.9], no other current landlords may recover possession of

any other rental unit in the building under Subsection 6(A)(9) [8.22.360 A.9]. Only one specific unit per building may undergo a Subsection 6(A)(9) [8.22.360 A.9] eviction. Any future evictions taking place in the same building under Subsection 6(A)(9) [8.22.360 A.9] must be of that same unit, provided that a landlord may file a petition with the Rent Board or, at the landlord's option, commence eviction proceedings, claiming that disability or other similar hardship prevents him or her from occupying a unit which was previously the subject of a Subsection 6(A)(9) [8.22.360 A.9] eviction. The Rent Board shall adopt rules and regulations to implement the application procedure.

i.  A notice terminating tenancy under this Subsection must contain, in addition to the provisions required under Subsection 6(B)(5) [8.22.360 B.5]:

ii  ~~[ sic ]~~ i. A listing of all property owned by the intended future occupant(s).

iii  ~~[ sic ]~~ ii. The address of the real property, if any, on which the intended future occupant(s) claims a homeowner's property tax exemption.

iv  ~~[ sic ] A statement informing tenant of his or her rights under Subsection 6(C) [8.22.360 C]. *~~

10. The owner of record, after having obtained all necessary permits from the City of Oakland on or before the date upon which notice to vacate is given, seeks in good faith to undertake substantial repairs that cannot be completed while the unit is occupied, and that are necessary either to bring the property into compliance with applicable codes and laws affecting health and safety of tenants of the building, or under an outstanding notice of code violations affecting the health and safety of tenants of the building.

a.  Upon recovery of possession of the rental unit, owner of record shall proceed without unreasonable delay to effect the needed repairs. The tenant shall not be required to vacate pursuant to this section, for a period in excess of three months; provided, however, that such time period may be extended by the Rent Board upon application by the landlord. The Rent Board shall adopt rules and regulations to implement the application procedure.

b.  Upon completion of the needed repairs, owner of record shall offer tenant the first right to return to the premises at the same rent and pursuant to a rental agreement of substantially the same terms, subject to the owner of record's right to obtain rent increase for capital improvements consistent with the terms of

the Oakland Residential Rent Arbitration Ordinance or any successor ordinance.

c.  A notice terminating tenancy under this Subsection 6(A)(10) [8.22.360 A.10] must include the following information:

i.  A statement informing tenants as to their right to payment under the Oakland Relocation Ordinance.

ii.  A statement that "When the needed repairs are completed on your unit, the landlord must offer you the opportunity to return to your unit with a rental agreement containing the same terms as your original one and with the same rent (although landlord may be able to obtain a rent increase under the Oakland Residential Rent Arbitration Ordinance [O.M.C. Chapter 8.22, Article I)."

iii.  ~~A statement informing tenant of his or her rights under Subsection 6(C) [8.22.360 C].~~ * Reserved.

iv.  An estimate of the time required to complete the repairs and the date upon which it is expected that the unit will be ready for habitation.

11. The owner of record seeks ~~in good faith, without ulterior reasons and with honest intent,~~ remove the property from the rental market in accordance with the terms of the Ellis Act (California Government Code Section 7060 et seq.).

B.  The following additional provisions shall apply to a landlord who seeks to recover a rental unit pursuant to Subsection 6(A) [8.22.360 A]:

1.  The burden of proof shall be on the landlord in any eviction action to which this order is applicable to prove compliance with Section 6 [8.22.360].

2.  A landlord shall not endeavor to recover possession of a rental unit unless at least one of the grounds enumerated in Subsection 6(A) [8.22.360 A] above is stated in the notice and that ground is the landlord's dominant motive for recovering possession and the landlord acts in good faith in seeking to recover possession.

3.  Where a landlord seeks to evict a tenant under a just cause ground specified in Subsections 6(A)(7, 8, 9, 10, 11) [8.22.360 A.7, 8, 9, 10, 11], she or he must do so according to the process established in CCC § 1946 (or successor provisions providing for 30 day notice period); where a landlord seeks to evict a tenant for the grounds specified in Subsections 6(A)(1, 2, 3, 4, 5, 6) [8.22.360 A.1, 2, 3, 4, 5, 6], she or he must do so according to the process established in CCP § 1161 (or successor provisions providing for 3 day notice period).

4.  Any written notice as described in Subsection 6(A)(2, 3, 4, 5, 7) [8.22.360 A.2, 3, 4, 7] shall be served by the landlord prior to a notice to terminate tenancy and shall include a provision informing tenant that a failure to cure may result in the initiation of eviction proceedings.

5.  Subsection 6(B)(3) [8.22.360 B.3] shall not be construed to obviate the need for a notice terminating tenancy to be stated in the alternative where so required under CCP § 1161.

6.  A notice terminating tenancy must additionally include the following:

    a.  A statement setting forth the basis for eviction, as described in Subsections 6(A)(1) [8.22.360 A.1] through 6(A)(11) [8.22.360 A.11];

    b.  A statement that advice regarding the notice terminating tenancy is available from the Rent Board.

    c.  Where an eviction is based on the ground specified in Subsection 6(A)(9) [8.22.360 A.9], the notice must additionally contain the provisions specified in Subsection 6(A)(9)(i) [8.22.360 A.9.i].

    d.  Where an eviction is based on the ground specified in Subsection 6(A)(10) [8.22.360 A.10], the notice must additionally contain the provisions specified in Subsection 6(A)(10)(c) [8.22.360 A.10].

    e.  Failure to include any of the required statements in the notice shall be a defense to any unlawful detainer action.

7.  Within ten (10) days of service of a notice terminating tenancy upon a tenant, a copy of the same notice and any accompanying materials must be filed with the Rent Board. Each notice shall be indexed by property address and by the name of the landlord. Such notices shall constitute public records of the City of Oakland, and shall be maintained by the Rent Board and made available for inspection during normal business hours. Failure to file the notice within ten (10) days of service shall be a defense to any unlawful detainer action.

C.  Reserved. ~~The following additional provisions shall apply to a landlord who seeks to recover a rental unit pursuant to Subsections 6(A)(9) [8.22.360 A.9] or (10) [8.22.360 A.10]:~~

    1.  ~~Where the landlord owns any other residential rental units, and any such unit is available or will become available between the time of service of written notice terminating tenancy and the earlier of the surrender of possession of the premises or the execution of a writ of possession pursuant to the judgment of a court~~ ~~of competent jurisdiction, the landlord shall, as a condition of obtaining possession pursuant to Section 6 [8.22.360], notify tenant in writing of the existence and address of each such vacant unit and offer tenant the right to choose any available rental unit and at the tenant's option: i) to enter into a temporary rental agreement; or ii) to enter into a new rental agreement. The landlord shall offer that unit to the tenant at a rent based on the rent that the tenant is currently paying, with upward or downward adjustments allowed based upon the condition, size, and other amenities of the replacement unit. Disputes concerning the initial rent for the replacement unit shall be determined by the Rent Board.~~*

    2.  ~~The following shall be considered rebuttably presumptive violations of this chapter by the landlord:~~*

        a.  ~~Where the event which the landlord claims as grounds to recover possession under Subsection 6(A)(9) [8.22.360 A.9] or (10) [8.22.360 A.10] is not initiated within three (3) months after the tenant vacates the unit.~~*

        b.  ~~Where a landlord times the service of the notice, or the filing of an action to recover possession, so as to avoid offering a tenant a replacement unit.~~*

        c.  ~~Where the individual (a landlord or qualified relative) for whom the Subsection 6(A)(9) [8.22.360 A.9] eviction occurred does not occupy a unit for a minimum of thirty-six (36) consecutive months.~~

D.  Substantive limitations on landlord's right to evict.

    1.  In any action to recover possession of a rental unit pursuant to Section 6 [8.22.360], a landlord must allege and prove the following:

        a.  the basis for eviction, as set forth in Subsection 6(A)(1) through 6(A)(11) [8.22.360 A.1 through 8.22.360 A.11] above, was set forth in the notice of termination of tenancy or notice to quit;

        b.  that the landlord seeks to recover possession of the unit with good faith, honest intent and with no ulterior motive;

    2.  If landlord claims the unit is exempt from this ordinance, landlord must allege and prove that the unit is covered by one of the exceptions enumerated in Section 5 [8.22.350] of this chapter. Such allegations must appear both in the notice of termination of tenancy or notice to quit, and in the complaint to recover possession. Failure to make such allegations in the notice shall be a defense to any unlawful detainer action.

3. This subsection (D) [8.22.360 D] is intended as both a substantive and procedural limitation on a landlord's right to evict. A landlord's failure to comply with the obligations described in Subsections 7(D)(1) or (2) [ *sic* ] [8.22.360 D.1 or 8.22.360 D.2] shall be a defense to any action for possession of a rental unit.

E. In the event that new state or federal legislation confers a right upon landlords to evict tenants for a reason not stated herein, evictions proceeding under such legislation shall conform to the specifications set out in this chapter [O.M.C. Chapter 8.22, Article II].

F. The City Council is authorized to modify the Just Cause for Eviction Ordinance (Measure EE [O.M.C., Chapter 8, Article II (8.22.300, *et seq.*)]) for the purpose of adding limitations on a landlord's right to evict, but the City Council may not modify any exemption from this Ordinance contained in Section 5 [O.M.C. Section 8.22.350].

**Section 3. Amendments to Section 9 of Measure EE [O.M.C. Section 8.22.390]. Added text is shown as <u>double</u> <u>underlined</u> type; deleted text is shown as ~~strikethrough~~ type.**

Section 9 [8.22.390] - Partial invalidity.

A. If any provision of this chapter or application thereof is held to be invalid, this invalidity shall not affect other provisions or applications of this chapter which can be given effect without the invalid provisions or applications, and to this end the provisions and applications of this chapter are severable.

B. If any provision of this Just Cause for Eviction Ordinance (Measure EE [O.M.C., Chapter 8, Article II (8.22.300, et seq.)]) is invalidated or required to be modified by a court decision or change in State or Federal law, the City Council is authorized to make such modifications to conform to the court decision or change in state law provided such modifications effectuate the purpose of the Just Cause for Eviction Ordinance and the original text.

**Section 4. Applicability and Grandparenting.**

A. Applicability to rental units. The amendments set out in Section 1 of this measure apply to all rental units that qualify for exemption prior to the effective date of this measure and to all rental units subsequent to the effective date.

B. Applicability to notices served prior to effective date of the measure. The amendments set out in Section 1 of this measure (1) do not apply to any valid notice terminating tenancy pursuant to Code of Civil Procedure 1161(2)-(4) served prior to the effective date of this measure; (2) apply to notices terminating tenancy pursuant to Civil Code 1946 or 1946.1 that have been served as of the effective

date of this measure, but where such rental unit has not been vacated or an unlawful detainer judgment has not been issued as of the effective date of this measure.

**Section 5.** This action is exempt from the California Environmental Quality Act ("CEQA") pursuant to, but not limited to, the following CEQA Guidelines: § 15378 (regulatory actions), § 15061(b)(3) (no significant environmental impact), and § 15183 (consistent with the general plan and zoning).

**Section 6. Severability.** If any section, subsection, sentence, clause or phrase of this Measure is for any reason held to be invalid or unconstitutional by decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Measure. The voters hereby declare that it would have passed this Measure and each section, subsection, clause or phrase thereof irrespective of the fact that one or more other sections, subsections, clauses or phrases may be declared invalid or unconstitutional. In lieu of severance, any section declared invalid or unconstitutional may be modified pursuant to Section 3 above, as appropriate.

**Section 7. Effective Date.** This Ordinance shall be effective only if approved by a majority of the voters voting thereon and shall go into effect ten (10) days after the vote is declared by the City Council.

# EXHIBIT N

ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS, FREEDMAN & PATTERSON, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

Attorneys for Plaintiffs and Petitioners
JOHN WILLIAMS
ROBERT VOGEL
SHEANNA ROGERS
MICHAEL LOEB
JACQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) non-profit Corporation,<br><br>Plaintiffs and Petitioners,<br><br>vs.<br><br>ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL and DOES 1-10,<br><br>Defendants and Respondents. | Case No.: 3:22-cv-01274<br><br>**DECLARATION OF JOHN WILLIAMS IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR BIFURCATION OF FACIAL AND AS-APPLIED CLAIMS** |

I, John Williams, declare as follows:

1. I am an individual over the age of 18, and a plaintiff in the above-captioned action. I have

1

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

personal knowledge of the following facts, and I would testify truthfully thereto if called to do so.

2.  I own a duplex located at 1109 32nd Street, Oakland, California.

3.  The rent for the property only barely covers my property expenses for 1109 32nd Street.

4.  The current renter in the three-bedroom one-bath downstairs unit, Martina Martin, has occupied the unit for approximately ten years, and until the past two years, has always paid the rent for the unit, which is approximately $1,500.00 per month.

5.  After Oakland and Alameda County enacted the Moratoriums in 2020, the renter stopped paying rent and has not paid since.

6.  The renter's failure to pay is not related to any Covid-19 related reason, the renter operated a moving and storage business, "Martina's Ride" out of her unit since 2017, and through much of 2021.

7.  The renter refuses to cooperate with my efforts to recoup unpaid rents through the rent relief program, and therefore the City of Oakland rejected my application for noncompliance.

8.  The renter in the upper unit of my duplex vacated in March of 2021, I have kept this unit vacant out of fear that a new renter will move in and refuse to pay rent.

9.  I am worried that I will lose the property. I applied for and received three months of mortgage forbearance, but that forbearance expired, and furthermore only delays my obligation to pay the mortgage.

10. In order to alleviate my financial problems, I attempted to sell the property, but my non-paying renter has made the property virtually unsalable to any reasonable value.

11. In October of 2021, I was so riddled with stress caused by my non-paying renter and the possibility of losing 1109 32nd Street to foreclosure, I was hospitalized and remain disabled as a result.

12. This disability has devastated me financially; my condition forced me to quit my job and move into the upper unit of 1109 32nd Street – directly above my non-paying renter—to save money.

13. I believe the above-described distress and financial impacts are a direct result of the City of Oakland and County of Alameda Moratoriums.

//

//

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

2

DECLARATION OF JOHN WILLIAMS IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR
BIFURCATION OF FACIAL AND AS-APPLIED CLAIMS (3:22-cv-01274)

1  Oakland and County of Alameda Moratoriums.

2  //

3  //

4      I declare, under penalty of perjury that the foregoing is true and correct, and that I executed

5  this declaration on ___April 25___, 2022, in ___Oakland___, California.

6

7                        John Williams, Declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400 SAN FRANCISCO, CALIFORNIA 94111

3

# EXHIBIT O

1  ANDREW M. ZACKS (SBN 147794)
   EMILY L. BROUGH (SBN 284943)
2  ZACKS, FREEDMAN & PATTERSON, PC
   1970 Broadway, Suite 1270
3  Oakland, CA 94612
   Tel: (510) 469-0555
4  az@zfplaw.com
   emily@zpflaw.com
5

6  Attorneys for Plaintiffs and Petitioners
   JOHN WILLIAMS
7  ROBERT VOGEL
   SHEANNA ROGERS
8  MICHAEL LOEB
   JACQUELINE WATSON-BAKER
9  HOUSING PROVIDERS OF AMERICA

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  JOHN WILLIAMS, ROBERT VOGEL,        Case No.: 3:22-cv-01274
    SHEANNA ROGERS,
15  MICHAEL LOEB, JAQUELINE WATSON-
    BAKER, and HOUSING PROVIDERS OF     **DECLARATION OF SHEANNA ROGERS**
16  AMERICA, a 501(c)(4) non-profit Corporation,  **IN SUPPORT OF PLAINTIFFS' AND**
                                         **PETITIONERS' MOTION FOR**
17                                       **BIFURCATION OF FACIAL AND AS-**
            Plaintiffs and Petitioners,  **APPLIED CLAIMS**
18
          vs.
19

20  ALAMEDA COUNTY, ALAMEDA
    COUNTY BOARD OF SUPERVISORS,
21  CITY OF OAKLAND, OAKLAND CITY
    COUNCIL and DOES 1-10,
22

23          Defendants and Respondents.

24

25

26

27  I, Sheanna Rogers, declare as follows:

28      1.  I am an individual over the age of 18, and am a plaintiff in the above-captioned action. I have

                                         1

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

personal knowledge of the following facts, and I would testify truthfully thereto if called to do so.

2. I own the property at 23243 Maud Ave., Hayward, California.

3. I ran a small, three-bedroom, independent living facility at 23243 Maud Ave, where my husband and I cared and provided for people with mental disabilities and no families to turn to. I was able to provide my clients with a safe living space and meals they could count on at 23243 Maud Ave. Many of my clients had lived at this address for over five years.

4. 23243 Maud Ave has a separate studio unit. I rented this unit in 2018 to the current renter, who paid $1,000 per month.

5. The current renter was never part of the independent living facility and I depend on the supplemental rental income to support my family.

6. Prior to Alameda County's Moratorium, my renter began harassing my clients in the independent living facility. The renter would scream profanities at my clients and throw garbage from his unit into the street directly in front of the property.

7. The renter's actions got so bad that I was forced to file a restraining order against the renter and commence eviction proceedings to protect my clients and my property.

8. In February of 2020, the renter and I came to a settlement agreement, whereby the renter agreed to vacate the property in April of 2020. However, after Alameda County enacted its Moratorium, in March 2020, the renter refused to leave.

9. The renter is currently still occupying the property and has not paid rent in over two years. The renter's failure to pay is not related to any Covid-19 related reason.

10. During this time, the renter continued to harass my clients and I was forced to close my business as a result.

11. I applied for rental assistance from Alameda County, but because my renter will not cooperate with me, the County has refused to provide me with any relief.

//

//

//

1    I declare, under penalty of perjury that the foregoing is true and correct, and that I executed

2    this declaration on __April 26__, 2022, in __Hayward__, California.

3

4                                                    Sheanna Rogers

5                                                    Sheanna Rogers, Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

3

# EXHIBIT P

1  ANDREW M. ZACKS (SBN 147794)
   EMILY L. BROUGH (SBN 284943)
2  ZACKS, FREEDMAN & PATTERSON, PC
   1970 Broadway, Suite 1270
3  Oakland, CA 94612
   Tel: (510) 469-0555
4  az@zfplaw.com
   emily@zpflaw.com
5

6  Attorneys for Plaintiffs and Petitioners
   JOHN WILLIAMS
7  ROBERT VOGEL
   SHEANNA ROGERS
8  MICHAEL LOEB
   JACQUELINE WATSON-BAKER
9  HOUSING PROVIDERS OF AMERICA

10

11               **IN THE UNITED STATES DISTRICT COURT**

12            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13

14  JOHN WILLIAMS, ROBERT VOGEL,        Case No.:
    SHEANNA ROGERS,
15  MICHAEL LOEB, JAQUELINE WATSON-
    BAKER, and HOUSING PROVIDERS OF     **DECLARATION OF JACQUELINE**
16  AMERICA, a 501(c)(4) non-profit Corporation,  **WATSON-BAKER IN SUPPORT OF**
                                        **PLAINTIFFS' AND PETITIONERS'**
17                                      **MOTION FOR BIFURCATION OF**
              Plaintiffs and Petitioners,  **FACIAL AND AS-APPLIED CLAIMS**
18
19         vs.

20  ALAMEDA COUNTY, ALAMEDA
    COUNTY BOARD OF SUPERVISORS,
21  CITY OF OAKLAND, OAKLAND CITY
    COUNCIL and DOES 1-10,
22
23           Defendants and Respondents.

24

25

26
27  I, Jacqueline Watson-Baker, declare as follows:

28      1.  I am an individual over the age of 18, and a plaintiff in the above-captioned case. I have

                                        1

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

1   personal knowledge of the following facts, and I would testify truthfully thereto if called to do so.

2   2.  I own a duplex, with a two-bedroom, two-bath front unit, and a one-bedroom, one-bath back

3   unit at 1225-1227 92nd Ave, Oakland, California.

4   3.  1225-1227 92nd Ave was purchased by my mother in or about the 1950's. My mother, who

5   moved to California from the Southern United States, was one of the first African Americans to own

6   property in her East-Oakland neighborhood.

7   4.  The renter in the back unit, Unit 1227, originally moved into the property in 2016. Thereafter,

8   I attempted to get access to the unit because I was concerned about the renter's activity at the property.

9   5.  The renter had put tinfoil over the windowpanes and had installed an air conditioner.

10   6.  When I arrived at the property, the renter stated that he did "not believe that a black woman"

11   owned the property and demanded to see my identification. I showed the renter my identification,

12   which the renter snatched out of my hand, and took a picture of it.

13   7.  Thereafter, the renter would insist on dropping off his rent check at my home address, even

14   though I had asked him multiple times to mail it to a P.O. box.

15   8.  I continued to see concerning signs at the property, but the renter refused me access to the

16   unit. For example, the renter told me there was a rat infestation, but when I sent an exterminator, the

17   renter would repeatedly not give the exterminator access. The exterminator eventually refused to go

18   back to the unit.

19   9.  In or about 2018, I filed for relief in court because the tenant refused to grant me access to the

20   unit and I became increasingly concerned about the unit's condition.

21   10. The renter of the front unit of 1225-1227 92nd Ave left in 2019 because of the renter of the

22   back unit's erratic behavior, and the front unit has remained vacant since due to the renter's behavior.

23   11. I finally obtained a court date for March of 2020, which then was pushed back due to shelter

24   in place orders. The renter stopped paying rent just prior to this time.

25   12. The renter still occupies the unit to date and is currently approximately $5,000 in debt to me.

26   13. The renter's failure to pay is not related to any Covid-19 related reason.

27   14. I finally got access to the unit several months ago and saw that the unit is in gross disrepair. I

28

DECLARATION OF JACQUELINE WATSON-BAKER IN SUPPORT OF COMPLAINT FOR DAMAGES;
PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

spoke with the renter about scheduling repairs, and he initially agreed. However, when the workers

arrived on the scheduled, agreed upon time, the renter said that he would need me to pay him $1,000

in order to permit the workers access.

15. The renter put foil on all the unit's window, there are dark yellow streaks running down the

walls, and one of the unit's cabinets is hanging down from the ceiling.

16. The unit is infested with insects and there is feces and urine all over the bathroom of the unit,

and dog feces and garbage cover the unit's backyard.

17. Notwithstanding the renter's damage to and perpetuation of a nuisance on my property, I

cannot evict the renter under Oakland and Alameda County's Moratoriums.

18. I considered selling the property, however, I was advised that the renter's actions had devalued

the property by almost a third of the market value.

19. I applied for rental assistance from Alameda County, after the renter told me that he had

applied. However, when I submitted my application, I was told that the renter had stopped the

process. The County informed me that it would be at least year until I receive any relief funds if the

renter would not cooperate.


I declare, under penalty of perjury that the foregoing is true and correct, and that I executed this

declaration on 4/25, 2022, in San Leandro, California.

_Jacqueline Watson-Baker_
Jacqueline Watson-Baker, Declarant

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

3

DECLARATION OF JACQUELINE WATSON-BAKER IN SUPPORT OF COMPLAINT FOR DAMAGES;

# EXHIBIT Q

ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS, FREEDMAN & PATTERSON, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

Attorneys for Plaintiffs and Petitioners
JOHN WILLIAMS
ROBERT VOGEL
SHEANNA ROGERS
MICHAEL LOEB
JACQUELINE WATSON-BAKER
HOUSING PROVIDERS OF AMERICA

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) non-profit Corporation,

Plaintiffs and Petitioners,

vs.

ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL and DOES 1-10,

Defendants and Respondents.

Case No.: 3:22-cv-01274

**DECLARATION OF MICHAEL LOEB IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' MOTION FOR BIFURCATION OF FACIAL AND AS-APPLIED CLAIMS**

I, Michael Loeb, declare as follows:

1. I am an individual over the age of 18, and a plaintiff in the above-captioned action. I have

1

1    personal knowledge of the following facts, and I would testify truthfully thereto if called to do so.

2    2. I own units 2501 and 2502 at 565 Bellevue Avenue, Oakland, California.

3    3. I am a 74-year-old widower. I lived with my wife in Piedmont, until she died in 2015, after

4    nearly 46 years of marriage. After her death, and in part, because of mobility issues resulting in back

5    surgery, I sold my home.

6    4. I purchased the 565 Bellevue Units in April 2020, with the intent to combine and occupy them

7    as my home, for my own use, for the remainder of my life.

8    5. Renter Joshua Bloomfield, a 1996 Graduate of the University of Pennsylvania, and 2000

9    UCLA School of Law graduate, is a successful class action lawyer with a prominent Oakland based

10   class action law firm.

11   6. Bloomfield currently pays me $2,200 per month in rent for a studio apartment.

12   7. I attempted to voluntarily negotiate an owner move in with Bloomfield, offering him $30,000

13   to move out. This is more than four times the amount of $7,116.22 required as a relocation payment

14   under the Oakland Just Cause Eviction Ordinance, which is codified at Oakland Municipal Code

15   section 8.22.850.

16   8. Bloomfield has demanded that I pay him more than $160,000 to vacate, telling me that "it's

17   nothing personal, just business."

18   9. Multiple other comparable units have become available in the same building and could have

19   been occupied by Bloomfield. Bloomfield has not claimed any Covid related hardship.

20   10. I am unable to commence an owner-move in eviction due to the Moratoriums.

21

22   I declare, under penalty of perjury that the foregoing is true and correct, and that I executed this

23   declaration on Dec. 25, 2022, in Oakland, California.

24

25   _____
     Michael Loeb, Declarant

26

27

28

2

ZACKS, FREEDMAN & PATTERSON, PC
601 MONTGOMERY STREET, SUITE 400
SAN FRANCISCO, CALIFORNIA 94111

**PROOF OF SERVICE**

United States District Court—Northern District of California- Case No.: 3:22-cv-01274-LB

I, Angelica Nguyen, declare that:

I am employed in the County of San Francisco, State of California. I am over the age of 18, and am not a party to this action.  My business address is 601 Montgomery Street, Suite 400, San Francisco, California 94111.

On July 18, 2022, I served:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' AND PETITIONERS' RULE 56 MOTION ON BIFURCATED CLAIMS**

in said cause addressed as follows:

| | |
|---|---|
| BARBARA J. PARKER<br>MARIA BEE<br>CYNTHIA STEIN<br>KACEY READ<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA 94612<br>E-Mail: CStein@oaklandcityattorney.org<br>E-Mail: KRead@oaklandcityattorney.org<br>*Attorneys for City of Oakland and Oakland City Council* | CHRISTOPHER SKINNELL<br>HILARY GIBSON<br>NIELSEN MERKSAMER PARRINELLO<br>GROSS & LEONI LLP<br>2350 Kerner Boulevard, Suite 250<br>San Rafael, CA 94901<br>Email: CSkinnell@nmgovlaw.com<br>Email: hgibson@nmgovlaw.com<br>*Attorneys for California Apartment Association* |
| MATTHEW D. ZINN<br>EDWARD T. SCHEXNAYDER<br>MINDY K. JIAN<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>Email: Zinn@smwlaw.com<br>Email: Schexnayder@smwlaw.com<br>Email: mjian@smwlaw.com<br>*Attorneys for Alameda County and Alameda County Board of Supervisors* | MARC SELTZER<br>KRYSTA K. PACHMAN<br>GLENN C. BRIDGMAN<br>NICHOLAS N. SPEAR<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Email: mseltzer@susmangodfrey.com<br>Email: kpachman@susmangodfrey.com<br>Email: gbridgman@susmangodfrey.com<br>Email: nspear@susmangodfrey.com<br>*Attorneys for Intervenor-Defendant Alliance of Californians for Community Empowerment Action* |

**/XX/** **(BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept electronic service, I caused the said document to be served electronically through the CM/ECS System.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 18, 2022 at San Francisco, California.

_____
ANGELICA NGUYEN

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612