1  BARBARA J. PARKER, City Attorney, SBN 069722
   MARIA BEE, Chief Assistant City Attorney, SBN 167716
2  CYNTHIA STEIN, Deputy City Attorney, SBN 307974
   KATHERINE READ, Fellowship Attorney, SBN 341463
3  One Frank H. Ogawa Plaza, 6th Floor
   Oakland, California 94612
4  Telephone: (510) 238-4779; Fax: (510) 238-6500
   Email: CStein@oaklandcityattorney.org
5  X05405/3204667

6
   Attorneys for Defendants,
7  CITY OF OAKLAND and OAKLAND CITY COUNCIL

8

9                    **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN FRANCISCO DIVISION**

12

13  JOHN WILLIAMS, ROBERT VOGEL,            Case No. 3:22-cv-01274-LB
    SHEANNA ROGERS, MICHAEL LOEB,
14  JACQUELINE WATSON-BAKER, and            **DEFENDANTS CITY OF OAKLAND**
    HOUSING PROVIDERS OF AMERICA, a         **AND OAKLAND CITY COUNCIL'S**
15  501(c)(4) Non-Profit Corporation,        **OPPOSITION TO PLAINTIFFS' RULE**
                                             **56 MOTION ON FACIAL CLAIMS**
16              Plaintiffs and Petitioners,

17  v.
                                             Date: September 29, 2022
18  ALAMEDA COUNTY, ALAMEDA COUNTY          Time: 9:30 a.m.
    BOARD OF SUPERVISORS, CITY OF           Dept: Courtroom B, 15th Flr.
19  OAKLAND, OAKLAND CITY COUNCIL and       Judge: Hon. Laurel Beeler
    DOES 1-10,
20
                Defendants and Respondents
21
    v.
22
    ALLIANCE OF CALIFORNIANS FOR
23  COMMUNITY EMPOWERMENT ACTION,

24              Intervenor Defendant.

25

26

27

28

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .....................................................................................................1

STATEMENT OF ISSUES .......................................................................................2

BACKGROUND .......................................................................................................2

SUMMARY JUDGMENT STANDARD ..................................................................5

ARGUMENT .............................................................................................................6

I.   THE CITY'S ORDINANCE DOES NOT EFFECT A TAKING. ...................6

    A.   Plaintiffs Must Show There Is No Set Of Circumstances In Which The Ordinance Does Not Effect A Taking. ...........................................7

    B.   A Regulation Limiting Evictions Of Invited Tenants Is Not A Physical Taking Because There Is No Compelled Intrusion. ..................8

    C.   *Cedar Point* Does Not Disturb The Requirement Of A Compelled Intrusion. ..............................................................................11

    D.   The City's Ordinance Does Not Effect A Facial Physical Taking. ......................12

        1.   The ordinance regulates the eviction of invited tenants and imposes no permanent bar on evictions. ................................12

        2.   Plaintiffs' attempts to distinguish *Yee* are unavailing. ...............................14

        3.   Even if the voluntary nature of the lease were no barrier, Plaintiffs could not prevail. ..........................................15

II.   THE CITY'S ORDINANCE DOES NOT DEPRIVE PLAINTIFFS OF PROCEDURAL DUE PROCESS. ....................................................16

III.   THE CITY'S ORDINANCE DOES NOT VIOLATE STATE LAW ............19

    A.   State Law Does Not Preempt the Moratorium. ...................................19

        1.   The City's moratorium does not contradict state law. ...............................19

        2.   State law does not fully occupy the field of COVID-19 eviction protections. ....................................22

    B.   The Eviction Moratorium Does Not Violate The California Election Code. ........23

CONCLUSION.........................................................................................................24

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Arche v. Scallion*, No. 21LBUD00480 (Cal. Super. Ct., App. Div., Aug. 1, 2022) ...............20, 23

*Ashwander v. TVA*, 297 U.S. 288 (1936)...........................................................................7

*Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199 (D. Conn. 2020)...............................13, 17

*Ballinger v. City of Oakland*, 24 F.4th 1287 (9th Cir. 2022),
   *cert denied*, 142 S. Ct. 2777 ..........................................................9, 10, 11, 12

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass. 2020) ........................................13, 16

*Big Creek Lumber Co. v. Cty. of Santa Cruz*, 136 P.3d 821 (Cal. 2006) ...................................20

*Birkenfeld v. City of Berkeley*, 550 P.2d 1001 (Cal. 1976).....................................19, 22, 23

*Block v. Hirsh*, 256 U.S. 135 (1921)..........................................................11, 13, 18

*Carey v. Piphus*, 435 U.S. 247 (1968)..............................................................17

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) .............................6, 10, 11, 12

*Chrysafis v. Marks*, 141 S. Ct. 2482 (2021). .............................................................18

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ...................................................7

*City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*
   300 P.3d 494 (Cal. 2013)..........................................................................20, 22

*Cwynar v. City & Cty. of San Francisco*, 109 Cal. Rptr. 2d 233
   (Cal. App. 1st Dist. 2001)...........................................................................10, 14

*Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021),
   *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022).......................................8

*El Papel LLC v. Inslee* (W.D. Wash., Dec. 2, 2020, No. 220CV01323RAJJRC) 2020 WL
   8024348, *report and recommendation adopted*, (W.D. Wash., Jan. 8, 2021, No.
   220CV01323RAJJRC) 2021 WL 71678 ...........................................................16

*Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020),
   *appeal dismissed sub nom. 36 Apt. Assocs., LLC v. Cuomo*,
   860 Fed. Appx. 215 (2d Cir. 2021).................................................................13

*Farhoud v. Brown*, No. 3:20-CV-2226-JR, 2022 WL 326092 (D. Or. Feb. 3, 2022).......13, 16, 17

*FCC v. Florida Power Corporation*, 480 U.S. 245 (1987) ......................................9, 15

*Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136 (9th Cir. 2018)...........17

*Fisher v. City of Berkeley*, 693 P.2d 261 (Cal. 1984), *aff'd*, 475 U.S. 260 (1986) ......................19

*Gallo v. District of Columbia*, No. 1:21-CV-03298 (TNM), 2022 WL 2208934,
   (D.D.C. June 21, 2022).............................................................................11, 13

*Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005)............................................5

*Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) .........................8, 10, 14, 15

*Halverson v. Skagit Cty.*, 42 F.3d 1257 (9th Cir. 1994),
   *as amended on denial of reh'g* (Feb. 9, 1995) .......................................................18

*HAPCO v. City of Philadelphia*, 482 F. Supp.3d 337 (E.D. Pa. 2020) .................................16

*Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022). .........................................13, 14

*Heights Apartments, LLC v. Walz*, 39 F.4th 479 (8th Cir. 2022) ...................................14

*Hillcrest Prop., LLC v. Pasco Cty.*, 754 F.3d 1279 (11th Cir. 2014) ................................8

*Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934).........................................13

*Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959 (9th Cir. 2003)....................18

*IT Corp. v. Solano Cty. Bd. of Supers.*, 820 P.2d 1023 (Cal. 1991) ........................20, 23

*Jevons v. Inslee*, 561 F. Supp. 3d 1082 (E.D. Wash. 2021)...............................11, 13, 16

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987)................................6, 7

*Knick v. Township of Scott*, 139 S. Ct. 2162 (2019).......................................................16

*Lake Reserve v. City of Rocklin*, 938 F.2d 951 (9th Cir. 1991),
    *vacated in part on other grounds*, 987 F.2d 662 (9th Cir. 1993). ...........................18

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993)............................7, 8, 14

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)........................... *passim*

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) ..............................................6, 11

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ...................................................................17

*New York State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S.Ct. 2111 (2022)....................................8

*Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)................................6, 9

*People v. Nguyen*, 166 Cal. Rptr. 3d 590 (Cal. App. 4th Dist. 2014)............................................23

*Rental Hous. Ass'n of N. Alameda Cty v. City of Oakland*, 90 Cal. Rptr. 3d 181
    (Cal. App. 1st Dist. 2009).................................................................................. 19

*S. Cal. Rental Hous. Ass'n v. Cty. of San Diego*, 550 F. Supp. 3d 853 (S.D. Cal. 2021) ........13, 16

*San Diego Gas & Elec. Co. v. Super. Ct.*, 920 P.2d 669, 697-98 (Cal. 1996)............................16

*San Remo Hotel L.P. v. City & Cty. of San Francisco*, 27 P.3d 87 (Cal. 2002)............................6

*Sherwin–Williams Co. v. City of Los Angeles*, 844 P.2d 534 (Cal. 1993)...............................19, 22

*Sosna v. Iowa*, 419 U.S. 393 (1975) .................................................................17, 18

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302  (2002)..................7

*Vista Associates v. Bacon*, 118 Cal. Rptr. 2d 295 (Cal. App. 6th Dist. 2002)............................23

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008).........................7, 16

*Woods v. Cloyd W. Miller Co.* 333 U.S. 138 (1948) ...................................................13

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ........................................................ *passim*

## Constitutional Provisions

U.S. Const. amend.V ...............................................................................................6

U.S. Const. amend. XIV ........................................................................................16

Cal. Const. art. I, § 19..............................................................................................6

**Statutes**

Cal. Civ. Code § 1946.................................................................................................12

Cal. Civ. Code § 1946.2....................................................................................................

Cal. Code Civ. Proc. § 1159.........................................................................................12

Cal. Code Civ. Proc. § 1160.........................................................................................12

Cal. Code Civ. Proc. § 1161.........................................................................................12

Cal. Code Civ. Proc. § 1179.03.5...................................................................................4

Cal. Code of Civ. Proc. § 1179.05.....................................................................4, 19, 22

Cal. Elec. Code § 9217...................................................................................................23

Cal. Gov. Code § 7060...................................................................................................16

**Rules**

Alameda Super. Ct. Local R. 1.8.1(d)(2)......................................................................18

Fed. R. Civ. Proc. 56(a)..................................................................................................5

Fed. R. Civ. Proc. 56(c)..................................................................................................5

**Other Authorities**

Alameda County Ordinance O-2020-23..........................................................................4

Assembly Floor Analysis, Cal. AB 1482 (Sept. 5, 2019 bill)......................................21

Governor's Executive Order N-11-22 (June 17, 2022)...................................................5

Governor's Exec. Order N-28-2020 (Mar. 16, 2020)......................................................3

Governor's Proclamation of a State of Emergency (Mar. 4, 2020).................................2

Oakland Municipal Code § 8.22.320..............................................................................3

Oakland Municipal Code § 8.22.340.......................................................................3, 812

Oakland Municipal Code § 8.22.360...................................................................3, 8, 12,16

Oakland Ordinance No. 13589..........................................................................2, 3, 12, 21

Oakland Ordinance No. 13606 . ............................................................................ *passim*

Oakland Resolution No. 88075........................................................................................2

Senate Judiciary Analysis, Cal. AB 2179 (March 28, 2022 billl)...................................4

Senate Floor Analyses, Cal. AB 1482 (Sept. 5, 2019 bill)...........................................21

1
2

# INTRODUCTION

3      Plaintiffs ask this Court to rule that Oakland's temporary moratorium on evictions during
4   a deadly pandemic is a physical taking without just compensation, violates landlords' procedural
5   due process rights, and is preempted by state law. Because they bring these claims as facial
6   challenges, they must prove the moratorium was unlawful the moment it was passed, in all
7   applications. Their allegations about improved COVID conditions and individual circumstances
8   are, as they admit, irrelevant: the only question is whether a local eviction moratorium set to last
9   for the duration of a local emergency is inherently unlawful. The answer, plainly, is no.

10     As to the physical takings claims, Plaintiffs cannot prevail because the moratorium does
11   not compel landlords to admit intruders onto their property. A physical taking is a government-
12   sanctioned physical invasion. A tenant whom a landlord has invited to lease land is not a
13   government-sanctioned invader. Accordingly, it has long been the rule that a law that merely
14   limits or delays evictions of invited tenants is not a physical taking. If those limits go too far,
15   Plaintiffs may have a claim for a regulatory taking under the Supreme Court's decision in *Penn*
16   *Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). But unless the law compels
17   landlords to admit tenants against their will, or (perhaps) bans evictions in perpetuity, there is no
18   physical taking.

19     Plaintiffs' procedural due process claims fare no better. Procedural due process protects
20   against the risk of mistake or error in the adjudication of protected rights. But Plaintiffs do not
21   complain that Oakland's moratorium introduces any risk of mistake or error in eviction
22   proceedings. They complain that the moratorium imposes too many limits, in their view, on the
23   grounds for eviction. That is an objection not to the law's procedures, but to its substance. There
24   is no procedural due process challenge Plaintiffs can bring to the law's substance: they received
25   all the process they were due when Council passed the ordinance in the manner prescribed by
26   law.

27     Finally, Oakland's ordinance is not preempted. The state COVID-19 eviction controls
28

Defendants City of Oakland and Oakland City Council's                    3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

Plaintiffs cite expressly *do not* preempt local eviction controls, like Oakland's, passed prior to August 2020. Faced with an express statement of intent *not* to preempt local laws, Plaintiffs make flailing arguments that the City's moratorium implicitly contradicts the state law, and that state law has fully occupied the field of COVID-19 eviction controls. Neither theory has any legs. There is nothing in the state's COVID-19 eviction protection laws (or statewide just cause) that prohibits local jurisdictions from further limiting the grounds for eviction. The state legislature in fact contemplated that cities and counties would do just that. Because state law recognizes and expressly leaves space for local laws, it plainly does not fully occupy the field to the exclusion of local regulation.

The Court should deny Plaintiffs' motion.

## STATEMENT OF ISSUES

(1) Whether the mere enactment Oakland's eviction moratorium is a physical taking.

(2) Whether the mere enactment Oakland's eviction moratorium deprives landlords of their due process rights.

(3) Whether Oakland's moratorium is preempted by state law.

## BACKGROUND

By March 2020, the novel coronavirus had gained a firm foothold in California. Following a federal declaration of a public health emergency, Governor Newsom proclaimed a California state of emergency on March 4, directing state and local health departments to "use all available preventative measures" to combat COVID's spread. Oakland's Request For Judicial Notice (RJN) Ex. A at p. 2 (Governor's Proclamation of a State of Emergency (Mar. 4, 2020)); *see id.* Ex. F (Determination that a Public Health Emergency Exists (Jan. 31, 2020)). Oakland declared a state of emergency a few days later, and Alameda County issued a Shelter-in-Place Order a week after that. Ptfs. RJN Ex. C (Oakland Resolution No. 88075); *see id.* Ex. D at p. 2 (Oakland Ordinance No. 13589). By the end of March, the confirmed daily case rate in California had increased ten-fold from the time of the Governor's initial proclamation, and deaths had jumped from 0 to more than 40 per day.[1]

---

[1] Covid19.CA.gov, *Tracking Covid-19 in California, County and Statewide Data*, available at

1    The economic consequences were immediate. Businesses closed. Workers across the country

2    lost their jobs. A mass wave of evictions loomed, threatening to spread the virus further as at-risk

3    renters faced a move into shelters, encampments, and other congregate settings. Experts urged

4    policymakers to do more to prevent displacement and provide rent relief.[2]

5    In response, state and local governments around the country put major limits on evictions.

6    Governor Newsom implemented statewide eviction protections on March 16, 2020, and invited

7    local jurisdictions to pass additional measures "based on their particular needs." Oakland's RJN

8    Ex. B at p. 1 (Governor's Exec. Order N-28-2020 (Mar. 16, 2020)). In Oakland, the City Council

9    determined its particular vulnerabilities—including the fact that large majorities of Oakland's

10   African American and Latinx residents are renters—called for additional protections. Ptfs. RJN

11   Ex. D at p.4 (Oakland Ordinance No. 13589). Like other cities in California, Oakland has been

12   facing an affordable housing crisis for many years. Twenty years ago, in recognition of the "lack

13   of adequate, safe, sanitary, and affordable housing," the City passed its Just Cause for Eviction

14   ordinance, promoting housing security by limiting the grounds for evictions. *See* Ptfs. RJN Ex. L

15   at p. 1 (Measure EE) (Oakland Municipal Code (O.M.C.) 8.22.320). Affordable housing scarcity

16   has nevertheless persisted, leaving evicted individuals at increased risk of homelessness.

17   And so, faced with a surging pandemic and an already vulnerable tenant community, the

18   Oakland City Council passed an emergency residential eviction moratorium on March 27, 2020.

19   Ptfs. RJN Ex. D § 3 (Oakland Ordinance No. 13589); Ptfs. RJN Ex. E § 3 (Oakland Ordinance

20   No. 13606). The moratorium provides tenants an absolute defense to evictions filed under the

21   City's just cause ordinance during the local emergency, except where the tenant poses an

22   imminent threat to the health and safety of other occupants of the property. *See* Ptfs. RJN Ex. E

23   § 3. Because it suspends only those evictions subject to the City's just cause ordinance, it

24   protects only those tenants with an entitlement to use or occupy a rental unit and excludes

25   evictions under the Ellis Act to remove housing units from the rental market. Ptfs. RJN Ex. E

26   _____

https://covid19.ca.gov/state-dashboard/#county-statewide (last visited Sept. 1, 2022).

27   [2] Conor Dougherty, et. al, *Racing to Head Off Evictions and Foreclosures*, N.Y. TIMES (Mar. 18, 2020), available at https://www.nytimes.com/2020/03/18/business/economy/coronavirus-

28   evictions.html.

§ 3; Ptfs. RJN Ex. L at pp. 3, 8 (O.M.C. §§ 8.22.340, 8.22.360(A)(11)). The ordinance requires that eviction notices notify tenants of the moratorium and warn that the moratorium "does not relieve you of the obligation to pay back rent in the future." Ptfs. RJN Ex. E § 3. To aid with those rent obligations, and to provide monetary relief to landlords, the City created a rent relief program funded by Oakland's community funds and supported by U.S. Department of the Treasury and California through the Emergency Rental Assistance Program.[3] *See* Compl. ¶ 30.

Alameda County passed a similar eviction moratorium on April 21, 2020. *See* Ptfs. RJN Ex. G § II.3 (Alameda County Ordinance O-2020-23). Like Oakland's, the County's ordinance creates an absolute defense to unlawful detainer actions unless the resident poses an imminent threat to health or safety. *Id.* Like the City's ordinance, it excepts Ellis Act evictions. *Id.*

The California legislature passed its own eviction protections in August 2020 via the COVID-19 Tenant Relief Act (AB 3088). Ptfs. RJN Ex. A. Those measures, which prohibit most evictions for inability to pay rent due to COVID-related hardship, were extended and clarified several times (via SB 91, AB 832, and, most recently, AB 2179), effectively prohibiting eviction of tenants who had applied for hardship-based relief through June 2022. *See* Cal. Code. Civ. Proc. § 1179.03.5(b)-(c). The state Act preempts certain elements of local tenant protection measures passed *after* August 19, 2020, while leaving intact local measures, like Oakland's, that were passed earlier. *See* Cal. Code of Civ. Proc. § 1179.05(a). The Senate recently reconfirmed that "[l]ocal ordinances adopted before August 19, 2020 … remain grandfathered in" and are not preempted. *See* Oakland's RJN Ex. C at pp. 7-8 (Senate Judiciary Analysis, Cal. AB 2179 (March 28, 2022 bill).

Oakland's eviction moratorium, which was extended in July 2020 to continue for the duration of the local emergency (*see* Ptfs. RJN Ex. E § 3 (Oakland Ordinance No. 13606)), is still in effect. Federal health officials recently renewed the declaration of a public health emergency. Oakland's RJN Ex. G (Renewal of the Determination that a Public Health

---

[3] City of Oakland, *Housing Resources for Tenants and Property Owners During COVID-19* (June 11, 2020), available at https://www.oaklandca.gov/resources/housing-resources-erap-emergency-rental-assistance (last visited Sept. 1, 2022).

1    Emergency Exists (July 15, 2022)). California is still in a state of emergency, with special rules

2    in place to mitigate the "significant threats to the health and safety of Californians" posed by the

3    Omicron variant. Oakland's RJN Ex. H (Governor's Executive Order N-11-22 (June 17, 2022)).

4                                          *       *       *

5           On March 1, 2022, Plaintiff landlords filed the instant lawsuit challenging both Oakland's

6    moratorium and Alameda County's, naming both the City and County as Defendants. Dkt. 1. On

7    April 28, 2022, this Court granted the parties' stipulation to the intervention of Alliance of

8    Californians for Community Empowerment Action (ACCE) as Intervenor Defendant. Dkt. 28. On

9    May 17, 2022, the Court entered an order relating this case with *California Apartment Association*

10   *et al. v. County of Alameda et al.*, 3:22-cv-02705-LB, which involves a challenge only to

11   Alameda County's eviction moratorium and does not name Oakland as a defendant. Dkt. 45. On

12   July 18, 2022, Plaintiffs in the *Williams* case filed the present motion for partial summary

13   judgment. Dkt. 61.[4]

14                              **SUMMARY JUDGMENT STANDARD**

15          A Court shall grant a motion for summary judgment only "if the movant shows that there

16   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

17   law." Fed. R. Civ. Proc. 56(a). In evaluating the motion, "the judge's function is not … to weigh

18   the evidence and determine the truth of the matter but to determine whether there is a genuine issue

19   for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). It is the movant's burden to

20   "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

21   317, 323 (1986). In finding that a fact cannot be disputed, the Court may rely only on facts

22   presented in a form that would be admissible at trial. Fed. R. Civ. Proc. 56(c). The Court must

23   construe all facts in favor of the non-moving parties. *Genzler v. Longanbach*, 410 F.3d 630, 636

24   (9th Cir. 2005).

25

26

27

28   _____
     [4] Plaintiffs also filed a request for judicial notice in support of their motion for partial summary
     judgment. Dkt. 62. The City joins Intervenor Defendant ACCE's opposition to that request.

Defendants City of Oakland and Oakland City Council's                    3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

**ARGUMENT**

**I.    THE CITY'S ORDINANCE DOES NOT EFFECT A TAKING.**

There are two kinds of government takings that require just compensation. First, "[a] permanent physical occupation authorized by government" is a categorical, or "per-se," "physical" taking. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). Second, regulation of a landowner's use of property is a taking if it entirely deprives the owner of the land's value, or, alternatively, if an "ad hoc, factual inquiry" shows that the regulation unduly burdens a particular landowner's property interests. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)). Although Plaintiffs' Complaint alleges that Oakland's temporary eviction moratorium is both a physical taking and a regulatory taking under *Penn Central*, they seek summary judgment only on their physical takings claims.[5]

Plaintiffs cannot succeed as a matter of law. Because they pursue these claims on a facial basis, they must show that the "mere enactment" of Oakland's eviction moratorium deprived every affected landlord of physical property without just compensation. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494-95 (1987) (citations omitted). They cannot do so here. Mere enactment of a regulation that limits landlords' power to evict invited tenants is not a compelled government intrusion, at least insofar as the enactment does not, on its face, prohibit landlords from evicting tenants in perpetuity. Plaintiffs' invocation of *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), and their attempts to distinguish *Yee v. City of Escondido*, 503 U.S. 519 (1992), do nothing to undermine the requirement of a compelled intrusion. Applying the law to Oakland's ordinance leaves no doubt that the moratorium, like the many moratoria upheld against similar challenges across the country, is not a facial taking.

---

[5] Plaintiffs bring their takings claims under both the Fifth Amendment of the U.S. Constitution and Article I, section 19 of the California Constitution. Compl. ¶¶ 38, 44-45; U.S. Const. amend V; Cal. Const. art. I, § 19.  Because Plaintiffs rely on the same allegations to support their state and federal claims (Compl. ¶¶ 37-46), and because the takings clauses of the state and constitutions are construed "congruently," the City addresses the state and federal claims together. *San Remo Hotel L.P. v. City & Cty. of San Francisco*, 27 P.3d 87, 101 (Cal. 2002).

**A.**  **Plaintiffs Must Show There Is No Set Of Circumstances In Which The Ordinance Does Not Effect A Taking.**

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). As such, it becomes ripe at the moment of enactment. *Keystone Bituminous Coal Ass'n*, 480 U.S. at 495 (citations omitted); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 318 (2002). To show that the mere enactment of a statute is a taking, a plaintiff must establish that a "law is unconstitutional in all of its applications," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); that is, "that no set of circumstances exists under which the Act would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987). Facial challenges are thus "the most difficult challenge to mount successfully." *Id.*

Facial challenges are "disfavored" because, among other things, they ask a court to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange*, 552 U.S. at 450 (quoting *Ashwander v. TVA*, 297 U.S. 288, 346–347 (1936) (Brandeis, J., concurring)). Here, for instance, Plaintiffs may obtain the relief they seek if they prevail in their as-applied challenges. In evaluating those claims, the Court may consider the length of time the moratorium has been in effect, any evidence regarding diminution of Plaintiffs' property values, and other factors bearing on Plaintiffs' circumstances. But such after-enactment facts "are not relevant" to a facial claim, *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993), as Plaintiffs have effectively conceded in their repeated insistence that the Court decide their facial claims as a matter of law. To rule in Plaintiffs' favor on the facial claims, the Court must paint in the crudest of strokes: it must determine that a moratorium on most evictions set to last for the duration of a local emergency is a taking in all applications, no matter the circumstances (be they pandemic, war, natural disaster) and no matter how long the moratorium is actually in effect (be it two years or two days).

Plaintiffs insist that the facial standard does not apply to takings claims, but they provide zero authority for it. *See* Ptfs MP&A 19:6-13. The three cases they cite discuss the *ripeness*

1   standard for facial takings claims and simply confirm that a facial taking amounts to a "single

2   harm" effected by the "very enactment of the statute." *Levald*, 998 F.2d at 688; *accord*

3   *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (en banc); *Hillcrest Prop.,*

4   *LLC v. Pasco Cty.*, 754 F.3d 1279, 1282 (11th Cir. 2014). They in no way undermine Plaintiffs'

5   burden to show the law is unconstitutional as to all to whom it applies. Indeed, the Ninth Circuit

6   applied that standard in a takings case just last year. *See Duncan v. Bonta*, 19 F.4th 1087, 1111

7   (9th Cir. 2021), *cert. granted, judgment vacated,* 142 S. Ct. 2895 (2022). Though that case was

8   vacated for reconsideration of a Second Amendment claim in light of *New York State Rifle &*

9   *Pistol Assn., Inc. v. Bruen*, 142 S.Ct. 2111 (2022), nothing in the Supreme Court's *Bruen*

10  decision undercuts *Duncan*'s application of the *Salerno* standard to facial takings claims.

11
     **B.    A Regulation Limiting Evictions Of Invited Tenants Is Not A Physical**
12  **Taking Because There Is No Compelled Intrusion.**

13          As Plaintiffs acknowledge, a physical taking "destroys *each* of [three] rights" in physical

14  property: "'to possess, use and dispose of it.'" *Loretto*, 458 U.S. at 435 (quoting *United States v.*

15  *General Motors Corp.*, 323 U.S. 373, 378 (1945)); Ptfs. MP&A 15:1-26. Plaintiffs cannot prevail

16  here because a property owner who voluntarily leases land to an invited tenant cannot claim that

17  their right to possess property has been destroyed. They have ceded that right, not had it stolen

18  away by the government. Accordingly, a physical taking occurs *only* when the government

19  effects a compelled intrusion on a landowner's property.

20          The seminal physical takings case in the residential landlord-tenant context is *Yee v. City*

21  *of Escondido*, 503 U.S. 519 (1992). There, the Supreme Court rejected a physical takings

22  challenge to a law effectively barring mobile home park owners from evicting tenants for

23  anything other than nonpayment of rent. The Court reasoned that, once landowners "voluntarily

24  open their property to occupation by others," there is no physical taking "based on their inability

25  to exclude particular individuals." *Id.* at 531. The Court rejected the landlords' argument that

26  their desire to end renters' tenancies made the occupation of their property no longer voluntary.

27  *Id.* at 530-31. As the Court explained, the critical question for the physical takings analysis is

28

Defendants City of Oakland and Oakland City Council's                                    3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

1   whether the decision to rent the property to the tenant was voluntary. *Id.* at 531. Because no

2   landlord was "compel[ed] … over objection to rent his property," there was no taking. *Id.* at 528.

3       *Yee* drew on prior precedent distinguishing regulations of the landlord-tenant

4   relationship, which are not physical takings, from compelled government intrusions. *Id.* at 529

5   (collecting cases). In *Loretto*, for instance, the Court held that compelled installation of cable

6   television facilities on residential rental buildings was a taking because it was a government-

7   authorized "*permanent occupation* of the landlord's property by a *third party*." 458 U.S. at 440

8   (emphasis added). The Court expressly distinguished cases regulating "the land-lord tenant

9   relationship," noting that its holding would not affect states' "broad power to regulate housing

10  conditions." *Id.* at 440. As the Court explained, "[s]o long as these regulations do not require the

11  landlord to suffer the physical occupation of a portion of his building by a *third party*, they will

12  be analyzed under the multifactor inquiry generally applicable to nonpossessory governmental

13  activity." *Id.* (citing *Penn Central*, 438 U.S. 104).

14      The Court drew on the voluntary vs. compulsory distinction again a few years later, in

15  *FCC v. Florida Power Corporation*, 480 U.S. 245 (1987), to uphold a regulation limiting the rent

16  utility companies could charge others for pole attachment rights. The court rejected the

17  application of *Loretto* to the regulation, reasoning that, unlike the compelled invasion at issue in

18  *Loretto*, a voluntary lessee is not "an interloper with a government license." 480 U.S. at 252-53.

19  "It is the invitation, not the rent," the Court explained, "that makes the difference." *Id.*

20      The Ninth Circuit has interpreted these precedents to mean that a regulation on the terms

21  of a voluntary residential tenancy is not a physical taking, even when that regulation places

22  restrictions on the landlord's power to evict. In *Ballinger v. City of Oakland*, for example, the

23  Court upheld an ordinance conditioning certain evictions on the payment of a tenant relocation

24  fee. 24 F.4th 1287, 1292-93 (9th Cir. 2022), *cert denied*, 142 S. Ct. 2777. The *Ballinger* Court

25  relied extensively on *Yee*'s holding that regulations of voluntary landlord-tenant relationships are

26  regulations on the "*use* of [landlords'] property," not a compelled intrusion, to draw its

27  conclusion that the relocation ordinance was not a physical taking. *Id.* at 1292-94 (quoting *Yee*,

28

Defendants City of Oakland and Oakland City Council's                                    3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

503 U.S. at 532).[6] And in *Guggenheim*, the Ninth Circuit held that a challenge to a rent control ordinance alleged to "shift much of the value of ownership" away from the landlord "should be analyzed as a regulatory taking under *Penn Central,* not a physical occupation amounting to a per se taking as in *Loretto v. Teleprompter Manhattan CATV Corp.*" 638 F.3d at 1116, 1120.

The cases posit one possible exception to the rule that regulation of a voluntary tenancy is not a physical taking: permanent bans on eviction. *Yee* supposed that a regulation which, "on its face or as applied … compel[s] a landowner over objection to rent his property or to refrain *in perpetuity* from terminating a tenancy" may amount to a physical taking. *See Yee*, 503 U.S. at 528 (emphasis added). The California Court of Appeal applied a similar rationale in explaining that an ordinance barring owner occupation of more than one unit of a building might be susceptible to a physical takings challenge if the plaintiffs could show it "'effectuates coerced life-time tenancies which effectively extinguish plaintiffs' right to occupy substantial portions of their property." *Cwynar v. City & Cty. of San Francisco*, 109 Cal. Rptr. 2d. 233, 247 (Cal. App. 1st Dist. 2001). Neither case actually tested the perpetual-leasehold-as-a-taking theory, however, and both were careful to clarify that such a theory could succeed as a facial challenge only if a law barred evictions on its face. This requirement was fatal in *Yee* because the challenged laws "on their face" did not create a permanent deprivation, and since plaintiffs had not asserted any as-applied claims, the court had no occasion to consider whether the plaintiffs "[were] not in fact free to change the use of their land." 503 U.S. at 528. *Cwynar* similarly stressed that whether an ordinance has the practical "effect" of "compelling [landlords] … to refrain in perpetuity from terminating a tenancy" is a question for an as-applied challenge, not a facial challenge. 109 Cal. Rptr. 2d. at 248.

---

[6] *Ballinger* also addressed when economic regulation can constitute a physical taking. The Court explained that seizure of a discrete and specific fund, such as "the interest earned on lawyers' trust accounts," or the seizure of money tied to a "specific, identified property interest," could constitute a physical taking. 24 F.4th at 1295-97. By contrast, a requirement to pay money from any source, like the relocation payment challenged there, is not a physical taking so long as it is not the functional equivalent of "an interest in the real property itself," like the taking of a lien. *Id.* at 1296-97.

1    **C.**    ***Cedar Point* Does Not Disturb The Requirement Of A Compelled Intrusion.**

2    The Supreme Court's recent decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063

3  (2021), does not disturb the rule that a taking must involve a compelled invasion. *Cedar Point*

4  involved a regulation compelling admittance of uninvited union officials onto farm owners'

5  property. The Supreme Court held that, in those circumstances, a regulation need not give a right

6  to permanent and continuous access "24 hours a day, 365 days a year" to effectuate a taking. *Id.*

7  at 2074. The Court reasoned that "appropriat[ion] [of] a right to physically invade the growers'

8  property—to literally 'take access,' is a physical taking even if the right is not to permanently

9  occupy the property." *Id.* In other words, *Cedar Point* clarified that a compelled invasion by a

10  stranger may be a taking even if the physical occupation is not permanent.

11    *Cedar Point* did not overturn the decades of precedent requiring a compelled invasion in

12  every physical taking. Nor did it disrupt the rule laid down in *Yee* and *Florida Power* that

13  regulation of a voluntary tenancy is not a compelled invasion, at least so long as it does not

14  permanently bar eviction. *See Ballinger*, 24 F.4th at 1292-94; *Gallo v. District of Columbia*, No.

15  1:21-CV-03298 (TNM), 2022 WL 2208934 (D.D.C. June 21, 2022); *Jevons v. Inslee*, 561 F.

16  Supp. 3d 1082, 1106-07 (E.D. Wash. 2021). To the contrary, *Cedar Point* reaffirmed that

17  "[l]imitations on how a business … may treat individuals [welcomed] on[to] the premises" are

18  "readily distinguishable from regulations granting a right to invade property." *Id.* at 2076-77.

19    *Cedar Point* is also entirely consistent with the historical deference given to state and

20  local government regulation of landlord-tenant relations. *Cedar Point* stressed that "longstanding

21  background restrictions on property rights" may bear on the physical takings analysis, because

22  regulation that is within the scope of historical restrictions reflects "pre-existing limitation upon

23  the land owner's title." *Id.* at 2079 (quoting *Lucas*, 505 U.S. 1028-29). As discussed in more

24  detail below, *infra* p. 19, courts have long recognized local government's "broad power to

25  regulate housing conditions." *Loretto*, 458 U.S. at 440. That includes the power to enact eviction

26  moratoria. *See Block v. Hirsh*, 256 U.S. 135, 153–54, 156 (1921). *Cedar Point* thus reaffirms that

27  the history of housing regulation cuts against any claim that the City's moratorium is a taking.

28

**D.**     **The City's Ordinance Does Not Effect A Facial Physical Taking.**

   **1.**     **The ordinance regulates the eviction of invited tenants and imposes no permanent bar on evictions.**

The foregoing discussion leaves no doubt that "mere passage" of the City's Ordinance is not a physical taking. It applies only to invited tenants, and it only temporarily limits evictions.

Contrary to Plaintiffs' assertion that the Ordinance sanctions "trespassing," Compl. 14:7, and protects "illegal squatters," Ptfs. MP&A 10:24, the City's moratorium applies only to tenants to whom landlords voluntarily leased land. The moratorium is a defense to Oakland's just cause provisions, which in turn apply only to "tenants," and the definition of tenants excludes those who take occupancy unlawfully. Ptfs. RJN Ex. L. at pp. 3, 5-8 (O.M.C. §§ 8.22.340, 8.22.360(B)). Moreover, the City's just cause ordinance applies only to unlawful detainer actions under Code of Civil Procedure section 1161 and termination of non-fixed-term tenancies under California Civil Code section 1946. *See id.* at pp. 8-10 (Oakland Municipal Code § 8.22.360(B)(3), (B)(5), (B)(6)(e), (B)(7), § 8.22.360(D)(2). "[I]llegal squatter" evictions are brought as forcible detainer actions under Code of Civil Procedure sections 1159 and 1160, meaning defendants in such actions are not entitled to just cause defenses. In short, Oakland's moratorium does not, like *Cedar Point*, allow an intruder to "take access," 141 S. Ct. at 2074, but rather, like *Yee*, regulates evictions of invited tenants to whom landlords have "voluntarily open[ed] their property," 503 U.S. at 531.[7]

That is all the reason this Court needs to reject Plaintiffs' physical takings claims. As explained above, *Yee* and *Ballinger* teach that absence of a compelled invasion is fatal to a

---

[7] Plaintiffs primarily challenge the eviction moratorium on the grounds that it interferes with their right to exclude, but also obliquely suggest that the ordinance is a taking because it "*eliminate[s]* renter's rent obligations." Compl. ¶ 39. To the extent Plaintiffs intend to argue that the ordinance is a physical taking of their money, that argument must fail, for three reasons. First, the eviction moratorium does not eliminate rent obligations; it merely prohibits landlords from evicting based on non-payment of rent. Second, as explained above, the moratorium is merely temporary. Subject to some limitations imposed by section 7 of the City's moratorium (*see* Ptfs. RJN Ex. D (Oakland Ordinance No. 13589)), which Plaintiffs do not challenge, Plaintiffs may evict based on non-payment of rent as soon as the local emergency is lifted. And third, the eviction moratorium does not take any specific pool or fund of landlords' cash; any "taking" of fungible rent money is subject only to a regulatory takings analysis under *Penn Central*. *Ballinger*, 24 F.4th at 1295-97; *see supra* n.6.

1    physical takings claim. Even if an exception existed for *permanent* bars on eviction, it could

2    never apply here, because the ordinance on its face imposes no permanent bar on eviction. There

3    is nothing on the face of the ordinance that prevents all landlords who wish to evict their tenants

4    from doing so "in perpetuity." *Yee*, 503 U.S. at 528. Rather, the moratorium is in effect only for

5    the duration of the local emergency. Ptfs RJN Ex. E § 3. "[L]egislation is temporary in

6    operation" where "[i]t is limited to the exigency which called it forth." *Home Bldg. & Loan Ass'n*

7    *v. Blaisdell*, 290 U.S. 398, 447 (1934); *see Woods v. Cloyd W. Miller Co.* 333 U.S. 138, 141-43

8    (1948) (upholding wartime rent regulation with no fixed end date); *Block*, 256 U.S. at 153–54,

9    156 (approving eviction moratorium during "public exigency"). Once the emergency ends,

10   landlords may resume evictions for any reason consistent with Oakland's just cause provisions.

11          It is thus no surprise that, as Plaintiffs admit, Courts evaluating COVID eviction

12   moratoria—including cases decided since *Cedar Point*—have overwhelmingly upheld them

13   against facial physical takings challenges. Ptfs. MP&A 17:7; *See, e.g.*, *Gallo*, 2022 WL 2208934,

14   at *8; *Farhoud v. Brown*, No. 3:20-CV-2226-JR, 2022 WL 326092, at *9-10 (D. Or. Feb. 3,

15   2022); *Jevons*, 561 F. Supp. 3d at 1104-07; *S. Cal. Rental Hous. Ass'n v. Cty. of San Diego*, 550

16   F. Supp. 3d 853, 864-66 (S.D. Cal. 2021); *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp.

17   3d 148, 164-65 (S.D.N.Y. 2020), *appeal dismissed sub nom. 36 Apt. Assocs., LLC v. Cuomo*, 860

18   Fed. Appx. 215 (2d Cir. 2021); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 220-21 (D.

19   Conn. 2020); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388 (D. Mass. 2020). Several of those

20   cases examined moratoria that, like Oakland's, are tied to the end of other COVID emergency

21   measures. Those, too, have been upheld. *See Gallo*, 2022 WL 2208934 (prohibition on filing for

22   evictions in effect until 60 days after termination of local emergency was not a taking); *S. Cal.*

23   *Rental Hous. Ass'n*, 550 F. Supp. 3d at 865 (eviction moratorium "set to expire 60 days after the

24   stay-at-home and work-from-home orders are lifted" was not a taking). *But see Heights*

25   *Apartments, LLC v. Walz*, 30 F.4th 720, 733 (8th Cir. 2022), discussed *infra* p. 14.

26          Plaintiffs suggest that the moratorium has gone on too long, and that current conditions

27   no longer justify it. *See* Ptfs. MP&A 3:2-4, 22:3-8. Even if they were right about that (and the

28

13

Defendants City of Oakland and Oakland City Council's                                   3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

City obviously disagrees), "the government's failure to repeal" a law in light of changed circumstances is not a valid basis for a facial takings claim. *Guggenheim*, 638 F.3d at 1118. That is because after-enactment facts "are not relevant to a claim that the very enactment of the statute effected a taking." *Guggenheim*, 638 F.3d at 1119–20 (quoting *Levald*, 998 F.2d at 688).

All this does not mean Plaintiffs have no remedy. It simply means they must bring their claims on an as-applied basis. *Id* at 1117. On an as-applied basis, Plaintiffs may argue, if they wish, that Oakland's moratorium has effectively become permanent and now effects a physical taking. *See Yee,* 503 U.S. at 528; *Cwynar*, 109 Cal. Rptr. 2d. at 248. Or they may argue that the moratorium is a regulatory taking under a *Penn Central* analysis, accounting for their individual circumstances. But they cannot prevail on a claim that an eviction moratorium affecting invited tenants that expires at the end of a local emergency is facially invalid.

### 2.    Plaintiffs' attempts to distinguish *Yee* are unavailing.

Plaintiffs maintain that the dozens of courts who have rejected similar challenges have got it all wrong due to misplaced reliance on *Yee*. Ptfs. MP&A 17:7-19:3. Parroting the Eighth Circuit's analysis in *Heights Apartments, LLC v. Walz*, Plaintiffs argue that the regulation in *Yee* "neither deprived landlords of their right to evict nor compelled landlords to continue leasing the property past the leases' termination." Ptfs. MP&A 17:23-28 (quoting *Walz*, 39 F.4th 720, 733 (8th Cir. 2022)). But as four judges of the Eighth Circuit explained, the majority got that fact wrong: The landlords in Yee "complained of their inability to evict '*tenants of mobilehomes presently in The Park*, as well as the successors in interest of such tenants.'" *Heights Apartments, LLC v. Walz*, 39 F.4th 479, 480 (8th Cir. 2022) (Colloton, J., dissenting from denial of reh'g en banc) (quoting 503 U.S. at 525.). Moreover, as with the great majority of Supreme Court cases, *Yee*'s holding was not cabined to the one regulation before it: *Yee* based its decision on the generally applicable principle that an "inability to exclude" a once-invited individual is not the same thing as a compelled invasion. *Yee*, 503 U.S. at 531.

In any event, distinguishing *Yee* based on the particulars of the regulation at issue is not the silver bullet Plaintiffs imagine. *Yee* did not invent the concept of voluntariness out of whole

14

Defendants City of Oakland and Oakland City Council's                                                           3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

cloth. It took that rule from prior Supreme Court precedent, including *Florida Power Corp.*, which held that the "element of required acquiescence is at the heart of the concept of occupation," and that "it is the invitation, not the rent, that makes the difference" to the takings analysis. 480 U.S. at 252-53. *Loretto*, too, discussed a taking as an "invasion," as distinguished from regulations affecting individuals "invited" onto the property. 458 U.S. at 434. In other words, the principle that an invitee is not a government intruder was an axiom of physical takings law even before *Yee.* Try as they might, Plaintiffs cannot get around it.

>        **3.      Even if the voluntary nature of the lease were no barrier, Plaintiffs
>                could not prevail.**

Even if Plaintiffs were to convince the Court that the voluntary nature of the lease is no barrier to their physical takings claim, Plaintiffs still could not prevail. As explained above, the voluntary nature of a lease prevents property owners from establishing that their right to possess—one of the essential rights "in a physical thing"—has been taken. *Loretto*, 458 U.S. at 435. But that leaves the other two rights: the right to use and the right to dispose of property. *See id.* Plaintiffs cannot show that "*each* of these rights" has been destroyed. *Id.* Even more critically, they cannot show, as they must, that the right to possess, use, and dispose of property is taken in *all* applications, upon mere enactment of the ordinance.

First, the moratorium does not deprive landlords of "profitable use" of their property. Ptfs. MP&A 15:14. Landlords may continue to charge rent throughout the moratorium period, and they may recover rent from non-paying tenants in a civil contract action. Indeed, the moratorium requires landlords to notify any tenants they seek to evict that their rent is still due. Ptfs. RJN Ex. E § 3 (Oakland Ordinance No. 13606).

Second, the moratorium does not deprive landlords of the right to dispose of property. As Plaintiffs admit, nothing in the ordinance prevents landlords from selling their property to others. Their allegation that the moratorium diminishes the resale value of some properties, Ptfs. MP&A 10:4-5, might give rise to an as-applied regulatory taking claim, but it provides no support for the proposition that the City has physically appropriated landlords' property. *See Guggenheim*, 638

15

1    F.3d at 1120.

2         Most critically, even if voluntariness were no barrier, plaintiffs cannot show that the

3    moratorium is "unconstitutional in all of its applications." *Wash. State Grange,* 552 U.S. at 449;

4    *see infra* pp. 6-7. The moratorium does not permit *all* "occupants to stay in residence

5    irrespective of … the destruction of the property, the creation of a nuisance, the harassment of

6    neighbors, criminal activity, or other such mal acts." Ptfs. MP&A 13:11-13. At least some

7    destructive, harassing, or criminal activity will result in an imminent threat to the health and

8    safety of other occupants. *See* Ptfs RJN Ex. E § 3. At least some landlords can evict tenants

9    under the Ellis Act, which allows landlords to evict tenants notwithstanding Oakland's just cause

10   restrictions if they remove all units in the building from the rental market. Ptfs RJN Ex. L at p. 8

11   (O.M.C. § 8.22.360(A)(11)); Cal. Gov. Code § 7060. And at least some landlords are still

12   actively receiving rent—including at least one of the Plaintiffs in this case. Compl. 12:12-13.

13   Because the moratorium will not prevent landlords from evicting tenants or collecting rent in *all*

14   applications, Plaintiffs cannot establish that the ordinance on its face effects an unconstitutional

15   taking without just compensation.[8]

16
     **II.    THE CITY'S ORDINANCE DOES NOT DEPRIVE PLAINTIFFS OF**
17          **PROCEDURAL DUE PROCESS.**

18        Plaintiffs maintain that the City's moratorium on its face deprives landlords of their

19   procedural due process rights under the Fourteenth Amendment by providing tenants an

20   "absolute defense" to eviction in most circumstances. *See* U.S. Const. amend. XIV. That claim

21   _____

22   [8] Even if Plaintiffs could prevail on their takings claims, they are not entitled to declaratory and
     injunctive relief, which are "generally unavailable under the Takings Clause." *Farhoud*, 2022
23   WL 326092, at *10. The Takings Clause does not prohibit the government from taking private
     property for public use; it requires the government to pay just compensation when it does.
24   Compensation, therefore, is the appropriate remedy wherever a state provides a mechanism to
     obtain it. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176 (2019). California provides such a
25   remedy via an action for inverse condemnation—an action that Plaintiffs here have pursued. *See
     San Diego Gas & Elec. Co. v. Super. Ct*., 920 P.2d 669, 697-98 (Cal. 1996). Plaintiffs therefore
26   are not entitled to an injunction or declaratory relief. *See, e.g., Farhoud*, 2022 WL 326092, at
     *10; *Jevons*, 561 F. Supp. 3d at 1103; *S. California Rental Hous. Ass'n*, 550 F. Supp. 3d at 865
27   (S.D. Cal. 2021); *HAPCO v. City of Philadelphia*, 482 F. Supp.3d 337, 358 (E.D. Pa. 2020); *El
     Papel LLC v. Inslee*, No. 220CV01323RAJJRC, 2020 WL 8024348 at *12 (W.D. Wash., Dec. 2,
28   2020)*, report and recommendation adopted*, No. 220CV01323RAJJRC, 2021 WL 71678 (W.D.
     Wash., Jan. 8, 2021); *Baptiste*, 490 F. Supp. 3d at 390–391.

1   fails at the gates because, for all the reasons just explained, Plaintiffs cannot show that the

2   moratorium on its face deprives landlords of a protected liberty interest. *See Fed. Home Loan*

3   *Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018). Plaintiffs who have

4   voluntarily ceded their right to possess their property to their tenants have not been deprived of

5   that right by virtue of a government invasion. *See supra* pp. 8-10. As other district courts have

6   held, landlords who have "failed to demonstrate a substantial impairment of their property

7   rights" and failed to "identif[y] an independent liberty or property interest" have no procedural

8   due process claim. *Auracle Homes*, 478 F. Supp. 3d at 227.

9       To the extent Plaintiffs have shown that the moratorium has any effect on protected property

10  rights, it at most *delays* their exercise of those rights. Landlords can bring eviction actions once

11  the moratorium ends. *Auracle Homes*, 478 F.Supp.3d at 227. A law that effects not a "total

12  deprivation . . . but only [a] delay" of the exercise of a right does not implicate due process.

13  *Sosna v. Iowa*, 419 U.S. 393, 410 (1975). Courts have thus rejected due process challenges to

14  eviction moratoria based on an alleged lack of access to the courts, "observing that [a] delayed

15  ability to litigate, rather than an outright prohibition, does not violate the Constitution." *Farhoud*,

16  2022 WL 326092, at *13; *Auracle Homes,* 478 F.Supp.3d at 227.

17      But even if Plaintiffs could establish that the moratorium deprives them of a protected

18  interest, there is another, equally fundamental problem with their theory: they do not argue that

19  the ordinance creates any risk of erroneous deprivation of those interests. Procedural due process

20  is meant "to protect persons not from the deprivation, but from the *mistaken* or *unjustified*

21  deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259–60 (1968)

22  (emphasis added). A plaintiff must establish both the "risk of error" inherent in the current

23  procedures and the probable value of additional process. *Mathews v. Eldridge*, 424 U.S. 319,

24  343-44 (1976). Plaintiffs have not pointed to any risk of error in the current ordinance. They do

25  not contend that any landlord entitled to evict under the ordinance will be erroneously denied

26  that right. Nor do they argue that additional procedures will improve the accuracy of outcomes.

27      Rather, Plaintiffs' argument is that the "absolute defense" provision eliminates certain

28

17

grounds for evictions, such as nonpayment of rent and nuisance activity. Ptfs. MP&A 25:3-17. Those are generally applicable substantive limitations imposed by the Oakland City Council when it passed the moratorium. Plaintiffs have no constitutional right to challenge substantive eviction laws in individual eviction proceedings: "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1261 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995); *see Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 970-71 (9th Cir. 2003) (plaintiffs had no procedural due process right to individually challenge hotel habitability restrictions imposed by ordinance); *see also Block*, 256 U.S. at 158 (eviction regulation does not deprive landlords of a right to trial by jury). Rather, Plaintiffs received all the process they were due when Council passed the ordinance in the manner prescribed by law. *Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir. 1991), *vacated in part on other grounds,* 987 F.2d 662 (9th Cir. 1993).

Plaintiffs' position stands in stark contrast to that of the plaintiffs in *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021). *See* Ptfs. MP&A 24:21-25:2. *Chrysafis* involved a state eviction protection scheme that required a tenant to prove COVID-19 financial hardship to establish eligibility for protections. Under that law, if a tenant self-certified their COVID-19 financial hardship, a landlord could not challenge it, even if the plaintiff who self-certified was not, in fact, suffering hardship and was therefore ineligible for protection. *Id.* In other words, the ordinance created an "irrebuttable presumption" of COVID-related hardship "when that presumption was not necessarily or universally true in fact." *Sosna*, 419 U.S. at 409. By contrast, Oakland's scheme does not impose any irrebuttable presumptions. If a landlord claims an eviction qualifies as an exception to the moratorium, they may certify specific facts to that end in their complaint, and the court will evaluate it. *See* Alameda Super. Ct. Local R. 1.8.1(d)(2). There is no risk, as in *Chrysafis*, that landlords will be denied an opportunity to dispute facts material to their case.

III.     THE CITY'S ORDINANCE DOES NOT VIOLATE STATE LAW.

A.      State Law Does Not Preempt the Moratorium.

        Plaintiffs maintain that Oakland's moratorium conflicts with, and is therefore preempted by, California's COVID-19 Tenant Relief Act and subsequent acts modifying and extending its provisions (collectively, the COVID-19 Acts). This claim has no merit. Local governments have long exercised control over landlord-tenant relations, and particularly over the substantive grounds for eviction. *See Rental Hous. Ass'n of N. Alameda Cty v. City of Oakland*, 90 Cal. Rptr. 3d 181, 189-91 (Cal. App. 1st Dist. 2009); *Fisher v. City of Berkeley*, 693 P.2d 261, 310-11 (Cal. 1984), *aff'd*, 475 U.S. 260 (1986); *Birkenfeld v. City of Berkeley*, 550 P.2d 1001, 1016 (Cal. 1976). When the state legislates in areas of traditional local government control, courts presume the state law has no preemptive effect absent "clear indication of preemptive intent from the Legislature." *Rental Hous. Ass'n of N. Alameda Cty.*, 90 Cal. Rptr. 3d at 189 (internal citation omitted). As explained below, Plaintiffs cannot overcome that presumption here. Not only is indication of preemptive intent absent, the opposite is true: the state laws clearly indicate the legislature did *not* intend to preempt local laws like Oakland's.

        Presumptions aside, Plaintiffs claims do not satisfy the basic tests for state preemption. As Plaintiffs acknowledge, a local law conflicts with state law only if it "[1] duplicates, [2] contradicts, or [3] enters an area fully occupied by general law, either expressly or by legislative implication." *Sherwin–Williams Co. v. City of Los Angeles*, 844 P.2d 534, 536-37 (Cal. 1993) (internal citations omitted); Ptfs. MP&A 20:8-11. Plaintiffs appear to invoke the latter two grounds: they argue that Oakland's law is "inimical" to the state's COVID-19 Acts, and they argue that "Covid-19 eviction controls are not a municipal affair." Ptfs. MP&A 20:21-23, 22:8. As explained below, Plaintiffs are wrong on both counts.

        1.      The City's moratorium does not contradict state law.

        Although Plaintiffs maintain that state law "expressly" preempts the moratorium, the COVID-19 Acts in fact expressly *do not* preempt local ordinances like Oakland's. In the COVID-19 Acts, the state legislature expressly addressed the preemptive effect of state law on local eviction protections and chose to preempt only those local measures passed "between

19

1   August 19, 2020, and June 30, 2022"—not those, like Oakland's passed prior to August 2020.

2   Cal. Code of Civ. Proc. § 1179.05(a)(1). With the exception of local ordinances pertaining to

3   rental payments, even those eviction protections passed between August 19, 2020 and June 30,

4   2022 are not preempted if they "extend, expand, renew, reenact, or newly adopt an ordinance

5   that requires just cause for termination of a residential tenancy or amend existing ordinances that

6   require just cause for termination." Cal. Code of Civ. Proc. § 1179.05(b); *Arche v. Scallion*, No.

7   21LBUD00480, at *4-7 (Cal. Super. Ct., App. Div., Aug. 1, 2022).[9]

8          Plaintiffs further argue that, if Oakland's ordinance is not expressly preempted, it

9   "impliedly conflict[s]" with the state COVID-19 Acts. Ptfs. MP&A 21:24. The Court should be

10  especially skeptical of an implied preemption argument in light of the COVID-19 Acts' express

11  preemption provisions. Because "the words the Legislature chose are the best indicators of its

12  intent," a law with express preemption provisions "implicitly permits local regulations addressed

13  to other aspects." *Big Creek Lumber Co. v. Cty. of Santa Cruz,* 136 P.3d 821, 829, 832 (Cal.

14  2006). In other words, where, as here, state law preempts local laws "in specific and expressly

15  limited areas," that "weighs against an inference that preemption by implication was intended

16  elsewhere." *See IT Corp. v. Solano Cty. Bd. of Supers.*, 820 P.2d 1023, 1031 (Cal. 1991).

17         In any event, there is no inherent contradiction between the state and local laws. A local

18  law impliedly conflicts with, i.e. "inimically contradicts," state law only if it "directly *requires*

19  what the state statute forbids or prohibits what the state enactment *demands*." *City of Riverside v.*

20  *Inland Empire Patients Health & Wellness Ctr., Inc.* 300 P.3d 494, 500 (Cal. 2013) (emphasis

21  added) (state medical marijuana statutes did not preempt local ordinance banning some

22  marijuana-related activities that the state law allowed). As discussed, the COVID-19 Acts do not

23  forbid Oakland's moratorium, and although state law might allow a landlord to evict a tenant in

24  circumstances that Oakland's ordinance does not, the state does not "expressly mandate" that

25  such an eviction proceed. Because it is "reasonably possible to comply with both the state and

26  local laws," there is no conflict. *Id.*

27

28  [9] Available at https://www.courts.ca.gov/opinions/documents/JAD22-05.PDF.

1    Plaintiffs also make the highly convoluted argument that the COVID-19 Acts preempt the

2    Oakland's ordinance because the COVID-19 Acts leave many of the state statutory just causes

3    for eviction in place, whereas Oakland's ordinance eliminates most of its local just cause

4    grounds for eviction. Ptfs. MP&A 21:1-23. The problem for Plaintiffs is that, as they admit,

5    statewide just cause expressly "does not apply" to property subject to a local just cause ordinance

6    like Oakland's that was either in place before September 1, 2019, or adopted or amended after

7    September 1, 2019, so long as the local just cause ordinance is "more protective" than statewide

8    just cause. Cal. Civ. Code § 1946.2(g)(1)(A)-(B); *see also* Oakland's RJN Ex. E at p. 6 (Senate

9    Floor Analyses, Cal. AB 1482, (Sept. 5, 2019 bill)) (statewide just cause "*[does] not preempt*

10   local rent control or just cause ordinances so long as such ordinances are at least as protective of

11   tenants as the bill") (emphasis added); Oakland's RJN Ex. D at p. 2 (Assembly Floor Analysis,

12   Cal. AB 1482 (Sept. 5, 2019 bill)).

13   Even assuming Oakland's temporary moratorium qualifies as an amendment to its just

14   cause ordinance within the meaning of Civil Code § 1946.2(g)(1)(B), it is not preempted because

15   Oakland's moratorium is "more protective" than statewide just cause. It "further limits the

16   reasons for termination of a residential tenancy." Cal. Civ. Code § 1946.2(g)(1)(B)(ii). City

17   Council formally found it "more protective" than state law. *Id.* § 1946.2(g)(1)(B)(iii); Ptfs. RJN

18   Ex. D (Oakland Ordinance No. 13589) at p. 3. And Oakland's moratorium is "consistent" with

19   statewide just cause, *id.* § 1946.2(g)(1)(B)(i): there is no inherent contradiction between the local

20   ordinance and statewide just cause, and nothing in the state law indicates an intent to limit the

21   scope of local protections. *Infra* pp. 20-21. So statewide just cause simply is not at play.

22   Even if statewide just cause were relevant to the analysis, there is no conflict between the

23   state law and the City's ordinance. Plaintiffs' argument that the two laws are "directly

24   inconsistent" because Oakland's moratorium "ban[s] virtually all just cause bases for eviction,"

25   Ptfs. MP&A 21:12-16, is just another way of saying Oakland's law prohibits some grounds for

26   eviction that state law allows. But state law does not "demand" that landlords be permitted to

27   evict for owner move-ins, or property damage, or for any other reason, much less demand such

28

21

evictions proceed amidst a local health emergency. *City of Riverside*, 300 P.3d at 500. Nor does it "forbid" local jurisdictions from eliminating some causes that the state allows. *Id.* Quite the opposite: the state legislature expressly contemplated that local jurisdictions would "go further than" state just cause by "limiting causes … or adding stronger tenant protections." Oakland's RJN Ex. D at p. 2 (Assembly Floor Analysis, Cal. AB 1482 (Sept. 5, 2019 bill)). Because there is no inherent contradiction in the laws, Oakland's ordinance is not preempted.

### 2. State law does not fully occupy the field of COVID-19 eviction protections.

Plaintiffs also argue that the City's moratorium impliedly conflicts with the state Covid-19 Acts because "Covid-19 eviction controls are not a municipal affair," and because the City and County's moratoria have created an "irrational 'checkboard' of local legislation," Ptfs. MP&A 22:8, 22:13. These are field preemption arguments, but meritless ones.

State law "fully occupie[s]" a field of law to the exclusion of local legislation only when:

> "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality."

*Sherwin-Williams*, 844 P.2d at 537.

Prongs (1) and (2) plainly do not apply. The state COVID-19 Acts were enacted against the longstanding presumption that substantive eviction controls are within the local police power.[10] *Birkenfeld,* 17 Cal. 3d at 149. Consistent with that presumption, both the COVID-19

---

[10] Plaintiffs' reference to the legislature's statement that the COVID-19 Acts address a "matter of statewide concern" is taken out of context and misleading. Ptfs. MP&A 22:9. The legislature deemed COVID-19 tenant relief a "matter of statewide concern rather than a *municipal affair as that term is used in Section 5 of Article XI of the California Constitution*." Cal. Code Civ. Proc. § 1179.05(e) (emphasis added). Article XI, Section 5 defines municipal affairs as matters within charter cities' "exclusive authority." In other words, the purpose of declaring the COVID-19 Acts a "statewide concern" was to establish the legislature's authority to apply the Acts to all cities, including charter cities, i.e., to clarify that COVID-19 tenant relief is not *exclusively* a municipal affair.

1   Acts and statewide just cause law expressly allow additional local regulation of evictions. *Supra*

2   pp. 18-19. "[W]hen the Legislature has expressed its intent to permit local regulations" or "when

3   the statutory scheme recognizes local regulations," courts presume the law has no preemptive

4   effect. *IT Corp.,* 820 P.2d at 1031. Just last month, a California appellate court rejected the

5   argument that the COVID-19 Acts occupy the field of COVID-19 eviction controls to the

6   exclusion of local regulation. *Arche*, No. 21LBUD00480, at *4-7.

7          The third prong applies to things like sex offender registration rules that could burden

8   "transient citizens of the state" with conflicting or disparate obligations. *See, e.g.*, *People v.*

9   *Nguyen*, 166 Cal. Rptr. 3d 590, 609 (Cal. App. 4th Dist. 2014). A regulation allowing tenants to

10  stay in their homes "would not have any effect on transient citizens, much less an effect that

11  outweighs the local benefit to be derived from the stability it will offer to tenants." *Vista*

12  *Associates v. Bacon*, 118 Cal. Rptr. 2d 295, 299 (Cal. App. 6th Dist. 2002). Plaintiffs do not

13  allege that they, much less all rental property owners, are "transient," or even that they own

14  properties in multiple jurisdictions. California landlords who *do* own properties in multiple

15  jurisdictions have faced varying eviction and rent control regulations for decades. *See Birkenfeld,*

16  17 Cal. 3d at 149. Eviction controls are simply not the kind of law that requires statewide

17  uniformity to avoid chaos and confusion.

18  **B.     The Eviction Moratorium Does Not Violate The California Election Code.**

19         Plaintiffs claim that the moratorium violates the California Election Code because it

20  unlawfully amends Oakland's just cause ordinance. Ptfs. MP&A 23:22-24:3. They are wrong.

21  The California Election Code permits amendments to voter initiatives by procedures established

22  "in the original ordinance." Cal. Elec. Code § 9217. Oakland's just cause ordinance expressly

23  authorizes the City Council "to modify the Just Cause for Eviction Ordinance…for the purpose

24  of adding limitations on a landlord's right to evict," which is precisely what the moratorium

25  does. Ptfs. RJN Ex. L at p. 10 (O.M.C. § 8.22.360(F)).

26         Plaintiffs acknowledge all of this, yet they urge, without evidence or authority, that the

27  City's just cause ordinance "plainly" does not allow Council to temporarily ban most evictions.

28

1    Ptfs. MP&A 23:25-26. They cannot point to any support for that narrowing of Council's

2    authority, nor do they define the limits, in their view, of Council's power. (If Council cannot

3    remove most just causes for eviction, how many can it remove? Two? Four?) Regardless, under

4    Plaintiffs' view, any moratorium, no matter how short, would be unlawful. This Court should

5    reject that extreme view and adhere to the plain language of the ordinance, which places no

6    limits on Council's authority to limit the grounds for eviction.

7                                          **CONCLUSION**

8
         For the foregoing reasons, the Court should deny Plaintiffs' Rule 56(a) Motion for Partial
9
     Summary Judgment on their facial claims.
10

11

12

13   Dated: September 6, 2022            BARBARA J. PARKER, City Attorney

14
                                  By:    /s/ Cynthia Stein
15                                       CYNTHIA F. STEIN, Deputy City Attorney
                                         Attorneys for Defendants,
16                                       CITY OF OAKLAND and OAKLAND CITY COUNCIL

17

18

19

20

21

22

23

24

25

26

27

28

Defendants City of Oakland and Oakland City Council's                3:22-cv-01274-LB
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

1

2

## PROOF OF SERVICE
### John Williams, et al. vs. Alameda County, et al.
### United States District Court Case No. 3:22-cv-01274-LB

3

4

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is City Hall, One Frank H. Ogawa Plaza, 6th Floor, Oakland, California 94612. On the date set forth below, I served the within documents:

5

6

**DEFENDANTS CITY OF OAKLAND AND OAKLAND CITY COUNCIL'S OPPOSITION TO PLAINTIFFS' RULE 56 MOTION ON FACIAL CLAIMS**

☒    **By electronic transmission**. Based on an agreement of the parties to accept service by electronic transmission, I sent the documents in PDF format to the person(s) at the email addresses listed below via email. Except for the California Apartment Association attorneys, all parties are also registered to receive filings in this case via the Court's CM/ECF system.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

| | |
|---|---|
| ANDREW M. ZACKS<br>EMILY L. BROUGH<br>ZACKS, FREEDMAN & PATTERSON, PC<br>1970 Broadway, Ste. 1270<br>Oakland, CA 94612<br><br>Email: az@zpflaw.com<br>Email: emily@zpflaw.com<br><br>**_Attorneys for Plaintiffs and Petitioners, John Williams, Robert Vogel Sheanna Rogers, Michael Loeb, Jacqueline Watson-Baker, Housing Providers of America._** | CHRISTOPHER SKINNELL<br>HILARY GIBSON<br>NIELSEN MERKSAMER PARRINELLO GROSS & LEONI LLP<br>2350 Kerner Boulevard, Suite 250<br>San Rafael, CA 94901<br><br>Email: CSkinnell@nmgovlaw.com<br>Email: hgibson@nmgovlaw.com<br><br>**_Attorneys for California Apartment Association_** |
| MATTHEW D. ZINN<br>EDWARD T. SCHEXNAYDER<br>MINDY K. JIAN<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br><br>Email: Zinn@smwlaw.com<br>Email: Schexnayder@smwlaw.com<br>Email: mjian@smwlaw.com<br><br>**_Attorneys for Alameda County and Alameda County Board of Supervisors_** | MARC SELTZER<br>KRYSTA K. PACHMAN<br>GLENN C. BRIDGMAN<br>NICHOLAS N. SPEAR<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br><br>Email: mseltzer@susmangodfrey.com<br>Email: kpachman@susmangodfrey.com<br>Email: gbridgman@susmangodfrey.com<br>Email: nspear@susmangodfrey.com<br><br>**_Attorneys for Intervenor-Defendant Alliance of Californians for Community Empowerment Action_** |

25

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

26

Executed on September 6, 2022, at Oakland, California.

27

_/s/ Cynthia Stein_ _____

28

Cynthia Stein

Defendants City of Oakland and Oakland City Council's
Opposition to Plaintiffs' Rule 56 Motion on Facial Claims

3:22-cv-01274-LB