1    MARC SELTZER (54534)
     mseltzer@susmangodfrey.com
2    KRYSTA K. PACHMAN (280951)
     kpachman@susmangodfrey.com
3    GLENN C. BRIDGMAN (298134)
     gbridgman@susmangodfrey.com
4    NICHOLAS N. SPEAR (304281)
     nspear@susmangodfrey.com
5    SUSMAN GODFREY L.L.P.
     1900 Avenue of the Stars, Suite 1400
6    Los Angeles, California 90067-6029
     Telephone: (310) 789-3100
7    Facsimile: (310) 789-3150

8    *Attorneys for Intervenor-Defendant Alliance*
     *of Californians for Community Empowerment*
9    *Action*

10                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
11                       **SAN FRANCISCO DIVISION**

12   JOHN WILLIAMS, ROBERT VOGEL,           Case No. 3:22-cv-01274-LB
     SHEANNA ROGERS, MICHAEL LOEB,
13   JAQUELINE WATSON-BAKER, and
     HOUSING PROVIDERS OF AMERICA, a        **INTERVENOR-DEFENDANT ALLIANCE**
14   501(c)(4) non-profit Corporation,      **OF CALIFORNIANS FOR COMMUNITY**
                                            **EMPOWERMENT ACTIONS'**
15             Plaintiffs and Petitioners,  **OPPOSITION TO PLAINTIFFS' AND**
                                            **PETITIONERS' RULE 56 MOTION ON**
16   vs.                                    **BIFURCATED CLAIMS**

17   ALAMEDA COUNTY, ALAMEDA
     COUNTY BOARD OF SUPERVISORS, CITY      Date:   September 29, 2022
18   OF OAKLAND, OAKLAND CITY COUNCIL       Time:   9:30 a.m.
     and DOES 1-10,                         Place:  Courtroom B, 15th Floor
19                                          Judge:  Hon. Laurel Beeler
               Defendants and Respondents.

20   ALLIANCE OF CALIFORNIANS FOR
     COMMUNITY EMPOWERMENT ACTION,          Complaint Filed: March 1, 2022
21
               Intervenor-Defendant.
22                                          Trial Date: April 24, 2023

23   CALIFORNIA APARTMENT                   Case No. 3:22-cv-02705-KAW
     ASSOCIATION, *et. al.,*
24
               Plaintiffs and Petitioners,
25   vs.

26   COUNTY OF ALAMEDA, BOARD OF
     SUPERVISORS OF THE COUNTY OF
27   ALAMEDA, and DOES 1-25,

28             Defendants and Respondents.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................4

III.    THE TEXT OF THE ORDINANCES AT ISSUE..............................................5

IV.     PLAINTIFFS FAIL TO MEET THE HIGH BAR OF ESTABLISHING THAT
        THE ORDINANCES ARE FACIALLY *PER SE* PHYSICAL TAKINGS ........6

        A.      Facial Physical Takings are "Rare" and Face an "Uphill Battle" ............6

        B.      Under *Yee*, the Ordinances are Not Facially *Per Se* Physical Takings ....8

        C.      Plaintiffs Distinguish *Yee* by Misrepresenting the Case Law and
                Ordinances...............................................................................................10

        D.      Evidence of Benefits and Burdens is Irrelevant to a Physical Takings
                Claim........................................................................................................17

        E.      Plaintiffs' Requested Relief Would Undercut the Government's Lawful
                Ability to Regulate Housing and Effectively Respond to Emergencies .....19

        F.      The CAA Plaintiffs' Takings Claim Should Be Rejected for the Same
                Reasons ...................................................................................................21

V.      THE ORDINANCES DO NOT VIOLATE PROCEDURAL DUE PROCESS................21

VI.     THE ORDINANCES DO NOT VIOLATE THE CONTRACTS CLAUSE.....................25

VII.    THE ORDINANCES DO NOT VIOLATE STATE OR LOCAL LAW .........................25

VIII.   CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Human Services,*
    141 S. Ct. 2485 (2021) ........................................................................................ 12

*Apartment Association of Los Angeles County, Inc. v. City of Los Angeles,*
    10 F.4th 905 (9th Cir. 2021).......................................................................... 4, 25

*Ark. Game & Fish Comm'n v. United States,*
    568 U.S. 23 (2012) ............................................................................................. 11

*Armstrong v. United States,*
    364 U.S. 40 (1960) ............................................................................................. 12

*Auracle Homes, LLC v. Lamont,*
    478 F.Supp.3d 199 (D. Conn. 2020) ....................................................... 2, 10, 22

*Ballinger v. City of Oakland,*
    24 F.4th 1287 (9th Cir. 2022)....................................................................*passim*

*Baptiste v. Kennealy,*
    490 F. Supp. 3d 353 (D. Mass. 2020) ........................................................... 2, 10

*Best Supplement Guide, LLC v. Newsom,*
    2022 WL 2703404 (9th Cir. July 12, 2022) ..................................................... 23

*Block v. Hirsh,*
    256 U.S. 135 (1921) ...................................................................................... 3, 20

*Blumenkron v. Hallova,*
    568 F. Supp. 3d 1093 (D. Or. 2021) ................................................................ 22

*Cedar Point Nursery v. Hassid,*
    141 S. Ct. 2063 (2021) ...............................................................................*passim*

*Chrysafis v. Marks,*
    141 S. Ct. 2482 (2021) ................................................................................ 23, 24

*Colony Cove Props., LLC v. City of Carson,*
    888 F.3d 445 (9th Cir. 2018)............................................................................. 7

*DM Arbor Ct., Ltd. v. City of Houston,*
    No. CV H-18-1884, 2021 WL 4926015 (S.D. Tex. Oct. 21, 2021)...................... 25

*El Papel LLC v. Durkan,*
    2021 WL 4272323 (W.D. Wash. Sept. 15, 2021), *report and recommendation adopted as
    modified*, 2022 WL 2828685 (W.D. Wash. July 20, 2022) .......................... 2, 9, 10

*F.C.C. v. Fla. Power Corp.*,
  480 U.S. 245 (1987) ................................................................................ 8, 10, 21

*Farhoud v. Brown*,
  2022 WL 326092 (D. Or. Feb. 3, 2022) .............................................................. 2, 9

*Fed. Home Loan Mortg. Corp. v. SFR Invests. Pool 1, LLC*,
  893 F.3d 1136 (9th Cir. 2018) ........................................................................ 21, 22

*First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*,
  482 U.S. 304 (1987) ................................................................................ *passim*

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) ........................................................................................ 24

*Gallo v. D.C.*,
  2022 WL 2208934 (D.D.C. June 21, 2022) .................................................... *passim*

*Guggenheim v. City of Goleta*,
  638 F.3d 1111 (9th Cir. 2010) (en banc) .............................................................. 16

*Halverson v. Skagit Cnty.*,
  42 F.3d 1257 (9th Cir. 1994) ........................................................................ 4, 23

*Harris v. County of Riverside*,
  904 F.2d 497 (9th Cir. 1990) ............................................................................ 23

*Heights Apartments, LLC v. Walz*,
  30 F.4th 720 (8th Cir. 2022) ........................................................................ 12, 13

*Heights Apts., LLC v. Walz*,
  39 F.4th 479 (8th Cir. 2022) ............................................................................ 12

*Horne v. Dep't of Agric.*,
  576 U.S. 350 (2015) ...................................................................................... 11

*In re Murchison*,
  349 U.S. 133 (1955) ...................................................................................... 24

*Jevons v. Inslee*,
  561 F. Supp. 3d 1082 (E.D. Wash. 2021) ...................................................... *passim*

*Kaiser Aetna v. United States*,
  444 U.S. 164 (1979) ...................................................................................... 12

*L.L. Nelson Enters., Inc. v. County of St. Louis*,
  673 F.3d 799 (8th Cir. 2012) ............................................................................ 22

*LA All. for Human Rights v. Cnty. of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021) ............................................................................ 24

10897430v1/017475

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
    841 F.2d 872 (9th Cir. 1987) .................................................................................. 6

*Levald, Inc. v. City of Palm Desert*,
    998 F.2d 680 (9th Cir. 1993) ............................................................................. 3, 6

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005) .............................................................................................. 7

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982) ..................................................................................... *passim*

*Lynch v. Household Fin. Corp.*,
    405 U.S. 538 (1972) ............................................................................................ 12

*Matthews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................................... 22, 23

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ............................................................................................ 24

*Nollan v. Cal. Coastal Comm'n*,
    483 U.S. 825 (1987) ............................................................................................ 11

*Nozzi v. Hous. Auth. of City of Los Angeles*,
    806 F.3d 1178 (9th Cir. 2015) ............................................................................ 23

*Penn Central Transportation Co. v. New York City*,
    438 U.S. 104 (1978) ..................................................................................... *passim*

*Penn. Coal Co. v. Mahon*,
    260 U.S. 393 (1922) .............................................................................................. 7

*Winters ex rel. Philippe & Elise Stassart v. Lakeside Joint Sch. Dist.*,
    2008 WL 4937812 (N.D. Cal. Nov. 17, 2008) .............................................. 7, 17

*Phillips v. Wash. Legal Found.*,
    524 U.S. 156 (1998) ............................................................................................ 11

*S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*,
    550 F. Supp. 3d 853 (S.D. Cal. 2021) ..................................................... 2, 10, 11, 15

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*
    535 U.S. 302, 324 (2002) ...................................................................................... 7

*United States v. Causby*,
    328 U.S. 256 (1946) ............................................................................................ 12

*United States v. Farmer*,
    274 F.3d 800 (4th Cir. 2001) .............................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Gen. Motors Corp.*,
    323 U.S. 373 (1945) .................................................................................. 12

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993) .................................................................................. 24

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................................ 24

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 ................................................................................................ 24

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) .......................................................................*passim*

**Statutes**

Alameda Code 6.120.010 ...................................................................... 14

Alameda Code 6.120.090 ...................................................................... 21

Cal. Civ. Code § 1946 ..................................................................... 3, 19

Cal. Civ. Code § 1954 ........................................................................... 20

Cal. Civ. Proc. Code § 1159 ................................................................ 14

Cal. Civ. Proc. Code § 1160 ................................................................ 14

Cal. Civ. Proc. Code § 1161 ...................................................... 14, 19, 20

Cal. Gov. Code § 7060 ..................................................................... 6, 20

Cal. Gov. Code § 8630 .......................................................................... 16

Cal. Health & Safety Code § 101080 .................................................. 16

2020 N.Y. Laws Chapter 127 ............................................................... 24

Oakland Municipal Code 8.22.340 ...................................................... 14

Oakland Municipal Code 8.50.050 ...................................................... 16

Oakland Municipal Code § 8.22.360 ....................................... 5, 8, 14, 20

Oakland Ordinance No. 13606 ............................................................... 5

**Rules**

Fed. R. Civ. Proc. 12 ............................................................................ 13

1

**Other Authorities**

2

B.E. Witkin, 12 Witkin,
     Summary 11th Real Prop §§ 733, 776 ................................................................. 15

3

Miller & Starr,
     10 Cal. Real Est. § 34:199 ....................................................................................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT-INTERVENOR'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT
Case Nos. 3:22-cv-01274-LB and 3:22-cv-02705-KAW

10897430v1/017475

1

## I.   INTRODUCTION

2

In response to the emerging public health crisis of the COVID-19 pandemic, the City of

3

Oakland and Alameda County—like state and local jurisdictions across the United States—enacted

4

ordinances to temporarily protect residential tenants from eviction. Plaintiffs' pre-discovery motion

5

for summary judgment seeks dispositive rulings that the mere enactment of these ordinances

6

constituted a *per se* physical taking of the property interests of landlords in Oakland and Alameda,

7

violated procedural due process, and contravened state and local law. But to rule in Plaintiffs' favor,

8

the Court would need to disregard well-established—and binding—Supreme Court, Ninth Circuit,

9

and California law. For this reason, courts around the country, including multiple courts in the

10

Ninth Circuit, have rejected similar arguments challenging similar ordinances. This Court should

11

do the same.

12

Plaintiffs' main argument is that the ordinances, which limit the ability of landlords to evict

13

their tenants during the pendency of the COVID-19 local emergency, are facially unconstitutional

14

physical takings. This claim runs squarely afoul of the Supreme Court's decision in *Yee v. City of*

15

*Escondido*, which held that laws regulating the landlord-tenant relationship do not constitute *per se*

16

physical takings. 503 U.S. 519, 526–32 (1992); *see Ballinger v. City of Oakland*, 24 F.4th 1287,

17

1292–94 (9th Cir. 2022) (applying *Yee*). ***Plaintiffs do not dispute that their facial physical takings***

18

***claims fail under Yee.*** Instead, Plaintiffs go to great lengths to try to distinguish *Yee* and frame the

19

Oakland and Alameda ordinances as akin to regulations found to be physical appropriations of

20

property in cases like *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), and

21

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021).

22

These efforts fail. *First*, Plaintiffs mischaracterize the case law. The cases upon which

23

Plaintiffs rely address situations in which governmental action "require[d] the landowner to submit

24

to the physical occupation of his land." *Yee*, 503 U.S. at 519 (emphasis omitted); *see, e.g.*, *Loretto*,

25

458 U.S. 419 (cable wires on buildings); *Cedar Point*, 141 S. Ct. 2063 (union organizers allowed

26

27

28

1

10897430v1/017475

on private property). But the ordinances here, on their face, only apply *after* a landlord has voluntary invited someone onto their property and entered into a landlord-tenant relationship. As the Supreme Court made clear and courts across the country have held, *Yee* controls in this situation: "[I]t is the invitation . . . that makes the difference. The line which separates [this case] from *Loretto* is the unambiguous distinction between a . . . lessee and an interloper with a government license." 503 U.S. at 532; *see, e.g.*, *Gallo v. D.C.*, 2022 WL 2208934, at *8–10 (D.D.C. June 21, 2022) (applying *Yee* and rejecting argument that an eviction moratorium was a *per se* physical taking); *Farhoud v. Brown*, 2022 WL 326092, at *9–10 (D. Or. Feb. 3, 2022) (same); *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1104–07 (E.D. Wash. 2021) (same); *El Papel LLC v. Durkan*, 2021 WL 4272323, at *15–17 (W.D. Wash. Sept. 15, 2021) (same), *report and recommendation adopted as modified*, 2022 WL 2828685 (W.D. Wash. July 20, 2022); *S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853, 865–66 (S.D. Cal. 2021) (same); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388 (D. Mass. 2020) (same); *Elmsford Apt. Assocs.*, 469 F. Supp. 3d 148, 163 (S.D.N.Y. 2020) (same); *Auracle Homes, LLC v. Lamont*, 478 F.Supp.3d 199, 220 (D. Conn. 2020) (same).

*Second*, Plaintiffs mischaracterize the ordinances. Plaintiffs claim that the ordinances apply to uninvited "squatters"—that is, individuals who were never tenants in the first instance—in an obvious attempt to bring the ordinances outside of *Yee* and the landlord-tenant relationship. Plaintiffs are wrong. Each ordinance explicitly limits its applicability to "tenants," a defined term which does not include "squatters." Indeed, beyond conclusory assertions, Plaintiffs do not cite any language in any of ordinances that would force any landowner (including landlords) to accept uninvited individuals onto their property. Plaintiffs also claim that the moratoria permanently eliminate evictions. Wrong again. The protections in the ordinances are explicitly limited to the pendency of the Local Emergencies. Plaintiffs argue that because the conditions necessitating the local emergencies have improved, the fact that the ordinances remain in place indicates that they

are permanent. But these arguments and any related "evidence" are irrelevant to a facial takings challenge, which analyzes the text of the ordinances at the time of enactment. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993).[1]

    *Third*, Plaintiffs improperly conflate the *per se* physical takings analysis with the fact-intensive regulatory takings analysis arising from *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). Plaintiffs justified the propriety of this early, pre-discovery motion for summary judgment by limiting the motion to facial, *per se* physical takings challenges that they claimed "involve exclusively legal questions that do not require trial by jury." Dkt. 23 (Pltfs. Mtn. to Bifurcate) at 2. Plaintiffs' summary judgment motion, however, is replete with arguments that the ordinances improperly and unfairly benefits tenants at the expense of landlords. Whatever relevance these arguments may have to the *Penn Central* factual balancing test, they are irrelevant to the facial, *per se* physical takings challenges that Plaintiffs actually raised in this motion. *See Yee*, 503 U.S. at 529–31; *Loretto*, 458 U.S. at 434–35. Plaintiffs' assertions of the ordinances' benefits and burdens, moreover, are heavily contested and should be subject to discovery before an adjudication on the merits.

    *Finally*, Plaintiffs' requested rulings would have implications far beyond the eviction moratoria at issue here. Taken literally, a ruling that the ordinances, on their face, are *per se* physical takings would call into question any rule or regulation that limited a landlord's ability to evict a tenant, including such commonplace regulations as the 30-day move-out notice. *See* Cal. Civ. Code § 1946. It would also severely hamper a government's ability to quickly and effectively respond to emergencies like a natural disaster or, like here, a worldwide pandemic. *Block v. Hirsh*, 256 U.S. 135, 154–57 (1921) (upholding a two-year temporary eviction moratorium during World War I because "[h]ousing is a necessary of life and "a public exigency will justify the legislature in

---

    [1] Intervenor-Defendant incorporates by reference the evidentiary arguments in Defendants' Opposition to Plaintiffs' Requests for Judicial Notice, filed concurrently herewith.

restricting property rights in land to a certain extent without compensation"). Plaintiffs' do not—and cannot—explain how their arguments would not apply with equal force to myriad other regulations of the eviction process.

The other constitutional claims brought in this case and the related CAA Action (Case No. 3:22-cv-02705-LB), are equally flawed. Plaintiffs' procedural due process claims fail because Plaintiffs have not established any property right that has been *deprived* (as opposed to temporarily delayed). Procedural due process, moreover, is satisfied where, as here, the complained of governmental action is the normal legislative process. *See Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260–61 (9th Cir. 1994). The CAA Plaintiffs' Contracts Clause claim is foreclosed by the Ninth Circuit's decision in *Apartment Association of Los Angeles County, Inc. v. City of Los Angeles*, 10 F.4th 905, 912–17 (9th Cir. 2021).[2]

This case addresses one of the government's core responsibilities—to protect its most vulnerable citizens in a time of crisis. A determination of whether Oakland and Alameda ultimately went "too far" in enacting the COVID-19 eviction moratoria should be made after discovery and on a full record. A ruling now that the ordinances—on their face—are prohibited would be in tension with decades of Supreme Court law and would have broad (and troubling) implications going forward. The Court should therefore deny Plaintiffs' motion for summary judgment.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the mere enactment of the temporary eviction moratoria in the Oakland and Alameda ordinances constituted a *per se* physical taking of landlords' property.

2.    Whether the ordinances violate procedural due process rights.

3.    Whether the ordinances are preempted under state and local law.

---

[2] Intervenor-Defendant incorporates by reference the Oakland Defendants' and Alameda Defendants' arguments regarding state and local law violations. Dkt. 71 at 19–24 (Oakland Defendants); Dkt. 75 at 39–45 (Alameda Defendants).

1

## III.    THE TEXT OF THE ORDINANCES AT ISSUE

2

As will be discussed in more detail below, Plaintiffs contend that the Oakland and Alameda

3

ordinances are facially unconstitutional. It is therefore important at the outset to set forth the text

4

of the challenged ordinances.

5

The "Residential Eviction Moratorium" provision of the Oakland Ordinance states:

6

7

> Except when the tenant poses an imminent threat to the health or safety of other
> occupants of the property, and such threat is stated in the notice as the grounds for
> the eviction, it shall be an absolute defense to any unlawful detainer action filed
> under Oakland Municipal Code 8.22.360A subsections (1) - (10) that the notice was
> served or expired, or that the complaint was filed or served, during the Local
> Emergency. Any notice served pursuant to Oakland Municipal Code 8.22.360A (1)
> - (10) on a tenant during the Local Emergency shall include the following statement
> in bold underlined 12-point font: "Except to protect the health and safety of other
> occupants of the property, you may not be evicted during the Local Emergency
> declared by the City of Oakland in response to the COVID-19 pandemic. This does
> not relieve you of the obligation to pay back rent in the future. You may contact the
> Rent Adjustment Program at 1510) 238-3721 for additional information and
> referrals." This section shall remain in effect until the Local Emergency declared
> on March 9, 2020, has been terminated by the City Council.

8

9

10

11

12

13

14

15

Pltfs. RJN, Ex. E at 4–5 (Oakland Ordinance No. 13606) (emphasis omitted).[3]

16

The "Moratorium on eviction during local health emergency" provision in the Alameda

17

Ordinance states:

18

19

> A. Beginning on the effective date of this ordinance and expiring sixty (60) days
> after the expiration of the local health emergency but not sooner than sixty (60)
> days after December 31, 2020, the county hereby places a moratorium on all
> evictions from residential units in the unincorporated and incorporated areas of the
> county, subject to the exceptions stated below.

20

21

22

> B. No landlord or lender may evict a resident, or otherwise require a resident to
> vacate a residential unit, or retaliate against a resident, while this section is in effect.

23

24

> C. Violation of this chapter is an affirmative defense to any unlawful detainer action
> or other proceeding to recover possession of a residential unit.

25

> D. It shall be an absolute defense to any unlawful detainer action against a resident
> that the notice of termination was served or expired, or that the complaint was filed
> or served, on or after March 24, 2020 and on or before sixty (60) days after the

26

27

28

---

[3] Plaintiffs' brief misquotes the opening line of this provision: "Except when the renter poses an imminent threat . . . ." Mot. 7.

10897430v1/017475

1
2
3
4

expiration of the local health emergency or sixty (60) days after December 31, 2020, whichever is later, subject to the exceptions stated below. This defense may be raised at any time, including after the end of the local health emergency and after the expiration of the ordinance codified in this chapter stated in Section III of said ordinance, provided the notice or complaint at issue in the unlawful detainer action was filed or served during the period stated in this subsection.

5
6

E. Notwithstanding any lease provision to the contrary, no late fees, fines or interest may be imposed for rent that became due during the effective period for this section.

7
8
9

F. Exceptions. The landlord or lender claiming that their proposed eviction is not prohibited by this chapter shall have the burden of proving that one or more of the exceptions applies. The provisions of this section shall not apply in the following circumstances, which must be stated by in the notice of termination and the complaint as the grounds for the eviction:

10
11

1. A Landlord is taking the residential unit off of the residential rental market in accordance with Government Code Section 7060, et seq. (Ellis Act) and in compliance with any applicable local ordinances.

12
13

2. The residential unit must be vacated to comply with an order issued by a government agency or court.

14
15
16

3. Continued occupancy by the resident poses an imminent threat to health or safety. For the purposes of this chapter, the basis for this exception cannot be the resident's COVID-19 illness or exposure to COVID-19, whether actual or suspected.

17

Pltfs. RJN, Ex. H at 2–3 (Code of Ordinances Chapter 6.120.030).

18

## IV.   PLAINTIFFS FAIL TO MEET THE HIGH BAR OF ESTABLISHING THAT THE ORDINANCES ARE FACIALLY *PER SE* PHYSICAL TAKINGS

19
20

### A.   Facial Physical Takings are "Rare" and Face an "Uphill Battle"

21

Plaintiffs' motion for summary judgment asserts facial, rather than as-applied, takings

22

challenges. Mot. 19. This is a heavy burden. *See Lake Nacimiento Ranch Co. v. San Luis Obispo*

23

*Cnty.*, 841 F.2d 872, 877 (9th Cir. 1987) (explaining that a facial takings attack "faces an 'uphill

24

battle'" (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987))). "A

25

facial challenge involves a claim that the **mere enactment** of a statute constitutes a taking." *Levald,*

26

*Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993) (emphasis added and citation and

27

internal quotation marks omitted). Thus, a facial challenge "alleges that a regulation constitutes a

28

taking by its plain language." *Winters ex rel. Philippe & Elise Stassart v. Lakeside Joint Sch. Dist.*, 2008 WL 4937812, at *3 (N.D. Cal. Nov. 17, 2008). "[S]uch regulations are rare." *Id.*

This heavy burden is compounded because Plaintiffs limit their facial challenges to *physical* takings, not a "regulatory taking." Mot. 19. It is black letter law that a regulation is only a taking if it goes "too far." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922). As a general matter, regulations are reviewed under the fact-intensive balancing test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), to determine whether they go "too far" and thus constitute a taking. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537–39 (2005).[4] Under this analysis, only the "most extreme" regulatory programs constitute takings. *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 329–30 (1987). If, however, a regulation physically appropriates private property, it is a *per se* physical taking requiring compensation. *See Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022). Physical appropriation means "*taking* as one's own." *Id.* (quoting *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2077 (2021)).

As the Supreme Court explained in *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, physical appropriations are "relatively rare" because treating all land-use regulations as "*per se* takings would transform government regulation into a luxury few governments could afford." 535 U.S. 302, 324 (2002). This is particularly true in the context of housing, as "the Supreme Court 'has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.'" *Ballinger*, 24 F.4th at 1292 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982)).

---

[4] The *Penn Central* factors include: "[1] the regulation's economic impact on the claimant, [2] the extent to which the regulation interferes with distinct investment-backed expectations, and [3] the character of the government action." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

DEFENDANT-INTERVENOR'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT
Case Nos. 3:22-cv-01274-LB and 3:22-cv-02705-KAW

10897430v1/017475

1

**B.**     <u>Under *Yee*, the Ordinances are Not Facially *Per Se* Physical Takings</u>

2

3

In *Yee v. City of Escondido*, 503 U.S. 519 (1992), the Supreme Court applied its regulatory

4

takings jurisprudence to the landlord-tenant relationship. The petitioners in *Yee* argued that a local

5

rent control ordinance, coupled with California's Mobile Home Residency Law, was a *per se*

6

physical taking because it gave a mobile homeowners and any successive purchasers "the right to

7

occupy the land indefinitely at a submarket rent." 503 U.S. at 526–27. The Court disagreed because

8

"the line which separates [this case] from [the physical takings cases] is the unambiguous

9

distinction between a . . . lessee and an interloper with a government license." *Id.* at 532 (quoting

10

*F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987)). "When a landowner decides to rent his land

11

to tenants," the government can regulate that relationship without paying just compensation. *Id.* at

12

528–29. This includes regulating the right to exclude. *Id.* at 531 ("Because they voluntarily open

13

their property to occupation by others, petitioners cannot assert a per se right to compensation based

14

on their inability to exclude particular individuals."). Because the Court determined that the laws

15

at issue "merely regulate[d] petitioners' *use* of their land by regulating the relationship between

16

landlord and tenant," the Court held that no *per se* physical taking occurred. *Id.* at 528. The Court

17

noted that a "different case would be presented" if the ordinance were "to compel a landowner over

18

objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Id.*[5]

19

20

The Oakland and Alameda ordinances are analogous to those in *Yee*. *First*, both ordinances

21

expressly regulate the pre-established landlord-tenant relationship. The operative Oakland

22

Ordinance (No. 13606) provides a defense to certain unlawful detainer actions filed under Oakland

23

Municipal Code 8.22.360A. *See* Section III, *supra*. Municipal Code 8.22.360A is part of Oakland's

24

"Just Cause for Eviction" Ordinance, which addresses a landlord's ability to evict a tenant. *See*

25

Pltfs. RJN, Ex. L at 5–8. Alameda's "Moratorium on evictions during local health emergency"

26

27

28

---

[5] *Yee* did not consider whether the ordinance constituted a regulatory taking under the *Penn Central* factual balancing test because the issue was not properly raised. *Id.* at 532–38.

provision in its ordinance (Code of Ordinances 6.120.030) states that "No landlord or lender may evict a resident, or otherwise require a resident to vacate a residential unit . . . while this section is in effect." *See* Section III, *supra*. "Resident" is defined as a "a tenant, homeowner or their household." Pltfs. RJN, Ex. H at 2 (6.120.020).

*Second*, neither ordinance bars landlords from evicting tenants in perpetuity. Both are expressly time-limited to the pendency of the jurisdiction's Local Emergency. *See* Section III, *supra* (Oakland Ordinance: "This section shall remain in effect until the Local Emergency declared on March 9, 2020, has been terminated by the City Council."; Alameda Ordinance: "Beginning on the effective date of this ordinance and expiring sixty (60) days after the expiration of the local health emergency . . .").

And *third*, neither ordinance, on its face, forces anyone (landowner, landlord, or otherwise) to involuntarily enter into a landlord-tenant relationship. Non-renting landowners are not required to rent their property against their will (or do anything at all). And nothing in the ordinances requires a landlord to take on any new tenants. Rather, the ordinances only regulate a landlord's ability to evict a pre-existing tenant. *See* Section III, *supra*.

Thus, under *Yee*, the ordinances are not facially *per se* physical takings of Plaintiffs' property because they "merely regulate [Plaintiffs'] use of their land by regulating the relationship between landlord and tenant." 503 U.S. at 528 (emphasis omitted). As Plaintiffs themselves acknowledged, Mot. 17, courts across the country considering similar regulations have come to the same conclusion and have rejected challenges to eviction moratoria as *per se* physical takings. *See, e.g.*, *Gallo v. D.C.*, 2022 WL 2208934, at *8–10 (D.D.C. June 21, 2022); *Farhoud v. Brown*, 2022 WL 326092, at *9–10 (D. Or. Feb. 3, 2022); *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1104–07 (E.D. Wash. 2021); *El Papel LLC v. Durkan*, 2021 WL 4272323, at *15–17 (W.D. Wash. Sept. 15, 2021), *report and recommendation adopted as modified*, 2022 WL 2828685 (W.D. Wash. July 20, 2022);

*S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853, 865–66 (S.D. Cal. 2021); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388 (D. Mass. 2020); *Elmsford Apt. Assocs.*, 469 F. Supp. 3d 148, 163 (S.D.N.Y. 2020); *Auracle Homes, LLC v. Lamont*, 478 F.Supp.3d 199, 220 (D. Conn. 2020).

**C.**    **Plaintiffs Distinguish *Yee* by Misrepresenting the Case Law and Ordinances**

Plaintiffs argue that *Yee* is inapplicable and the Ordinances should be deemed analogous to regulations found to be physical takings in cases like *Loretto* and *Cedar Point*. *See* Mot. 10–19. These arguments are meritless.

*First*, Plaintiffs' claim that *Yee* "does not apply" to a "physical taking [claim] of the right to possess and exclude," Mot. 17, is simply incorrect. As the Ninth Circuit reiterated just this year in *Ballinger*, the *Yee* analysis applies broadly to regulations of the landlord-tenant relationship. 24 F.4th at 1292–94 (applying *Yee* and holding that conditioning an eviction on a relocation fee is not a *per se* physical taking). Indeed, as explained above, *Yee* specifically addressed (and rejected) arguments that the ordinances at issue affected the right to exclude. 503 U.S. at 531; *accord El Papel*, 2021 WL 4272323, at *16 ("*Yee* holds that a government can restrict the circumstances in which a tenant may be evicted without committing a physical taking."); *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 163 ("The Supreme Court has ruled that a state does not commit a physical taking when it restricts the circumstances in which tenants may be evicted.").

Rather, the touchstone for determining whether the *Yee* analysis applies is the voluntariness of the relationship. 503 U.S. at 532; *accord Fla. Power Corp.*, 480 U.S. at 252 ("[I]t is the invitation . . . that makes the difference."). "[T]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Ballinger*, 24 F.4th at 1293 at n.3 (quoting *Yee*, 503 U.S. at 527). Where, as here, an ordinance regulates the voluntary landlord-tenant relationship, *Yee* applies. *See id.* at 1293–94 (applying *Yee* where "the Ballingers voluntarily chose to lease their property"); *Gallo*, 2022 WL 2208934, at *8 ("But *Cedar Point* is

10

distinguishable. Unlike the growers, Gallo invited the nonpaying tenant onto his property. This changes the analysis, and an older case—[*Yee*]—controls."); *Jevons*, 561 F. Supp. 3d at 1106 ("Based on the undisturbed precedent of *Yee*, limitations on how a landlord may treat tenants— which they have voluntarily invited onto their properties by renting to them—and enforce their contractual rights (for a temporary period) are readily distinguishable from regulations granting a *separate right* to invade property closed to the public or most individuals."); *S. Cal. Rental*, 550 F. Supp. 3d at 865 (citing *Yee* and stating: "Unlike an invasion of property by an uninvited guest, the landlords here have solicited tenants to rent their properties, and the Ordinance simply regulates landlords' relationship with tenants").[6]

This distinguishes all of the precedential physical takings cases cited in Plaintiffs' motion. *See* Mot. 10–19. In each of these cases, governmental action required landowners to submit to an uninvited physical occupation of their property. None involved the regulation of voluntary access, let alone the regulation of a pre-existing landlord-tenant relationship. *See Cedar Point*, 141 S. Ct. at 2069–70, 2074 (regulation allowed union organizers to access the growers' property over their objection); *Horne v. Dep't of Agric.*, 576 U.S. 350, 361–62 (2015) (regulation required growers to transfer raisins they produced to the government); *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 27–34 (2012) (U.S. Army Corp of Engineers authorized flooding of the petitioner's wildlife management area to benefit third-party farmers); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 161–71 (1998) (interest on IOLTA accounts required to be transferred state-sponsored nonprofit); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831–32 (1987) (government conditioned permit to rebuild on an agreement to provide a public easement to increase access to the beach);

---

[6] Plaintiffs' argument that tenants are "essentially interlopers with a government license" once a landlord wants to evict them, but cannot do so, Mot. 13–14, ignores that voluntariness is measured at the outset of the relationship. *See Yee*, 503 U.S. at 530–32; *Ballinger*, 24 F.4th at 1293–94. If the rule were otherwise, the landlords in *Yee* would have won, because the landlords there wanted to evict the mobile-home owners, but couldn't.

*Loretto*, 458 U.S. at 438–40 (1982) (ordinance allowed cable companies to place wires on landlords' property);[7] *Kaiser Aetna v. United States*, 444 U.S. 164, 178–80 (1979) (government required public right of access to a private pond after a dredged channel linked the pond to navigable water); *United States v. Causby*, 328 U.S. 256, 264–65 (1946) (government allowed airplanes to fly over private property); *United States v. Gen. Motors Corp.*, 323 U.S. 373, 375–78 (1945) (government took possession of plaintiff's warehouse during World War II).[8]

The Eighth Circuit's non-binding ruling in *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022), *see* Mot. 16–17, does not alter this analysis. In *Walz*, the court held *Cedar Point*, not *Yee*, applied to an eviction moratorium and found that the appellant had stated a claim for a *per se* physical taking. 30 F.4th at 733. The Court distinguished *Yee* because "the landlords in *Yee* sought to exclude future or incoming tenants rather than existing tenants." *Id.* But the Eighth Circuit's narrow view of *Yee*'s applicability cannot be squared with binding Ninth Circuit precedent broadly applying *Yee* in the landlord-tenant context. *See Ballinger*, 24 F.4th at 1292–94.

In any event, *Walz* is premised on a flawed reading of *Yee*. *See Heights Apts., LLC v. Walz*, 39 F.4th 479, 480 (8th Cir. 2022) (Colloton, J., dissenting from denial of rehearing en banc) ("[T]he panel decision on the Takings Clause misreads the most analogous decision of the Supreme Court on the matter of *per se* takings. The panel thought the objecting landlords in [*Yee*] sought only 'to exclude future or incoming tenants rather than existing tenants.' The landlords in *Yee*, however,

---

[7] The *Loretto* court made clear that the regulation at issue and the Court's holding related to a right provided to third parties, not tenants. 458 U.S. at 439–40.

[8] The other precedential cases Plaintiffs cite in their physical takings sections, *see* Mot. 10–19, were not physical takings cases (and some were not even takings cases at all). *See Ala. Ass'n of Realtors v. Dep't of Health & Human Services*, 141 S. Ct. 2485, 2488–89 (2021) (analyzing the scope of the CDC's authority under § 361(a) of the Public Health Service Act); *First English*, 482 U.S. at 316–22 (considering whether a regulation that denied the petitioner the ability to build on its property constituted a taking); *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 539–56 (1972) (the permissibility of injunction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and 2283 in a case alleging Fourteenth Amendment equal protection and due process claims); *Armstrong v. United States*, 364 U.S. 40, 46–49 (1960) (government's assertion of sovereign immunity prevented lienholders from asserting rights over property).

complained of their inability to evict 'tenants of mobilehomes presently in The Park, as well as the successors in interest of such tenants.'" (citations omitted)); *Gallo*, 2022 WL 2208934, at *9 ("*Walz I*, then, chose to follow *Cedar Point* rather than *Yee* because it misinterpreted the *Yee* plaintiffs' claims."). *Walz* is also distinguishable because, as a Rule 12(b)(6) appeal, the court was required to take as true and construe in the plaintiff's favor allegations including that the ordinance indefinitely "turned every lease in Minnesota into an indefinite lease." 30 F.4th at 733–34. Here, by contrast, the plain language of the ordinances sets a defined end date for the moratoria. Section III, *supra*; *see also Gallo*, 2022 WL 2208934, at *6 ("This temporal limitation on D.C.'s moratorium distinguishes Gallo's case from [*Walz*].").

*Second*, Plaintiffs' argument that "the concept that there can be no physical taking because property owners may have voluntarily rented to tenants is equally unsustainable," Mot. 18, is just a philosophical disagreement with *Yee* and *Ballinger*. That is not a valid basis for disregarding binding decisions.[9] Plaintiffs try to get around this by arguing that voluntariness does not account for "illegal squatters," which Plaintiffs claim are covered by the ordinances. *See id.* ("Implicit in this reasoning is the false assumption that the occupants are approved tenants, as opposed to illegal squatters. Yet, the Defendants' regulations vest possession in all occupants, even those that fraudulently took residency without the owners' knowledge or consent."). But despite repeating throughout their motion that the ordinances cover squatters, *see* Mot. 3, 10, 13, 18, ***Plaintiffs do not identify any language in any ordinance that supports this argument***.

Plaintiffs' failure to identify specific language in the ordinances that supports their "illegal squatter" arguments is not surprising, because no such language exists. The "Residential Eviction

---

[9] To the extent Plaintiffs are arguing that *Yee* is no longer good law after *Cedar Point*, they are wrong. *Cedar Point* cited to *Yee* in its discussion of general takings principles. *See* 141 S. Ct. at 2072; *Jevons*, 561 F. Supp. 3d at 1107 ("*Cedar Point Nursery* does not overrule *Yee* or undermine the legal underpinnings of *Yee*. Indeed, in *Cedar Point Nursery*, the Court cited *Yee* for general takings principles, and *Yee*'s holding is still binding law on this Court."). And *Ballinger*, which post-dated *Cedar Point*, cited extensively to *Yee*. *See* 24 F.4th at 1292–94.

Moratorium" provision of the Oakland Ordinance provides a defense to "any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1)–(10)." *See* Section III, *supra* (reprinting full text of this provision). Subsections (1)–(10) of Oakland Municipal Code 8.22.360A address evictions of "***tenants***." *See* Pltfs. RJN, Ex. L at 5–8 (full text of Oakland Municipal Code 8.22.360A) (emphasis added). The definition of "tenant" for purposes of 8.22.360A is explicitly limited to people who are entitled to occupy property:

> "Tenant" means any renter, tenant, subtenant, lessee, or sublessee of a rental unit, or any group of renters, tenants, subtenants, lessees, sublessees of a rental unit, or any other person entitled to the use or occupancy of such rental unit, or any successor of any of the foregoing.

*Id.* at 3 (Oakland Municipal Code 8.22.340, titled "Definitions"). Moreover, California law defines "unlawful detainer" in relation to ***tenants***. *See* Cal. Civ. Proc. Code § 1161 (titled "Unlawful detainer" defined) ("A tenant of real property, for a term less than life, or the executor or administrator of the tenant's estate heretofore qualified and now acting or hereafter to be qualified and act, is guilty of unlawful detainer . . . .").[10] A similar but distinct action, forcible detainer, addresses people who, illegally, take possession of property—that is, Plaintiffs' much-maligned "illegal squatters." *See* Cal. Civ. Proc. Code § 1160.[11] The plain text of the Oakland Ordinance only addresses unlawful detainers. *See* Section III, *supra*.

The same is true of the Alameda ordinance. *See* Section III, *supra* (reprinting full text of this provision); *accord* Pltfs. RJN, Ex. H at 1 (Ordinance 6.120.010 stating that the purpose of the eviction moratorium is to help "***tenants***, homeowners, and mobilehome owners" (emphasis

---

[10] *See also* Miller & Starr, 10 Cal. Real Est. § 34:199 (Thomson Reuters 4th ed.) ("Relationships that permit an unlawful detainer proceeding. As a general rule, an unlawful detainer action can only be prosecuted by an owner of land against a tenant of real property. This usually requires that a landlord bring the action against a tenant. However, the statute also permits an action for unlawful detainer by a sublessor against a sublessee; by an owner against an employee, agent, or licensee who occupies the owner's property, such as a resident manager; and by a cooperative against a stockholder who has an exclusive occupancy agreement. An unlawful detainer action also is available to recover possession from a licensee." (emphasis and footnotes omitted)).

[11] Plaintiffs' brief misleadingly refers to Cal. Civ. Proc. Code § 1159, *et seq.* as "unlawful detainer actions with respect to illegal squatters." Mot. 13.

10897430v1/017475

added)). The ordinance states that it "places a moratorium on all evictions from residential units." *See* Section III, *supra*. "Residential unit" is defined as a "structure or mobilehome" in which a "person or household pays rent to a landlord or mortgage payments to a lender." Pltfs. RJN, Ex. H at 2. An illegal squatter does not pay rent. The provision further states that "No landlord or lender may evict a resident, or otherwise require a resident to vacate a residential unit . . . while this section is in effect." *See* Section III, *supra*. As explained previously, a "resident" is a "tenant" or "homeowner." *See* Section IV.B., *supra*. "Tenant" is defined as: "residential tenant, subtenant, lessee, sublessee, or any other person entitled by written or oral rental agreement, or by sufferance, to use or occupancy of a residential unit." Pltfs. RJN, Ex. H at 2. An illegal squatter is none of those things. The provision also states that "Violation of this chapter is an affirmative defense to any unlawful detainer action or other proceeding to recover possession of a residential unit." *See* Section III, *supra*.[12] There is no mention anywhere of forcible detainers.

*Third*, Plaintiffs' arguments that the ordinances permanently foreclose their right to exclude, Mot. 3, 8, 13, 18, are also based on mischaracterizations of the ordinances. Oakland and Alameda both enacted their ordinances after ratifying a local emergency for COVID-19. *See* Pltfs. RJN, Ex. C (Oakland resolution "confirming and ratifying the existence of a local emergency" due to "the outbreak of respiratory illness caused by the novel coronavirus (known as COVID-19)"); *id.*, Ex. F (Alameda resolution ratifying "the declaration of local health emergency by the County Health Office related to the 2019 novel coronavirus"). As noted above, the ordinances explicitly terminate in conjunction with the Local Emergencies. *See* Section III, *supra*; *see also S. Cal. Rental*, 550 F. Supp. 3d at 865 ("[T]here is no *per se* physical taking effectuated by the Ordinance because it is expressly time-limited, set to expire 60 days after the stay-at-home and work-from-home orders are

---

[12] While unlawful detainer is the most common, there are other procedures that can be used to evict tenants, including ejectment and quiet title. *See* B.E. Witkin, 12 Witkin, Summary 11th Real Prop §§ 733, 776 (Thomson Reuter 2022).

lifted, making any alleged invasion of property rights temporary."). Indeed, the laws authorizing the Local Emergencies require them to be temporary. *See* Cal. Gov. Code § 8630(d) ("The governing body *shall* proclaim the termination of the local emergency *at the earliest possible date* that conditions warrant."); Cal. Health & Safety Code § 101080 ("The board of supervisors, or city council, if applicable, . . .*shall* proclaim the termination of the local health emergency *at the earliest possible date* that conditions warrant the termination."); Oakland Municipal Code 8.50.050.C.3 ("The Local Emergency shall be terminated *as soon as reasonably possible*."), available online at https://library.municode.com/ca/oakland/codes/code_of_ordinances?nodeId= TIT8HESA_CH8.50EMSEORDICO_8.50.050EMSEOR (last visited September 6, 2022) (all emphases added).

Plaintiffs claim that the local emergencies are *de facto* permanent because they have been in place for two years. *See, e.g.*, Mot. 3 ("While all other substantial Covid-19 restrictions have been lifted, the Bay Area enjoys a high rate of vaccination and businesses are open, Defendants continue to arbitrarily impose the moratoria on its housing providers, with no relief in sight."), *id.* 8 ("Over two years later, the local emergency has no stated expiration date, and the COUNCIL's position is that it has not expired. The blanket moratorium on evictions therefore remains in effect."), *id.* ("Over two years later, the BOARD's position is that it has not expired, and the blanket moratorium on evictions therefore remains in effect."). Whether the Local Emergencies should still be in place is a factual question that requires discovery (which Plaintiffs insisted on postponing until after this motion). The need for discovery is clear from Plaintiffs' motion, which relies on allegations in Plaintiffs' own complaint as "evidence" that the moratoriums are permanent. *See* Mot. 12–13 (citing Ex. I to Plaintiff's RJN); Defs. Opp. to Pltfs. RJN at 1–6 (filed concurrently herewith).

More importantly, in a facial takings challenge, "the only time that matters is the time the

ordinance was adopted." *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (en banc). Plaintiffs are free to argue that the local emergencies (and by consequence, the ordinances) have outlived their necessity but nonetheless stayed in place as part of an as-applied takings challenge, but such arguments have no relevance to a facial challenge, which is the sole takings claim Plaintiffs are bringing. *See* Mot. 19. The only question is whether the ordinances, on their face, are permanent. *See Winters*, 2008 WL 4937812, at *3. They are not.

*Finally*, for the reasons stated above, Plaintiffs' arguments that the ordinances "grant[] full and complete possession to a third-party and forcibly excludes the owners of the real property itself and go beyond "a mere adjustment in the landlord-tenant relationship," *see* Mot. 12–16, 18–19, should be rejected. The ordinances, on their face, regulate the use of property in voluntary landlord-tenant relationships. They do not force any non-renting landowners to rent property, or renting landlords to enter into a landlord-tenant relationship with a new tenant. And they are expressly limited to the pendency of the Local Emergency.

### D.   Evidence of Benefits and Burdens is Irrelevant to a Physical Takings Claim

Plaintiffs' takings challenges also rely heavily on arguments and alleged "evidence" that the ordinances unfairly benefit tenants at landlords' expense. *See, e.g.*, Mot. 9–10 (describing the personal circumstances of certain named Plaintiffs); *id.* 13–16 (arguments that tenants can stay even if they materially breach their lease, the ordinances apply to wealthy tenants who do not actually need the protections, the ordinances subject landlords to legal and financial stress, the ordinances drive down the value of rental property, the ordinances force landlords to provide upkeep of their properties while allowing tenants to refuse to pay rent, and that "the Defendants' regulations reflect a governmental choice to favor occupants over owners").

Although these arguments may be relevant to a regulatory takings challenge under *Penn Central*, Plaintiffs have explicitly limited their motion to a physical takings challenge. *See* Mot. 19. These arguments therefore have no relevance, which Plaintiffs themselves acknowledge. *Id.* 12

("Liability is based upon the regulatory act itself regardless of the reason for that act or the underlying facts and circumstances."); *see Yee*, 503 U.S. at 529–30 ("[T]he existence of the [wealth] transfer in itself does not convert regulation into physical invasion."); *id.* at 530 ("This effect might have some bearing on whether the ordinance causes a *regulatory* taking, as it may shed some light on whether there is a sufficient nexus between the effect of the ordinance and the objectives it is supposed to advance. But it has nothing to do with whether the ordinance causes a physical taking. Whether the ordinance benefits only current mobile home owners or all mobile home owners, it does not require petitioners to submit to the physical occupation of their land." (citations omitted)); *id.* at 530–31 ("The same may be said of petitioners' contention that the ordinance amounts to compelled physical occupation because it deprives petitioners of the ability to choose their incoming tenants. Again, this effect may be relevant to a regulatory taking argument, as it may be one factor a reviewing court would wish to consider in determining whether the ordinance unjustly imposes a burden on petitioners that should 'be compensated by the government, rather than remain[ing] disproportionately concentrated on a few persons.' But it does not convert regulation into the unwanted physical occupation of land." (citation and footnote omitted)).[13]

Plaintiffs, moreover, explicitly disclaimed the need for such evidence when arguing for the propriety of an early dispositive motion. *See, e.g.*, Dkt. 23 (Pltfs. Mtn to Bifurcate) at 2 ("Bifurcation is necessary and proper here because the facial claims and writ claims involve exclusively legal questions that do not involve trial by jury."); Dkt. 46 (Pltfs. Bifurcation Reply) at 2–3 ("Defendants and Intervenor also object to setting the hearing in 45 days, an allegedly 'whirlwind schedule' (Inter. Opp. p. 6.), on the basis that they might need to take discovery and

---

[13] *See also Jevons*, 561 F. Supp. 3d at 1106 ("But, as the Supreme Court stated in *Yee*, the existence of the wealth transfer 'in itself does not convert regulation into physical invasion.' To find that the eviction moratorium is a *per se* physical taking would require the Court to disregard the U.S. Supreme Court's holdings and rationale in both *Loretto* and *Yee*; it would essentially require the Court to eliminate the line between the U.S. Supreme Court's *per se* takings and regulatory takings jurisprudence. " (citations omitted)).

that the procedure allegedly deprives them of an opportunity to 'develop . . . and test evidence' related to the facial claims. Inter. Opp. p. 8; also see, Defs. Opp. p. 4. But as set forth in Plaintiffs opening papers, discovery is not necessary here; the facial claims and writ claims are pure questions of law."). To take the position now that this evidence should not only be considered, but should be deemed undisputed, is unfair and prejudicial. As Plaintiffs are well aware, the benefits and burdens of the eviction moratoria are hotly disputed. *See, e.g.*, Dkt. 36-2 (Declaration of Mercy Grace Martinez) (describing how the eviction moratoria are critical to the financial and physical well-being of low-income people of color in Oakland and Alameda). ACCE has not had (and in fact, has been deprived of) the opportunity to challenge Plaintiffs' evidence and to develop its own evidence. If Plaintiffs wants to bring regulatory takings claims under *Penn Central*, they are welcome to do so—after all parties have had a chance to develop and test evidence during discovery.

### E.   Plaintiffs' Requested Relief Would Undercut the Government's Lawful Ability to Regulate Housing and Effectively Respond to Emergencies

Plaintiffs ask the Court to hold that a regulation temporarily limiting a landlord's ability to evict tenants is a *per se* physical appropriation of a landlord's right to exclude that requires just compensation. They frame this request as a simple extension of the Supreme Court's takings jurisprudence in cases like *Cedar Point*. It is not. Plaintiffs' requested ruling would be a sea change in the law. Indeed, the constitutionality of myriad commonplace housing regulations that limit a landlord's ability to immediately evict tenants would be called into question, including:

- Cal. Civ. Proc. Code § 1161(2) & (3): Landlord required to give a tenant three days' notice of nonpayment of rent or failure to perform lease conditions or covenants before filing an unlawful detainer action.

- Cal. Civ. Code § 1946.1(c): Landlord required to give 30-days' notice of eviction for month-to-month lease where tenant has lived on the property for less than a year.

- Cal. Civ. Code § 1946.1(b): Landlord required to give 30-days' notice of eviction for month-to-month lease where tenant has lived on the property for more than a year.

- Cal. Civ. Code § 1954.535: "Where an owner terminates or fails to renew a contract or recorded agreement with a governmental agency that provides for rent limitations to a qualified tenant, the tenant or tenants who were the beneficiaries of the contract or recorded agreement shall be given at least 90 days' written notice of the effective date of the termination[.]"

- Cal. Gov. Code § 7060.4(b): An eviction under the Ellis Act (when a landowner wants to take rental property off the market) requires one year's notice if the tenant is over 62.

- Oakland Mun. Code § 8.22.360(A)(2)(c): If a tenant is being evicted for exceeding the limits of occupants in a rental unit, the tenant has 17 days (14 days plus the 3-day notice period under Cal. Civ. Proc. Code § 1161(3)) to cure the violation before being evicted.

Tellingly, Plaintiffs do not explain how the sweeping relief they seek is justified under a takings regime that has repeatedly reaffirmed the government's "broad power to regulate housing conditions in general and the landlord-tenant relationship in particulary" without needing to pay just compensation. *Ballinger*, 24 F.4th at 1292 (quoting *Loretto*, 458 U.S. at 440).

Plaintiffs' position would also impermissibly harm the government's ability to utilize housing regulations to respond to emergencies. In *Block v. Hirsh*, the Supreme Court considered legislation in the District of Columbia that prohibited evictions for two years due to the "emergencies growing out of" World War I, with the exception of owner move-ins, which were allowed with thirty-days' notice. 256 U.S. 135, 153–54 (1921) (Holmes, J.). The Court held that this legislation was not a taking requiring just compensation. Stating that "[h]ousing is a necessary of life," the Court explained that a "public exigency will justify the legislature in restricting property rights in land to a certain extent without just compensation." *Id.* at 155–57. The legislation at issue, designed to address a temporary public housing and health crisis arising from World War I, was deemed to be an appropriate exercise of that power. *Id.* at 157 ("A limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change."). The same rationale applies here and authorizes Oakland and Alameda to implement temporary restrictions in response to the COVID-19 pandemic. *See Gallo*, 2022 WL 2208934, at *10 (analogizing a COVID-19 eviction moratorium to *Block*). Plaintiffs do not mention, let alone address, the *Block* decision.

**F.**     **The CAA Plaintiffs' Takings Claim Should Be Rejected for the Same Reasons**

The CAA Plaintiffs also bring a *per se* physical takings claim against the Alameda Ordinance. *See* Case 3:22-cv-02705-LB, Dkt. 23 at 18–25. Their arguments are substantially similar to those already addressed and should be rejected for the same reasons.

The CAA Plaintiffs additionally argue that Alameda's ordinance improperly deprives landlords of rent. *See id.* at 22–23. But neither ordinance eliminates the obligation to pay rent. *See* Section III, *supra* (Oakland Ordinance: "This does not relieve you of the obligation to pay back rent in the future." (emphasis omitted)); Pltfs. RJN, Ex. H at 6 (Alameda Code 6.120.090A: "Nothing in this chapter relieves an affected resident of liability for unpaid rent or mortgage payments that became due during the effective periods of Sections 6.120.030(A) or (D) or 6.120.040(A) or (D) of this chapter."). Thus, the ordinances do not deny landlords the use of their property. *See Gallo*, 2022 WL 2208934, at *10 ("Finally, the Filing Moratorium does not constitute a physical taking because physical takings occur when the owner 'can make no nonpossessory use of the property.' But that is not the case here because the Filing Moratorium did not stop rent from accruing." (citations omitted)). The CAA Plaintiffs argue that the repayment of back rent is illusory, but that's an as-applied argument.

In any event, the Ninth Circuit in *Ballinger* made clear that economic regulations of the landlord-tenant relationship fall squarely within *Yee*. 24 F.4th at 1293 ("[L]egislative enactments 'regulating the economic relations of landlord and tenants are not *per se* takings.'" (quoting *Fla. Power Corp.*, 480 U.S. at 252)). In other words, while this argument may have relevance in the context of a *Penn Central* regulatory taking, it is irrelevant to the physical takings analysis.

## V.     THE ORDINANCES DO NOT VIOLATE PROCEDURAL DUE PROCESS

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Fed. Home Loan Mortg. Corp. v. SFR Invests. Pool 1, LLC*, 893 F.3d 1136, 1147 (9th

1    Cir. 2018). Plaintiffs fail to establish either of them. *See* Mot. 24–25.[14]

2          The ordinances do not deprive Plaintiffs of any property interest for the same reason they

3    do not constitute *per se* physical takings: the ordinances, on their face, only temporarily limit a

4    landlord's ability to evict or collect rent. *See* Section III, *supra*. In other words, landlords have not

5    been ***deprived*** of anything. *See Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 173 ("Nor have the

6    Plaintiffs shown a deprivation of those interests. . . . But all that Plaintiffs complain of is the

7

8    potential that they will have to wait before pursuing the remedies otherwise available to them.").[15]

9          Plaintiffs also fail to establish that they have been denied adequate procedural protections.

10   Whether adequate procedures have been provided is analyzed under the balancing test in *Matthews*

11   *v. Eldridge*, 424 U.S. 319 (1976): "(1) the private interest affected; (2) the risk of erroneous

12   deprivation through the procedures used, and the value of additional safeguards; and (3) the

13   government's interest, including the burdens of additional procedural requirements." *Fed Home*

14   *Loan*, 893 F.3d at 1150. For starters, Plaintiffs have not been denied an opportunity to be heard on

15   their eviction claims; the opportunity is simply delayed until the end of the local emergency. *See*

16

17   *Auracle Homes*, 478 F. Supp. 3d at 227 ("Even if Plaintiffs did identify a liberty or property interest

18   independent of their other constitutional claims, they have not established the denial of an

19   'opportunity to be heard at a meaningful time and in a meaningful manner.' As previously

20   discussed, the Executive Orders only delay Plaintiffs' ability to initiate evictions; they do not

21   eradicate all future opportunity for Plaintiffs to pursue evictions." (citation omitted)).

22

23

24

25       [14] A facial procedural due process claim requires a showing that there is no set of circumstances under which landlords could receive fair process. *See Blumenkron v. Hallova*, 568 F. Supp. 3d

26   1093, 1109 (D. Or. 2021).
         [15] *See also Ballinger*, 24 F.4th at 1293 (stating, in the takings context: "'[W]hen a person

27   voluntarily surrenders liberty or property,' like when the Ballingers chose to rent their property causing them to pay the relocation fee when they caused the tenants to relocate, 'the State has not

28   *deprived* the person of a constitutionally protected interest.'" (quoting *L.L. Nelson Enters., Inc. v. County of St. Louis*, 673 F.3d 799, 806 (8th Cir. 2012))).

10897430v1/017475

The Ninth Circuit, moreover, has held that "when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994); *see also Best Supplement Guide, LLC v. Newsom*, 2022 WL 2703404, at *2 (9th Cir. July 12, 2022) (holding that COVID-19 shut down orders did not violate procedural due process under *Halverson*). "In determining whether an action is 'legislative in nature,'" courts eschew "'formalistic distinctions between "legislative" and "adjudicatory" or "administrative" government actions' and instead focus on the 'character of the action, rather than its label.'" *Halverson*, 42 F.3d at 1260 (quoting *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990)). The ordinances here are clearly legislative and therefore satisfy procedural due process—they were enacted by the Oakland City Council and Alameda County Board of Supervisors through normal legislative processes and apply equally to all landlords and tenants in their jurisdiction. *See id.* ("[O]ur cases have determined also that governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient.").

Regardless, "[w]hich protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1192 (9th Cir. 2015). Plaintiffs' single-paragraph analysis of the "Moratoria's procedural deprivations," Mot. 25, does not come anywhere close to meeting this standard. *Cf. id.* at 1193–99 (analyzing the *Matthews* factors). And because the procedural due process analysis considers evidence, *see id.*, it would be unfair to perform this analysis where, as here, the Defendants have not yet had the opportunity to conduct discovery.

*Chrysafis v. Marks*, 141 S. Ct. 2482 (2021), *see* Mot. 24–25, does not alter this analysis. *Chrysafis* addressed a procedure by which a tenant self-certified a hardship and held that "[t]his

1    scheme violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his

2    own case' consistent with the Due Process Clause." 141 S. Ct. at 2482. No analogous procedure

3    exists in the ordinances at issue in this case. Critically, the Court did not enjoin the enforcement of

4    the Tenant Safe Harbor Act, *see id.* at 2482–83, which states that "[n]o court shall issue a warrant

5    of eviction or judgment of possession against a residential tenant or other lawful occupant that has

6    suffered a financial hardship during the COVID-19 covered period" and that a "tenant or lawful

7    occupant may raise financial hardship during the COVID-19 covered period as a defense in a

8    summary proceeding under article 7 of the real property actions and proceedings law." 2020 N.Y.

9    Laws ch. 127. This completely undercuts Plaintiffs' argument that the *Crysafis* ruling can be

10    applied to the ordinances at issue here. *See* Mot. 25.

11

12        None of Plaintiffs' other cited cases, Mot. 24–25, affect this analysis. *See Winter v. Nat.*

13    *Res. Def. Council*, 555 U.S. 7 (200s8) (general standards for preliminary injunction); *United States*

14    *v. James Daniel Good Real Prop.*, 510 U.S. 43, 52–59 (1993) (analyzing procedural due process in

15    the context of civil forfeiture); *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) (general

16    standards for injunctions); *Fuentes v. Shevin*, 407 U.S. 67, 69 (1972) (analyzing whether laws

17    authorizing summary seizure of goods or chattels under a writ of replevin satisfies procedural due

18    process); *In re Murchison*, 349 U.S. 133, 133–34 (1955) (constitutionality of "one-man grand jury"

19    law); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) (sufficiency of notice to

20    beneficiaries on judicial settlement of accounts by the trustee of a common trust fund); *LA All. for*

21    *Human Rights v. Cnty. of Los Angeles*, 14 F.4th 947 (9th Cir. 2021) (review of a "sweeping"

22    preliminary injunction designed to address Los Angeles' homelessness crisis); *United States v.*

23    *Farmer*, 274 F.3d 800, 802–06 (4th Cir. 2001) (analysis of procedural due process for a criminal

24    defendant who seeks to have untainted portion of forfeited assets returned to pay for counsel).

25

26

27

28

10897430v1/017475

## VI.   THE ORDINANCES DO NOT VIOLATE THE CONTRACTS CLAUSE

The CAA Plaintiffs spend over five full pages of their motion arguing that the ordinances violate the Contracts Clause, *see* Case 3:22-cv-02705-LB, Dkt. 23 at 25–31, before acknowledging that the Ninth Circuit rejected this exact argument in *Apartment Assoc. of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 912–17 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1699 (2022).

The CAA Plaintiffs efforts to distinguish *Apartment Association*, *see* Case 3:22-cv-02705-LB, Dkt. 23 at 31–32, are unavailing. Plaintiffs rely heavily on arguments regarding the actual length of the moratoria and the actual availability of rental relief funds for landlords. *Id.* While these arguments may be relevant to an as-applied challenge, the CAA Plaintiffs, like the Plaintiffs here, have expressly limited their claims to facial claims. *Id.* at 2; *DM Arbor Ct., Ltd. v. City of Houston*, No. CV H-18-1884, 2021 WL 4926015, at *31 (S.D. Tex. Oct. 21, 2021) (stating that facial Contracts Clause challenge look at the law itself as opposed to its administration). The CAA Plaintiffs also claim that the Alameda ordinance is broader than the Los Angeles County ordinance at issue in *Apartment Association*. *See id.* at 31–32. But aside from rank speculation about how these differences would distinguish the Alameda Ordinance and lead to a different result, the CAA Plaintiffs do not cite to any language in the Ninth Circuit's opinion to support that the few divergences they identify would have changed the outcome of *Apartment Association*.

## VII.   THE ORDINANCES DO NOT VIOLATE STATE OR LOCAL LAW

Intervenor-Defendant incorporates by reference the Oakland Defendants' and Alameda Defendants' arguments regarding the state and local law issues raised in Plaintiffs' motion at 19–24 and the CAA Plaintiffs' motion at 32–35. *See* Dkt. 71 at 19–24 (Oakland Defendants); Dkt. 75 at 39–45 (Alameda Defendants).

## VIII.   CONCLUSION

Intervenor-Defendant Alliance of Californians for Community Empower Action respectfully requests that this Court deny Plaintiffs' motion for summary judgment.

DEFENDANT-INTERVENOR'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT
Case Nos. 3:22-cv-01274-LB and 3:22-cv-02705-KAW

10897430v1/017475

1    Dated: September 6, 2022                    **SUSMAN GODFREY L.L.P.**

2                                                By:   */s/ Nicholas N. Spear*
                                                      _____
3                                                      MARC SELTZER
                                                      KRYSTA K. PACHMAN
4                                                      GLENN C. BRIDGMAN
                                                      NICHOLAS N. SPEAR
5                                                      SUSMAN GODFREY L.L.P.
                                                      1900 Avenue of the Stars, Suite 1400
6                                                      Los Angeles, California 90067-6029
                                                      Telephone: (310) 789-3100
7                                                      Facsimile: (310) 789-3150
                                                      *mseltzer@susmangodfrey.com*
8                                                      *kpachman@susmangodfrey.com*
                                                      *gbridgman@susmangodfrey.com*
9                                                      *nspear@susmangodfrey.com*

10                                                     *Attorneys for Intervenor-Defendant*
                                                      *Alliance of Californians for Community*
11                                                     *Empowerment Action*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT-INTERVENOR'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT
Case Nos. 3:22-cv-01274-LB and 3:22-cv-02705-KAW

10897430v1/017475

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned certifies that a true and correct copy of the foregoing document has been

3

served on all current counsel of record on September 6, 2022.

4

5

*/s/ Nicholas N. Spear*

6

Nicholas N. Spear

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT-INTERVENOR'S OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT
Case Nos. 3:22-cv-01274-LB and 3:22-cv-02705-KAW

10897430v1/017475