1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10             San Francisco Division

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) Non-profit Corporation, | Case No. 3:22-cv-01274-LB |
| Plaintiffs and Petitioners, | **ORDER DENYING SUMMARY JUDGMENT** |
| v. | Re: ECF No. 61 |
| ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL, and DOES 1-10, | |
| Defendants and Respondents, | |
| ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT ACTION, | |
| Intervenor-Defendant. | |
| CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, & H. ALEX and DANNIE ALVAREZ, et al., | Case No. 3:22-cv-02705-LB |
| Plaintiffs and Petitioners, | **ORDER DENYING SUMMARY JUDGMENT** |
| v. | Re: ECF No. 25 |
| COUNTY OF ALAMEDA, BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA, and DOES 10–25, | |
| Defendants and Respondents. | |

United States District Court
Northern District of California

**INTRODUCTION**

The plaintiffs in these related cases — property owners and organizations representing property owners in Alameda County and the City of Oakland — contend that the County and City have violated their rights under the U.S. and California Constitutions by prohibiting the eviction of non-paying tenants during the COVID-19 pandemic. In *Williams. v. Alameda Cnty.*, Case No. 22-cv-01274-LB, the plaintiffs claim that ordinances enacted by the City of Oakland and Alameda County are a taking under the Fifth Amendment to the U.S. Constitution, an inverse condemnation under the California Constitution, and a violation of their due-process and equal-protection rights under the Fourteenth Amendment to the U.S. Constitution.[1] In *Cal. Apartment Ass'n. v. Alameda Cnty.*, Case No. 22-cv-02705-LB, the plaintiffs challenge the County ordinance through similar taking and due-process claims under the U.S. Constitution and a similar inverse-condemnation claim under the California Constitution. They also claim a substantial impairment of their lease agreements, in violation of the Contracts Clause of Article I of the U.S. Constitution, and preemption of the ordinance under Article XI, § 7, of the California Constitution to the extent that the ordinance prohibits permissible Ellis Act evictions under Cal. Gov't Code § 7600 (which allows landlords to withdraw rentals from the market under certain circumstances).[2]

The plaintiffs in both cases moved for summary judgment on the ground that the ordinances are facially invalid. The *Williams* plaintiffs contend that the City and County ordinances are an impermissible physical taking under the Fifth Amendment, violate their due-process rights under the Fourteenth Amendment, and conflict with state laws that govern evictions.[3] The *California Apartment* plaintiffs raise similar taking and preemption arguments and also contend that the County ordinance violates the Contracts Clause of Article I of the U.S. Constitution.[4] The court denies the motions.

---

[1] Compl. – ECF No. 1 at 13–17 (¶¶ 37–53). Citations refer to material in the Electronic Case File (ECF) in the lower-numbered action unless the citation references the higher-numbered action; pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 (Case No. 22-cv-02705-LB) at 16–24 (¶¶ 52–80).

[3] Mot. – ECF No. 61.

[4] Mot. – ECF No. 25 (Case No. 22-cv-02705-LB).

First, the ordinances are not an impermissible physical or per se taking because they are temporary and not indefinite on their face, do not absolve renters of their obligation to pay rent, and include exceptions allowing the landlords to leave the rental business. *Yee v. Escondido*, 503 U.S. 519, 532 (1992); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2069 (2021).

Second, they do not facially violate the Contracts Clause. They are not a substantial impairment of the plaintiffs' contract rights because the elimination of the eviction remedy — except under certain circumstances — does not totally extinguish those rights. And the plaintiffs have not met their burden to show that the ordinances were an unreasonable response to a legitimate public problem. *See Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 913–14 (9th Cir. 2021).

Third, the ordinances do not violate the Due Process Clause because they do not deny landlords a hearing and instead provide tenants with stronger eviction defenses.

Fourth, the ordinances do not conflict with California law. The relevant state eviction laws allow municipalities to enact eviction restrictions that are more protective of renters. The ordinances include exceptions for Ellis Act evictions. Furthermore, the City and the County had authority to enact the challenged ordinances under California election law.

## STATEMENT

### 1. California's COVID-19 Rent-Relief Legislation

On March 4, 2020, in response to COVID-19, Governor Newsom declared a State of Emergency under the California Emergency Services Act.[5] On March 16, 2020, he signed Executive Order N-28-20, which permitted local governments to temporarily limit housing

---

[5] Mot. – ECF No. 61 at 12; Opp'n – ECF No. 75 at 13; Exec. Dep't, State of Cal., Proclamation of a State of Emergency (Mar. 4, 2020), Ex. C, Defs.' Req. for Jud. Notice – ECF No. 33 (Case No. 22-cv-02705-LB) at 12–16.

1  providers' ability to evict for non-payment of rent due to COVID-19. He later extended this

2  emergency provision to September 30, 2020.[6]

3      The state legislature enacted the "COVID-19 Tenant Relief Act," effective August 31, 2020.[7]

4  The Tenant Act provided "temporary emergency relief for financially distressed tenants,

5  homeowners, and small landlords" through statewide eviction protections for renters who —

6  during the "covered time period" (initially March 20, 2020, through January 31, 2021, and later

7  extended in SB-91 through June 30, 2021) — were unable to pay their rent for COVID-19-related

8  reasons. The Tenant Act also amended California's unlawful-detainer statutes to protect tenants

9  against unlawful-detainer actions except under certain circumstances. These circumstances include

10  unlawful-detainer actions based on "just cause" or the tenants' failure to certify that they faced a

11  COVID-19-related financial distress under California Civil Procedure Code § 1179.03.[8]

12      Effective June 28, 2021, the legislature enacted the COVID-19 Rental Housing Recovery Act,

13  which extended eviction protections until September 30, 2021.[9] Most recently, the legislature enacted

14  AB-2179, which further revised California's unlawful-detainer statutes.[10] Under the latest California

15  legislation, courts can allow unlawful-detainer actions filed between October 1, 2021, and July 1,

16  2022, to proceed only if the landlord applied for rental assistance for the COVID-19-related rental

17  debt due and the government rental-assistance program denied the application because of lack of

18

19

20  [6] Exec. Dep't, State of Cal., Exec. Order No. N-28-20 (Mar. 16, 2020), Ex. 8, Pls.' Req. for Jud.
    Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 46–49; Exec. Dep't, State of Cal., Exec. Order
21  No. N-71-20 (June 30, 2020), Ex. 9, *id.* at 51–57.

22  [7] Assemb. 3088, 2020 Leg., 2019–2020 Reg. Sess. (Cal. 2020), Ex. 10, Pls.' Req. for Jud. Notice –
    ECF No. 24 (Case No. 22-cv-02705-LB) at 59–88.

23  [8] *Id.* at 59–61, 86; S. 91, 2021 Leg., 2021–2022 Reg. Sess. (Cal. 2021), Ex. 11, Pls.' Req. for Jud.
    Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 91–92, 103 (defining the covered time period as
24  March 1, 2020, to June 30, 2021), 108 (prohibiting courts from finding tenants liable in unlawful-
    detainer actions under certain circumstances "[b]efore July 1, 2021").

25  [9] Assemb. 832, 2021 Leg., 2021–2022 Reg. Sess. (Cal. 2021), Ex. 12, Pls.' Req. for Jud. Notice – ECF
26  No. 24 (Case No. 22-cv-02705-LB) at 122–60, 132 (defining the covered time period as March 1,
    2020, to September 30, 2021), 137 (prohibiting courts from finding tenants liable in unlawful-detainer
27  actions under certain circumstances "[b]efore October 1, 2021").

    [10] Assemb. 2179, 2022 Leg., 2021–2022 Reg. Sess. (Cal. 2022), Ex. 13, Pls.' Req. for Jud. Notice –
28  ECF No. 24 (Case No. 22-cv-02705-LB) at 162–71.

funding, lack of eligibility, or the tenant's failure to complete the tenant's portion of the application.[11] Cal. Civ. Proc. Code § 1179.11(c). To avoid being held liable for unlawful detainer, the tenant must pay twenty-five percent of rent accumulated due to a COVID-19 hardship between September 1, 2020, and September 30, 2021, and one-hundred percent of rent accumulated due to a COVID-19 hardship between October 1, 2021, and March 30, 2022.[12] Id. § 1179.11(f).

California's COVID-19 rental-relief provisions are set to expire on September 20, 2024.[13] Id. § 1179.15. California's COVID-19 unlawful-detainer statutes do not require the eviction of residents for non-payment.

### 2. The City of Oakland's Rent-Relief Ordinances

The City of Oakland enacted an eviction moratorium in response to COVID-19. On March 9, 2020, Oakland declared a state of emergency due to the COVID-19 outbreak, under the California Emergency Services Act.[14] Then, on March 27, 2020, the Oakland City Council passed Ordinance No. 13589, which amended the city's Just Cause for Eviction Ordinance by prohibiting just-cause evictions for non-payment of rent unless the renter posed an imminent threat to the health or safety of other occupants of the property.[15] It eliminated the usual grounds for just-cause evictions available under Oakland's municipal code.[16] Oakland, Cal., Mun. Code ch. 8, art. II, §

---

[11] Id. at 169–71.

[12] Id. at 170–71.

[13] Assemb. 832, 2021 Leg., 2021–2022 Reg. Sess. (Cal. 2021), Ex. 12, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 147.

[14] Oakland City Council 88075 C.M.S. (Cal. Mar. 12, 2020), Ex. C, Pls.' Req. for Jud. Notice – ECF No. 62 at 103–105 (citing Cal. Gov't Code § 8630).

[15] Oakland, Cal., Ordinance 13589 C.M.S. (Mar. 27, 2020), Ex. D, Pls.' Req. for Jud. Notice – ECF No. 62 at 111 (sec. 3).

[16] Id. (the local emergency "shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) – (10)").

8.22.360A(1)–(10) (2022). It does not apply to Ellis Act (Cal. Gov't Code § 7060, *et seq.*) evictions.[17] *Id.* § 8.22.360A(11).

When it enacted the moratorium, the City Council amended a voter initiative because the City's voters had approved the City's Just Cause for Eviction Ordinance (Oakland, Cal., Mun. Code ch. 8, art. II, § 8.22.300 (2022), *et seq.*) in 2003 and in a subsequent amendment in 2018.[18] In its resolution enacting the moratorium, the City Council said that the amended eviction ordinance was consistent with Civil Code § 1946.2 — which imposes the just-cause limit but allows municipalities to enact just-cause eviction ordinances that are more protective of renters — because it was more protective than § 1946.2 in that it further limited "the reasons for termination of residential tenancy."[19]

Oakland's moratorium was to expire on May 31, 2020.[20] The City Council — in Ordinance No. 13594 — extended the moratorium until it terminated the local emergency or August 31, 2020, whichever occurred first.[21] On July 21, 2020, Oakland — in Ordinance No. 13606 — extended the moratorium again by specifying that it expires only when the City Council terminates the local emergency.[22] To date, the Council has not terminated the local emergency.[23]

---

[17] *Id.* (the local emergency "shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) – (10)"); Oakland, Cal., Mun. Code ch. 8, art. II, § 8.22.360A(11) (2022) (governing Ellis Act evictions); Opp'n – ECF No. 71 at 8.

[18] Oakland, Cal., Mun. Code ch. 8, art. II, § 8.22.300 (2022), Ex. L, Pls.' Req. for Jud. Notice – ECF No. 62 at 214 ("[T]he electorate of the city of Oakland hereby enacts this ordinance . . . ."); Oakland, Cal., Measure Y, Ex. M to Pls.' Req. for Jud. Notice – ECF No. 62 at 237 (adding § 8.22.360F allowing the city council to modify the "Just Cause for Eviction Ordinance (Measure EE [O.M.C., Chapter 8, Article II (8.22.300, *et seq.*)]) for the purpose of adding imitations on a landlord's right to evict[.]"); *see* Oakland, Cal., Ordinance 87325 C.M.S. (July 24, 2018), https://library.municode.com/ca/oakland/ordinances/code_of_ordinances?nodeId=930536.

[19] Oakland, Cal., Ordinance 13589 C.M.S. (Mar. 27, 2020), Ex. D, Pls.' Req. for Jud. Notice – ECF No. 62 at 109.

[20] *Id.* at 112 (sec. 6).

[21] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 120.

[22] *Id.* at 122.

[23] Compl. – ECF No. 1 at 7 (¶ 25); Answer of the City of Oakland and Oakland City Council – ECF No. 21 at 5 (¶ 25) ("Defendants admit that the City's eviction moratorium remains in effect as of the drafting of this response.").

### 3. Alameda County's Rent-Relief Ordinances

Alameda County, which includes the City of Oakland, responded to COVID-19 with its own ordinances. On March 10, 2020, it enacted Resolution No. 2020-91, which declared a local state of emergency.[24] On April 21, 2020, the Board of Supervisors adopted Urgency Ordinance No. O-2020-23, which prohibited non-payment evictions from residential units except in cases of (1) Ellis Act withdrawals, (2) government orders requiring the residence to be vacated, or (3) a resident's continued occupancy posing an imminent threat to health or safety.[25] Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(F) (2020). The ordinance had a more limited moratorium on evictions based on a "loss of income, substantial out-of-pocket medical expenses, or extraordinary child care needs . . . caused by COVID-19," and the ordinance provided a defense to unlawful-detainer actions due to a "failure to timely make rent . . . payments." *Id.* § 6.120.040(A), (D).

The Board codified this language into the County's Code, making it permanent, on June 23, 2020.[26] The most recent extension, enacted on August 4, 2020, extends the moratorium until sixty days after the Board of Supervisors proclaims that the local health emergency has expired.[27] *Id.* § 6.120.030(A). The Board's current position is that the emergency has not expired.[28]

---

[24] Alameda Cnty. Bd. of Supervisors R-2020-91 (Cal. Mar. 10, 2020), Ex. 16, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 196–98.

[25] Alameda Cnty., Cal., Ordinance O-2020-23 (Apr. 21, 2020), Ex. 15, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 182–94.

[26] Alameda Cnty., Cal., Ordinance O-2020-32 (June 23, 2020), Ex. 17, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 200–12.

[27] Alameda Cnty., Cal., Ordinance O-2020-41 (Aug. 4, 2020), Ex. A, Defs.' Req. for Jud. Notice – ECF No. 76 at 5–7.

[28] Compl. – ECF No. 1 at 8 (¶ 27) ("[Alameda County's] position is that it has not expired, and the blanket moratorium on evictions therefore remains in effect."); Answer of Alameda Cnty. – ECF No. 16 at 5 (¶ 27) ("The County admits the allegations in the third sentence of Paragraph 27.").

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.  The Plaintiffs' Claims

There are two cases involving plaintiffs who are rental-property owners in Oakland (in *Williams*) and in Alameda County (both cases) and nonprofit organizations that represent them.[29] In *Williams*, the plaintiffs are rental-property owners and Housing Providers of America, a nonprofit that represents rental-property owners, including owners in Alameda County. In *California Apartment*, the plaintiffs are rental-property owners and the California Apartment Association, which represents them.[30] The intervenor is the Alliance of Californians for Community Empowerment Action, a nonprofit that represents tenants and defends the moratoria.[31] The defendants do not challenge standing for these summary-judgment motions.[32]

In *Williams*, the plaintiffs asserted the following claims challenging the Oakland and Alameda County ordinances: (1) an unlawful taking under the Fifth Amendment to the U.S. Constitution, (2) an inverse condemnation under the California Constitution, and (3) a violation of their due-process and equal-protection rights under the Fourteenth Amendment to the U.S. Constitution.[33] They moved for summary judgment on the grounds that the City and County ordinances are an impermissible taking under the Fifth Amendment, violate their procedural due-process rights under the Fourteenth Amendment, and unlawfully amend Oakland's Just Cause for Eviction Ordinance and conflict with (and therefore are preempted by) state statutory schemes that govern evictions.[34]

---

[29] Compl. – ECF No. 1; Compl. – ECF No. 1 (Case No. 22-cv-02705-LB); Order – ECF No. 45; Lin Decl. – ECF No. 25-2 (Case No. 22-cv-02705-LB) at 2 (¶ 2); Mitchell Decl. – ECF No. 25-3 (Case No. 22-cv-02705-LB) at 2 (¶ 2); Hagerty Decl. – ECF No. 25-4 (Case No. 22-cv-02705-LB) at 2 (¶ 2); Alvarez Decl. – ECF No. 25-5 (Case No. 22-cv-02705-LB) at 2 (¶ 2); Jain Decl. – ECF No. 25-6 (Case No. 22-cv-02705-LB) at 2 (¶ 2); Williams Decl., Ex. N, Pls.' Req. for Jud. Notice – ECF No. 62 at 240 (¶ 2); Rogers Decl., Ex. O, Pls.' Req. for Jud. Notice – ECF No. 62 at 244 (¶ 2); Watson-Baker Decl., Ex. P, Pls.' Req. for Jud. Notice – ECF No. 62 at 248 (¶ 2); Loeb Decl., Ex. Q, Pls.' Req. for Jud. Notice – ECF No. 62 at 252 (¶ 2).

[30] Compl. – ECF No. 1 at 3 (¶ 14) (plaintiff Housing Providers of America is a nonprofit representing rental-property owners in the City of Oakland and Alameda County); Ex. I to *id.*; Loeb Decl., Ex. Q, Pls.' Req. for Jud. Notice – ECF No. 62 at 252 (¶ 2); Bannon Decl. – ECF No. 25-1 (Case No. 22-cv-02705-LB) at 2–3 (¶¶ 2–6) (describing the activities of plaintiff California Apartment Association).

[31] Stipulation – ECF No. 27.

[32] Defs.' Opp'n to Req. for Jud. Notice – ECF No. 82 at 3 (the defendants "informed Plaintiffs that Defendants are not contesting standing for the purposes of this motion for summary judgment").

[33] Compl. – ECF No. 1 at 13–17 (¶¶ 37–53).

[34] Mot. – ECF No. 61.

United States District Court
Northern District of California

In *California Apartment*, the plaintiffs raise similar taking and due-process claims challenging the Alameda County ordinance and also claim that the ordinance violates the Contracts Clause of Article I of the U.S. Constitution, violates state laws, and is preempted by state statutory schemes governing evictions.[35] They move for summary judgment on the grounds that the County ordinance is an impermissible taking under the Fifth Amendment to the U.S. Constitution, violates their substantive due-process rights under the Fourteenth Amendment to the U.S. Constitution, is precluded (and preempted by) the local statutory schemes, and violates the U.S. Constitution's Contracts Clause.[36]

The City of Berkeley Rent Stabilization Board and the East Bay Community Law Center filed amicus briefs supporting the moratoria.[37]

The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[38] 28 U.S.C. § 636. The court held a hearing on September 29, 2022.

## STANDARDS

### 1. Summary Judgment

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

To prevail, the party moving for summary judgment must show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving

---

[35] Compl. – ECF No. 1 (Case No. 22-cv-02705-LB) at 16–24 (¶¶ 52–80).

[36] Mot. – ECF No. 25 (Case No. 22-cv-02705-LB).

[37] Mot. for Leave to File Mem. of Law as Amicus Curiae – ECF No. 77; Amicus Br. – ECF No. 79.

[38] Consents – ECF Nos. 12, 14, 17, 19, 30; Consents (Case No. 22-cv-02705-LB) – ECF Nos. 13, 16.

1   party's claim or defense or show that the nonmoving party does not have enough evidence of an

2   essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

3   *Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "Where the moving party will have the

4   burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable

5   trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509

6   F.3d 978, 984 (9th Cir. 2007).

7       If the moving party meets its burden to demonstrate the absence of a triable issue of material fact,

8   then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses.

9   *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. The nonmoving party may not rest upon mere

10  allegations or denials of the other party's evidenc, but instead must produce admissible evidence that

11  shows there is a genuine issue of material fact for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076

12  (9th Cir. 2001) ("Once the moving party carries its initial burden, the adverse party may not rest upon

13  the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other

14  sources of evidence that set forth specific facts showing that there is a genuine issue for trial.")

15  (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of material

16  fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

17      In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

18  viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

19  *Radio Corp.*, 475 U.S. 574, 587 (1986).

20

21  **2. Facial Challenge**

22      To prevail on their facial challenges, the plaintiffs must show that "no set of circumstances

23  exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

24  "[A] challenger must therefore show that a 'law is unconstitutional in all of its applications[.]'"

25  *Morrison v. Peterson*, 809 F.3d 1059, 1064 (9th Cir. 2015) (quoting *Wash. State Grange v. Wash.*

26  *State Republican Party*, 552 U.S. 442, 449 (2008)). "[W]hen assessing whether a statute meets this

27  standard, courts consider only applications of the statute in which it actually authorizes or prohibits

28  conduct." *Id.* (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015)).

United States District Court
Northern District of California

1   There are some exceptions to this standard. *See*, *e.g.*, *Guerrero v. Whitaker*, 908 F.3d 541, 544

2   (9th Cir. 2018) (the "no set of circumstances" standard does not apply to facial-vagueness

3   challenges); *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001)

4   (the "no set of circumstances" standard does not apply to facial challenges to abortion statutes).

5   Nonetheless, the "no set of circumstances" standard applies to facial challenges under the Takings

6   and Contract Clauses of the U.S. Constitution and to facial preemption challenges. *CDK Glob.*

7   *LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021) (applying the "no set of circumstances"

8   standard to preemption claim); *Vanguard Med. Mgmt. Billing, Inc. v. Baker*, No. EDCV 17-965-

9   GW(DTBX), 2018 WL 6137198, at *19 (C.D. Cal. Apr. 26, 2018) (the plaintiffs "fail[ed] to state

10  a Contract Clause claim with respect to their alleged individual contracts, let alone with respect to

11  all applications of [the challenged statute] in which the statute actually authorizes or prohibits

12  conduct.") (cleaned up); *Ophca LLC v. City of Berkeley*, No. 16-cv-3046 CRB, 2016 WL

13  6679560, at *4 (N.D. Cal. Nov. 14, 2016) (applying the "no set of circumstances" standard to a

14  facial takings challenge to a municipal ordinance).

15

16  **ANALYSIS**

17  **1.   Requests for Judicial Notice**

18  The parties seek judicial notice of three categories of information: public records, the

19  pleadings, and the plaintiffs' declarations.[39]

20  The court judicially notices public-record documents but not disputed facts in them. *Lee v.*

21  *City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Zavala v. Deutsche Bank Tr. Co. Ams.*,

22  No. C 13-1040 LB, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013). The records here are

23  public records related to the moratoria. *Thornbrough v. W. Placer Unified Sch. Dist.*, No. 2:09-cv-

24

---

25  [39] Pls.' Req. for Jud. Notice – ECF No. 62; Pls.' Suppl. Req. for Jud. Notice – ECF No. 66; Pls.' Suppl.
    Req. for Jud. Notice – ECF No. 69; Defs.' Req. for Jud. Notice – ECF No. 72; Defs.' Req. for Jud.

26  Notice – ECF No. 76; Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB); Pls.'
    Suppl. Req. for Jud. Notice – ECF No. 28 (Case No. 22-cv-02705-LB); Defs.' Req. for Jud. Notice –

27  ECF No. 33 (Case No. 22-cv-02705-LB); Opp'n to Pls.' Req. for Jud. Notice – ECF No. 82 at 3–7
    (objecting to the request to take judicial notice of Exs. I, J, K, N, O, P, Q, R, S, T, U, V to Pls.' Reqs.

28  for Jud. Notice – ECF Nos. 62, 66, 69).

United States District Court
Northern District of California

United States District Court
Northern District of California

02613-GEB-GGH, 2010 WL 2179917, at *2 (E.D. Cal. May 27, 2010) (taking judicial notice of minutes from a meeting of a school district's board of trustees but limiting judicial notice "to the existence of documents and recognition that the opinions contained therein have been stated"). They include the undisputed records in the plaintiffs' requests and also the disputed records, which are exhibits R through V to the plaintiffs' requests.[40] The plaintiffs do not ask for judicial notice of any legal conclusions in the documents, they otherwise are relevant, and the court considers them.

The court can consider the pleadings in the case (but not disputed facts in them) without taking judicial notice of them.[41] *Fed. Sols. Grp., Inc. v. H2L1-CSC, JV*, No. 4:17-cv-05433-KAW, 2019 WL 1934881, at *2 n.1 (N.D. Cal. May 1, 2019) ("[A] request for judicial notice is unnecessary if the documents originated in the instant case."); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 n.7 (N.D. Cal. 2014) (granting request to take judicial notice of a temporary-restraining-order application: the defendants "need not seek judicial notice of documents previously filed in the same case"); *see Lee*, 250 F.3d at 690 ("[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") (cleaned up).

The court considers the plaintiffs' declarations at summary judgment under Rule 56(c)(4).[42] But it cannot judicially notice disputed facts in them. *Dudgeon v. Cnty. of Sonoma*, No. 19-cv-05615-JCS, 2021 WL 5407519, at *8 (N.D. Cal. Nov. 18, 2021) (declining to take judicial notice of declarations recounting the incident that was the subject of a § 1983 excessive-force claim on a motion for summary judgment); *Azoulai v. BMW of N. Am. LLC*, No. 16-cv-00589-BLF, 2017 WL 1354781, at *4 (N.D. Cal. Apr. 13, 2017) (the court can "only take judicial notice of the existence

---

[40] Pls.' Req. for Jud. Notice – ECF No. 62; Pls.' Suppl. Req. for Jud. Notice – ECF No. 66; Pls.' Suppl. Req. for Jud. Notice – ECF No. 69; Defs.' Req. for Jud. Notice – ECF No. 72; Defs.' Req. for Jud. Notice – ECF No. 76; Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB); Pls.' Suppl. Req. for Jud. Notice – ECF No. 28 (Case No. 22-cv-02705-LB); Defs.' Req. for Jud. Notice – ECF No. 33 (Case No. 22-cv-02705-LB).

[41] Compl., Ex. I, Answer, Ex. J, Answer, Ex. K, Pls.' Req. for Jud. Notice – ECF No. 62 at 165–212.

[42] Decls., Exs. N, O, P, Q, Pls.' Req. for Jud. Notice – ECF No. 62 at 238–254; Opp'n to Pls.' Req. for Jud. Notice – ECF No. 82 at 4–6 ("The statements in the declaration are also disputed[.]").

ORDER – Nos. 22-cv-01274-LB and 22-cv-02705-LB      12

1    of [a] declaration, not the truth of its contents" and declining to take judicial notice of a declaration

2    that was "not relevant if not admitted for the truth of the matters asserted therein").

3

4    **2.  Fifth Amendment: Unlawful Taking**

5        The Takings Clause "provides that private property shall not 'be taken for public use, without

6    just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (quoting U.S. Const.

7    amend. V). It applies to the states through the Fourteenth Amendment. *Cedar Point Nursery v.*

8    *Hassid*, 141 S. Ct. 2063, 2071 (2021). Takings come in two varieties: physical or per se takings and

9    regulatory takings. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302,

10   321 (2002); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (there are "at least two

11   discrete categories of regulatory action [that are] compensable without case-specific inquiry into the

12   public interest advanced in support of the restraint," including physical invasions of property and

13   the denial of "all economically beneficial or productive use" of property). The plaintiffs advance a

14   per se takings analysis, and the defendants analyze the ordinance as a regulatory taking.

15       Generally, a physical or per se taking means "a direct government appropriation or physical

16   invasion of private property." *Lingle*, 544 U.S. at 537. The law of "physical takings is as old as the

17   Republic and, for the most part, involves the straightforward application of per se rules." *Tahoe-*

18   *Sierra Pres. Council*, 535 U.S. at 322. For example, if the government appropriates part of an

19   apartment building to provide cable TV access for apartment tenants, or the airspace immediately

20   above a poultry farm for military aircraft, then it must pay compensation to the property owner.

21   *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421, 441 (1982) (a "minor but

22   permanent physical occupation" is a taking); *United States v. Causby*, 328 U.S. 256, 267 (1946)

23   (very low-level flights over the plaintiffs' commercial-chicken farm are a taking). Similarly, a per

24   se taking occurs when the government requires a property owner "to sacrifice *all* economically

25   beneficial uses in the name of the common good." *Lucas*, 505 U.S. at 1019.

26       A regulatory taking occurs when a government regulation "goes too far." *Pa. Coal Co. v.*

27   *Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least is that while property may be

28   regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). "In

United States District Court
Northern District of California

contrast to a physical taking, a regulatory taking occurs where government regulation of private property is so onerous that its effect is tantamount to a direct appropriation or ouster." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088–89 (9th Cir. 2015) (cleaned up). "To determine whether a use restriction effects a taking, [the Supreme] Court has generally applied the flexible test developed in *Penn Central*, balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery*, 141 S. Ct. at 2072 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

The regulatory takings framework applies to zoning ordinances (*Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387–388 (1926)), rent-control regulations (*Yee v. City of Escondido*, 503 U.S. 519, 527 (1992)), and temporary-eviction prohibitions (*Block v. Hirsh*, 256 U.S. 135, 156 (1921)). *See Cedar Point Nursery*, 141 S. Ct. at 2072 (identifying situations where the regulatory takings framework applies); *Tahoe-Sierra Pres. Council*, 535 U.S. at 323 (same).

In the context of regulations affecting the landlord-tenant relationship, the main Supreme Court case is *Yee v. Escondido*. There, the Court held that the City of Escondido's rent-control ordinance governing mobile-home parks was not a per se taking. 503 U.S. at 532. In 1978, the state of California had enacted a law that protected mobile homeowners — who were uniquely vulnerable because of the high cost of moving mobile homes and the investments they made in the mobile home "pads" they rented — by limiting the grounds for eviction of mobile-home-park residents, including for nonpayment of rent, the mobile homeowner's violation of park rules, and the park owner's desire to change the use of land. *Id.* at 523–25. Many municipalities in California, including the City of Escondido, then passed rent-control ordinances for mobile-home parks. The City enacted a rent-control ordinance in 1988 that set rates at 1986 levels and prohibited rent increases without the approval of the City Council. Park owners could apply for rent increases at any time. Under the scheme, the City had to approve rent increases that it determined to be "just, fair, and reasonable" after considering nonexhaustive factors such as comparable rents, changes in taxes and expenses, repairs, and the like. *Id.* at 525.

1

2

3

4

5

6

7

8

9

10

11

The *Yee* petitioners were owners of mobile-home parks in Escondido. They contended that because mobile homeowners could sell mobile homes in place and would receive a premium because of the below-market rent, "the rent control ordinance ha[d] transferred a discrete interest in land — the right to occupy the land indefinitely at a submarket rent — from the park owner to the mobile home owner." *Id.* at 527. The Court rejected that argument and observed that that the rent-control ordinance was not a taking because the tenants had been "invited by petitioners, not forced upon them by the government," and because the mobile home park owners could still "change the use of [their] land [and] evict [their] tenants, albeit with 6 or 12 months notice." *Id.* at 528. The Court held that the ordinance was not a per se taking and did not reach the issue of whether it might be a regulatory taking. *Id.* at 532, 538 ("We leave the regulatory taking issue for the California courts to address in the first instance.").

12

13

14

15

16

17

18

19

The Ninth Circuit has held consistently that laws governing the landlord-tenant relationship are not subject to a categorical per se takings analysis. *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022) (the Supreme Court "has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails") (citing *Loretto*, 458 U.S. at 440). In *Ballinger*, the court held that an ordinance requiring a landlord to pay a relocation fee to a tenant upon terminating a lease was not a per se taking because the landlord chose to lease their property and to evict the tenant. *Id.* at 1292.

20

21

22

23

24

25

26

Most recently, the Supreme Court held that a California law allowing union organizers to enter the property of agricultural employers up to one-hundred-twenty days per year to solicit farmworkers' support was a per se taking. *Cedar Point Nursery*, 141 S. Ct. at 2069, 2080. California's law took the "right to exclude" the union organizers from the property owners and appropriated a "right of access" to the union organizers. *Id.* at 2074, 2076. In reaching this conclusion, the Court distinguished its holding in *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980). *Id.* at 2076.

27

28

In *PruneYard*, the Court held that a right under the California Constitution to distribute pamphlets and ask for signatures on a petition on the property of a private shopping center did not

amount to a per se taking, even though the California law may have allowed a "physical[] inva[sion]" of the property. 447 U.S. at 84 ("In these circumstances, the fact that they may have 'physically invaded' appellants' property cannot be viewed as determinative."). Thus, the Court evaluated the law under the non-categorical regulatory taking framework. *Id.* at 82–84. The *Cedar Point* decision distinguished *PruneYard* on the basis that the *PruneYard* shopping center was open to the public while the growers' properties were not. *Cedar Point Nursery*, 141 S. Ct. at 2076. Accordingly, there is no blackline rule that every law that interferes with a right to exclude is automatically a per se taking.

In their facial challenge to the ordinances in this case, the plaintiffs argue that the rent-eviction ordinances are a physical or per se taking, not a regulatory taking, because the ordinances (1) "grant[] possession to all occupants of rental properties for the duration of the Local Emergency," (2) "permit occupants to stay in residence irrespective of any material breach in the lease," and (3) eliminate the landlords' right to exclude the non-paying tenants.[43] The plaintiffs also contend that the ordinances are a taking because they relieve tenants of the obligation to pay rent and grant a right of access to "squatters."[44] The plaintiffs' taking arguments fail for several reasons.

First, the challenged moratoria are not indefinite on their face because they last only as long as the local emergency.[45] The County's ordinance provides a defense to unlawful-detainer actions between March 24, 2020, and "sixty (60) days after the expiration of the local health emergency or sixty (60) days after December 31, 2020, whichever is later." Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(D) (2020). The City's ordinance similarly remains in effect "until the Local Emergency declared on March 9, 2020, has been terminated by the City Council."[46] Because this is a facial challenge, it is irrelevant that the City and County have not ended the local emergency,

---

[43] Mot. – ECF No. 61 at 19–20; Reply – ECF No. 89 at 12; Mot. – ECF No. 25 (Case No. 22-cv-02705-LB) at 20, 22 ("[T]he County is compelling landlords to house individuals who are, in legal effect, trespassers.").

[44] Mot. – ECF No. 61 at 25; Mot. – ECF No. 25 (Case No. 22-cv-02705-LB) at 22–23 & n.11.

[45] Alameda Cnty., Cal., Ordinance O-2020-41 (Aug. 4, 2020), Ex. A, Defs.' Req. for Jud. Notice – ECF No. 76 at 5–7.

[46] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 122 (sec. 3).

United States District Court
Northern District of California

because the laws are not permanent on their face. *Cf. Yee*, 503 U.S. at 528 ("A different case would be presented were the statute, on its face or as applied, to compel a landlord over objection to rent his property or to refrain in perpetuity from terminating a tenancy.").

Second, the moratoria do not absolve tenants of their contractual obligation to pay back rent. The ordinances implicitly acknowledge that back rent accrues by the provision that landlords may not charge late fees for rent that became due during the moratoria.[47] Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(E) (2020) ("[N]o late fees, fines or interest may be imposed for rent that became due during the effective period for this section."); *id.* § 6.120.090(A) ("Nothing in this chapter relieves an affected resident of liability for unpaid rent or mortgage payments that became due during the effective periods of Sections 6.120.030(A) or (D) or 6.120.040(A) or (D) of this chapter"). The ordinances apply to unlawful-detainer actions but do not prohibit landlords from suing for breach of contract.[48] *Id.* § 6.120.030(D) (providing that "[i]t shall be an absolute defense to any unlawful detainer action"); *see Hong Sang Mkt., Inc. v. Peng*, 20 Cal. App. 5th 474, 492 (2018) (outside of unlawful-detainer actions, "[a] landlord can generally recover up to four years of back-due rent if the claim is based upon a written lease agreement"). Accordingly, even assuming that the moratoria were permanent on their face (which they are not), they would not deprive owners of "all economically beneficial uses [of their property] in the name of the common good." *Lucas*, 505 U.S. at 1019.

Third, the ordinances' eviction prohibitions are subject to certain exceptions, including Ellis Act evictions.[49] Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(F) (2020). The plaintiffs point

---

[47] Oakland, Cal., Ordinance 13589 C.M.S. (Mar. 27, 2020), Ex. D, Pls.' Req. for Jud. Notice – ECF No. 62 at 111 (sec. 5) ("[N]o late fees may be imposed for rent that became due during the Local Emergency if the rent was late for reasons resulting from the COVID-19 pandemic."); *id.* at 113 (sec. 9) ("Nothing in this Ordinance shall relieve any tenant of liability for unpaid rent that became due during the Local Emergency.").

[48] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 122 (sec. 3); Opp'n – ECF No. 71 at 20; Opp'n – ECF No. 75 at 23.

[49] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 122 (sec. 3) (excepting cases where "the tenant poses an imminent threat to the health or safety of other occupants of the property" and excepting Oakland, Cal., Mun. Code § 8.22.360A(11) from the category of unlawful-detainer actions subject to the COVID-19 moratorium defense).

1    to the county's statement on its website that "if you provide documentation that you have a COVID-

2    related impact that made you unable to pay rent on time, the ordinance prohibits your eviction and

3    there are no exceptions."[50] But this does not help the plaintiffs. As the county points out, that

4    portion of the moratorium (the portion governing an inability to pay rent due to COVID-19 illness)

5    "by its terms, does not apply to owner-occupancy [Ellis Act] evictions in the first instance."[51] *Id.* §

6    6.120.040(D) ("It shall be an absolute defense to any unlawful detainer action against an affected

7    resident based on a failure to timely make rent or mortgage payments. . . ."). Moreover, to the extent

8    the county's statement supports multiple interpretations of the ordinance, the court must view the

9    inferences in the light most favorable to the defendants. *Matsushita Elec.*, 475 U.S. at 587.

10       Fourth, the ordinances do not on their face allow "squatters" to occupy rental units without

11    paying rent.[52] Alameda Cnty., Cal., Mun. Code ch. 6, §§ 6.120.020, 6.120.030(D) (2020) (the

12    defense applies to "resident[s]" where "resident" means "a tenant, homeowner or their household").

13    This distinction is critical. The Supreme Court has held repeatedly that it is the invitation to allow a

14    person to occupy a property that distinguishes per se takings from regulatory takings governed by

15    the *Penn Central* factors. *Yee*, 503 U.S. at 532 (a regulation that reduced the amount of rent a

16    property owner could collect was not a physical taking and "it is the invitation, not the rent, that

17    makes the difference") (quoting *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252–53 (1987)); *Cedar

18    Point Nursery*, 141 S. Ct. at 2077 ("Limitations on how a business generally open to the public may

19    treat individuals on the premises are readily distinguishable from regulations granting a right to

20    invade property closed to the public.").

21       In the context of landlord-tenant relations, in a recent Ninth Circuit case, landlords challenged

22    as a physical taking the City of Oakland's municipal-code requirement that they pay their tenants a

23    relocation fee when the landlords terminated the lease early so that they could move back into

24

25    [50] Mot. – ECF No. 25 (Case No. 22-cv-02705-LB) at 33–34; "Alameda County COVID-19 Eviction
      Moratorium," Ex. 4, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 19.

26    [51] Opp'n – ECF No. 32 (Case No. 22-cv-02705-LB) at 27.

27    [52] *Id.* (referencing unlawful-detainer actions served on a "tenant"); Oakland, Cal., Mun. Code ch. 8,
      art. I, § 8.22.020 (2022) (defining "tenant" to be "a person entitled, by written or oral agreement to the
28    use or occupancy of any covered unit").

ORDER – Nos. 22-cv-01274-LB and 22-cv-02705-LB    18

their home. *Ballinger*, 24 F.4th at 1290–91. The Ninth Circuit affirmed the district court's dismissal of the physical-taking claim: "[w]hen a person voluntarily surrenders liberty or property, like when the [the plaintiff-landlords] chose to rent their property causing them to pay the relocation fee when they caused the tenants to relocate, the State has not deprived the person of a constitutionally protected interest." *Id.* at 1293 (cleaned up). The court distinguished *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015) (a case the plaintiffs rely on here) that involved a requirement that raisin growers set aside a portion of their crop gratis — forty-seven percent in 2002 to 2003 —so that the government could sell it for certain regulatory purposes. In other words, a landlord' decision to rent property is different than selling a commodity.

In sum, the plaintiffs' per se takings arguments are not convincing. Many district courts similarly have concluded that COVID-19-related eviction moratoria are not per se takings. *Gallo v. District of Columbia*, No. 1:21-cv-03298 (TNM), 2022 WL 2208934, at *8–10 (D.D.C. June 21, 2022) (an eviction moratorium is not a physical taking); *Farhoud v. Brown*, No. 3:20-cv-2226-JR, 2022 WL 326092, at *10 (D. Or. Feb. 3, 2022) (same); *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1106–07 (E.D. Wash. 2021) (same); *S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853, 865–67 (S.D. Cal. 2021) (same); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 163–64 (S.D.N.Y. 2020) (same); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 220 (D. Conn. 2020) (denying a preliminary injunction against an eviction moratorium based on the Takings Clause). The court follows this weight of authority as persuasive.

Finally, the Eighth Circuit's decision in *Heights Apartments, LLC v. Walz* does not militate in favor of a different result. 30 F.4th 720 (8th Cir. 2022). In denying a Rule 12(b)(6) motion to dismiss, the court held that the plaintiffs stated a plausible per se takings claim based on a similar eviction moratorium. *Id.* at 733. It held that the Supreme Court's decision in *Cedar Point Nursery* was controlling and that the case was distinguishable from *Yee* because the rent-control ordinance in *Yee* did not deprive "landlords of their right to evict" and because the landlords in *Yee* sought to "exclude future or incoming tenants rather than existing tenants." *Id.* (citing *Yee*, 503 U.S. at 527–28, 530–31). This reasoning is not persuasive. *See Gallo*, 2022 WL 2208934, at *9 ("[T]he Court

United States District Court
Northern District of California

is unconvinced by [*Heights Apartments*] on this point [that *Cedar Point Nursery* rather than *Yee* controls the analysis of COVID-19 eviction moratoria].").

In *Yee*, the plaintiffs did allege that the rent-control law "had the effect of depriving the plaintiffs of all use and occupancy of their real property and granting to the tenants of [mobile homes] presently in [the mobile home park], as well as the successors in interest of such tenants, the right to physically permanently occupy and use the real property of [the plaintiffs]." 503 U.S. at 525. The Court also acknowledged the plaintiffs' argument that "[b]ecause . . . the park owner cannot evict a mobile home owner or easily convert the property to other uses[,] . . . the mobile home owner is effectively a perpetual tenant of the park." *Id.* at 526–27. Nonetheless, the Court held that "[a]t least on the face of the regulatory scheme, neither the city nor the State compels [the plaintiffs], once they have rented their property to tenants, to continue doing so" because "a park owner who wishes to change the use of his land may evict his tenants, albeit with 6 or 12 months notice." *Id.* at 527–28 ("Put bluntly, no government has required any physical invasion of [the plaintiffs'] property. [The plaintiffs'] tenants were invited by [the plaintiffs], not forced upon them by the government.").

In sum, the regulatory "scheme" in *Yee* impacted the landlords' "right to evict" and affected current and future tenants. That regulatory scheme is similar to the moratoria here. Like the laws in *Yee*, the moratoria apply to tenants that the plaintiff landlords had already invited onto their property, and the moratoria provide exceptions, including an exception for Ellis Act evictions. The fact that the moratoria protect tenants — not uninvited intruders on otherwise private property — from eviction also distinguishes this case from *Cedar Point Nursery*, where the challenged law required property owners to allow uninvited union organizers on land that was otherwise closed to the public. *Cedar Point Nursery*, 141 S. Ct. at 2077 (distinguishing regulations governing businesses open to the public from those closed to the public). The *Yee* decision compels the conclusion that the moratoria, on their face, are not per se takings. *Jevons*, 561 F. Supp. 3d at 1106 ("To find that the eviction moratorium is a per se physical taking would require the Court to disregard the U.S. Supreme Court's holdings and rationale in both *Loretto* and *Yee* . . . . Such activism is not the occupation of this Court.").

United States District Court
Northern District of California

The court denies the plaintiffs' motion for summary judgment on their claim that the defendants' eviction moratoria constitute per se takings and facially violate the Takings Clause.

### 3. Contracts Clause

The *California Apartments* plaintiffs contend that the County's moratorium violates the Contracts Clause of the U.S. Constitution.[53] There is no facial violation because the moratorium does not substantially impair the plaintiffs' contractual rights and is not, on its face, an unreasonable response to the public purpose of avoiding housing displacement during the COVID-19 pandemic.

"The Contracts Clause provides that 'No State shall . . . pass any . . . Law impairing the Obligation of Contracts.'" *Apartment Ass'n of L.A.*, 10 F.4th at 912 (quoting U.S. Const. art. I, § 10, cl. 1), *cert. denied*, 142 S. Ct. 1699 (2022). Under the modern approach to alleged violations of the Contracts Clause, courts apply a two-step test. *Id.* at 913 (citing *Sveen v. Melin*, 138 S. Ct. 1815 (2018)).

The first step is determining "whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen*, 138 S. Ct. at 1821–22 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). Factors relevant to determining the substantial impairment issue "include the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Apartment Ass'n of L.A.*, 10 F.4th at 913 (cleaned up).

If the law is a substantial impairment, then the second step is determining "whether the law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (cleaned up). "But when the government is not party to the contract being impaired, courts properly defer to legislative judgment on the necessity and reasonableness of a particular measure." *Id.* (cleaned up). Therefore, a party challenging a law impairing private contracts has the burden to establish the unreasonableness of the law. *Id.* (a party challenging a law that was enacted for a permissible public purpose can prevail "only if it can show that the provisions it

---

[53] Mot. – ECF No. 25 (Case No. 22-cv-02705-LB) at 25–32.

1   challenges were not 'appropriate and reasonable.'") (quoting *Sveen*, 138 S. Ct. at 1822); *In re*

2   *Seltzer*, 104 F.3d 234, 236 (9th Cir. 1996) (the district court "properly required . . . the objecting

3   party[] to carry the burden" of establishing that the challenged law was unreasonable).

4        Under this test, a court should uphold a challenged law — even a law that substantially impairs

5   contractual relations — if the law's adjustments to the parties' contractual rights were "based upon

6   reasonable conditions and . . . appropriate to the public purpose justifying the legislation's

7   adoption." *Apartment Ass'n of L.A.*, 10 F.4th at 913 (quoting *Energy Rsrvs. Grp. v. Kan. Power &*

8   *Light Co.*, 459 U.S. 400, 412 (1983)). "[T]he Supreme Court has construed [the Contracts Clause]

9   narrowly in order to ensure that local governments retain the flexibility to exercise their police

10  powers effectively." *Matsuda v. City & Cnty. of Honolulu*, 512 F.3d 1148, 1152 (9th Cir. 2008).

11  For example, in *Keystone Bituminous Coal Ass'n v. DeBenedictis*, the Supreme Court upheld a

12  state law requiring that fifty percent of the coal beneath certain structures be kept in place and

13  "refuse[d] to second-guess the [state's] determinations that [the challenged law's provisions were]

14  the most appropriate ways of dealing with the problem." 480 U.S. 470, 506 (1987).

15       An early example of a Contracts Clause challenge to an eviction moratorium is *Home Bldg. &*

16  *Loan Ass'n v. Blaisdell*, where the Supreme Court upheld an ordinance that barred property

17  owners from repossessing properties for two years during the Great Depression so long as certain

18  payments were made. 290 U.S. 398, 420, 447–48 (1934). More recently, in *Apartment Ass'n of*

19  *L.A.*, the Ninth Circuit affirmed the denial of a motion for a preliminary injunction against a

20  COVID-19-related eviction moratorium. 10 F.4th at 913. After "assuming without deciding that

21  the eviction moratorium [was] a substantial impairment[,]" the court skipped to the second step in

22  the Contracts Clause analysis and held that the plaintiff was "unlikely to show that the eviction

23  moratorium [was] an unreasonable fit for the problems identified." *Id.* at 913–14.

24       The court held that the city had "fairly tie[d] the moratorium to its stated goal of preventing

25  displacement from homes," which could exacerbate public health problems in the city. *Id.* at 914.

26  And the parties did not dispute that responding to COVID-19 was a valid public purpose. *Id.* The

27  court then held that the city's explanation that the moratorium's provisions — including an

28  eviction prohibition, delays of rent-payment obligations, and bars on late fees and interest —

helped prevent displacement and were reasonable attempts to address the problem. *Id.* The court

concluded that, "given the deferential standard that precedent constrains us to apply, . . . the City's

enactments pass constitutional muster under the Contracts Clause." *Id.*

District courts throughout the country have reached similar conclusions on challenges to

COVID-19 eviction moratoria under the Contracts Clause. *See*, *e.g.*, *Gallo*, 2022 WL 2208934, at

*7–8; *Farhoud*, 2022 WL 326092, at *9; *S. Cal. Rental Hous. Ass'n*, 550 F. Supp. 3d at 864;

*Auracle Homes, LLC*, 478 F. Supp. 3d at 226; *Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 172.

For example, in *S. Cal. Rental Hous. Ass'n v. Cnty. of San Diego*, the court upheld San

Diego's eviction moratorium that temporarily prohibited evictions except under certain

circumstances, such as a "an imminent threat to health and safety." 550 F. Supp. 3d at 862. The

court, in the context of a motion for a preliminary injunction, held that it was "a reasonably

tailored rule" that did "not substantially impair property owners' contract rights." *Id.* at 862–63.

The court observed that the moratorium (1) did not relieve the tenant of the obligation to pay rent,

(2) contained an exception for evictions of tenants who posed an "imminent threat to health and

safety," and (3) was temporary because it was "set to expire 60 days after the COVID-19 stay-and-

work-at-home orders" were lifted. *Id.* ("[A] temporary delay of an eviction remedy does not

constitute a substantial impairment."). The court also held that the moratorium had a legitimate

public purpose to "protect the health and safety of San Diego County residents from the threat of

the COVID-19 virus." *Id.* at 863. The court thus held that the plaintiffs were unlikely to succeed

and denied the request for a preliminary injunction. *Id.* at 864, 871.

The court in *Farhoud v. Brown* arrived at the same result but came to a different conclusion on

the substantial-impairment issue. 2022 WL 326092, at *7–9. In the context of a motion to dismiss,

the court concluded that an eviction moratorium in effect during a statewide emergency, plus a

grace period for paying back rent, was a substantial impairment. *Id.* at *2, 8. The court reasoned

that the moratorium undermined the parties' contractual bargain because the moratorium

extinguished a "tenant's obligation to pay rent during the moratorium period," which the plaintiffs

alleged effectively extinguished the "prospect of ever recovering that unpaid rent." *Id.* at *7. The

court also held that the law interfered with the plaintiff landlords' reasonable expectations because

United States District Court
Northern District of California

"even though state law regulates many aspects of the landlord-tenant relationship, [the plaintiffs] had no reasonable expectation that their ability to collect rent or otherwise initiate eviction proceedings for nonpayment of rent would be impaired." *Id.* at *8. Lastly, the court held that the eviction moratorium prevented the landlords from safeguarding their contractual rights. *Id.* Nonetheless, the court dismissed the claim based on the Ninth Circuit's decision in *Apartment Ass'n of L.A.* because the county "reasonably tie[d] the eviction moratorium to its stated end of preventing mass-evictions and protecting . . . residents' health and safety." *Id.* at *9.

In *Gallo*, the court held that municipal legislation — that included an eviction moratorium that prohibited evictions during "a declared public health emergency 'and for 60 days thereafter'" and then, after the expiration of the public-health emergency, allowed evictions if landlords met "certain conditions" — did not violate the Contracts Clause. 2022 WL 2208934, at *1–2, 8 (citing *Block*, 256 U.S. at 1540). The laws were not a substantial impairment for two main reasons. *Id.* at *6–8. First, the laws did not undermine the landlord's contractual bargain because rent still accrued and the eviction limitation was temporary. *Id.* at *6. Second, the laws did not interfere with the landlord's reasonable expectations because "[f]or over a century, landlords in the District have had fair warning that legislation enacted because of emergencies can impact landlord rights." 2022 WL 2208934, at *7–8 (citing *Block*, 256 U.S. at 1540). After holding that the laws were not a substantial impairment, the court declined to consider the relationship between the law and its public purposes. *Id.* The *Gallo* court also distinguished the Eighth Circuit's decision in *Heights Apartments, LLC v. Walz* — where the Eight Circuit had allowed a Contracts Clause claim to proceed — because the law challenged in *Gallo* (unlike the law challenged in *Heights Apartments*) had a "temporal limitation." *Id.* at *6 (citing *Heights Apartments*, 30 F.4th at 729–30).

Under the Ninth Circuit's deferential standard and the weight of the recent authority, the county's eviction moratorium does not violate the Contracts Clause. It survives both steps of the two-part analysis.

### 3.1   Substantial Impairment

The threshold issue is a close call, but in the end, the moratorium is not a substantial impairment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First, on its face, the County's moratorium does not relieve tenants of the obligation to pay rent or stop unpaid rent from accruing, and the moratorium is not permanent because it expires sixty days after the County declares the end of the emergency. Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(A) (2020). It therefore does not undermine the plaintiffs' contractual bargain. *See Gallo*, 2022 WL 2208934, at *6 (a moratorium imposed an "acceptable burden" on the plaintiff's "contractual bargain" because the "effects are temporary, and rent continues to accrue while the Moratorium is in effect").

Second, the County's moratorium does not interfere with the landlords' reasonable expectations because there is a long history of regulations governing the landlord-tenant relationship and of Supreme Court cases upholding eviction moratoria. *Block*, 256 U.S. at 1540; *Blaisdell*, 290 U.S. at 420. The reasoning in *Farhoud* does not alter this analysis. There, the court concluded that a moratorium conflicted with landlords' reasonable expectations because the state's landlord-tenant laws had not "prohibited landlords from evicting non-paying tenants" before the state passed its COVID-19 legislation. 2022 WL 326092, at *8. The fact that an emergency eviction moratorium was not previously part of state law does not mean that landlords could not have reasonably expected the possibility. *S. Cal. Rental Hous. Ass'n*, 550 F. Supp. 3d at 862 ("The regulations that halted evictions which were passed during the early days of the pandemic could not have been predicted by landlords, however, the Ordinance at issue followed the issuance of many similar regulations. As such, it was foreseeable to the extent the industry intersects with the health and safety of citizens."); *see also Energy Rsrvs. Grp.*, 459 U.S. at 411–12 (courts should consider "whether the industry the complaining party has entered has been regulated in the past").

Third, the fact that the moratorium precludes landlords from evicting tenants for the failure to pay rent does not prevent landlords from safeguarding their contractual rights. While eviction may be the landlords' preferred remedy, the prohibition on most evictions does not eliminate the landlords' ability to safeguard their rights because they can still sue for breach of contract. The moratorium alters the tools available to landlords to protect their interests but does not totally prevent landlords from safeguarding their contractual rights. *Jevons*, 561 F. Supp. 3d at 1099–1100 ("A law altering contractual remedies without nullifying them does not 'prevent the party

from safeguarding or reinstating their rights.'") (cleaned up) (quoting *Sveen*, 138 S. Ct. at 1822); *see also Blaisdell*, 290 U.S. at 431 ("The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them . . . ."). Although the plaintiffs contend that some tenants may be judgment proof, the plaintiffs also allege that many tenants should be forced to pay because they have high incomes.[54] Presumably, some tenants are not judgment proof and could be compelled to pay overdue rent through a contract action.

In sum, the County's moratorium is not a substantial impairment.

### 3.2   Reasonable and Necessary

Even if the plaintiffs had established that the county's moratorium substantially impaired their contract rights, they did not meet their burden to show that the moratorium was unreasonable on its face. *Apartment Ass'n of L.A.*, 10 F. 4th at 913.

When the County made the moratorium a part of the municipal code, it found that the COVID-19 pandemic caused economic damage and that housing displacement would increase the transmission of the virus.[55] The ordinance's stated purpose is to "reduce the transmission of COVID-19, to promote housing stability during the COVID-19 pandemic[,] and to prevent avoidable homelessness."[56] Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.010 (2020). It contains exceptions for (1) Ellis Act evictions, (2) court and government orders, and (3) "imminent threats to health and safety."[57] *Id.* § 6.120.030(F). And the moratorium is on its face temporary because it expires "sixty (60) days after the expiration of the Local Health Emergency but not sooner than sixty (60) days after December 31, 2020."[58] *Id.* § 6.120.030(A).

---

[54] Mot. – ECF No. 61 at 27 ("[U]nder the Moratoria, renters are protected from eviction for nonpayment even if renters refuse to participate in the rent relief programs, or do not qualify for rent relief (because they are wealthy).").

[55] Alameda Cnty., Cal., Ordinance O-2020-32 (June 23, 2020), Ex. 17, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 200–201 (¶¶ 12–16).

[56] *Id.* at 204.

[57] Alameda Cnty., Cal., Ordinance O-2020-41 (Aug. 4, 2020), Ex. A, Defs.' Req. for Jud. Notice – ECF No. 76 at 6.

[58] *Id.* at 5.

United States District Court
Northern District of California

The moratorium is much like others that have survived challenges under the Contracts Clause. *S. Cal. Rental Hous. Ass'n*, 550 F. Supp. 3d at 862–64 (eviction moratorium was "reasonable and appropriate to the public purpose underlying its enactment"); *Farhoud*, 2022 WL 326092, at *9 (the defendant county "reasonably tie[d] the eviction moratorium to its stated end of preventing mass-evictions and protecting . . . residents' health and safety"). To the extent that the plaintiffs object to the fact that the Alameda County Board of Supervisors, rather than the state or federal government, has the authority to end the "Local Health Emergency," or the fact that the end of the moratorium is not tied to some objective criteria (like infection rates or the existence of a stay-at-home-order), they cite no authority. *Cf. S. Cal. Rental Hous. Ass'n*, 550 F. Supp. 3d at 862–63 (upholding moratorium "set to expire 60 days after the COVID-19 stay-and-work-at-home orders are lifted"). The lack of a strict limitation in the ordinance does militate slightly against the reasonableness of the moratorium, but it is not dispositive. *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22 n.19 (1977) ("Undoubtedly the existence of an emergency and the limited duration of a relief measure are factors to be assessed in determining the reasonableness of an impairment, but they cannot be regarded as essential in every case.").

Although the plaintiffs rely on *Heights Apartments* to support the Contracts Clause claim, the court declines to follow that non-binding decision.[59] 30 F.4th at 724. In *Heights Apartments*, the court held that a Contracts Clause challenge to an eviction moratorium (in the form of several executive orders) survived a motion to dismiss because the laws (1) were a "substantial impairment" given the lack of "definite termination dates," and (2) they were not "reasonably tailored because they imposed broad restrictions requiring landlords to house tenants engaging in material breaches of the lease — some of which undermined efforts to combat the virus — that had nothing to do with the nonpayment of rent." 30 F.4th at 724, 730–32.

The court in *Heights Apartments* credited allegations that tenants were "operating a car and boat shop on the premises, holding raucous parties, and creating nuisances that drove other

---

[59] Mot. – ECF No. 25 (Case No. 22-cv-02705-LB) at 26–30; Reply – ECF No. 36 (Case No. 22-cv-02705-LB) at 12.

rent-paying tenants to move" and concluded that "[t]hese behaviors undermined efforts to combat the COVID-19 virus; yet they were encompassed by the eviction moratoria." 30 F.4th at 731. These examples established that "there was a lack of reasonable tailoring to advance [the government's] public purpose." *Id.*

This analysis conflicts with the Ninth Circuit's statement in *Apartment Ass'n of L.A.* that "[u]nder current doctrine, we must refuse to second-guess the City's determination that the eviction moratorium constitutes the most appropriate way of dealing with the problems identified." 10 F.4th at 914 (cleaned up). Moreover, the *Heights Apartments* decision occurred in the context of a motion to dismiss where the court was required to accept factual allegations as true. Here, the plaintiffs' facial challenge is based on a theory that the moratorium could never pass constitutional muster under any circumstances. And because this is a facial challenge, the plaintiffs have not submitted evidence showing that the moratorium was an unreasonable response to the pandemic.

The plaintiffs' real issue is not the reasonableness of the ordinance itself but instead is the reasonableness of the County's failure to declare the end of the "Local Health Emergency." This fact issue precludes summary judgment on the ground that the ordinance facially violates the Contracts Clause. The court denies the *California Apartments* plaintiffs' motion for summary judgment.

### 4. Due Process Clause

Relying on *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021), the *Williams* plaintiffs contend that because the moratoria provide tenants with an "absolute defense" to most eviction proceedings while the moratoria are in effect, they "depriv[e] housing providers of any hearing in violation of their due process [rights]."[60] This theory does not support summary judgment.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The fundamental

---

[60] Mot. – ECF No. 61 at 31–32, 34; Reply – ECF No. 89 at 32–34 (the plaintiffs concede that they "do not challenge 'the process by which' the Moratoria were reached; they challenge the substance of the Moratoria themselves").

requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up).

In *Chrysafis*, the Supreme Court temporarily enjoined part of New York's COVID-19 eviction moratoria, known as the COVID Emergency Eviction and Foreclosure Prevention Act. 141 S. Ct. at 2482. That law allowed tenants to certify as a defense to an eviction proceeding that they suffered a "financial hardship" due to COVID-19 and "generally preclude[d] a landlord from contesting that certification and denie[d] the landlord a hearing." *Id.* at 2482–83. The moratoria here are different.

The challenged moratoria do not deny landlords a hearing or preclude landlords from contesting facts asserted by tenants. Instead, the moratoria provide a defense that tenants may assert in eviction proceedings.[61] Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(D) (2020) ("It shall be an absolute defense to any unlawful detainer action . . . subject to the exceptions stated below."). The plaintiff landlords are free to evict tenants under one of the exceptions each moratorium provides. For example, the city's moratorium includes exceptions "when the tenant poses an imminent threat to the health or safety of other occupants of the property" and for Ellis Act evictions.[62] The County's moratorium contains exceptions for (1) Ellis Act evictions, (2) court and government orders, and (3) "imminent threat[s] to health and safety." *Id.* § 6.120.030(F). And landlords may still sue for breach of contract. *Hong Sang Mkt.*, 20 Cal. App. 5th at 492. Furthermore, the eviction moratoria are set to expire when the local governments declare the end of the local emergencies.[63]

---

[61] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 121 (providing that the service of an eviction notice during the local emergency "shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) - (10)"); *see* Oakland, Cal., Mun. Code ch. 8, art. II, § 8.22.360A(11) (2022) (governing Ellis Act evictions).

[62] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 121 (providing that "[e]xcept when the tenant poses an imminent threat to the health or safety of other occupants of the property," the local emergency "shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (1) - (10)"); *see* Oakland, Cal., Mun. Code ch. 8, art. II, § 8.22.360A(11) (2022) (governing Ellis Act evictions).

[63] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 122 ("This section shall remain in effect until the Local Emergency declared on March 9, 2020, has been terminated by the City Council.").

*Id.* § 6.120.030(A). Because the moratoria do not, on their face, deprive the plaintiffs of the opportunity to be heard, they do not facially violate the Due Process Clause.

Many courts have denied similar Due Process challenges to eviction moratoria. *Farhoud*, 2022 WL 326092, at *12–13 (an eviction moratorium did not violate the plaintiffs' Due Process rights because "[t]he moratorium . . . [did] not permanently remove [the] [p]laintiffs' ability to access the courts for all purposes. [The] [p]laintiffs may initiate eviction proceedings for reasons other than nonpayment of rent and may file breach of contract actions against tenants"); *Auracle Homes, LLC*, 478 F. Supp. 3d at 227 (an eviction moratorium did not violate the plaintiffs' Due Process rights because the challenged laws "only delay [the] [p]laintiffs' ability to initiate evictions; they do not eradicate all future opportunity for [the] [p]laintiffs to pursue evictions"); *cf. Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 173 (an eviction moratorium did not violate the plaintiffs' Due Process rights because landlords could "initiate eviction proceedings against the tenants who are not facing financial hardship but who have chosen not to pay their rent" and "to move against their other tenants after August 19[, 2020]").

The court denies the plaintiffs' request for summary judgment on their claim that the moratoria facially violate the Fourteenth Amendment's Due Process Clause.

## 5. Preemption

The *Williams* plaintiffs contend that the state's unlawful-detainer statutes preempt the local eviction moratoria, and the *California Apartment* plaintiffs contend that the Ellis Act preempts the County's eviction moratorium.[64] The court denies summary judgment on both grounds.

"Whether a California state law preempts a local law is governed by Article XI, section 7 of the California Constitution, which states that '[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict* with general laws.'" *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1279 (9th Cir. 2017) (quoting Cal. Const. art. XI, § 7). California law conflicts with local ordinances when "the local legislation duplicates, contradicts, or

---

[64] Mot. – ECF No. 61 at 24–31; Mot. – ECF No. 25 (Case No. 22-cv-02705-LB) at 33–35.

United States District Court
Northern District of California

enters an area fully occupied by general law, either expressly or by legislative implication."
*Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993) (cleaned up).

The duplication prong of the state preemption test is confined generally to penal ordinances because a conviction under a local ordinance would bar "prosecution under state law." *First Resort, Inc.*, 860 F.3d at 1280 (cleaned up). Local law is "'contradictory' to general law when it is inimical thereto" and "enters an area 'fully occupied' by general law when the [l]egislature has expressly manifested its intent to fully occupy the area or when it has impliedly done so in light of recognized indicia of intent." *Big Creek Lumber Co. v. Cnty. of Santa Cruz*, 38 Cal. 4th 1139, 1150 (2006).

"The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption." *Id.* at 1149. "'Absent a clear indication of preemptive intent from the Legislature,' California courts presume that a local law in an area of traditional local concern 'is *not* preempted by state statute.'" *First Resort, Inc.*, 860 F.3d at 1279 (cleaned up) (quoting *Big Creek Lumber Co.*, 38 Cal. 4th at 1149).

For example, in *Big Creek Lumber*, the California Supreme Court held that state law did not preempt several county ordinances that restricted logging operations to a greater degree. 38 Cal. 4th at 1146. The court recognized the presumption against preemption in areas where local governments have "traditionally . . . exercised control" and held that "[l]and use regulation in California historically has been a function of local government." *Id.* at 1149, 1151. The state law at issue in *Big Creek Lumber* provided that "counties [were] forbidden to 'regulate the conduct' of timber operations." *Id.* at 1152. Nonetheless, the California Supreme Court held that the state law did not expressly preempt ordinances "that speak to the location of timber operations but not to the manner in which they are carried out." *Id.* at 1157. The court then held that state law did not impliedly preempt more restrictive local laws because while California's "forestry laws generally encourage 'maximum sustained production of high-quality timber products[,]' . . . they do not require that every harvestable tree be cut." *Id.* at 1161–62.

Like the zoning laws in *Big Creek Lumber*, local governments have traditionally exercised control over the landlord-tenant relationship and public-health issues. *See Birkenfeld v. City of Berkeley*, 17 Cal. 3d 129, 149 (1976) (holding that local law eliminating "particular grounds for

eviction [was] a limitation upon the landlord's property rights under the police power" that provided a "substantive ground of defense in unlawful detainer proceedings" but did not conflict with the state's statutory unlawful-detainer laws); *People ex rel. Deukmejian v. Cnty. of Mendocino*, 36 Cal. 3d 476, 484 (1984) ("Traditionally, the cities and counties have adopted regulations for the protection and preservation of public health.").

The plaintiffs assert conflict preemption, field preemption, and preemption by the Ellis Act.

### 5.1    Conflict Preemption

The plaintiffs contend that the eviction moratoria are "expressly preempted by" and "impliedly conflict with" California state law.[65] First, the plaintiffs claim that because state law permits landlords to move forward with unlawful-detainer actions only if the renter participated in the state's rent-relief program, it conflicts with the moratoria's broader eviction protections, which are not conditioned on renters' participation in a rent-relief program.[66] Second, the plaintiffs argue that the moratoria conflict with California law because state law permits evictions for certain reasons (*i.e.*, "just cause" evictions), and the moratoria ban "almost all" just cause evictions.[67]

First, the moratoria do not conflict with the state law requiring tenants to participate in a rent-relief program. The Rental Housing Recovery Act provides that between "October 1, 2021, and . . . July 1, 2022," courts "shall not issue a summons on a complaint for unlawful detainer that seeks possession of residential real property based on nonpayment of rental debt that accumulated due to COVID-19 hardship" unless the plaintiff satisfies certain conditions (including participation in the state's rental-assistance program). Cal. Civ. Proc. Code § 1179.11(a). The plaintiffs contend that the local moratoria conflict with the state law because the local moratoria protect renters "from eviction for nonpayment even if renters refuse to participate in the rent relief programs, or do not qualify for rent relief (because they are wealthy)."[68]

---

[65] Mot. – ECF No. 61 at 26–29.

[66] *Id.* at 27; Reply – ECF No. 89 at 26.

[67] Mot. – ECF No. 61 at 28; Reply – ECF No. 89 at 24–26.

[68] Mot. – ECF No. 61 at 27; Reply – ECF No. 89 at 26.

1    While the moratoria are more protective of renters, they do not impliedly or expressly conflict

2 with California law. The state's COVID-19 eviction laws allow evictions and prohibit only

3 evictions initiated during a certain period against renters that participated in rent-relief programs.

4 *Id.* But the state law does not require or mandate the eviction of every renter who failed to

5 participate in the rent-relief programs. *Id.* Thus, the moratoria — like the local logging restrictions

6 in *Big Creek Lumber* — do not "mandate what state law expressly forbids, or forbid what state

7 law expressly mandates" and are not preempted. 38 Cal. 4th at 1161 (cleaned up) (holding that

8 state logging law did not preempt more restrictive local logging ordinance because the state law

9 did "not require that every harvestable tree be cut").

10   Second, the moratoria do not conflict with California's just-cause eviction rules. The Tenant

11 Relief Act

> does not alter a city, county, or city and county's authority to extend, expand,
> renew, reenact, or newly adopt an ordinance that requires just cause for termination
> of a residential tenancy or amend existing ordinances that require just cause for
> termination of a residential tenancy, consistent with subdivision (g) of Section
> 1946.2 [of the California Civil Code], provided that a provision enacted or
> amended after August 19, 2020, shall not apply to rental payments that came due
> between March 1, 2020, and June 30, 2022.

17 Cal. Civ. Proc. Code § 1179.05(b). California Civil Code § 1946.2 identifies various grounds for

18 just-cause evictions, and § 1946.2(g) provides that the just-cause eviction rules do not apply to

19 "[r]esidential real property subject to a local ordinance requiring just cause for termination of a

20 residential tenancy adopted or amended after September 1, 2019, that is more protective than this

21 section, in which case the local ordinance shall apply." Cal. Civ. Code § 1946.2(g)(1)(B). In short,

22 California law allows cities and counties to enact just-cause eviction rules that provide more

23 protections to renters if the municipalities satisfy certain conditions.

24   Under § 1946.2(g), "more protective" means ordinances that are (1) consistent with § 1946.2,

25 (2) "further limit[] the reasons for termination of a residential tenancy," and (3) contain a "binding

26 finding" by the local government "that the ordinance is more protective than the provisions of this

27 section." *Id.* § 1946.2(g)(1)(B)(i)–(iii). Furthermore, § 1946.2(g)(2) provides that "[a] residential

28

real property shall not be subject to both a local ordinance requiring just cause for termination of a residential tenancy and this section."

The City's ordinance included an express finding that it was more protective than § 1946.2.[69] While the County's ordinance did not include an express finding concerning § 1946.2, it included a finding by the Alameda County Board of Supervisors that the ordinance is "intended to . . . preserve the public peace, health, and safety . . . by enabling tenants and homeowners . . . to remain in their homes" and to "prevent avoidable homelessness."[70] The Board also found that tenants "may be at risk of homelessness if they are evicted for non-payment."[71] While this may not constitute an "express finding," it does satisfy the "binding finding" requirement of § 1946.2(g)(1)(B)(iii). *See Arche v. Scallon*, 298 Cal. Rptr. 3d 375, 381 (Cal. App. Dep't Super. Ct. 2022) (an ordinance's "indication that no-fault evictions were barred even when allowed by state law, in combination with the Board's intent to enact 'tenant protections' to the extent they were not preempted by state law, was sufficient to comply with Civil Code section 1946.2, subdivision (g)(1)(B)(iii)"). The County's findings concerning the need to keep people in their homes demonstrate that the local moratorium was designed to be more protective than the state's unlawful-detainer laws.

In sum, there is no conflict between the local moratoria and state law on the grounds that the moratoria are "contradictory" or "inimical" to state law. *Big Creek Lumber*, 38 Cal. 4th at 1150.

### 5.2   Field Preemption

The plaintiffs — apparently asserting a field-preemption argument — state that "Covid-19 eviction controls are not a municipal affair [because] the Legislature has expressly declared them a 'matter of statewide concern.'"[72] This argument is not persuasive.

---

[69] Oakland, Cal., Ordinance 13589 C.M.S. (Mar. 27, 2020), Ex. D, Pls.' Req. for Jud. Notice – ECF No. 62 at 109 ("[T]he City Council finds that the Just Cause for Eviction Ordinance, as amended herein, is consistent with Civil Code Section 1946.2 . . . .").

[70] Alameda Cnty., Cal., Ordinance O-2020-23 (Apr. 21, 2020), Ex. G, Pls.' Req. for Jud. Notice – ECF No. 62 at 133 (¶¶ 27, 28).

[71] *Id.* (¶ 29).

[72] Mot. – ECF No. 61 at 29 (citing Cal. Civ. Proc. Code. § 1179.05(e)).

Local law intrudes on an area "fully occupied" by California state law "when the [l]egislature has expressly manifested its intent to 'fully occupy' the area" or when the legislature has impliedly occupied the area based on one of the following indicia:

> (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality[.]

*Sherwin-Williams*, 4 Cal. 4th at 898 (cleaned up). Applying these factors, the state has not fully occupied the area of the law concerning COVID-19 eviction moratoria.

First, the plaintiffs have not identified any language in the state's COVID-19 legislation demonstrating an express intent to "fully occupy" the area. The language in the statutes shows that the opposite is true. Section 1179.05(a) provides that "[a]ny ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect tenants from eviction is subject to" several listed restrictions. Cal. Civ. Proc. Code. § 1179.05(a). Section 1179.05(b) provides that

> [t]his section does not alter a city, county, or city and county's authority to extend, expand, renew, reenact, or newly adopt an ordinance that requires just cause for termination of a residential tenancy or amend existing ordinances that require just cause for termination of a residential tenancy, consistent with subdivision (g) of Section 1946.2, provided that a provision enacted or amended after August 19, 2020, shall not apply to rental payments that came due between March 1, 2020, and June 30, 2022.

The language in these statutes undermines the plaintiffs' preemption argument. The state legislature acknowledged the existence of local laws concerning eviction restrictions in response to COVID-19, declined to completely preempt those laws, and affirmatively allowed localities to enact or amend local eviction rules to provide more protections to renters. Consequently, the state has not "fully and completely covered" the area or partially covered it "in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action." *Sherwin-*

United States District Court
Northern District of California

*Williams*, 4 Cal. 4th at 898; *IT Corp. v. Solano Cnty. Bd. of Supervisors*, 1 Cal. 4th 81, 94 (1991) (there is no implied preemption "when the statutory scheme recognizes local regulations").

The plaintiffs also do not establish that "the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality." *Sherwin-Williams*, 4 Cal. 4th at 898. There is no basis to conclude that an eviction moratorium governing housing in certain municipalities would have a significant effect on transient citizens or an effect that would outweigh the local impact. *See Roble Vista Assocs. v. Bacon*, 97 Cal. App. 4th 335, 342 (2002) (holding that local ordinance governing lease agreement "would not have any effect on transient citizens, much less an effect that outweighs the local benefit to be derived from the stability it will offer to tenants").

Thus, the state's COVID-19 housing legislation does not preempt the moratoria in this case.

### 5.3   Ellis Act Preemption

The Ellis Act provides that no statute, ordinance, or regulation "shall . . . compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." Cal. Gov't Code § 7060(a). The moratoria in this case have exceptions for evictions under the Ellis Act.[73] Oakland, Cal., Mun. Code ch. 8, art. II, § 8.22.360A(11) (2022) (governing Ellis Act evictions); Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(F)(3) (2020).

The *California Apartment* plaintiffs nonetheless contend that there is no effective Ellis Act exception in the County ordinance, which has a more limited moratorium on evictions based on a "loss of income, substantial out-of-pocket medical expenses, or extraordinary child care needs . . . caused by COVID-19" that provides a defense to unlawful-detainer actions due to a "failure to timely make rent . . . payments." Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.040(A), (D) (2020). This section does not include an explicit Ellis Act exemption. The plaintiffs contend that because § 6.120.030 already applies to "all evictions" — including those based on nonpayment —

---

[73] Oakland, Cal., Ordinance 13606 C.M.S. (July 21, 2020), Ex. E, Pls.' Req. for Jud. Notice – ECF No. 62 at 122 (sec. 3) (excepting Oakland, Cal., Mun. Code § 8.22.360A(11), which governs Ellis Act evictions, from the category of unlawful-detainer actions subject to the COVID-19 moratorium defense).

United States District Court
Northern District of California

1    the only purpose of § 6.120.040 could be "to provide a subset of evictions to which the exceptions

2    *do not* apply."[74] This argument does not support summary judgment.

3        The plaintiffs' interpretation would require ignoring § 6.120.040(B), which states that "[n]o

4    landlord or lender may evict an affected resident . . . *for nonpayment of rent*," and § 6.120.040(D),

5    which states that "[i]t shall be an absolute defense to any unlawful detainer action against an

6    affected resident based on a *failure to timely make rent or mortgage payments*." *Id.* §§

7    6.120.040(B), (D) (emphases added). The plain language of § 6.120.040 establishes that it applies

8    only to evictions based on nonpayment of rent due to the COVID-19-related causes identified in

9    § 6.120.040(A) and not to Ellis Act evictions. The plaintiffs' interpretation ignores that limiting

10   language. By contrast, the County's interpretation is consistent with the court's analysis and gives

11   effect to § 6.120.040(A). *Duncan v. Walker*, 533 U.S. 167, 167 (2001) ("This Court's duty to give

12   effect, where possible, to every word of a statute . . . makes the Court reluctant to treat statutory

13   terms as surplusage.").

14       In sum, the County's ordinance does not conflict with the Ellis Act.

15

16   **6.   Unlawful Amendment of the City's Just-Cause Ordinance**

17       The *Williams* plaintiffs contend that both moratoria violate the California Elections Code, and the

18   County's moratorium violates the California Constitution, by unlawfully amending Oakland's just-

19   cause ordinance.[75] The court denies summary judgment on these theories.

20       First, as to the City's moratorium, the plaintiffs contend that voters enacted the City's just-

21   cause-for-eviction ordinance and permitted the city council to add "limitations" on a landlord's

22   right to evict. The moratorium goes too far, in their view, because it is a ban on evictions and

23   violates the California Elections Code.[76] The Code provides that "[n]o ordinance that is either

24   proposed by initiative petition and adopted by the vote of the legislative body of the city without

25

26

----

27   [74] Reply – ECF No. 36 (Case No. 22-cv-02705-LB) at 8–9.

     [75] Mot. – ECF No. 61 at 29–31.

28   [76] *Id.*

United States District Court
Northern District of California

submission to the voters, or adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance." Cal. Elec. Code § 9217. But the moratorium does not improperly repeal or amend the City's just-cause ordinance because the City Council's amendment falls within the authority that the voters delegated to the Council.

The City's voter-enacted law expressly allowed the city council "to modify the Just Cause for Eviction Ordinance . . . for the purpose of adding limitations on a landlord's right to evict[.]"[77] The plaintiffs assert that the authority to enact "limitations" does not constitute authority "to completely *ban* virtually all evictions for an open-ended period of time."[78] This argument is not persuasive because the City's moratorium is not without exceptions and cannot be fairly characterized as a permanent "ban." Though the moratorium is harsh, it plainly falls within the definition of a "limitation" on a landlord's right to evict.

Second, as to the County's moratorium, the County enacted it under Cal. Gov't Code § 8630, which provides that "[a] local emergency may be proclaimed only by the governing body of a city, county, or city and county, or by an official designated by ordinance adopted by that governing body."[79] The law gives counties the authority to enact emergency provisions like the moratorium. The parties agree that laws enacted under this section apply to cities and unincorporated areas within a county.[80]

Nonetheless, the plaintiffs contend that the County's moratorium violates California law by conflicting with the City's moratorium. Their authorities do not establish that point. They cite

---

[77] Oakland, Cal., Measure Y, Ex. M to Pls.' Req. for Jud. Notice – ECF No. 62 at 237 (adding § 8.22.360F allowing the city council to modify the "Just Cause for Eviction Ordinance (Measure EE [O.M.C., Chapter 8, Article 11 (8.22.300, *et seq.*)]) for the purpose of adding imitations on a landlord's right to evict[.]"); *see* Oakland, Cal., Ordinance 87325 C.M.S. (July 24, 2018), https://library.municode.com/ca/oakland/ordinances/code_of_ordinances?nodeId=930536.

[78] Mot. – ECF No. 61 at 30.

[79] Alameda Cnty., Cal., Ordinance O-2020-23 (Apr. 21, 2020), Ex. 15, Pls.' Req. for Jud. Notice – ECF No. 24 (Case No. 22-cv-02705-LB) at 185 (¶ 24).

[80] Mot. – ECF No. 61 at 30 ("It is undisputed that the [County]'s moratorium applies to the [City]."); Opp'n – ECF No. 75 at 45 ("A county's local emergency proclamation and emergency regulations apply to both cities and unincorporated areas within a county. 62 Cal. Op. Att'y Gen. 701 (1979).").

Article II, Section 10, of the California Constitution, but it applies to the enactment of statewide laws. *See Howard Jarvis Taxpayers Ass'n v. City of Roseville*, 106 Cal. App. 4th 1178, 1188 (2003) (observing that Article II, Section 10, of the California Constitution is applicable to statewide elections). They also cite California Elections Code § 9217, but it applies to cities, not counties.[81] *People v. Kelly*, 47 Cal. 4th 1008, 1034 n.35 (2010) (observing that California Elections Code § 9125 governs county initiatives and that § 9217 governs city initiatives). In any event, the moratoria are not substantially different. Thus, the County's moratorium would not violate California Elections Code § 9217 — even if that section applied to the County — for the same reason the City's moratorium does not violate § 9217.

Finally, the plaintiffs argue in their reply brief that the County has generally exceeded the scope of its authority by failing to end the emergency.[82] They contend that the County's moratorium is unlawful under Cal. Gov't Code § 8630(d), which requires "the termination of the local emergency at the earliest possible date that conditions warrant," because the County has not yet ended the emergency.[83] The argument is not persuasive because it depends on issues concerning the state of the COVID-19 pandemic that are beyond the scope of the plaintiffs' facial challenge. And to the extent the state legislature ever further restricts a county's ability to declare emergencies under § 8630 or specifically limits the length of emergencies, the County's moratorium includes an exception for evictions required "to comply with an order issued by a government agency or court." Alameda Cnty., Cal., Mun. Code ch. 6, § 6.120.030(F) (2020).

The court denies summary judgment on the claims that the City and County violated the California Constitution or California Elections Code by enacting the eviction moratoria.

---

[81] Mot. – ECF No. 61 at 29.

[82] Reply – ECF No. 89 at 30–31.

[83] *Id.* at 30.

1

## CONCLUSION

2    The court denies the plaintiffs' motions for summary judgment on their facial challenges to the

3    eviction moratoria.

4    **IT IS SO ORDERED.**

5    Dated: November 22, 2022

6

7    _____

8    LAUREL BEELER
     United States Magistrate Judge

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28