1   ANDREW M. ZACKS (SBN 147794)
    EMILY L. BROUGH (SBN 284943)
2   ZACKS, FREEDMAN & PATTERSON, PC
3   1970 Broadway, Suite 1270
    Oakland, CA 94612
4   Tel: (510) 469-0555
    az@zfplaw.com
5   emily@zpflaw.com

6   PACIFIC LEGAL FOUNDATION
7   JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)
    3100 Clarendon Blvd., Suite 1000
8   Arlington, VA 22201
    BRIAN T. HODGES (Wash. Bar No. 31976)
9   SAM SPIEGELMAN (N.Y. Bar No. 5573100)
    255 South King Street, Suite 800
10  Seattle, WA 98104
11  Telephone: (916) 419-7111
    JHoughton@pacificlegal.org
12  BHodges@pacificlegal.org
13  SSpiegelman@pacificlegal.org

14  *Attorneys for Plaintiffs and Petitioners John Williams, et al.*

15                  **UNITED STATES DISTRICT COURT**
16                **NORTHERN DISTRICT OF CALIFORNIA**

17  JOHN WILLIAMS, ROBERT VOGEL, SHEANNA          ) Case No.: 3:22-cv-01274-LB
    ROGERS, MICHAEL LOEB, JACQUELINE              ) (Related Case No: 3:22-cv-02705-LB)
18  WATSON-BAKER, and HOUSING PROVIDERS          )
19  OF AMERICA, a 501(c)(4) non-profit Corporation, )
                                                  ) **PLAINTIFFS' AND PETITIONERS'**
20              Plaintiffs and Petitioners,       ) **NOTICE OF MOTION AND**
                                                  ) **MOTION TO CERTIFY THE**
21      v.                                        ) **INTERLOCUTORY DECISION**
                                                  ) **FOR APPEAL AND FOR A STAY**
22  ALAMEDA COUNTY, ALAMEDA COUNTY               )
    BOARD OF SUPERVISORS, CITY OF                 ) Date: February 2, 2023
23  OAKLAND, OAKLAND CITY COUNCIL and            ) Time: 9:30 a.m.
    DOES 1-10,                                    ) Courtroom: B
24              Defendants and Respondents        ) Judge: Hon. Laurel Beeler
                                                  )
25  ALLIANCE OF CALIFORNIANS FOR                 ) Action Filed: March 1, 2022
26  COMMUNITY EMPOWERMENT ACTION,                ) Trial Date:    None set
                Defendant-Intervenor.             )
27
28

**Table of Contents**

NOTICE AND MOTION.................................................................................................7

MEMORANDUM .........................................................................................................9

I.    Introduction.......................................................................................................9

II.   Legal Standard ................................................................................................11

III.  Certified Question(s).......................................................................................12

IV.   Brief Statement of Facts and Procedural Posture ........................................12

V.    Argument .........................................................................................................14

   A.   There Are Controlling Issues of Law..............................................................14

   B.   There Are Substantial Grounds for Differences of Opinion ..........................15

      1.   There is Substantial Ground for a Difference of Opinion on Whether the Moratoria
           Constitute Unconstitutional Physical Takings……………………………………16

      2.   There is Substantial Ground for a Difference of Opinion on Whether the Moratoria
           Impair
           Contracts……………………………………………………………………….22

      3.   There is Substantial Ground for a Difference of Opinion on Whether the Moratoria
           Violate Procedural Due Process…………………………………………… 23

      4.   There is Substantial Ground for a Difference of Opinion on Whether the Moratoria
           Violate State Law………………………………………………………….... 23

         a.   The California Tenant Relief and Rental Housing Relief Acts……………………… 23

         b.   California Election Law………………………………………………………… 24

   C.   It Will Materially Advance the Litigation...................................................24

   D.   A Stay Should be Granted Pending the Ninth Circuit Determination .........................27

VI.   Conclusion......................................................................................................29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Table of Authorities**

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674 (7th Cir. 2000) .........................15

*Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485 (2021) .......................................17, 18

*Alfred v. Walt Disney Pictures*,

   No. CV 18-8074-CBM(ASX), 2022 WL 1580807 (C.D. Cal. Mar. 2, 2022)..........................25

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978)....................................................15

*Apartment Ass'n of L.A. Cnty., Inc. v. City of L.A.*,

   500 F. Supp. 3d 1088 (C.D. Cal. 2020)........................................................................................22

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*,

   10 F.4th 905 (9th Cir. 2021) .........................................................................................................10

*Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983).........................................................11

*Arizona v. U.S. Dist. Ct. for the Dist. of Arizona*, 459 U.S. 961 (1982) ..................................11

*Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012) ..................................18

*Asis Internet Servs. v. Active Response Grp.*,

   No. C07 6211 TEH, 2008 WL 4279695 (N.D. Cal. Sept. 16, 2008)......................................28

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,

   634 F. Supp. 2d 1081 (E.D. Cal. 2008).......................................................................................29

*Associated Home Builders etc., Inc. v. City of Livermore*, 18 Cal.3d 582 (1976).......................24

*Attison v. Whiting Door Mfg. Corp.*,

   No. EDCV 20-12 JGB (KKX), 2021 WL 5242919 (C.D. Cal. Sept. 16, 2021).....................17

*Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass. 2020)........................................................22

*Beck v. Piatt*, 24 Cal.App.3d 611 (1972)......................................................................................15

*Beeman v. Anthem Prescription Mgmt., Inc.*,

   No. EDCV 04-407-VAP SGLX, 2007 WL 8433884 (C.D. Cal. Aug. 2, 2007).....................25

*Big Creek Lumber Co. v. Cty. of Santa Cruz,* 38 Cal.4th 1139 (2006)......................................24

*Birkenfeld v. City of Berkeley,* 17 Cal.3d 129 (1976) ...............................................................23

*Bowen v. Target Corp.*,

No. CV162587JGBMRWX, 2021 WL 4860689 (C.D. Cal. Sept. 17, 2021)............................18

*Brickman v. Facebook, Inc.*,

No. 16-CV-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ...................................18

*Brown v. Papa Murphy's Holdings Inc.*,

No. 3-19-CV-05514-BHS-JRC, 2021 WL 4067462 (W.D. Wash. June 9, 2021)....................28

*Cal. Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129 (E.D. Cal. 2011) ..............................15

*Casas v. Victoria's Secret Stores, LLC*,

No. 14-6412, 2015 WL 13446989 (C.D. Cal. Apr. 9, 2015)..................................................26

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021)........................................... 17, 18, 20, 21

*Chrysafis v. Marks*, 141 S. Ct. 2482 (2021) ........................................................................ 10, 23

*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015).................................................................15

*City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353 (S.D.N.Y. 2000)...............15

*Cleveland v. Cleveland C. R. Co.*, 194 U.S. 517 (1904) ................................................................15

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ........................................................ 16, 17

*County of Madera v. Superior Court*, 39 Cal.App.3d 665 (1974)................................................15

*Cox Cable San Diego, Inc. v. City of San Diego*, 188 Cal.App.3d 952 (1987) ..............................10

*F.C.C. v. Fla. Power Corp.*, 480 U.S. 245 (1987)........................................................................21

*Farhoud v. Brown*, 2022 U.S. Dist. LEXIS 20033 (D. Or. Feb. 3, 2022)..................................22

*FERC v. Vitol Inc.*,

No. 2:20-CV-00040-KJM-AC, 2022 WL 583998 (E.D. Cal. Feb. 25, 2022) ..........................14

*Filtrol Corp. v. Kelleher*, 467 F.2d 242 (9th Cir. 1972) ...............................................................28

*First English Evangelical Lutheran Church of Glendale v. Los Angeles County*,

482 U.S. 304 (1987)..............................................................................................................18

*Gutierrez v. Solano*, 862 F. Supp. 2d 1037 (C.D. Cal. 2012)....................................................16

*Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022) ..................................... 9, 10, 17

*Henley v. Jacobs*, No. C 18-2244 SBA, 2019 WL 8333448 (N.D. Cal. Oct. 25, 2019)..............14

*Hewitt v. Joyner*, 940 F.2d 1561 (9th Cir. 1991)........................................................................15

*Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) ....................................................10

*Horne v. Dep't of Agric.*, 576 U.S. 350 (2015) .................................................................19, 20

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,

   22 F.4th 1125 (9th Cir. 2022) ...................................................................................14, 25

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,

   No. 5:21-CV-02777-EJD, 2022 WL 4009918 (N.D. Cal. Sept. 2, 2022) ..........................17, 26

*In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020 (9th Cir. 1981)......................11, 14

*John v. United States*, 247 F.3d 1032 (9th Cir. 2001).............................................................25

*Kotrous v. Goss-Jewett Co. of N. California*,

   No. CIV.S021520 FCD JFM, 2005 WL 2452606 (E.D. Cal. Oct. 4, 2005) ...........................28

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005)...............................................................19

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) .................. 17, 19, 20, 21

*McShannock v. JP Morgan Chase Bank N.A.*,

   No. 18-CV-01873-EMC, 2019 WL 955289 (N.D. Cal. Feb. 27, 2019)...................................28

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)................28

*Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*,

   No. CV 16-609-GW(FFMX), 2016 WL 10647193 (C.D. Cal. Dec. 12, 2016)........................26

*Parker v. Cnty. of Riverside*,

   No. EDCV211280JGBKKX, 2022 WL 2204146 (C.D. Cal. May 5, 2022) ...........................25

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)..............................................27

*Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) .............................................14, 16

*Ritz Camera & Image, LLC v. Sandisk Corp.*,

   No. 5:10-CV-02787-JF/HRL, 2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) ..........................28

*Steering Comm. v. United States*, 6 F.3d 572 (9th Cir. 1993) ....................................................14

*Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019)...................11, 25

*Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 (1995)...............................................................11

Tahoe-Sierra Preservation Council, 535 U.S. 302 (2002).....................................................19, 20

*United States ex rel. Atlas Copco Compressors LLC v. Rwt LLC*,

   No. CV 16-00215 ACK-KJM, 2017 WL 2986586 (D. Haw. July 13, 2017)...........................28

*United States v. Causby*, 328 U.S. 256 (1946) ..........................................................20

*United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959).................................. 14, 25

*W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935)................................................22

*Warm v. Innermost Ltd.*,

    No. CV214402MWFSHKX, 2022 WL 3449812 (C.D. Cal. June 13, 2022)..........................24

*Watson v. Yolo Cnty. Flood Control & Water Conservation Dist.*,

    No. 2:06-CV-1549FCDDAD, 2007 WL 4107539 (E.D. Cal. Nov. 16, 2007)........................28

*Williams v. Alameda Cnty.*,

    No. 3:22-CV-01274-LB, 2022 WL 17169833 (N.D. Cal. Nov. 22, 2022) ............ 17, 18, 19, 21

*Yee v. Escondido,* 503 U.S. 519 (1992)..........................................................17

*Youssofi v. Credit One Fin.*,

    No. 15-CV-1764-AJB-RBB, 2016 WL 6395086 (S.D. Cal. Oct. 28, 2016)......................16, 27

**Statutes**

28 U.S.C. § 1292(b) ..........................................................................9, 11

Cal. Civ. Code § 801 ...........................................................................20

Cal. Civ. Code § 802 ...........................................................................20

Cal. Civ. Proc. Code § 1179.03.5(a)(3) ..........................................................23

Cal. Civ. Proc. Code § 1179.11(a) ..............................................................23

Cal. Civ. Proc. Code. § 1179.05 (e) ............................................................24

Cal. Gov. Code § 8690..........................................................................24

**Other Authorities**

Cal. Elec. Code § 9217.........................................................................24

Cal. Elec. Code § 9125.........................................................................24

1

**NOTICE AND MOTION**

2      Plaintiffs and Petitioners in this case, JOHN WILLIAMS, ROBERT VOGEL, SHEANNA

3   RODGERS, MICHAEL LOEB, JACQUELINE WATSON-BAKER and HOUSING

4   PROVIDERS OF AMERICA (the "*Williams* Plaintiffs"), and Plaintiffs and Petitioners in the

5   related case, 3:22-cv-02705, the CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN,

6   RAKESH and TRIPTI JAIN, ALISON MITCHELL, MICHAEL HAGERTY, and H. ALEX and

7   DANNIE ALVAREZ (the "*CAA* Plaintiffs"; all plaintiffs collectively are "Plaintiffs") will and do

8   hereby move the Court to certify the Court's Interlocutory Order Denying Summary Judgment,

9   dated November 22, 2022, for appeal to the Ninth Circuit Court of Appeals pursuant to 28 U.S.C.

10  § 1292(b) and for a stay of the proceedings herein until the Ninth Circuit so decides the issues.

11  This motion will be heard at February 2, 2023 at 9:30 am, by the Honorable Laurel Beeler in the

12  Northern District of California, San Francisco Courthouse, Courtroom B – 15th Floor, 450 Golden

13  Gate Avenue, San Francisco, CA 94102.

14      This motion is made pursuant to 28 USC § 1292(b) and is based on the Memorandum set

15  forth below and the Authorities and Documents cited therein.

16  Dated: December 29, 2022

17  ZACKS, FREEDMAN & PATTERSON,        PACIFIC LEGAL FOUNDATION
    PC
18    */s/ Emily L. Brough*                */s/ Jonathan M. Houghton*
19  ANDREW M. ZACKS (SBN 147794)         JONATHAN M. HOUGHTON
    EMILY L. BROUGH (SBN 284943)         (N.J. Bar No. 369652021)
20  1970 Broadway, Suite 1270            3100 Clarendon Blvd., Suite 1000
    Oakland, CA 94612                    Arlington, VA 22201
21  Tel: (510) 469-0555                  BRIAN T. HODGES (Wash. Bar No. 31976)
    az@zfplaw.com                        SAM SPIEGELMAN
22  emily@zpflaw.com                     (N.Y. Bar No. 5573100)
                                         255 South King Street, Suite 800
23                                       Seattle, WA 98104
24                                       Telephone: (916) 419-7111
                                         JHoughton@pacificlegal.org
25                                       BHodges@pacificlegal.org
26                                       SSpiegelman@pacificlegal.org

27      Attorneys for Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA
28      ROGERS, MICHAEL LOEB, JACQUELINE WATSON-BAKER, and HOUSING
                        PROVIDERS OF AMERICA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI LLP

*/s/  Christopher E. Skinnell*
Christopher E. Skinnell, Esq. (S.B. No. 227093)
Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94941
Telephone: (415) 389-6800
Facsimile: (415) 388-6874
cskinnell@nmgovlaw.com
hgibson@nmgovlaw.com
Attorneys for Plaintiffs and Petitioners
CALIFORNIA APARTMENT ASSOCIATION
STEPHEN LIN
RAKESH and TRIPTI JAIN
ALISON MITCHELL
MICHAEL HAGERTY
H. ALEX and DANNIE ALVAREZ

# MEMORANDUM

## I.   Introduction

This Court should certify for immediate appeal to the Ninth Circuit Court of Appeals the issues of whether the Defendants' eviction bans (1) are an unconstitutional physical taking contrary to the Fifth Amendment; (2) unconstitutionally impair contracts in violation of the Fifth Amendment, (3) violate procedural due process under the Fourteen Amendment; and (4) violate and/or are preempted by California law. In accordance with 28 U.S.C. § 1292(b), these are controlling questions of law as to which there are substantial grounds for differences of opinion and an immediate appeal may materially advance the ultimate termination of the litigation.

The eviction bans of Alameda County and the City of Oakland persist, now approaching three years since the start of the Covid-19 pandemic. Rental property owners continue to be burdened with tenants that can refuse to pay rent, violate the lease, and engage in criminal activity without fear of eviction. So long as the Defendants' eviction bans continue, additional claims from additional property owners may continue to accrue. And to that end, the counsel for Plaintiffs in both matters can represent that other rental property owners have contacted Plaintiffs' counsel and asked to join the instant lawsuit. Therefore, whether the eviction bans are unconstitutional and violate state law should be certified for immediate appeal to the Ninth Circuit to provide guidance and finality not just for this litigation but for potential future litigation as well.

First, the physical takings question is a controlling, novel issue of law that arose from rapidly enacted regulations. Whether a Covid eviction ban is an unconstitutional physical taking has yet to be decided by the Ninth Circuit, nor any other Circuit Courts, with the exception of the Eighth Circuit which ruled contrary to the determination here. *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 733 (8th Cir. 2022), *denying re-hearing and re-hearing en banc*, 39 F.4th 479. Given that different courts have arrived at different outcomes with respect to the application of competing Supreme Court doctrines (*Yee v. Escondido* versus *Cedar Point Nursery v. Hadid* and *Loretto v. Teleprompter Manhattan CATV Corp.*), it is self-evident that reasonable jurists could disagree.

The Eighth Circuit's opinion in *Heights Apartments* also demonstrates that there is a controlling issue of law over which reasonable jurists could differ as to whether the ongoing,

indefinite moratoria unconstitutionally impair contracts. That case held, contrary to this Court's ruling, that an indefinite, ongoing eviction moratorium with no end-date substantially impairs contracts and that it is not "reasonably tailored" to a legitimate government purpose. *Id.* at 727-31. And the Ninth Circuit's decision in *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905 (9th Cir. 2021), which upheld an early version of Los Angeles's moratorium and on which this Court's ruling relies, addressed a different law in a far different setting, and that very decision recognized that "[e]very case must be determined upon its own circumstances," *id.* at 916 (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 430 (1934)).

Third, there is a controlling question of law as to whether the moratoria facially violate housing providers' due process rights under the Fourteenth Amendment. The regulations impose "absolute defenses" to eviction like the regulation held unlawful by the Supreme Court in *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021). As the Court held, allowing renters to be the judges in their own cases, as the moratoria do here, violates housing providers' right to a hearing under the due process clause.

Fourth, reasonable jurists could differ on whether the moratoria violate state law. Oakland's Just Cause for Eviction regulations were enacted by the will of Oakland's voters, and the moratoria unlawfully amend that voter initiative in violation of the California Election Code, notwithstanding Defendants' reliance on the California Emergency Services Act. Finally, while the state has enacted a careful and balanced scheme for Covid-19 related evictions under the California Tenant Relief Act and Rental Housing Recovery Act, and to which those Acts have expressly provided are a matter of statewide concern, the moratoria expressly prohibit what the Acts permit by allowing even the wealthiest of renters to avoid eviction for non-payment, or for almost any reason at all. This controlling question of preemption law presents matters in which reasonable minds could disagree. *Cox Cable San Diego, Inc. v. City of San Diego*, 188 Cal. App. 3d 952, 962 (1987) ("Any fair, reasonable and substantial doubt whether a matter is a municipal affair or broader state concern must be resolved in favor of the legislative authority of the state").

This case is also an early stage of litigation. So far, no discovery has been conducted. And should the case proceed forward, it is anticipated that additional rental property owners may be

added as plaintiffs. But should certification be granted and should the Ninth Circuit follow the Eighth Circuit's decision in *Heights Apartments* and reverse this Court's determination on the takings question and/or the impairment question, the liability issue with respect to Counts I and II of the *Williams* Plaintiffs' Complaint and Counts I and III of the *CAA* Plaintiffs' Complaint will be resolved. Discovery may be substantially reduced and either way, a final determination on this controlling legal issue could allow for productive settlement discussions and a significantly shortened litigation. A final determination by the Ninth Circuit as to whether the Supreme Court's reasoning in *Yee* is the correct one to apply or instead, it is the Supreme Court's reasoning in *Loretto* and *Cedar Point*, will provide both the parties and the Court with certainty so that this matter can move forward without waste of time, cost, or resources. Similarly, reversal of the impairment, due process and/or state law issues would have a significant potential of the same.

Considering the above, whether the Defendants' continuing eviction bans are unconstitutional and/or violate state law should be resolved now by the Ninth Circuit. This Court should also stay the proceedings in this matter until the issue is decided.

## II.   <u>Legal Standard</u>

An interlocutory order may be certified for appeal to the Ninth Circuit Court of Appeals if the district court determines that "such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981), cause dismissed sub nom. *Arizona v. U.S. Dist. Ct. for the Dist. of Arizona*, 459 U.S. 961 (1982), and aff'd sub nom. *Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983)

The decision to certify an issue for interlocutory appeal is discretionary, *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) and properly exercised for "exceptional circumstances [which] justify a departure from the well-established policy of postponing appellate review until after a final judgment." *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019).

### III.   Certified Question(s)

(1)     Are the eviction bans enacted by the County of Alameda and the City of Oakland in response to the Covid-19 pandemic are a categorical physical taking contrary to the Fifth Amendment?

(2)     Do the eviction bans facially impair lease agreements in violation of the Fifth Amendment?

(3)     Do the eviction bans facially violate procedural due process under the Fourteenth amendment?

(4)     Are the eviction bans preempted by the California Tenant Relief and Rental Housing Relief Acts?

(5)     Do the evictions bans violate the California Election Code?

### IV.   Brief Statement of Facts and Procedural Posture

This case pertains to, inter alia, constitutional and state law challenges to the blanket eviction moratoria imposed by Defendants Alameda County and the City of Oakland in early 2020 in response to the COVID -19 pandemic. Still ongoing, and with no end in sight, the Defendants' eviction bans prohibit most all evictions in Alameda County and the City of Oakland.

Plaintiffs allege that the eviction bans are an unconstitutional physical taking and contrary to the Fifth Amendment. (Docket No. 1). The moratoria vested the right to possess and exclude in Defendants, who, in turn, then gave possession to all occupants of rental property regardless of any other facts and circumstances. Irrespective of whether the occupant pays rents, abides by the material terms of the lease, destroys the premises, or engages in criminal activity, the occupant is entitled to physically possess the rental property and to exclude the owner for an indefinite period of time. Housing providers have been left to bear the full cost of this governmental choice.

The *CAA* Plaintiffs further allege that the moratoria substantially—indeed, severely—impair lease agreements in Alameda County, and that at this point, three years later when virtually all other pandemic-era restrictions have been lifted, the continued maintenance of the moratorium is not reasonably tailored to a legitimate governmental interest.

---

The *Williams* Plaintiffs further allege the eviction bans are preempted by the California Tenant Relief and Rental Housing Relief Acts because they conflict with those general laws. By banning virtually all just cause bases for eviction, and even notwithstanding a renters' failure to participate in the State law rent relief programs, the moratoria "mandate what state law expressly forbids, [and] forbid what state law expressly mandates." The eviction bans also violate the California Election Code, in that they unlawfully amend Oakland's voter enacted Just Cause for Eviction Ordinance. Finally, Plaintiffs allege that the eviction bans violate procedural due process under the Fourteen Amendment in that the moratoria's "absolute defense" to virtually any eviction proceeding permits a renter to remain in a housing provider's property, and the housing provider doesn't get to challenge that determination.

As a result of the above, on March 1, 2022, the *Williams* Plaintiffs filed their Summons and Complaint. (Docket No. 1). The Complaint was Answered by Defendant Alameda County (Docket No. 16) and Defendant City of Oakland (Docket No. 21). On April 28, 2022, the Alliance for Californians for Community Empowerment Action intervened (Docket No. 28) and said party also filed an Answer. (Docket No. 37). On April 26, 2022, the *Williams* Plaintiffs moved to bifurcate their facial constitutional claims and petition for writ of mandate from their as-applied claims, which was granted on June 2, 2022. (Docket Nos 23 and 47.) On May 17, 2022, the case was related to CAA. (Docket Nos. 44 and 45). The Complaint in that case was filed on May 5, 2022, and the County answered the complaint on June 7. (Docket No 18).

By Notices of Motion dated July 18, 2022, both the *Williams* and the *CAA* Plaintiffs sought summary judgment with respect to the bifurcated claims. (Docket Nos. 61 [*Williams*] and 25 [*CAA*]). The motions were opposed by Defendants. (Docket Nos. 71 and 75 [*Williams*] and 32 [*CAA*]) and the Intervenor (Docket No. 81 [*Williams*]). Oral argument was held on September 29, 2022. (Docket Nos. 92 [*Williams*] and 40 [*CAA*]). On November 22, 2022, this Court issued an Order denying Plaintiffs' motions for Summary Judgment on the bifurcated claims. (Docket No. 96 [*Williams*] and 43 [*CAA*])

To date, no discovery has been conducted by any party.

//

1

## V.   **Argument**

2        The District Court's denial of summary judgment should be certified for review by the

3   Ninth Circuit. The issues present controlling questions of law as to which there are substantial

4   grounds for differences of opinion and an immediate appeal from the order may materially advance

5   the ultimate termination of the litigation.

6            ### A.   **There Are Controlling Issues of Law**

7        A controlling issue of law is one where the "resolution of the issue on appeal could materially

8   affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at

9   1026. But at the same time, the "controlling question of law need not be dispositive of the lawsuit."

10  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *United States v. Woodbury*,

11  263 F.2d 784, 787 (9th Cir. 1959). "Otherwise, the third prong of section 1292(b), which addresses

12  whether an appeal would 'materially advance the ultimate termination of the litigation,' would be

13  superfluous." *FERC v. Vitol Inc.*, No. 2:20-CV-00040-KJM-AC, 2022 WL 583998, at *2 (E.D.

14  Cal. Feb. 25, 2022), citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

15       A controlling issue of law is just that—a question of law; it is not a dispute of fact. *ICTSI*

16  *Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022); *Henley*

17  *v. Jacobs*, No. C 18-2244 SBA, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) ("a purely

18  legal [issue] that can be resolved quickly without delving into a particular case's facts"), citing

19  *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993).

20       In this case, whether the Defendants' eviction bans are an unconstitutional physical taking

21  is a controlling issue of law. It is a question of law, not of fact, and its resolution will materially

22  affect the outcome of this matter. Should the Ninth Circuit reverse this Court's determination and

23  grant summary judgment, it would resolve the liability determination for Counts I and II of the

24  Plaintiffs' Complaint, pertaining to the physical taking, the *Penn Central* taking,[1] and the related

25  California constitutional challenges. Although the Plaintiffs' motion for summary judgment only

26  pertained to the facial physical takings claim, the Defendants may argue that the import of this

27

28  ---
[1] Whether the eviction bans are a physical taking under *Cedar Point* or a regulatory taking under
*Penn Central*, the remedy is same, i.e., just compensation.

Court's denial also applies to the Plaintiffs' as applied physical takings claim. If so construed, then certification of this issue to the Ninth Circuit would also be controlling of that claim as well.

The question of whether the moratoria facially impair lease agreements is a controlling question of law as well. Should the Ninth Circuit reverse this Court's determination and grant summary judgment, it would resolve the liability determination for Count IV of the *CAA* Plaintiffs' Complaint, and because a favorable ruling would entitle the Plaintiffs to an injunction against further enforcement of the moratorium,[2] it would materially affect the resolution of any damages issues that would remain to be resolved on other claims.

Likewise, the question of whether the moratoria facially violate due process under the Fourteenth Amendment is a controlling question of law. *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 360 (S.D.N.Y. 2000); *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015) ("A facial challenge is an attack on a statute itself as opposed to a particular application."). So are whether the eviction bans violate, or are preempted by, state statutes. *County of Madera v. Superior Court*, 39 Cal. App. 3d 665, 674 n.7 (1974) (The interpretation of an ordinance is a question of law for the judge.); *Beck v. Piatt*, 24 Cal. App. 3d 611, 615 (1972) (same). Should the Ninth Circuit find that the moratoria are facially invalid on the state law bases, it may avoid the need to determine the constitutional facial claims altogether. *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991).

In light of the above, there is no need to wait until the end of the case to resolve controlling legal issues that can be decided now. As Justice Posner recited, "the idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000).

## B.  There Are Substantial Grounds for Differences of Opinion

With respect to the second factor of § 1292(b), the Ninth Circuit has stated it to be as follows:

---

[2] *See, e.g.*, *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 239-40 (1978); *Cleveland v. Cleveland C. R. Co.*, 194 U.S. 517, 531 (1904); *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129 (E.D. Cal. 2011) (enjoining state statute that threatened to impair Medi-Cal contracts).

> To determine if a substantial ground for difference of opinion exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.

*Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (cleaned up). A direct conflict of decisions is not required. Rather, the guiding principle of this factor is whether reasonable jurists could differ on the outcome. As the Ninth Circuit further explained,

> A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.

*Reese*, 643 F.3d at 688.

## 1. <u>There is Substantial Ground for a Difference of Opinion on Whether the Moratoria Constitute Unconstitutional Physical Takings</u>

Whether or not the Defendants' eviction bans are an unconstitutional physical taking contrary to the Fifth Amendment is a legal determination on which reasonable jurists could disagree. First, it is a novel issue; the product of newly created regulations that were enacted in response to an unanticipated public health pandemic. While certain district courts have addressed physical takings and Covid eviction bans, the sole Circuit Court to address this specific issue was the Eighth Circuit, and that was in the context of an FRCP 12(b)(6) motion, not summary judgment. The Ninth Circuit has yet to decide whether a Covid eviction ban is a physical taking. *See Youssofi v. Credit One Fin.*, No. 15-CV-1764-AJB-RBB, 2016 WL 6395086, at *4 (S.D. Cal. Oct. 28, 2016) ("fair-minded jurists might reach contradictory conclusions. The Ninth Circuit should be permitted the opportunity to debate this issue in the first instance"); *Gutierrez v. Solano*,

862 F. Supp. 2d 1037, 1041 (C.D. Cal. 2012) ("this issue has not yet been definitively resolved in the Ninth Circuit").

Second, the outcome here depends on which distinct Supreme Court case a reasonable jurist chooses to follow. If the jurist chooses *Yee v. Escondido,* 503 U.S. 519 (1992), the result favors the tenant. Alternatively, if the jurist chooses *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), the result favors the property owner.

This Court followed *Yee* and ruled in favor of the tenant. *Williams v. Alameda Cnty.*, No. 3:22-CV-01274-LB, 2022 WL 17169833, at *12 (N.D. Cal. Nov. 22, 2022).  But the Eighth Circuit followed *Cedar Point* and ruled in favor of the property owner. *Heights Apartments,* 30 F.4th at 733 ("*Cedar Point Nursery* controls here and *Yee*, which the [Government] Defendants rely on, is distinguishable").[3] Arguably, so did the Supreme Court. In invalidating the CDC's eviction ban, the Court omitted any discussion of *Yee* when stating that "preventing [owners] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (per curiam) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). Instead, it cited *Loretto* which was a forebearer of *Cedar Point*.

Accordingly, reasonable jurists could disagree about whether a claim that a Covid eviction moratorium is a physical taking is controlled by *Yee* or, alternatively, by *Cedar Point Nursery*. It is not about whether this court is right and the Eighth Circuit is wrong, or vice versa. Unless the Eighth Circuit's decision in *Heights Apartments* (and arguably, the Supreme Court's statement in *Alabama Assoc.*), were patently <u>unreasonable</u>, the second factor of § 1292(b) is satisfied. *See, e.g.*, *Couch*, 611 F.3d at 634 ("identification of a sufficient number of conflicting and contradictory opinions would provide substantial ground for disagreement"); *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, No. 5:21-CV-02777-EJD, 2022 WL 4009918, at *18 (N.D. Cal. Sept. 2, 2022) ("While the Court believes it has followed the Ninth Circuit's precedent on this complicated question, the Court finds that reasonable minds could differ as to the outcome of this

---

[3] For the purposes here, it is irrelevant that the *Heights Apartments* decision derived from a motion to dismiss. Either *Yee* applies to physical takings cases, or it doesn't; and the answer to that question does not change based upon the procedural posture.

case."); *Attison v. Whiting Door Mfg. Corp.*, No. EDCV 20-12 JGB (KKX), 2021 WL 5242919, at *4 (C.D. Cal. Sept. 16, 2021) ("Due to the different positions taken by other courts as to the applicable standard, the Court finds that there is substantial ground for difference of opinion as to this question."); *Brickman v. Facebook, Inc.*, No. 16-CV-00751-TEH, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) ("One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed.") (citation omitted).

Third, the reliance upon *Yee* also results in a decision that is at odds with other Supreme Court holdings. Because reasonable jurists could have determined differently with respect to this novel and legally complex issue, it weighs strongly in favor of granting certification. *See Bowen v. Target Corp.*, No. CV162587JGBMRWX, 2021 WL 4860689, at *3 (C.D. Cal. Sept. 17, 2021) (granting certification, in part, because the outcome turned upon "a legally difficult issue").

Overall, this Court's conclusion that the Defendants' Covid eviction moratoriums were not a physical taking of the Plaintiffs' right to exclude is at odds with *Alabama Assoc.*, 141 S. Ct. at 2489 ("preventing [owners] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude").

The four dispositive factors relied upon by this court are also those for which other reasonable jurists could disagree. The Court found that "the plaintiffs' taking arguments fail for several reasons. First, the challenged moratoria are not indefinite on their face because they last only as long as the local emergency." *Williams*, 2022 WL 17169833, at *9. But other jurists, specifically the Supreme Court, have held that a physical taking is unconstitutional whether it is indefinite or temporary. *Cedar Point Nursery*, 141 S. Ct. at 2074 ("[t]o begin with, we have held that a physical appropriation is a taking whether it is permanent or temporary...The duration of an appropriation—just like the size of an appropriation—bears only on the amount of compensation"); *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 33 (2012) ("[W]e have rejected the argument that government action must be permanent to qualify as a taking."); *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 318-19 (1987) ("These cases reflect the fact that temporary takings which, as here, deny a landowner

all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation") (citing cases).

Second, the Court relied upon the fact that the eviction bans do not relieve tenants of the obligation to pay rent. "Accordingly, even assuming that the moratoria were permanent on their face (which they are not), they would not deprive owners of 'all economically beneficial uses [of their property] in the name of the common good.' *Lucas*, 505 U.S. at 1019, 112 S.Ct. 2886." *Williams*, 2022 WL 17169833, at *10. Reasonable jurists may differ as to whether this factor should have any relevance to the physical taking determination. The Supreme Court has said the exact opposite of this Court: "[b]ut when there has been a physical appropriation, 'we do not ask . . . whether it deprives the owner of all economically valuable use' of the item taken." *Horne v. Dep't of Agric.*, 576 U.S. 350, 363 (2015) quoting *Tahoe-Sierra Preservation Council,* 535 U.S. 302, 323 (2002).

Consequently, Plaintiffs did not base their physical takings claim, or their motion for summary judgment, upon an allegation of the complete loss of economic use. (*See* Docket Nos. 1 and 61). In the context of a physical takings claim, any economic loss is legally irrelevant to the issue of liability. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005) ("a permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property—perhaps the most fundamental of all property interests."); *Loretto*, 458 U.S. at 434-35 ("In short, when the character of the governmental action is a permanent physical occupation of property, our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner."). Thus, because *Lucas* is not a physical takings case it was not cited in any of the parties' briefs, save for that of the Intervenor who referenced it only in passing (*c.f.* Docket Nos. 61, 71, 75 and 81), and reasonable jurists may disagree as to its relevance here.

As a further reason for the denial of summary judgment, this Court stated, "third, the ordinances' eviction prohibitions are subject to certain exceptions, including Ellis Act evictions." *Williams*, 2022 WL 17169833, at *10. Reasonable jurists may differ as to whether the property

owner's ability to leave the rental market obviates the government's physical taking. The Supreme Court specifically held to the contrary. In *Loretto*, the condemnor made the same argument, *i.e.,* that the physical taking was not a physical taking because the owner could negate the regulatory mandate by leaving the rental business. *Loretto*, 458 U.S. at 438-39  The Court explicitly disagreed stating that "it is true that the landlord could avoid the requirements of [the regulation] by ceasing to rent the building to tenants. But a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation…The right of a property owner to exclude a stranger's physical occupation of his land cannot be so easily manipulated." *Id.*, at 439, n. 17.  In other physical takings cases, the Court held similarly. *See Horne*, 576 U.S. at 365 ("The Government contends that the reserve requirement is not a taking because raisin growers voluntarily choose to participate in the raisin market. According to the Government, if raisin growers don't like it, they can 'plant different crops,' or 'sell their raisin-variety grapes as table grapes or for use in juice or wine.' 'Let them sell wine' is probably not much more comforting to the raisin growers than similar retorts have been to others throughout history. In any event, the Government is wrong as a matter of law . . . property rights cannot be so easily manipulated.").

Moreover, while the Ellis Act exception preserves the owner's right of possession in some circumstances, the Defendants' eviction bans take away the owner's right of possession and exclusion in many others. As the Supreme Court has found, and as reasonable jurist may also find, partial physical takings are actionable. *Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 322 ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof."). Indeed, the physical takings in *Cedar Point*, *Loretto* and *Causby* were all partial physical takings that left the owners with residual rights to possess and exclude. *Cedar Point Nursery*, 141 S. Ct. at 2069 (a partial physical taking, only for union organizers, only for a specific purpose and only at limited times); *Loretto,* 458 U.S. at 421-22 (the physical taking was a small cable box on the exterior of the building); *United States v. Causby*, 328 U.S. 256, 258 (1946) (intermittent physical access on a portion of the airspace by military aircraft only).

Reasonable jurists may also find that the Ellis Act exception only reflects the fact that the governmental taking was an easement. *See* Cal. Civ. Code §§ 801–802 (easements, attached and unattached, defined); *Cedar Point Nursery*, 141 S. Ct. at 2073 (the taking of the right to exclude is "a servitude or an easement"). By definition, easements are partial rights to property that are specific to the purpose of the easement and leave the balance of the property rights to the servient estate. Thus, as *Cedar Point* found, all uncompensated physical takings—whether full or partial, temporary or permanent, continuous or intermittent, substantial or nominal—are categorically unconstitutional and contrary to the Fifth Amendment. *Cedar Point Nursery*, 141 S. Ct. at 2072-75.

As its final point, the Court stated, "[f]ourth, the ordinances do not on their face allow 'squatters' to occupy rental units without paying rent. This distinction is critical. The Supreme Court has held repeatedly that it is the invitation to allow a person to occupy a property that distinguishes per se takings from regulatory takings governed by the *Penn Central* factors." *Williams*, 2022 WL 17169833, at *10 Reasonable jurists may conclude otherwise. The Supreme Court has concluded that the voluntary act of renting does not waive a physical takings claim. *Loretto*, 458 US at 439 at n.17 ("[a] landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation"). Furthermore, the Court's reference to the "invitation" assumes that it was the owner that did the inviting. While that may have been true at lease signing, other jurists may conclude that it was not true as of the enaction of the Defendants' eviction bans. A tenant can certainly be uninvited via the law of unlawful detainer. But here, the Plaintiffs' consent to the tenant's possession became an irrelevancy, replaced by Defendants' unilateral determination as to who can possess a rental unit, when, and for how long. That is not "voluntary" renting but forced occupation at the express invitation of the Defendants. *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("this element of required acquiescence is at the heart of the concept of occupation").

Therefore, in determining whether a Covid eviction ban is an unconstitutional physical taking, whether the correct Supreme Court jurisprudence to apply is *Yee*, or instead *Cedar Point*

and *Loretto*, the Ninth Circuit has yet to make that determination and reasonable jurists could disagree as to the outcome. Accordingly, certification should be granted.

## 2. There is Substantial Ground for a Difference of Opinion on Whether the Moratoria Impair Contracts

Though not binding on this Court, the Eighth Circuit's decision in *Heights Apartments* clearly demonstrates that whether the County's eviction ban is an unconstitutional impairment of contracts is a legal determination on which reasonable jurists could disagree. That Court of Appeal held that a legally sufficient claim was stated against Minnesota's similarly indefinite eviction moratoria.

As to the first piece of the analysis—whether the moratoria substantially impair the contractual arrangement—several courts, and not just *Heights Apartments,* have concluded, in considering COVID-related eviction moratoria, that notwithstanding the fact that eventual payment was purportedly not precluded, the moratoria so disrupted the basic deal that landlords could not reasonably have anticipated anything like it. *See, e.g., Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 384 (D. Mass. 2020); *Farhoud v. Brown*, 2022 U.S. Dist. LEXIS 20033, at *20 (D. Or. Feb. 3, 2022). In fact, even in the Los Angeles case, the district court reached exactly that conclusion, *Apartment Ass'n of L.A. Cnty., Inc. v. City of L.A.*, 500 F. Supp. 3d 1088, 1096 (C.D. Cal. 2020) ("[T]he court concludes that AAGLA is likely to succeed in showing a substantial impairment of its contractual rights."), and while the Ninth Circuit upheld the denial of a preliminary injunction, it did not question the severity of the impairment.

And as to the remainder of the analysis—whether an indefinite moratorium that has dragged on for three years now—is reasonably tailored to its purpose, the Eighth Circuit's conclusion that an open-ended moratorium is not sufficiently tailored is supported by Supreme Court case law. The Court relies on *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 442 (1934), which upheld a temporary foreclosure moratorium during the Great Depression, but the limits of that decision are demonstrated by the subsequent decision in *W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935), which held that a similar foreclosure moratorium was an

---

unconstitutional impairment when the duration was indefinite and there was no obligation by the mortgagor to pay the mortgagee a sufficient sum to meet the mortgagor's costs.

### 3.   There is Substantial Ground for a Difference of Opinion on Whether the Moratoria Violate Procedural Due Process

The Court determined the moratoria did not violate the due process clause under the Fourteenth Amendment, in part because housing providers were still permitted a hearing to argue in favor of eviction and the moratoria are supposedly temporary. However, the housing providers in *Chrysafis v. Marks*, 141 S. Ct. 2482 (2021), were also entitled to a hearing; that was not the issue. The issue, as the Court in *Chrysafis* succinctly stated, was that the absolute defense provided by the renter's self-certification in that case "violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his own case' . . . ." *Chrysafis* 141 S. Ct. at 2482, int. cit. omit. The moratoria here do precisely what the Court in *Chrysafis* held unlawful; they provide "absolute defense[s]" to any eviction proceeding brought while the Moratoria are in place. This means that in every case but for the very few enumerated exceptions, the renter is the "judge" as to whether he or she can remain in the housing provider's property, and the housing provider doesn't get to challenge that determination. Because there are substantial grounds for a difference of opinion per *Chrysafis*, this issue should likewise be certified.

### 4.   There is Substantial Ground for a Difference of Opinion on Whether the Moratoria Violate State Law

#### a. The California Tenant Relief and Rental Housing Relief Acts

The Court determined here that the eviction bans do not conflict with the California Tenant Relief and Rental Housing Relief Acts (the "Acts") because rental regulation is an area of local control and the Acts "do not require or mandate the eviction of every renter who failed to participate in the rent relief programs." But such a requirement is not necessary for a conflict to exist. The conflict lies here: On the one hand, the Acts expressly *permit* housing providers to move forward with evictions when their renters do not comply with the state law rent relief program (Cal. Civ. Proc. Code § 1179.11(a)), and on the other, the moratoria *forbid* it. The Acts also permit evictions on multiple just cause bases (Cal. Civ. Proc. Code § 1179.03.5(a)(3)), and the moratoria take away

---

virtually all just cause bases. *See Birkenfeld v. City of Berkeley* 17 Cal.3d 129, 136, 148, 152 (1976) (only when renter remained in good standing, there is no substantive basis to evict). Therein lies the conflict.

Moreover, the Acts provide that Covid-19 eviction controls *are not* a municipal affair; the Legislature has expressly declared them a "matter of statewide concern." Cal. Civ. Proc. Code. § 1179.05 (e). "Any fair, reasonable and substantial doubt whether a matter is a municipal affair or broader state concern must be resolved in favor of the legislative authority of the state." *Cox Cable San Diego, Inc. v. City of San Diego* 188 Cal. App. 3d 952, 962 (1987); also see, *Big Creek Lumber Co. v. Cty. of Santa Cruz,* 38 Cal. 4th 1139 (2006) ("In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme."). Thus, reasonable jurists could disagree that local government may perpetuate their own eviction controls that are in direct conflict with California ones.

### b. California Election Law

Oakland's Just Cause for Eviction Ordinance was enacted by the voters. Plaintiffs allege the moratoria unlawfully amended that ordinance in violation of California Election Code, "one of the most precious rights of our democratic process." *Associated Home Builders etc., Inc. v. City of Livermore*, 18 Cal. 3d 582, 591 (1976); Cal. Elec. Code §§ 9125, 9217. The Court determined no violation existed here because the moratoria are permitted by the Emergency Services Act, Cal. Gov't Code § 8630 and are "temporary." But the Emergency Services Act requires defendants to terminate the local emergency "at the earliest possible date that conditions warrant." Cal. Gov. Code § 8690. They have refused to do so—almost three years later and even though they admit conditions related to the pandemic have vastly improved. Reasonable jurists could disagree about whether the moratoria are "temporary" and whether conditions warrant their termination. Thus, certification is also warranted here to determine this issue.

### C. It Will Materially Advance the Litigation

"The purpose of an interlocutory appeal is to facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later, in order to save the courts and the litigants unnecessary trouble and expense." *Warm v. Innermost Ltd.*, No.

CV214402MWFSHKX, 2022 WL 3449812, at *2 (C.D. Cal. June 13, 2022), citing *John v. United States*, 247 F.3d 1032, 1051 (9th Cir. 2001) (en banc) (Rymer, J., special statement). Thus, "the materially advance prong is satisfied when the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc.*, 22 F.4th at 1131; *Stiner*, 383 F. Supp. 3d at 958 ("The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings.") (cleaned up).

"There are no set criteria a court is required to consider when evaluating whether an interlocutory appeal will materially advance the litigation. Courts apply pragmatic considerations to determine whether certifying non-final orders will materially advance the ultimate termination of the litigation." *Beeman v. Anthem Prescription Mgmt., Inc.*, No. EDCV 04-407-VAP SGLX, 2007 WL 8433884, at *2-3 (C.D. Cal. Aug. 2, 2007); *Alfred v. Walt Disney Pictures*, No. CV 18-8074-CBM(ASX), 2022 WL 1580807, at *3 (C.D. Cal. Mar. 2, 2022) (same)

Before turning to this case, it is relevant to consider the fact that the Defendants' eviction bans remain in place. To the extent that all rental property owners within Alameda County and the City of Oakland may in the future, or currently are, burdened with housing tenants that would otherwise be subject to eviction, this instant matter may be but the first of several actions challenging the eviction ban. Accordingly, certifying the instant matter for appeal to the Ninth Circuit materially advances not just this case but potentially future cases as well. *Parker v. Cnty. of Riverside*, No. EDCV211280JGBKKX, 2022 WL 2204146, at *3 (C.D. Cal. May 5, 2022) ("no matter how the Ninth Circuit decides, its decision will establish 'clearer precedent' regarding the issue that Defendants seek to certify, which could reduce or eliminate further litigation of at least that issue"). It will allow for Circuit-wide conformity and inform the future legal choices of property owners and the Defendants alike.

With respect to this case, the fact that it is in the early stages and pre-discovery also weighs in favor of granting certification. *Woodbury*, 263 F.2d at 787 (Section 1292(b) was intended to expedite litigation by allowing for appellate review at the early stages of litigation). To date, no discovery has been conducted by any party. Furthermore, because Plaintiffs may seek to add

additional rental property owners as plaintiffs, the eventual completion of discovery may follow behind a proposed Amended Complaint.

Were the Ninth Circuit to determine that the Defendants' eviction bans were an unconstitutional physical taking, the liability determinations for Claim I (the Fifth Amendment takings claims) and Claim II (Inverse Condemnation under the California Constitution) would be resolved. Similarly, of the Ninth Circuit were to determine that the moratoria violated the Contracts Clause, state law, or due process on their face, this would appreciably advance the case and potentially avoid the need for trial. *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 2022 WL 4009918, at *18  ("Finally, the Court finds that immediate appeal would materially advance the ultimate termination of the litigation and would ensure that resources are not wasted on needless litigation and expenses. If the Ninth Circuit reverses this Court as to Plaintiffs' second theory of liability, the case is resolved in its entirety"). A Ninth Circuit determination on these controlling issues of law may also allow for fruitful settlement discussions. *Casas v. Victoria's Secret Stores, LLC*, No. 14-6412, 2015 WL 13446989, at *3 (C.D. Cal. Apr. 9, 2015) (finding increased chance of settlement "may materially advance the case's ultimate termination").

The need for discovery on those claims also would be obviated or at least, substantially reduced. *Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*, No. CV 16-609-GW(FFMX), 2016 WL 10647193, at *6 (C.D. Cal. Dec. 12, 2016) ("While an appeal would, for the time-being, delay the case (assuming that this Court or the Ninth Circuit were to implement a stay), it would certainly streamline and focus discovery efforts for the parties to understand the proper analytical standards governing the sole claim in the case. In contrast, were this case to proceed through a trial applying incorrect legal standards because of uncertainty as to that question, the delay in reaching ultimate resolution would be significantly longer.").

When considering that these matters will require document discovery, deposition discovery for numerous Plaintiffs (plus potentially new plaintiffs), deposition discovery for two Government defendants (which may necessitate multiple depositions), the potential depositions of the non-party tenants for each of the Plaintiffs, and expert retention and expert discovery with respect to damages, the savings of time, cost and litigation effort both for the parties and the court may be

substantial. That is particularly true should a reversal by the Ninth Circuit eliminate the need to determine liability under *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123-25 (1978). A determination as to whether the Defendants' eviction bans are an unconstitutional taking under *Penn Central* requires an ad hoc examination of all relevant facts and circumstances for each Plaintiff. *Id.* Discovery would have to reflect that determination. In addition, *Penn Central* also points the trial court towards certain relevant factors, including the economic impact of the regulation. That means that a determination of constitutional liability will require both Plaintiffs and Defendants to engage in expert real estate appraisal discovery and obtain expert reports for each Plaintiff property.

Under these circumstances, the delay of potential future discovery is not a reason to deny certification to the Ninth Circuit. *Youssofi*, 2016 WL 6395086, at \*5 ("Defendant asserts interlocutory appeal would work to delay trial in this case because of the time the case will spend on the Ninth Circuit's docket. The Court finds Defendant's position meritless for two reasons. First, if the length of time spent on appeal were sufficient to defeat a motion for interlocutory appeal, no such appeal could ever be taken. Second, as noted above, present appeal involves the possibility of avoiding arbitration proceedings. The Court finds this sufficient for purposes of the present motion.") (cleaned up).

In light of the above, this matter should be certified for appeal to the Ninth Circuit.

### D.  A Stay Should be Granted Pending the Ninth Circuit Determination

If the court grants certification to the Ninth Circuit Court of Appeals, Plaintiffs further request that this matter be stayed pending that determination.  As the Ninth Circuit has explained:

> A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

1   *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972); *Mediterranean Enterprises, Inc. v.*

2   *Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (so long as it is not an abuse of discretion,

3   "the trial court possesses the inherent power to control its own docket and calendar").

4        In this case, a stay must be granted to adhere to the "materially advances the litigation"

5   prong of § 1292(b). In other words, engaging in extensive discovery and then a trial during the

6   pendency of the appeal of controlling issues of law to the Ninth Circuit would be the opposite of

7   saving the trial court and the litigants the time, cost, and expense of needless litigation.

8   Consequently, a stay must be granted. *See, e.g.*, *Brown v. Papa Murphy's Holdings Inc.*, No. 3-

9   19-CV-05514-BHS-JRC, 2021 WL 4067462, at *4 (W.D. Wash. June 9, 2021), report and

10   recommendation adopted, No. C19-5514 BHS-JRC, 2021 WL 3464927 (W.D. Wash. Aug. 6,

11   2021) (granting a stay); *McShannock v. JP Morgan Chase Bank N.A.*, No. 18-CV-01873-EMC,

12   2019 WL 955289 (N.D. Cal. Feb. 27, 2019) (same); *Ritz Camera & Image, LLC v. Sandisk Corp.*,

13   No. 5:10-CV-02787-JF/HRL, 2011 WL 3957257 (N.D. Cal. Sept. 7, 2011) (same); *Asis Internet*

14   *Servs. v. Active Response Grp.*, No. C07 6211 TEH, 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16,

15   2008) (same); *Kotrous v. Goss-Jewett Co. of N. California*, No. CIV.S021520 FCD JFM, 2005

16   WL 2452606, at *5 (E.D. Cal. Oct. 4, 2005) (same).

17        A stay is also warranted because a reversal by the Ninth Circuit, as discussed above, would

18   materially alter the course of the litigation. *Watson v. Yolo Cnty. Flood Control & Water*

19   *Conservation Dist.*, No. 2:06-CV-1549FCDDAD, 2007 WL 4107539, at *4 (E.D. Cal. Nov. 16,

20   2007) ("Because a reversal of this court's Order by the Ninth Circuit could materially affect this

21   case and advance the ultimate termination of litigation, the court stays this action in its entirety

22   pending resolution of defendant's appeal of the Order. Said stay promotes economy of time and

23   effort both for the court and the parties."); *see United States ex rel. Atlas Copco Compressors LLC*

24   *v. Rwt LLC*, No. CV 16-00215 ACK-KJM, 2017 WL 2986586, at *12 (D. Haw. July 13, 2017)

25   ("First, the Court finds that any harm to Defendants from granting a stay is minimal. Defendants

26   will merely suffer continued uncertainty in the litigation. Second, given the quickly approaching

27   trial date, which is currently scheduled for September 6, 2017, an interlocutory appeal makes little

28   sense without a stay of proceedings...Third, the current interlocutory appeal will allow the Ninth

Circuit to conclusively establish the requirements for Plaintiff's Miller Act claim and allow for the orderly course of justice.").

The stay must be with respect to the entirety of the case to avoid waste and piecemeal litigation. *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D. Cal. 2008) ("piecemealing claims in this litigation will waste party and judicial resources and will require duplication of efforts to resolve closely related issues on separate occasions. Defendants' request for a stay of the entire case is granted").

A stay will not result in any prejudice, hardship, or inequity to Defendants, as their eviction bans are on-going and a further appeal to determine liability adds no harm and no additional cost.

Considering the above, a stay of the entirety of the pending proceedings should be granted.

## VI.    <u>Conclusion</u>

This Court should certify for immediate appeal to the Ninth Circuit Court of Appeals the issue of whether the Defendants' eviction bans are an unconstitutional physical taking contrary to the Fifth Amendment, impairs lease agreements in violation of the Fifth Amendment, are preempted by state law, and/or violate the due process clause under the Fourteenth Amendment. In accordance with 28 U.S.C. § 1292(b), these are controlling questions of law as to which there are substantial grounds for differences of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation. This Court should also stay the entirety of this instant litigation pending determination by the Ninth Circuit, together with such other and further relief as the Court deems reasonable, proper, and just.

//
//
//
//
//
//

1    Dated:  December 29, 2022

2

3        ZACKS, FREEDMAN & PATTERSON,        PACIFIC LEGAL FOUNDATION
         PC
4         _/s/ Emily L. Brough_               _/s/ Jonathan M. Houghton_
         ANDREW M. ZACKS (SBN 147794)        JONATHAN M. HOUGHTON
5        EMILY L. BROUGH (SBN 284943)        (N.J. Bar No. 369652021)
         1970 Broadway, Suite 1270           3100 Clarendon Blvd., Suite 1000
6        Oakland, CA 94612                   Arlington, VA 22201
         Tel: (510) 469-0555                 BRIAN T. HODGES (Wash. Bar No. 31976)
7        az@zfplaw.com                       SAM SPIEGELMAN
         emily@zpflaw.com                    (N.Y. Bar No. 5573100)
8                                            255 South King Street, Suite 800
         Seattle, WA 98104
9                                            Telephone: (916) 419-7111
                                             JHoughton@pacificlegal.org
10                                           BHodges@pacificlegal.org
                                             SSpiegelman@pacificlegal.org
11

12

13   Attorneys for Plaintiffs and Petitioners JOHN WILLIAMS, ROBERT VOGEL, SHEANNA
        ROGERS, MICHAEL LOEB, JACQUELINE WATSON-BAKER, and HOUSING
14                               PROVIDERS OF AMERICA

15
                             NIELSEN MERKSAMER
16                           PARRINELLO GROSS & LEONI LLP

17
                             _/s/  Christopher E. Skinnell_
18                           Christopher E. Skinnell, Esq. (S.B. No. 227093)
                             Hilary J. Gibson, Esq. (S.B. No. 287862)
19                           2350 Kerner Boulevard, Suite 250
                             San Rafael, California 94941
20                           Telephone: (415) 389-6800
                             Facsimile: (415) 388-6874
21                           cskinnell@nmgovlaw.com
                             hgibson@nmgovlaw.com
22                           Attorneys for Plaintiffs and Petitioners
                             CALIFORNIA APARTMENT ASSOCIATION
23                           STEPHEN LIN
                             RAKESH and TRIPTI JAIN
24                           ALISON MITCHELL
                             MICHAEL HAGERTY
25                           H. ALEX and DANNIE ALVAREZ

26

27

28

---

1

### **ATTESTATION**

2      Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3  document has been obtained from the other signatories.

4  DATED:    December 29, 2022          */s/ Emily Brough*

5                                      Emily Brough

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZACKS, FREEDMAN & PATTERSON, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

**PROOF OF SERVICE**

United States District Court—Northern District of California- Case No.: 3:22-cv-01274-LB

I, Angelica Nguyen, declare that:

I am employed in the County of San Francisco, State of California. I am over the age of 18, and am not a party to this action.  My business address is 601 Montgomery Street, Suite 400, San Francisco, California 94111.

On December 29, 2022, I served:

**PLAINTIFFS' AND PETITIONERS' NOTICE OF MOTION AND MOTION TO CERTIFY THE INTERLOCUTORY DECISION FOR APPEAL AND FOR A STAY**

in said cause addressed as follows:

| | |
|---|---|
| PACIFIC LEGAL FOUNDATION<br>JONATHAN HOUGHTON (NJ Bar No. 369652021)<br>3100 Clarendon Blvd., Suite 610<br>Arlington, VA 22201<br>BRIAN HODGES (WA Bar No. 31976)<br>SAM SPIEGELMAN (NY Bar No. 5573100)<br>255 South King Street, Suite 800<br>Seattle, WA 98104<br>Email: JHoughton@pacificlegal.org<br>Email: BHodges@pacificlegal.org<br>Email: SSpiegelman@pacificlegal.org<br>*Attorney for John Williams, Robert Vogel, Sheanna Rogers, Michael Loeb, Jacqueline Watson-Baker, Housing Providers of America* | MARC SELTZER<br>KRYSTA K. PACHMAN<br>GLENN C. BRIDGMAN<br>NICHOLAS N. SPEAR<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Email: mseltzer@susmangodfrey.com<br>Email: kpachman@susmangodfrey.com<br>Email: gbridgman@susmangodfrey.com<br>Email: nspear@susmangodfrey.com<br>*Attorneys for Intervenor-Defendant Alliance of Californians for Community Empowerment Action* |
| MATTHEW D. ZINN<br>EDWARD T. SCHEXNAYDER<br>MINDY K. JIAN<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>Email: Zinn@smwlaw.com<br>Email: Schexnayder@smwlaw.com<br>Email: mjian@smwlaw.com<br>*Attorney for Alameda County and Alameda County Board of Supervisors* | BARBARA J. PARKER<br>MARIA BEE<br>ALLISON EHLERT<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA 94612<br>E-Mail:aehlert@oaklandcityattorney.org<br>*Attorney for City of Oakland and Oakland City Council* |
| | |

**ZACKS, FREEDMAN & PATTERSON, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

| | |
|---|---|
| 1 | CHRISTOPHER E. SKINNELL |
| 2 | HILARY J. GIBSON<br>NIELSEN MERKSAMER |
| 3 | PARRINELLO GROSS & LEONI LLP<br>2350 Kerner Boulevard, Suite 250 |
| 4 | San Rafael, CA 94941<br>Email: cskinnell@nmgovlaw.com |
| 5 | Email: hgibson@nmgovlaw.com |
| 6 | *Attorneys for Plaintiffs and Petitioners California*<br>*Apartment Association Stephen Lin, Lakesh and* |
| 7 | *Tripti Jain, Alison Mitchell, Michael Hagerty,*<br>*H. Alex, Dannie Alvarez* |

8

**/XX/   (BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties

9

to accept electronic service, I caused the said document to be served electronically through the

10

CM/ECS System.

11

I declare under penalty of perjury under the laws of the State of California that the foregoing is

12

true and correct.  Executed on December 29, 2022 at San Francisco, California.

13



14

ANGELICA NGUYEN

15

16

17

18

19

20

21

22

23

24

25

26

27

28