1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                             NORTHERN DISTRICT OF CALIFORNIA

10                                    San Francisco Division

| | |
|---|---|
| 11 JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) Non-profit Corporation, | Case No. 3:22-cv-01274-LB **ORDER DENYING MOTION TO CERTIFY SUMMARY-JUDGMENT ORDER FOR INTERLOCUTORY APPEAL** Re: ECF No. 101 |

11  JOHN WILLIAMS, ROBERT VOGEL, SHEANNA
    ROGERS, MICHAEL LOEB, JAQUELINE
12  WATSON-BAKER, and HOUSING PROVIDERS
    OF AMERICA, a 501(c)(4) Non-profit Corporation,
13
            Plaintiffs and Petitioners,
14
        v.
15
16  ALAMEDA COUNTY, ALAMEDA COUNTY
    BOARD OF SUPERVISORS, CITY OF OAKLAND,
17  OAKLAND CITY COUNCIL, and DOES 1–10,

            Defendants and Respondents,
18
19  ALLIANCE OF CALIFORNIANS FOR
    COMMUNITY EMPOWERMENT ACTION,
20
            Intervenor-Defendant.

Case No. 3:22-cv-01274-LB

**ORDER DENYING MOTION
TO CERTIFY SUMMARY-
JUDGMENT ORDER FOR
INTERLOCUTORY APPEAL**

Re: ECF No. 101

21  CALIFORNIA APARTMENT ASSOCIATION,
    STEPHEN LIN, RAKESH and TRIPTI JAIN, & H.
22  ALEX and DANNIE ALVAREZ, et al.,

23          Plaintiffs and Petitioners,

24      v.

25  COUNTY OF ALAMEDA, BOARD OF
    SUPERVISORS OF THE COUNTY OF ALAMEDA,
26  and DOES 10–25,

27          Defendants and Respondents.

Case No. 3:22-cv-02705-LB

**ORDER DENYING MOTION
TO CERTIFY SUMMARY-
JUDGMENT ORDER FOR
INTERLOCUTORY APPEAL**

Re: ECF No. 48

28

United States District Court
Northern District of California

**INTRODUCTION**

The plaintiffs in these related cases — property owners and organizations representing property owners in Alameda County and the City of Oakland — contend that the County and City violated their rights under the U.S. and California Constitutions by prohibiting the eviction of non-paying tenants during the COVID-19 pandemic. In *Williams v. Alameda Cnty.*, No. 22-cv-01274-LB, the plaintiffs claim that ordinances enacted by the County and City are takings under the Fifth Amendment to the U.S. Constitution, inverse condemnations under the California Constitution, and violations of their due-process and equal-protection rights under the Fourteenth Amendment to the U.S. Constitution.[1] In *Cal. Apartment Ass'n v. Alameda Cnty.*, No. 22-cv-02705-LB, the plaintiffs challenge the County ordinance through similar taking and due-process claims under the U.S. Constitution and a similar inverse-condemnation claim under the California Constitution. They also claim a substantial impairment of their lease agreements, in violation of the Contracts Clause of Article I of the U.S. Constitution, and preemption of the ordinance under Article XI, § 7 of the California Constitution to the extent that the ordinance prohibits Ellis Act evictions under Cal. Gov't Code § 7600 (which allows landlords to withdraw rentals from the market under certain circumstances).[2]

The plaintiffs previously moved for summary judgment, contending that the ordinances are facially invalid because (1) both ordinances are physical or per se takings under the Fifth Amendment, (2) the County's ordinance violates the Contracts Clause, (3) both ordinances are procedural-due-process violations under the Fourteenth Amendment, and (4) both ordinances are preempted by, or violations of, state law. The court denied summary judgment.[3] The plaintiffs moved to certify the summary-judgment order for interlocutory appeal under 28 U.S.C. § 1292(b) and stay the cases.[4]

---

[1] Compl. – ECF No. 1 at 13–17 (¶¶ 37–53). Citations refer to material in the Electronic Case File (ECF) in the lower-numbered action unless the citation references the higher-numbered action; pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 (No. 22-cv-02705-LB) at 16–24 (¶¶ 52–80).

[3] Order – ECF No. 96.

[4] Mot. – ECF No. 101; Joinder – ECF No. 48 (No. 22-cv-02705-LB).

1

2

3

4

The motions are denied. Although the court would otherwise certify the Fifth Amendment takings issue and stay the cases pending appeal, another case already on appeal squarely presents the takings issue to the Ninth Circuit. Thus, under § 1292(b), an immediate appeal would not "materially advance the ultimate termination of the litigation."

5

6

The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[5] 28 U.S.C. § 636(c). The court held a hearing on February 9, 2023.

7

8

### LEGAL STANDARD

9

10

11

12

13

14

15

16

17

18

Section 1292(b) provides a means for litigants to bring an immediate appeal of a non-dispositive order with the consent of both the district court and the court of appeals. 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). The district court may certify an order for interlocutory appellate review under § 1292(b) if the following three requirements are met: (1) there is a "controlling question of law;" (2) there are "substantial grounds for difference of opinion;" and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. Also, certification is appropriate "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.* (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)).

19

20

21

22

23

24

25

26

If the Ninth Circuit agrees to take the appeal, it acquires appellate jurisdiction over the entire order in question, even if the district court certified only one of several issues in that order. *See, e.g.*, *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 848–49 (9th Cir. 2020). The Ninth Circuit's jurisdiction also "extends to a question outside the order when such question is 'material' to the certified order." *See, e.g.*, *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1132–33 (9th Cir. 2022). But the Ninth Circuit may, in its discretion, choose to address only the issues certified by the district court. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688–89 (9th Cir. 2011).

27

28

---

[5] Consents – ECF Nos. 12, 14, 17, 19, 30; Consents – ECF Nos. 13, 16 (No. 22-cv-02705-LB).

United States District Court
Northern District of California

For the first § 1292(b) prong, the question certified must be one of law, not fact. *ICTSI Or.*, 22 F.4th at 1131–32. A mixed question of law and fact, such as one that requires applying the legal standard to the facts of the case, is not by itself appropriate for certification. *Id.*; *Steering Comm. v. United States*, 6 F.3d 572, 575–76 (9th Cir. 1993); *Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*, No. 13-cv-04863-JST, 2016 WL 5905935, at *2–3 (N.D. Cal. Oct. 11, 2016) (denying interlocutory appeal where movant argued only for certification of a mixed question of law and fact in an order denying summary judgment); *Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844-RS, 2016 WL 7732622, at *2 (N.D. Cal. Apr. 18, 2016) (a summary-judgment order about "material disputes of fact" did not "present[] clean controlling questions of law for appellate review"). But where the mixed question is coupled with a "pure legal question," such as whether the district court applied the correct legal standard, both questions can be certified — or at least, the Ninth Circuit may in its discretion exercise appellate jurisdiction over both. *Steering Comm.*, 6 F.3d at 575–76.

The Ninth Circuit defines a "controlling" question as one for which "resolution . . . on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. A question may be controlling even though its resolution does not determine who will prevail on the merits. *Id.* at 1026–27. But it is not controlling simply because its immediate resolution may promote judicial economy. *Id.* at 1027.

Regarding the second prong, "courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (cleaned up).

Finally, the Ninth Circuit has not expressly defined material advancement of the ultimate termination of the litigation. But "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688 (where reversal may take certain claims

1    or parties out of case, it may materially advance the litigation). And an immediate appeal will not

2    materially advance the ultimate termination of litigation where the appeal might postpone the

3    scheduled trial date. *See Shurance v. Plan. Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir.

4    1988).

5                                    **ANALYSIS**

6        The plaintiffs moved to certify all issues decided in the court's summary-judgment order for

7    interlocutory appeal under § 1292(b). The four issues are whether the ordinances are (1) a physical

8    or per se taking under the Fifth Amendment, (2) a violation of the Contracts Clause, (3) a

9    procedural-due-process violation under the Fourteenth Amendment, and (4) preempted by, or a

10   violation of, state law.[6] The defendants argue only that there are no substantial grounds for

11   difference of opinion on any of the four issues.[7]

12       The court denies the motions. Although the Fifth Amendment takings issue would otherwise be

13   appropriate for immediate appeal, that issue is already fully briefed before the Ninth Circuit in a

14   similar case. Thus, instead of "materially advanc[ing] the ultimate termination of the litigation," an

15   immediate appeal here would be wasteful.

16       Regarding the first § 1292(b) prong, the four summary-judgment issues are "controlling"

17   questions: reversal would resolve whether the defendants are liable on the claims in question. *In re

18   Cement Antitrust Litig.*, 673 F.2d at 1026; *Reese*, 643 F.3d at 688; *Swinomish Indian Tribal Cmty. v.

19   BNSF Ry. Co.*, 951 F.3d 1142, 1151 (9th Cir. 2020). They are not all questions "of law," though, as

20   explained below.

21       As for the third prong, the fact that reversal would resolve liability generally means that "an

22   immediate appeal may materially advance the ultimate termination of the litigation." *Reese*, 643

23   F.3d at 688; 16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 (3d ed. 2022) (the third § 1292(b)

24   prong can be "closely tied" to the first prong). That changes when the issue to be appealed is

25   already fully briefed before the Ninth Circuit, though (as explained below).

26

27   [6] Mot. – ECF No. 101; Joinder – ECF No. 48 (No. 22-cv-02705-LB).

28   [7] *See generally* Opp'n – ECF No. 105.

United States District Court
Northern District of California

1    These cases also present an "exceptional situation[] in which allowing an interlocutory appeal

2  would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

3  Discovery has not yet begun, and the summary-judgment order is very broad as to the liability

4  issues in the two cases. Reversal would thus greatly simplify the cases.

5    Regarding whether the four summary-judgment issues are questions of law and whether there

6  are "substantial grounds for difference of opinion," these prongs are usefully analyzed together for

7  the four summary-judgment issues.

8    First, the plaintiffs argue that the question of whether the ordinances are, on their face,

9  physical takings should be certified for interlocutory appeal. They emphasize that the Eighth

10  Circuit's decision in a similar case, *Heights Apartments, LLC v. Walz*, conflicts with the summary-

11  judgment order.[8] 30 F.4th 720, 733 (8th Cir. 2022). The undersigned held that the ordinances are

12  not an impermissible physical or per se taking because they are temporary and not indefinite, they

13  do not absolve renters of their obligation to pay rent, and they include exceptions allowing the

14  landlords to leave the rental business.[9] *Yee v. Escondido*, 503 U.S. 519, 532 (1992); *Cedar Point*

15  *Nursery v. Hassid*, 141 S. Ct. 2063, 2069 (2021). There is a pure question of law here and there

16  are substantial grounds for difference of opinion.

17    To start, the controlling law is at least somewhat unclear. *Couch*, 611 F.3d at 633. In *Yee*, the

18  Supreme Court held that a rent-control ordinance governing mobile-home parks was not a per se

19  taking, in part because the tenants had been invited by the property-owner petitioners. 503 U.S. at

20  528. In *Cedar Point Nursery*, the Court held that a state law allowing union organizers to enter

21  agricultural employers' property was a per se taking, in part because the law took the property

22  owners' right to exclude the union organizers. 141 S. Ct. at 2069, 2080. For its part, the Ninth

23  Circuit has held consistently that laws governing the landlord-tenant relationship are not subject to

24  a categorical per se takings analysis, and like the *Yee* Court, the Ninth Circuit has relied on the

25  landlords' "voluntarily surrender[ing]" their property. *Ballinger v. City of Oakland*, 24 F.4th 1287,

26

27  [8] Mot. – ECF No. 101 at 16–22.

28  [9] Order – ECF No. 96 at 13–21.

1292–93 (9th Cir. 2022). The Ninth Circuit has not analyzed an eviction moratorium under the Takings Clause, though.

Moreover, the facts of the present cases straddle the multiple lines of appellate precedent: the tenants were invited by the property-owner plaintiffs (*Yee* and *Ballinger*) but the ordinances significantly limit the plaintiffs' right to exclude (*Cedar Point Nursery*). The undersigned relied on *Yee* and distinguished *Cedar Point Nursery*.[10] So did the Second Circuit (albeit in a case where the challenged COVID-19 laws allowed evictions for nonpayment of rent). *Cmty. Hous. Improvement Program v. City of New York*, No. 20-3366-CV, --- F.4th ---, 2023 WL 1769666, at *7–8 (2d Cir. Feb. 6, 2023). The Eighth Circuit, on the other hand, relied on *Cedar Point Nursey* and distinguished *Yee*. *Heights Apartments*, 30 F.4th at 733.

In this situation — where the controlling law is not entirely clear, there is a circuit split, and the Ninth Circuit has yet to weigh in — there are substantial grounds for difference of opinion on a question of law. *Couch*, 611 F.3d at 633. (The question of law is what legal standard applies in analyzing whether the ordinances are per se takings. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752–53 (9th Cir. 2018) (faced with multiple lines of appellate decisions, the district court certified for interlocutory appeal the question of which line should apply).)

Second, in its summary-judgment order, the court held that the County's moratorium does not facially violate the Contracts Clause because the moratorium (1) does not substantially impair the *California Apartments* plaintiffs' contractual rights and (2) is not an unreasonable response to the public purpose of avoiding housing displacement during the COVID-19 pandemic.[11] *See Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 913–14 (9th Cir. 2021). The plaintiffs argue that there are substantial grounds for difference of opinion on this issue, and they rely mainly on *Heights Apartments*, where the Eighth Circuit held that a COVID-19 eviction

---

[10] *Id.* at 18–20.

[11] *Id.* at 21–28.

1    moratorium was a substantial impairment and was not reasonably tailored under the Contracts

2    Clause.[12] 30 F.4th at 724, 730–32.

3         Unlike with the Takings Clause issue, though, the Ninth Circuit has already weighed in on the

4    Contracts Clause issue. In *Apartment Ass'n of L.A. Cnty.*, the court "defer[red] to [the] legislative

5    judgment" on the reasonableness of the moratorium, with an analysis that conflicts with that of

6    *Heights Apartments*.[13] 10 F.4th at 914. (Under the Contracts Clause, a court should uphold a

7    challenged law that was reasonably tailored, even if the law substantially impairs contractual

8    relations. *Id.* at 913.) And although the plaintiffs argue that *Heights Apartments* is supported by

9    *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935), the Ninth Circuit rejected reliance on *W.B.*

10   *Worthen Co.* in *Apartment Ass'n of L.A. Cnty.* 10 F.4th at 914–15 & n.4. Thus, there are no

11   substantial grounds for difference of opinion.

12        In any case, this issue is not a "question of law" under § 1292(b). The Ninth Circuit's decision

13   in *Apartment Ass'n of L.A. Cnty.* makes the applicable legal standard clear, meaning that the

14   plaintiffs are asking only for interlocutory appeal of a "mixed question of law and fact," without a

15   "pure legal question" to tether the appeal. *Steering Comm.*, 6 F.3d at 575–76; *ICTSI Or.*, 22 F.4th

16   at 1131–32; *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (section

17   1292(b) appeals "should be reserved[] for situations in which the court of appeals can rule on a

18   pure, controlling question of law without having to delve beyond the surface of the record in order

19   to determine the facts"). The Contracts Clause issue in the summary-judgment order is not

20   certifiable for interlocutory appeal.

21        Third, the *Williams* plaintiffs reiterate their summary-judgment argument that under *Chrysafis*

22   *v. Marks*, 141 S. Ct. 2482 (2021), the ordinances violate the Due Process Clause because they

23   provide tenants with an "absolute defense" to most eviction proceedings. The *Williams* plaintiffs

24   emphasize that in *Chrysafis*, where the Court temporarily enjoined part of New York's COVID-19

25   eviction moratoria, the Court held that because New York tenants could self-certify that they

26

27   _____

     [12] Mot. – ECF No. 101 at 22–23.

28   [13] Order – ECF No. 96 at 27–28.

United States District Court
Northern District of California

suffered a "financial hardship" due to COVID-19 (and landlords could not contest that certification), the tenants were enabled to act as judges in their own cases.[14] 141 S. Ct. at 2482.

The summary-judgment order rejected this argument. In particular, the eviction moratoria here do not preclude landlords from contesting facts asserted by tenants such that the tenants are enabled to act as judges.[15] There are no substantial grounds for difference of opinion on the procedural-due-process issue. *Couch*, 611 F.3d at 633 ("[A] party's strong disagreement with the [c]ourt's ruling is not sufficient for there to be a substantial ground for difference.") (cleaned up).

In any event, the procedural-due-process issue is also a mixed question of law and fact. *Bitton v. United States Citizenship & Immigr. Servs.*, 817 F. App'x 329, 331 (9th Cir. 2020) (citing *Nat'l Ass'n of Radiation Survivors v. Derwinski*, 994 F.2d 583, 587 (9th Cir. 1992)). The court will not certify it for interlocutory appeal.

Fourth, the plaintiffs reiterate their summary-judgment arguments that the ordinances do not conflict with California law.[16] But the relevant state eviction laws allow municipalities to enact eviction restrictions that are more protective of renters, the ordinances include exceptions for Ellis Act evictions, and the City and the County had authority to enact the ordinances under California election law.[17] There are no substantial grounds for difference of opinion. *Couch*, 611 F.3d at 633.

For example, the plaintiffs argue that "the moratoria take away virtually all just cause bases" for eviction provided by state law, citing Cal. Civ. Proc. Code § 1179.03.5(a)(3).[18] But that statute does not apply here: local ordinances enacted in response to the COVID-19 pandemic apply instead when, as here, they are "more protective [of tenants] than [state law]" but still "requir[e] just cause for termination" of a tenancy. Cal. Civ. Code § 1946.2(g)(1)(B); Cal. Civ. Proc. Code § 1179.05(b). Put another way, the County and City can enact local ordinances to limit what constitutes "just cause" for eviction. S. Rules Comm., Off. of S. Floor Analyses 3d Reading,

---

[14] Mot. – ECF No. 101 at 23.

[15] Order – ECF No. 96 at 28–30.

[16] Mot. – ECF No. 101 at 23–24.

[17] Order – ECF No. 96 at 30–39.

[18] Mot. – ECF No. 101 at 23–24.

United States District Court
Northern District of California

1   2019–2020 Reg. Sess., at 6 ¶ 13 (Cal. 2020) (the California COVID-19 Tenant Relief Act

2   "[c]larifie[d] that local jurisdiction[s] may . . . adopt an ordinance that requires just cause for

3   termination of a residential tenancy . . . that provide[s] greater [tenant] protection than state law").

4        Similarly, according to the plaintiffs, state law "provide[s] that Covid-19 eviction controls are

5   not a municipal affair" because "the Legislature has expressly declared them a 'matter of statewide

6   concern.'"[19] Cal. Civ. Proc. Code § 1179.05(e). Yet the same statute contemplates "ordinance[s],

7   resolution[s], regulation[s], [and] administrative action[s] adopted by a city, county, or city and

8   county in response to the COVID-19 pandemic." *Id.* § 1179.05(a). Thus, "this section does not

9   provide the Legislature's understanding of the legal validity [of] any specific ordinance . . .

10  adopted by a city, county, or city and county in response to the COVID-19 pandemic to protect

11  tenants from eviction." *Id.* § 1179.05(f).

12       As another example, the plaintiffs say the County should have "terminate[d] the local

13  emergency 'at the earliest possible date that conditions warrant.'"[20] Cal. Gov't Code § 8630(d).

14  This contention is beyond the scope of the plaintiffs' facial challenge and is in any event a mixed

15  question of law and fact.

16       The court declines to certify the state-law issues in the summary-judgment order for

17  interlocutory appeal.

18       In sum, only the physical-takings issue satisfies the first two prongs of § 1292(b). It doesn't

19  satisfy the third prong, though: an immediate appeal would not materially advance the ultimate

20  termination of the litigation because the issue is already fully briefed before the Ninth Circuit.

21       Where the issue that would otherwise be certified for interlocutory appeal is already fully

22  briefed before the court of appeals, an interlocutory appeal generally would not "materially

23  advance the ultimate termination of the litigation." *United States v. AMC Ent., Inc.*, 245 F. Supp.

24  2d 1094, 1101–02 (C.D. Cal. 2003); *In re BP P.L.C. Sec. Litig.*, No. 10-MD-2185, 2013 WL

25  12156398, at *5 (S.D. Tex. Jan. 4, 2013). The exception is when the pending appeal involves the

26

27  ─────────────────
    [19] *Id.* at 24.

28  [20] *Id.*

same parties or parallel proceedings. *Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 717 (N.D. Cal. 1994) ("Bourns has appealed the previous action involving Wells and the issues in the instant case are inextricably intertwined with those currently on appeal. Judicial efficiency would be promoted, and the termination of this litigation advanced, if these cases were joined for consideration before the Circuit."); *United States v. Washington*, 20 F. Supp. 3d 899, 938 (W.D. Wash. 2008) (the pending appeal was a parallel subproceeding involving the same tribal treaty rights).

The physical-takings issue is already fully briefed before the Ninth Circuit. *El Papel, LLC v. City of Seattle*, No. 22-35656 (9th Cir. docketed Aug. 17, 2022). In *El Papel*, the only question presented is whether COVID-19 eviction moratoria (there, the Washington State and City of Seattle moratoria that were in effect from 2020 to 2021) were physical takings. Opening Br., *El Papel*, No. 22-35656 (9th Cir. Nov. 16, 2022), ECF No. 7 at 12 (p. 6); Answering Br., *id.* (9th Cir. Jan. 17, 2023), ECF No. 16 at 12 (p. 3). Like the moratoria in the present cases, the moratoria in *El Papel* limited the landlords' right to exclude (by effectively delaying evictions for nonpayment of rent) without eliminating the tenants' legal obligation to pay rent. Answering Br., *id.* (9th Cir. Jan. 17, 2023), ECF No. 16 at 12 (p. 3). Moreover, the *El Papel* parties dispute which of *Yee* and *Cedar Point Nursey* states the controlling law. Opening Br., *id.* (9th Cir. Nov. 16, 2022), ECF No. 7 at 36–54 (pp. 30–48); Answering Br., *id.* (9th Cir. Jan. 17, 2023), ECF No. 16 at 28–31 (pp. 19–22), 42–45 (pp. 33–36). Thus, *El Papel* presents the same "controlling question of law" that the court would otherwise certify for interlocutory appeal here: what legal standard applies in analyzing whether COVID-19 eviction moratoria are per se takings?

Because the physical-takings issue is already fully briefed before the court of appeals, and the exception stated in *Wells Fargo Bank* and *Washington* does not apply here, an immediate appeal would not materially advance the ultimate termination of the litigation. Thus, the plaintiffs' motions to certify the summary-judgment order for interlocutory appeal under § 1292(b) are denied.

At the hearing, the plaintiffs pointed out that *El Papel* is not identical to the present cases: it is an as-applied rather than facial challenge to the moratoria at issue, the unlawful-detainer statutes at

1    issue are different, and the moratoria at issue expired in 2021. Still, the *El Papel* landlords were

2    prevented from bringing unlawful-detainer actions to evict tenants for nonpayment of rent during

3    the COVID-19 pandemic. The issue on appeal there is materially the same as that in the summary-

4    judgment order here.

5        There is one final, ancillary issue. In a post-hearing submission ordered by the court, the

6    defendants asked to stay the case pending the Ninth Circuit's decisions in three COVID-19

7    eviction-moratoria cases (including *El Papel*).[21] All cases are set for oral argument on April 10,

8    2023. *Jevons v. Inslee*, No. 22-35050 (9th Cir. docketed Jan. 18, 2022); *Iten v. Cnty. of Los*

9    *Angeles*, No. 22-55480 (9th Cir. docketed May 12, 2022); *El Papel, LLC*, No. 22-35656 (9th Cir.

10   docketed Aug. 17, 2022).

11       The issue falls under the court's inherent authority. In *Landis*, the Supreme Court held that

12   "the power to stay proceedings is incidental to the power inherent in every court to control the

13   disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

14   for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To determine whether a stay is

15   appropriate, the court "must weigh competing interests and maintain an even balance." *Id.* at 254–

16   55. The competing interests include "the possible damage which may result from the granting of a

17   stay, the hardship or inequity which a party may suffer in being required to go forward, and the

18   orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and

19   questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d

20   265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55); *accord Lockyer v. Mirant Corp.*, 398

21   F.3d 1098, 1110 (9th Cir. 2005). "[I]f there is even a fair possibility" that the stay will harm the

22   non-moving party, the party seeking the stay "must make out a clear case of hardship or inequity

23   in being required to go forward." *Landis*, 299 U.S. at 255.

24

25

26

27

[21] Statement – ECF No. 112.

28

United States District Court
Northern District of California

The court extends the temporary stay for fourteen days.[22] Within one week, the parties must confer and submit a statement about whether they agree that a stay is appropriate or whether any party will move to stay.

## CONCLUSION

The court denies the motions for interlocutory appeal under 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

Dated: February 24, 2023

_____

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[22] Order – ECF No. 100.

ORDER – Nos. 22-cv-01274-LB and 22-cv-02705-LB     13