1  ANDREW M. ZACKS (SBN 147794)
2  EMILY L. BROUGH (SBN 284943)
   ZACKS & FREEDMAN, PC
3  1970 Broadway, Suite 1270
   Oakland, CA 94612
4  Tel: (510) 469-0555
   az@zfplaw.com
5  emily@zpflaw.com

6  PACIFIC LEGAL FOUNDATION
   JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)
7  3100 Clarendon Blvd., Suite 1000
   Arlington, VA 22201
8  BRIAN T. HODGES (Wash. Bar No. 31976)
   SAM SPIEGELMAN (N.Y. Bar No. 5573100)
9  255 South King Street, Suite 800
   Seattle, WA 98104
10 Telephone: (916) 419-7111
   JHoughton@pacificlegal.org
11 BHodges@pacificlegal.org
   SSpiegelman@pacificlegal.org
12

13 *Attorneys for all Plaintiffs and Petitioners, John Williams, et al.*

14
                    **UNITED STATES DISTRICT COURT**
15                 **NORTHERN DISTRICT OF CALIFORNIA**

16

17 JOHN WILLIAMS, et. al,                 Case Number:  3:22-cv-01274-LB Case No.:
                                          3:22-cv-02705-LB (related)
18        Plaintiffs and Petitioners,
                                          **FIRST AMENDED AND**
19                                        **SUPPLEMENTAL COMPLAINT FOR**
       vs.                               **DAMAGES; PETITION FOR WRIT AND**
20                                        **REQUEST FOR IMMEDIATE STAY**

21                                        (42 U.S.C § 1983; C.C.P § 1085)
   ALAMEDA COUNTY, ALAMEDA
22 COUNTY BOARD OF SUPERVISORS,          **DEMAND FOR JURY TRIAL**
   CITY OF OAKLAND, OAKLAND CITY
23 COUNCIL and DOES 1-10,                Action Filed: March 1, 2022
                                          Trial Date:    None set
24
       Defendants and Respondents.
25

26

27

28

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1.      Plaintiffs and Petitioners (collectively, "Plaintiffs"), hereby bring this first amended and supplemental complaint and petition for relief[1] against Defendants and Respondents ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND and OAKLAND CITY COUNCIL (collectively, "Defendants"), seeking damages caused by Defendants' residential eviction moratoriums (collectively, "Moratoriums") and subsequent "phase out" regulations, and an order declaring said regulations invalid, illegal, and unenforceable.

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the controversy arises under the United States Constitution and laws and under 42 U.S.C. § 1983, as hereinafter more fully appears.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the causes of action stated herein arise out of a common nucleus of operative fact, and thus form the same case or controversy under Article III of the United States Constitution.

## DIVISIONAL ASSIGNMENT

3.      Pursuant to Local Rule 3-2(c), this action arose in Alameda County, California and thus should be assigned to the Court's Oakland Division.

## VENUE

4.      Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all defendants/respondents reside in this judicial district and the events giving rise to the claims occurred in this district.

## PARTIES

5.      Defendant and Respondent ALAMEDA COUNTY (the "COUNTY") is a local government entity organized under the Constitution and laws of the State of California.

6.      Defendant and Respondent ALAMEDA COUNTY BOARD OF SUPERVISORS

---

[1] A blacklined comparison of the amended and supplemental complaint with the original complaint is attached hereto as **Exhibit A**.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

(the "BOARD")  is a policy making, legislative, and quasi-judicial administrative body of the COUNTY.

7.      Defendant and Respondent CITY OF OAKLAND (the "CITY") is a municipal corporation in the State of California.

8.      Defendant and Respondent OAKLAND CITY COUNCIL (the "COUNCIL") is a policy making, legislative, and quasi-judicial administrative body of the CITY.

9.      Plaintiff JOHN WILLIAMS is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

10.      Plaintiff ROBERT VOGEL is an individual over the age of 18 and is a housing provider and owner of real property in the COUNTY.

11.      Plaintiff SHEANNA ROGERS is an individual over the age of 18 and is a housing provider and the owner of real property in the COUNTY.

12.      Plaintiff MICHAEL LOEB is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

13.      Plaintiff JAQUELINE WATSON-BAKER is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

14.      Plaintiff HANNAH KIRK is an individual over the age of 18 and an owner of real property in the CITY and COUNTY located at 4514 Fairbairn Ave, Oakland, CA.

15.      Plaintiff AMI SHAH is an individual over the age of 18 and the owner of real property in the COUNTY located at 133 Gable Dr. Fremont CA 94539.

16.      Plaintiff AVINASH JHA is an individual over the age of 18 and the owner of real property in the COUNTY located at 133 Gable Dr. Fremont CA 94539.

17.      Plaintiff WILLIAM ROSETTI is an individual over the age of 18 and an owner of real properties in the CITY and COUNTY located at 125 Moss Avenue, Oakland CA and 2801 Summit Street, Oakland CA.

18.      Plaintiff MADELEEN ROSETTI is an individual over the age of 18 and an owner of real properties in the CITY and COUNTY located at 125 Moss Avenue, Oakland CA and 2801

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Summit Street, Oakland CA.

19.     Plaintiff NORMAND GROLEAU is an individual over the age of 18 and an owner of real property in the CITY and COUNTY located at 398 Euclid Ave, Oakland CA.

20.     Plaintiff MICHELLE GROLEAU is an individual over the age of 18 and an owner of real property in the CITY and COUNTY located at 398 Euclid Ave, Oakland CA.

21.     Plaintiff and Petitioner HOUSING PROVIDERS OF AMERICA ("HPOA") is a § 501(c)(4) nonprofit corporation.  HPOA is a network of housing activists fighting to protect the legal rights of housing providers, including those in the CITY and the COUNTY.  HPOA's members own rental housing in and throughout the CITY and the COUNTY, and have been directly and adversely affected by the CITY and COUNTY's residential eviction Moratoriums and the CITY's subsequent "phase out" regulations.   All of HPOA's members are housing providers in either the CITY and/or COUNTY; all of HPOA's members have renters at their properties who are taking advantage of the CITY and COUNTY's regulations, including but not limited to, refusing to pay rent for non-Covid-19 related reasons during the time period set forth thereunder, and refusing to relinquish possession, and creating nuisances and damage to HPOA's members' properties.  HPOA's members have been unable to collect rent for time periods of months and/or years with no financial relief provided by the CITY and COUNTY, and the CITY and COUNTY's complete defense against virtually all residential evictions for a period of three-plus-years have tied HPOA's members hands.  HPOA's members have suffered lost rents, devalued properties, and some face impending foreclosures and bankruptcies, as a result of the CITY and COUNTY's regulations. The harm and injury brought to HPOA's members by the regulations is current, ongoing, and concrete and particularized to all HPOA's members.  HPOA's efforts to remedy these injustices are central to its purpose of fighting to protect the legal rights of housing providers, including those in the CITY and COUNTY.  Neither the claims asserted, nor the relief requested requires the participation of individual members in this lawsuit.  HPOA has a direct and substantial interest in ensuring that Defendants' decisions are in conformity with the requirements of law, that those requirements are properly executed, and that Defendants'

duties are enforced.

22.     Plaintiff 2355 Broadway, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 2355 Broadway, Oakland CA.

23.     Plaintiff 3900 Adeline, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the COUNTY located at 3900 Adeline, Emeryville CA.

24.     Plaintiff Hollis Street Partners, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 3250 Hollis Street, Oakland CA.

25.     Plaintiff Vulcan Lofts, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 4401 San Leandro Street, Oakland CA.

26.     Plaintiff 1614 Campbell Street DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1614 Campbell Street, Oakland CA.

27.     Plaintiff 3014 Chapman DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 3030 Chapman Street, Oakland CA.

28.     Plaintiff B3 Lofts DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 5200 Adeline Street, Emeryville , CA.

29.     Plaintiff Bakery Lofts DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 4600 Adeline Street, Emeryville, CA.

30.     Plaintiff Exchange Studios DEL, LLC is a Delaware limited liability company,

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

qualified to do business in California and the owner of real property in the CITY and COUNTY located at 527 23rd Avenue, Oakland, CA.

31.     Plaintiff Madison Park Properties II DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1155 - 5th Street, Oakland CA.

32.     Plaintiff P&D 23rd Avenue Associates DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1080 23rd Avenue, Oakland CA.

33.     Plaintiff P&D 46th St. Associates DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 964 46th Street, Oakland CA.

34.     Plaintiff Sears Lofts DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 2633 Telegraph Ave, Oakland CA.

35.     Plaintiff 301 Lenox, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 301 Lenox Avenue, Oakland CA.

36.     Plaintiff 2228 Union Street Investors, LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1438 Madison Street, Oakland CA, 7511-7527 Bancroft Avenue, Oakland CA, 8603 Hillside Street, Oakland CA, and 8701 Hillside Street, Oakland CA.

37.     Plaintiff J & R Land & Cattle LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1551 Madison Street, Oakland CA and 2000 E. 30th Street, Oakland CA.

38.     Plaintiff J & R Land & Cattle II LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1935-1948 E. 29th Street, Oakland CA, 1935-1945 E. 30th Street, Oakland CA, and 2032-2040

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

E. 30th Street, Oakland CA.

39.     Plaintiff Westpark Apartments, LLC is a California limited liability company, qualified to do business in California and the owner of real properties in the CITY and COUNTY, located at 433 Perkins Street, Oakland CA, 1553 Alice Street, Oakland CA, and 4220 Montgomery Street, Oakland CA.

40.     Plaintiff Westpark II, GP is a California partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1530 Harrison Street, Oakland CA and 1555 Madison Street, Oakland CA.

41.     Plaintiff 685 Scofield, LLC is a California limited liability company, qualified to do business in California, and the owner of real property in the CITY and COUNTY located at 385-389 Palm Avenue, Oakland CA.

42.     Plaintiff 296 Mather Street, LLC is a California limited liability company, qualified to do business in California, and the owner of real property in the CITY and COUNTY located at 296 Mather Street #7, Oakland, CA.

43.     Plaintiff BayOak Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real property in the CITY and COUNTY located at 2375 Fruitvale Ave #301, Oakland CA.

44.     Plaintiff Burling Street Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 1692 12th Street, Oakland CA, 1694 12th Street, Oakland CA, and 1704 Upper 14th Street, Oakland CA.

45.     Plaintiff Rising Tide Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 722 Upper 30th Street, Oakland CA, 923-923A Apgar Street, Oakland CA, 827 30th Street Oakland, CA, 1630 Lower Center Street, Oakland CA, 3629 West Street, Oakland CA, 835 40th Street #4, Oakland CA, 860 34th Street, Oakland CA.

46.     Plaintiff Oakland Point Properties, LLC is a California limited liability company,

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 1630 Lower Center Street, Oakland CA, 3629 West Street, Oakland CA, 40th Street #4, Oakland CA, 860 34th Street, Oakland CA.

47.     Plaintiff Truckee Zurich Place, LLC is a Delaware limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 1036 62nd Street #4, Oakland CA, 2215 Eighth Street, Berkeley CA, 2839 Linden Street, Oakland CA, 1692 12th Street, Oakland CA, 1694 12th Street, Oakland CA, 1704 Upper 14th Street, Oakland CA.

48.     Plaintiff 18th & Linden, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1054 18th Street, Oakland CA.

49.     Plaintiff 220 Grand Investors, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 220 Grand Avenue, Oakland CA.

50.     Plaintiff 818 East 20th Street Oakland, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 800-818 E 20th Street, Oakland CA.

51.     Plaintiff 1130 30th Street, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 3649 Martin Luther King Jr Way, Oakland CA.

52.     Plaintiff 1701-1703 36th Avenue Oakland, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1701-1707 36th Avenue, Oakland CA.

53.     Plaintiff 1732-1744 27th Avenue, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1732-1744 27th Avenue, Oakland CA.

54.     Plaintiff 1844 7th Avenue 2013, LLC is a California limited liability company,

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   qualified to do business in California and the owner of real property in the CITY and COUNTY

2   located at 1844 7th Avenue, Oakland CA.

3         55.    Plaintiff 2000 Linden Street, LLC is a California limited liability company,

4   qualified to do business in California and the owner of real property in the CITY and COUNTY

5   located at 2000 Linden Street, Oakland CA.

6         56.    Plaintiff 2019 ABD Ozone Fund, LP is a California limited partnership, qualified

7   to do business in California and the owner of real property in the CITY and COUNTY located at

8   831 6th Avenue, Oakland CA.

9         57.    Plaintiff 2367 Washington, LLC is a California limited liability company,

10  qualified to do business in California and the owner of real property in the CITY and COUNTY

11  located at 245 Lee Street, Oakland CA.

12        58.    Plaintiff 2531 East 16th Street, LP is a California limited partnership, qualified to

13  do business in California and the owner of real property in the CITY and COUNTY located at

14  1638 47th Avenue, Oakland CA.

15        59.    Plaintiff 2701 High Street, LP is a California limited partnership, qualified to do

16  business in California and the owner of real property in the CITY and COUNTY located at 2701

17  High Street, Oakland CA.

18        60.    Plaintiff ABD Suites, LP is a California limited partnership, qualified to do

19  business in California and the owner of real properties in the CITY and COUNTY located at 1008

20  E 23rd Street Oakland, CA and 1722 27th Avenue Oakland, CA.

21        61.    Plaintiff 301 Hannah Park, LP is a California limited partnership, qualified to do

22  business in California and the owner of real property in the CITY and COUNTY located at 2850

23  Hannah Street, Oakland CA.

24        62.    Plaintiff Oakbrook Partners, LP is a California limited partnership, qualified to do

25  business in California and the owner of real properties in the CITY and COUNTY located at

26  1125-1135 E 18th Street, Oakland CA and 1221 E 20th Street, Oakland CA.

27        63.    Plaintiff Riaz Capital Ozone Fund III, LP is a California limited partnership,

28

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1705 Mandela Parkway, Oakland CA, 2133-2143 Dwight Way, Berkeley CA, 2618 Martin Luther King Jr Way, Berkeley CA.

64.     Plaintiff Riaz Taplin, trustee of The A.R.T. Trust is an individual over the age of eighteen.  The A.R.T. Trust is the owner of real properties in the CITY and COUNTY located at 1454 36th Avenue, Oakland CA, 1616 35th Avenue, Oakland CA, 1828 28th Avenue, Oakland CA, 2166 E 27th Street, Oakland CA, 2554 E 16th Street, Oakland CA, 3700 International Boulevard, Oakland CA.

65.     Plaintiff 1715 FFT, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1715 High Street Oakland, CA.

66.     Plaintiff 1830 6th Ave Oakland, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1830 6th Avenue Oakland, CA.

67.     Plaintiffs are not aware of the identities of defendants/respondents DOES 1-10, who are responsible for the acts and omissions alleged herein and that caused damage to Plaintiff; therefore, Plaintiffs will amend this Complaint when the true identities of DOES 1-10 are ascertained.

68.     Plaintiffs are informed and believe that at all times mentioned in this Complaint, all defendants/respondents were the agents or employees of their co-defendants/respondents, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

## **STATEMENT OF FACTS**

### A. **Background: The California Governor's Order and the COVID-19 Renter Relief Act.**

69.     In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

(ESA), Gov. Code sec. 8550, et seq.  On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict for nonpayment of rent due to the Covid-19 crisis.  In pertinent part, that order provided:

> [T]he statutory cause of action for unlawful detainer, Code of Civil Procedure section 1161 et seq., and any other statutory cause of action that could be used to evict or otherwise eject a residential . . . . renter . . . is suspended only as applied to any tenancy . . . to which a local government has imposed a limitation on eviction pursuant to this paragraph 2 [relating to inability to pay rent because of Covid-19 financial distress], and only to the extent of the limitation imposed by the local government. Nothing in this Order shall relieve a renter of the obligation to pay rent, nor restrict a housing provider's ability to recover rent due.

(Executive Order (EO) N-28-20.)  The March 16, 2020 provision, permitting local government to temporarily limit Covid-19-related nonpayment evictions, expired on September 30, 2020. (EO N-71-20.)

70.     Prior to the expiration of that provision, the California Legislature enacted the "COVID-19 Renter Relief Act" and the "COVID–19 Small Housing provider and Homeowner Relief Act of 2020" via AB 3088, effective August 31, 2020.  AB 3088 in part amended the State's unlawful detainer (UD) statutes, Code of Civil Procedure section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ."  Among other things, AB 3088 provided statewide eviction protections during a particular time period for renters who could not pay their rent for Covid-19-related reasons.  AB 3088 also directed state agencies to engage about potential strategies for relief for renters and housing providers who suffered Covid-19-related financial hardship.

71.     Notably (and consistent with the Governor's prior order), AB 3088's temporary moratorium on residential evictions was *specifically* limited to those based upon inability to pay for Covid-19-related financial distress.  Even during the temporary moratorium, housing providers were still permitted to file actions for, and courts were still permitted to find renters

guilty of, UD for fault, and no-fault "just cause" as defined under Civil Code sec. 1946.2.[2] (CCP § 1179.03.5(a)(3).)

72.     AB 3088 also provided "this section addresses a matter of statewide concern rather than a municipal affair." The intent of the legislation "is to protect individuals ***negatively impacted*** by the COVID-19 pandemic," and "does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect renters from eviction." (CCP § 1179.05(b), (e), (f), emph. add.)  While AB 3088's amendments continued to recognize local government's authority to enact eviction protections, it did not give carte blanche authority to do so, nor did it immunize "emergency" municipal regulations from challenges based on state law preemption.

73.     The Covid-19-related nonpayment eviction protections of AB 3088 were extended thereafter through SB 91 AB 832, and AB 2179.  These enactments protected affected renters from eviction during this extended time period under the UD statutes so long as they complied with the Covid-19-related financial distress requirements.

74.     These enactments further clarified the State's rental assistance program.  Starting October 1, 2021, and until July 1, 2022, for any Covid-19-related hardship rental debt that came due between those dates, a renter was required to show that they completed an application for rental assistance through the State program.  If they did not, the housing provider could move forward with an UD action for nonpayment of rent.   A housing provider could also have moved forward with a UD action if the rental assistance application was denied.  (CCP § 1179.11(a), (c).)

---

[2] Civil Code sec. 1946.2, which delineates California's "just causes for eviction," does not apply to residential rental property subject to a local ordinance requiring just cause for termination. However, any local "just cause" provision enacted or amended after September 1, 2019, that is more "protective" than Civ. Code sec. 1946.2, must be consistent with that provision, and "not prohibited by any other area of law." (Civ. Code § 1946.2(g)(1).)

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

B. **The CITY's Eviction Moratorium**

75.     On March 9, 2020, the CITY declared a local state of emergency due to Covid-19.  The CITY's local emergency was ratified on March 12, 2020, via Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies under specified circumstances.  (Gov. Code §§ 8558(c), 8630.)  The ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date."  (Gov. Code § 8630 (d).)

76.     After ratifying the Local Emergency, on March 27, 2020, the CITY passed its eviction moratorium, Ordinance No. 13589.  That moratorium not only prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all other evictions*, with few exceptions:

> **Residential Eviction Moratorium.** Except when the renter poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (–) – (10) [excepting Ellis Act evictions] that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.

77.     Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended."  (Ordinance No. 13589.)  Subsequently, the moratorium was extended until "the Local Emergency declared on March 9, 2020 has been terminated by the City Council, or August 31, 2020, whichever comes first."  (Ordinance no. 13594.)  However, on July 7, 2020, the extension on the eviction moratorium was again amended to *only* expire when the local Emergency had been terminated by the COUNCIL.  (Ordinance No. 13606 (Ex. 1).)  The local Emergency has no stated expiration date and the CITY's position is that it has not expired.

78.     After this action was filed, the CITY enacted Ordinance No. 23-0216 ("Phase Out Ordinance") on May 2, 2023, which, while providing for a "phase out" of the CITY's moratorium, also kept the "local emergency" in place. The Phase Out Ordinance provides that the CITY's moratorium shall end on July 15, 2023.   However, the Phase Out Ordinance

1  continued to prohibit evictions for virtually any reason, including non-payment, if the grounds
2  for eviction arose between March 9, 2020 and July 14, 2023.  Thus, per the Phase Out Ordinance,
3  the effect of the CITY's moratorium is still in place for that three-year-plus period .  The Phase
4  Out Ordinance also amended the CITY's Rent Ordinance, further restricting housing providers'
5  "just cause" reasons for eviction.  For example, the amendments introduced substantive hurdles
6  to OMC § 8.22.360(A)(1) and (2), first by prohibiting housing providers from demanding less
7  than one month of "fair market" rent, and second, by putting the onus on housing providers to
8  prove that a material term of a lease is "reasonable" when a renter substantially violates that
9  term, and the renter's behavior "unreasonable" in light of that term.

## C.  <u>The COUNTY's Eviction Moratorium</u>

11       79.      The COUNTY ratified its local emergency on March 10, 2020.  (Res. No. R-
12  2020-91.)  On April 21, 2020, the BOARD adopted Urgency Ordinance No. O-2020-23, which,
13  like the CITY's moratorium, purported to prohibit most evictions—for any reason.  The language
14  in the urgency ordinance was then made a permanent part of the COUNTY's Code of Ordinances
15  on June 23, 2020.  (Ordinance No. O-2020-32; ACCO § 6.120 (Ex. 2).)  The COUNTY's
16  moratorium applied to "all evictions from residential units in the unincorporated and
17  incorporated areas of the county" subject to very few exceptions.  (ACCO § 6.120.030.)  These
18  exceptions were (1) Ellis Act withdrawals; (2) government orders requiring the unit to be
19  vacated; or (3) "the resident poses an imminent threat to health or safety."  (ACCO §
20  6.120.030(F).)  Like the CITY's moratorium, the COUNTY'S moratorium provided that it was
21  an "absolute defense" to an unlawful detainer action brought during its term.  (ACCO §
22  6.120.030(D).)

24       80.      As enacted, the moratorium expired sixty days "after the expiration of the local
25  health emergency."  (ACCO § 6.120.030.)  Per the ratification of the local emergency, the local
26  emergency "shall remain in effect until the [BOARD] determines that the emergency no longer
27  exists."  (Res. No. R-2020-91.)  On February 28, 2023, the COUNTY rescinded its local
28  emergency.  Accordingly, the COUNTY's moratorium expired on April 29, 2023.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Notwithstanding, it is the COUNTY's position that evictions are prohibited for virtually any reason, including non-payment and even if there was no Covid-19 relate financial distress, if the grounds for eviction arose between March 9, 2020 and April 28, 2023.  Thus, the effect of the COUNTY's moratorium is still in place for that three-year-plus period.

### D.  The COUNTY and CITY's Rent Relief Assistance Programs

81.     State law requires local governments to develop mechanisms by which housing providers and renters may file applications for, and receive if eligible, Covid-related rent relief.

82.     The CITY operated a rent relief assistance program called "Oakland's Emergency Rental Assistance."[3] At the time of filing this action, Oakland's Emergency Rental Assistance website stated: "UPDATE. PLEASE NOTE. As of January 7, the City of Oakland's Emergency Rental Assistance program is oversubscribed.  Tenants and Landlords may still submit an application but will be placed on a waitlist."  Currently, the website instead refers applicants to the COUNTY's rent relief assistance program, "Housing Secure." However, since this action was filed, the Housing Secure website states: "We have received more requests for funds than we have currently available." [4]

83.     Importantly, tenants in the CITY and COUNTY need not to participate in *any* rent relief program to avoid eviction under the relevant three-year-plus time frames of the Moratoria and the Phase Out Ordinance; the Moratoria and the Phase Out Ordinance's ban on evictions for the three-year-plus period prohibit evictions even for those tenants who refuse to cooperate with a landlord's request that they seek relief under these programs. This directly contradicts the purpose, intent and procedures of state law.

### E.  The Moratoriums' Detrimental Impact on Plaintiffs

84.     The Moratoria, and as codified through the Phase Out Ordinance, have had devastating impacts on housing providers throughout the CITY and COUNTY, and to all

---

[3] https://www.oaklandca.gov/departments/department-of-housing-and-community-development
[4] https://www.ac-housingsecure.org/?locale=en

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Plaintiffs in this action.  The following cases are but a few more detailed examples.

85.    Plaintiff JOHN WILLIAMS is a housing provider in the CITY and COUNTY and owns the property at 1109 32nd Street, Oakland, CA. ("1109 32nd Street"). 1109 32nd Street is a duplex, and the rent for the property only barely covered WILLIAMS' property expenses for 1109 32nd Street.  The renter in the three-bedroom one-bath downstairs unit, Martina Martin, has occupied the unit for approximately twelve years, and until the Moratoria were enacted, always paid the rent for the unit, which was approximately $1,500.00 per month.  After the CITY and COUNTY enacted the Moratoriums, however, the renter stopped paying rent and refused to pay through the entire duration of the CITY's Moratorium.  The renter's failure to pay is not related to any Covid-19 related reason.  In fact, the renter operated a moving and storage business, "Martina's Ride" out of her unit since 2017, and through much of 2021.  The renter refuses to cooperate with WILLIAMS' efforts to obtain unpaid rents through the rent relief program, and therefore the CITY rejected WILLIAMS' application for noncompliance. The renter in the upper unit vacated in March of 2021. WILLIAMS was concerned that a new renter would move in and refuse to pay rent, so he kept that unit vacant after the renter left.  In October of 2021, WILLIAMS was so riddled with stress caused by his non-paying renter and the very real possibility of losing 1109 32nd Street to foreclosure, he was hospitalized and, to date, remains disabled as a result.  His disability forced him to quit his job and move into the upper unit of 1109 32nd Street—directly above his non-paying renter—to save money.  WILLIAMS was unable to commence a nonpayment eviction against his renter as a direct result of the Moratoriums and in contravention of state law.  While WILLIAMS has recently received some mortgage assistance from the State of California, he has not received any back rent payments, nor does the amount of mortgage assistance that WILLIAMS has received cover what his nonpaying tenant refused to pay.

86.    Plaintiff ROBERT VOGEL ("VOGEL") is a housing provider in the COUNTY and owns a rental property located 20076 Emerald Ct., Castro Valley, CA ("20076 Emerald"). 20076 Emerald is a three-bedroom, one bath, 853 sq. ft single family home.  VOGEL is semi-

retired and is a disabled paraplegic.  VOGEL relies on the rental income from 20076 Emerald for a substantial source of retirement income. VOGEL is required to pay approximately $1,328 per month for 20076 Emerald's mortgage, taxes and insurance, garbage service, and fees for property management.  The former renter at 20076 Emerald lived there for approximately twelve years, and her current rent was $2,000 per month, however she stopped paying any rent in September 2021, and has not paid any rent since that date and only just recently vacated.  The renter's failure to pay prevented VOGEL from being able to refinance 20076 Emerald to a lower rate. The renter also stopped maintaining 20076 Emerald's landscape and would park her car on the front yard.  The renter's failure to pay was not related to any Covid-19 related reason.  While the renter finally agreed to cooperate with the local and state rent relief programs, VOGEL only received a portion of the unpaid back rent.  Most recently, VOGEL learned that his former nonpaying renter may have been selling and/or manufacturing methamphetamine at 20076 Emerald.  The renter covered all of the windows at the property, and neighbors reported strong chemical odors coming from the home. There was a "revolving door" of people making multiple, brief visits per day to the property, at all hours. When VOGEL was finally able to gain possession of 20076 Emerald, he discovered large quantities of drug paraphernalia, including what appeared to be used meth pipes and small zip-lock baggies.  A large quantity of white powder was found in an ice chest, which VOGEL's agent turned over to the police.  The renter had also stopped cleaning the house, leaving food and garbage everywhere, which caused a rat infestation that VOGEL was required to remediate.  The renter also had multiple dogs in the house in violation of the lease, which repeatedly urinated and defecated indoors, and scratched through areas of drywall.  When 20076 Emerald was finally recovered, there were puddles of dog urine on the floors, and an extreme stench which took months and multiple cleanings to remedy.  VOGEL's bank account was depleted because of having to carry all the costs of 20076 Emerald, and having to make significant repairs to the property damage caused by his nonpaying renter, and he is deeply concerned he will lose the property as the result of his inability to meet the financial obligations of ownership.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

87.     Plaintiff SHEANNA ROGERS is a housing provider in the COUNTY and owns the property at 23243 Maud Ave., Hayward CA ("23243 Maud Ave.") At one time, ROGERS ran a small, three-bedroom, independent living facility at 23243 Maud Ave., where she & her husband cared and provided for people who needed a "helping hand" to get on their feet. Many clients had lived at this address for over 5 years. ROGERS served a vulnerable population at the living facility; her clients often had mental disabilities and no families to turn to. ROGERS was able to provide her clients with a safe living space and meals they could count on at 23243 Maud Ave. In addition to the independent living facility space, 23243 Maud Ave. has a separate studio unit. ROGERS rented this unit in 2018 for $1000 per month. That renter was never part of the independent living facility program. ROGERS depends on this supplemental rental income to support her and her family. Prior to the COUNTY'S enactment of its Moratorium, the renter began harassing ROGER's clients in the independent living facility. The renter would scream profanities at ROGERS' clients and throw garbage from his unit into the street directly in front of the property. The renter's harassment of ROGERS' clients got so bad that ROGERS was forced to file a restraining order against the renter and commence eviction proceedings. In February 2020, ROGERS and the renter came to a settlement agreement, whereby the renter agreed to vacate the property in April of 2020. However, after the COUNTY enacted its Moratorium, in March 2020, the renter refused to leave. The renter did not pay rent for over three years. The renter's failure to pay was not related to any Covid-19 related reason. Meanwhile, the renter's harassment of ROGERS' clients persisted, and ROGERS was forced to close her business as a result. ROGERS has also suffered devastating health consequences as a result of the stress caused by her nonpaying renter.  ROGERS has applied for rental assistance from the COUNTY, however, because her renter will not cooperate, and his non-payment has nothing to do with Covid- 19 the COUNTY has refused to provide her with any relief.

88.     Plaintiff JAQUELINE WATSON-BAKER is a housing provider in the CITY and COUNTY and owns the property at 1225-1227 92nd Ave Oakland, CA. ("1225-1227 92nd Ave"). 1225-1227 92nd Ave was purchased by WATSON-BAKER's mother in or about the 1950's.

WATSON-BAKER's mother, who moved from to California from the Southern United States, was one of the first African Americans to own property in her East-Oakland neighborhood. 1225-1227 92nd Ave is a duplex, with a two-bedroom, two-bath front unit, and a one-bedroom one-bath back unit.  The renter in the back unit, Unit 1227, originally moved into the property in 2016.  Thereafter, WATSON-BAKER attempted to get access to the unit because the renter had put tinfoil over the windowpanes and had installed an air conditioner, and she was concerned about the renter's activity at the property.  When WATSON-BAKER arrived at the property, the renter stated that he did "not believe that a black woman" owned the property and demanded to see her identification.  WATSON-BAKER showed the renter her identification, which the renter snatched out of her hand, but the renter still refused her access to the unit.  Thereafter, the renter would insist on dropping off his rent check at WATSON-BAKER's home address, even though she asked him multiple times to mail it to a P.O. Box. WATSON-BAKER continued to see concerning signs at the property, but the renter continued to refuse her access. For example, she saw signs of rat infestation, but when she sent an exterminator, the renter would not give the exterminator access and turned his dogs loose on them. The exterminator eventually refused to go back to the property. Because the tenant refused to grant her access, and WATSON-BAKER became increasingly concerned about the unit's condition, WATSON-BAKER filed for relief in court in or about 2018.  The renter of the front unit of 1225-1227 92nd Ave Oakland left in 2019 because of the renter of the back unit's erratic behavior, and that unit has remained vacant since due to the renter's behavior. WATSON-BAKER finally obtained a court date for March of 2020, which then was pushed back due to shelter in place orders.  The renter stopped paying rent just prior to this time.    The renter's failure to pay was not related to any Covid-19 related reason. WATSON-BAKER finally got access to the unit and saw that the unit was in gross disrepair. The renter put foil on all the unit's windows, there are dark yellow streaks running down the walls, and one of the unit's cabinets is hanging down from the ceiling.  The unit was infested with insects and there was feces and urine all over the bathroom of the unit, and dog feces and garbage covered the unit's backyard.  Notwithstanding the renter's damage to and perpetuation

1  of a nuisance on her property, WATSON-BAKER was prevented from evicting the renter under

2  the COUNTY's Moratorium.    WATSON-BAKER considered selling the property, however,

3  was advised that the renter's actions had devalued her property by almost a third of the market

4  value. WATSON-BAKER applied for rental assistance from the COUNTY, however, her renter

5  initially refused to cooperate with her.  After he finally agreed to fill out an application, the

6  COUNTY informed WATSON-BAKER that it could be up to a year until she received any rental

7  relief funds.

8        89.    Plaintiff Michael Loeb is a housing provider in the CITY and COUNTY and

9  owns units 2501 and 2502 at 565 Bellevue Avenue, Oakland, California (565 Bellevue

10  Units).  Loeb, a 74 year-old widower, lived with his wife in Piedmont, until she died in 2015,

11  after nearly 46 years of marriage. After her death, and, in part, because of mobility issues

12  resulting in back surgery, he sold his home.  He purchased the 565 Bellevue Units in April, 2020,

13  with the intent to combine and occupy them as his home, for his own use, for the remainder of

14  his life.  Renter Joshua Bloomfield (Bloomfield), a 1996 Graduate of the University of

15  Pennsylvania, and 2000 UCLA School of Law graduate, is a successful class action lawyer with

16  a prominent Oakland based class action law firm.  Bloomfield currently pays LOEB $2,200 per

17  month in rent for a studio apartment.  LOEB has attempted to voluntarily negotiate an owner

18  move in with Bloomfield, offering him $30,000 to move out.  This is more than four times the

19  amount of $7,116.22 required as a relocation payment under the Oakland Just Cause for Eviction

20  Ordinance,    which    is    codified    at    Oakland    Municipal    Code    section    8.22.850.

21  However, Bloomfield demanded that LOEB pay him more than $160,000 to vacate, telling

22  LOEB that "it's nothing personal, just business."  Multiple other comparable units

23  became available in the same building and could have been occupied by Bloomfield.  Bloomfield

24  has not claimed any Covid related hardship.  LOEB was unable to commence an owner-move in

25  eviction due to the Moratoriums.

26

27        90.    Plaintiff HANNAH KIRK is a housing provider in the CITY and COUNTY and

28  owns a single-family home at 4514 Fairbairn Ave, Oakland, CA.  KIRK is a single mother and

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

lived in 4514 Fairbairn Ave with her two children.  KIRK's renter moved into her home in 2019, and the agreed upon rent was $800 per month.  The renter shared KIRK's kitchen and bathroom at KIRK's home.  KIRK's renter paid rent consistently until July 1, 2021, whereupon she stopped paying rent but did not move out of KIRK's home when asked.  The renter also did not cooperate with the rental assistance programs, or return the Covid-19 declarations that KIRK provided to her, and instead accused KIRK of harassing her.  Notwithstanding the renter's failure to pay rent even though no Covid-19 related reason existed, KIRK was prevented from evicting the renter under the CITY and COUNTY's Moratorium.  After spending almost two years having to carry the expenses of the renter and having to face the nonpaying renter on a daily basis inside of her own home, KIRK moved out of her home due to the severe emotional distress the situation was causing her and her children.  KIRK has not been able to pay her mortgage for approximately eight months and fears she will lose her home.

91.    Plaintiff AMI SHAH and AVINASH JHA were housing providers in the CITY and COUNTY and own a single-family home at 133 Gable Dr. Fremont CA.  SHAH and JHA purchased 133 Gable Dr. in 2019, intending it to be their primary residence.  However, for financial reasons, SHAH and JHA were required to rent 133 Gable Dr. until their lease obligations for their own rental were met.  They did so, but after the COUNTY enacted its Moratorium, SHAH and JHA's renters stopped paying rent, and refused to apply for rent relief through the state and local rent relief programs.  Not only did SHAH and JHA's renters stop paying rent, but the renters physically converted 133 Gable Dr. into an "Airbnb motel," renting out the individual rooms.  SHAH and JHA reported the renters' unlawful activity to the Fremont police, and during the investigation it was discovered that the renters were conducting similar fraudulent rental activity with other homes as well.  During the investigation, the renters abandoned the property, but the AirBnb guests did not, and refused to move out.  Throughout, SHAH and JHA were prevented from evicting their nonpaying and breaching renters and the AirBnb guests due to the COUNTY's Moratorium.  During this time, both the renters and the Airbnb guests filed several frivolous legal actions against SHAH and JHA, most of which were later dismissed.  When the

Airbnb guests finally abandoned the property, SHAH and JHA were left with rental losses, legal fees and a home that was destroyed, and with a huge toll on their finances and health.

92.     Plaintiffs named in Paragraphs Nos. 17-20 and 22-66 have also suffered devasting financial losses because of the Moratoria and Phase Out Ordinance. As alleged herein, all Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 own real property in either the COUNTY or the CITY or both. All Plaintiffs' properties listed in Paragraphs Nos. 17-20 and 22-66 are rental properties and/or contain rental units, and Plaintiffs named in Paragraphs Nos. 17-20 and 22-66 are housing providers of these rental properties.

93.     Plaintiffs named in Paragraphs Nos. 17-20 and 22-66 purchased all of these rental properties prior to the Moratoria being enacted with objective reasonable investment backed expectations based upon the regulatory environment in place at the time of purchase. When determining whether their purchase of these rental properties would be fruitful business investments, Plaintiffs named in Paragraphs Nos. 17-20 and 22-66's relied on the same longstanding property law principles that other market participants would have relied on, namely, that a housing provider-renter relationship could only be maintained when there was payment of rent in exchange for possession and so long as the renter complied with the material terms of the lease. When determining whether their purchase of the rental properties would be fruitful business investments, Plaintiffs named in Paragraphs Nos. 17-20 and 22-66's relied on the COUNTY and CITY just cause eviction ordinances then in place, including but not limited to, the ability to evict a renter who failed to pay rent or otherwise violated the material terms of the lease but was still in possession of their property. Prior to the Moratoria being enacted, Plaintiffs named in Paragraphs Nos. 17-20 and 22-66's rental properties were profitable businesses, all of which yielded an average of many thousands of dollars a year in profit.

94.     All properties listed in Paragraphs Nos. 17-20 and 22-66 have been occupied by renters during the Moratoria. Since the Moratoria were enacted, and through the Moratoria's duration, all Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 have had renters at these properties who have refused or failed to pay rent for their units or otherwise violated the material

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

terms of their leases.  Many of the renters that occupy the properties listed in in Paragraphs Nos. 17-20 and 22-66 did not cooperate with Plaintiffs' efforts to assist them in obtaining rental assistance through the CITY and COUNTY programs, resulting in Plaintiffs' inability to mitigate their lost rental profits.  Other renters of the rental properties listed in Paragraphs Nos. 17-20 and 22-66 did not qualify for rental assistance because their income level was too high and/or because they were not impacted by a Covid-19 related reason, resulting in Plaintiffs' inability to mitigate their lost rental profits.  Plaintiffs' renters of the rental properties listed in Paragraphs Nos. 17-20 and 22-66 also committed acts that damaged these properties during the time the Moratoria were in effect, which further devalued their properties.

95.     Despite the above acts, the blanket Moratoria and the Phase Out Ordinance prohibited Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 from evicting these renters during the time the Moratoria were in place.  Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 have seen significant losses in property values as a direct result of the Moratoria enabling renters to fail to pay rent for any reason at all, to damage these properties without consequence, and to violate the material terms of their leases with impunity.  These rental properties have lost many millions of dollars in property value and income as a direct result of the Moratoria and Phase Out Ordinance.  Moreover, as a result of the CITY and COUNTY Moratoria and Phase Out Ordinance, Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66's collective losses in rent and property damages, and other damages are in excess of tens of millions of dollars.

96.     The COUNTY and CITY are aware that the Moratoria and Phase Out Ordinance solely target housing providers in favor of renters, by allowing renters carte blanche to refuse to pay rent without basis, and permit renters to cause damage to housing providers' properties and otherwise violate their leases without consequence. Despite the significant harm the Moratoria and Phase Out Ordinance has caused housing providers, COUNTY and CITY have refused to amend these regulations.  Accordingly, the character of the Moratoria and Phase Out Ordinance placed a severe and disproportionate regulatory burden upon Plaintiffs and forced Plaintiffs to carry the cost of a public program.  These regulations were the functional equivalent of a classic

taking in which government directly appropriates private property or ousts the owner from his or her domain.

### FIRST CLAIM

**(Violation of the 5th Amendment to the U.S. Constitution – Against All Defendants (42 U.S.C. § 1983))**

97.     Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 96 of this Complaint.

98.     By enacting the Moratoriums and the Phase Out Ordinance, the COUNTY and the CITY violated the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation.  The Moratoriums and the Phase Out Ordinance violate the Fifth Amendment of the United States Constitution on their face and as applied to Plaintiffs.

99.     Defendants' Moratoriums and the Phase Out Ordinance purport to prohibit Plaintiffs from evicting any renter in the CITY and COUNTY for virtually any reason, with few exceptions under the three-year-plus timeframes thereunder.  The Moratoriums and the Phase Out Ordinance perpetrate physical takings by illegally nullifying Plaintiffs and other housing providers' right to occupy their properties without just compensation; the Moratoriums and the Phase Out Ordinance *eliminate* renters' rent obligations and sanction renters' trespassing on Plaintiffs' properties. Preventing housing providers "from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." (*Alabama Association of Realtors v. Department of Health and Human Services* (2021) 141 S.Ct. 2485, 2489; also see, *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 435; *Cedar Point Nursery v. Hassid* (2021) 141 S. Ct 2063; *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 655 [Physical taking occurs when a regulation "effectively extinguish[es] plaintiffs' right to occupy substantial portions of their property"].)

100.     The COUNTY and the CITY's moratoriums and the Phase Out Ordinance also unreasonably and substantially interfered with Plaintiffs' investment-backed expectations, singled out Plaintiffs to bear the full cost of public benefits, and result in either a substantial or

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

total deprivation of the economic value of Plaintiffs' properties.  (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104.)  The Moratoriums devalued properties by prohibiting Plaintiffs from recovering possession of their properties—even for their personal use—and even despite renters perpetuating ongoing nuisances and/or committing material violation(s) of the lease.  The Moratoriums and the Phase Out Ordinance further devalue properties by prohibiting eviction for *continued* nonpayment of rents for over a period of three years.  Plaintiffs have suffered significant financial losses due to the Moratoriums, and continue to suffer these losses under the Phase Out Ordinance, notwithstanding the expiration of the Moratoria, because the current government "relief" programs in place, have resulted in little to no relief.  Plaintiffs' "investment-backed expectations" have been violated as a matter of law.  (*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles* (C.D. Cal. 2020) 500 F. Supp. 3d 1088, 1096, *aff'd*, (9th Cir. 2021) 10 F.4th 905.) This is especially so when applied in light of "the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [Citation.]" (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606.)

101.    For the foregoing reasons, the Moratoriums and the Phase Out Ordinance constitute takings without just compensation, and thus violates Plaintiffs' rights protected by the United States Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

102.    As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

## SECOND CLAIM
### (Inverse Condemnation – Violation of Article I, Section 19 of the California Constitution)

103.    Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1

through 102 of this Complaint.

104.    The Moratoriums and the Phase Out Ordinance violate Article I, Section 19 of the California Constitution on their face and as applied to Plaintiffs, for all the reasons alleged herein.

105.    The Moratoriums and the Phase Out Ordinance therefore constitute takings without just compensation, and thus violate Plaintiffs' rights protected by the California Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.

106.    As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.

### THIRD CLAIM
#### (Violation of Due Process (42 U.S.C. § 1983))

107.    Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 106 of this Complaint.

108.    The Moratoriums and the Phase Out Ordinance violate Plaintiffs' substantive and procedural due process rights under the U.S. Constitution.  (*Lockary v. Kayfetz*  (9th Cir. 1990) 917 F.2d 1150, 1155; *Weinberg v. Whatcom County* (9th Cir. 2001) 241 F.3d 746, 752-755.)  The Moratoriums and the Phase Out Ordinance violate Plaintiffs' substantive due process rights on their face and as applied because Plaintiffs' have protected property interests in their real properties, and Defendants' imposition of the blanket Moratoriums and the Phase Out Ordinance for that three-plus year time period are irrational and lacking in a legitimate government interest because there is no justification for such extreme measures.  Indeed, California's COVID-19 Renter Relief Act never imposed such draconian restrictions.  Further, the Bay Area saw significant improvement in circumstances relating to the pandemic since March of 2020, has a high rate of vaccinations, and federal and state officials recognized during the period of time the

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Moratoria were in place that Covid-19 was either in, or moving to, an endemic stage. The pandemic should not have been used as a "cursory" justification for what would otherwise be an illegal law. (See, *Texas v. United States* (S.D. Tex. Aug. 19, 2021) No. 6:21-CV-00016, 2021 WL 3683913, at \*45; *Chrysafis v. Marks* (2021) 141 S.Ct. 2482; *Tandon v. Newsom* (2021)141 S.Ct. 1294.) Defendants therefore have no rational basis for the Moratoriums and the Phase Out Ordinance, and any offered is plainly pretext. The Moratoriums and the Phase Out Ordinance violate procedural due process because they, in effect, deprive Plaintiffs of *any* procedure to recover their properties under most cases under the time period set forth thereunder.

109.    The aforesaid acts, and as further alleged herein, therefore constitute violations of Plaintiff's procedural and substantive due process rights. An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary. (28 U.S.C. § 2201.)

110.    As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, emotional distress, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial. Plaintiffs are also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

### FOURTH CLAIM
**(Violation of Equal Protection (42 U.S.C. § 1983))**

111.    Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 110 of this Complaint.

112.    The Moratoriums and the Phase Out Ordinance violate Plaintiffs' right to equal protection of the laws, on their face and as applied. The purpose of the Moratoriums and the Phase Out Ordinance is to unlawfully single out, penalize, and target Plaintiffs, and all housing providers in the CITY and COUNTY, by preventing them from lawfully exercising their property rights to receive rents, occupy their properties, exclude others from their properties, and protect their properties from nuisance and damage. The "emergency" under which the Moratoriums were enacted no longer existed during their imposition; the Bay Area was open for business, has a high

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1    rate of vaccinations, and federal and state officials recognized that Covid-19 was either in, or

2    moving to, and endemic stage. Thus, any stated rational government purpose to the contrary is

3    pretext.

4           113.    For the foregoing reasons, the Moratoriums and the Phase Out Ordinance violate

5    Plaintiffs' right to equal protection of the law, and as a result, Plaintiffs have suffered out of

6    pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to

7    be ascertained to be further determined at trial.  An actual controversy has arisen and now exists

8    between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration

9    of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.) Plaintiffs have

10   also entitled to recover their attorneys' fees under 42 U.S.C. § 1983.

11                                          **FIFTH CLAIM**
12                            **(Writ of Mandate (CCP §§ 1085 or 1094.5))**

13          114.    Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1

14   through 113 of this Complaint.

15          115.    Code of Civil Procedure §§ 1094.5 or 1085 authorizes Plaintiffs to seek a writ of

16   mandate/mandamus, and which authorizes the Court to review and set aside public agency

17   decisions involving a prejudicial abuse of discretion or error of law.

18          116.    Plaintiffs request the Court issue a declaration, and/or writ of mandate or

19   mandamus, setting aside and voiding the effect of the Moratoriums and the Phase Out Ordinance

20   as set forth hereunder.   Plaintiffs also seeks an immediate stay to enjoin Defendants from

21   enforcing the Phase Out Ordinance and the Moratoria's ban on virtually all evictions during that

22   three-year period, as such enforcement would further harm Plaintiffs by violating their statutory

23   and constitutional rights as alleged herein, and the issuance of such a stay would not be against

24   the public interest.

25          117.    In enacting the Moratoriums and Phase Out Ordinance, Defendants exceeded their

26   jurisdiction, prevented Plaintiffs from having a fair trial, failed to proceed as required by law, and

27   prejudicially abused their discretion because:

28

*ZACKS & FREEDMAN, PC*
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

a.     The Moratoriums and Phase Out Ordinance are preempted by the State's Covid-19 Renter Relief Act (the "Act"), both expressly and impliedly, because they conflict with the Act by depriving housing providers of the UD process altogether by prohibiting repossession of their properties in almost all circumstances under the timeframes set forth thereunder, thereby conflicting with that law.   Because the Moratoriums and Phase Out Ordinance conflict with the Act, they are preempted and void.

b.     The Moratoriums and Phase Out Ordinance unlawfully amend the CITY's Just Cause for Eviction Ordinance, which was enacted via voter initiative.  (Oak. Mun. Code § 8.22.310.)  While the COUNCIL is permitted to amend the Just Cause for Eviction Ordinance to a limited extent (see, Oak. Muni. Code § 8.22.360(F); City of Oakland Measure Y), the COUNTY is not, and the COUNCIL's moratorium and Phase Out Ordinance significantly surpasses the permissible scope of amendment permitted by the voters.  Thus, these regulations are invalid.

c.     The Phase Out Ordinance introduces substantive unlawful hurdles to OMC § 8.22.360(A)(1) and (2), first by prohibiting housing providers from demanding less than one month of "fair market" rent, allowing some renters to potentially stop paying rent altogether, and second, by putting the onus on housing providers to prove that a material term of a lease is "reasonable" when a renter substantially violates that term, and the renter's behavior, "unreasonable."

118.     Moreover, as alleged herein, Defendants' aforesaid acts constitute unconstitutional per se, regulatory, de facto, and physical takings of Plaintiffs' properties without just compensation under the U.S. Constitution and violate Plaintiffs' constitutional rights to equal protection and due process, and any purported legitimate and/or rational basis for the same is pretext.

119.     Because these are questions of law and implicate constitutional rights, the standard of review falls under the independent judgment test/de novo review.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

120.     To the extent Plaintiffs were required to exhaust any administrative remedies, they have, as alleged herein.

121.     As alleged herein, Plaintiffs have a beneficial interest in ensuring that the effect of the now-expired Moratoriums and current Phase Out Ordinance are struck down so that Plaintiffs statutory and constitutional rights are not infringed upon.  Plaintiffs do not have a plain, speedy, or adequate remedy in the ordinary course of law, and therefore writ relief is necessary to compel Defendants to correct their actions, which are unlawful and in excess of their authority.

122.     Plaintiffs are entitled to recover attorneys' fees under Cal. Civ. Code § 1021.5, and because the Moratoriums are arbitrary and capricious, lacking any reasonable basis, and/or discriminatory and illegal, Plaintiffs are additionally entitled to attorneys' fees under Govt. Code § 800(a).

WHEREFORE, Plaintiffs' demand judgment against Defendants for the following:

**For Claims One, Two, Three and Four**:

1.     A preliminary and permanent injunction preventing enforcement of the Phase Out Ordinance;

2.     A declaratory judgment determining that Defendants' Moratoriums and Phase Out Ordinance constitute a taking under the United States and California Constitutions, and violate Plaintiffs' right to due process and equal protection;

3.     For special damages for out-of-pocket expenses, loss of property value, and loss of opportunity costs in an amount that is yet to be ascertained;

4.     For general damages according to proof, in an amount that is yet to be ascertained;

5.     For an award of attorneys' fees and costs as allowed by law; and

6.     For any other relief that the Court deems just and proper.

**For Claim Five**:

1.     For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, enjoining and voiding the Phase Out Ordinance for all of the reasons alleged above;

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

2.    For a judgment that the Moratoriums and Phase Out Ordinance constitute unlawful takings on their face and/or as applied, and have prevented Plaintiffs from maintaining economically viable use of their respective properties without just compensation in violation of Plaintiffs' rights under the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation;

3.    For a judgment that Defendants have violated Plaintiffs' equal protection and due process rights;

4.    For an immediate stay or preliminary injunction, and permanent injunction enjoining Defendants from enforcing the Phase Out Ordinance pending the determination of the merits;

5.    For costs of suit herein, including attorneys' fees;

6.    For any other relief that the Court deems just and proper.

Dated: September 20, 2023                    ZACKS & FREEDMAN, PC

                                             _/s/  Andrew M. Zacks_____
                                             By:    Andrew M. Zacks
                                                    Emily L. Brough
                                                    Attorneys for Plaintiffs and Petitioners

1

## <u>DEMAND FOR JURY TRIAL</u>

2

3

       Plaintiffs demand trial by jury for all claims (other than the petition for writ of

4

mandate) as stated herein.

5

6

7

8

9
Dated: September 20, 2023                    ZACKS & FREEDMAN, PC

10
    /s/  Andrew M. Zacks

11
By:    Andrew M. Zacks
        Emily L. Brough

12
        Attorneys for Plaintiffs and Petitioners

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZACKS & FREEDMAN, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

## <u>VERIFICATION</u>

I, Emily L. Brough, am an attorney representing all Plaintiffs and Petitioners (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters attested to in the fifth cause of action for writ of mandate (CCP § 1085), which are primarily questions of law, and it is for this reason that I, and not Plaintiffs, are verifying the fifth cause of action, only.  I have read the cause of action for writ of mandate and I am informed and believe the matters therein to be true and on that ground allege that the matters stated therein are true.  On this basis, I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct to the best of my knowledge and that this verification was executed on _September 20_, 2023, in Soquel, California.

_____
Emily L. Brough

# EXHIBIT A

ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS & FREEDMAN, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zpflaw.com

PACIFIC LEGAL FOUNDATION
JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
BRIAN T. HODGES (Wash. Bar No. 31976)
SAM SPIEGELMAN (N.Y. Bar No. 5573100)
255 South King Street, Suite 800
Seattle, WA 98104
Telephone: (916) 419-7111
JHoughton@pacificlegal.org
BHodges@pacificlegal.org
SSpiegelman@pacificlegal.org

*Attorneys for all Plaintiffs and Petitioners, John Williams, et al.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JOHN WILLIAMS, ~~ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) non-profit Corporation~~et. al,

Plaintiffs and Petitioners,

vs.

ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL and DOES 1-10,

Case Number: 3:22-cv-01274-LB Case No.: 3:22-cv-02705-LB (related)

**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY**

(42 U.S.C § 1983; C.C.P § 1085)

**DEMAND FOR JURY TRIAL**

Action Filed: March 1, 2022
Trial Date: None set

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Defendants and Respondents.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1. Plaintiffs and Petitioners ~~JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA~~ (collectively, "Plaintiffs"), hereby bring this <u>first amended and supplemental</u> complaint and petition for relief[1] against Defendants and Respondents ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND and OAKLAND CITY COUNCIL (collectively, "Defendants"), seeking damages caused by Defendants' residential eviction moratoriums (collectively, "Moratoriums") <u>and subsequent "phase out" regulations</u>, and an order declaring said ~~Moratoriums~~ <u>regulations</u> invalid, illegal, and unenforceable. ~~Plaintiffs also request an immediate stay, and injunction against the enforcement of the Moratoriums.~~

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the controversy arises under the United States Constitution and laws and under 42 U.S.C. § 1983, as hereinafter more fully appears. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the causes of action stated herein arise out of a common nucleus of operative fact, and thus form the same case or controversy under Article III of the United States Constitution.

## DIVISIONAL ASSIGNMENT

3. Pursuant to Local Rule 3-2(c), this action arose in Alameda County, California and thus should be assigned to the Court's Oakland Division.

## VENUE

[1] A blacklined comparison of the amended and supplemental complaint with the original complaint is attached hereto as **Exhibit A.**

4.      Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all defendants/respondents reside in this judicial district and the events giving rise to the claims occurred in this district.

## PARTIES

5.      Defendant and Respondent ALAMEDA COUNTY (the "COUNTY") is a local government entity organized under the Constitution and laws of the State of California.

6.      Defendant and Respondent ALAMEDA COUNTY BOARD OF SUPERVISORS (the "BOARD")  is a policy making, legislative, and quasi-judicial administrative body of the COUNTY.

7.      Defendant and Respondent CITY OF OAKLAND (the "CITY") is a municipal corporation in the State of California.

8.      Defendant and Respondent OAKLAND CITY COUNCIL (the "COUNCIL") is a policy making, legislative, and quasi-judicial administrative body of the CITY.

9.      Plaintiff JOHN WILLIAMS is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

10.     Plaintiff ROBERT VOGEL is an individual over the age of 18 and is a housing provider and owner of real property in the COUNTY.

11.     Plaintiff SHEANNA ROGERS is an individual over the age of 18 and is a housing provider and the owner of real property in the COUNTY.

12.     Plaintiff MICHAEL LOEB is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

13.     Plaintiff JAQUELINE WATSON-BAKER is an individual over the age of 18 and the owner of real property in the CITY and COUNTY.

14.     Plaintiff HANNAH KIRK is an individual over the age of 18 and an owner of real property in the CITY and COUNTY located at 4514 Fairbairn Ave, Oakland, CA.

15.     Plaintiff AMI SHAH is an individual over the age of 18 and the owner of real property in the COUNTY located at 133 Gable Dr. Fremont CA 94539.

16.     Plaintiff AVINASH JHA is an individual over the age of 18 and the owner of real

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   property in the COUNTY located at 133 Gable Dr. Fremont CA 94539.

2         17.      Plaintiff WILLIAM ROSETTI is an individual over the age of 18 and an owner of

3   real properties in the CITY and COUNTY located at 125 Moss Avenue, Oakland CA and 2801

4   Summit Street, Oakland CA.

5         18.      Plaintiff MADELEEN ROSETTI is an individual over the age of 18 and an owner

6   of real properties in the CITY and COUNTY located at 125 Moss Avenue, Oakland CA and 2801

7   Summit Street, Oakland CA.

8         19.      Plaintiff NORMAND GROLEAU is an individual over the age of 18 and an owner

9   of real property in the CITY and COUNTY located at 398 Euclid Ave, Oakland CA.

10        20.      Plaintiff MICHELLE GROLEAU is an individual over the age of 18 and an owner

11   of real property in the CITY and COUNTY located at 398 Euclid Ave, Oakland CA.

12        13.21.

13        14.      Plaintiff and Petitioner HOUSING PROVIDERS OF AMERICA ("HPOA") is a

14   § 501(c)(4) nonprofit corporation.  HPOA is a network of housing activists fighting to protect the

15   legal rights of housing providers, including those in the CITY and the COUNTY.   HPOA's

16   members own rental housing in and throughout the CITY and the COUNTY, and have been

17   directly and adversely affected by the CITY and COUNTY's residential eviction Moratoriums

18   and the CITY's subsequent "phase out" regulations.   All of HPOA's members are housing

19   providers in either the CITY and/or COUNTY; all of HPOA's members have renters at their

20   properties who are taking advantage of the CITY and COUNTY's Moratoriumsregulations,

21   including but not limited to, refusing to pay rent for non-Covid-19 related reasons during the time

22   period set forth thereunder, and refusing to relinquish possession, and creating nuisances and

23   damage to HPOA's members' properties.  HPOA's members have been unable to collect rent for

24   time periods of months on endand/or years with no financial relief provided by the CITY and

25   COUNTY, and Moratoriums'the CITY and COUNTY's complete defense against virtually all

26   residential evictions for a period of three-plus-years have tied HPOA's members hands.  HPOA's

27   members have suffered lost rents, devalued properties, and some face impending foreclosures and

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

bankruptcies, as a result of the CITY and COUNTY's regulations~~Moratoriums.~~  The harm and injury brought to HPOA's members by the ~~Moratoriums~~ regulations is current, ongoing, and concrete and particularized to all HPOA's members.  HPOA's efforts to remedy these injustices are central to its purpose of fighting to protect the legal rights of housing providers, including those in the CITY and COUNTY.  Neither the claims asserted, nor the relief requested requires the participation of individual members in this lawsuit.  HPOA has a direct and substantial interest in ensuring that Defendants' decisions are in conformity with the requirements of law, that those requirements are properly executed, and that Defendants' duties are enforced.

22.     Plaintiff 2355 Broadway, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 2355 Broadway, Oakland CA.

23.     Plaintiff 3900 Adeline, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the COUNTY located at 3900 Adeline, Emeryville CA.

24.     Plaintiff Hollis Street Partners, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 3250 Hollis Street, Oakland CA.

25.     Plaintiff Vulcan Lofts, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 4401 San Leandro Street, Oakland CA.

26.     Plaintiff 1614 Campbell Street DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1614 Campbell Street, Oakland CA.

27.     Plaintiff 3014 Chapman DEL, LLC is a Delaware limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 3030 Chapman Street, Oakland CA.

1

2      28.     Plaintiff B3 Lofts DEL, LLC is a Delaware limited liability company, qualified to

3 do business in California and the owner of real property in the CITY and COUNTY located at

4 5200 Adeline Street, Emeryville , CA.

5      29.     Plaintiff Bakery Lofts DEL, LLC is a Delaware limited liability company,

6 qualified to do business in California and the owner of real property in the CITY and COUNTY

7 located at 4600 Adeline Street, Emeryville, CA.

8      30.     Plaintiff Exchange Studios DEL, LLC is a Delaware limited liability company,

9 qualified to do business in California and the owner of real property in the CITY and COUNTY

10 located at 527 23rd Avenue, Oakland, CA.

11      31.     Plaintiff Madison Park Properties II DEL, LLC is a Delaware limited liability

12 company, qualified to do business in California and the owner of real property in the CITY and

13 COUNTY located at 1155 - 5th Street, Oakland CA.

14      32.     Plaintiff P&D 23rd Avenue Associates DEL, LLC is a Delaware limited liability

15 company, qualified to do business in California and the owner of real property in the CITY and

16 COUNTY located at 1080 23rd Avenue, Oakland CA.

17      33.     Plaintiff P&D 46th St. Associates DEL, LLC is a Delaware limited liability

18 company, qualified to do business in California and the owner of real property in the CITY and

19 COUNTY located at 964 46th Street, Oakland CA.

20      34.     Plaintiff Sears Lofts DEL, LLC is a Delaware limited liability company, qualified

21 to do business in California and the owner of real property in the CITY and COUNTY located at

22 2633 Telegraph Ave, Oakland CA.

23      35.     Plaintiff 301 Lenox, LLC is a California limited liability company, qualified to do

24 business in California and the owner of real property in the CITY and COUNTY located at 301

25 Lenox Avenue, Oakland CA.

26      36.     Plaintiff 2228 Union Street Investors, LP is a California limited partnership,

27 qualified to do business in California and the owner of real properties in the CITY and COUNTY

28

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

located at 1438 Madison Street, Oakland CA, 7511-7527 Bancroft Avenue, Oakland CA, 8603 Hillside Street, Oakland CA, and 8701 Hillside Street, Oakland CA.

37.     Plaintiff J & R Land & Cattle LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1551 Madison Street, Oakland CA and 2000 E. 30th Street, Oakland CA.

38.     Plaintiff J & R Land & Cattle II LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1935-1948 E. 29th Street, Oakland CA, 1935-1945 E. 30th Street, Oakland CA, and 2032-2040 E. 30th Street, Oakland CA.

39.     Plaintiff Westpark Apartments, LLC is a California limited liability company, qualified to do business in California and the owner of real properties in the CITY and COUNTY, located at 433 Perkins Street, Oakland CA, 1553 Alice Street, Oakland CA, and 4220 Montgomery Street, Oakland CA.

40.     Plaintiff Westpark II, GP is a California partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1530 Harrison Street, Oakland CA and 1555 Madison Street, Oakland CA.

41.     Plaintiff 685 Scofield, LLC is a California limited liability company, qualified to do business in California, and the owner of real property in the CITY and COUNTY located at 385-389 Palm Avenue, Oakland CA.

42.     Plaintiff 296 Mather Street, LLC is a California limited liability company, qualified to do business in California, and the owner of real property in the CITY and COUNTY located at 296 Mather Street #7, Oakland, CA.

43.     Plaintiff BayOak Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real property in the CITY and COUNTY located at 2375 Fruitvale Ave #301, Oakland CA.

44.     Plaintiff Burling Street Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

located at 1692 12th Street, Oakland CA, 1694 12th Street, Oakland CA, and 1704 Upper 14th Street, Oakland CA.

45.    Plaintiff Rising Tide Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 722 Upper 30th Street, Oakland CA, 923-923A Apgar Street, Oakland CA, 827 30th Street Oakland, CA, 1630 Lower Center Street, Oakland CA, 3629 West Street, Oakland CA, 835 40th Street #4, Oakland CA, 860 34th Street, Oakland CA.

46.    Plaintiff Oakland Point Properties, LLC is a California limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 1630 Lower Center Street, Oakland CA, 3629 West Street, Oakland CA, 40th Street #4, Oakland CA, 860 34th Street, Oakland CA.

47.    Plaintiff Truckee Zurich Place, LLC is a Delaware limited liability company, qualified to do business in California, and the owner of real properties in the CITY and COUNTY located at 1036 62nd Street #4, Oakland CA, 2215 Eighth Street, Berkeley CA, 2839 Linden Street, Oakland CA, 1692 12th Street, Oakland CA, 1694 12th Street, Oakland CA, 1704 Upper 14th Street, Oakland CA.

48.    Plaintiff 18th & Linden, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1054 18th Street, Oakland CA.

49.    Plaintiff 220 Grand Investors, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 220 Grand Avenue, Oakland CA.

50.    Plaintiff 818 East 20th Street Oakland, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 800-818 E 20th Street, Oakland CA.

51.    Plaintiff 1130 30th Street, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 3649

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Martin Luther King Jr Way, Oakland CA.

52.     Plaintiff 1701-1703 36th Avenue Oakland, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1701-1707 36th Avenue, Oakland CA.

53.     Plaintiff 1732-1744 27th Avenue, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1732-1744 27th Avenue, Oakland CA.

54.     Plaintiff 1844 7th Avenue 2013, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1844 7th Avenue, Oakland CA.

55.     Plaintiff 2000 Linden Street, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 2000 Linden Street, Oakland CA.

56.     Plaintiff 2019 ABD Ozone Fund, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 831 6th Avenue, Oakland CA.

57.     Plaintiff 2367 Washington, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 245 Lee Street, Oakland CA.

58.     Plaintiff 2531 East 16th Street, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1638 47th Avenue, Oakland CA.

59.     Plaintiff 2701 High Street, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 2701 High Street, Oakland CA.

60.     Plaintiff ABD Suites, LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1008

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

E 23rd Street Oakland, CA and 1722 27th Avenue Oakland, CA.

61.     Plaintiff 301 Hannah Park, LP is a California limited partnership, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 2850 Hannah Street, Oakland CA.

62.     Plaintiff Oakbrook Partners, LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1125-1135 E 18th Street, Oakland CA and 1221 E 20th Street, Oakland CA.

63.     Plaintiff Riaz Capital Ozone Fund III, LP is a California limited partnership, qualified to do business in California and the owner of real properties in the CITY and COUNTY located at 1705 Mandela Parkway, Oakland CA, 2133-2143 Dwight Way, Berkeley CA, 2618 Martin Luther King Jr Way, Berkeley CA.

64.     Plaintiff Riaz Taplin, trustee of The A.R.T. Trust is an individual over the age of eighteen.  The A.R.T. Trust is the owner of real properties in the CITY and COUNTY located at 1454 36th Avenue, Oakland CA, 1616 35th Avenue, Oakland CA, 1828 28th Avenue, Oakland CA, 2166 E 27th Street, Oakland CA, 2554 E 16th Street, Oakland CA, 3700 International Boulevard, Oakland CA.

65.     Plaintiff 1715 FFT, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1715 High Street Oakland, CA.

66.     Plaintiff 1830 6th Ave Oakland, LLC is a California limited liability company, qualified to do business in California and the owner of real property in the CITY and COUNTY located at 1830 6th Avenue Oakland, CA.

15.67.  Plaintiffs are not aware of the identities of defendants/respondents DOES 1-10, who are responsible for the acts and omissions alleged herein and that caused damage to Plaintiff; therefore, Plaintiffs will amend this Complaint when the true identities of DOES 1-10 are ascertained.

16.68.  Plaintiffs are informed and believe that at all times mentioned in this Complaint,

all defendants/respondents were the agents or employees of their co-defendants/respondents, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

## STATEMENT OF FACTS

**A.** **Background: The California Governor's Order and the COVID-19 Renter Relief Act.**

~~17.~~69.  In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act (ESA), Gov. Code sec. 8550, et seq.  On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict for nonpayment of rent due to the Covid-19 crisis.  In pertinent part, that order provided:

> [T]he statutory cause of action for unlawful detainer, Code of Civil Procedure section 1161 et seq., and any other statutory cause of action that could be used to evict or otherwise eject a residential . . . . renter . . . is suspended only as applied to any tenancy . . . to which a local government has imposed a limitation on eviction pursuant to this paragraph 2 [relating to inability to pay rent because of Covid-19 financial distress], and only to the extent of the limitation imposed by the local government. Nothing in this Order shall relieve a renter of the obligation to pay rent, nor restrict a housing provider's ability to recover rent due.

(Executive Order (EO) N-28-20.)  ~~California's State of Emergency is still in place, currently set to expire on March 31, 2022.  (EO No. N 21-21).  However,~~ The March 16, 2020 provision, permitting local government to temporarily limit Covid-19-related nonpayment evictions, expired on September 30, 2020.  (EO N-71-20.)

~~18.~~70.  Prior to the expiration of that provision, the California Legislature enacted the "COVID-19 Renter Relief Act" and the "COVID–19 Small Housing provider and Homeowner Relief Act of 2020" via AB 3088, effective August 31, 2020.  AB 3088 in part amended the State's unlawful detainer (UD) statutes, Code of Civil Procedure section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ."  Among other things, AB 3088 provided statewide eviction protections during ~~the "covered time period"~~a particular time period~~ (initially March 20, 2020~~

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

through January 31, 2021) for renters who could not pay their rent for Covid-19-related reasons. AB 3088 also directed state agencies to engage about potential strategies for relief for renters and housing providers who suffered Covid-19-related financial hardship.

19.71.  Notably (and consistent with the Governor's prior order), AB 3088's temporary moratorium on residential evictions was *specifically* limited to those based upon inability to pay for Covid-19-related financial distress.  Even during the temporary moratorium, housing providers were still permitted to file actions for, and courts were still permitted to find renters guilty of, UD for fault, and no-fault "just cause" as defined under Civil Code sec. 1946.2.[2]  (CCP § 1179.03.5(a)(3).)

20.72.  AB 3088 also provided "this section addresses a matter of statewide concern rather than a municipal affair." The intent of the legislation "is to protect individuals ***negatively impacted*** by the COVID-19 pandemic," and "does not provide the Legislature's understanding of the legal validity on any specific ordinance, resolution, regulation, or administrative action adopted by a city, county, or city and county in response to the COVID–19 pandemic to protect renters from eviction."  (CCP § 1179.05(b), (e), (f), emph. add.)  While AB 3088's amendments continued to recognize local government's authority to enact eviction protections, it did not give carte blanche authority to do so, nor does itdid it immunize "emergency" municipal regulations from challenges based on state law preemption.

21.73.  The Covid-19-related nonpayment eviction protections of AB 3088 were extended twice thereafter, once to June 30, 2021 ( through SB 91), and a last time to September 30, 2021 (through AB 832, and AB 2179).  SB 91 and AB 832These enactments protected affected renters from eviction during this extended "covered time period," under the UD statutes

---

[2] Civil Code sec. 1946.2, which delineates California's "just causes for eviction," does not apply to residential rental property subject to a local ordinance requiring just cause for termination. However, any local "just cause" provision enacted or amended after September 1, 2019, that is more "protective" than Civ. Code sec. 1946.2, must be consistent with that provision, and "not prohibited by any other area of law." (Civ. Code § 1946.2(g)(1).)

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

so long as they complied with the Covid-19-related financial distress requirements.

22.74.   ~~SB 91 and AB 832~~These enactments further clarified the State's rental assistance program.  Starting October 1, 2021, and until ~~March 31~~July 1, 2022, for any Covid-19-related hardship rental debt that came due between those dates, a renter ~~was~~is required to show that they completed an application for rental assistance through the State program.  If they did not, the housing provider c~~ould~~an move forward with an ~~unlawful detainer ("~~UD~~")~~ action for nonpayment of rent.   A housing provider ~~may~~could also have ~~move~~d forward with a UD action if the rental assistance application was denied.  (CCP § 1179.11(a), (c).)

### B.  The CITY's Eviction Moratorium

23.75.   On March 9, 2020, the CITY declared a local state of emergency due to Covid-19.  The CITY's local emergency was ratified on March 12, 2020, via Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies under specified circumstances.   (Gov. Code §§ 8558(c)~~(c)~~, 8630.)   The ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date."  (Gov. Code § 8630 (d).)

24.76.  After ratifying the Local Emergency, on March 27, 2020, the CITY passed its eviction moratorium, Ordinance No. 13589.  That moratorium not only prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all other evictions*, with few exceptions:

**Residential Eviction Moratorium.** Except when the renter poses an imminent threat to the health or safety of other occupants of the property, and such threat is stated in the notice as the grounds for the eviction, it shall be an absolute defense to any unlawful detainer action filed under Oakland Municipal Code 8.22.360A subsections (–) –~~–~~ (10) [excepting Ellis Act evictions] that the notice was served or expired, or that the complaint was filed or served, during the Local Emergency.

77.   Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended."  (Ordinance No. 13589.)  Subsequently, the moratorium was extended

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

until "the Local Emergency declared on March 9, 2020 has been terminated by the City Council, or August 31, 2020, whichever comes first."  (Ordinance no. 13594.)  However, on July 7, 2020, the extension on the eviction moratorium was again amended to *only* expire when the local Emergency had been terminated by the COUNCIL.  (Ordinance No. 13606 (Ex. 1).)  The local Emergency has no stated expiration date, and the CITY's position is that it has not expired.

25.78.  After this action was filed, the CITY enacted Ordinance No. 23-0216 ("Phase Out Ordinance") on May 2, 2023, which, while providing for a "phase out" of the CITY's moratorium, also kept the "local emergency" in place. The Phase Out Ordinance provides that the CITY's moratorium shall end on July 15, 2023.  However, the Phase Out Ordinance continued to prohibit evictions for virtually any reason, including non-payment, if the grounds for eviction arose between March 9, 2020 and July 14, 2023.  Thus, per the Phase Out Ordinance, the effect of the CITY's moratorium is still in place for that three-year-plus period The blanket moratorium on evictions therefore remains in effect.  The Phase Out Ordinance also amended the CITY's Rent Ordinance, further restricting housing providers' "just cause" reasons for eviction.  For example, the amendments introduced substantive hurdles to OMC § 8.22.360(A)(1) and (2), first by prohibiting housing providers from demanding less than one month of "fair market" rent, and second, by putting the onus on housing providers to prove that a material term of a lease is "reasonable" when a renter substantially violates that term, and the renter's behavior "unreasonable" in light of that term.

## C.  The COUNTY's Eviction Moratorium

26.79.  The COUNTY ratified its local emergency on March 10, 2020.  (Res. No. R-2020-91.)  On April 21, 2020, the BOARD adopted Urgency Ordinance No. O-2020-23, which, like the CITY's moratorium, purporteds to prohibit most evictions—for any reason.   The language in the urgency ordinance was then made a permanent part of the COUNTY's Code of Ordinances on June 23, 2020.  (Ordinance No. O-2020-32; ACCO § 6.120 (Ex. 2).)   The COUNTY's moratorium applieds to "all evictions from residential units in the unincorporated and incorporated areas of the county" subject to very few exceptions.  (ACCO § 6.120.030.)

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

These exceptions werare (1) Ellis Act withdrawals; (2) government orders requiring the unit to be vacated; or (3) "the resident poses an imminent threat to health or safety."  (ACCO § 6.120.030(F).)  Like the CITY's moratorium, the COUNTY'S moratorium provideds that it wasis an "absolute defense" to an unlawful detainer action brought during its term.  (ACCO § 6.120.030(D).)

27.80.  As enacted,The the moratorium expireds sixty days "after the expiration of the local health emergency."  (ACCO § 6.120.030.)  Per the ratification of the local emergency, the local emergency "shall remain in effect until the [BOARD] determines that the emergency no longer exists."  (Res. No. R-2020-91.)  The COUNTY's position is that it has not expired, and the blanket moratorium on evictions therefore remains in effectOn February 28, 2023, the COUNTY rescinded its local emergency.  Accordingly, the COUNTY's moratorium expired on April 29, 2023.  Notwithstanding, it is the COUNTY's position that evictions are prohibited for virtually any reason, including non-payment and even if there was no Covid-19 relate financial distress, if the grounds for eviction arose between March 9, 2020 and April 28, 2023.  Thus, the effect of the COUNTY's moratorium is still in place for that three-year-plus period.

### D.  The COUNTY and CITY's Rent Relief Assistance Programs

28.81.  State law requires local governments to develop mechanisms by which housing providers and renters may file applications for, and receive if eligible, Covid-related rent relief.

29.   The COUNTY operates a rent relief assistance program called "Housing Secure."[3]  The Housing Secure website currently states: "NOTICE: We have received more requests for funds than we have currently available."

30.82.  The CITY also operateds a rent relief assistance program called "Oakland's Emergency Rental Assistance."[4]  At the time of filing this action, The Oakland's Emergency Rental Assistance website currently stateds: "UPDATE. PLEASE NOTE. As of January 7, the

---

[3] https://www.ac-housingsecure.org/?locale=en
[4] https://www.oaklandca.gov/departments/department-of-housing-and-community-development

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

City of Oakland's Emergency Rental Assistance program is oversubscribed.  Tenants and Landlords may still submit an application but will be placed on a waitlist." Currently, the website instead refers applicants to the COUNTY's rent relief assistance program, "Housing Secure." However, since this action was filed, the Housing Secure website states: "We have received more requests for funds than we have currently available." [5]

31.83.  Importantly, tenants in the CITY and COUNTY need not to participate in *any* rent relief program to avoid eviction under the relevant three-year-plus time frames of the Moratoria and the Phase Out Ordinance; the Moratoriums Moratoria and the Phase Out Ordinance's ban on evictions for the three-year-plus period prohibit evictions even for those tenants who refuse to cooperate with a landlord's request that they seek relief under these programs. This directly contradicts the purpose, intent and procedures of state law.

### E.  The Moratoriums' Detrimental Impact on Plaintiffs

84.    The Moratoria, and as codified through the Phase Out Ordinance, have had devastating impacts on housing providers throughout the CITY and COUNTY, and to all Plaintiffs in this action.  The following cases are but a few more detailed examples.

32.    Plaintiff JOHN WILLIAMS is a housing provider in the CITY and COUNTY and owns the property at 1109 32nd Street, Oakland, CA. ("1109 32nd Street"). 1109 32nd Street is a duplex, and the rent for the property only barely covereds WILLIAMS' property expenses for 1109 32nd Street.  The current renter in the three-bedroom one-bath downstairs unit, Martina Martin, has occupied the unit for approximately ten twelve years, and until the past two yearsMoratoria were enacted, has always paid the rent for the unit, which is was approximately $1,500.00 per month.  After the CITY and COUNTY enacted the Moratoriums, however, the renter stopped paying rent and has not paid sincerefused to pay through the entire duration of the CITY's Moratorium.  The renter's failure to pay is not related to any Covid-19 related reason. In fact, the renter operated a moving and storage business, "Martina's Ride" out of her unit since

---

[5] https://www.ac-housingsecure.org/?locale=en

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

2017, and through much of 2021.  The renter refuses to cooperate with WILLIAMS' efforts to obtain unpaid rents through the rent relief program, and therefore the CITY rejected WILLIAMS' application for noncompliance. The renter in the upper unit vacated in March of 2021. WILLIAMS was~~is~~ concerned that a new renter w~~ill~~ould move in and refuse to pay rent, so he ~~has~~ kept that unit vacant after the renter left.  ~~WILLIAMS is concerned he will lose the property; he applied for and received three months of mortgage forbearance, but the forbearance expires soon, and only delays his obligation to pay his mortgage.  He also attempted to sell the property, but the nonpaying renter has made it virtually unsalable for any reasonable value.~~  In October of 2021, WILLIAMS was so riddled with stress caused by his non-paying renter and the very real possibility of losing 1109 32nd Street to foreclosure, he was hospitalized and, to date, remains disabled as a result.  His disability forced him to quit his job and move into the upper unit of 1109 32nd Street—directly above his non-paying renter—to save money. WILLIAMS wa~~i~~s unable to commence a nonpayment eviction against his renter as a direct result of the Moratoriums and in contravention of state law.  While WILLIAMS has recently received some mortgage assistance from the State of California, he has not received any back rent payments, nor does the amount of mortgage assistance that WILLIAMS has received cover what his nonpaying tenant refused to pay.

~~33.~~  86.  Plaintiff ROBERT VOGEL ("VOGEL") is a housing provider in the COUNTY and owns a rental property located 20076 Emerald Ct., Castro Valley, CA ("20076 Emerald").  20076 Emerald is a three-bedroom, one bath, 853 sq. ft single family home. VOGEL is semi-retired and is a disabled paraplegic.  VOGEL relies on the rental income from 20076 Emerald for ~~his only~~a substantial source of retirement income. VOGEL is required to pay approximately $1,328 per month for 20076 Emerald's mortgage, taxes and insurance, garbage service, and fees for property management. ~~Maintenance expenses for the property over the last two years have approximated $12,000.~~ The former renter at 20076 Emerald ~~has~~ lived there for approximately twelve years, and her current rent wa~~i~~s $2,000 per month, however she stopped paying any rent in September 2021, and has not paid any rent since that date and

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

only just recently vacated.  The renter's failure to pay prevented VOGEL from being able to refinance 20076 Emerald to a lower rate. The renter has also stopped maintaining 20076 Emerald's landscape and would park her car on the front yard.  The renter's failure to pay wais not related to any Covid-19 related reason. VOGEL and the renter have applied for rental assistance through the COUNTY, however, there has been no response from the COUNTY whatsoever, and the COUNTY's rental relief website states that there is no money available. There was also a second renter at the property temporarily that applied for rental assistance, despite working full time. The second tenant died in December 2021, yet there is mechanism to update or change the application process. The amount of monetary savings that While the renter finally agreed to cooperate with the local and state rent relief programs, VOGEL only received a portion of the unpaid back rent.  Most recently, VOGEL learned that his former nonpaying renter may have been selling and/or manufacturing methamphetamine at 20076 Emerald.  The renter covered all of the windows at the property, and neighbors reported strong chemical odors coming from the home. There was a "revolving door" of people making multiple, brief visits per day to the property, at all hours. When VOGEL was finally able to gain possession of 20076 Emerald, he discovered large quantities of drug paraphernalia, including what appeared to be used meth pipes and small zip-lock baggies.  A large quantity of white powder was found in an ice chest, which VOGEL's agent turned over to the police.  The renter had also stopped cleaning the house, leaving food and garbage everywhere, which caused a rat infestation that VOGEL was required to remediate.  The renter also had multiple dogs in the house in violation of the lease, which repeatedly urinated and defecated indoors, and scratched through areas of drywall. When 20076 Emerald was finally recovered, there were puddles of dog urine on the floors, and an extreme stench which took months and multiple cleanings to remedy.  VOGEL's has in his bank account is beingwas depleted because of having to carry all the costs of 20076 Emerald, and having to make significant repairs to the property damage caused by his nonpaying renter, and he is deeply concerned he will lose the property as the result of his inability to meet the financial obligations of ownership.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

34.87.  Plaintiff SHEANNA ROGERS is a housing provider in the COUNTY and owns the property at 23243 Maud Ave., Hayward CA ("23243 Maud Ave.") At one time, ROGERS ran a small, three-bedroom, independent living facility at 23243 Maud Ave., where she & her husband cared and provided for people who needed a "helping hand" to get on their feet. Many clients had lived at this address for over 5 years. ROGERS served a vulnerable population at the living facility; her clients often had mental disabilities and no families to turn to. ROGERS was able to provide her clients with a safe living space and meals they could count on at 23243 Maud Ave. In addition to the independent living facility space, 23243 Maud Ave. has a separate studio unit. ROGERS rented this unit in 2018 for to the current renter, who paid $1000 per month. That renter was never part of the independent living facility program. ROGERS depends on this supplemental rental income to support her and her family. Prior to the COUNTY'S enactment of its Moratorium, the renter began harassing ROGER's clients in the independent living facility. The renter would scream profanities at ROGERS' clients and throw garbage from his unit into the street directly in front of the property. The renter's harassment of ROGERS' clients got so bad that ROGERS was forced to file a restraining order against the renter and commence eviction proceedings. In February 2020, ROGERS and the renter came to a settlement agreement, whereby the renter agreed to vacate the property in April of 2020. However, after the COUNTY enacted its Moratorium, in March 2020, the renter refused to leave. The renter is currently still occupying the property and has not paiddid not pay rent for over threetwo years. The renter's failure to pay wais not related to any Covid-19 related reason. Meanwhile, the renter's harassment of ROGERS' clients persisted, and ROGERS was forced to close her business as a result. ROGERS has also suffered devastating health consequences as a result of the stress caused by her nonpaying renter.  ROGERS has applied for rental assistance from the COUNTY, however, because her renter will not cooperate, and his non-payment has nothing to do with Covid- 19 the COUNTY has refused to provide her with any relief.

35.88.  Plaintiff JAQUELINE WATSON-BAKER is a housing provider in the CITY and COUNTY and owns the property at 1225-1227 92nd Ave Oakland, CA. ("1225-1227 92nd Ave").

1225-1227 92nd Ave was purchased by WATSON-BAKER's mother in or about the 1950's. WATSON-BAKER's mother, who moved from to California from the Southern United States, was one of the first African_-Americans to own property in her East-Oakland neighborhood. 1225-1227 92nd Ave is a duplex, with a two-bedroom, two-bath front unit, and a one-bedroom one-bath back unit.  The renter in the back unit, Unit 1227, originally moved into the property in 2016.  Thereafter, WATSON-BAKER attempted to get access to the unit because the renter had put tinfoil over the windowpanes and had installed an air conditioner, and she was concerned about the renter's activity at the property.  When WATSON-BAKER arrived at the property, the renter stated that he did "not believe that a black woman" owned the property and demanded to see her identification.  WATSON-BAKER showed the renter her identification, which the renter snatched out of her hand, but the renter still refused her access to the unit.  Thereafter, the renter would insist on dropping off his rent check at WATSON-BAKER's home address, even though she asked him multiple times to mail it to a P.O. Box. WATSON-BAKER continued to see concerning signs at the property, but the renter continued to refuse her access. For example, she saw signs of rat infestation, but when she sent an exterminator, the renter would not give the exterminator access and turned his dogs loose on them. The exterminator eventually refused to go back to the property. Because the tenant refused to grant her access, and WATSON-BAKER became increasingly concerned about the unit's condition, WATSON-BAKER filed for relief in court in or about 2018.  The renter of the front unit of 1225-1227 92nd Ave Oakland left in 2019 because of the renter of the back unit's erratic behavior, and that unit has remained vacant since due to the renter's behavior. WATSON-BAKER finally obtained a court date for March of 2020, which then was pushed back due to shelter in place orders.  The renter stopped paying rent just prior to this time.  ~~The renter still occupies the unit to date and is currently approximately $5,000 in debt to her.~~  The renter's failure to pay wa~~i~~s not related to any Covid-19 related reason. WATSON-BAKER finally got access to the unit ~~several months ago~~ and saw that the unit wa~~s~~s in gross disrepair.  The renter put foil on all the unit's windows, there are dark yellow streaks running down the walls, and one of the unit's cabinets is hanging down from the ceiling.  The

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

unit ~~is~~ was infested with insects and there ~~is~~ was feces and urine all over the bathroom of the unit, and dog feces and garbage cover~~ed~~ the unit's backyard.  Notwithstanding the renter's damage to and perpetuation of a nuisance on her property, WATSON-BAKER ~~is~~ was prevented from evicting the renter under the COUNTY's Moratorium.   WATSON-BAKER considered selling the property, however, was advised that the renter's actions had devalued her property by almost a third of the market value. WATSON-BAKER applied for rental assistance from the COUNTY, however, her renter initially refused to cooperate with her.  After he finally agreed to fill out an application, the COUNTY informed WATSON-BAKER that it could be up to a year until she receive~~s~~d any rental relief funds.

89.   Plaintiff Michael Loeb is a housing provider in the CITY and COUNTY and owns units 2501 and 2502 at 565 Bellevue Avenue, Oakland, California (565 Bellevue Units). Loeb, a 74 year-old widower, lived with his wife in Piedmont, until she died in 2015, after nearly 46 years of marriage. After her death, and, in part, because of mobility issues resulting in back surgery, he sold his home.  He purchased the 565 Bellevue Units in April, 2020, with the intent to combine and occupy them as his home, for his own use, for the remainder of his life.  Renter Joshua Bloomfield (Bloomfield), a 1996 Graduate of the University of Pennsylvania, and 2000 UCLA School of Law graduate, is a successful class action lawyer with a prominent Oakland based class action law firm.  Bloomfield currently pays LOEB $2,200 per month in rent for a studio apartment.  LOEB has attempted to voluntarily negotiate an owner move in with Bloomfield, offering him $30,000 to move out.  This is more than four times the amount of $7,116.22 required as a relocation payment under the Oakland Just Cause for Eviction Ordinance, which is codified at Oakland Municipal Code section 8.22.850. However, Bloomfield ~~has~~ demanded that LOEB pay him more than $160,000 to vacate, telling LOEB that "it's nothing personal, just business."  Multiple other comparable units ~~have~~ beca~~o~~me available in the same building and could have been occupied by Bloomfield.  Bloomfield has not claimed any Covid related hardship.  LOEB ~~has been~~was unable to commence an owner-move in eviction due to the Moratoriums.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

90.     Plaintiff HANNAH KIRK is a housing provider in the CITY and COUNTY and owns a single-family home at 4514 Fairbairn Ave, Oakland, CA.  KIRK is a single mother and lived in 4514 Fairbairn Ave with her two children.  KIRK's renter moved into her home in 2019, and the agreed upon rent was $800 per month.  The renter shared KIRK's kitchen and bathroom at KIRK's home.  KIRK's renter paid rent consistently until July 1, 2021, whereupon she stopped paying rent but did not move out of KIRK's home when asked.  The renter also did not cooperate with the rental assistance programs, or return the Covid-19 declarations that KIRK provided to her, and instead accused KIRK of harassing her.  Notwithstanding the renter's failure to pay rent even though no Covid-19 related reason existed, KIRK was prevented from evicting the renter under the CITY and COUNTY's Moratorium.  After spending almost two years having to carry the expenses of the renter and having to face the nonpaying renter on a daily basis inside of her own home, KIRK moved out of her home due to the severe emotional distress the situation was causing her and her children.  KIRK has not been able to pay her mortgage for approximately eight months and fears she will lose her home.

91.     Plaintiff AMI SHAH and AVINASH JHA were housing providers in the CITY and COUNTY and own a single-family home at 133 Gable Dr. Fremont CA.  SHAH and JHA purchased 133 Gable Dr. in 2019, intending it to be their primary residence.  However, for financial reasons, SHAH and JHA were required to rent 133 Gable Dr. until their lease obligations for their own rental were met.  They did so, but after the COUNTY enacted its Moratorium, SHAH and JHA's renters stopped paying rent, and refused to apply for rent relief through the state and local rent relief programs.  Not only did SHAH and JHA's renters stop paying rent, but the renters physically converted 133 Gable Dr. into an "Airbnb motel," renting out the individual rooms.  SHAH and JHA reported the renters' unlawful activity to the Fremont police, and during the investigation it was discovered that the renters were conducting similar fraudulent rental activity with other homes as well.  During the investigation, the renters abandoned the property, but the AirBnb guests did not, and refused to move out.  Throughout, SHAH and JHA were prevented from evicting their nonpaying and breaching renters and the AirBnb guests due to the

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

COUNTY's Moratorium.  During this time, both the renters and the Airbnb guests filed several frivolous legal actions against SHAH and JHA, most of which were later dismissed.  When the Airbnb guests finally abandoned the property, SHAH and JHA were left with rental losses, legal fees and a home that was destroyed, and with a huge toll on their finances and health.

92.     Plaintiffs named in Paragraphs Nos. 17-20 and 22-66 have also suffered devasting financial losses because of the Moratoria and Phase Out Ordinance.  As alleged herein, all Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 own real property in either the COUNTY or the CITY or both.  All Plaintiffs' properties listed in Paragraphs Nos. 17-20 and 22-66 are rental properties and/or contain rental units, and Plaintiffs named in Paragraphs Nos. 17-20 and 22-66 are housing providers of these rental properties.

93.     Plaintiffs named in Paragraphs Nos. 17-20 and 22-66 purchased all of these rental properties prior to the Moratoria being enacted with objective reasonable investment backed expectations based upon the regulatory environment in place at the time of purchase.  When determining whether their purchase of these rental properties would be fruitful business investments, Plaintiffs named in Paragraphs Nos. 17-20 and 22-66's relied on the same longstanding property law principles that other market participants would have relied on, namely, that a housing provider-renter relationship could only be maintained when there was payment of rent in exchange for possession and so long as the renter complied with the material terms of the lease. When determining whether their purchase of the rental properties would be fruitful business investments, Plaintiffs named in Paragraphs Nos. 17-20 and 22-66's relied on the COUNTY and CITY just cause eviction ordinances then in place, including but not limited to, the ability to evict a renter who failed to pay rent or otherwise violated the material terms of the lease but was still in possession of their property.  Prior to the Moratoria being enacted, Plaintiffs named in Paragraphs Nos. 17-20 and 22-66's rental properties were profitable businesses, all of which yielded an average of many thousands of dollars a year in profit.

94.     All properties listed in Paragraphs Nos. 17-20 and 22-66 have been occupied by renters during the Moratoria.  Since the Moratoria were enacted, and through the Moratoria's

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1  duration, all Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 have had renters at these

2  properties who have refused or failed to pay rent for their units or otherwise violated the material

3  terms of their leases. Many of the renters that occupy the properties listed in in Paragraphs Nos.

4  17-20 and 22-66 did not cooperate with Plaintiffs' efforts to assist them in obtaining rental

5  assistance through the CITY and COUNTY programs, resulting in Plaintiffs' inability to mitigate

6  their lost rental profits. Other renters of the rental properties listed in Paragraphs Nos. 17-20 and

7  22-66 did not qualify for rental assistance because their income level was too high and/or because

8  they were not impacted by a Covid-19 related reason, resulting in Plaintiffs' inability to mitigate

9  their lost rental profits. Plaintiffs' renters of the rental properties listed in Paragraphs Nos. 17-20

10  and 22-66 also committed acts that damaged these properties during the time the Moratoria were

11  in effect, which further devalued their properties.

12      95.     Despite the above acts, the blanket Moratoria and the Phase Out Ordinance

13  prohibited Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 from evicting these renters during

14  the time the Moratoria were in place. Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66 have

15  seen significant losses in property values as a direct result of the Moratoria enabling renters to

16  fail to pay rent for any reason at all, to damage these properties without consequence, and to

17  violate the material terms of their leases with impunity. These rental properties have lost many

18  millions of dollars in property value and income as a direct result of the Moratoria and Phase Out

19  Ordinance. Moreover, as a result of the CITY and COUNTY Moratoria and Phase Out Ordinance,

20  Plaintiffs listed in Paragraphs Nos. 17-20 and 22-66's collective losses in rent and property

21  damages, and other damages are in excess of tens of millions of dollars.

22      96.     The COUNTY and CITY are aware that the Moratoria and Phase Out Ordinance

23  solely target housing providers in favor of renters, by allowing renters carte blanche to refuse to

24  pay rent without basis, and permit renters to cause damage to housing providers' properties and

25  otherwise violate their leases without consequence. Despite the significant harm the Moratoria

26  and Phase Out Ordinance has caused housing providers, COUNTY and CITY have refused to

27  amend these regulations. Accordingly, the character of the Moratoria and Phase Out Ordinance

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1    placed a severe and disproportionate regulatory burden upon Plaintiffs and forced Plaintiffs to

2    carry the cost of a public program.  These regulations were the functional equivalent of a classic

3    taking in which government directly appropriates private property or ousts the owner from his or

4    her domain.

5    36.

6    **FIRST CLAIM**

7    **(Violation of the 5th Amendment to the U.S. Constitution – Against All Defendants (42 U.S.C. § 1983))**

8    37.97.  Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1

9    through 36 96 of this Complaint.

10

11   38.98.  By enacting the Moratoriums and the Phase Out Ordinance, the COUNTY and the

12   CITY violated the Fifth Amendment of the United States Constitution, which prohibits the taking

13   of private property for public use without just compensation.  The Moratoriums and the Phase

14   Out Ordinance violate the Fifth Amendment of the United States Constitution on their face and

15   as applied to Plaintiffs.

16   39.99.  Defendants' Moratoriums and the Phase Out Ordinance purport to prohibit

17   Plaintiffs from evicting any renter in the CTYCITY and COUNTY for virtually any reason, with

18   few exceptions under the three-year-plus timeframes thereunder.  The Moratoriums, which have

19   no end dates, and the Phase Out Ordinance perpetrate physical takings by illegally nullifying

20   Plaintiffs and other housing providers' right to occupy their properties without just compensation;

21   the Moratoriums and the Phase Out Ordinance eliminate renters' rent obligations and sanction

22   renters' trespassing on Plaintiffs' properties. Preventing housing providers "from evicting tenants

23   who breach their leases intrudes on one of the most fundamental elements of property

24   ownership—the right to exclude."  (*Alabama Association of Realtors v. Department of Health

25   and Human Services* (2021) 141 S.Ct. 2485, 2489; also see, *Loretto v. Teleprompter Manhattan

26   CATV Corp.* (1982) 458 U.S. 419, 435; *Cedar Point Nursery v. Hassid* (2021) 141 S. Ct 2063;

27   *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 655 [Physical taking

28   occurs when a regulation "effectively extinguish[es] plaintiffs' right to occupy substantial

*FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES [42 U.S.C. § 1983];
PETITION FOR WRIT, AND DEMAND FOR JURY TRIAL*
-25-

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

portions of their property"].)

40.100.      The COUNTY and the CITY's moratoriums and the Phase Out Ordinance also unreasonably and substantially interfered with Plaintiffs' investment-backed expectations, singled out Plaintiffs to bear the full cost of public benefits, and result in either a substantial or total deprivation of the economic value of Plaintiffs' properties.  (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104.)  The Moratoriums are devaluing devalued properties by prohibiting Plaintiffs from recovering possession of their properties—even for their personal use—and even despite renters perpetuating ongoing nuisances and/or committing material violation(s) of the lease.  The Moratoriums and the Phase Out Ordinance further devalue properties by prohibiting eviction forand *continued* nonpayment of rents for over a period of three years.  Plaintiffs have suffered significant financial losses due to the Moratoriums, and continue to suffer these losses under the Phase Out Ordinance, notwithstanding the expiration of the Moratoria, because tthe current government "relief" programs in place, which have resulted in little to no relief.  Plaintiffs' "investment-backed expectations" have been violated as a matter of law.  (*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles* (C.D. Cal. 2020) 500 F. Supp. 3d 1088, 1096, *aff'd*, (9th Cir. 2021) 10 F.4th 905.) This is especially so when applied in light of "the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [Citation.]" (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606.)

41.101.      For the foregoing reasons, the Moratoriums and the Phase Out Ordinance constitute takings without just compensation, and thus violates Plaintiffs' rights protected by the United States Constitution.   An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

42.102.      As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs also entitled to recover

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1   attorneys' fees under 42 U.S.C. § 1983.

2   **SECOND CLAIM**
3   **(Inverse Condemnation – Violation of Article I, Section 19 of the California Constitution)**

4   ~~43.~~103.      Plaintiffs incorporate here by reference the allegations contained in
5   Paragraphs 1 through ~~42~~ 102 of this Complaint.

6   ~~44.~~104.      The Moratoriums and the Phase Out Ordinance violate ~~the~~ Article I,
7   Section 19 of the California Constitution on their face and as applied to Plaintiffs, for all the
8   reasons alleged herein.

9   ~~45.~~105.      The Moratoriums and the Phase Out Ordinance therefore constitute takings
10  without just compensation, and thus violate Plaintiffs' rights protected by the California
11  Constitution.   An actual controversy has arisen and now exists between the parties relating to
12  these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a
13  declaratory judgment necessary.

14  ~~46.~~106.      As a result of Defendants' actions, Plaintiffs, as alleged herein, have
15  suffered out of pocket expenses, loss of property value, and loss of opportunity value in an
16  amount that is yet to be ascertained to be further determined at trial.

17  **THIRD CLAIM**
18  **(Violation of Due Process (42 U.S.C. § 1983))**

19  ~~47.~~107.      Plaintiffs incorporate here by reference the allegations contained in
20  Paragraphs 1 through ~~46~~106 of this Complaint.

21  ~~48.~~108.      The Moratoriums and the Phase Out Ordinance violate Plaintiffs'
22  substantive and procedural due process rights under the U.S. Constitution.  (*Lockary v. Kayfetz*
23  (9th Cir. 1990) 917 F.2d 1150, 1155; *Weinberg v. Whatcom County* (9th Cir. 2001) 241 F.3d 746,
24  752-755.)   The Moratoriums and the Phase Out Ordinance violate Plaintiffs' substantive due
25  process rights on their face and as applied because Plaintiffs' have protected property interests in
26  their real properties, and Defendants' ~~continued~~ imposition of the blanket Moratoriums and the
27  Phase Out Ordinance for that three-plus year time period are irrational and lacking in a legitimate
28  government interest because there is no justification for such extreme measures.   Indeed,

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

California's COVID-19 Renter Relief Act never imposed such draconian restrictions.  Further, the Bay Area ~~has seen~~saw significant improvement in circumstances relating to the pandemic since March of 2020, has a high rate of vaccinations, and federal and state officials ~~have~~ recognized during the period of time the Moratoria were in place that Covid-19 ~~is~~ was either in, or moving to, an endemic stage.  The pandemic should not have ~~be~~en used as a "cursory" justification for what would otherwise be an illegal law.  (See, *Texas v. United States* (S.D. Tex. Aug. 19, 2021)  No. 6:21-CV-00016, 2021 WL 3683913, at *45;  *Chrysafis v. Marks* (2021) 141 S.Ct. 2482; *Tandon v. Newsom* (2021)141 S.Ct. 1294.)  Defendants therefore have no rational basis for the Moratoriums and the Phase Out Ordinance, and any offered is plainly pretext.  The Moratoriums and the Phase Out Ordinance violate procedural due process because they, in effect, deprive Plaintiffs of *any* procedure to recover their properties under most cases under the time period set forth thereunder.

~~49.~~109.       The aforesaid acts, and as further alleged herein, therefore constitute violations of Plaintiff's procedural and substantive due process rights. An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.)

~~50.~~110.       As a result of Defendants' actions, Plaintiffs, as alleged herein, have suffered out of pocket expenses, loss of property value, emotional distress, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiffs are also entitled to recover attorneys' fees under 42 U.S.C. § 1983.

### FOURTH CLAIM
### (Violation of Equal Protection (42 U.S.C. § 1983))

~~51.~~111.       Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through ~~49~~110 of this Complaint.

~~52.~~112.       The Moratoriums and the Phase Out Ordinance violate Plaintiffs' right to equal protection of the laws, on their face and as applied. The purpose of the Moratoriums and

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

the Phase Out Ordinance is to unlawfully single out, penalize, and target Plaintiffs, and all housing providers in the CITY and COUNTY, by preventing them from lawfully exercising their property rights to receive rents, occupy their properties, exclude others from their properties, and protect their properties from nuisance and damage.  The "emergency" under which the Moratoriums were enacted no longer existed during their impositions; the Bay Area is was open for business, has a high rate of vaccinations, and federal and state officials have recognized that Covid-19 was is either in, or moving to, and endemic stage. Thus, any stated rational government purpose to the contrary is pretext.

53.113.          For the foregoing reasons, the Moratoriums and the Phase Out Ordinance violate Plaintiffs' right to equal protection of the law, and as a result, Plaintiffs have suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  An actual controversy has arisen and now exists between the parties relating to these legal rights and duties for which Plaintiffs desire a declaration of rights, therefore making a declaratory judgment necessary.  (28 U.S.C. § 2201.) Plaintiffs have also entitled to recover their attorneys' fees under 42 U.S.C. § 1983.

**FIFTH CLAIM**
**(Writ of Mandate (CCP §§ 1085 or 1094.5))**

54.114.          Plaintiffs incorporate here by reference the allegations contained in Paragraphs 1 through 113 53 of this Complaint.

55.115.          Code of Civil Procedure §§ 1094.5 or 1085 authorizes Plaintiffs to seek a writ of mandate/mandamus, and which authorizes the Court to review and set aside public agency decisions involving a prejudicial abuse of discretion or error of law.

56.116.          Plaintiffs requests the Court issue a declaration, and/or writ of mandate or mandamus, setting aside and voiding the effect of the Moratoriums and the Phase Out Ordinance as set forth hereunder.  Plaintiffs also seeks an immediate stay to enjoin Defendants from enforcing the Phase Out Ordinance and the Moratoria's ban on virtually all evictions during that three-year periodMoratoriums, as such enforcement would further harm Plaintiffs by violating

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

their statutory and constitutional rights as alleged herein, and the issuance of such a stay would not be against the public interest.

57.117.    In enacting the Moratoriums and Phase Out Ordinance, Defendants exceeded their jurisdiction, prevented Plaintiffs from having a fair trial, failed to proceed as required by law, and prejudicially abused their discretion because:

a.    The Moratoriums and Phase Out Ordinance are preempted by the State's Covid-19 Renter Relief Act (the "Act"), both expressly and impliedly, because they conflict with the Act by depriving housing providers of the UD process altogether by prohibiting repossession of their properties in almost all circumstances under the timeframes set forth thereunder, thereby conflicting with that law.    Because the Moratoriums and Phase Out Ordinance conflict with the Act, they are preempted and void.

b.    Tthe Moratoriums and Phase Out Ordinance unlawfully amend the CITY's Just Cause for Eviction Ordinance, which was enacted via voter initiative.  (Oak. Mun. Code § 8.22.310.)  While the COUNCIL is permitted to amend the Just Cause for Eviction Ordinance to a limited extent (see, Oak. Muni. Code § 8.22.360(F); City of Oakland Measure Y), the COUNTY is not, and the COUNCIL's moratorium and Phase Out Ordinance significantly surpasses the permissible scope of amendment permitted by the voters.  Thus, the Moratoriumsthese regulations are invalid.

c.    The Phase Out Ordinance introduces substantive unlawful hurdles to OMC § 8.22.360(A)(1) and (2), first by prohibiting housing providers from demanding less than one month of "fair market" rent, allowing some renters to potentially stop paying rent altogether, and second, by putting the onus on housing providers to prove that a material term of a lease is "reasonable" when a renter substantially violates that term, and the renter's behavior, "unreasonable."

b.

58.118.    Moreover, as alleged herein, Defendants' aforesaid acts constitute unconstitutional per se, regulatory, de facto, and physical takings of Plaintiffs' properties without

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

just compensation under the U.S. Constitution and violate Plaintiff's' constitutional rights to equal protection and due process, and any purported legitimate and/or rational basis for the same is pretext.

59.119.    Because these are questions of law and implicate constitutional rights, the standard of review falls under the independent judgment test/de novo review.

60.120.    To the extent Plaintiffs were required to exhaust any administrative remedies, they have, as alleged herein.

61.121.    As alleged herein, Plaintiffs have a beneficial interest in ensuring that the effect of the now-expired Moratoriums and current Phase Out Ordinance are struck down so that Plaintiffs statutory and constitutional rights are not infringed upon.  Plaintiffs do not have a plain, speedy, or adequate remedy in the ordinary course of law, and therefore writ relief is necessary to compel Defendants to correct their actions, which are unlawful and in excess of their authority.

62.122.    Plaintiffs are entitled to recover attorneys' fees under Cal. Civ. Code § 1021.5, and because the Moratoriums are arbitrary and capricious, lacking any reasonable basis, and/or discriminatory and illegal, Plaintiffs are additionally entitled to attorneys' fees under Govt. Code § 800(a).

WHEREFORE, Plaintiffs' demand judgment against Defendants for the following:

**For Claims One, Two, Three and Four**:

1.    A preliminary and permanent injunction preventing enforcement of the MoratoriumsPhase Out Ordinance;

2.    A declaratory judgment determining that Defendants' Moratoriums and Phase Out Ordinance constitute a taking under the United States and California Constitutions, and violate Plaintiffs' right to due process and equal protection;

3.    For special damages for out-of-pocket expenses, loss of property value, and loss of opportunity costs in an amount that is yet to be ascertained;

4.    For general damages according to proof, in an amount that is yet to be ascertained;

5.    For an award of attorneys' fees and costs as allowed by law; and

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

6.      For any other relief that the Court deems just and proper.

**For Claim Five**:

1.      For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, enjoining and voiding the Phase Out Ordinance~~Moratoriums~~ for all of the reasons alleged above;

2.      For a judgment that the Moratoriums and Phase Out Ordinance constitute unlawful takings on their face and/or as applied, and have prevented Plaintiffs from maintaining economically viable use of their respective properties without just compensation in violation of Plaintiffs' rights under the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation~~; and upon such judgment, give Defendants the opportunity to revoke Moratoriums and mitigate its damages in Plaintiff's inverse condemnation and 5th amendment takings action against Defendants~~;

3.      For a judgment that Defendants have violated Plaintiffs' equal protection and due process rights;

4.      For an immediate stay or preliminary injunction, and permanent injunction enjoining Defendants from enforcing the Phase Out Ordinance~~Moratoriums~~ pending the determination of the merits;

5.      For costs of suit herein, including attorneys' fees;

6.      For any other relief that the Court deems just and proper.


Dated: ~~March 1, 2022~~ _____, 2023            ~~——~~ZACKS &~~,~~ FREEDMAN~~ & PATTERSON~~, PC


                                                    _/s/  Andrew M. Zacks_____
                                          By:      Andrew M. Zacks
                                                    Emily L. Brough
                                                    Attorneys for Plaintiffs and Petitioners
                                                    ~~JOHN WILLIAMS~~
                                                    ~~ROBERT VOGEL~~
                                                    ~~SHEANNA ROGERS~~
                                                    ~~MICHAEL LOEB~~
                                                    ~~JAQUELINE WATSON-BAKER~~

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

1  ~~HOUSING PROVIDERS OF AMERICA~~

2

3

4

5

6

7

8

9

10

11

12

13

14              **DEMAND FOR JURY TRIAL**

15

16         Plaintiffs demand trial by jury for all claims (other than the petition for writ of

17   mandate) as stated herein.

18

19

20

21

22   Dated: ~~March 1, 2022~~              ZACKS <u>&</u>~~,~~ FREEDMAN ~~& PATTERSON~~, PC

23                                         */s/ Andrew M. Zacks*
                                          By:    Andrew M. Zacks
24                                                Emily L. Brough
25                                                Attorneys for Plaintiffs and Petitioners
                                                 JOHN WILLIAMS
26                                                ROBERT VOGEL
                                                 SHEANNA ROGERS
27                                                MICHAEL LOEB
                                                 JAQUELINE WATSON-BAKER
28                                                HOUSING PROVIDERS OF AMERICA

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

*FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES [42 U.S.C. § 1983];*
*PETITION FOR WRIT, AND DEMAND FOR JURY TRIAL*
-33-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

## **VERIFICATION**

I, ~~Andrew M. Zacks~~Emily L. Brough, am an attorney representing all Plaintiffs and Petitioners (collectively, "Plaintiffs") in this action.  I have personal knowledge of the matters attested to in the fifth cause of action for writ of mandate (CCP § 1085), which are primarily questions of law, and it is for this reason that I, and not Plaintiffs, are verifying the fifth cause of action, only.   I have read the cause of action for writ of mandate and I am informed and believe the matters therein to be true and on that ground allege that the matters stated therein are true. On this basis, I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct to the best of my knowledge and that this verification was executed on _____, 202~~3~~2, in ~~Oakland~~Soquel, California.

_____

1          ~~Andrew M. Zacks~~Emily L. Brough

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

**PROOF OF SERVICE**

United States District Court—Northern District of California- Case No.: 3:22-cv-01274-LB

I, Angelica Nguyen, declare that:

I am employed in the County of San Francisco, State of California. I am over the age of 18, and am not a party to this action.  My business address is 601 Montgomery Street, Suite 400, San Francisco, California 94111.

On September 20, 2023, I served:

**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY; DEMAND FOR JURY TRIAL**

in said cause addressed as follows:

| | |
|---|---|
| PACIFIC LEGAL FOUNDATION<br>JONATHAN HOUGHTON (NJ Bar No. 369652021)<br>3100 Clarendon Blvd., Suite 610<br>Arlington, VA 22201<br>BRIAN HODGES (WA Bar No. 31976)<br>SAM SPIEGELMAN (NY Bar No. 5573100)<br>255 South King Street, Suite 800<br>Seattle, WA 98104<br>Email: JHoughton@pacificlegal.org<br>Email: BHodges@pacificlegal.org<br>Email: SSpiegelman@pacificlegal.org<br>*Attorney for John Williams, Robert Vogel, Sheanna Rogers, Michael Loeb, Jacqueline Watson-Baker, Housing Providers of America* | MARC SELTZER<br>KRYSTA K. PACHMAN<br>GLENN C. BRIDGMAN<br>NICHOLAS N. SPEAR<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Email: mseltzer@susmangodfrey.com<br>Email: kpachman@susmangodfrey.com<br>Email: gbridgman@susmangodfrey.com<br>Email: nspear@susmangodfrey.com<br>*Attorneys for Intervenor-Defendant Alliance of Californians for Community Empowerment Action* |
| MATTHEW D. ZINN<br>EDWARD T. SCHEXNAYDER<br>MINDY K. JIAN<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>Email: Zinn@smwlaw.com<br>Email: Schexnayder@smwlaw.com<br>Email: mjian@smwlaw.com<br>*Attorney for Alameda County and Alameda County Board of Supervisors* | BARBARA J. PARKER<br>MARIA BEE<br>ALLISON EHLERT<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA 94612<br>E-Mail:aehlert@oaklandcityattorney.org<br>*Attorney for City of Oakland and Oakland City Council* |
| // | |

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

CHRISTOPHER E. SKINNELL
HILARY J. GIBSON
NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI LLP
2350 Kerner Boulevard, Suite 250
San Rafael, CA 94941
Email: cskinnell@nmgovlaw.com
Email: hgibson@nmgovlaw.com
*Attorneys for Plaintiffs and Petitioners California Apartment Association Stephen Lin, Lakesh and Tripti Jain, Alison Mitchell, Michael Hagerty, H. Alex, Dannie Alvarez*

**/XX/   (BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept electronic service, I caused the said document to be served electronically through the CM/ECS System.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 20, 2023 at San Francisco, California.

_____
ANGELICA NGUYEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ZACKS & FREEDMAN, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612