1  BARBARA J. PARKER, City Attorney, SBN 069722
   MARIA BEE, Chief Assistant City Attorney, SBN 167716
2  ALLISON L. EHLERT, Deputy City Attorney, SBN 230362
   One Frank H. Ogawa Plaza, 6th Floor
3  Oakland, California  94612
   Telephone: (510) 238-3596; Fax: (510) 238-6500
4  Email: aehlert@oaklandcityattorney.org
   X05405/3313608
5
   Attorneys for Defendants,
6  CITY OF OAKLAND and OAKLAND CITY COUNCIL

7

8                    **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                     **SAN FRANCISCO DIVISION**

11

12  JOHN WILLIAMS, ROBERT VOGEL,              Case No. 3:22-cv-01274-LB
    SHEANNA ROGERS, MICHAEL LOEB,
13  JACQUELINE WATSON-BAKER, and
    HOUSING PROVIDERS OF AMERICA, a          **THE CITY'S NOTICE OF MOTION AND**
14  501(c)(4) non-profit Corporation,        **MOTION TO DISMISS FIRST**
                                             **AMENDED AND SUPPLEMENTAL**
15              Plaintiffs and Petitioners,  **COMPLAINT**

16   v.                                      Hon. Laurel Beeler

17  ALAMEDA COUNTY, ALAMEDA COUNTY           Date: February 1, 2024
    BOARD OF SUPERVISORS, CITY OF            Time: 9:30 a.m.
18  OAKLAND, OAKLAND CITY COUNCIL, and
    DOES 1-10,                               Action Filed: March 1, 2022
19                                           Trial Date: None set
               Defendants and Respondents,
20
    v.
21
    ALLIANCE OF CALIFORNIANS FOR
22  COMMUNITY EMPOWERMENT ACTION,

23             Defendant-Intervenor.

24

25

26

27

28

# TABLE OF CONTENTS

Page No(s).

I.    INTRODUCTION ...................................................................................................1

II.   FACTS ....................................................................................................................3

    A.    The City enacts an eviction moratorium to prevent mass displacement
    during the pandemic. ......................................................................................3

    B.    The City's eviction moratorium ends on July 15, 2023 and the City enacts
    new protections for renters. ...........................................................................4

    C.    This Court previously denied Plaintiffs' motion for summary judgment
    and Plaintiffs thereafter filed their amended complaint. ..............................7

III.  ARGUMENT ..........................................................................................................8

    A.    Motion to dismiss legal standards. ................................................................8

    B.    Plaintiffs' claim for declaratory relief in connection with the eviction
    moratorium is moot. ......................................................................................9

    C.    Plaintiff HPOA lacks standing to prosecute any claims in connection with
    the eviction moratorium. ...............................................................................9

    D.    Plaintiffs fail to state takings claims under the Fifth Amendment and the
    California Constitution. ................................................................................10

        1.    Plaintiffs cannot allege a viable physical-takings claim. ...........................11

        2.    Plaintiffs have not alleged a viable regulatory-takings claim. ...................12

            (a)    Economic impact ..........................................................................12

            (b)    Investment-backed expectations ...................................................14

            (c)    The character of the regulations ...................................................17

    E.    Plaintiffs cannot state a substantive due-process claim under the
    Fourteenth Amendment. ..............................................................................18

    F.    Plaintiffs cannot state a procedural due-process claim under the Fourteenth
    Amendment...................................................................................................20

    G.    Plaintiffs cannot state an equal-protection claim under the Fourteenth
    Amendment...................................................................................................21

    H.    Plaintiffs' cannot establish their state-law writ-of-mandate claim. ............22

IV.   CONCLUSION......................................................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

Page No.(s)

2

**Cases**

3

2022 WL 17968082 (S.D. Cal. Sept. 27, 2022)..................................................20

4

*Armour v. City of Indianapolis*,
  566 U.S. 673 (2012)......................................................................22

5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................9

6

*Bayer v. Neiman Marcus Grp.*,
  861 F.3d 853 (9th Cir. 2017) ............................................................9

7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................8, 9, 15

8

*Birkenfeld v. City of Berkeley*,
  17 Cal.3d 129 (1976) ....................................................................23

9

*Block v. Hirsh*,
  256 U.S. 135 (1921).................................................................15, 16

10

*California Ass'n for the Pres. of Gamefowl v. Stanislaus County*,
  No. 20-CV-01294, 2023 WL 1869010 (E.D. Cal. Feb. 9, 2023) ......................14

11

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)......................................................................21

12

*City of Seattle*,
  No. 22-35656, 2023 WL 7040314 (9th Cir. Oct. 26, 2023) .........................11

13

*Cmty. Hous. Improvement Program v. City of New York*,
  59 F.4th 540 (2d Cir. 2023) .............................................................19

14

*Colony Cove Props., LLC v. City of Carson*,
  888 F.3d 445 (9th Cir. 2018)......................................................11, 13, 14

15

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
  508 U.S. 602 (1993).................................................................13, 15

16

*Evans Creek, LLC v. City of Reno*,
  No. 21-16620, 2022 WL 14955145 (D. Nev. Oct. 26, 2022)..........................14

17

*Fields v. Legacy Health Sys.*,
  413 F.3d 943 (9th Cir. 2005) ............................................................22

18

*Gallo v. Dist. of Columbia*,
  610 F. Supp.3d 73 (D.C. 2022)..........................................................15

19

*GHP Mgmt. Corp. v. City of Los Angeles*,
  No. 21-06311, 2022 WL 17069822 (C.D. Cal. Nov. 17, 2022) .................13, 16, 17

20

*Guggenheim v. City of Goleta*,
  638 F.3d 1111 (9th Cir. 2010) ..........................................................22

21

*Herzberg v. County of Plumas*,
  133 Cal.App.4th 1 (2005)................................................................10

22

*Hunt v. Washington State Apple Advertising Comm'n*,
  432 U.S. 333 (1997)......................................................................10

23

*Id.* at 855. *Crown Point Dev., Inc. v. City of*,
  *Sun Valley*, 506 F.3d 851 (9th Cir. 2007)..............................................18

24

*Int'l Longshore & Warehouse Union v. Nelson*,
  599 F. App'x 701 (9th Cir. 2015) ......................................................10

25

26

27

28

*Jevons v. Inslee*,
   No. 22-35050, 2023 WL 5031498 (9th Cir. Aug. 8, 2023) ............................9
*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987)...........................................................12, 17
*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994)...................................................................8
*Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*,
   78 F.3d 1360 (9th Cir. 1995) ...................................................10
*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ..................................................8
*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005)...........................................................11, 12
*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982)..................................................................12
*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)................................................................11
*Matsuda v. City & Cnty. of Honolulu*,
   512 F.3d 1148 (9th Cir. 2008) ................................................19
*MHC Fin. Ltd. P'ship v. City of San Rafael*,
   714 F.3d 1118 (9th Cir. 2013) .................................13, 14, 17, 19
*Miller v. Farris*,
   No. 21-9551, 2023 WL 4680370 (C.D. Cal. June 14, 2023)..................19
*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001)..................................................................10
*Penn Central Transportation Co. v. City of New York*,
   438 U.S. 104 (1978)...........................................................12, 17
*Penn Coal Co. v. Mahon*,
   260 U.S. 393 (1922).........................................................11, 12, 13
*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984)..................................................................14
*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..................................................8
*Samson v. City of Bainbridge Island*,
   683 F.3d 1051 (9th Cir. 2012) .............................................19, 20
*Schmidt v. City of Pasadena*,
   No. LACV2108769, 2023 WL 4291440 (C.D. Cal. Mar. 8, 2023)...............19
*Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*,
   4 F.4th 747 (9th Cir. 2021) ....................................................19
*Southern California Rental Housing Association v. County of San Diego*,
   550 F. Supp.3d 853 (S.D. Cal. July 26, 2021) ....................14, 15, 17
*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..................................................9
*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*,
   560 U.S. 702 (2010)..................................................................18
*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan Agency*,
   535 U.S. 302 (2002)...........................................................11, 14
*Tandon v. Newsom*,
   517 F. Supp.3d 922 (N.D. Cal. 2021) ........................................19

*Tuck's Rest. and Bar v. Newsom*,
  No. 20-CV-02256, 2022 WL 5063861 (E.D. Cal. Oct. 4, 2022)....................................9
*United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*,
  919 F.2d 1398 (9th Cir. 1990) ...................................................................................10
*Valley Invs.-Redwood LLC v. City of Alameda*,
  No. 22-CV-06509, 2023 WL 2868838 (N.D. Cal. Apr. 10, 2023)............................22
*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .....................................................................................8
*WildEarth Guardians v. United States Dep't of Agric.*,
  795 F.3d 1148 (9th Cir. 2015) .....................................................................................8

3:22-cv-01274-LB

1   TO ALL PARTIES AND COUNSEL OF RECORD:

2   PLEASE TAKE NOTICE that on February 1, 2024 at 9:30 a.m. in Courtroom B (15th

3   Floor) of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California,

4   Defendants City of Oakland and the Oakland City Council will, and hereby do, move to dismiss

5   Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

6   12(b)(6).

7   This motion is made on the grounds that the FAC fails to allege sufficient facts to invoke

8   the subject-matter jurisdiction of this Court and fails to state claims upon which relief can be

9   granted. This motion is based on this notice, the memorandum of points and authorities, any

10  further briefing, oral argument, and the complete files and records of this proceeding.

11  **MEMORANDUM OF POINTS AND AUTHORITIES**

12  ## I.   INTRODUCTION

13  When the Covid-19 pandemic struck, the City of Oakland, like public entities throughout

14  the country, took reasonable steps to safeguard the health and safety of its residents. For

15  example, the City Council enacted an eviction moratorium barring landlords, in most cases, from

16  evicting tenants during the public-health emergency. The City was concerned that as renters'

17  incomes declined due to the economic fall-out of the pandemic and they struggled to pay rent,

18  landlords would evict them, leading to increased Covid-19 transmission and destabilizing the

19  City by causing its already serious homelessness problem to spike. The moratorium was intended

20  to prevent these harms by keeping people housed.

21  In the spring of 2023, the City Council set a July 15, 2023 expiration date for the

22  moratorium. At the same time, the Council adopted new, prospective restrictions on landlords'

23  authority to evict tenants by amending its Just Cause for Eviction ordinance. These Just Cause

24  Amendments prohibit evictions based on a renter's nonpayment of rent while the moratorium

25  was in effect, provided the renter can show that they suffered a "substantial" financial hardship

26  related to Covid. The Amendments also prohibit evictions based on a renter's failure to pay less

27  than one-month's rent and based on the violation of unreasonable lease terms. Importantly, the

28  Amendments are strictly a constraint on *evictions*. They do not preclude landlords from pursuing

1    other legal avenues—such as breach-of-contract actions—to recover any outstanding sums of

2    money renters may owe.

3        Five individual plaintiffs and an association that represents landlords filed this action in

4    March 2022, asserting various constitutional challenges to the City's eviction moratorium. In

5    short order, Plaintiffs filed a summary-judgment motion arguing that, on its face, the City's

6    eviction moratorium constituted an unlawful taking of private property in violation of the Fifth

7    Amendment as well as a deprivation of their Fourteenth Amendment procedural due-process

8    rights, among other things. In November 2022, this Court denied Plaintiffs' motion in its

9    entirety. Nearly a year later, in September 2023, Plaintiffs filed their first amended complaint.

10   The signature differences between that complaint and the original is the addition of 53 new

11   individual and corporate plaintiffs, as well as allegations against the City's Just Cause

12   Amendments. Plaintiffs continue to assert the same substantive constitutional and statutory

13   claims but fail to plead allegations giving rise to any plausible right to relief, either on a facial or

14   an as-applied basis.

15       First, Plaintiffs cannot state a physical-takings claim under the Fifth Amendment or the

16   California Constitution because the moratorium was of limited scope and duration (and has since

17   expired), did not compel Plaintiffs to rent out their properties at all, let alone to their specific

18   tenants, and did not otherwise constitute the kind of appropriation of their properties needed to

19   establish a physical taking. The same is true of Plaintiffs' challenge to the Just Cause

20   Amendments. Those Amendments limit landlords' ability to evict tenants; they do not demand

21   that Plaintiffs use their properties as rentals and they leave undisturbed other remedies available

22   to landlords to deal with lease violations, such as breach-of-contract actions for the nonpayment

23   of rent. Public entities have substantial authority to regulate the landlord-tenant relationship and

24   Plaintiffs cannot allege allegations that cross the steep threshold of a plausible physical-takings

25   claim.

26       Second, Plaintiffs have likewise failed to allege either a facial or as-applied regulatory-

27   takings claim. They do not plead facts showing they suffered a severe diminution in the value of

28   their properties as a result of the moratorium or the Just Cause Amendments. Nor do they plead

facts suggesting that the moratorium or Just Cause Amendments impermissibly interfered with the reasonable investment expectations they had when they acquired their properties or that these regulations went beyond adjusting economic benefits and burdens to advance the common good.

Third, Plaintiffs cannot plead facial or as-applied violations of their due process and equal-protection rights because the City had a rational basis for instituting the eviction moratorium and adopting the Just Cause Amendments—to mitigate the public-health harms of the once-in-a-century pandemic gripping the globe, and to address the City's affordable-housing and homelessness crises. Because these regulations survive rational-basis review, Plaintiffs' claims necessarily fail.

Fourth, Plaintiffs cannot obtain a writ of mandate under California law invalidating the moratorium or the Just Cause Amendments. The former is no longer in effect and, contrary to Plaintiffs' assertion, the City acted well within its authority in enacting the Just Cause Amendments.

Finally, Plaintiffs' request for declaratory relief in connection with the now expired moratorium is moot and Plaintiff Housing Providers of America lacks standing to pursue damages in connection with the moratorium—the only kind of relief potentially available as to that regulation.

Plaintiffs seek to conjure violations of law where none exist. For all the reasons set forth above, and described in more detail below, this Court should dismiss the first amended complaint in its entirety.

## II.   FACTS

**A.   The City enacts an eviction moratorium to prevent mass displacement during the pandemic.**

On March 4, 2020, Governor Newsom declared a state of emergency in California in response to the Covid-19 pandemic. (Dkt. 143 [FAC], ¶ 69.) Over the ensuing weeks and months, the Governor and Legislature took steps to restrict landlords' ability to evict tenants during the public-health emergency. (Dkt. 143, ¶¶ 69-74.)

The City declared a local state of emergency due to Covid-19 on March 9, 2020, which was ratified on March 12, 2020, in City Council Resolution No. 88075. (Dkt. 143, ¶ 75.) On March 27, 2020, the City enacted its eviction moratorium in Ordinance No. 13589. (Dkt. 143, ¶ 76; RJN, Exh. A.) The Ordinance explained that the City "is experiencing a severe housing affordability crisis," "60 percent of Oakland residents are renters," and more than 4,000 City residents are homeless. (RJN, Exh. A.) In addition, community members were suffering income declines and layoffs as a result of the pandemic. (RJN, Exh. A.) The purpose of the eviction moratorium was therefore to "prevent displacement, reduce transmission of . . . Covid-19, and promote the stability and the health and safety of" residents. (RJN, Exh. A.) The moratorium prohibited landlords from evicting tenants except: (1) if "the tenant pose[d] an imminent threat to the health or safety of other occupants of the property," or (2) if the eviction was undertaken pursuant to the Ellis Act. (Dkt. 143, ¶ 76; RJN, Exh. A.) The moratorium was originally slated to expire on May 31, 2020, but it was extended through subsequent ordinances which tied its expiration to the date on which the City Council declared the local Covid-19 emergency over. (Dkt. 143, ¶ 77; RJN, Exhs. A-C.)

**B.     The City's eviction moratorium ends on July 15, 2023 and the City enacts new protections for renters.**

On May 2, 2023, the city passed Ordinance No. 13737, which specified that the eviction moratorium would expire on July 15, 2023. (Dkt. 143, ¶ 78.) This "Phase-Out Ordinance" also prohibits evictions based on the nonpayment of rent that accrued while the moratorium was in effect (March 9, 2020 through July 14, 2023), so long as renters can establish they did not pay "because of a substantial reduction in household income or substantial increase in expenses resulting from the Coronavirus pandemic" (the "Accrued-Rent Provision"). (Dkt. 143, ¶ 78; RJN, Exh. D.) In other words, the Accrued-Rent Provision provides *a defense to renters in eviction proceedings* and puts the burden on them to show they suffered a "substantial" financial hardship as a result of the pandemic. (RJN, Exh. D.) It does not preclude landlords from seeking to recover the outstanding rent through a breach-of-contract action.

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

At the same time as it set an end date for the eviction moratorium, the City amended its Just Cause for Eviction Ordinance to add new protections for renters. *First*, the City barred landlords from evicting tenants for the nonpayment of rent if the amount owed "is less than one month of fair market rent for a unit of equivalent size in the Oakland metro area" (the "One-Month-Rent Provision"). (Dkt. 143, ¶ 78; RJN, Exh. D.) *Second*, the City barred landlords from evicting tenants for violating material lease terms unless the landlord "demonstrate[s] that the term of tenancy is reasonable" (the "Reasonable-Term Provision"). (Dkt. 143, ¶ 78; RJN, Exh. D.) *Third*, the City added the Accrued-Rent Provision discussed above so the defense it establishes is codified in the Just Cause Ordinance.[1] (RJN, Exh. D.)

Plaintiffs allege that the City's eviction moratorium has "had devastating impacts" on them. (Dkt. 143, ¶ 84.) There are 58 individual and corporate plaintiffs named in the amended complaint. Yet, factual allegations concerning the experiences of only four Plaintiffs who own property in the City are set forth. The allegations concerning those Plaintiffs are described below:

▪ *Plaintiff John Williams:* Williams owns a duplex in the City. He has a long-term renter in the downstairs unit who consistently paid her monthly rent for 12 years. She stopped doing so, however, after the City enacted the eviction moratorium, even though she had no Covid-related reason for failing to pay her rent. The renter in Williams's upstairs unit vacated in March 2021, and Williams chose not to re-lease that unit out of concern that a new renter would refuse to pay rent. By October 2021, the stress of this situation led to Williams being hospitalized and he is now disabled. Williams quit his job and moved into his upstairs unit. He has received some mortgage assistance through the State, but that does not cover the outstanding rent owed by his tenant, nor has she paid down any of that amount. (Dkt. 143, ¶ 85.)

---

[1] Plaintiffs appear to collectively refer to these three provisions in their amended complaint as the "Phase Out Ordinance." That is a misnomer. These provisions are duly enacted amendments to the City's Just Cause Ordinance. The City will therefore refer to them in this brief as the "Just Cause Amendments" or, when discussing them individually, by the shorthand given above, i.e., the Accrued-Rent Provision, the One-Month-Rent Provision, and the Reasonable-Term Provision.

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT                3:22-cv-01274-LB

- *Plaintiff Jaqueline Watson-Baker:* Watson-Baker owns a duplex in the City with front and rear units. She entered into her lease with the renter in the rear unit in 2016, and began having problems with him at some unspecified point before the pandemic began. Watson-Baker sought to gain access to the unit because she was concerned about her renter's activities: He had covered the windows with tinfoil and installed an air conditioner, and she saw signs of a rat infestation. She filed a court proceeding in 2018 and although she had a hearing date for March 2020, it was vacated by the court due to the pandemic. When Watson-Baker was finally able to inspect the premises, she discovered it was in "gross disrepair," with stains on the walls, insect infestations, and feces and urine smeared all over the bathroom, among other things. Besides damaging the property, the renter had also stopped paying rent. Watson-Baker considered selling the property, but she was advised that the renter's conduct had devalued it "by almost a third of the market value." (Dkt. 143, ¶ 88.)

- *Plaintiff Michael Loeb:* Loeb purchased two units in an apartment building in April 2020 with the goal of combining them and occupying them as his home. He rented out one of the units and then subsequently offered the tenant $30,000 to move out, more than four times what is required as a relocation payment under the City's Just Cause Ordinance. The tenant, however, has demanded $160,000 and has refused to leave. (Dkt. 143, ¶ 89.)

- *Plaintiff Hannah Kirk:* Kirk owns a single-family home in the City where she lives with her two children and a renter whose lease began in 2019. The renter shares Kirk's kitchen and bathroom with her. Until July 2021, the renter consistently paid her rent but then stopped doing so—even though she was not experiencing any Covid-related hardship— and refused to move out. After two years of sharing her home with a non-paying renter, Kirk and her children moved out. She has not been able to pay her mortgage for approximately eight months and is worried she will lose her home.

- *Housing Providers of America:* HPOA is a network of housing activists who work to protect the legal rights of housing providers. Its members include landlords within the City who have been harmed as a result of the City's eviction moratorium and Just Cause

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND                                      3:22-cv-01274-LB
SUPPLEMENTAL COMPLAINT

1   Amendments, including as a result of tenants who have stopped paying rent and who

2   have damaged the owners' property. (Dkt. 143, ¶ 21.)

3       Plaintiffs generally allege they have "suffered devastating financial losses because of the

4   Moratoria [the City and County's] and Phase Out Ordinance" and put that figure, collectively,

5   "in excess of tens of millions of dollars." (Dkt. 143, ¶¶ 92, 95.) They contend their property

6   values have declined and they have suffered the loss of rent payments. (Dkt. 143, ¶ 95.) They

7   also allege that the moratorium and Just Cause Amendments have "placed a severe and

8   disproportionate regulatory burden on [them] and forced [them] to carry the cost of a public

9   program." (Dkt. 143, ¶ 96.)

10  **C.    This Court previously denied Plaintiffs' motion for summary judgment and Plaintiffs thereafter filed their amended complaint.**

11      This case was filed on March 1, 2022 by five individuals as well as HPOA. (Dkt. 1.)

12  They asserted several claims challenging the City's eviction moratorium, including that the

13  moratorium: (1) constituted a taking in violation of the Fifth Amendment; (2) constituted an

14  inverse condemnation in violation of the California Constitution; (3) violated their rights under

15  the Fourteenth Amendment Due Process Clause; and (4) violated their rights under the

16  Fourteenth Amendment's Equal Protection Clause. (Dkt. 1 at 13-19.) Plaintiffs then moved for

17  summary judgment on their takings and procedural due-process claims, as well as their claims

18  that the City's moratorium unlawfully amended its Just Cause ordinance and was preempted by

19  state statutes governing evictions.

20      In a lengthy written decision issued on November 22, 2022, this Court denied Plaintiffs'

21  summary judgment motion in its entirety. (Dkt. 43.) On September 20, 2023, Plaintiffs filed their

22  first amended complaint. (Dkt. 143.) They added 53 new individual and corporate plaintiffs and

23  now assert four causes of action, challenging not just the City's now repealed eviction

24  moratorium, but also the Just Cause Amendments—i.e., the Accrued-Rent Provision (prohibiting

25  landlords from evicting tenants for nonpayment of rent that accrued while the moratorium was in

26  effect), the One-Month-Rent Provision (prohibiting landlords from evicting tenants who owe less

27  than one-month's rent), and the Reasonable-Term Provision (requiring landlords to establish the

28

7

1    reasonableness of a lease term when they seek to evict a tenant for violating that term). Plaintiffs

2    allege that the eviction moratorium and Just Cause Amendments: (1) constitute a taking in

3    violation of the Fifth Amendment; (2) constitute an inverse condemnation in violation of the

4    California Constitution; (3) violate Plaintiffs' procedural and substantive due-process rights

5    under the Fourteenth Amendment; and (4) violate Plaintiffs' equal-protection rights under the

6    Fourteenth Amendment. (Dkt. 143 at 24-28.) Plaintiffs also seek a writ of mandate under

7    California law, asking this Court to set aside and void the effect of the moratorium and Just

8    Cause Amendments. (Dkt. 143 at 28-30.)

9         For the reasons described below, Plaintiffs' allegations fail to state a claim for relief. This

10   Court should dismiss the amended complaint in its entirety.

11                               **III.    ARGUMENT**

12   **A.    Motion to dismiss legal standards**

13        Standing and mootness both relate to a federal court's subject-matter jurisdiction and are

14   properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *White v.*

15   *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A party seeking to invoke federal subject-matter

16   jurisdiction bears the burden of proving standing. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S.

17   375, 377 (1994); *WildEarth Guardians v. United States Dep't of Agric.*, 795 F.3d 1148, 1154

18   (9th Cir. 2015). When Defendants challenge the facial sufficiency of the plaintiffs' allegations,

19   contending that the plaintiffs' allegations are insufficient on their face to invoke federal

20   jurisdiction, this Court applies the same standard as it would to a Rule 12(b)(6) motion to

21   dismiss. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Leite v. Crane*

22   *Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

23

24        A Rule 12(b)(6) motion to dismiss will be granted where the complaint fails to allege

25   "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

26   550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

27   content that allows the court to draw the reasonable inference that the defendant is liable for the

28

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 544 (citation and bracket omitted).

While the facts alleged in the complaint are taken as true in ruling on a motion to dismiss, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**B.**   **Plaintiffs' claim for declaratory relief in connection with the eviction moratorium is moot.**

The City's eviction moratorium expired on July 15, 2023. Plaintiffs' request for declaratory relief is therefore moot. "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 862 (9th Cir. 2017). The expiration of the eviction moratorium means declaratory relief would be pointless. Indeed, the Ninth Circuit recently ruled that a declaratory-relief challenge to Washington State's eviction moratorium was moot because that moratorium also had been lifted. *Jevons v. Inslee*, No. 22-35050, 2023 WL 5031498 (9th Cir. Aug. 8, 2023). The Court explained that "'a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction.'" *Id.* at *1 (quoting *Bayer*, 861 F.3d at 868); *see also Tuck's Rest. and Bar v. Newsom*, No. 20-CV-02256, 2022 WL 5063861, *3-*4 (E.D. Cal. Oct. 4, 2022).

This Court should therefore dismiss with prejudice Plaintiffs' declaratory-relief request in connection with the City's expired eviction moratorium.

**C.**   **Plaintiff HPOA lacks standing to prosecute any claims in connection with the eviction moratorium.**

As noted above, Plaintiff HPOA describes itself as an advocacy organization comprised of landlords—including landlords in the City—who work to protect the property interests of their

members. To maintain any claims, HPOA bears the burden of establishing the following three associational-standing requirements: (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to its purpose; and (3) neither the claims asserted, nor the relief requested, requires the participation of its individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1997); *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990).

Because the City's eviction moratorium has expired, the only relief available to Plaintiffs is damages.[2] Determining the amount of damages owed to aggrieved landlords necessarily requires individualized proof and thus HPOA cannot satisfy the third requirement of associational standing—to recover, each of its Oakland members would need to participate in the lawsuit. Where that is the case, courts routinely hold that associational standing is defeated, and this Court should follow suit. *See e.g., Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015); *Lake Mohave Boat Owners Ass'n v. Nat'l Park Serv.*, 78 F.3d 1360, 1367 (9th Cir. 1995); *United Union of Roofers*, 919 F.2d at 1400. HPOA's claims in connection with the City's eviction moratorium should be dismissed.

**D.      Plaintiffs fail to state takings claims under the Fifth Amendment and the California Constitution.**

Plaintiffs allege a takings claim in violation of the Fifth Amendment to the U.S. Constitution and an inverse-condemnation claim under the California Constitution. (Dkt. 143, ¶¶ 97-106.) The Fifth Amendment prohibits the taking of private property "without just compensation." It has been incorporated against the States through the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). The California Constitution likewise prohibits takings. Cal. Const., art. 1, § 19. The California Supreme Court construes the state clause "congruently with the federal clause" and regularly looks to federal law in applying the state clause. *Herzberg v. County of Plumas*, 133 Cal.App.4th 1, 13, 16-20 (2005).

---

[2] For purposes of this motion, the City does not contest that HPOA has standing to assert claims challenging the Just Cause Amendments. Those claims fail for other reasons, however, as described below.

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND
SUPPLEMENTAL COMPLAINT                                    3:22-cv-01274-LB

Generally speaking, there are two broad categories of takings: (1) physical or "per se" takings, and (2) regulatory takings. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan Agency*, 535 U.S. 302, 321 (2002). The paradigmatic example of a physical taking is "the direct appropriation of property." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Regulatory takings, on the other hand, may occur if a regulation "goes too far" in intruding on property rights. *Id.* at 450 (quoting *Penn Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

### 1.   *Plaintiffs cannot allege a viable physical-takings claim.*

In its decision denying Plaintiffs' summary-judgment motion, this Court followed in the footsteps of numerous other district courts and rejected Plaintiffs' *facial* attack on the City's eviction moratorium as an unlawful physical taking. (Dkt. 43 at 16-19.) Recently, the Ninth Circuit rejected an *as-applied* physical-takings challenge to Seattle's eviction moratorium. *El Papel, LLC v. City of Seattle*, No. 22-35656, 2023 WL 7040314 (9th Cir. Oct. 26, 2023). The *El Papel* Court held that the plaintiff landlords chose to rent out their properties in the first instance and that Seattle's moratorium did not "impose a physical occupation on" the plaintiffs or compel them "to use their property for a specific purpose." *Id.* at *1-*2. The plaintiffs' argument that Seattle's moratorium amounted to the physical taking of their property therefore failed. *Id.*

Plaintiffs have not alleged any facts giving rise to the inference that the City's eviction moratorium, as applied to them, constituted a "physical invasion" of their property, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005), or required them "to sacrifice *all* economically beneficial uses in the name of the common good." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). Just as in *El Papel*, Plaintiffs voluntarily chose to go into the residential rental business. And even though the City's eviction moratorium paused Plaintiffs' ability to evict their tenants during the pandemic (with certain exceptions), the right to exclude "is not absolute in the land/tenant context." *El Papel*, 2023 WL 7040314, at *2.

The amended complaint is also devoid of any facts alleging the Just Cause Amendments—together or individually—amount to an unlawful physical taking, either on their face or as applied. Nor could Plaintiffs plausibly so allege: The two most substantial

11

amendments—the Accrued-Rent Provision and the One-Month-Rent Provision—merely prevent landlords from *evicting* tenants based on their Covid-related back rent (the Accrued-Rent Provision) or because the tenant owes less than one month's rent (the One-Month-Rent Provision). It does not deprive landlords of the ability to sue their tenants for breach of contract to recover the outstanding sums. Further, the Reasonable-Term Provision simply requires landlords to show that a lease term is reasonable when they seek to evict a tenant for violation of that term. That should hardly be a heavy lift, nor does it suggest the far-reaching invasion of landlords' property rights necessary to make out a physical-takings claim.

In sum, this Court should dismiss Plaintiffs' physical-takings claim without leave to amend. That leaves Plaintiffs exclusively with a possible regulatory-takings claim. We turn to that below.

### 2.    *Plaintiffs have not alleged a viable regulatory-takings claim.*

The Supreme Court has "consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982). Regulatory takings are assessed according to the three-factor test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978), to determine if the regulation at issue "goes too far." *Penn. Coal Co.*, 260 U.S. at 415. The *Penn Central* factors include: (1) the economic impact of the regulation; (2) its interference with reasonable investment-backed expectations; and (3) the character of the government action. *Penn Central*, 438 U.S. at 124. The first two factors are "primary." *Lingle*, 544 U.S. at 538-39. As described below, Plaintiffs have not alleged facts to show that either the moratorium or the Just Cause Amendments constitute a facial or an as-applied regulatory taking.

### (a)    *Economic impact*

The economic impact of a challenged regulation is determined by "compar[ing] the value that has been taken from the property with the value that remains in the property . . . as a whole." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987). Put differently, "economic impact is determined by comparing the total value of the affected property before and

after the government action." *Colony Cove*, 888 F.3d at 451. Mere diminution in the value of property is not sufficient to demonstrate a taking. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993); *Penn. Coal Co.*, 260 U.S. at 413. The Ninth Circuit has deemed reductions in property values as high as 75 percent, 81 percent, and 92.5 percent insufficient to satisfy the economic-impact factor. *Colony Cove*, 888 F.3d at 451; *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013). It has likewise observed that it is not aware of any case finding a taking where the diminution in value was less than 50 percent. *Colony Cove*, 888 F.3d at 451. The threshold for showing a sufficiently severe economic impact is thus "high." *GHP Mgmt. Corp. v. City of Los Angeles*, No. 21-06311, 2022 WL 17069822, *4 (C.D. Cal. Nov. 17, 2022).

Here, Plaintiffs have not pleaded any facts from which the economic impact of the City's moratorium or the Just Cause Amendments may be ascertained. They allege in vague and conclusory fashion that they have "collectively" suffered losses "in excess of tens of millions of dollars" as a result of lost rent and property damage. (Dkt. 143, ¶ 95.) That falls short, first, because courts have held that lost rent is not a viable measurement of economic impact. *See Colony Cove*, 888 F.3d at 451; *GHP Mgmt.*, 2022 WL 17069822, at *4. Second, a generalized assertion of "tens of millions" in losses is not an adequate substitute for facts concerning the value of Plaintiffs' residential properties before the moratorium and Just Cause Amendments took effect and their value after those regulations took effect. Absent individualized facts as to each Plaintiff allowing a comparison of the total value of their properties before and after the challenged regulations were enacted, Plaintiffs cannot satisfy the first *Penn Central* factor.

A case challenging Los Angeles's eviction moratorium is illustrative. *GHP Mgmt.*, 2022 WL 17069822, at *4. The plaintiffs there alleged they had lost $20 million in rent their tenants owed. *Id.* The court rejected this allegation as insufficient, holding that the complaint "does not allege any particular diminution in value, or specific pre- or post-Moratorium values, from which a level of diminution could be calculated." *Id.* The court similarly rejected as "vague and conclusory" the plaintiffs' allegation that the impact of the moratorium was "severe and ruinous." *Id.*

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

3:22-cv-01274-LB

Other cases are to the same effect. In *Southern California Rental Housing Association v. County of San Diego*, 550 F. Supp.3d 853 (S.D. Cal. July 26, 2021), the court declined to issue a preliminary injunction enjoining San Diego's eviction moratorium, in part because the plaintiffs had not alleged sufficient facts relating to the purported economic impact they suffered: "It is difficult to calculate the impact that the Ordinance has on the value of Plaintiff's members' property interests, particularly because Plaintiff has not included any facts related to a diminution of value of their property." *Id.* at 866; *see also Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145, *1 (D. Nev. Oct. 26, 2022) (holding that the complaint lacked facts concerning the value of the property pre-deprivation compared with its value post-deprivation); *California Ass'n for the Pres. of Gamefowl v. Stanislaus County*, No. 20-CV-01294, 2023 WL 1869010, *30 (E.D. Cal. Feb. 9, 2023) (same).

The amended complaint here suffers from the same pleading deficiencies as *GHP* and *Southern California Rental Housing Association*.[3] Plaintiffs' failure to set forth specific facts as to the reduction in property value they each have purportedly suffered as a result of the City's moratorium and Just Cause Amendments means they cannot satisfy the economic-impact factor of the *Penn Central* test. That in turn is fatal to their regulatory-takings claim.[4]

### (b)     Investment-backed expectations

The second *Penn Central* factor concerns the challenger's investment-backed expectations when they acquired their property. "A reasonable investment-backed expectation must be more than a unilateral expectation or an abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984). It also must be *objectively* reasonable. *Colony Cove*, 888 F.3d at 452.

---

[3] Plaintiff Watson-Baker takes a stab at meeting the economic-impact factor by alleging she was "advised" that the property damage done by her tenant reduced the value of her rental home by "almost a third." (Dkt. 143, ¶ 88.) A mere 33 percent decrease, however, does not hurdle the high bar necessary to establish an economic impact. *Colony Cove*, 888 F.3d at 451; *MHC Fin.*, 714 F.3d at 1127. Moreover, Watson-Baker admits that the property damage began *before* the eviction moratorium was enacted. (Dkt. 143, ¶ 88.) Her 33 percent figure is therefore meaningless—it does not tell us what the value of her property in its already damaged state was before the moratorium compared to what its value was after the moratorium was put in place.

[4] It's difficult to see how the Plaintiffs will ever be able to sufficiently plead economic-impact, especially since the eviction moratorium has now expired. As the Supreme Court has admonished, "a fee simple estate cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is lifted." *Tahoe-Sierra Preservation Council, Inc.*, 535 U.S. at 332.

This factor is more difficult to satisfy where a business operates in a regulated environment. "[T]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Concrete Pipe*, 508 U.S. at 645. Indeed, regulated industries must expect that regulations can be strengthened at any time and this "is especially true during times of emergency." *Gallo v. Dist. of Columbia*, 610 F. Supp.3d 73, 90 (D.C. 2022) (citing *Block v. Hirsh*, 256 U.S. 135, 153-54 (1921)).

Plaintiffs fail to allege any specific facts regarding this factor. They merely parrot the language of *Penn Central*, asserting that the City's eviction moratorium and Just Cause Amendments "unreasonably and substantially interfered with Plaintiffs' investment-backed expectations" and those expectations "have been violated as a matter of law." (Dkt. 143, ¶¶ 99-100.) Merely reciting the elements of a cause of action—as Plaintiffs have done—is far from sufficient to state a viable claim for relief. *Twombly*, 550 U.S. at 555.

Moreover, courts have held that Plaintiffs cannot show eviction moratoria interfered with their reasonable investment-backed expectations. *See S. California Rental Hous. Ass'n*, 550 F. Supp.3d at 866-67 (collecting cases); *Gallo*, 610 F. Supp.3d at 90. Those courts have reasoned that: (1) landlord-tenant relationships are always highly regulated; (2) while the moratoria temporarily halted landlords' ability to evict tenants, they did not prevent landlords from collecting rent; and (3) government funding programs were available to mitigate the financial effect on landlords of nonpaying renters. *S. California Rental Hous. Ass'n* , 550 F. Supp.3d at 866-67 (collecting cases); *Gallo*, 610 F. Supp.3d at 90.

All these considerations are equally applicable here. Landlords operating in the City are subject to extensive and evolving regulations governing the rent they can charge, the terms under which they may re-occupy their properties, and the reasons they may evict tenants. *See* Oakland Municipal Code ("OMC"), § 8.22.010 *et seq.* (Residential Rent Adjustment Program); § 8.22.310 *et seq.* (Just Cause for Eviction Ordinance); § 8.22.400 *et seq.* (concerning withdrawing rental units from the market); & § 8.22.600 *et seq.* (Tenant Protection Ordinance). Landlords thus cannot plausibly claim—and Plaintiffs do not allege—that they were not on notice that the City could institute new regulations affecting their rental properties and relationships with

15

tenants.[5] The public-health emergency compelled the City to act to avoid an avalanche of evictions that risked increasing transmission of Covid-19 and exacerbating the City's already severe affordable-housing and homelessness crises. Indeed, as the Supreme Court has commented, "a public exigency will justify the legislature in restricting property rights in land to a certain extent without compensation." *Block*, 256 U.S. at 156. And the City's subsequent Just Cause Amendments are precisely the kind of new regulations landlords should expect—especially when they operate in not just an extensively regulated industry, but in a community struggling with affordable housing and homelessness.[6]

Further, neither the eviction moratorium, nor the Just Cause Amendments, prevented Plaintiffs from collecting rent; the moratorium merely paused their ability to evict tenants for nonpayment during the pandemic and the newly enacted Accrued-Rent provision maintains that policy by enabling tenants to avoid an eviction if they can show their nonpayment was due to "a substantial reduction in household income or substantial increase in expenses resulting from the Coronavirus pandemic." (RJN, Exh. D.) Plaintiffs remain free to bring breach-of-contract actions to recoup any unpaid rent stemming from the period in which the moratorium was in effect.

Finally, Plaintiffs concede that the State, Alameda County, and the City all offered funding assistance programs to help landlords offset any loss of rental income they experienced during the pandemic. (Dkt. 143, ¶¶ 70, 74, 82-83.) Indeed, Plaintiff Williams admits that he has received some mortgage assistance from the State and Plaintiff Watson-Baker admits that she

---

[5] Admittedly, there's a split in authority on this factor with one court reasoning that landlords could not have reasonably anticipated being subject to an eviction moratorium as a result of a pandemic. *GHP Mgmt.*, 2022 WL 17069822 at *5. The *GHP* court concluded that "[t]he regulatory environment existing prior to the pandemic . . . gave Plaintiffs little reason to expect that they might be barred from evicting tenants for nonpayment of rent." *Id.* at *5. Even if the Plaintiffs could not have anticipated the Covid-19 pandemic, they nonetheless were on notice that emergencies can arise that prompt governments to institute new safeguards for renters. *See e.g., Block v. Hirsh*, 256 U.S. 135, 153-56 (1921) (upholding restriction on landlords' ability to evict tenants due to the exigencies of World War I). Moreover, a temporary intrusion on one of a landlord's property rights—the ability to exclude—does not give rise to an unlawful taking because the remaining bundle of rights are undisturbed.

[6] Plaintiff Loeb cannot plausibly allege that his investment-backed expectations were thwarted by the City's moratorium—nor does he—because he admits that he purchased his property in April 2020, i.e., *after* the City's eviction moratorium went into effect. (Dkt. 143, ¶ 89.) Loeb therefore cannot contend he was subjected to a new regulation he could not have anticipated.

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND
SUPPLEMENTAL COMPLAINT

3:22-cv-01274-LB

1  has applied for assistance from the County.[7] (Dkt. 143, ¶¶ 85, 88.)

2      For all these reasons, Plaintiffs have not pleaded factual allegations satisfying the second

3  *Penn Central* factor.

4          *(c)    The character of the regulations*

5      The third and final *Penn Central* factor concerns the character of the regulation. This

6  factor decisively favors the City.

7      Ordinances that adjust the benefits and burdens of economic regulation to advance the

8  common good generally do not violate the Takings Clause. *MHC Fin.*, 714 F.3d at 1128; *GHP*

9  *Mgmt.*, 2022 WL 17069822, at *5; *S. California Rental Hous. Ass'n*, 550 F. Supp.3d at 867. As

10 noted above, the purpose of the City's eviction moratorium was to keep people housed during the

11 pandemic, and thereby help contain the spread of Covid-19 and avoid other public-health and

12 welfare problems that increase with homelessness. "There can be little dispute that, absent the

13 Moratorium's protections, significant numbers of tenants with Covid-related loss of income

14 would have been evicted, resulting not only in the harms typical of mass displacements, but

15 exacerbating the spread of Covid-19 as well, to the detriment of all." *GHP Mgmt.*, 2022 WL

16 17069822, at *5; *see also S. California Rental Hous. Ass'n*, 550 F. Supp.3d at 867 ("The

17 Ordinance was enacted with the stated purpose of ensuring that citizens could remain housed

18 during the unprecedented Covid-19 pandemic to limit the spread of a deadly virus.") The City

19 reasonably determined that the eviction moratorium was necessary to safeguard the public.

20 Owners are not permitted to use their properties in ways that injure the public "and the Takings

21 Clause did not transform that principle to one that requires compensation whenever the State

22 asserts its power to enforce it." *Keystone*, 480 U.S. at 491.

23      The Just Cause Amendments likewise reflect a reasonable policy choice to advance the

24 common good. *Penn Central*, 438 U.S. at 124. Plaintiffs do not allege any facts suggesting

25 otherwise. And while those amendments impose additional restrictions on landlords' ability to

26

27  [7] The only other City landlords about which the amended complaint provides any factual detail
   are Plaintiffs Loeb and Kirk. Loeb does not allege his tenant ever stopped paying rent so there
28 would have been no reason for him to apply for rental assistance. And Kirk does not allege
   whether she did so. (Dkt. 143, ¶¶ 89-90.)

THE CITY'S MOTION TO DISMISS FIRST AMENDED AND                    3:22-cv-01274-LB
SUPPLEMENTAL COMPLAINT

*evict* tenants, they do not prevent landlords from collecting rent, recovering outstanding rent that accrued during the pendency of the moratorium or otherwise through breach-of-contract actions, and evicting tenants for the violation of material, reasonable terms of their lease agreements.

In sum, Plaintiffs cannot satisfy the third factor of the *Penn Central* test because they cannot show that the character of the City's eviction moratorium and Just Cause Amendments suggests an unlawful taking.

\*          \*          \*

The absence of factual allegations establishing any of the three *Penn Central* factors means that Plaintiffs' cannot sustain either a facial or as-applied regulatory-takings claim. Plaintiffs' claims under the Fifth Amendment and California Constitution should therefore be dismissed.

**E.    Plaintiffs cannot state a substantive due-process claim under the Fourteenth Amendment.**

Plaintiffs allege the moratorium and Just Cause Amendments "are irrational and lacking in a legitimate government interest because there is no justification for such extreme measures. (Dkt. 143, ¶ 108.) They contend that owing to improving conditions since the pandemic began in March 2020 and the Bay Area's high rate of vaccination, the City had "no rational basis for the Moratorium[] and the [Just Cause Amendments] and any offered is plainly pretext." (Dkt. 143, ¶ 108.) Accordingly, they allege their substantive due-process rights have been violated.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const., amend. XIV, § 1. As an initial matter, Plaintiffs' substantive due-process claim is foreclosed because their allegations are covered by the Takings Clause. The crux of their claim is that the City's regulations have deprived them of their property rights. The Ninth Circuit has held that while substantive due-process rights are not "invariably preempt[ed]" when a plaintiff also alleges a takings claim, they may be preempted under some circumstances, including when the plaintiff's allegations fall within the *Penn Central* factors. *Id.* at 855. *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007). Indeed, substantive due process may not "do the work of the Takings Clause." *Stop the*

*Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (plurality opn.); *see also Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 556-57 (2d Cir. 2023). Because the government regulatory action Plaintiffs complain about falls within the contours of *Penn Central*, their claim must be analyzed under that constitutional framework, not substantive due process.

Even if it were not preempted, Plaintiffs still cannot state a viable substantive-due-process claim. Because the eviction moratorium and Just Cause Amendments are in the nature of economic regulations and do not implicate fundamental rights or suspect classifications, rational-basis review applies. *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021); *Matsuda v. City & Cnty. of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008). The moratorium and Just Cause Amendments are presumed valid and Plaintiffs bear the burden of showing they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012) (internal quotation marks and citation omitted). Moreover, "the threshold for a rationality-review challenge asks only whether the enacting body could have rationally believed at the time of enactment that the law would promote its objective." *MHC Fin.*, 714 F.3d at 1130 (cleaned up). Plaintiffs who assert substantive-due-process claims bear an "exceedingly high burden." *Samson*, 683 F.3d at 1058 (internal quotation marks and citation omitted).

Covid-related restrictions have been broadly upheld against substantive-due-process challenges. *See e.g., Miller v. Farris*, No. 21-9551, 2023 WL 4680370, *9 (C.D. Cal. June 14, 2023), report and recommendation adopted sub nom. *Miller v. Farris*, No. 21-9551, 2023 WL 4850749 (C.D. Cal. July 28, 2023); *Schmidt v. City of Pasadena*, No. LACV2108769, 2023 WL 4291440, *12 (C.D. Cal. Mar. 8, 2023); *Tandon v. Newsom*, 517 F. Supp.3d 922, 950 (N.D. Cal. 2021). In *Slidewaters*, the Ninth Circuit observed that "[t]here is a legitimate state interest in preventing the spread of Covid-19, a deadly contagious disease." 4 F.4th at 758. Likewise, in *JD Bols v. Newsom*, the court dismissed a substantive-due-process claim against San Diego's eviction moratorium because "under a rational basis review, the Mayor's Covid-19 restrictions

1    bear a rational relationship to the legitimate state interest of preventing the spread of Covid-19."

2    No. 20-CV-873, 2022 WL 17968082, *7 (S.D. Cal. Sept. 27, 2022).

3        Plaintiffs assert, without any factual support, that the City's eviction moratorium and Just

4    Cause Amendments are "irrational" and lack "justification." (Dkt. 143, ¶ 108.) But the City's

5    regulations are "presumed valid" and Plaintiffs must shoulder an "exceedingly high burden" in

6    showing they lack any rational basis. *Samson*, 683 F.3d at 1058 (internal quotation marks and

7    citation omitted). Plaintiffs do not even attempt to plead such facts, nor can they do so. As the

8    cases cited above illustrate, the City had a legitimate interest in preventing evictions during the

9    pandemic. Relatedly, the City's Just Cause Amendments are rationally related to its objective of

10   addressing its affordable-housing and homelessness crises.

11       Plaintiffs' conclusory allegations fall wide of the mark in pleading either a facial or as-

12   applied substantive due-process claim. Further, given the judicially noticeable facts and the

13   onerous legal standard at play, Plaintiffs cannot do so as a matter of law and their substantive

14   due-process claim should be dismissed with prejudice.

15   **F.    Plaintiffs cannot state a procedural due-process claim under the Fourteenth
           Amendment.**

16       Plaintiffs maintain that the moratorium and Just Cause Amendments violate procedural

17   due process because they "deprive Plaintiffs of *any* procedure to recover their properties under

18   most cases . . . ." (Dkt. 143, ¶ 108.)

19       This Court previously determined that as a facial matter, Plaintiffs were not entitled to

20   summary judgment on their procedural due-process claim. (Dkt. 43, at 28-30.) The Court held

21   that while the moratorium was in effect, landlords retained the right to evict tenants consistent

22   with the moratorium's exceptions and they also remained free to sue renters in breach-of-

23   contract actions to recover unpaid rent. (Dkt. 43, at 28-30.)

24       The FAC does not set forth any allegations suggesting that the eviction moratorium—as

25   applied to any Plaintiff—violated their procedural due-process rights. Nowhere does the FAC

26   describe circumstances relating to any particular Plaintiff showing how the eviction moratorium

27   denied them an opportunity to be heard. That is fatal to Plaintiffs' as-applied claim.

28

What's more, Plaintiffs do not plead any allegations whatsoever giving rise to a procedural due-process claim—either a facial or as-applied claim—with respect to the City's Just Cause Amendments. Nor can they do so. The Just Cause Amendments do not deprive the Plaintiffs of an unlawful-detainer hearing at which they may seek the eviction of their tenants, nor do they preclude the Plaintiffs from challenging evidence relied on by renters in those hearings. The Accrued-Rent Provision merely arms renters with a defense, such that they can avoid being evicted if they can establish they suffered a "substantial" Covid-related loss of income or increase in expenses that prevented them from paying their back rent. In the same vein, the Reasonable-Term Provision still permits Plaintiffs to seek to evict tenants who violate material terms of their lease agreements, but it puts the burden on Plaintiffs to establish that the breached lease term is "reasonable." And finally, while the One-Month-Rent Provision bars Plaintiffs from evicting tenants who owe less than one-month's rent, Plaintiffs can still seek to recover this money through a breach-of-contract action—just as they may bring breach-of-contract suits to recover outstanding rent incurred while the moratorium was in effect.

There are no set of facts Plaintiffs can allege to state a cognizable procedural due-process claim—either a facial or an as-applied claim. This Court should therefore dismiss this claim with prejudice.

## G. Plaintiffs cannot state an equal-protection claim under the Fourteenth Amendment.

Plaintiffs allege they have been denied equal protection in that they have been "unlawfully single[d] out, penalize[d], and target[ed]" by the moratorium and the Just Cause Amendments and have been prevented from "exercising their property rights to receive rents, occupy their properties, exclude others from their properties, and protect their properties from nuisance and damage." (Dkt. 143, ¶ 12.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As with the Due Process Clause,

21

because the regulations at issue here are economic in nature, rational-basis review applies. *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1123 (9th Cir. 2010); *Valley Invs.-Redwood LLC v. City of Alameda*, No. 22-CV-06509, 2023 WL 2868838, \*13 (N.D. Cal. Apr. 10, 2023). A statute must be "wholly irrational" to violate the Equal Protection Clause. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005). Because there are "plausible policy reasons" for the City's eviction moratorium and the Just Cause Amendments, Plaintiffs cannot make out an equal-protection claim. *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012).

As described throughout this brief, the City's purpose in enacting the eviction moratorium was to protect the public health and welfare in the midst of a once-in-a-century pandemic. Then, when it lifted the moratorium, the City adopted the Just Cause amendments to prevent an avalanche of evictions as a result of accumulated unpaid rent stemming from the pandemic—a situation that would seriously exacerbate the City's existing housing and homelessness crises. The Just Cause Amendments are not "wholly irrational," but reasonably calculated to accomplish these goals. *Fields*, 413 F.3d at 955.

Plaintiffs thus do not state a facial equal-protection claim. And because no Plaintiff alleges any individualized facts as to how the City's moratorium and/or the Just Cause Amendments violated their equal-protection rights, they also do not state an as-applied claim. As with Plaintiffs' procedural and substantive due-process claims, there are no set of facts they can allege that would give rise to a colorable equal-protection claim. It should be dismissed with prejudice.

**H.      Plaintiffs' cannot establish their state-law writ-of-mandate claim.**

Plaintiffs ask the Court to "set[] aside and void[] the effect" of the moratorium and the Just Cause Amendments. (Dkt. 143, ¶ 116.) This claim fails for multiple reasons.

First, the moratorium expired months ago and there is thus nothing for this Court to "set[] aside and void[]."

Second, Plaintiffs seek to have the Just Cause Amendments invalidated on the grounds they are preempted by the State's Covid-19 Renter Relief Act and that the City Council exceeded its authority to amend its Just Cause Ordinance. (Dkt. 143, ¶ 119.) Neither of these arguments is

well taken. This Court already determined in its summary-judgment decision that the eviction moratorium was not preempted by State law and that it was not outside the City's power to regulate the landlord-tenant relationship. (Dkt. 43, at 32-39.) The same is true of the Just Cause Amendments. Indeed, it has long been recognized that public entities have broad authority to regulate in this area, including through eliminating bases for eviction. *See e.g., Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 149 (1976). Moreover, the City's Just Cause Ordinance expressly allows the City Council to amend it "for the purpose of adding limitations on a landlord's right to evict." OMC § 8.22.360(F). That is all the City did here. It amended the Just Cause ordinance to prohibit landlords from evicting tenants who: (1) accrued back rent during the pendency of the moratorium that they did not pay as a result of a Covid-related financial hardship; (2) owe less than one-month's rent; or (3) violated an *unreasonable* lease term. Again, these are merely restrictions on landlords' ability to *evict* tenants. They do not foreclose breach-of-contract actions by landlords to recover outstanding rent.

Plaintiffs' allegations do not set forth any basis for this Court to grant writ relief and this claim should therefore be denied.

## IV.    CONCLUSION

For the reasons described above, the City respectfully requests that the Court: (1) dismiss Plaintiff HPOA from this lawsuit insofar as it challenges the City's expired eviction moratorium; and (2) dismiss with prejudice the moot declaratory-relief claim in connection with the eviction moratorium, the physical-takings claim, the inverse-condemnation claim, the due-process claim, the equal-protection claim, and the writ-of-mandate claim. The Court should also dismiss the regulatory-takings claim. Although amendment of that claim is likely futile, the City does not oppose granting Plaintiffs leave to amend that sole claim.


Dated: November 10, 2023                BARBARA J. PARKER, City Attorney


                                        By: _____
                                        ALLISON L. EHLERT, Deputy City Attorney
                                        Attorneys for Defendants,
                                        CITY OF OAKLAND and OAKLAND CITY COUNCIL

23