UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA, a 501(c)(4) Non-profit Corporation,<br><br>Plaintiffs and Petitioners,<br><br>v.<br><br>ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL, and DOES 1–10,<br><br>Defendants and Respondents,<br><br>ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT ACTION,<br><br>Intervenor-Defendant. | Case No. 3:22-cv-01274-LB<br><br>**ORDER ON MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 147, 149, 151, 152 |
| CALIFORNIA APARTMENT ASSOCIATION, STEPHEN LIN, RAKESH and TRIPTI JAIN, & H. ALEX and DANNIE ALVAREZ, et al.,<br><br>Plaintiffs and Petitioners,<br><br>v.<br><br>COUNTY OF ALAMEDA, BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA, and DOES 10–25,<br><br>Defendants and Respondents. | Case No. 3:22-cv-02705-LB<br><br>**ORDER ON MOTION TO DISMISS**<br><br>Re: ECF No. 81 |

# INTRODUCTION AND STATEMENT

The plaintiffs in these related cases — property owners and organizations representing property owners in Alameda County and the City of Oakland — contend that the County and City violated their rights under the U.S. and California Constitutions by prohibiting the eviction of non-paying tenants during the COVID-19 pandemic. In *Williams v. Alameda Cnty.*, No. 22-cv-01274-LB, the plaintiffs claim that ordinances enacted by the County and City are takings under the Fifth Amendment to the U.S. Constitution, inverse condemnations under the California Constitution, and violations of their due-process and equal-protection rights under the Fourteenth Amendment to the U.S. Constitution.[1] In *Cal. Apartment Ass'n v. Alameda Cnty.*, No. 22-cv-02705-LB, the plaintiffs challenge the County ordinance through similar taking and due-process claims under the U.S. Constitution and a similar inverse-condemnation claim under the California Constitution. They also claim a substantial impairment of their lease agreements, in violation of the Contracts Clause of Article I of the U.S. Constitution, and preemption of the ordinance under Article XI, § 7 of the California Constitution to the extent that the ordinance prohibits Ellis Act evictions under Cal. Gov't Code § 7600 (which allows landlords to withdraw rentals from the market under certain circumstances).[2]

The court previously agreed to address the plaintiffs' facial claims before the as-applied claims, set an expedited summary-judgment schedule on the facial claims, and denied summary judgment.[3] The moratoria have since expired. Following the *Williams* plaintiffs' filing an amended complaint (FAC), there are now five motions. In *Williams*, the plaintiffs moved to dismiss the defendant intervenor Alliance of Californians for Community Empowerment Action, and the City, County, and intervenor moved to dismiss the FAC (or certain claims) for lack of subject-matter

---

[1] First Am. Compl. (FAC) – ECF No. 143 at 24–30 (¶¶ 97–122). Citations refer to material in the Electronic Case File (ECF) in the lower-numbered action unless the citation references the higher-numbered action; pinpoint citations are to the ECF-generated page numbers at the top of documents. Orders entered in the lower-numbered action were also entered in the higher-numbered action, unless otherwise indicated.

[2] Compl. – ECF No. 1 (No. 22-cv-02705-LB) at 16–24 (¶¶ 52–80).

[3] Orders – ECF Nos. 47 (staging the claims), 96 (denying summary judgment).

ORDER – Nos. 22-cv-01274-LB and 22-cv-02705-LB   2

jurisdiction and failure to state a claim.[4] In *Cal. Apartment Ass'n*, the County moved for judgment on the pleadings.[5] The court grants the City and County's motions with prejudice as to all claims except the regulatory-takings claims, which are dismissed without prejudice. The court also dismisses plaintiffs Housing Providers for America and California Apartment Association for lack of associational standing. Finally, the court denies the motion to dismiss the intervenor.

## STANDARDS OF REVIEW

### 1. Judgment on the Pleadings — Rule 12(c)

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [the plaintiff]'s allegations in its pleadings as true, [the defendant] is entitled to judgment as a matter of law." *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010) (Smith, J., dissenting) (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993)).

### 2. Failure to State a Claim — Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds

---

[4] Mots. – ECF No. 147, 149, 151, 152.

[5] Mot. – ECF No. 81 (No. 22-cv-02705-LB).

upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to

amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

### 3. Facial and As-Applied Challenges

To prevail on their facial challenges, the plaintiffs must show that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "[A] challenger must therefore show that a 'law is unconstitutional in all of its applications[.]'" *Morrison v. Peterson*, 809 F.3d 1059, 1064 (9th Cir. 2015) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). "[W]hen assessing whether a statute meets this standard, courts consider only applications of the statute in which it actually authorizes or prohibits conduct." *Id.* (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015)).

The plaintiff's as-applied challenges test the ordinance's "constitutionality in one particular fact situation," that is, as applied to them. *Hoye v. City of Oakland*, 653 F.3d 835, 854 (9th Cir. 2011).

## ANALYSIS

### 1. Motions to Dismiss

The City and County moved to dismiss all claims in both cases.[6]

In both cases, the plaintiffs' requests for declaratory relief are moot because the moratoria have expired. *Jevons v. Inslee*, No. 22-35050, 2023 WL 5031498, at *1 (9th Cir. Aug. 8, 2023) ("[A] declaratory judgment merely adjudicating past violations of federal law — as opposed to continuing or future violations of federal law — is not an appropriate exercise of federal jurisdiction.") (addressing Washington State's eviction moratorium) (quoting *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 868 (9th Cir. 2017)), *cert. denied*, 144 S. Ct. 500 (2023).

Likewise, the plaintiffs' requests for writs of mandate enjoining the moratoria are moot. *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed.").

---

[6] Mots. – ECF Nos. 149, 151; Mot. – ECF No. 81 (No. 22-cv-02705-LB).

As for the plaintiffs' physical-takings claims, the court already rejected their facial argument and the court adopts that analysis (applied now to the pleadings) by this reference.[7] The court rejects an as-applied claim too. "The substantive legal tests used in facial and as-applied challenges are 'invariant.'" *Isaacson v. Horne*, 716 F.3d 1213, 1230 (9th Cir. 2013). The plaintiffs have not shown that their specific factual situation warrants a different result than that dictated by the court's earlier analysis. *El Papel, LLC v. City of Seattle*, No. 22-35656, 2023 WL 7040314, at *2 (9th Cir. Oct. 26, 2023) (applying *Yee v. City of Escondido* to a physical-takings claim in an equivalent context).

Perhaps the closest issue is the plaintiffs' regulatory-takings claims.

The Takings Clause "provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (quoting U.S. Const. amend. V). It applies to the states through the Fourteenth Amendment. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). Takings come in two varieties: physical or per se takings and regulatory takings. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (there are "at least two discrete categories of regulatory action [that are] compensable without case-specific inquiry into the public interest advanced in support of the restraint," including physical invasions of property and the denial of "all economically beneficial or productive use" of property).

The regulatory takings framework applies to zoning ordinances (*Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387–388 (1926)), rent-control regulations (*Yee v. City of Escondido*, 503 U.S. 519, 527 (1992)), and temporary-eviction prohibitions (*Block v. Hirsh*, 256 U.S. 135, 156 (1921)). *See Cedar Point Nursery*, 141 S. Ct. at 2072 (identifying situations where the regulatory takings framework applies); *Tahoe-Sierra Pres. Council*, 535 U.S. at 323 (same).

A regulatory taking occurs when a government regulation "goes too far." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). "In

---

[7] Summ. J. Order – ECF No. 96 at 13–21.

contrast to a physical taking, a regulatory taking occurs where government regulation of private property is so onerous that its effect is tantamount to a direct appropriation or ouster." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1088–89 (9th Cir. 2015) (cleaned up). "To determine whether a use restriction effects a taking, [the Supreme] Court has generally applied the flexible test developed in *Penn Central*, balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery*, 141 S. Ct. at 2072 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). The first and second *Penn Central* factors are the primary factors. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–39 (2005); *see MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1128 (9th Cir. 2013) (the Ninth Circuit has held that the main factor is the extent to which the regulation has interfered with investment-backed expectations).

In examining whether a regulatory taking has occurred, courts must consider the property as a whole. *Penn Central*, 438 U.S. at 130–31; *see also Tahoe–Sierra*, 535 U.S. at 331. Additionally, an allegation that a regulation has diminished the property's value or destroyed the potential for its highest and best use does not, without more, constitute a taking. *See Euclid*, 272 U.S. at 397 (regulations valid despite a seventy-five percent diminution in property value); *Hadacheck v. Los Angeles*, 239 U.S. 394, 414 (1915) (ordinance prohibiting highest and best use of land as a brickworks was valid, although it reduced the property value from $800,000 to $60,000); *William C. Haas v. City & Cnty. of San Francisco*, 605 F.2d 1117, 1121 (9th Cir. 1979) (land-use regulations were not a taking although they reduced the property value from $2,000,000 to $100,000). "[W]here the government merely regulates the use of property, compensation is required only if the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee*, 503 U.S. at 522–23.

Here, the plaintiffs' allegations are insufficient. Importantly, "economic impact is determined by comparing the total value of the affected property before and after the government action." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). The Ninth Circuit

has approvingly cited a Federal Circuit case that noted that there has been "no case in which a court has found a taking where diminution in value was less than [fifty] percent." *Id.* The plaintiffs have not alleged any before-and-after values and instead have generally alleged that they have collectively suffered losses "in excess of tens of millions of dollars." In light of *Colony Cove*, the court dismisses the regulatory-takings claim without prejudice. The plaintiffs must be more specific as to before-and-after values.

The plaintiffs contend that they need not be more specific at the pleading stage. They point out that the *Penn Central* test is inherently ad hoc and factual and that "[m]otions for judgment on the pleadings [and] motions to dismiss for failure to state a claim[] must be viewed with particular skepticism in cases involving claims of inverse condemnation." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1478 (9th Cir. 1989). They further contend that before-and-after value are appropriately left to expert opinion. The problem is that despite the ad hoc nature of the analysis, *Colony Cove* establishes a floor that logically affects the plausibility of the claim at the pleading stage. *GHP Mgmt. Corp. v. City of Los Angeles*, No. CV 21-06311 DDP (JEMX), 2022 WL 17069822, at *4 (C.D. Cal. Nov. 17, 2022), *aff'd*, No. 23-55013, 2024 WL 2795190 (9th Cir. May 31, 2024). And even though some plaintiffs alleged specific amounts of lost income, "income streams can contribute to a method for determining the post-deprivation value of property, but the severity of the loss can be determined only by comparing the post-deprivation value to pre-deprivation value." *Colony Cove*, 888 F.3d at 451.

The plaintiffs also cite *Hodel v. Irving*, 481 U.S. 704, 717–18 (1987), and *Babbitt v. Youpee*, 519 U.S. 234 (1997), two cases involving congressional abrogation of Native Americans' rights to devise property, to support their contention that a plaintiff can prevail on a *Penn Central* claim when only the character factor weighs in their favor. But in those cases, the Court carved out a narrow additional category of per se taking for regulations involving "complete abolition of the right to pass on a particular type of property." *Irving*, 481 U.S. at 717. By contrast, the eviction moratoria here did not permanently deny landowners a fundamental property right.

Next are the plaintiffs' substantive-due-process and equal-protection claims under the Fourteenth Amendment.

The Fourteenth Amendment provides in relevant part, "nor shall any State deprive person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Due Process Clause protects procedural and substantive rights. The right alleged here is substantive due process, which protects against arbitrary and capricious government action. *Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1995). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The rational-basis test applies here because the plaintiffs do not assert a fundamental right and are not members of a suspect class. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (equal protection); *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997) (substantive due process). Functionally, the rational-basis test is the same for due-process and equal-protection claims. *See Munoz v. Sullivan*, 930 F.2d 1400, 1404-05 & n.10 (9th Cir. 1991). It is "highly deferential." *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279 (9th Cir. 2004) (cleaned up).

In a rational-basis review of equal-protection claims, the classification is upheld "'if there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Id.* (quoting *Heller*, 509 U.S. at 319-20). "[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *Heller*, 509 U.S. at 320 (cleaned up), and thus classifications may be set aside "only if they are based on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them," *Clements v. Fashing*, 457 U.S. 957, 963 (1982). The government "has no obligation to produce evidence to sustain the rationality of a statutory classification'; rather, '[t]he burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it." *Kahawaiolaa*, 386 F.3d at 1280 (cleaned up). The "'Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, and the

relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11-12 (1992)).

In a rational-basis review of substantive due-process claims, "[i]f a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process." *Kim*, 121 F.3d at 1273 (cleaned up). Courts "do not require that the [governmental body's] legislative acts actually advance its stated purposes, but instead look to whether the governmental body *could* have had no legitimate reason for its decision." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (cleaned up). A legislative act "does not violate substantive due process as long as it advances any legitimate public purpose, and if it is at least fairly debatable that the decision to adopt [it] . . . was rationally related to legitimate government interests, the [government's] . . . actions must be upheld." *Id.* (cleaned up).

Here, the plaintiffs do not state claims under the Fourteenth Amendment because the moratoria were rationally related to legitimate government interests, for example those of promoting housing stability during a pandemic and preventing spread of the virus. Also, the moratoria's treatment of landlords compared to other property owners or area residents is rationally related to these interests. The court previously held in favor of the defendants on a similar test (under the Contracts Clause) that is more favorable to the plaintiffs: "whether the law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose."[8] The plaintiffs' new pleading does not carry their heavy burden of showing (even as a matter of plausibility) otherwise. The court thus dismisses these Fourteenth Amendment claims.

The plaintiffs, in arguing for a different result, focus on the length of the moratoria and the notion that it is irrational for landlords (as opposed to another group or the public at large) to bear the burden of nonpaying renters. But these arguments do not overcome rational-basis review in light of the rationality of keeping residential tenants in place during a pandemic. The court also is not in a position to second guess the City and County's judgment as to when the emergency ended.

---

[8] Summ. J. Order – ECF No. 96 at 21–28.

The plaintiffs also assert a procedural-due-process claim under the Fourteenth Amendment. The court already rejected their facial claim in this regard, and the court adopts that analysis by this reference.[9] The legal tests for facial and as-applied constitutional challenges are, again, "invariant." *Isaacson*, 716 F.3d at 1230. The court dismisses this claim for the same reasons as before.

Next, the defendants contend that plaintiffs Housing Providers of America and California Apartment Association now lack associational standing. One of the requirements of associational standing is that "neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members" of the organization. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 333 (1977). The defendants point out that the only relief still available is damages, and that such relief "necessarily involve[s] individualized proof and thus the individual participation of association members, thereby running afoul of the third prong of the *Hunt* test." *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990). The court dismisses Housing Providers of America on this ground.

Finally, in *Cal. Apartment Ass'n*, the County contends that the plaintiffs' Contracts Clause claim should be dismissed. This is another claim that the court previously addressed in the context of a facial challenge.[10] To the extent the complaint asserts an as-applied claim as well, the analysis is the same and the court incorporates it by this reference.

## 2. Motion to Dismiss the Intervenor

The *Williams* plaintiffs move to dismiss the defendant intervenor Alliance of Californians for Community Empowerment Action.[11] The parties previously stipulated to the Alliance's intervening.[12] The Alliance "is a 501(c)(4) statewide membership organization representing and advocating for tenants, including tenants in the City of Oakland and Alameda County."[13]

---

[9] *Id.* at 28–30.

[10] *Id.* at 21–28.

[11] Mot. – ECF No. 147.

[12] Order – ECF No. 29.

[13] *Id.* at 2.

ORDER – Nos. 22-cv-01274-LB and 22-cv-02705-LB    11

Intervention is governed by Federal Rule of Civil Procedure 24. There are two types: intervention as of right and permissive intervention.

Regarding intervention as of right, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

Regarding permissive intervention, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). An applicant requesting permissive intervention "must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citing *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.*

The *Williams* plaintiffs contend that the Alliance "no longer has Article III standing or prudential standing [and] longer meets the standard for intervention, either permissively or by right under Federal Rule of Civil Procedure Rule 24."[14] Importantly, Article III standing does not apply to permissive intervention (as the parties do not dispute) and the prior stipulation is not limited to intervention as of right. The court thus thinks the stipulation is binding. Moreover, circumstances have not materially changed since then; the plaintiffs still assert the same types of claims, including as-applied ones. The court thus denies the motion to dismiss the intervenor.

## CONCLUSION

The court grants the motions to dismiss all claims with prejudice except for the regulatory-takings claims, which are dismissed without prejudice. The court also dismisses plaintiffs Housing

---

[14] Mot. – ECF No. 147 at 6.

Providers for America and California Apartment Association and denies the motion to dismiss the intervenor Alliance of Californians. Any amended complaint must be filed within twenty-eight days and must attach as an exhibit a blackline of the amended complaint against the current complaint. This disposes of ECF Nos. 147, 149, 151, and 152 in No. 22-cv-01274-LB and ECF No. 81 in No. 22-cv-02705-LB.

**IT IS SO ORDERED.**

Dated: September 3, 2024

_____
LAUREL BEELER
United States Magistrate Judge