MATTHEW D. ZINN (State Bar No. 214587)
EDWARD T. SCHEXNAYDER (State Bar No. 284494)
MINDY K. JIAN (State Bar No. 336139)
SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
San Francisco, California 94102
Telephone:   (415) 552-7272
Facsimile:    (415) 552-5816
Zinn@smwlaw.com
Schexnayder@smwlaw.com
Mjian@smwlaw.com

Attorneys for Defendants and Respondents
Alameda County and Alameda County Board of
Supervisors

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN WILLIAMS, ROBERT VOGEL, SHEANNA ROGERS, MICHAEL LOEB, JAQUELINE WATSON-BAKER, and HOUSING PROVIDERS OF AMERICA,<br><br>            Plaintiffs and Petitioners,<br><br>    v.<br><br>ALAMEDA COUNTY, ALAMEDA COUNTY BOARD OF SUPERVISORS, CITY OF OAKLAND, OAKLAND CITY COUNCIL, and DOES 1-10,<br><br>            Defendants and Respondents,<br><br>    v.<br><br>ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT ACTION,<br><br>            Defendant-Intervenor. | Case No. 3:22-cv-01274-LB<br>Case No. 3:22-cv-02705-LB (related)<br><br>**COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    August 14, 2025<br>Time:    9:30 a.m.<br>Courtroom: Courtroom B, 15th Floor<br><br>Hon. Laurel Beeler<br><br>Trial Date:   none set<br><br>Filed Concurrently with Request for Judicial Notice |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. 3

NOTICE OF MOTION ........................................................................................................ 6

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 7

INTRODUCTION ............................................................................................................... 7

BACKGROUND ................................................................................................................. 8

MOTION TO DISMISS STANDARD .............................................................................. 11

ARGUMENT .................................................................................................................... 11

    I.    The SAC still fails to allege that the Moratorium had a sufficiently severe economic impact on Plaintiffs' properties. ............................................ 12

        A.    Despite the Court's clear direction, Plaintiffs have not alleged pre- or post-deprivation property values for most of Plaintiffs' properties. .................................................................................................... 13

        B.    The SAC fails to sufficiently allege that the Moratorium had a severe impact on each of the remaining properties. ............................. 15

            1.    Properties with an alleged diminution in value of less than 50 percent cannot support a *Penn Central* claim .............. 16

            2.    For 29 of the properties, Plaintiffs fail to indicate how they estimated alleged diminution in value. And their estimated value for one such property is absurd. ....................... 16

            3.    Plaintiffs' reliance on a "gross rent multiplier" is unsupported and misplaced. .......................................................... 17

        C.    The Marchitelli Declaration does not save Plaintiffs' insufficient allegations. ................................................................................................ 19

    II.    The remaining *Penn Central* factors cannot save Plaintiffs' claims. .............. 20

    III.    The Court should not grant leave to amend. .................................................. 23

CONCLUSION ................................................................................................................. 24

APPENDIX ....................................................................................................................... 25

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

1

**TABLE OF AUTHORITIES**

2

3 **FEDERAL CASES**

4 *Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................. 11, 17

5

6 *Askins v. U.S. Dep't of Homeland Sec.,*
899 F.3d 1035 (9th Cir. 2018) ..................................................................................... 15

7 *Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................... 11, 17, 18

8

9 *Block v. Hirsh,*
256 U.S. 135 (1921) ................................................................................................. 21

10 *Bridge Aina Le'a, LLC v. Land Use Comm'n,*
950 F.3d 610 (9th Cir. 2020) ..................................................................................... 20

11

12 *Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................... 24

13 *CCA Assocs. v. United States,*
667 F.3d 1239 (Fed. Cir. 2011) ................................................................................. 16

14

15 *Cervantes v. Countrywide Home Loans, Inc.,*
656 F.3d 1034 (9th Cir. 2011) ................................................................................. 23

16 *Chodos v. West Publishing Co.,*
292 F.3d 992 (9th Cir. 2002) ................................................................................. 23

17

18 *Colony Cove Props., LLC v. City of Carson,*
888 F.3d 445 (9th Cir. 2018) ........................................................................... passim

19 *Elmsford Apt. Assocs., LLC v. Cuomo,*
469 F. Supp. 3d 148 (S.D.N.Y 2020) ....................................................................... 22

20

21 *Evans Creek, LLC v. City of Reno,*
No. 21-16620, 2022 WL 14955145 (9th Cir. Oct. 26, 2022) ............................... 12, 20

22 *Garmon v. County of Los Angeles,*
828 F.3d 837 (9th Cir. 2016) ................................................................................. 23

23

24 *Garneau v. City of Seattle,*
147 F.3d 802 (9th Cir. 1998) ................................................................................. 13

25 *GHP Mgmt. Corp. v. City of Los Angeles,*
No. 23-55013, 2024 WL 2795190 (9th Cir. May 31, 2024) ....................................... 14

26

27 *Home Bldg. & Loan Ass'n v. Blaisdell,*
290 U.S. 398 (1934) ................................................................................................. 21

28

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

*Johnson v. Boitano*,
No. 21-cv-01402-SVK, 2021 WL 4818943 (N.D. Cal. Oct. 15, 2021) ...........................9

*Kater v. Churchill Downs Inc.*,
886 F.3d 784 (9th Cir. 2018) ...........................................................9

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005) ..............................................................11, 22

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) ......................................................................21

*MHC Finan. Ltd. P'ship v. City of San Rafael*,
714 F.3d 1118 (9th Cir. 2013) ................................................12, 16, 23

*Pa. Coal Co. v. Mahon*,
260 U.S. 393 (1922) ......................................................................11

*Pakdel v. City & County of San Francisco*,
636 F. Supp. 3d 1065 (N.D. Cal. 2022) ............................................12

*Penn Central Transportation Co. v. City of New York*,
438 U.S. 104 (1978) ................................................................passim

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ...........................................................11

*Rancho de Calistoga v. City of Calistoga*,
800 F.3d 1083 (9th Cir. 2015) ....................................................11, 23

*S. Cal. Rental Hous. Ass'n v. County of San Diego*,
550 F. Supp. 3d 853 (S.D. Cal. 2021) ..........................................21, 22

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ....................................................23, 24

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ......................................................11, 17

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ...........................................................11

**CALIFORNIA CASES**

*San Remo Hotel L.P. v. City & County of San Francisco*,
27 Cal. 4th 643 (2002) ...................................................................12

**CALIFORNIA STATUTES**

Cal. Civ. Code §§ 1941 et seq. .........................................................21

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

Cal. Civ. Code § 1946.2 ................................................................................................... 21

Cal. Civ. Proc. Code §§ 1159-1179a .............................................................................. 21

Cal. Civ. Proc. Code § 1179.15 ......................................................................................... 9

Cal. Gov't Code §§ 12900 et seq. ................................................................................... 21

Cal. Gov't Code § 8630 .................................................................................................. 21

Cal. Health & Saf. Code §§ 17910 et seq. ..................................................................... 21

Cal. Health & Saf. Code §§ 26147-48 ........................................................................... 21


**RULES**

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................... 6, 11

Fed. R. Evid. 201 ............................................................................................................... 9


**TREATISES**

The Appraisal Institute, *The Appraisal of Real Estate* 473-74 (15th ed. 2020) ................... 18


**ALAMEDA COUNTY CODE**

§ 6.120.030 ......................................................................................................... 8, 9, 22, 23

§ 6.120.040 ...................................................................................................................... 22

§ 6.120.090 ...................................................................................................................... 23

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 14, 2025, at 9:30 a.m., or as soon thereafter as counsel may be heard by the Court, located at 450 Golden Gate Avenue, San Francisco, California, in the courtroom of the Honorable Laurel Beeler, Defendants Alameda County and Alameda County Board of Supervisors will and hereby do move the Court to dismiss, without leave to amend, Plaintiffs' Second Amended and Supplemental Complaint for Damages and Petition for Writ and Request for Immediate Stay. This motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs' complaint fails to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities, Request for Judicial Notice, pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

As stipulated by the parties and ordered by the Court, this motion has been filed on or before June 2, 2025. Any opposition must be filed on or before July 14, 2025, and any reply must be filed on or before August 4, 2025.

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Despite three attempts and explicit guidance from this Court, Plaintiffs have failed to allege facts showing a plausible regulatory takings claim under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) ("*Penn Central*"). If the facts supported their claims, Plaintiffs had ample opportunity to allege them.

This Court is familiar with the background. During the COVID-19 pandemic, the County enacted a temporary eviction moratorium ("Moratorium") that expired in April 2023. Plaintiffs—a collection of 58 landlords and property management companies—claim this three-year moratorium caused a regulatory taking of their properties. But after multiple rounds of pleading, they have failed to demonstrate the severe impact on the value of their properties that *Penn Central* demands.

Because of the central importance of economic impact to a *Penn Central* claim, this Court's order granting the County's last motion to dismiss clearly directed that Plaintiffs "must be more specific as to before-and-after values" of their properties to survive a motion to dismiss. Plaintiffs' Second Amended Complaint ("SAC") does not comply with this directive.

For most of their properties (48 of 87), Plaintiffs allege no property values at all. For 25 of those, they allege no *facts* at all, and for the remaining 23 they assert only the kind of vague complaints about lost rent and operating expenses that this Court has already expressly rejected.

Regarding the remaining 39 properties for which Plaintiffs do allege some change in property value, Plaintiffs have not shown the Moratorium caused the drastic impairment of property value essential to trigger *Penn Central*. Of those 39 properties, 30 show diminutions of less than 50 percent, which this Court has recognized to be categorically insufficient under Ninth Circuit precedent. For 29 properties, the SAC fails to satisfy the pleading standard by omitting any factual basis for its conclusory allegations about property value. For the remaining 10 properties, Plaintiffs refer to a "gross rent multiplier" ("GRM") which

7

they completely fail to explain or support. And, in fact, that methodology is uniquely un-suited to valuing properties subject to *temporary* restrictions because the GRM approach assumes the property generates an unchanging level of income for many years. Plaintiffs also, confusingly, attach an expert declaration to the SAC that espouses a different valua-tion methodology, but it does nothing to overcome any of these deficiencies. At *most*, it could support a 31.6 percent diminution in value, which, again, is categorically insufficient to state a *Penn Central* claim.

Plaintiffs have now had half a year since this Court's dismissal order and over three years since filing suit to develop a coherent theory of economic impact. Their repeated fail-ures, despite explicit judicial guidance, demonstrate that further amendment would be futile. The fundamental problem is not deficient pleading but deficient claims. No amount of additional time will transform this temporary, targeted public health measure into a com-pensable taking.

The Court should dismiss the SAC without leave to amend and finally end this pro-tracted litigation.

## BACKGROUND

Over five years ago, on March 10, 2020, the County declared a local state of emer-gency in response to the ongoing novel coronavirus ("COVID-19") pandemic and following the Governor's statewide emergency declaration. Dkt. 96 (Order Denying Summary Judg-ment, or "MSJ Order") at 3-4, 7. Soon after, on April 21, 2020, the County enacted the Moratorium, which the County subsequently extended until 60 days after expiration of the local public health emergency. *Id.* at 7; Alameda County Code of Ordinances ("County Code") § 6.120.030(A).[1] Similarly, the Legislature enacted a series of eviction protections, including the COVID-19 Tenant Relief Act and the COVID-19 Rental Housing Recovery Act, the latter

---

[1] The full County Code is available online at https://library.municode.com/ca/alameda_county/codes/code_of_ordinances.

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

of which remained in effect until September 30, 2024. MSJ Order at 4-5; Cal. Civ. Proc. Code § 1179.15.

On March 1, 2022, Plaintiffs filed suit challenging the Moratorium. Plaintiffs' original complaint named six plaintiffs and raised facial and as-applied constitutional claims, including physical and regulatory takings claims, procedural and substantive due process claims, and an equal protection claim, as well as a state inverse condemnation claim and a request for writ of mandate. *See* Dkt. 1 (Complaint for Damages; Petition for Writ and Request for Immediate Stay). Plaintiffs subsequently filed a motion for partial summary judgment on their facial physical takings claim, facial procedural due process claim, and facial challenges under state law. Dkt. 61 (Rule 56 Motion). The Court denied Plaintiffs' motion in its entirety. MSJ Order.

On February 28, 2023, the day that the California State of Emergency ended, the County Health Officer confirmed that the local public health emergency terminated as well. Dkt. 116, Ex. A (Health Officer Order No. 23-01).[2] By its terms, the Moratorium expired 60 days later, on April 29, 2023. County Code § 6.120.030(A).

Several months later, on September 20, 2023, Plaintiffs filed a First Amended and Supplemental Complaint ("FAC"). Dkt. 143. The FAC raised all of the same claims as Plaintiffs' original complaint, but added 52 new plaintiffs, the vast majority of which were corporate entities. *Id.*, Ex. A, ¶¶ 9-66. The FAC included specific factual allegations for only eight of the 58 named Plaintiffs. *Id.* ¶¶ 85-91.

On November 10, 2023, the County, Defendant City of Oakland, and Defendant-Intervenor Alliance of Californians for Community Empowerment filed motions to dismiss the

---

[2] The County sought judicial notice of this Health Officer Order when filing its Motion for Stay. *See* Dkt. 116 (County Defendants' Request for Judicial Notice in Support of Motion for Stay). This Health Officer Order is an official act and public record of a government agency that is not reasonably subject to dispute. Accordingly, it is properly subject to judicial notice. *See id.*; Fed. R. Evid. 201; *Johnson v. Boitano*, No. 21-cv-01402-SVK, 2021 WL 4818943, at *3 n.1 (N.D. Cal. Oct. 15, 2021); *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018).

9

1  FAC. Dkt. 149 (City's Notice of Motion and Motion to Dismiss FAC), 151 (County Defend-

2  ants' Motion to Dismiss FAC), 152 (Defendant-Intervenor's Motion to Dismiss FAC). The

3  motions sought (1) dismissal of the physical takings, due process, equal protection, and state

4  law claims without leave to amend, (2) dismissal of the *Penn Central* claim with leave to

5  amend, and (3) dismissal of Plaintiff Housing Providers of America ("HPOA"). *See generally*

6  Dkt. 149, 151, 152.

7      On September 3, 2024, the Court granted Defendants' motions to dismiss in their

8  entirety. Dkt. 182 (Order Granting Motion to Dismiss, or "MTD Order") at 3. The Court held

9  that the FAC failed to state a takings, due process, equal protection, or state law claim. For

10  the *Penn Central* claim, the Court found the FAC's factual allegations insufficient because

11  they failed to allege a severe economic impact. *Id.* at 7-8. The Court ruled that Plaintiffs

12  could not rely on general allegations of "collectively suffered losses" and that they "must be

13  more specific as to before-and-after values" allegedly impaired. *Id.* at 8. The Court granted

14  leave to amend only as to the regulatory takings claim. *Id.* at 12-13.

15      Half a year later, Plaintiffs filed the SAC. Dkt. 189. The SAC provides some addi-

16  tional factual information about specific properties. For example, it alleges estimated totals

17  for lost rent and property damage attributed to some of the listed properties (*id.* ¶¶ 85-155).

18  But, for many properties, it does not allege a diminution in property value (*id.* ¶¶ 85-87, 89-

19  91, 120, 122, 133-39, 140-46). For some properties, the SAC relies on a "gross rent multi-

20  plier" methodology (*id.* ¶¶ 123-24, 127-32), while elsewhere it alleges changes in value

21  without explanation (*id.* ¶¶ 92-101, 102-09, 110-19, 121). Some allegations also reference an

22  attached declaration ("Marchitelli Declaration") that attempts to generally tie property

23  value to a property's capitalization rate or "risk profile." *Id.* ¶¶ 152-56, Ex. A. The Mar-

24  chitelli Declaration asserts that the Moratorium increased the "risk profile" of rental

25  properties in the County as perceived by residential property investors, thereby decreasing

26  property value. *Id.*, Ex. A, ¶ 18.

27      Although the SAC reasserts all previously pleaded claims and continues to list HPOA

28  as a plaintiff, the only surviving claim is Plaintiffs' regulatory takings claim under *Penn*

1   *Central* and HPOA has been dismissed from this action. *See id.* ¶¶ 21, 172-87; MTD Order

2   at 12-13. The SAC includes these claims and HPOA only to preserve Plaintiffs' right to ap-

3   peal the Court's granting Defendants' prior motions to dismiss. SAC at 55, n.3.

### MOTION TO DISMISS STANDARD

5       Rule 12(b)(6) requires a court to examine whether the plaintiff has alleged sufficient

6   facts to state a plausible claim on which relief can be granted. *Bell Atl. Corp. v. Twombly*,

7   550 U.S. 544, 569-70 (2007). A "plaintiff's obligation to provide the grounds of his entitle-

8   ment to relief requires more than labels and conclusions . . . Factual allegations must be

9   enough to raise a right to relief above the speculative level." MTD Order at 4 (citing

10  *Twombly*, 550 U.S. at 555). In other words, a plaintiff must show that there is "more than a

11  sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Ashcroft v. Iqbal*, 556

12  U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a

13  defendant's liability it stops short of the line between possibility and plausibility of 'entitle-

14  ment to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 678).

15      In evaluating a motion to dismiss, a court assumes all material allegations in the

16  complaint are true, but "need not accept conclusory allegations of law or unwarranted in-

17  ferences." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *Warren*

18  *v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A court need not accept

19  as true allegations contradicted by facts subject to judicial notice. *Sprewell v. Golden State*

20  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### ARGUMENT

22      Regulatory takings occur where a regulation "goes too far" and is "so onerous that its

23  effect is tantamount to a direct appropriation or ouster." MTD Order at 6-7 (citing *Pa. Coal*

24  *Co. v. Mahon*, 260 U.S. 393, 415 (1922) and *Rancho de Calistoga v. City of Calistoga*, 800

25  F.3d 1083, 1088-89 (9th Cir. 2015); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539

26  (2005) ("regulatory actions that are functionally equivalent to the classic taking" are those

27  "in which government directly appropriates private property or ousts the owner from his

28  domain"). In evaluating such a claim, courts consider the three *Penn Central* factors: (1)

"[t]he economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action." *Penn Central*, 438 U.S. at 124; MTD Order at 7. Although the *Penn Central* analysis is case-specific, "courts often examine these factors at the motion to dismiss stage to [en]sure plaintiffs have satisfied their burden to establish the plausibility of their claims." *Pakdel v. City & County of San Francisco*, 636 F. Supp. 3d 1065, 1074-75 (N.D. Cal. 2022).[3]

Plaintiffs have again failed to state a *Penn Central* claim. The SAC fails to show that any of the *Penn Central* factors support Plaintiffs' claims. But most importantly, it does not solve the fatal problem identified in this Court's MTD Order: the SAC still fails to plausibly allege that the Moratorium resulted in a severe loss of property value for each property.

A table summarizing the SAC's allegations by property ("Table") is provided in the [appendix to this brief](#).

## I.    The SAC still fails to allege that the Moratorium had a sufficiently severe economic impact on Plaintiffs' properties.

Under the first *Penn Central* factor, a plaintiff must allege facts showing that the regulation has had a *severe* economic impact on the value of her property. *Penn Central*, 438 U.S. at 124, 136; *MHC Finan. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013). As this Court has held, "the severity of the loss can be determined only by comparing the post-deprivation value to pre-deprivation value." MTD Order at 8 (citing *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018) ("*Colony Cove*")). Failure to allege such an impact is fatal. *See Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022) (affirming dismissal of *Penn Central* claim that failed to allege "any information about the value of the property [before the challenged action] or its value after the [action]"); *see also Colony Cove*, 888 F.3d at 451 (reversing jury

---

[3] Although Plaintiffs assert claims under the takings clauses of both the federal and California constitutions, California courts apply federal takings law to state takings claims. *San Remo Hotel L.P. v. City & County of San Francisco*, 27 Cal. 4th 643, 664 (2002).

verdict for lack of evidence of impact to property value); *Garneau v. City of Seattle*, 147 F.3d 802, 808 (9th Cir. 1998) (affirming summary judgment for defendants where plaintiffs did not point to evidence of economic impact).

The SAC does not plead facts to establish that any plaintiff suffered a severe impact to its property value. First, for over half (48) of the properties, the SAC fails to allege any change in property value caused by the Moratorium, contrary to this Court's clear direction in the MTD Order. In fact, for 25 of these properties, the SAC has not asserted *any* corresponding factual allegations.

Second, where the SAC does allege a diminution in value, the alleged diminution is insufficiently severe or unsupported or both. Of the 39 properties for which the SAC does allege a diminution in value that it attributes to the Moratorium, 30 show diminutions of less than 50 percent. As this Court has already held, this does not state a *Penn Central* claim as a matter of law. The alleged diminutions in value for 29 of the properties are unsupported and, for at least one of the properties, appear implausible. The valuation estimates for the remaining 10 properties similarly rely on an unexplained and flawed gross rent multiplier methodology.

Finally, Plaintiffs cannot rectify their failure to allege sufficiently severe diminutions in property value with reference to a declaration that attempts to tie property values to lost income and revenue. Applying the declaration's methodology does not yield a diminution greater than 50 percent. And the SAC fails to allege sufficient facts to reliably apply the methodology to all properties. Plaintiffs thus have again failed to allege a plausible regulatory takings claim.

### A. Despite the Court's clear direction, Plaintiffs have not alleged pre- or post-deprivation property values for most of Plaintiffs' properties.

Relying on well-established law, the Court held that Plaintiffs' prior allegations about lost rent and property damage were insufficient because "economic impact is determined by comparing the total value of the affected property before and after the government action." MTD Order at 7 (citing *Colony Cove*, 888 F.3d at 451). Plaintiffs must show how any changes

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

in revenue affected the value of each property. *See also GHP Mgmt. Corp. v. City of Los Angeles*, No. 23-55013, 2024 WL 2795190, at *2 (9th Cir. May 31, 2024), *petition for cert. filed*, No. 24-435 (Oct. 17, 2024) (landlords failed to state a *Penn Central* claim because they failed to "allege the diminution in property values they suffered as a result of the eviction moratorium, and alleged only the amount of rent lost"). Thus, the Court ordered that "plaintiffs must be more specific as to before-and-after values." MTD Order at 8. But even after an opportunity to amend, Plaintiffs have failed to provide pre- and post-Moratorium values for all properties discussed in the SAC.

For 23 properties, the SAC alleges that the County must compensate Plaintiffs for delinquent rent, operating losses and legal fees, emotional distress, decreases in revenue and cash flow, landscaping costs, and cleaning costs. Table, lines 6, 10-11, 13-14, 18-19, 21-27, 38-39, 42-48; SAC ¶¶ 13; 14-20, 36-41, 57, 61, 85-91, 120, 122, 133-39, 140-46.[4] However, the SAC fails to allege pre- or post-regulation property values for any of these properties. *See* SAC ¶¶ 85-91, 120, 122, 133-39, 140-46. The Court already dismissed Plaintiffs' regulatory takings claims based on indistinguishable allegations precisely because they similarly failed to allege any impacts to *property value*. MTD Order at 6-8. In fact, for one of these properties, Plaintiffs do not raise any new allegations, relying, therefore, only on factual allegations which the Court has already found insufficient. *See* Table, line 24; SAC, Attachment ¶ 88 (redlined SAC showing no new allegations for Jaqueline Watson-Baker).

---

[4] To succeed on their *Penn Central* claim, Plaintiffs must also establish that the Moratorium, and not any other intervening factor, caused these alleged damages. *Penn Central*, 438 U.S. at 123 (Takings Clause compensates for "losses proximately caused" by government action). But many of the damages alleged by the SAC do not appear to be directly attributable to the Moratorium. For example, the SAC seeks compensation for alleged property damage caused by tenants and non-residents. *See*, *e.g.*, SAC ¶¶ 88 (describing property damage caused by tenant), 91 (alleging damages resulting in part from "unwelcome squatters"). However, the Moratorium did not prevent landlords from suing tenants for breaches of contract (MSJ Order at 17) or apply to "squatters" (*id.* at 18). Similarly, the SAC complains that one owner "was unable to commence an owner-move in eviction due to the Moratoriums" (SAC ¶ 85), but the Moratorium has an exception for such Ellis Act evictions. *See* MSJ Order at 17-18.

Second, for 25 properties, the SAC does not include *any* specific factual allegations at all. Table, lines 1-5, 7-9, 12, 15-17, 20, 28-37, 40-41; SAC ¶¶ 35, 43-49, 56, 62-63, 65-66.  At most, the SAC includes non-specific allegations about damages that pertain to multiple plaintiffs which may apply to these properties. *See* SAC ¶¶ 147-150. However, the Court already rejected the FAC's attempts to generally or cumulatively plead compensable damages, finding that they were insufficient to state a *Penn Central* claim. MTD Order at 7-8. The SAC cannot rely on the same kinds of allegations again and hope to reach a different outcome. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) ("If the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies."). The SAC's collective allegations still do not demonstrate any particular impact on each property. *See* SAC ¶¶ 147-150. Accordingly, the SAC fails to state a claim under *Penn Central* for all 48 of these properties.

## B.   The SAC fails to sufficiently allege that the Moratorium had a severe impact on each of the remaining properties.

The SAC alleges that each of the remaining 39 properties suffered a decrease in property value as a result of the Moratorium. *See* Table, lines 49-87; SAC ¶¶ 92-99, 100-10, 111-19, 121, 123-32. Despite asserting some change in property value, these allegations fail to state a *Penn Central* claim.

For 30 of these 39 properties (Table, lines 49-78), the SAC alleges a diminution in value of less than 50 percent, which this Court and the Ninth Circuit have found to be categorically insufficient to show a taking. Of the remaining nine properties, the SAC fails to provide any factual support or explanation of the diminution in value it alleges for four of them (Table, lines 80-82, 87), and judicially noticeable facts show that Plaintiffs' estimate for one of those properties is plainly erroneous. Finally, for the remaining five properties (Table, lines 79, 83-86), the "gross rent multiplier" theory on which the SAC relies to estimate a change in value is both unsupported and plainly inapplicable to a temporary

Moratorium. Accordingly, the SAC does not state a cognizable takings claim as to these 39 properties.

### 1. Properties with an alleged diminution in value of less than 50 percent cannot support a *Penn Central* claim.

For the vast majority of properties (30 of 39) where the SAC does allege a change in property value, it alleges diminution of less than 50 percent. *See* Table, lines 49-78; SAC ¶¶ 92-99, 100-05, 107, 109, 111-18, 121, 123-24, 126, 128, 132 (alleging decreases in value between 5.01 percent to 43.3 percent). However, to state a claim under *Penn Central*, Plaintiffs must allege facts showing that the Moratorium had a *dramatic* impact on the value of their properties. *Penn Central*, 438 U.S. at 124; *Colony Cove*, 888 F.3d at 451. As this Court has already held, there has been "no case in which a court has found a taking where diminution in value was less than 50 percent." MTD Order at 7-8; *Colony Cove*, 888 F.3d at 451 (citing *CCA Assocs. v. United States*, 667 F.3d 1239, 1246 (Fed. Cir. 2011)).[5] Therefore, alleged diminutions under 50 percent cannot constitute a sufficiently severe impact on property values. The Court should dismiss the regulatory takings claims as to these 30 properties.

### 2. For 29 of the properties, Plaintiffs fail to indicate how they estimated alleged diminution in value. And their estimated value for one such property is absurd.

For 29 of the properties—including 24 of the properties with alleged diminutions of less than 50 percent—the SAC provides a conclusion about diminution in value without alleging any facts to show how Plaintiffs arrived at that conclusion. *See* Table, lines 49, 51, 53-55, 57-60, 63-78, 80-82, 87; SAC ¶¶ 92-101, 102-09, 110-19, 121. These conclusory

---

[5] Even where the SAC alleges diminutions greater than 50 percent, most of the alleged diminutions (seven of nine) still fall well below those that have been found insufficient in the case law. *See* Table, lines 79-85; SAC ¶¶ 106 (52.99 percent), 108 (55.16 percent), 110 (53.70 percent), 130 (57.98 percent), 125 (61.86 percent), 127 (67.18 percent), 131 (50.40 percent diminution). *See Colony Cove*, 888 F.3d at 451 ("we have observed that diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking" (citing *MHC Finan. Ltd. P'ship*, 714 F.3d at 1127-28)). In any event, as noted below, these estimates are fatally defective.

allegations are insufficient to state a *Penn Central* claim. *See* MTD Order at 4 (plaintiff must allege "more than labels and conclusions" (citing *Twombly*, 550 U.S. at 555)).

Furthermore, the allegations about one property with an unexplained diminution (Table, line 87) are implausible to the point of absurdity. To survive dismissal, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable" based on the court's "judicial experience and common sense." *Id.* at 678-79. But the SAC defies common sense by contending this property decreased in value by 119.70 percent. It claims that "the overall estimated property value declined from $810,380 at the onset of the COVID-19 pandemic in March 2020 to *negative* $159,723.08 in June 2023." SAC ¶ 119 (emphasis added). Plaintiffs thus claim the owner would have to *pay* a buyer over $150,000 to take the property. If that were not absurd enough on its face, official records show the same property sold for $1,217,500 in 2024, just a year later—representing an *increase* in the property's value of over 50 percent.[6] County Defendants' Request for Judicial Notice, Ex. A. The Court therefore cannot credit Plaintiffs' allegation. *Sprewell*, 266 F.3d at 988 ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice").

### 3. Plaintiffs' reliance on a "gross rent multiplier" is unsupported and misplaced.

Finally, for ten properties, Plaintiffs do identify the supposed basis for their estimated diminution in value: use of a gross rent multiplier ("GRM"). Table, lines 50, 52, 56, 61-62, 79, 83-86; SAC ¶¶ 123-32. But they provide no support or explanation for the

---

[6] The grant deed shows a total transfer tax of $19,601.75. This equals 1.61 percent of the total purchase price (the combination of a County documentary transfer tax of 0.11 percent and a City conveyance tax of 1.5 percent). *See* "Real Property Sales & Transfers: Documentary Transfer Tax," *Alameda County Auditor-Controller Clerk-Recorder*, https://auditor.alamedacountyca.gov/clerk-recorder-real-property-tax/. Accordingly, the purchase price is $19,601.75 divided by 1.61 percent, or $1,217,500.

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

application of this theory. In any event, it is plainly inapplicable to value properties subject to a merely temporary limit on eviction.

Plaintiffs never explain what a gross rent multiplier is, how they derived it, how they applied it, or why it is appropriate to show the value of the properties either with or without the Moratorium. The SAC cannot allege plausible claims of severe loss of property value based on an entirely unarticulated theory. The SAC's conclusory allegations about the GRM leave the Court to speculate whether the approach has any validity whatsoever here. Courts do not credit such conclusory allegations when evaluating the adequacy of a pleading. MTD Order at 4 (plaintiff must allege "more than labels and conclusions" (citing *Twombly*, 550 U.S. at 555)). Plaintiffs' total failure to support their GRM-based estimates is particularly glaring because the SAC also attaches a declaration from an asserted expert in property valuation. *See* SAC, Ex. A. That declaration not only fails to explain, or even mention, the GRM; it argues for a *different* (also flawed) valuation method. *See infra* Section I.C. This is sufficient reason to grant the motion for the properties for which the SAC relies on the GRM.

In any event, the GRM estimate is inapplicable here because it assumes that reduced rents would continue in perpetuity, while the Moratorium was only temporary. The formula for deriving a GRM is the property value divided by the annual gross rent generated by the property. The Appraisal Institute, *The Appraisal of Real Estate* 473-74 (15th ed. 2020); "Gross Income Multiplier: Definition, Uses, and Calculation," *Investopedia,* https://www.investopedia.com/terms/g/gross-income-multiplier.asp. Conversely, one can generate a back-of-the-napkin estimate of property value by multiplying the annual rent by the GRM. In essence, the GRM tries to approximate the number of years of rental income needed to pay for the property. "Gross Rent Multiplier (GRM): Step-by-Step Guide to Understanding Gross Rent Multiplier (GRM)," *WallStreetPrep,* https://www.wallstreetprep.com/knowledge/gross-rent-multiplier-grm/. Accordingly, Plaintiffs' (unexplained) GRM of 14 assumes that their properties have a value equal to 14 years' worth of their annual gross rents. *See* SAC ¶¶ 123-32.

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

On its face, this approach assumes that the rents remain *constant* over that 14-year period; it makes no allowance for any change in rents. *Investopedia*, *supra* (a gross income multiplier is a "crude valuation technique[ b]ecause changes in . . . revenue . . . are not explicitly considered"). This is a fatal flaw in trying to apply this simplistic approach based on reduced rents received during a *temporary* eviction Moratorium. Plaintiffs are assuming that the properties would continue to generate rental income at the alleged Moratorium-reduced rates for the next 14 years, even though the Moratorium terminated after three years. *See* MSJ Order at 7; Dkt. 116, Ex. A. By relying on a facially inapplicable methodology, the SAC fails to plausibly allege the value of the properties as subject to the Moratorium.

## C. The Marchitelli Declaration does not save Plaintiffs' insufficient allegations.

The Marchitelli Declaration attached to the SAC asserts that the Moratorium impaired property values by increasing the "risk profile," as measured by the "capitalization rate," of all rental properties in the County. SAC ¶ 155, Ex. A ¶ 18. The declaration asserts that the value of rental property may be estimated by dividing a property's net operating income by a hypothetical capitalization rate. *Id.*, Ex. A ¶ 7. It opines that the type of rental properties owned by Plaintiffs would ordinarily be ascribed a capitalization rate of 6.5 percent. *Id.*, Ex. A ¶ 22. It then alleges the Moratorium reduced rental property values by effectively increasing the capitalization rate by two to three percentage points, i.e., as high as 9.5 percent, because the Moratorium introduced unpredictability into the market. *Id.*, Ex. A ¶¶ 19-24. However, even assuming the declaration's methodology is valid, it fails to show that *any* of Plaintiffs' properties, let alone all of them, has suffered the necessary severe decline in property value.

Even when using the highest 9.5 percent capitalization rate suggested in the declaration, the resulting estimated decrease in property value is only 31.6 percent. *See, e.g.,* SAC ¶¶ 139 (estimating a value of $2,871,302.46 without Moratorium and a value of $1,964,575.37 with the Moratorium), 146 (estimating a value of $4,255,074.15 without the

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

Moratorium and a value of $2,910,734.95 with the Moratorium).[7] Thus, even if the Marchitelli Declaration's methodology accurately describes the impact of the Moratorium on property values, it would fail to show an impact sufficiently severe to meet the threshold for a *Penn Central* taking. *See supra* Section I.B.1.

Moreover, the SAC does not provide enough information to apply the Marchitelli Declaration's methodology to each of the 87 properties. Although the method relies on a property's net operating income ("NOI") to calculate value (SAC, Ex. A ¶¶ 7-10), neither the SAC nor the Marchitelli Declaration alleges the NOI for all 87 properties included in the SAC. In fact, the SAC provides NOI for only 11 properties. *Id.* ¶¶ 133-42, 146. It is thus impossible to apply this methodology to determine the actual change in property value for all of the subject properties.

## II.    The remaining *Penn Central* factors cannot save Plaintiffs' claims.

Because Plaintiffs have failed to allege a sufficiently severe impact to the value of *any* of the Plaintiffs' properties, Plaintiffs cannot prevail on their *Penn Central* claims, and this Court must dismiss them. *See* MTD Order at 7-8 (dismissing *Penn Central* claims based solely on inadequate allegations of economic impact); *Colony Cove*, 888 F.3d at 451; *Evans Creek, LLC*, 2022 WL 14955145, at *1. Regardless, neither of the remaining *Penn Central* factors—interference with reasonable investment backed expectations or the character of the governmental action—supports their claims.

Under the second *Penn Central* factor, courts evaluate the regulation's interference with a property owner's "distinct investment-backed expectation." The reasonableness of an expectation is assessed based on the "regulatory environment at the time of the acquisition of the property." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 633-34 (9th Cir. 2020). The SAC alleges that "each Plaintiff had a reasonable investment backed expectation

---

[7] The initial values for these properties was estimated by dividing the most recent alleged NOI by the declaration's asserted baseline capitalization rate of 6.5 percent. The allegedly Moratorium-impacted values were estimated by dividing the alleged NOI by a 9.5 percent rate. *See* SAC, Ex. A ¶ 23. The resulting estimated 31.6 percent diminution is the same using the hypothetical $100,000 NOI used in the declaration. *See id.*

to operate its respective property, and benefit from its full economic use, consistent with [existing] land use regulations." SAC ¶ 157. It also alleges that Plaintiffs could not reasonably expect the precise nature and duration of the Moratorium. *Id.* ¶¶ 158-61. But, the question here is whether such expectations were "objectively reasonable*." Colony Cove*, 888 F.3d at 452. As the SAC implicitly acknowledges, Plaintiffs never had a reasonable expectation to be free from regulation of the landlord-tenant relationship, especially during a global pandemic. Indeed, as this Court held in rejecting the Contract Clause claim in the related case (Case No. 3:22-cv-02705-LB), "the County's moratorium does not interfere with the landlords' reasonable expectations because there is a long history of regulations governing the landlord-tenant relationship and of Supreme Court cases upholding eviction moratoria." MSJ Order at 25 (citing *Block v. Hirsh*, 256 U.S. 135, 154 (1921), and *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 420 (1934)).

Plaintiffs have chosen to operate in the "highly regulated" industry of residential rental housing. *S. Cal. Rental Hous. Ass'n v. County of San Diego*, 550 F. Supp. 3d 853, 867 (S.D. Cal. 2021). Existing state and local laws regulate numerous aspects of the landlord-tenant relationship, including a landlord's remedies for breach of a lease agreement. *See*, *e.g.*, Cal. Civ. Proc. Code §§ 1159-1179a (establishing unlawful detainer proceedings); Cal. Gov't Code §§ 12900 et seq. (California Fair Employment and Housing Act); Cal. Civ. Code §§ 1941 et seq. (requiring conditions for human occupancy), 1946.2 (requiring just cause for terminating long-term tenancies); Cal. Health & Saf. Code §§ 17910 et seq. (State Housing Law), 26147-48 (requiring residential landlords provide written disclosures of health risks). Therefore, extensive prior regulation of this relationship and local government's broad authority to regulate housing and public health effectively put Plaintiffs on notice of future such regulation. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982) ("This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular."); Cal. Gov't Code § 8630 (counties may proclaim local emergencies). In light of this long history of regulation, Plaintiffs should have reasonably expected that the County could enact housing

protections in response to a global pandemic even if they could not have anticipated the COVID-19 pandemic itself. *See also Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 169 (S.D.N.Y 2020) (upholding COVID-19 eviction moratorium and finding "past regulation puts industry participants on notice that they may face further government intervention in the future"); *S. Cal. Rental Hous. Ass'n.*, 550 F. Supp. 3d at 862 (accord).

Moreover, the Moratorium limits its impact on Plaintiffs' expectations. Here, as in similar cases where courts have upheld COVID-19 eviction moratoria, the Moratorium "impact[ed] only the right to evict, and not the owners' right to continue to collect rents." *See S. Cal. Rental Hous. Ass'n.*, 550 F. Supp. 3d at 867; *Elmsford Apt. Assocs., LLC*, 469 F. Supp. 3d at 167-68 (moratorium "which does nothing more than defer the ability of the landlord to collect . . . rent. . . does not disrupt the landlords' investment-backed expectations"). The Moratorium also did not prevent Plaintiffs from suing for breach of contract or initiating Ellis Act evictions. MSJ Order at 17-18; County Code §§ 6.120.030(D)-(F), 6.120.040(D). Therefore, this second factor also weighs against finding a taking.

Plaintiffs also fail to allege facts to show that the character of the County's action supports finding a taking. When evaluating this factor, courts consider whether the government action is comparable to a physical invasion of property or "merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." *Lingle*, 544 U.S. at 539. Here, the Court has already found that the Moratorium did not effect a physical taking and has dismissed Plaintiffs' per se takings claim. *See* MSJ Order at 13-20; MTD Order at 6. Consistent with established case law, the Court found that the Moratorium did not constitute "direct government appropriation or physical invasion of private property." MSJ Order at 13 (quoting *Lingle*, 544 U.S. at 537). The SAC does not include any new allegations about the nature of the Moratorium that change these conclusions.

At most, the Moratorium temporarily limited the availability of the unlawful detainer remedy in some circumstances. It did not "absolve tenants of their contractual obligation to pay back rent" and landlords could still seek to obtain unpaid rent by initiating a breach of

contract action. MSJ Order at 17; *see* County Code §§ 6.120.030(D), 6.120.090(A). Addition-ally, the Moratorium expressly preserved landlords' ability to enforce other lease terms, initiate Ellis Act evictions, or exclude non-tenants from their properties. MSJ Order at 17-18. In other words, the Moratorium regulated the landlord-tenant relationship by tempo-rarily adjusting economic burdens to address impacts from the ongoing pandemic. *See id.* at 18-21. The character of such regulations does not support finding a taking. *See Rancho de Calistoga*, 800 F.3d at 1091 (finding rent control ordinance was "much more an adjustment of the benefits and burdens of economic life" (internal quotations omitted)); *MHC Finan. Ltd. P'ship*, 714 F.3d at 1128 (same).

**III.    The Court should not grant leave to amend.**

A court should deny leave to amend where "amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *Garmon v. County of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016); *see also Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011). Denial of leave to amend is particu-larly appropriate where the "court gave [p]laintiffs specific instructions on how to amend the complaint, and [p]laintiffs did not comply." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *see also Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (discretion to deny leave to amend is "particularly broad" where the court has already granted plaintiff leave to amend).

Plaintiffs have again failed to sufficiently state a claim despite having had three op-portunities and ample time to do so, with clear direction from the Court. The Court previously found that Plaintiffs' allegations of lost income were insufficient and that, for their *Penn Central* claims to survive, "plaintiffs must be more specific as to before-and-after values." MTD Order at 7-8 (citing *Colony Cove*). But despite this specific direction, Plaintiffs have failed to state a cognizable claim. They had half a year following the Court's Order in which to do so. *See id.* (entered September 3, 2024); SAC (filed March 3, 2025). This was more than enough time to develop information about the Moratorium's effect on Plaintiffs' property values. Plaintiffs' repeated failure to state a claim for relief—especially given the

substantial time they have had to do so—creates a strong inference that any further amend-ment would be futile. *See Salameh*, 726 F.3d at 1133 (upholding dismissal of second amended complaint without leave "because Plaintiffs have had ample opportunity to properly plead a case and have failed to do so") (quotation marks omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (denying leave to amend where second amended complaint was deficient for the same or similar reasons as stated in the court's prior dismissal order). Allowing Plaintiffs to prolong this meritless suit would simply waste more public and judicial resources. The Court should not grant Plaintiffs any further leave to amend.

## CONCLUSION

For the reasons stated above, the County requests that the Court dismiss the SAC without leave to amend.

DATED:  June 2, 2025                SHUTE, MIHALY & WEINBERGER LLP


By:        /s/Matthew D. Zinn
      MATTHEW D. ZINN
      EDWARD T. SCHEXNAYDER
      MINDY K. JIAN

      Attorneys for Defendants and Respondents
      Alameda County and Alameda County Board
      of Supervisors

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

1

## APPENDIX

2

| # | Plaintiff | Address | Valuation Method | Alleged Diminution | SAC ¶¶ | Defects |
|---|---|---|---|---|---|---|
| 1 | 1715 FFT, LLC | 1715 High St. | N/A | N/A | 65 | No diminution |
| 2 | 1830 6th Ave Oakland, LLC | 1830 6th Ave. | N/A | N/A | 66 | No diminution |
| 3 | 18th & Linden, LLC | 1054 18th St. | N/A | N/A | 48 | No diminution |
| 4 | 2019 ABD Ozone Fund, LP | 831 6th Ave. | N/A | N/A | 56 | No diminution |
| 5 | 220 Grand Investors, LLC | 220 Grand Ave. | N/A | N/A | 49 | No diminution |
| 6 | 2228 Union Street Investors, LP | 1438 Madison St. | N/A | N/A | 36, 136 | No diminution |
| 7 | 2228 Union Street Investors, LP | 7511-7527 Bancroft Ave. | N/A | N/A | 36 | No diminution |
| 8 | 2228 Union Street Investors, LP | 8603 Hillside St. | N/A | N/A | 36 | No diminution |
| 9 | 2228 Union Street Investors, LP | 8701 Hillside St. | N/A | N/A | 36 | No diminution |
| 10 | 2367 Washington, LLC | 245 Lee St. | N/A | N/A | 57, 120 | No diminution |
| 11 | 301 Hannah Park, LP | 2850 Hannah St. | N/A | N/A | 61, 122 | No diminution |
| 12 | 301 Lenox, LLC | 301 Lenox Ave. | N/A | N/A | 35 | No diminution |
| 13 | 685 Scofield, LLC | 385-389 Palm Ave. | N/A | N/A | 41, 133 | No diminution |
| 14 | Ami Shah and Avinash Jha | 133 Gable Dr. | N/A | N/A | 15-16, 91 | No diminution |
| 15 | BayOak Properties, LLC | 2375 Fruitvale Ave. #301 | N/A | N/A | 43 | No diminution |
| 16 | Burling Street Properties, LLC and Truckee Zurich Place, LLC | 1704 Upper 14th St. | N/A | N/A | 44, 47 | No diminution |
| 17 | Burling Street Properties, LLC and Truckee Zurich Place, LLC | 1694 12th St. | N/A | N/A | 44, 47 | No diminution |
| 18 | Hannah Kirk | 4514 Fairbairn Ave. | N/A | N/A | 14, 90 | No diminution |
| 19 | J&R Land & Cattle II LP | 1935-1948 E 29th St. | N/A | N/A | 38, 141 | No diminution |
| 20 | J&R Land & Cattle II LP | 1935-1945 E. 30th St. | N/A | N/A | 38 | No diminution |
| 21 | J&R Land & Cattle II LP | 2032-2040 E 30th St. | N/A | N/A | 38, 143 | No diminution |
| 22 | J&R Land & Cattle LP | 1551 Madison St. | N/A | N/A | 37, 138 | No diminution |
| 23 | J&R Land & Cattle LP | 2000 E. 30th St. | N/A | N/A | 37, 142 | No diminution |
| 24 | Jaqueline Watson-Baker | 1225-1227 92nd Ave. | N/A | N/A | 13, 88 | No diminution |
| 25 | John Williams | 1109 32nd St. | N/A | N/A | 9, 85 | No diminution |

25

| # | Plaintiff | Address | Valuation Method | Alleged Diminution | SAC ¶¶ | Defects |
|---|-----------|---------|------------------|--------------------|--------|---------|
| 26 | Michael Loeb | 565 Bellevue Ave., # 2501 and #2502 | N/A | N/A | 12, 89 | No diminution |
| 27 | Normand Groleau and Michelle Groleau | 398 Euclid Ave. | N/A | N/A | 19, 134 | No diminution |
| 28 | Oakbrook Partners, LP | 1125-1135 E. 18th St. | N/A | N/A | 62 | No diminution |
| 29 | Oakbrook Partners, LP | 1221 E. 20th St. | N/A | N/A | 62 | No diminution |
| 30 | Oakland Point Properties, LLC and Rising Tide Properties, LLC | 1630 Lower Center St. | N/A | N/A | 45, 46 | No diminution |
| 31 | Oakland Point Properties, LLC and Rising Tide Properties, LLC | 3629 West St. | N/A | N/A | 45, 46 | No diminution |
| 32 | Oakland Point Properties, LLC and Rising Tide Properties, LLC | 40th St. #4 | N/A | N/A | 45, 46 | No diminution |
| 33 | Riaz Capital Ozone Fund III, LP | 1705 Mandela Parkway | N/A | N/A | 63 | No diminution |
| 34 | Riaz Capital Ozone Fund III, LP | 2133-2143 Dwight Way | N/A | N/A | 63 | No diminution |
| 35 | Riaz Capital Ozone Fund III, LP | 2618 Martin Luther King Jr. Way | N/A | N/A | 63 | No diminution |
| 36 | Rising Tide Properties, LLC | 835 40th St. #4 | N/A | N/A | 45 | No diminution |
| 37 | Rising Tide Properties, LLC | 923-923A Apgar St. | N/A | N/A | 45 | No diminution |
| 38 | Robert Vogel | 20076 Emerald Ct. | N/A | N/A | 10, 86 | No diminution |
| 39 | Sheanna Rogers | 23243 Maud Ave. | N/A | N/A | 11, 87 | No diminution |
| 40 | Truckee Zurich Place, LLC | 1036 62nd St. #4 | N/A | N/A | 47 | No diminution |
| 41 | Truckee Zurich Place, LLC | 2839 Linden St. | N/A | N/A | 47 | No diminution |
| 42 | Westpark Apartments, LLC | 1553 Alice St. | N/A | N/A | 39, 139 | No diminution |
| 43 | Westpark Apartments, LLC | 433 Perkins St. | N/A | N/A | 39, 135 | No diminution |
| 44 | Westpark Apartments, LLC | 4220 Montgomery St. | N/A | N/A | 39, 144 | No diminution |
| 45 | Westpark II, GP | 1530 Harrison St. | N/A | N/A | 40, 137 | No diminution |
| 46 | Westpark II, GP | 1555 Madison St. | N/A | N/A | 40, 140 | No diminution |

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

| # | Plaintiff | Address | Valuation Method | Alleged Diminution | SAC ¶¶ | Defects |
|---|---|---|---|---|---|---|
| 47 | William and Madeleen Rosetti | 125 Moss Ave. | N/A | N/A | 17-18, 146 | No diminution |
| 48 | William and Madeleen Rosetti | 2801 Summit St. | N/A | N/A | 17-18, 145 | No diminution |
| 49 | Sears Lofts DEL, LLC | 2633 Telegraph Ave. | N/A | 5.01% | 34, 99 | No factual basis; <50% |
| 50 | Rising Tide Properties, LLC | 716-720 37th St. | GRM | 8.00% | 45, 123 | <50%; GRM inapplicable |
| 51 | 1732-1744 27th Avenue, LP | 1732-1744 27th Ave. | N/A | 8.50% | 53, 118 | No factual basis; <50% |
| 52 | Burling Street Properties, LLC and Truckee Zurich Place, LLC | 1688-1692 12th St. | GRM | 9.99% | 47, 128 | <50%; GRM inapplicable |
| 53 | Vulcan Lofts, LLC | 4401 San Leandro St. | N/A | 11.80% | 25, 104 | No factual basis; <50% |
| 54 | Exchange Studios DEL, LLC | 527 23rd Ave. | N/A | 12.27% | 30, 102 | No factual basis; <50% |
| 55 | Bakery Lofts DEL, LLC | 4600 Adeline St. | N/A | 13.90% | 29, 94 | No factual basis; <50% |
| 56 | 296 Mather Street, LLC | 296 Mather St. | GRM | 14.20% | 42, 126 | <50%; GRM inapplicable |
| 57 | 2000 Linden Street, LLC | 2000 Linden St. | N/A | 14.53% | 55, 117 | No factual basis; <50% |
| 58 | ABD Suites, LP | 1722 27th Ave. | N/A | 14.60% | 60, 116 | No factual basis; <50% |
| 59 | P&D 46th Street Associates DEL, LLC | 964 46th St. | N/A | 14.60% | 33, 98 | No factual basis; <50% |
| 60 | B3 Lofts DEL, LLC | 5200 Adeline St. | N/A | 17.80% | 28, 92 | No factual basis; <50% |
| 61 | Truckee Zurich Place, LLC | 2215-2217 Eighth St. | GRM | 18.93% | 47, 132 | <50%; GRM inapplicable |
| 62 | Rising Tide Properties, LLC | 722 Upper 30th St. | GRM | 20.04% | 45, 126 | <50%; GRM inapplicable |
| 63 | 3014 Chapman DEL, LLC | 3030 Chapman St. | N/A | 21.00% | 27, 103 | No factual basis; <50% |
| 64 | P&D 23rd Avenue Associates DEL, LLC | 1080 23rd Ave. | N/A | 21.10% | 32, 100 | No factual basis; <50% |
| 65 | 3900 Adeline, LLC | 3900 Adeline St. | N/A | 22.00% | 23, 93 | No factual basis; <50% |
| 66 | 1614 Campbell Street DEL, LLC | 1614 Campbell St. | N/A | 22.61% | 26, 101 | No factual basis; <50% |
| 67 | 2355 Broadway, LLC | 2355 Broadway | N/A | 24.20% | 22, 95 | No factual basis; <50% |
| 68 | Madison Park Properties II DEL, LLC | 1155 5th St. | N/A | 24.20% | 31, 97 | No factual basis; <50% |
| 69 | 818 East 20th Street Oakland, LLC | 800-818 E 20th St. | N/A | 24.77% | 50, 115 | No factual basis; <50% |

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB

| # | Plaintiff | Address | Valuation Method | Alleged Diminution | SAC ¶¶ | Defects |
|---|---|---|---|---|---|---|
| 70 | 2531 East 16th Street, LP | 1638 47th Ave. | N/A | 25.17% | 58, 121 | No factual basis; <50% |
| 71 | Riaz Taplin, trustee of The A.R.T. Trust | 2554 E. 16th St. | N/A | 28.01% | 64, 109 | No factual basis; <50% |
| 72 | ABD Suites, LP | 1002-1008 E 23rd St. | N/A | 35.40% | 60, 113 | No factual basis; <50% |
| 73 | 1701-1703 36th Avenue Oakland, LLC | 1701-1707 36th Ave. | | 36.78% | 52, 107 | No factual basis; <50% |
| 74 | Riaz Taplin, trustee of The A.R.T. Trust | 1828 28th Ave. | N/A | 38.80% | 64, 112 | No factual basis; <50% |
| 75 | Riaz Taplin, trustee of The A.R.T. Trust | 3700 International Blvd. | N/A | 38.90% | 64, 111 | No factual basis; <50% |
| 76 | Hollis Street Partners, LLC | 3250 Hollis St. | N/A | 39.90% | 24, 96 | No factual basis; <50% |
| 77 | 1844 7th Avenue 2013, LLC | 1844 7th Ave. | N/A | 40.10% | 54, 114 | No factual basis; <50% |
| 78 | Riaz Taplin, trustee of The A.R.T. Trust | 1454 36th Ave. | N/A | 43.30% | 64, 105 | No factual basis; <50% |
| 79 | Rising Tide Properties, LLC | 1704 14th St. | GRM | 50.40% | 45, 131 | GRM inapplicable |
| 80 | Riaz Taplin, trustee of The A.R.T. Trust | 1616 35th Ave. | N/A | 52.99% | 64, 106 | No factual basis |
| 81 | 2701 High Street, LP | 2701 High St. | N/A | 53.70% | 59, 110 | No factual basis |
| 82 | Riaz Taplin, trustee of The A.R.T. Trust | 2166 E. 27th St. | N/A | 55.16% | 64, 108 | No factual basis |
| 83 | Rising Tide Properties, LLC | 1021 Campbell St. | GRM | 57.98% | 45, 130 | GRM inapplicable |
| 84 | Truckee Zurich Place, LLC | 695-701 30th St. | GRM | 61.86% | 47, 125 | GRM inapplicable |
| 85 | Rising Tide Properties, LLC | 827 30th St. | GRM | 67.18% | 45, 127 | GRM inapplicable |
| 86 | Oakland Point Properties, LLC and Rising Tide Properties, LLC | 860 34th St. | GRM | 97.88% | 45, 129 | GRM inapplicable |
| 87 | 1130 30th Street, LP | 3649 Martin Luther King Jr. Way | N/A | 119.70% | 51, 119 | No factual basis; contradicted by judicial notice |

MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
Case No. 3:22-cv-01274-LB