1  MARC SELTZER (54534)
   mseltzer@susmangodfrey.com
2  KRYSTA K. PACHMAN (280951)
   kpachman@susmangodfrey.com
3  GLENN C. BRIDGMAN (298134)
   gbridgman@susmangodfrey.com
4  NICHOLAS N. SPEAR (304281)
   nspear@susmangodfrey.com
5  MONICA L. DAEGELE (334911)
   mdaegele@susmangodfrey.com
6  SUSMAN GODFREY L.L.P.
   1900 Avenue of the Stars, Suite 1400
7  Los Angeles, California  90067-6029
   Telephone: (310) 789-3100
8  Facsimile: (310) 789-3150
   *Attorneys for Intervenor-Defendant Alliance*
9  *of Californians for Community Empowerment*
   *Action*

10

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                  **SAN FRANCISCO DIVISION**

13

14  JOHN WILLIAMS, ROBERT VOGEL,          Case No. 3:22-cv-01274-LB
    SHEANNA ROGERS,
15  MICHAEL LOEB, JAQUELINE WATSON-       **INTERVENOR-DEFENDANT**
    BAKER, and HOUSING PROVIDERS OF       **ALLIANCE OF CALIFORNIANS FOR**
16  AMERICA, a 501(c)(4) non-profit Corporation,  **COMMUNITY EMPOWERMENT**
                                          **ACTIONS' NOTICE OF MOTION AND**
17          Plaintiffs and Petitioners,   **MOTION TO DISMISS PLAINTIFFS'**
                                          **SECOND AMENDED COMPLAINT;**
18  vs.                                   **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT**
19  ALAMEDA COUNTY, ALAMEDA COUNTY
    BOARD OF SUPERVISORS, CITY OF         Date:       August 14, 2025
20  OAKLAND, OAKLAND CITY COUNCIL and     Time:       9:30 a.m.
    DOES 1-10,                            Place:      San Francisco Courthouse,
21                                                    Courtroom B – 15th Floor
           Defendants and Respondents.               450 Golden Gate Ave.,
22                                                    San Francisco, CA 94102
23                                        Judge:      Hon. Laurel Beeler

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 14, 2025 at 9:30 a.m., in the courtroom of the Honorable Laurel Beeler, United States Magistrate Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Intervenor-Defendant Alliance of Californians for Community Empowerment Action ("ACCE") will move to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities, the reply briefing in further support of this Motion, the arguments of counsel, ACCE's incorporation by reference of Defendants Alameda County and Alameda County Board of Supervisors' ("Alameda") and City of Oakland and Oakland City Council's ("Oakland") motions to dismiss, and any such other matters as the Court may consider.

Dated: June 2, 2025

**SUSMAN GODFREY L.L.P.**

By:  */s/ Nicholas N. Spear*
_____
MARC SELTZER
KRYSTA K. PACHMAN
GLENN C. BRIDGMAN
NICHOLAS N. SPEAR
MONICA L. DAEGELE
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
*mseltzer@susmangodfrey.com*
*kpachman@susmangodfrey.com*
*gbridgman@susmangodfrey.com*
*nspear@susmangodfrey.com*
*mdaegele@susmangodfrey.com*

*Attorneys for Intervenor-Defendant*
*Alliance of Californians for Community*
*Empowerment Action*

## I.     INTRODUCTION

Plaintiffs' sole remaining cause of action is an as-applied regulatory takings claim. Dkt. 182 (MTD Order) at 12–13. Because Plaintiffs once again fail to sufficiently allege that the eviction moratoria are "functionally equivalent to the classic taking," *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010) (en banc) (citation and internal quotation marks omitted), the Court should dismiss the claim—and the Second Amended Complaint—with prejudice.

Defendants Alameda's and Oakland's motions to dismiss explain why Plaintiffs fail to sufficiently allege a regulatory takings claims under the factors set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *See* Dkts. 194, 196. ACCE adopts and incorporates those arguments by reference. ACCE moves separately to highlight three arguments particularly relevant to tenants. *First*, Plaintiffs' allegations about "economic impact" (*Penn Central* Factor #1) fail to take into account the temporary duration of the moratoria. *See Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020). *Second*, Plaintiffs' allegations about "reasonable investment-backed expectations" (*Penn Central* Factor #2) ignore that the landlord-tenant relationship is highly regulated. And *third*, Plaintiffs' allegations about the "character of the government's action" (*Penn Central* Factor #3) concede that the moratoria were "public program[s] adjusting the benefits and burdens of economic life to promote the common good," which are not takings. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).

## II.     STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss Plaintiffs' as-applied regulatory takings claim with prejudice for failure to state a claim under the *Penn Central* factors.

## III.     BACKGROUND

Plaintiffs initially filed this lawsuit on March 1, 2022, bringing facial and as-applied takings, due process, and equal protection claim against the City of Oakland and Alameda County in relation to temporary eviction moratoria enacted in response to the COVID-19 pandemic. Dkt. 1. Plaintiffs also sought a writ of mandate. *Id.* On April 28, 2022, the Court granted the parties' stipulation for Defendants-Intervenor ACCE to intervene. Dkt. 29.

The Court first adjudicated Plaintiffs' facial challenges. Dkt. 47. Plaintiffs moved for summary judgment on their facial claims on July 18, 2022. Dkt. 61. On November 22, 2022, the Court denied Plaintiffs' motion, holding that the eviction moratoria were not physical takings, did not facially violate the Due Process Clause, and did not conflict with California law. Dkt. 96.[1] On February 24, 2023, the Court denied Plaintiffs' motion to certify the summary judgment order for interlocutory appeal. Dkt. 113.

Plaintiffs filed their First Amended Complaint on September 20, 2023. Dkt. 143. Defendants filed motions to dismiss the First Amended Complaint on November 10, 2023. Dkt. 149, 151–52. Plaintiffs simultaneously moved to dismiss ACCE. Dkt. 147. On September 3, 2024, the Court granted Defendants' motions and denied Plaintiffs' motion. Dkt. 182 (MTD Order). The Court dismissed all Plaintiffs' claims with prejudice except Plaintiffs' as-applied regulatory takings claim. *Id.* The Court gave Plaintiffs twenty-eight days to amend their complaint (until October 1, 2024). *Id.* Plaintiffs sought multiple extensions to file their amended complaint. Dkt. 183, 185, 187. Plaintiffs ultimately filed their Second Amended Complaint on March 3, 2025. Dkt. 189.

## IV.    ARGUMENT

Plaintiffs' sole remaining claim is an as-applied regulatory takings claim. Dkt. 182 (MTD Order) at 6–8, 12–13. Courts analyze whether a regulatory action is a taking using the *Penn Central* factors: "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Bridge Aina Le'a*, 950 F.3d at 625 (alteration and internal quotation marks omitted) (quoting *Penn Central*, 438 U.S. at 124).[2]

For the reasons addressed in Alameda's and Oakland's motions to dismiss, Dkts. 194, 196, and as discussed below, the Court should dismiss Plaintiffs' as-applied regulatory takings claims.

---

[1] The Court also denied summary judgment on the Contracts Clause claim in the related *California Apartment Association, et al. v. County of Alameda, et al.*, Case No. 22-cv-02705-LB, matter.

[2] Regulatory actions can in certain circumstances be "per se" takings. *See Bridge Aina Le'a*, 950 F.3d at 625 (discussing *Loretto* and *Lucas* per se takings). The Court previously held that the eviction moratora are not physical takings under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). *See* Dkt. 96 (SJ Order) at 13–21; Dkt. 182 (MTD Order) at 6–7. The eviction moratoria are also not "per se" takings under *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1018 (1992), because the regulations do not "completely deprive" Plaintiffs of "*all* economically beneficial use" of their properties. *Bridge Aina Le'a*, 950 F.3d at 626 (cleaned up).

4

1

## A.    *Penn Central* **Factor #1—Economic Impact**

2      The "economic impact" factor compares "the value that has been taken from the property

3  with the value that remains in the property." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d

4  445, 450 (9th Cir. 2018) (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470,

5  497 (1987)). The Court, quoting *Colony Cove*, stated in its previous dismissal order that there has

6  been "no case in which a court has found a taking where diminution in value was less than [fifty]

7  percent" and dismissed Plaintiffs' as-applied regulatory takings claims because Plaintiffs "have not

8  alleged any before-and-after values." Dkt. 182 (MTD Order) at 7–8.

9      Plaintiffs' SAC fails to remedy their pleading deficiencies because their diminution-in-

10  valuation calculations are inconsistent with Ninth Circuit caselaw on temporary takings. Plaintiffs'

11  allegations do not allege facts that show a diminution *attributable* to the moratorium. Plaintiffs'

12  diminution-in-value allegations, even if taken as true, represent at most the diminution in value that

13  would have taken place if (counterfactually) the moratoria were still in effect.

14      That is not enough under Ninth Circuit precedent. In *Bridge Aina Le'a*, the Ninth Circuit

15  rejected the plaintiff's asserted diminution because it did not take into account the "duration of the

16  restriction," which is "one of the important factors that a court must consider in the appraisal of a

17  regulatory takings claim." 950 F. 3d at 632 (*quoting Tahoe-Sierra*, 535 U.S. at 322). *Bridge Aina

18  Le'a* involved a decision by the State of Hawaii Land Use Commission to reclassify land that was

19  subsequently vacated by a Hawaii circuit court. *Id.* at 618–23. The plaintiff asserted that the land

20  "suffered an 83.4% diminution in fair market value" by purporting to compare the value of the land

21  before and after the Land Use Commission's decision. *Id.* at 631–32. The Ninth Circuit held that

22  this "substantially overstate[d] the relevant diminution in value [plaintiff] could have suffered for

23  the purposes of weighing this factor" because "[w]hen we account for the reversion's temporary

24  duration, the resulting relevant diminution is much smaller than 83.4%." *Id.* at 632. The Ninth

25  Circuit noted that the purported diminution in value dropped significantly when comparing (a) a

26  proposed rate of return over the temporary duration of the reclassification to (b) the pre-

27  reclassification valuation. *Id.*

28

Plaintiffs commit the same error as the *Bridge Aina Le'a* plaintiff. The Oakland and Alameda eviction moratoria have ended and landlords are allowed to evict tenants for non-payment of rent accrued after the moratoria. Oakland Ordinance No. 23-0216 (ending eviction moratorium on July 15, 2023); ACCO § 6.120.030 (Alameda moratorium expires sixty days after the expiration of the local health emergency); Alameda Health Officer Order No. 23-01 (rescinding local health emergency as of February 28, 2023 at 11:59 p.m.). Plaintiffs admit this. SAC ¶¶ 78, 80. Yet Plaintiffs' allegations about diminution in value do not "account for the [moratoria's] temporary duration" because the allegations are not limited to the duration of the eviction moratoria. *Bridge Aina Le'a*, 950 F.3d at 632.[3] This does not permit the Court to assess whether Plaintiffs have plausibly alleged a diminution value consistent with Ninth Circuit law on regulatory takings.

For example, the SAC alleges that the "overall estimated property value" of Plaintiff 2701 High Street LP's property "declined from $9,164,080 at the onset of the COVID-19 pandemic in March 2020 to $4,242,292.31 in June 2023 – i.e., a -53.7% decline in value in a three-year period." SAC ¶ 110. This insufficient to allege diminution in value under *Bridge Aina Le'a* for a temporary regulatory taking because these valuations improperly assume that the "overall estimated property value" will remain the same after the moratoria are lifted. *See* 950 F.3d at 632 ("[M]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are incidents of ownership. They cannot be considered as a taking in the constitutional sense." (quoting *Tahoe-Sierra*, 535 U.S. at 332)).[4] That the actual diminution in value is much lower than 53.7% is clear from the other financial metrics included for this property. Plaintiffs allege "656,053.62" in "Operating Losses" for this property stemming from the moratoria and an 8.9% drop in ROI from Plaintiff 2701 High Street LP's initial $200,000 investment from (from 83.41% pre-pandemic to

---

[3] Despite the Court's order, the SAC fails to include valuation allegations *at all* for many of the properties owned by Plaintiffs. *See, e.g.*, SAC ¶¶ 85–91 (failing to include valuation allegations for Plaintiffs John Williams, Robert Vogel, Sheanna Rogers, Michael Loeb, Jaqueline Watson-Baker, and Hannah Kirk); *see also id.* at ¶¶ 120, 122, 133–46.

[4] For this reason, the claim by Plaintiffs' "expert" that the moratoria "caused irreparable future harm to property values by reinforcing the perception of residential property investors that Oakland and Alameda County were not favorable places to do business and should be avoided," Declaration of Richard Marchitelli ¶ 19, is improper. Allegations of hypothetical concern about future regulations are insufficient to state a temporary regulatory takings claim. *See Bridge Aina Le'a*, 950 F.3d at 631. If there rule were otherwise, any temporary regulatory takings claim could be transformed into a permanent takings claim simply by alleging an ongoing fear that similar regulatory action could be taken in the future.

74.24% after the moratoria). *Id.* Neither of these metrics are consistent with a "53.7%" decrease in value. *See Bridge Aina Le'a*, 950 F.3d at 632 (noting that other financial metrics focused on the rate of return did support the plaintiff's 83.4% diminution-in-value assertion). Plaintiffs' other valuation allegations suffer from similar flaws. *See, e.g.*, SAC ¶¶ 91–119, 121, 123–32; *accord* Dkt. 194 (Alameda MTD) at 7–8 (Plaintiffs' gross rent multiplier methodology "is uniquely unsuited to valuing properties subject to temporary restrictions because the GRM approach assumes the property generates an unchanging level of income for many years.").

Plaintiffs' approach to calculating diminution would allow landlords to collect post-moratoria rents from their tenants (and seeking eviction for non-payment) while simultaneously claiming that the valuations of their properties are permanently hindered by the now-expired moratoria. Ninth Circuit allow does not allow such double-counting.

## B.   *Penn Central* Factor #2—Reasonable Investment-Backed Expectations

"[A] purported distinct investment-backed expectation must be objectively reasonable." *Colony Cove*, 888 F.3d at 452. "What is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property" because "those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Bridge Aina Le'a*, 950 F.3d at 634 (cleaned up) (quoting *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1345 (Fed. Cir. 2018) and *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 645–46 (1993)).

Plaintiffs allege that the moratoria hindered their "objective reasonable investment-backed expectations" because they "relied on . . . longstanding property law principles that . . . a housing-provider renter relationship could only be maintained when there was payment of rent in exchange for possession and so long as the renter complied with the material terms of the lease." SAC ¶ 148. As a threshold matter, Plaintiffs mischaracterize the ordinances. Neither moratorium waived nor forgave rent. Oakland Ord. 13589 § 9, Alameda Cty. Code, § 6.120.090(A). The moratoria solely prohibited eviction as a remedy for non-payment. Landlords retain the right to file civil actions for

non-payment of rent that accrued during the pandemic. Alameda Cty. Code § 6.120.090 subd. (D); Oakland Eviction Moratorium Regulation § 7(A).

More importantly, Plaintiffs ignore that the landlord-tenant relationship is highly regulated at the state and local levels with numerous limitations on a landlord's ability to charge rent and to enforce lease terms. *See, e.g.*, Cal. Civ. Code, § 827 (Requires either a 30 or 90 day notice to change rent for all properties in California); Cal. Code Civ. Proc., § 1161 (requirements for at-fault eviction notices); Cal. Gov. Code, § 7060-7060.7 (The Ellis Act); Cal. Health & Saf. Code § 17920.3 (list of habitability violations); Alameda Cty. Code § 3.70.010 et seq. (Alameda County Just Cause Ordinance); Oakland Mun. Code § 8.22.300 *et seq.* (Just Cause for Eviction Ordinance); Oakland Mun. Code, § 8.22.800 *et seq.* (Uniform Relocation Ordinance - setting payment amounts for no-fault evictions). There is also extensive caselaw on the landlord tenant relationship in the takings context. *See, e.g.*, *Yee v. City of Escondido, Cal.*, 503 U.S. 519 (1992); *Ballinger v. City of Oakland*, 24 F.4th 1287, 1290 (9th Cir. 2022). Regulation of the landlord-tenant relationship includes the government's well-established ability to restrict a landlord's property rights in an emergency without compensation. *See Block v. Hirsh*, 256 U.S. 135, 155–56 (1921). It is not "objectively reasonable," *Colony Cove*, 888 F.3d at 452, for Plaintiffs to expect that the landlord-tenant relationship would not be "buttressed by subsequent amendments" providing protections to tenants in the event of a crisis. *See Bridge Aina Le'a*, 950 F.3d at 635. Plaintiffs therefore fail to allege "reasonable investment-backed expectations" that were undercut by the moratoria.

C.    *Penn Central* **Factor #3—Character of the Government Action**

"[T]he character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good—may be relevant in discerning whether a taking has occurred." *Bridge Aina Le'a*, 950 F.3d at 635–36 (quoting *Lingle*, 544 U.S. at 539).

Here, Plaintiffs' own allegations illustrate that the ordinances were a "public program adjusting the benefits and burdens of economic life to promote the common good." In response to a once-in-a-century pandemic that severely impacted tenants' health and finances, Oakland and

Alameda instituted protections to prevent tenants from eviction during the pendency of the emergency. SAC ¶¶ 69–80. The moratoria were phased out once the emergency subsided. *Id.* ¶¶ 78, 80. Oakland, Alameda, and the State all operated rental relief programs that provided assistance to landlords affected by the pandemic *Id.* ¶ 82. Plaintiffs do not allege that any single landlord or landlords were targeted or singled out. *See Bridge Aina Le'a*, 950 F.3d at 636 ("For one, we recognize that government action that singles out a landowner from similarly situated landowners raises the specter of a taking. The concentrated effect of the reversion here, however, was reflective of the confines of a generally applicable Hawaii law land use reclassification procedure. We cannot find in this generally applicable scheme that this factor weighed in Bridge's favor. (citations omitted)).

These allegations are not sufficient to establish that the "character of the government's action" supports a regulatory taking under *Penn Central*.

**V.   CONCLUSION**

For the reasons discussed above and in Oakland's and Alameda's motions to dismiss, Dkts. 194, 196, the Court should dismiss Plaintiffs' as-applied regulatory claim, which is the sole remaining claim in the Second Amended Complaint.

Dated: June 2, 2025                          **SUSMAN GODFREY L.L.P.**

By:   */s/ Nicholas N. Spear*
_____
MARC SELTZER
KRYSTA K. PACHMAN
GLENN C. BRIDGMAN
NICHOLAS N. SPEAR
MONICA L. DAEGELE
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
*mseltzer@susmangodfrey.com*
*kpachman@susmangodfrey.com*
*gbridgman@susmangodfrey.com*
*nspear@susmangodfrey.com*
*mdaegele@susmangodfrey.com*

*Attorneys for Intervenor-Defendant*
*Alliance of Californians for Community*
*Empowerment Action*

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that a true and correct copy of the foregoing document has been served on all current counsel of record on Jume 2, 2025.

*/s/ Nicholas N. Spear*
Nicholas N. Spear