ANDREW M. ZACKS (SBN 147794)
EMILY L. BROUGH (SBN 284943)
ZACKS & FREEDMAN, PC
1970 Broadway, Suite 1270
Oakland, CA 94612
Tel: (510) 469-0555
az@zfplaw.com
emily@zfplaw.com

PACIFIC LEGAL FOUNDATION
JONATHAN M. HOUGHTON (N.J. Bar No. 369652021)
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
BRIAN T. HODGES (Wash. Bar No. 31976)
1425 Broadway, #429
Seattle, WA 98112
Telephone: (916) 419-7111
JHoughton@pacificlegal.org
BHodges@pacificlegal.org

*Attorneys for all Plaintiffs and Petitioners, John Williams, et al.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JOHN WILLIAMS, et. al,

    Plaintiffs and Petitioners,

vs.

ALAMEDA COUNTY, ALAMEDA
COUNTY BOARD OF SUPERVISORS,
CITY OF OAKLAND, OAKLAND CITY
COUNCIL and DOES 1-10,

    Defendants and Respondents,

ALLIANCE OF CALIFORNIANS FOR
COMMUNITY EMPOWERMENT ACTION,

    Defendant-Intervenor

Case Number:  3:22-cv-01274-LB Case No.:
3:22-cv-02705-LB (related)

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED AND
SUPPLEMENTAL COMPLAINT**

Date:  August 14, 2025
Time: 9:30 a.m.
Place: Courtroom B
      450 Golden Gate Avenue
      San Francisco, CA
Judge: Hon. Laurel Beeler

Action Filed: March 1, 2022
Trial Date:    None set

*ZACKS & FREEDMAN, PC*
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 6

II.   STATEMENT OF ISSUES ..................................................................................... 7

III.  STATEMENT OF FACTS: THE SECOND AMENDED AND SUPPLEMENTAL
COMPLAINT'S ALLEGATIONS ................................................................................ 7

   A.   Background: The California Governor's Order and the COVID-19 Relief Acts. ........... 7

   B.   The CITY's Eviction Moratorium and Phase Out Ordinance. ........................................ 8

   C.   The COUNTY's Eviction Moratorium. ........................................................................... 9

   D.   The COUNTY and CITY's Rent Relief Assistance Programs. ..................................... 10

   E.   The Moratoria's Detrimental Impact on Plaintiffs ....................................................... 11

IV.   STATEMENT OF PROCEEDINGS ..................................................................... 16

V.    ARGUMENT ........................................................................................................ 18

   A.  LEGAL STANDARD. ......................................................................................................... 18

      1.   Fed. R. Civ. P. Rule 12(b)(6). ................................................................................... 18

   B. THE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT STATES CLAIMS
   FOR REGULATORY TAKINGS UNDER PENN CENTRAL. ........................................... 19

      1.   Plaintiffs Suffered Severe Economic Impact. ........................................................... 22

      2.   Plaintiffs' Reasonable Investment Backed Expectations Were Destroyed ................ 26

      3.   The Character of the Government Action was Indicative of a Taking. ...................... 28

VI. CONCLUSION ............................................................................................................ 30

**ZACKS & FREEDMAN, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

## TABLE OF AUTHORITIES

**Cases**

*Apartment Ass'n of Los Angeles County, Inc. v. City of Los Angeles*, 500 F.Supp. 3d 1088 (C.D. Cal. 2020), *aff'd,* 10 F.4th 905 (9th Cir. 2021) ........................................................27

*Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012)..........................20, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................19, 24

*Babbit v. Youpee*, 519 U.S. 234 (1997)................................................................................21

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) ..............................................18, 19, 25

*Bridge Aina Le'a, LLC v. Land Use Comm'n,* 950 F.3d 610 (9th Cir. 2020)............23, 24, 26

*Broam v. Bogan,* 320 F.3d 1023 (9th Cir. 2003). ...............................................................19

*California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.,* No. 120CV01294ADASAB, 2023 WL 1869010, at *30 (E.D. Cal. Feb. 9, 2023) ........................................................23

*CCA Assocs. v. United States*, 91 Fed. Cl. 580 (2010) ......................................................28

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) ....................................................20

*Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003) ...........................22,25,28

*Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445 (9th Cir. 2018)........................24

*Comm. Housing Improvement Program v. City of New York*, 492 F. Supp. 3d 33 (E.D.N.Y. 2020) ...............................................................................................................................25

*Cruz v. Beto*, 405 U.S. 319 (1972)....................................................................................20

*Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025)..............................................21

*Evans Creek, LLC v. City of Reno*, No. 21-16620WL 14955145 (9th Cir. Oct. 26, 2022) ...23

*Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017 (9th Cir. 2013) ......................................20

*FFV Coyote LLC v. City of San Jose*, 637 F. Supp. 3d 761 (N.D. Cal. 2022)......................23

*FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238 (Tex. App. 2016)........................................25

*Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir. 1998)....................................................24

*GHP Mgmt. Corp. v. City of Los Angeles*, No. CV2106311DDPJEMX, 2022 WL 17069822, (C.D. Cal. Nov. 17, 2022) .............................................................................................23,27

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

*Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010)................................................27

*Hall v. City of Santa Barbara,* 833 F.2d 1270 (9th Cir.1986) ................................................19

*Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022)......................................22, 25

*Hodel v. Irving,* 481 U.S. 704 (1987) .............................................................................21, 29

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001)......................................................19

*Levine v. Diamanthuset, Inc.,* 950 F.2d 1478 (9th Cir. 1991) ...................................................7

*Lingle v. Chevron*, 544 U.S. 528 (2005) ..............................................................................28

*MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118 (9th Cir. 2013) ........................26

*Murr v. Wisconsin*, 582 U.S. 383 (2017) .............................................................................22

*Nowlin v. Pritzker*, 34 F.4th 629 (7th Cir. 2022) ..................................................................23

*Ocasio-Hernández v. Fortuño-Burset,* 640 F.3d 1 (1st Cir. 2011) ........................................18

*Palazzolo v. Rhode Island,* 533 U.S. 606 (2001) .............................................................20, 26

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)...................................6, 20

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922).................................................19, 27

*Redd v. Guerrero*, 84 F.4th 874 (9th Cir. 2023) ...................................................................21

*Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057 (9th Cir. 2014) ........................21

*S. California Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853 (S.D. Cal. 2021) .....................................................................................................................................27

*S. Grande View Dev. Co., Inc. v. City of Alabaster, Alabama*, 1 F.4th 1299 (11th Cir. 2021) ................................................................................................................................................28

*Saddle Mountain Mins., LLC v. City of Richland, No. 23-35622*, 2024 WL 4903280 (9th Cir. Nov. 27, 2024) ...............................................................................................................26

*Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 864 F.2d 1475 (9th Cir.1989)...........19,29

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)..............................................................25

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002)..........20

*Williams v. County of Alameda,* 26 F.Supp.3d 925 (ND CA 2014) ......................................19

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)..........................21

*Yancey v. United States*, 915 F.2d 1534 (Fed. Cir. 1990)..............................22, 25

*Yee v. City of Escondido, Cal.* 503 U.S. 519 (1992)..........................19

*Yuba Goldfields, Inc v. U.S.,* 723 F.2d 884 (Fed. Cir 1983)..........................29

**Statutes**

Cal. Civ. Pro. Code § 1161 ..........................7

Cal. Civ. Pro. Code § 1179.03(c)(7)..........................8

Cal. Civ. Pro. Code § 1179.03.5(a)(3). ..........................8

Cal. Civ. Pro. Code § 1179.01.5 ..........................8

Cal. Civ. Pro. Code § 1179.02 ..........................8

Cal. Civ. Pro. Code § 1179.03 ..........................8

Cal. Civ. Pro. Code § 1179.10 ..........................8

Cal. Civ. Pro. Code § 1179.11 ..........................8

Cal. Civ. Pro. Code § 1179.11(a)(2), (c)..........................8

Cal. Civ. Pro. Code §1179 et seq...........................7

Cal. Code of Civ. Proc. § 1179.11(a)(1), (c)..........................8

Cal. Gov. Code § 8550, et seq ..........................7

Cal. Gov. Code § 8630(d)..........................8

Cal. Gov. Code § 8558(c)..........................8

Cal. Gov. Code § 8630..........................8

Fed. R. Civ. P. 8(a) ..........................21

FRCP Rule 12(b)(6) ..........................18, 19

Zacks & Freedman, PC
1970 Broadway, Suite 1270
Oakland, CA 94612

**Other Authorities**

Alameda County Code of Ordinances (ACCO) § 6.120.030......................................10 16, 17

Oakland Municipal Code § 8.22.300 et seq ...........................................................................9

Ordinance No. 13589 ...........................................................................................................9

Ordinance No. 23-0216 / 13737 .......................................................................................9, 17

Resolution No. 88075 C.M.S ...............................................................................................8

Urgency Ordinance No. O-2020-23 .....................................................................................9

**Constitution**

Article I, Section 19 of the California Constitution .......................................................18, 19

U.S. Const. Amend. V ....................................................................................................18, 19

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

## I. INTRODUCTION

This case pertains to challenges to the blanket eviction moratoria imposed by Defendants Alameda County ("COUNTY") and the City of Oakland ("CITY") in early 2020 in response to the COVID-19 pandemic (the "Moratoria"). From March 2020 through the better part of 2023, the CITY and COUNTY's eviction bans prohibited most all evictions throughout Defendants' jurisdictions. The Moratoria finally came to an end. However, the damage has wreaked havoc; Plaintiffs have lost millions of dollars and suffered the substantial, government-sanctioned destruction of their property values as a direct result of the three-plus years the Moratoria were imposed. Therefore, Plaintiffs continue to seek damages against the COUNTY and CITY for, among other things, what Plaintiffs believe is a clear taking of their private properties for public use, without payment of just compensation.

Defendants' motions to dismiss Plaintiffs' second amended pleading must be denied. Defendants argue that a property owner must "prove"—not simply plead—that it suffered an arbitrary, artificial threshold of economic loss in order to survive a motion to dismiss. Not so; the complaint's only job is to provide fair notice. And as such, all it has to do is state a plausible claim that is supported by facts consistent with the allegations. It is a minimal pleading requirement that leaves the resolution of the case's merits to another day. As is clear from the face of the second amended complaint, Plaintiffs state plausible claims for unconstitutional regulatory takings under the framework of *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) ("*Penn Central*") and in violation of the U.S. and California Constitutions. Moreover, every case must be looked at individually and there is no magic formula in a *Penn Central* analysis. As such, *Penn Central* determinations are generally not ripe for dismissal pursuant to FRCP 12, and particularly so in this case.

Plaintiffs have stated facts describing the economic impact of the Moratoria, the extent to which the Moratoria have interfered with their reasonable investment backed expectations, and the character of the CITY and COUNTY's action, which have left housing providers to bear the full cost of this governmental choice in the name of public benefit. In response to this Court's order,

Plaintiffs have also alleged detailed information concerning before and after values of their individual properties, which is further supported by an expert declaration incorporated into the amended pleading.  In sum, Defendants have failed to establish that it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991) (inter. quot. omit).  The motions should therefore be denied.

## II.    STATEMENT OF ISSUES

The issues presented by these motions are whether Plaintiffs' Second Amended and Supplemental Complaint ("SASC") states claims for relief for as-applied regulatory takings.  As is demonstrated below, the SASC states claims for relief under these alleged violations and the Court should therefore deny the motions to dismiss.

## III.    STATEMENT OF FACTS: THE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT'S ALLEGATIONS

### A.  Background: The California Governor's Order and the COVID-19 Relief Acts.

In response to the Covid-19 pandemic, Governor Newsom declared a State of Emergency in California on March 4, 2020, pursuant to the California Emergency Services Act (ESA), Gov. Code sec. 8550, et seq.  On March 16, 2020, Governor Newsom entered an executive order, which in part permitted local governments to temporarily limit housing providers' ability to evict for nonpayment of rent due to the Covid-19 crisis. That provision expired on September 30, 2020.

Prior to the expiration of that provision, the California Legislature enacted the COVID-19 Tenant Relief Act of 2020 (the "Tenant Relief Act"), Cal. Civ. Pro. Code section 1179 et seq., effective August 31, 2020. The Tenant Relief Act in part amended the State's unlawful detainer (UD) statutes, Cal. Civ. Pro. Code section 1161 et seq., and was aimed at "**temporary emergency relief** for financially distressed renters, homeowners, and small housing providers . . . ." Ex. A at 4 to Request for Judicial Notice in Support of Plaintiffs' Opposition to Defendants' and Intervenor's Motions to Dismiss ("RJN") (emphasis added). Among other things, the Tenant Relief Act provided statewide eviction protections during a specified covered time period for

**ZACKS & FREEDMAN, PC**
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

renters who could not pay their rent for Covid-19-related reasons. Cal. Civ. Pro. Code §§ 1179.01.5, 1179.02, 1179.03.

Importantly, the Tenant Relief Act's temporary moratorium on residential evictions was narrow, and *specifically* limited to those based upon inability to pay rent for Covid-19-related financial distress—and required proof of that distress to avoid being evicted for nonpayment. The Tenant Relief Act still permitted evictions for fault, and no-fault "just cause" as defined under state law. Cal. Civ. Pro. Code § 1179.03.5(a)(3). The Covid-19-related nonpayment eviction protections were later extended to September 30, 2021 and protected affected renters from eviction during this period so long as they complied with the Covid-19-related financial distress requirements. These enactments further clarified the State's rental assistance program, and protected Covid-19 affected renters who made active efforts to comply with that program. Cal. Civ. Pro. Code §§ 1179.10, 1179.11. If a renter failed to participate in the program, the housing provider could have moved forward with a UD action for nonpayment of rent. Cal. Civ. Pro. Code §§ 1179.11(a)(2), (c). A housing provider may also have moved forward with a UD action if the rental assistance application was denied. Cal. Code of Civ. Proc. § 1179.11(a)(1), (c), also see, § 1179.03(c)(7).

In other words, under state law, renters were required to both prove they had Covid-19 related financial distress, *and* successfully apply for rental assistance (i.e., prove that they qualify) to have avoided eviction for nonpayment. If a nonpaying renter did not show they had Covid-19 related financial distress, or if they refused to apply for, or did not qualify for rental assistance, a housing provider—who is not receiving rents—could move forward with eviction.

**B. The CITY's Eviction Moratorium and Phase Out Ordinance.**

On March 9, 2020, the CITY declared a local state of emergency due to Covid-19. The CITY's local emergency was ratified on March 12, 2020, via Resolution No. 88075 C.M.S, and pursuant to the ESA, which permits municipalities to declare local emergencies under specified circumstances. Cal. Gov. Code §§ 8558(c), 8630. The ESA also requires a municipality to terminate the local emergency ". . . at the earliest possible date that conditions warrant." Cal. Gov. Code § 8630(d). After ratifying the local emergency, on March 27, 2020, the CITY passed its

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

eviction moratorium, Ordinance No. 13589. Amending the CITY's voter-enacted Just Cause for Eviction Ordinance, Oakland Municipal Code section 8.22.300 et seq., that moratorium not only prohibited evictions for nonpayment of rent due to Covid-19-related financial distress, but also *all other evictions*, with few exceptions. *Id.*

Initially, the CITY's moratorium on all evictions was set to expire on May 31, 2020, "unless extended." Subsequently, the moratorium was extended until "the Local Emergency declared on March 9, 2020 has been terminated by the City Council, or August 31, 2020, whichever comes first." See, Ex. B Sec. 3 to RJN. However, in July 2020, the extension on the eviction moratorium was again amended to *only* expire when the local emergency had been terminated by the Oakland City Council ("COUNCIL"). *Id.* Over three years later, the local emergency still had no stated expiration date, and the COUNCIL's position was that it has not expired.

After this action was filed, the CITY enacted Ordinance No. 23-0216 / 13737 ("Phase Out Ordinance") on May 2, 2023, which, while providing for a "phase out" of the CITY's moratorium, also kept the "local emergency" in place. Ex. C to RJN. The Phase Out Ordinance provides that the CITY's moratorium shall end on July 15, 2023. *Id.* However, the Phase Out Ordinance continued to prohibit evictions for virtually any reason, including non-payment, if the grounds for eviction arose between March 9, 2020 and July 14, 2023. Ex. C to RJN. It also further restricts housing providers' "just cause" reasons for eviction in violation of state law. *Id.*

**C. The COUNTY's Eviction Moratorium.**

Defendant Alameda County ("COUNTY") ratified its local emergency on March 10, 2020. On April 21, 2020, defendant Alameda County Board of Supervisors ("BOARD") adopted Urgency Ordinance No. O-2020-23, which, like the CITY's moratorium, purported to prohibit most evictions for any reason—that is, even when there is no Covid-related financial distress. The language in the urgency ordinance was then made a permanent part of the COUNTY's Code of Ordinances on June 23, 2020. The COUNTY's moratorium applied to "all evictions from residential units in the unincorporated and incorporated areas of the county" subject to very few

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

exceptions. Alameda County Code of Ordinances (ACCO) § 6.120.030. Like the CITY's moratorium, the COUNTY'S moratorium provides that it is an "absolute defense" to an unlawful detainer action brought during its term. ACCO § 6.120.030(D).

As enacted, the COUNTY moratorium expired sixty days "after the expiration of the local health emergency." ACCO § 6.120.030. Per the ratification of the local emergency, the local emergency shall remain in effect until the [BOARD] determines that the emergency no longer exists. On February 28, 2023, the COUNTY rescinded its local emergency. Ex. E ¶ 80 to RJN. Accordingly, the COUNTY's moratorium expired on April 29, 2023. *Id*. Notwithstanding, the effect of the COUNTY's moratorium is still in place for that three-year-plus period.

### D. The COUNTY and CITY's Rent Relief Assistance Programs.

State law requires local governments to develop mechanisms by which housing providers and renters may file applications for, and receive if eligible, Covid-related rent relief. The COUNTY operates a rent relief assistance program called "Housing Secure." During the Moratoria, the Housing Secure website currently stated: "NOTICE: . . . We have received more requests for funds than we have currently available" and the COUNTY is not accepting new applications. Ex. E ¶ 82 to RJN. The CITY also operates a rent relief assistance program called "Oakland's Emergency Rental Assistance." Ex. E ¶ 82 to RJN. At the time of filing this action, Oakland's Emergency Rental Assistance website stated: "UPDATE. PLEASE NOTE. As of January 7, the City of Oakland's Emergency Rental Assistance program is oversubscribed. Tenants and Landlords may still submit an application but will be placed on a waitlist." *Id.* The website instead referred applicants to the COUNTY's rent relief assistance program, Housing Secure, which is no longer accepting applications. *Id.*

Notwithstanding the Tenant Relief Act and Rental Housing Recovery Act's (collectively, the "Acts") requirements that renters show proof of participation in, and qualification under, the rent relief program, **renters in the CITY and COUNTY did not to participate in *any* rent relief program to avoid eviction for nonpayment under Defendants' eviction moratoria** (collectively, the "Moratoria"); the Moratoria prohibited evictions even for those renters who

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

refused to cooperate with a housing provider's request that they seek relief under these programs. Ex. E ¶ 83 to RJN.

**E.  The Moratoria's Detrimental Impact on Plaintiffs.**

All Plaintiffs in this action allege they have suffered devasting economic losses because of the Moratoria, including but not limited to drastic plunges in their residential rental property values.  Appraiser Richard Marchitelli, MAI, CRE ("Marchitelli"), reviewed the impact that the Moratoria had on Plaintiffs;' properties. Ex. E, ex. b to RJN.  Marchitelli determined each fee property has suffered a *substantial* impairment of value, economic loss and economic use as a direct result of the Moratoria.  Ex. E, ex. b ¶ 16 to RJN.  Marchitelli determined that the severe and burdensome requirements of those Moratoria, coupled with the uncertain and unpredictable end dates, significantly increased the risk profile of Plaintiffs' properties on a permanent basis and caused continuing negative harm to the economic value of each and every property.  *Id*.  Marchitelli has estimated that, based on his knowledge and experience, as a direct result of the restrictions imposed by the CITY and/or COUNTY, the capitalization rates of each and every one of Plaintiffs' properties increased by at least 200 to 300 basis points, depending upon the individual characteristics of each property.  That increase in capitalization rate results in a corresponding decrease in economic value and economic use.  Ex. E, ex. b ¶¶ 7-10 to RJN.

For example, Plaintiff John Williams is the owner of a duplex rental home in the CITY and COUNTY.  Ex. E ¶ 85 to RJN.  WILLIAMS first purchased 1109 32nd Street to provide himself with housing security and reliable passive income upon hitting retirement. *Id*. The renter of Williams' property refused to pay rent through the entirety of the Moratoria, and refused to apply for rent relief through the rent relief program. *Id*. The renter had no Covid-19 related issues.  *Id.* As a result of the renter's government-sanctioned nonpayment, Williams has had trouble paying his mortgage, property maintenance, and utilities in a timely and routine manner and fears he'll lose his property.  *Id.*  When Williams purchased the property, he did not anticipate, and had no basis to anticipate, that the CITY and COUNTY would subsequent grant renters relief from paying rent based on what the CITY and COUNTY find to be acceptable excuses.  Ex. E ¶¶ 85, 157-161.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Plaintiff Robert Vogel is the owner of a small single-family home rental in the COUNTY. Ex. E ¶ 86 to RJN. Robert Vogel is semi-retired, and a disabled paraplegic. *Id.* The former renter at 20076 Emerald lived there for approximately twelve years, and her current rent was $2,000 per month, however she stopped paying rent in September 2021, and only vacated towards the expiration of the Moratoria. *Id.* The renter's failure to pay was not related to any Covid-19 related reason. *Id.* When Vogel was finally able to gain possession of the property, it had been destroyed; the property was infested with rats and heaps of garbage and puddles of urine covered the floor. *Id.* It also appeared that the tenant had been using the property as a drug den. *Id.* VOGEL's bank account has been depleted because of having to carry all the costs of 20076 Emerald, and having to make significant repairs to the property damage caused by his nonpaying renter. *Id.* The renter's failure to pay additionally prevented VOGEL from being able to refinance 20076 Emerald to a lower rate. *Id.* He is deeply concerned he will lose the property as the result of his inability to meet the financial obligations of ownership. *Id.* Unbeknownst to VOGEL at the time of purchase, VOGEL has since learned that investing in Alameda housing is no longer a smart or safe way for one to invest their money, as Alameda's extreme government interference can causally strip one of their rights as a landlord and cause them to suffer hundreds of thousands of dollars in lost values. Ex. E ¶¶ 86, 157-161 to RJN.

Plaintiff Sheanna Rogers owns a home in the COUNTY, which has a rental unit on the lower floor, and was at one time was a small, three-bedroom, independent living facility. Ex. E ¶ 87 to RJN. The renter at Rogers' property did not paid rent for over two years, would not apply for rental assistance, and harassed Rogers' clients in the living facility so much that she was forced to close her business. *Id.* However, Rogers was unable to commence a nonpayment eviction against her renter as a direct result of the COUNTY's moratorium, and as a result lost hundreds of thousands of dollars. *Id.* ROGERS has also suffered devastating health consequences as a result of the stress caused by her nonpaying renter. *Id.*

Plaintiff Jacqueline Watson-Baker owns a small duplex rental home in the CITY and COUNTY, which was purchased by her mother in or about the 1950's. Ex. E ¶ 87 to RJN. Watson-

Baker's renter refused to pay rent throughout the Moratoria, destroyed and devalued her property, and made racist statements to her. *Id.* When Watson-Baker's renter finally vacated after the Moratoria lifted and she was able to get access to the unit for the first time in years, she discovered it was in gross disrepair. *Id.* The renter had put foil on all the unit's windows and there were dark yellow streaks running down the walls. *Id.* The unit was infested with insects and there was feces and urine all over the bathroom of the unit, and dog feces and garbage covered the unit's backyard. Notwithstanding the renter's damage to and perpetuation of a nuisance on her property, Watson-Baker was prevented from evicting the renter under the CITY and COUNTY's three plus yearlong Moratorium. *Id.* WATSON-BAKER considered selling the property, however, was advised that the renter's actions had devalued her property by almost a third of the market value. *Id.*

Plaintiff Michael Loeb owns a rental unit in a building in the CITY and COUNTY. Ex. E ¶ 89 to RJN. Loeb is a 74-year-old widower who wishes to occupy the rental unit as his primary residence. *Id.* Loeb has attempted to voluntarily negotiate an owner move in with his renter. *Id.* However, the renter has demanded that Loeb pay him more than $160,000 to vacate, telling Loeb that "it's nothing personal, just business." *Id.* Loeb was unable to commence an owner move-in eviction against his renter as a direct result of the Moratoria. *Id.* The long-lasting effects of the CITY and COUNTY's moratoriums have caused LOEB to endure irreparable mental harm, including but not limited to the harm inflicted upon him by his tenant's attempts to extort him. *Id.*

Plaintiff Hannah Kirk is a housing provider in the CITY and COUNTY and owns a single-family home at 4514 Fairbairn Ave, Oakland, CA. Ex. E ¶ 90 to RJN. Kirk is a single mother and used to live in 4514 Fairbairn Ave with her two children. *Id.* In 2019, while she was living there with her family, Kirk's renter moved into her home, and the agreed upon rent was $800 per month. *Id.* The renter shared Kirk's kitchen and bathroom at Kirk's home. *Id.* Kirk's renter paid rent consistently until July 1, 2021, whereupon she stopped paying rent but did not move out of Kirk's home when asked. *Id.* The renter also did not cooperate with the rental assistance programs, or return the Covid-19 declarations that Kirk provided to her, and instead accused Kirk of harassing her. *Id.* Notwithstanding the renter's failure to pay rent even though no Covid-19 related reason

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

existed, Kirk was prevented from evicting the renter under the CITY and COUNTY's Moratorium. *Id.* After spending almost two years having to carry the expenses of the renter and having to face the nonpaying renter on a daily basis inside of her own home, Kirk moved out of her home due to the severe emotional distress the situation was causing her and her children. *Id.* The CITY and COUNTY put KIRK in such an incredibly toxic situation that she was essentially forced to decide between paying her then-current mortgage or paying rent at a new property – i.e., she was effectively coerced into selling her property, which she finally did in September 2023. *Id.*

Plaintiff AMI SHAH and AVINASH JHA were housing providers in the CITY and COUNTY and own a single-family home at 133 Gable Dr. Fremont CA. Ex. E ¶ 91 to RJN. SHAH and JHA purchased 133 Gable Dr. in 2019, intending it to be their primary residence. *Id.* However, for financial reasons, SHAH and JHA were required to rent 133 Gable Dr. until their lease obligations for their own rental were met. *Id.* They did so, but after the COUNTY enacted its Moratorium, SHAH and JHA's renters stopped paying rent, and refused to apply for rent relief through the state and local rent relief programs. Ex. E ¶ 91 to RJN. Moreover, not only did SHAH and JHA's renters stop paying rent, but the renters physically converted 133 Gable Dr. into an "Airbnb motel," renting out the individual rooms. *Id.* SHAH and JHA reported the renters' unlawful activity to the Fremont police, and during the investigation it was discovered that the renters were conducting similar fraudulent rental activity with other homes as well. *Id.* During the investigation, the renters abandoned the property, but the AirBnb squatters did not, and refused to move out. *Id.* Throughout, SHAH and JHA were prevented from evicting their nonpaying and breaching renters and the AirBnb squatters due to the COUNTY's Moratorium. *Id.* When the Airbnb squatters finally abandoned the property, SHAH and JHA were left with rental losses, legal fees and a home that was destroyed, and with a huge toll on their finances—estimated to be in the millions of dollars—and health. *Id.*

All remaining Plaintiffs are also housing providers with rental properties in the CITY and/or the COUNTY, which were occupied by renters during the Moratoria. Ex. E ¶¶ 92-161 to RJN. Since the Moratoria were enacted, and through the Moratoria's duration, these Plaintiffs

have had renters at these properties who have refused or failed to pay rent for their units or otherwise violated the material terms of their leases. *Id.* Many of the renters that occupy these properties did not cooperate with these Plaintiffs' efforts to assist them in obtaining rental assistance through the CITY and COUNTY programs, resulting in Plaintiffs' inability to mitigate their lost rental profits. *Id.* Other renters of these Plaintiffs' rental properties did not qualify for rental assistance because their income level was too high and/or because they were not impacted by a Covid-19 related reason. *Id.* These renters also committed acts that damaged these properties during the time the Moratoria were in effect, which further devalued their properties. *Id.* Plaintiffs properties' before and after values dramatically decreased as a result of the Moratoria (Ex. E ¶¶ 92-161, (ex. b) to RJN); Many Plaintiffs specifically allege their properties saw value losses of over 50% (Ex. E ¶¶  106, 108, 110, 119, 125, 127, 129, 131 (ex. b) to RJN) and Marchitelli's preliminary determinations that every single property at issue herein has suffered *substantial* impairment of value, economic loss and economic use as a direct result of the Moratoria supports an inference of the same at this pleading stage (see, Ex. E, ex. b ¶ 16 to RJN).

All Plaintiffs in this action purchased their rental properties prior to the Moratoria being enacted, with objectively reasonable investment backed expectations based upon the regulatory environment in place at the time of purchase. Ex. E ¶¶ 148, 157-161 to RJN. When determining whether their purchase of these rental properties would be fruitful business investments, Plaintiffs relied on the same longstanding property law principles that other market participants would have relied on, namely, that a housing provider-renter relationship could only be maintained when there was payment of rent in exchange for possession and so long as the renter complied with the material terms of the lease. *Id.* When determining whether their purchases of the rental properties would be fruitful business investments, Plaintiffs relied on the COUNTY and CITY just cause eviction ordinances then in place, including but not limited to, the ability to evict a renter who failed to pay rent or otherwise violated the material terms of the lease but was still in possession of their property. *Id.* Each Plaintiff did not, and could not, reasonably expect the subsequent enactment of the Moratoria. *Id.* Each Plaintiff did not, and could not, reasonably expect the

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

substantial duration of the Moratoria. *Id.* Each Plaintiff did not, and could not, reasonably expect the severe impact and disproportionate burden that the government forced them to bear as a result of the Moratoria. *Id.* As a result, the reasonable investment backed expectations of each and every Plaintiff were destroyed as a result of the Moratoria. *Id.*

Prior to the Moratoria being enacted, Plaintiffs' rental properties at least covered those properties' expenses, and some of were profitable businesses, the latter of which yielded an average of many thousands of dollars a year in profit. Ex. E ¶¶ ¶¶ 92-161 to RJN. Despite the above acts of Plaintiffs' renters, the blanket Moratoria prohibited from evicting defaulting and breaching renters during the time the Moratoria were in place. *Id.* All Plaintiffs have seen significant losses in property values as a direct result of the Moratoria enabling renters to fail to pay rent for any reason at all, to damage these properties without consequence, and to violate the material terms of their leases with impunity. Ex. E ¶¶ ¶¶ 92-161 (ex. b) to RJN.

The COUNTY and CITY are aware that the Moratoria, and as confirmed by the newly enacted Phase Out Ordinance, solely targeted housing providers in favor of renters, by allowing renters carte blanche to refuse to pay rent without basis, and permitting renters to cause damage to housing providers' properties and otherwise violate their leases without consequence. Ex. E ¶ 151 to RJN. Despite the significant harm the Moratoria has caused housing providers, COUNTY and CITY have refused to amend these regulations during their pendency. *Id.* Accordingly, the character of the Moratoria placed a severe and disproportionate regulatory burden upon Plaintiffs and forced Plaintiffs to carry the cost of a public program. *Id.* These regulations were the functional equivalent of a classic taking in which government directly appropriates private property or ousts the owner from his or her domain. *Id.*

## IV. STATEMENT OF PROCEEDINGS

This case was initially filed on March 1, 2022 by six of the named Plaintiffs, when the Moratoria were still in place. Docket No. 1; Ex. B to RJN; ACCO § 6.120.030. Plaintiffs then filed their bifurcated motion for summary judgment on July 18, 2022, in which Plaintiffs requested the Court strike the Moratoria down as facially invalid under both federal and state law principles.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

Docket No. 61. The Court denied the bifurcated motion for summary judgment on November 22, 2022, upholding the Moratoria. Docket No. 96.

Plaintiffs then moved to certify the Court's denial of the motion for summary judgment for immediate appeal to the Ninth Circuit. Docket No. 101. That motion was heard on February 9, 2023, and denied on February 24, 2023. Docket No. 113. On March 10, 2023, Defendants filed a motion for a stay of these proceedings. Docket No. 115. That motion was denied on April 7, 2023. Docket No. 131.

Meanwhile, COUNTY and the CITY finally ended their Moratoria after over three long years. The COUNTY rescinded its local emergency on February 28, 2023, and accordingly, the COUNTY's moratorium expired on April 29, 2023. See, ACCO § 6.120.030. On May 2, 2023, the CITY enacted Ordinance No. 23-0216 ("Phase Out Ordinance"), which ended the CITY's moratorium on July 15, 2023.

Given that the Moratoria had finally ended, Plaintiffs sought leave to amend and supplement their complaint in the action, which was granted by the Court on September 14, 2023. Docket No. 78. Plaintiffs thereafter filed their First Amended and Supplemental Complaint (FASC) on September 20, 2023. Ex. D to RJN. The amendments predominantly added new plaintiffs who have collectively suffered millions of dollars in damages as a result of the Moratoria. *Id.* at ¶¶ 14-20, 22-66, 90-95. The FASC also added facts related to the Moratoria's expiration, as well as challenges several new just cause provisions of the CITY's Phase Out Ordinance. *Id.* at ¶¶ 78, 80, 117.

Defendants moved to dismiss the FASC on November 10, 2023. Docket Nos. 149, 151, 152. Those motions were heard on February 29, 2024, and the Court took them under submission. Docket No. 171.

On September 19, 2024, the Court entered an order granting Defendants' motions to dismiss with prejudice as to all claims except the regulatory-takings claims, which the Court dismissed without prejudice, finding "[t]he plaintiffs must be more specific as to before and after values." Docket No. 184.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

On March 3, 2025, Plaintiffs filed a Second Amended and Supplemental Complaint (SASC). Ex. E to RJN. The amendments in the SASC flesh out both before and after values of Plaintiffs' individual properties as well as Plaintiffs' individual, substantial, losses of income as a result of the Moratoria's impact. *Id.*

Because the Court has dismissed certain of Plaintiffs' challenges to the Moratoria with prejudice (these claims were realleged in the SASC to preserve the issues for appeal), and the Moratoria have been rescinded, the matters left for Plaintiffs to litigate in this district court are as follows:

1st Claim for Violation of the 5th Amendment of the US Constitution: Whether the now-expired Moratoria, and as sanctioned by the Phase Out Ordinance, constitutes a taking of property without just compensation in violation of the 5th Amendment of the U.S. Constitution as applied to each individual Plaintiff herein; and if so, the measure of damages owed to each individual Plaintiff by the CITY and COUNTY.

2nd Claim for Inverse Condemnation: Whether the now-expired Moratoria, and as sanctioned by the Phase Out Ordinance, constitutes a taking of property without just compensation in violation of Article I, Section 19 of the California Constitution as applied to each individual Plaintiff herein; and if so, the measure of damages owed to each individual Plaintiff by the CITY and COUNTY.

Pursuant to the below, Plaintiffs have more than plausibly stated claims for regulatory takings, and therefore Defendants' motions must be denied.

## V. ARGUMENT

### A. LEGAL STANDARD.

#### 1. Fed. R. Civ. P. Rule 12(b)(6).

A motion to dismiss under FRCP Rule 12(b)(6) lies where a plaintiff fails "to state a claim upon which relief can be granted." FRCP Rule 12(b)(6). The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a plausible claim for relief. *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 556 (2007); also see, *Ocasio-Hernández v. Fortuño-*

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

*Burset* 640 F.3d 1, 12-13 (1st Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw ***the reasonable inference*** that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emph. add.). This standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the violation alleged]." *Twombly*, 550 U.S. at 556.

In reviewing motions to dismiss under FRCP Rule 12(b)(6), courts view all of the pleaded facts as true and in the light most favorable to the plaintiff. *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir. 2001). Rule 12(b)(6) dismissal with prejudice is only proper in "extraordinary" cases. *Broam v. Bogan* 320 F.3d 1023, 1028 (9th Cir. 2003). Motions to dismiss for failure to state a claim "***must be viewed with particular skepticism in cases involving claims of inverse condemnation***." *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 864 F.2d 1475, 1478 (9th Cir.1989), emph. add.; *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir.1986), abrogated on other grounds by *Yee v. City of Escondido, Cal.* 503 U.S. 519 (1992.

Finally, if a Rule 12(b)(6) motion presents matters outside the pleadings, and such evidence is considered by the court, "the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FRCP 12(d); *Williams v. County of Alameda,* 26 F.Supp.3d 925, 936 (ND CA 2014). Alternatively, if the Court declines to consider extrinsic evidence, the motion to dismiss need not be converted into a motion for summary judgment, and the Court should deny the motion given the early stage of the litigation. See, *Williams*, 26 F.Supp.3d at 936.

## B. THE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT STATES CLAIMS FOR REGULATORY TAKINGS UNDER PENN CENTRAL.

The Takings Clause of the Fifth Amendment requires compensation for "regulation [that] goes too far" in restricting the use of private property. *Pa. Coal Co. v. Mahon,* 260 U.S. 393, 415 (1922). To state a takings claim, it must be alleged that the government has "taken" one's property for public use without "just compensation." U.S. Const. Amend. V.; also see, Cal. Const. Art. 1 Sec. 19. "[T]he purpose of the Takings Clause" is "to prevent the government from forcing some

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Palazzolo v. Rhode Island,* 533 U.S. 606, 617-18 (2001).

In this case "[t]o determine whether a use restriction effects a taking, [the Supreme] Court has generally applied the flexible test developed in *Penn Central*, balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) ("*Penn Central*")). The *Penn Central* test is an ad hoc determination that is based upon all relevant facts and circumstances. Certain facts are of "particular significance"—the economic impact of the regulation, the extent to which the regulation has interfered with reasonable investment backed expectations, and the character of the regulatory action. *Id.*

At the same time, this test is an exceedingly flexible one. These facts are "guideposts," not "mathematically precise variables." *Palazzolo*, 533 U.S. at 634 (O'Connor, J., concurring); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326–27 (2002) (same). Every case must be looked at individually and there is "no magic formula." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) ("no magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area"); also see, *Palazzolo*, 533 U.S. at 635–36 (O'Connor, J., concurring) ("courts instead must attend to those circumstances which are probative of what fairness requires in a given case . . . . As before, the salience of these facts cannot be reduced to any set formula"). Moreover, as stated herein, on a motion to dismiss, all well-pleaded factual allegations of a complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Additionally, the plaintiff is entitled to the benefit of every reasonable inference that can be drawn from these allegations. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

In light of the above, *Penn Central* determinations are generally not ripe for dismissal pursuant to FRCP 12(b)(6), particularly so in this case. In order to succeed on a *Penn Central* claim, each and every factor of significance (the economic impact, the reasonable investment backed expectations, and the character) does not have to weigh in Plaintiffs' favor. Indeed, the Supreme Court held in *Hodel v. Irving* that the plaintiff prevailed on a *Penn Central* claim when only character weighed in the owner's favor, with economic impact and investment backed expectations weighing in the government's favor. 481 U.S. 704, 716-17 (1987); also see, *Babbit v. Youpee*, 519 U.S. 234 (1997) (same).

Moreover, while Defendants' motions demand that Plaintiffs adhere to a certain magic formula in their pleadings, Plaintiffs cannot be tasked with pleading more than the Supreme Court requires. To disregard all relevant facts and circumstances in favor of mandatory legal benchmarks—and simultaneously disregard the magnitude and severity of the burden placed upon the individual private property owner—is the antithesis of what the regulatory takings test is supposed to be. Also see, Fed. R. Civ. P. 8(a) (a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). Defendants' motions treat this preliminary stage like a trial, arguing that Plaintiffs' SASC need to *prove* the case rather than simply plead it; improperly claiming this Court should weigh evidence as if it were the ultimate trier of fact rather than determining whether the Complaint stated a plausible claim. See, e.g., *Redd v. Guerrero*, 84 F.4th 874, 892 (9th Cir. 2023) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."); *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1066 (9th Cir. 2014) ("[C]ourts cannot properly say whether a suit is 'meritorious' from pleadings alone. A lawsuit need not be meritorious to proceed past the motion-to-dismiss stage."); *Cunningham v. Cornell University*, 145 S. Ct. 1020, 1032–33 (2025) (Alito, J., concurring) ("[I]t

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

would make no sense to require a complaint to anticipate and attempt to refute all the affirmative defenses that a defendant might raise.").

In connection with that argument, Defendants falsely characterize Plaintiffs' allegations as conclusions rather than facts and then demand that the SASC establish the facts-behind-the-facts, and the facts-behind-the-facts-behind-the-facts. To the contrary, Plaintiffs are only required to plead plausible facts—not conclusions. Defendants' attempts to prematurely adjudicate this matter via a 12(b)(6) motion should therefore be rejected. Under a proper application of the 12(b)(6) standard, which accepts all facts as true and draws all inferences in the claimant's favor, Plaintiffs have sufficiently alleged that Defendants' moratoria effected an unconstitutional regulatory taking. While Defendants disagree with these allegations, the Court's role is not to adjudicate disputing positions at the motion to dismiss stage. The sole question for this Court is whether, assuming all allegations are true, Plaintiffs plausibly state claims for regulatory takings, which they clearly do.

### 1. Plaintiffs Suffered Severe Economic Impact.

First, regarding economic impact, the Supreme Court has never held that a property owner must allege a mandatory minimum threshold of economic loss. See, e.g., *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) ("[N]o magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area."); *Murr v. Wisconsin*, 582 U.S. 383, 384 (2017) ("A central dynamic of the Court's regulatory takings jurisprudence thus is its flexibility."). Likewise, multiple federal courts have expressly declined to declare that a mandatory minimum exists. See, e.g., *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 734 (8th Cir. 2022) (plaintiff sufficiently pled economic harm by alleging that executive orders deprived it of "receiving rental income"); *Cienega Gardens v. United States*, 331 F.3d 1319, 1340 (Fed. Cir. 2003) (the threshold is a "serious financial loss" rather than a fixed percentage); *Yancey v. United States*, 915 F.2d 1534, 1541 (Fed. Cir. 1990) (rejecting the notion of an "automatic numerical

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

barrier preventing compensation, as a matter of law, in cases involving a smaller percentage diminution in value.").

And, "[r]ule 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' This means that the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *FFV Coyote LLC v. City of San Jose*, 637 F. Supp. 3d 761, 767 (N.D. Cal. 2022), quoting *Bell Atl. Corp.*, 550 U.S. 555. "A plaintiff does not have to provide detailed facts, but the pleading must include 'more than an unadorned, the-defendant-unlawfully-harmed-me-accusation.'" *Id.* (Denying motion to dismiss *Penn Central* claim) quoting *Bell Atl. Corp.*, 550 U.S. at 678.

The allegations here are far from "unadorned." Plaintiffs allege many detailed facts regarding the devastating economic impacts resulting from the imposition of the Moratoria on Plaintiffs' properties: by renters' nonpayment of rent for years on end, and renters damaging and devaluing Housing providers' properties. Ex. E ¶¶ 84-96 to RJN. One Plaintiff was forced to close her profitable business. *Id.* at ¶ 87. Several Plaintiffs' homes were virtually destroyed. *Id.* at ¶¶ 86, 87, 88, 91, 94, 95. Some Plaintiffs have been so impacted economically, they have been unable to pay their mortgages, and are in fear of losing their properties to foreclosure. Ex. E ¶¶ 85, 86, 87, 90 to RJN. Thus, Defendant' cases are distinguishable. *Evans Creek, LLC v. City of Reno*, No. 21-16620, 2022 WL 14955145 (9th Cir. Oct. 26, 2022) (Plaintiff failed to state a regulatory taking claim because "complaint *lacks any information*" about property's before and after value as a result of regulation); *Nowlin v. Pritzker*, 34 F.4th 629 (7th Cir. 2022) (Conclusory allegations not supported by factual ones); *GHP Mgmt. Corp. v. City of Los Angeles*, No. CV2106311DDPJEMX, 2022 WL 17069822, at *4 (C.D. Cal. Nov. 17, 2022) (No comparison of regulation effect on before and after values); *California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, No. 120CV01294ADASAB, 2023 WL 1869010, at *30 (E.D. Cal. Feb. 9, 2023) (no allegations about economic impact); *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (reversal of judgment because plaintiff failed to pursue total asserted damages for temporary taking at trial). Unlike in those cases, each Plaintiff here alleges "sufficient factual

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

matter" to state a claim for economic impact in a regulatory takings analysis that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs have individually alleged significant diminution in the before and after value of each of their properties and losses of income as a result of the Moratoria's impact, supported by additional facts substantiating how this diminution was determined. Ex. E ¶¶ 85-161, (ex. b) to RJN. Plaintiffs properties' before and after values dramatically decreased as a result of the Moratoria. *Id.* Plaintiffs allege their properties' before and after values incurred losses of over 50% (Ex. E ¶¶ 106, 108, 110, 119, 125, 127, 129, 131 (ex. b)) and Marchitelli's preliminary determinations that the Plaintiffs' properties have all suffered *substantial* impairment of value, economic loss and economic use as a direct result of the Moratoria supports an inference of the same (see, Ex. E, ex. b ¶ 16 to RJN). Plaintiffs further allege that they each have suffered substantial, individualized rental and business losses for each property. Ex. E ¶¶ 85-161, (ex. b) to RJN. These asserted losses derived from specific, detailed allegations regarding the decrease in income as a result of the Moratoria. *Id.* Indeed, Plaintiffs have gone above and beyond their obligations at this pleading stage, including as part of their allegations of substantial diminution of value a preliminary analysis from MAI Marchitelli. These detailed allegations more than plausibly establish a substantial economic impact under *Penn Central*.

Contrary to Defendants, no court has defined what the economic impact must rise to, to be considered a taking, or has held that specific dollar amounts or percentage losses must be alleged to survive dismissal at the _pleading_ stage. See, COUNTY Brief p. 12-13, citing *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018) (concerning analysis of takings at trial—City's motion to dismiss was *denied*); *Garneau v. City of Seattle*, 147 F.3d 802, 808 (9th Cir. 1998) (summary judgment motion where plaintiffs *refused* to put on any evidence of economic impact); see, Intervenor's Brief, citing *Bridge Aina Le'a,* 950 F.3d 610 (finding alleged diminution

in property value for temporary taking insufficient after consideration of all evidence at trial).[1] Rather, numerous courts have declined to impose a fixed percentage of economic loss. See, e.g., *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 734 (8th Cir. 2022) (plaintiff sufficiently pleaded economic harm by alleging that executive orders deprived it of "receiving rental income"); *Cienega Gardens v. United States*, 331 F.3d 1319, 1340 (Fed. Cir. 2003) (the threshold is a "serious financial loss" rather than a fixed percentage); *Yancey v. United States*, 915 F.2d 1534, 1541 (Fed. Cir. 1990) (rejecting the notion of an "automatic numerical barrier preventing compensation, as a matter of law, in cases involving a smaller percentage diminution in value").[2] Indeed, such specifics are appropriately reserved for expert analysis, to be presented at trial to a fact finder.

In short, granular and specific details are simply not required at the pleading stage. *Twombly*, 550 U.S. at 570. Plaintiffs need only plausibly allege that the moratoria caused a significant loss in economic use—not provide detailed business plans, or even exhaustive financial projections, as Defendants assert. The level of factual development demanded by Defendants—and their quarrel with Plaintiffs' method of property valuation—is the province of discovery and a trial, not a pleading requirement. See, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). (A "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."). At this stage, the court must accept those allegations as true and afford Plaintiffs the benefit of every reasonable inference.

//

---

[1] Additionally, unlike in *Bridge Aina Le'a,* 950 F.3d 610, Plaintiffs here allege "the regulations caused ***irreparable future harm*** to property values by reinforcing the perception of residential property investors that Oakland and Alameda County were not favorable places to do business and should be avoided." Ex. E (ex. b) to RJN, emph. add.

[2] Also contrary to Defendants, courts have held that lower impacts than 50% were sufficient to fulfill the economic impact requirement under *Penn Central*. See, e.g., *FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 273 (Tex. App. 2016) (46% decline satisfied the economic impact factor); *Comm. Housing Improvement Program v. City of New York*, 492 F. Supp. 3d 33, 49–50 (E.D.N.Y. 2020) (a 20%–40% loss is sufficient to state a claim).

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

### 2. Plaintiffs' Reasonable Investment Backed Expectations Were Destroyed.

Second, courts also review the impact of the regulation on investment backed expectations. *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1128 (9th Cir. 2013) (the Ninth Circuit has held that the main factor is the extent to which the regulation has interfered with investment-backed expectations). Here, Plaintiffs have alleged that their reasonable investment backed expectation were impeded by the Moratoria. Ex. E ¶ 85-91, 93 to RJN. In fact, it weighs very strongly in Plaintiffs' favor. Defendants' attempt to diminish Plaintiffs' investment backed expectations as "unreasonable" because the landlord-tenant business is a "regulated environment" is not well taken. Reasonable investment backed expectations do not include the expectation that the municipal government shall unilaterally impose an unprecedented and open-ended eviction ban. Or, looking at it from the opposite side, Plaintiffs had the reasonable, investment backed expectation that the well-established California law of unlawful detainer would be honored and left intact by the government.

The Ninth Circuit recognizes this expectation as reasonable under *Penn Central*. *Bridge Aina Le'a,* 950 F.3d at 634 ("[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property."); *Saddle Mountain Mins., LLC v. City of Richland, No. 23-3562*2, 2024 WL 4903280, at *2 (9th Cir. Nov. 27, 2024) (defining reasonable investment backed expectations by the "ordinances . . . in effect at the time [the owner] purchased the [property]"). In so holding, the Ninth Circuit was in accord with Supreme Court jurisprudence. *Palazzolo*, 533 U.S. at 633 (O'Connor, concurring) ("Under these cases, interference with investment-backed expectations is one of a number of factors that a court must examine. Further, the regulatory regime in place at the time the claimant acquires the property at issue helps to shape the reasonableness of those expectations."). In short, it is legally untenable to mandate predictions into the future. Particularly so with respect to unprecedented and unexpected events like COVID-19. Constitutional protection cannot hinge on whether a property owner can accurately forecast the existence and parameters of future regulations that may never come into being.

Thus, "[t]he regulatory environment existing prior to the pandemic . . . gave Plaintiffs little reason to expect that they might be barred from evicting tenants for nonpayment of rent." *GHP Mgmt.*, 2022 WL 17069822 at *5. " 'Distinct investment-backed expectations' implies reasonable probability, ***like expecting rent to be paid***, not starry-eyed hope of winning the jackpot if the law changes. A landlord buys land burdened by lease-holds in order to acquire a stream of income from rents and the possibility of increased rents or resale value in the future*." Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010)  (emph. add.). "[T]he scope and nature of the COVID-19 pandemic, and of the public health measures necessary to combat it, have no precedent in the modern era, and [ ] no amount of prior regulation could have led landlords to expect anything like the blanket Moratorium." *Apartment Ass'n of Los Angeles County, Inc. v. City of Los Angeles*, 500 F.Supp. 3d 1088, 1096 (C.D. Cal. 2020), *aff'd,* 10 F.4th 905 (9th Cir. 2021).  Defendants' reliance on *S. California Rental Hous. Ass'n v. Cnty. of San Diego*, 550 F. Supp. 3d 853, 859 (S.D. Cal. 2021) is unavailing; the moratorium imposed in that case was for a 60 day period—*not for over three years*.[3]  Defendants' disagreement with Plaintiffs' assertions that their reasonable investment backed expectations were destroyed by the imposition of the three-year long moratoria is legally irrelevant and should play no role in determining whether plausible regulatory takings claims have been sufficiently plead.

The mere fact that Plaintiffs own properties in a "regulated industry" does not automatically negate their reasonable investment-backed expectations. Virtually every property and every industry are subject to some form of regulation. Indeed, the very doctrine of regulatory takings derives from a heavily regulated industry—coal mining. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). Thus, a holding that properties operating within regulated industries are somehow inherently incapable of satisfying

---

[3] Defendants also claim that Plaintiffs haven't alleged an injury because they can just recover rent from Defendants' rent relief program.  As alleged in the SASC, such remedies are virtually toothless.

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

the reasonable investment backed expectations factor would unravel the *Penn Central* test. A property owner operating within a regulated industry says nothing about whether the regulation has gone "too far." As the Federal Circuit explained in *Cienega Gardens v. United States*:

> [A] business that operates in a heavily-regulated industry should reasonably expect certain types of regulatory changes that may affect the value of its investments. But that does not mean that *all* regulatory changes are reasonably foreseeable or that regulated businesses can have *no* reasonable investment-backed expectations whatsoever.

Accordingly, Defendants' motions must fail.

### 3.  The Character of the Government Action was Indicative of a Taking.

Third, with respect to character, this factor has also been sufficiently pled.  The character prong of *Penn Central* evaluates the severity of the burden placed upon the property owner and how that burden is distributed between the owner and the public, with the goal of identifying those regulatory actions "that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron*, 544 U.S. 528, 539 (2005).  Thus, "the character of the government action is another way to examine the severity of the government interference with property rights." *S. Grande View Dev. Co., Inc. v. City of Alabaster, Alabama*, 1 F.4th 1299, 1311 (11th Cir. 2021); also see, *Lingle*, 544 U.S. at 539-540. It measures what the regulation does, who it impacts, how it affects the owner's reasonable expectations of property, and how the burden is distributed between the individual owner and the public. See *CCA Assocs. v. United States*, 91 Fed. Cl. 580, 602 (2010), *aff'd in part, rev'd in part*, 667 F.3d 1239 (Fed. Cir. 2011) (character is "the actual burden imposed on property rights, and how that regulatory burden was *distributed* among property owners"); also see, *Cienega Gardens v. U.S.,* 331 F.3d 1319, 1338 (2003).

In this way, character is a central force of the *Penn Central* inquiry. See *Penn Central*, 438 U.S. at 149-150 (Rehnquist, J., dissenting) ("it is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking); *Lingle*, 544 U.S. at 540 ("the *Penn Central* inquiry turns in large part, albeit not exclusively, upon the *magnitude* of a regulation's economic impact and the *degree* to

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

which it interferes with legitimate property interests") (emphasis added). As referenced above, the Supreme Court has held that character alone can be sufficient to find a *Penn Central* taking. *Hodel v. Irving,* 481 U.S. 704, 717 (1987).

Here, the SASC clearly reflects a regulatory character that is indicative of a taking. These rental property owners were singled out to bear a severe and disproportionate cost in the name of public pandemic housing. Ex. E ¶¶ 75-96 to RJN. The magnitude of the Defendants' regulation was such that this group of housing providers was compelled to surrender their property to ensure that the public could shelter in place, but leaving Plaintiffs' ultimately responsible for their mortgage, real estate taxes, utilities, insurance, maintenance, the upkeep of the property, and other such expenses - all for the benefit of those that could retain possession without paying rent, complying with a lease, or even abiding by the law. *Id.* This burden that the Plaintiffs were singled out to bear was unilaterally determined by the Defendants and would end only when, and if, the Defendants deemed it to be so. *Id.* Accordingly, the character of the Defendants' regulations, as pled, and considering all of Plaintiffs' allegations as true, are more than sufficient.

Finally, motions to dismiss for failure to state a claim **"must be viewed with particular skepticism in cases involving claims of inverse condemnation**." *Sinaloa Lake Owners Ass'n,* 864 F.2d at 1478, emph. add.[4] This is because in order to prevail the Defendants must "run the table" and firmly establish, accepting all facts as true, that there is not a single relevant fact, nor a single fact of particular significance (i.e,, economic impact, reasonable investment backed expectations, character), that could support a *Penn Central* claim under its ad hoc standard. But to the contrary, each of the factors as pled, both independently and together, support a regulatory takings claim. Plaintiffs suffered substantial financial losses. Plaintiffs' reasonable investment backed expectations were destroyed when Defendants' outlawed evictions and abrogated unlawful detainer. And Plaintiffs were singled out to bear the cost of providing public pandemic housing

---

[4] To the extent the Defendants intend to turn this into a summary judgment motion, the Court must deny their motions as premature. *Yuba Goldfields, Inc v. U.S.,* 723 F.2d 884, 887 (Fed. Cir 1983).

while Plaintiffs remained liable for all expenses of ownership including taxes, insurance, maintenance, utilities and the mortgage.

## VI. CONCLUSION

For the reasons discussed above, the Court should deny the motions because the claims are properly alleged, and Defendants' disagreement with the allegations must be disregarded in the context of this motion.

Respectfully submitted,

Dated: July 14, 2025

ZACKS & FREEDMAN, PC                    PACIFIC LEGAL FOUNDATION

   /s/ Emily L. Brough                        /s/ Jonathan M. Houghton
ANDREW M. ZACKS (SBN 147794)           JONATHAN M. HOUGHTON
EMILY L. BROUGH (SBN 284943)           (N.J. Bar No. 369652021)
1970 Broadway, Suite 1270              3100 Clarendon Blvd., Suite 1000
Oakland, CA 94612                      Arlington, VA 22201
Tel: (510) 469-0555                    BRIAN T. HODGES (Wash. Bar No. 31976)
az@zfplaw.com                          1425 Broadway, #429
emily@zfplaw.com                       Seattle, WA 98112
                                       Telephone: (916) 419-7111
                                       JHoughton@pacificlegal.org
                                       BHodges@pacificlegal.org

**PROOF OF SERVICE**

United States District Court—Northern District of California- Case No.: 3:22-cv-01274-LB
Case No.: 3:22-cv-02705-LB (related)

I, Valeria Bentorkia-Moran, declare that:

I am employed in the County of San Francisco, State of California. I am over the age of 18 and am not a party to this action.  My business address is 180 Montgomery Street, Suite 1950, San Francisco, California 94104.

On July 14, 2025, I served:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

in said cause addressed as follows:

| | |
|---|---|
| PACIFIC LEGAL FOUNDATION<br>JONATHAN HOUGHTON (NJ Bar No. 369652021)<br>3100 Clarendon Blvd., Suite 610<br>Arlington, VA 22201<br>BRIAN HODGES (WA Bar No. 31976)<br>SAM SPIEGELMAN (NY Bar No. 5573100)<br>255 South King Street, Suite 800<br>Seattle, WA 98104<br>Email: JHoughton@pacificlegal.org<br>Email: BHodges@pacificlegal.org<br>Email: SSpiegelman@pacificlegal.org<br><br>*Attorney for John Williams, Robert Vogel, Sheanna Rogers, Michael Loeb, Jacqueline Watson-Baker, Housing Providers of America* | MARC SELTZER<br>KRYSTA K. PACHMAN<br>GLENN C. BRIDGMAN<br>NICHOLAS N. SPEAR<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, CA 90067-6029<br>Email: mseltzer@susmangodfrey.com<br>Email: kpachman@susmangodfrey.com<br>Email: gbridgman@susmangodfrey.com<br>Email: nspear@susmangodfrey.com<br><br>*Attorneys for Intervenor-Defendant Alliance of Californians for Community Empowerment Action* |
| MATTHEW D. ZINN<br>EDWARD T. SCHEXNAYDER<br>MINDY K. JIAN<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>Email: Zinn@smwlaw.com<br>Email: Schexnayder@smwlaw.com<br>Email: mjian@smwlaw.com<br><br>*Attorney for Alameda County and Alameda County Board of Supervisors* | BARBARA J. PARKER<br>MARIA BEE<br>ALLISON EHLERT<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA 94612<br>E-Mail:aehlert@oaklandcityattorney.org<br>*Attorney for City of Oakland and Oakland City Council* |

ZACKS & FREEDMAN, PC
1970 BROADWAY, SUITE 1270
OAKLAND, CA 94612

| | |
|---|---|
| CHRISTOPHER E. SKINNELL<br>HILARY J. GIBSON<br>NIELSEN MERKSAMER<br>PARRINELLO GROSS & LEONI LLP<br>2350 Kerner Boulevard, Suite 250<br>San Rafael, CA 94941<br>Email: cskinnell@nmgovlaw.com<br>Email: hgibson@nmgovlaw.com<br>*Attorneys for Plaintiffs and Petitioners California Apartment Association Stephen Lin, Lakesh and Tripti Jain, Alison Mitchell, Michael Hagerty, H. Alex, Dannie Alvarez* | |

**/XX/    (BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept electronic service, I caused the said document to be served electronically through the CM/ECS System.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 14, 2025 at San Francisco, California.

_____
VALERIA BENTORKIA-MORAN

ZACKS & FREEDMAN, PC<br>1970 BROADWAY, SUITE 1270<br>OAKLAND, CA 94612